

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

GMP:AG:PEN  *271 Cadman Plaza East*
F. #2009R01065  *Brooklyn, New York 11201*

February 2, 2017

By ECF

The Honorable Brian M. Cogan
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:   United States v. Joaquin Archivaldo Guzman Loera
            Criminal Docket No. 09-466 (BMC) (S-4)

Dear Judge Cogan:

      The government respectfully writes to request a protective order that would prevent the dissemination, beyond the defendant Joaquin Archivaldo Guzman Loera (hereinafter, the "defendant") and his defense counsel, of discovery provided pursuant to Federal Rule of Criminal Procedure 16, and witness statements provided pursuant to the Jencks Act, see 18 U.S.C. § 3500 (hereinafter, the "Protected Material"). The Protected Material includes, but is not limited to, statements of the defendant, evidence related to drug seizures, such as laboratory reports and photographs, documents and recordings related to electronic surveillance, documents containing witness statements and evidence of witness identity and location.[1] The government also respectfully requests that the Court order the Protected Material to be returned to the government upon the conclusion of the case.

      As set forth below, the government makes this application because of the defendant's previously demonstrated capacity to intimidate and use violence against potential witnesses and to obstruct law enforcement investigations. As such, there is a significant risk that dissemination of the Protected Material beyond the defendant and defense counsel would jeopardize the safety of witnesses and their families and the integrity of ongoing investigations in this and other districts. A proposed order is attached as Exhibit A for the Court's consideration.

---

[1] We anticipate that substantial portions of the Protected Material will be produced in electronic format.

I.      Background

A grand jury sitting in the Eastern District of New York returned the above-referenced superseding indictment (the "Indictment") on May 11, 2016, which charged the defendant with various offenses related to his narcotics trafficking, use of a firearm and money laundering, including operating a Continuing Criminal Enterprise ("CCE") in violation of Title 21, United States Code, Section 848.  As part of the CCE charge, the Indictment alleged that the defendant, as one of the leaders of the Sinaloa Cartel ("the Cartel):

> [E]mployed "sicarios," or hitmen, who carried out hundreds of acts of violence, including murders, assaults, kidnappings, assassinations and acts of torture at the direction of the defendants.  The defendants directed and ordered these acts of violence for a variety of reasons, including but not limited to:
> . . .
> (c)     Enforcing discipline amongst its members and associates by punishing disloyalty and failure; and
>
> (d)     Protecting members of the Sinaloa Cartel from arrest and prosecution by silencing potential witnesses and retaliating against anyone who provided information or assistance to law enforcement authorities.

The Indictment also alleged that the leaders of the Cartel engaged in "corruption and enforcement activities undertaken to preserve and protect its illegal activities."

On January 19, 2017, the defendant was extradited from Mexico, and he was arraigned before a magistrate judge the following day.  At arraignment, the magistrate judge entered a permanent order of detention.

II.     The Applicable Law

In Alderman v. United States, 394 U.S. 165 (1969), the Supreme Court stated, in reference to the provision of electronic surveillance evidence, that a trial court "can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the material which they may be entitled to inspect."  Id. at 185.  Federal Rule of Criminal Procedure 16(d)(1) states that, "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief."  Id.  The commentary to Rule 16 provides that, "[a]mong the considerations to be taken into account by the court will be the safety of witnesses and others, a particular danger or perjury or witness intimidation, the protection of information vital to the national security, and the protection of business enterprises from economic reprisals."  Fed. R. Crim. P. 16 advisory committee's note (1966 amend.).  The final decision on whether to enter such an order is within the district court's discretion, and such an order will not be overturned absent an abuse of that discretion.  See United States v. Delia, 944 F.2d 1010, 1018 (2d Cir. 1991).

2

Similarly, the Jencks Act does not create a proprietary right to the statements of government witnesses. See 18 U.S.C. § 3500. The Act requires only that the government make these statements available to the defendant for the purposes of cross-examination, and defines the timing of such disclosures. See id. In United States v. Garcia, 406 F. Supp. 2d 304 (S.D.N.Y. 2005), the court held that "Jencks requires the Government to produce copies of its witnesses' statements for inspection by the defense, for purposes of cross-examination. It does not give defendants a property interest in such statements, or require the multiplication of copies of internal prosecution notes or reports for whatever use the defendants choose to make of them." Id. at 305. Indeed, the court explained:

> There will be cases, however, in which a casual attitude toward the handling of 3500 material is ill advised. . . . In particular, the wide dissemination of statements by cooperating witnesses who are regarded as "snitches" or "rats" by their criminal associates . . . poses obvious dangers. It is not enough to say, as the defendants argue in this case, that the damage is done by the mere disclosure that a witness has cooperated with the authorities. Hard evidence of the witness's betrayal can facilitate retaliation or intimidation of the witness. It is therefore appropriate, in a case where such retaliation may be feared, to restrict the circulation of such material.

Id. at 306.

