

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

GMP:MPR/PEN
F. #2009R01065

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 6, 2017

By ECF

The Honorable Brian M. Cogan
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Joaquin Archivaldo Guzman Loera
                   Criminal Docket No. 09-466 (BMC) (S-4)

Dear Judge Cogan:

        The government respectfully writes in reply to the defendant Joaquin Archivaldo Guzman Loera (the "defendant")'s March 1, 2016 submission, opposing the government's motion for a protective order for discovery provided pursuant to Federal Rule of Criminal Procedure 16 and witness statements provided pursuant to the Jencks Act, see 18 U.S.C. § 3500 (the "Protected Material").  See Dkt. No. 46 ("Def. Reply Mem.").  In his reply brief, the defendant argues that the Court should revise the government's proposed protective order (attached as Exhibit A to the government's February 24, 2017 brief, see Dkt. No. 44-1) (the "Proposed Order") to (1) exclude sensitive law enforcement techniques as Protected Material; (2) eliminate the prior-approval requirements for foreign nationals and persons who are not considered part of Defense Counsel's Team;[1] and (3) require the government to scour the public domain on an ongoing basis and continually review the Protected Material to determine what material should no longer be designated as Protected Material.  For the reasons discussed herein, as well as in the government's motion for a protective order, see Dkt. No. 28, its February 24, 2017 reply brief in support of that motion, see Dkt. No. 44 ("First Reply Brief"), and its ex parte submission filed that same date, see Dkt. No. 45 ("Second Ex Parte Submission"), the Court should reject the defendant's arguments and enter the Proposed Order without modification.

---

[1] The terms "Defense Counsel," "Defense Counsel's Team," "Expert Witnesses," "Prospective Expert Witnesses" and "Approved Persons" are defined in the Proposed Order. See Proposed Order ¶¶ 2, 4, 5.

I.   The Government Has Demonstrated Good Cause to Designate Information Related to Sensitive Law Enforcement Techniques as Protected Material

The defendant argues that the Proposed Order should exclude "information related to sensitive law enforcement techniques" as Protected Material because (1) "there is no legitimate reason to limit defense counsel's use of [such information]"; (2) the phrase is "impermissibly vague" and (3) the defendant should be permitted to "discuss such techniques with legal and technical experts." Def. Reply Mem. at 4. These arguments lack merit.

First, as explained in the government's prior submissions, see First Reply Br. at 7; Second Ex Parte Submission at 5-7, there are numerous legitimate reasons to proscribe disclosure of certain sensitive law enforcement techniques that have not been previously publicly disclosed. Public disclosure of these techniques would significantly undermine the government's ability to use them in current and future investigations, as targets of such investigations would be made aware of their existence and could take steps to avoid detection of their criminal activities through these methods.

Second, the phrase "information related to sensitive law enforcement techniques" is not "impermissibly vague." To the contrary, the government has detailed the specific types of information that fall within this category in its Second Ex Parte Submission. See Second Ex Parte Submission at 5-7.

Lastly, the defendant objects to the designation of information reflecting sensitive law enforcement techniques as Protected Material on the grounds that he needs to discuss such techniques with legal and technical experts. But the Proposed Order explicitly allows Defense Counsel to discuss the Protected Material with Expert Witnesses and Prospective Witnesses. See Proposed Order ¶¶ 2, 4. This objection therefore is unfounded.

II.  The Government Has Demonstrated Good Cause for the Proposed Order's Prior-Approval Requirements

The defendant objects to the Proposed Order's prior-approval requirements, which permit the government to vet, and the Court to approve, foreign nationals who seek to join Defense Counsel's Team and persons who are not members of Defense Counsel's Team before they access the Protected Material. He argues (1) the "government provides no legal or factual support for its assertion that people who are citizens of other countries are less trustworthy than Americans"; (2) "a ban on citizens of other countries being a part of" Defense Counsel's Team would "create an almost insurmountable burden to the defense in investigating the charges"; (3) the Proposed Order's prohibition against sending Protected Material outside the United States sufficiently addresses the government's concerns and (4) the prior-approval requirements hinder the defendant's ability to prepare a defense and unfairly require disclosure of his legal strategy. Def. Reply Mem. at 5. The Court should reject these arguments.

