TM:GMP/AG/ANL/HDM
F.#2009R01065/OCDETF# NY-NYE-616


UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -                                                                 09-CR-466 (S-4) (BMC)

JOAQUIN ARCHIVALDO GUZMAN LOERA,
    also known as "El Chapo," "El Rapido,"
    "Chapo Guzman," "Shorty," "El Senor,"
    "El Jefe," "Nana," "Apa," "Papa," "Inge"
    and "El Viejo,"

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


SUR-REPLY MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO VACATE OR
<u>MODIFY SPECIAL ADMINISTRATIVE MEASURES</u>


                                      BRIDGET M. ROHDE
                                      Acting United States Attorney
                                      Eastern District of New York

                                      ARTHUR G. WYATT, CHIEF
                                      Narcotic and Dangerous Drug Section
                                      Criminal Division
                                      U.S. Department of Justice

                                      OF COUNSEL:
                                      BENJAMIN G. GREENBERG
                                      Acting United States Attorney
                                      Southern District of Florida

PRELIMINARY STATEMENT

The government respectfully submits this sur-reply in opposition to the defendant Joaquin Archivaldo Guzman Loera's (the "defendant" or "Guzman") Reply Memorandum in Support of the Motion to Vacate or, in the Alternative, Modify Special Administrative Measures ("SAMs") dated March 29, 2017 ("Def. Reply Br."). See Dkt. No. 54. In his reply brief, the defendant raises three new issues: (1) Amnesty International's request to assess the prison conditions at the Metropolitan Correctional Complex's ("MCC") Special Housing Unit ("SHU") and visit the defendant; (2) the defendant's request that the Court appoint firewall counsel to conduct clearance for his visitors; and (3) the defendant's request allowing him to send unscreened messages to his family about retaining counsel. For the reasons stated below, the Court should reject all three requests. The government, however, does not object to the Court's appointment of firewall counsel for the limited purpose of vetting defense experts. The government will also propose a SAMs modification allowing pre-screened written communications between the defendant and his wife, Emma Aispuro Coronel, solely regarding the retention of counsel.

ARGUMENT

I.   The Court Should Deny Amnesty International's Request to Assess Prison Conditions at the MCC and Visit the Defendant Because the Request Violates the SAMs, Poses Safety Concerns and Is Unnecessary

Amnesty International requests access to the MCC's SHU to "observe the conditions of the SHU and to interview Mr. Guzman Loera regarding the impact of his conditions of confinement and the imposition of SAMs are having on his health and well-being." See Def. Reply Br., Ex. A at 2. The government submits, in consultation with the

1

Bureau of Prisons ("BOP") and the appropriate corresponding authorities within the Department of Justice, that the Court should deny Amnesty International's request.[1]

First, the SAMs does not permit Amnesty International's visit due to significant safety concerns. The SAMs only allows for legal visits and visits by immediate family. Amnesty International, however, is not representing the defendant. Nor is Amnesty International attempting to secure the defendant's legal representation. In addition, none of Amnesty International's members is purporting to be a member of the defendant's family. Therefore, under the SAMs, there is no basis for Amnesty International's visit.

The SAMs restrictions exist because the Attorney General found that there was a "substantial risk that [the defendant's] communications or contacts with persons could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of serious bodily injury to persons." Def. Br., Ex. A at 3. The facts here strongly support this finding. As discussed in detail in the government's prior public and ex parte filings, the defendant regularly used torture, murder and kidnapping to maintain control of the Sinaloa Cartel (the "Cartel"), to punish rival drug trafficking organization members and to exact revenge on individuals who sought to bring the defendant or other members of the Cartel to justice. The government has provided specific instances of murders and attempted murders by the defendant and the Cartel of persons suspected of cooperating with the government as well

---

[1] This is not Amnesty International's first request to visit a federal prison. After initially receiving a tour of the facilities at the United States Penitentiary Administrative Maximum Facility in Florence, Colorado ("ADX") in June 2001, Amnesty International requested access to the ADX again in 2011 and 2012. The BOP denied those requests. Even during the June 2001 visit to the ADX, the BOP did not allow Amnesty International access to the secure wing.

2

as evidence of the defendant's efforts to corrupt ongoing investigations into him.  See Second Ex Parte Filing, Dkt. No. 44.  The defendant has enlisted third parties and used coded communications while incarcerated to carry out this heinous conduct.  See id.  The defendant has also escaped from prison twice.

Second, there is no need for Amnesty International's additional assessment because there is already considerable oversight of federal prisons.  The BOP oversees the MCC.  The BOP has in place a comprehensive administrative framework to address prison conditions, including the filing of Requests for Administrative Remedies, or BOP-9s, which the defendant, through his counsel, has used several times.  The Department of Justice's Office of Inspector General ("DOJ-OIG"), in turn, oversees the BOP.  The DOJ-OIG routinely issues reports on federal prisons, recommending changes to conditions and practices.