Accordingly, courts have routinely granted protective orders regulating the dissemination of information in criminal cases. See United States v. Gangi, No. 97-CR-1215, 1998 WL 226196, at *4 (S.D.N.Y. May 4, 1998) (ordering that information disclosed under protective order "[s]hall be used only by defendants and their counsel solely for purposes of this action"); United States v. Salemme, 978 F. Supp. 386, 390 (D. Mass. 1997) (requiring government to make certain disclosures and ordering that those disclosures be used "solely for the purpose of litigating matters in this case"); see generally United States v. Anderson, 799 F.2d 1438, 1441 (11th Cir. 1986) ("Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation. That is why parties regularly agree, and courts often order, that discovery information will remain private.") (citation omitted). In the context of traditional organized crime, whose tactics include obstructing justice and threatening witnesses, courts have routinely limited the dissemination of discovery. See, e.g., Order on Motion for Discovery, United States v. Basciano, No. 03-CR-929 (NGG), Dkt. No. 602 (E.D.N.Y. Jun. 30, 2006) (reaffirming prior protective order preventing dissemination of Jencks Act material and return of that material in light of "(1) evidence of Defendants' participation in violent acts within a criminal conspiracy that has been involved in witness tampering; (2) the Government's plan to present witnesses whose locations were undisclosed; and (3) the widespread distribution of 3500 material to members of the Bonanno organized crime family and members of the federal defense bar by the defendant Joseph Massino and his trial counsel, respectively, in a prior related case"); United States v. Gotti, No. 02-CR-743, 2004 WL 2274712, at *3 (S.D.N.Y. Oct. 7, 2004) (noting that within RICO indictment, there "are multiple charges suggesting a willingness to employ violence

and coercion against anyone who would cooperate with authorities against the Gambino Family"); United States v. Gotti, No. 02-CR-743, 2002 WL 31946775 (E.D.N.Y. Jun. 10, 2002) (holding that defendant, Peter Gotti, a member of the Gambino crime family, should be detained without bail, based on the government's evidence that the Gambino family had used "violence and murder to prevent the testimony of witnesses who the [Gambino] family have viewed as a threat").

III.   Argument

As more fully detailed in the government's detention memorandum, see Dkt. No. 17, numerous cooperating witnesses are expected to testify that the defendant is the leader of the Sinaloa Cartel, the world's largest drug trafficking enterprise, whose members operate under the defendant's control throughout the Western Hemisphere, including in Colombia, Central America, Mexico and the United States, including the New York area. They are further expected to testify concerning the defendant's pervasive influence over, and corruption of, Mexican law enforcement and government authorities for the purpose of obstructing justice by, among other means, interfering with ongoing investigations and thwarting law enforcement detection of his and his associates' criminal activity. Moreover, they will testify concerning the defendant's concerted efforts to discover and undermine law enforcement techniques in an effort to gain a tactical advantage over law enforcement investigations. For example, cooperating witnesses will testify about the defendant's and other Cartel members' use of electronic surveillance to monitor members of their own organization. Finally, cooperating witnesses will testify about the defendant's prolific use of violence, including murder and kidnapping, to deter and silence prospective witnesses and those individuals who operated against the defendant's interest. Specifically, cooperating witnesses will testify about orders the defendant personally gave to murder those suspected of operating against his and the Cartel's interests.

Despite the defendant's present incarceration, the Sinaloa Cartel, as a syndicate of drug trafficking organizations, continues to operate actively through its other leaders, including the defendant's partner and co-defendant Ismael Zambada Garcia. The defendant himself was not deterred from operating his criminal enterprise while incarcerated in two maximum security prisons in Mexico. Accordingly, there is substantial justification to prevent dissemination of the Protected Material to individuals other than the defendant and defense counsel, and to require that the Protected Material be returned to the government at the close of the case.

Without the limitations on the dissemination of the Protected Material contained in Exhibit A, there is reason to believe that the Protected Material will be disseminated to members of the Sinaloa Cartel who are not under the supervision of the Court, as well as to other confederates of the defendant who may carry out his orders. Such dissemination would risk placing cooperating witnesses and their families, as well as civilian witnesses and law enforcement personnel, in grave danger of physical harm, including death. Dissemination of the Protected Material also will likely alert unindicted targets to the existence of ongoing investigations of their criminal activity, as well as the specific subject

matter of an investigation and therefore may lead to the destruction or concealment of evidence and the flight of the targets.  Moreover, the Protected Material will inevitably reveal previously unknown law enforcement techniques, which would likely be used to further thwart ongoing investigations into the Sinaloa Cartel and otherwise obstruct justice.  The defendant will not be prejudiced by the implementation of a protective order preventing further dissemination of the Protected Material, because the defendant and his defense counsel will have access to the Protected Material and may use it to prepare for trial and to conduct cross-examination at trial.

IV.   Conclusion

For the foregoing reasons, the government respectfully submits that the government's motion for a protective order should be granted.

Respectfully submitted,

ROBERT L. CAPERS
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

ARTHUR G. WYATT, CHIEF
Narcotic and Dangerous Drug Section
Criminal Division,
U.S. Department of Justice

OF COUNSEL:

WIFREDO A. FERRER
UNITED STATES ATTORNEY
Southern District of Florida

cc:   Michelle Gelernt, Esq. (counsel to defendant)
      Michael Schneider, Esq. (counsel to defendant)