With respect to the defendant's first two points, he mischaracterizes the government's argument in important respects. The government has not argued that foreign nationals are "less trustworthy than Americans." Nor has it argued for a "ban" on foreign nationals from Defense Counsel's Team. Rather, the Proposed Order specifically permits foreign nationals to join Defense Counsel's Team, after they are vetted by the government and approved by the Court. This prior-approval requirement is not rooted in a categorical distrust of foreign nationals. It is rooted in the defendant's demonstrated history of relying on foreign professionals, including foreign attorneys, to further his crimes; his proven ability to corrupt foreign officials at all levels of government; the Sinaloa Cartel's expansive international reach; and the reality that foreign nationals may much more easily evade the Court's jurisdiction—and thus the consequences of violating the Proposed Order—than United States citizens. Under these circumstances, there is a significant risk that Sinaloa Cartel members, who are also employed as attorneys or investigators, will attempt to infiltrate Defense Counsel's Team to gain access to the Protected Material, which they will be able to use to harm witnesses and thwart ongoing investigations. A foreign national seeking to join Defense Counsel's Team therefore raises significant security concerns in these particular circumstances.

As to the defendant's third point, the prohibition against removing the Protected Material from the United States does not cure these concerns. While that prohibition is necessary to protect against the improper dissemination of the actual documents designated as Protected Material, it does nothing to prevent the improper dissemination of the knowledge derived from those documents. If a foreign attorney or investigator, who also was a Sinaloa Cartel member, joined Defense Counsel's Team, he or she could simply travel to the United States, review the Protected Material, then travel outside the United States with the knowledge garnered from those documents. The dissemination of such knowledge poses a significant security risk. For instance, if that Cartel member traveled to the United States and learned the identity of a cooperating witness from Mexico, he or she could then travel to Mexico with that knowledge, disclose the name of the witness to other Sinaloa Cartel members, who then could kidnap or kill the family of that witness in Mexico. Additionally, if a Cartel member's sole purpose for joining Defense Counsel's Team was to gain access to the Protected Material, he or she could access the material in the United States, make copies of it, and then flee to a foreign country, beyond the Court's jurisdiction. The prohibition against dissemination of the documents outside the United States does nothing to protect against such risks. The only way to prevent such scenarios from occurring is to prevent Sinaloa Cartel members from accessing the Protected Material in the first instance. And, proper vetting by the government is the only viable means by which to do so.

With respect to his final point, the defendant argues that the prior-approval requirements for foreign investigators and potential witnesses will hinder his defense and result in disclosure of his legal strategy. Contrary to his assertion, however, the prior-approval requirements do not impose an "insurmountable burden" on the defense by precluding Defense Counsel from retaining foreign investigators. Under the Proposed Order, nothing prevents Defense Counsel from retaining foreign investigators to assist in the preparation of the defense. Defense Counsel simply may not share the Protected Material or its content with foreign investigators until they are vetted by the government and approved by the Court. Thus, under

the Proposed Order, Defense Counsel may retain foreign investigators, but elect not to show or share with them the Protected Material. Indeed, there is no reason to believe that every foreign investigator retained by Defense Counsel will need access to the Protected Material to conduct an effective investigation, and the defendant has offered nothing but speculation to the contrary. Alternatively, Defense Counsel may submit the name of a foreign investigator to the government to be vetted and to the Court for approval. The foreign investigator then will have access to the Protected Material as part of Defense Counsel's Team.

Moreover, the government fails to see how disclosure of the fact that Defense Counsel has retained an investigator, for instance, in Mexico or Colombia, would reveal anything about his legal strategy. But even if such disclosure would reveal some minimal attorney work product, that qualified privilege must yield here, in light of the significant security risks discussed in the government's submissions. See In re Grand Jury Subpoenas dated March 19, 2002 and Aug. 2, 2002, 318 F.3d 379, 384 (2d Cir. 2003); In re Grand Jury Subpoena Dated Nov. 9, 1979, 484 F. Supp. 1099, 1102-05 (S.D.N.Y. 1980).