In addition, the courts have oversight over federal prisons, to ensure that prison conditions comport with our nation's constitutional obligations, such as the Due Process Clause, the First Amendment and the prohibition against Cruel and Unusual Punishment. Indeed, with respect to the defendant's conditions of confinement, the Court has the ability to visit the MCC itself to observe and assess the prison.  Given the numerous layers of oversight in place, there is no need for Amnesty International to visit the MCC and observe the prison's conditions.

Third, there is no need for Amnesty International to visit and interview the defendant "regarding the impact of his conditions of confinement and the imposition of SAMs are having on his health and well-being."  See Def. Reply Br., Ex. A. at 2.  The defendant is represented by able counsel, the Federal Defenders.  The Federal Defenders have met with the

3

defendant almost every day since the defendant's incarceration at the MCC, usually for several hours each day. The Federal Defenders have raised on numerous occasions issues regarding the defendant's conditions of confinement, including using administrative remedies and the instant motion. To the extent there are purported concerns about the defendant's "health and well-being," the MCC has medical personnel on staff, and the Federal Defenders have already raised such concerns. Any legal counsel that may represent the defendant in the future will also be able to raise any continued concerns.

Fourth and finally, Amnesty International's opinion about the prison conditions at the MCC, in the absence of full information about the defendant's history and this case (which they are clearly not entitled to), would be of limited value to the Court. It is undisputed that Amnesty International has no statutory or legal authority over federal prisons in the United States, including the MCC.[2] Allowing Amnesty International to visit the defendant or observe the conditions at the MCC would open the floodgates to requests by scores of other non-governmental organizations interested in visiting the defendant or assessing U.S. prison conditions, not just at the MCC but also across the country.[3] Accordingly, acquiescing to this request would set a perilous precedent, and significantly impair the BOP's ability to manage its

---

[2] There are thousands of non-governmental organizations, like Amnesty International, whose focus is on human rights. Being a human rights organization, however, confers no special privilege under United States law to observe and assess prison conditions in any federal prison or visit with a specific inmate.

[3] On a few occasions, the BOP has allowed non-governmental organizations to visit federal prisons, such as the ADX. Even on those occasions, however, the BOP did not permit access to SAMs defendants because of safety concerns.

prisons.

In light of these concerns, the Court should not override the SAMs to allow Amnesty International, a non-governmental organization with no connection with this case, to assess prison conditions at the MCC and visit the defendant. There is no need for this visit. Amnesty International is not a member of the defendant's legal team, has no oversight authority over the MCC and is not a party to this prosecution. In short, it is a third party wholly unrelated to this case. There is no justification for altering the SAMs restrictions, given the well-founded concerns about communications with third parties, to permit this extraordinary and unnecessary request.

II.  The Court Should Deny the Request to Appoint Firewall Counsel to Vet the Defendant's Visitors, Other Than Defense Expert Witnesses

The defendant has requested that the government use firewall counsel to conduct vetting activities of the defendant's visitors. See Def. Reply Br. at 10. This Court previously ordered the appointment of firewall counsel for the specific purpose of vetting foreign nationals seeking to join Defense Counsel's Team in granting the government's protective order. See March 21, 2017 Order, Dkt. No. 51. While the government agrees that the use of firewall counsel for the purpose of vetting expert witnesses is also proper and consistent with the reasoning underlying the Court's March 21, 2017 Order, the government submits that the use of firewall counsel is unnecessary for other visitors.[4] Allowing firewall counsel to vet expert witnesses addresses the defendant's concern that the government will gain insight into the

---

[4] As required by the SAMs, defense counsel must attend any meeting between the defendant and a cleared expert witness.

5

defendant's pre-trial strategic decisions.  The use of firewall counsel beyond these limited purposes, however, is unnecessary.

Without any basis, the defendant requests the expansive use of firewall counsel to cover the entire SAMs clearance process: "firewall counsel be appointed to conduct *any and all* clearance requests for visitors to [the defendant]."  Def. Reply Br. at 10 (emphasis added). This expansive use of firewall counsel is unnecessary for visitors other than defense experts. Contrary to the defendant's assertion, the prosecution team should continue vetting potential visitors other than defense experts.

Here, the Attorney General implemented the SAMs because it found that Guzman's communications or contacts with persons could result in death or serious bodily injury to persons.  The Attorney General based this finding on the defendant's lengthy and established history of acting through third parties to operate his vast, violent drug cartel, silencing potential witnesses, and orchestrating two elaborate escapes from prison.  Careful and informed vetting of potential visitors to the defendant is thus of critical importance.  The prosecution team is best positioned to evaluate visitation requests, relying on information that it has gathered in the years spent investigating the defendant, his organization, and his associates.   Use of firewall counsel under the limited circumstances outlined above will protect the defendant's rights and ensure he receives effective representation; but employing firewall counsel to filter all individuals, including those who legitimately and reasonably fall within the purview of the SAMs, is an unreasonable request, which is not supported by the current circumstances or legal authority.