So too with respect to the prior-approval requirement for potential witnesses. Defense Counsel does not need to disclose the Protected Material to witnesses to effectively interview them. Indeed, it is often the better practice not to show any documents produced during discovery to a potential witness to avoid the allegation at trial that the witness has conformed his or her testimony to the information in those documents. To the extent that Defense Counsel elects to make such a disclosure to a particular witness, the prior-approval requirement for such a witness is warranted, despite the qualified privilege for attorney work product. See id. The disclosure of a witness's name reveals little about the defendant's legal strategy; the defendant is not required to disclose the substance of any conversation with the witness to the government. When weighed against the demonstrated risks of disclosing the Protected Material to potential witnesses—who, by definition, are likely to be members or associates of international drug trafficking organizations—the minimal disclosure of attorney work product does not justify withholding those names from the government. The names of the witnesses who will access Protected Material must be disclosed so that the government can properly vet the witnesses before they access the material.[2]

Finally, the defendant argues that the "Federal Defenders of New York employs foreign nationals as members of its staff" and those employees "should not be subjected to heightened scrutiny based on nationality." Def. Reply Mem. at 4 n.2. The government does not object to an exception to the prior-approval requirement for foreign nationals that would exempt foreign nationals who were full-time employees of the Federal Defenders of New York

---

[2] The defendant argues that, "at a minimum[,] any preclearance requirement authorized by the court should be conducted by an Assistant United States Attorney who is not a member of the prosecution team." Def. Reply Mem. at 5 n.3. As discussed in the government's prior submissions, see First Reply Br. at 10 n.7; Second Ex Parte Submission at 9 n.7, such a firewall procedure would significantly undermine the government's ability to properly vet persons who have access to the Protected Material.

as of January 19, 2017, the date on which the defendant was extradited and Defense Counsel was notified that it would be appointed to represent him. With respect to such persons, the government's concern about infiltration of Defense Counsel's Team by Sinaloa Cartel members and associates is not applicable. Thus, in a further effort to ensure that the prior-approval requirements are narrowly tailored to the foregoing concerns, the government does not object to such an exception.

III. The Government Should Not Be Required to Scour the Public Domain and Continually Review the Protected Material

The defendant argues that, "because the government is in the far better position to know and to find out what material has entered the public domain, any protective order issued by the Court should include a requirement that the government both disclose to the defense what material has become public and endeavor to periodically learn what material has become part of the public domain." Def. Reply Mem. at 1. The defendant now seeks to impose a requirement that the government review all of the Protected Material every 90 days during the pendency of this litigation. See Def. Proposed Protective Order, Dkt. No. 46-1 ¶ 9. This requirement is unnecessary, unduly burdensome and overly broad.

As an initial matter, the government disputes the defendant's contention that it is in a better position than the defendant to learn what is in the public domain. The government and Defense Counsel have the same access to the media. The government is in no better position to learn what has been published in the media than the defendant. Insofar as the defendant argues that the government is in a better position to learn what Protected Material has been publicly disclosed in other criminal cases, the government already has agreed that it will notify Defense Counsel if it becomes aware that the justification for designating a document as Protected Material no longer exists, for instance, because it has become public.

The defendant's proposed requirement that the government continually review and re-review the Protected Material, every 90 days, during the pendency of this litigation is unduly burdensome and overly broad, because it is not tailored to address the concern that the defendant raises. The government will not learn what material has become public by re-reviewing the Protected Material. It will learn that particular documents have become public when it is notified of public disclosure by other law enforcement agents, through media reporting or by Defense Counsel. When it learns that such a document has become public, it will then notify Defense Counsel and the Court that the particular document should no longer be designated as Protected Material, if appropriate. But the government cannot seriously be expected to continually review all media reporting and all other active criminal cases in the United States to determine if some of the tens of thousands of pages of Protected Material have become public. Nor can it be expected to continually re-review those documents every 90 days throughout the course of this litigation. The government expects that it will take weeks, if not longer, to review the Protected Material in its entirety. To continually re-review that material during the course of this litigation, the government would be required to devote significant resources to that ongoing document review, which would undoubtedly slow the progress of this case, while members of the prosecution team are diverted from performing