In addition, the defendant requests that MCC staff not communicate with the prosecution team "concerning observations made by BOP staff of confidential, privileged counsel visits." Def. Reply Br. at 10. The prosecution team has not and would not, in any way, seek to learn of the privileged communications between the defendant and his counsel during periods of visitation or at any other time, and any suggestion otherwise is completely baseless. Legal visits take place in a separate enclosed room with a glass window, and at no time, has the government monitored the substance of the defendant's attorney-client communications. While the content of a meeting between a defendant and his counsel is privileged, the occurrence of the meeting itself is not. See Upjohn v. United States, 449 U.S. 383, 395 (1981) ("[t]he privilege only protects disclosure of confidential communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney"). Thus, there is no legal reason why the MCC cannot inform the prosecution team of the mere fact that meetings between the defendant and the defense team have occurred.[5]

III.   The Court Should Reject the Defendant's Request to Send Unscreened Messages to His Family Regarding the Retention of Counsel

In its opposition brief, the government proposed a modification to the SAMs to allow Guzman to communicate, through his current counsel and cleared private attorneys, to his family members concerning retaining counsel and the paying of attorney's fees. See Gov't Opp. Br. at 30-31, Dkt. No. 52. The defendant argues against this proposed modification. Instead, the defendant requests unfettered access to his family members about retaining counsel

---

[5] Notably, the government has not sought to note the frequency of defense counsel's visits in this case beyond the simple purpose of rebutting defense counsel's inaccurate claim that the defendant has had little to no human contact since his incarceration at the MCC.

7

and paying attorney's fees. The defendant claims that allowing the government to pre-screen such messages infringes on his Fifth Amendment right against self-incrimination. Def. Reply Br. at 13. For the reasons stated below, the Court should reject this request.

The SAMs already limit communications between the defendant and his family. The SAMs only permit contact between the defendant and immediate family members and require all family members to be pre-cleared, after which all communications with approved family members, whether in person, on the phone, or by written correspondence, are monitored.[6] This proposed modification would allow family members the benefit of communicating with the defendant regarding the retention of counsel without having to be pre-cleared. If the government's proposed modification is adopted, family members would not be in a worse position than under the current SAMs. Rather, they would have more leeway for this specific, limited purpose.

Moreover, the proposed modification does not affect attorney-client communication, which the government does not monitor or screen under the SAMs.[7] The

---

[6] The defendant claims, without any basis whatsoever, that he "is being held under the worst, most restrictive conditions of any prisoner currently detained by the United States government." See Def. Reply Br. at 2. In addition, the defendant argues that in Mohamed, the defendant in that case was allowed to have contact with his wives. Id. The defendant, however, fails to mention that Mohamed was only allowed written correspondence with his wives.

[7] The defendant claims erroneously that the government is monitoring his attorney-client communications because BOP staff saw Federal Defenders paralegals showing the defendant Spanish-language newspapers. This claim is without basis. As counsel is aware, legal visits at the MCC take place in windowed rooms and physical behavior can sometimes be observed. The government has not monitored or recorded any of the defendant's attorney-client communications.

defendant can continue to communicate with his attorneys about his defense without concern about violating his Fifth Amendment rights. Indeed, the proposed modification aids counsel by allowing the defendant to express to his family members the counsel he would like to retain and directing them to assets that could pay the attorney's fees.

With respect to Guzman's concern that discussion of attorney's fees would infringe upon his Fifth Amendment rights, it is well-settled law that information about attorney's fees is not privileged and attorneys must disclose such information. See Lefourt v. United States, 125 F.3d 79, 86 (2d Cir. 1997). In addition, the Office of Foreign Assets Control ("OFAC") has designated the defendant as a Kingpin under the Foreign Narcotics Kingpin Designation Act. As a result, any private attorney seeking to represent the defendant will have to apply for an OFAC license, and comply with OFAC's regulations, including submitting periodic reports about financial transactions involving the defendant.

The government will also propose a SAMs modification to allow pre-screened written communications between the defendant and his wife, Ms. Coronel, solely regarding the retention of private counsel. The government, however, will continue to disallow in-person visits or telephone calls between the defendant and Ms. Coronel for the reasons stated in its ex parte filings.[8]

---

[8] The government has sought from the Attorney General a modification of the SAMs that would implement this prohibition on in-person or telephone visits between the defendant and Ms. Coronel, for the reasons stated in its ex parte filings.

9

## CONCLUSION

For the foregoing reasons, the Court should deny Amnesty International's request to visit the MCC and the defendant, the defendant's request to send unscreened messages to family members regarding retaining counsel, as well as the defendant's request for firewall counsel, except that the Court may modify the SAMs to appoint firewall counsel for the limited purpose of vetting defense experts. The government will also seek a SAMs modification to allow pre-screened written communication between the defendant and his wife, Ms. Coronel, solely regarding the retention of private counsel.

Dated:   Brooklyn, New York
         April 7, 2017

        BRIDGET M. ROHDE
        Acting United States Attorney
        Eastern District of New York

        ARTHUR G. WYATT, CHIEF
        Narcotic and Dangerous Drug Section
        Criminal Division
        U.S. Department of Justice

        OF COUNSEL:
        BENJAMIN G. GREENBERG
        Acting United States Attorney
        Southern District of Florida