5

other tasks.  The minimal benefits of this review do not justify its tremendous burdens.  The appropriate balance is struck by the Proposed Order, which requires the government to notify Defense Counsel and the Court if it becomes aware that the justification for designating a particular document as Protected Material no longer exists.  See Proposed Order ¶ 9.

IV.     The Defendant's Remaining Arguments Are Meritless

The defendant argues that the "government seems to misunderstand the nature" of the defendant's objections to the Proposed Order, which are not based on "First Amendment concerns," but rather upon his concerns about the impact of the Proposed Order "on his ability to investigate and prepare a defense."  Def. Reply Mem. at 2-3.  That is wrong.  The government fully understands the defendant's arguments; however, those arguments are highly speculative and do not justify the defendant's requested modifications to the Proposed Order.  The defendant's speculative concerns are far outweighed by the concrete risks, supported by specific and articulable facts set forth in the government's Second Ex Parte Submission, that the defendant and other Sinaloa Cartel members will attempt to use the Protected Material to harm witnesses and their families and thwart ongoing investigations.  Where, as here, the government has demonstrated such good cause, restrictions on the defendant's ability to disseminate information are appropriate under Rule 16.  See United States v. Smith, 985 F. Supp. 2d 506, 521-24, 531-47 (S.D.N.Y. 2013).  Even if the restrictions may impose limited burdens on Defense Counsel, such burdens are warranted here, in light of the defendant's extraordinary criminal history, extreme violence and expansive criminal network.

In a lengthy footnote, the defendant lodges a series of unfounded allegations at the government, which are equally irrelevant and baseless.  First, the defendant claims that the Proposed Order "ignores the public's right to access."  Def. Reply Mem. at 3 n.1.  But, as explained in the government's First Reply Brief, "there is no right of access to discovery materials," because "discovery is a private process between the parties to an action."  First Reply Br. at 4 (internal quotation marks omitted) (quoting Smith, 985 F. Supp. 2d at 519).  Thus, "courts generally view the documents or materials shared between them as outside the judicial function and therefore not presumptively accessible."  Id. (internal quotation marks omitted) (citing United States v. Amodeo, 71 F.3d 1044, 1050 (2d Cir. 1995)).  The government has articulated ample basis for restricting public dissemination of these presumptively private documents in this case and, in any event, this motion does not deal with a motion by a member of the public to access the Protected Material.  The government, therefore, did not specifically address that issue in its First Reply Brief.

Second, the defendant bemoans the government's citation to a Mexican news article that cited information derived from the Rule of Specialty Waiver ("ROS Waiver").  The government produced the ROS Waiver to the defendant on February 14, 2017; it was subsequently provided to one of the defendant's Mexican attorneys, who quoted information derived therefrom in a published article one week after the government first provided it to Defense Counsel.  See First Reply Br. at 7 n.5; Def. Reply Mem. at 3 n.1.  The defendant argues that the dissemination of the ROS Waiver did not prejudice the government, disclose any of the government's witnesses or ongoing investigations, or violate a court order.  See Def.

6

Reply Mem. at 3 n.1. The government, though, has made no such arguments. Indeed, the government specifically noted in its First Reply Brief that the ROS Waiver "was not subject to a protective order." First Reply Br. at 7 n.5. Rather, the government cited this sequence of events to demonstrate that there is a direct pipeline from Defense Counsel to the defendant's Mexican attorneys to the Mexican press. In light of this pipeline, the government expects broad dissemination of discovery materials not subject to the Proposed Order in the Mexican media. Such broad dissemination heightens the concerns raised by the government here. If not subject to the Proposed Order, any discovery that identifies a potential witness or ongoing investigations, for instance, likely will be distributed throughout Mexico and elsewhere. That wide distribution increases the risk that the information will fall into the wrong hands and the concomitant risk that witnesses and their families will be harmed and ongoing investigations will be thwarted.

Third, the defendant accuses the government of "trying this case in the press," holding a "press conference which went far beyond merely commenting on the charges in the Indictment," and filing a detention memorandum "intended primarily as a press release which could only serve to prejudice Mr. Guzman and further taint the potential jury pool." Def. Reply Mem. at 3 n.1. Given that Defense Counsel has held a press conference in front of the courthouse following every court appearance in this case,[3] it is surprising that Defense Counsel is accusing the government of "trying this case in the press" and attempting to taint the jury pool. In any event, these allegations are unfounded. The government filed a detention memorandum in this case to provide the Court with sufficient information to determine that pre-trial detention was warranted under the factors articulated by Bail Reform Act, which include the nature of charged crimes, the strength of the evidence, the history and characteristics of the defendant, including his history of flight, and his risk of danger to the community. See 18 U.S.C. § 3142. The Court cannot make a bail determination in a vacuum, without evidence proffered by the government, and a lengthy proffer was justified here given that the defendant spent more than three decades running the largest and most violent drug cartel in the world. Likewise, the press conference held at the U.S. Attorney's Office following the defendant's extradition to the United States was based on public information and entirely consistent with the Local Rules governing statements by attorneys to the media. See E.D.N.Y. Local Crim. R. 23.1 (Eff. Dec. 19, 2016). That press conference, along with the government's detention memorandum, demonstrate that the government is willing to disclose ample information about this case to the public, so long as that information does not endanger the safety of witnesses and their families, jeopardize ongoing investigations or disclose sensitive

---

[3] El Chapo Pleads Not Guilty to Charges He Ran the World's Largest Drug Trafficking Ring, BusinessInsider.com (Jan. 20, 2017) (noting press conference held by Defense Counsel on January 20, 2017), available at http://www.businessinsider.com/el-chapo-pleads-not-guilty-to-charges-he-ran-the-worlds-largest-drug-trafficking-ring-2017-1 (last visited March 4, 2017); El Chapo Lawyers Complain About Strict New York Jail Conditions, Reuters.com (Feb. 3, 2017) (noting press conference held by Defense Counsel and Emma Coronel Aispuro on February 3, 2017) available at http://www.reuters.com/article/us-mexico-crime-chapo-idUSKBN15I2HF (last visited March 4, 2017).

law enforcement techniques.  The government is confident that press coverage in this case will not undermine the ability of the Court to select a fair and impartial jury to try the defendant.  Numerous high-profile cases have been tried in this district, and the Court has been able to select fair and impartial juries in those cases, just as it will be able to do so here.

Lastly, the defendant argues that the government is seeking the Proposed Order because it has "an agenda to control and manipulate media access to information—not to protect witnesses or ongoing investigations, but to ensure favorable media coverage for the prosecution."  Def. Reply Mem. at 3 n.1.  This allegation is absurd.  As demonstrated in its submissions, the government's purpose in seeking the Proposed Order is to prevent the defendant and the Sinaloa Cartel from harming or killing its witnesses and their families and disrupting ongoing and future investigations designed to dismantle the Cartel.

8

V.  Conclusion

For the foregoing reasons, and for the reasons set forth in the government's Motion for a Protective Order, First Reply Brief and Second Ex Parte Submission, the government respectfully requests that the Court grant its motion for a protective order and enter the Proposed Order without modification.

Respectfully submitted,

ROBERT L. CAPERS
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

ARTHUR G. WYATT, CHIEF
Narcotic and Dangerous Drug Section
Criminal Division,
U.S. Department of Justice

OF COUNSEL:

WIFREDO A. FERRER
UNITED STATES ATTORNEY
Southern District of Florida

cc: Michelle Gelernt, Esq. (counsel to defendant)
    Michael Schneider, Esq. (counsel to defendant)

9