# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA, : 95-CR-00621(ILG)

-against- : United States Courthouse
: Brooklyn, New York

EDUARDO BARINAS, : Thursday, June 9, 2016
: 2:30 p.m.
Defendant.

- - - - - - - - - - - - - - X

TRANSCRIPT OF CRIMINAL CAUSE FOR MOTION
BEFORE THE HONORABLE I. LEO GLASSER
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

For the Government: ROBERT L. CAPERS, ESQ.
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201
BY: MICHAEL KEILTY, ESQ.
Assistant United States Attorney

For the Defendant: FEDERAL DEFENDERS OF NEW YORK, INC.
One Pierrepont Plaza, 16th Floor
Brooklyn, New York 11201
BY: SAMUEL JACOBSON, ESQ.

Also Present: GREGORY CARTER, U.S. PROBATION
ESTRELLITA PLESTED, SPANISH INTERPRETER

Court Reporter: SHERRY J. BRYANT, RMR, CRR
225 Cadman Plaza East
Brooklyn, New York 11201
sbryant102@verizon.net

Proceedings recorded by mechanical stenography, transcript produced by Computer-Assisted Transcript.

(In open court.)

COURTROOM DEPUTY: Criminal cause for motion, United States versus Eduardo Barinas. Please come forward.

Counsel, please state your appearances for the record.

MR. KEILTY: Good afternoon, Your Honor. Mike Keilty for the United States. With me is --

MR. CARTER: Gregory Carter for the U.S. Probation Department. Good afternoon, Your Honor.

MR. JACOBSON: Good afternoon, Your Honor. Sam Jacobson, Federal Defenders, on behalf of Eduardo Barinas. Joining us today is Allison Gifford, a legal intern in our office; and Estrellita Plested, Spanish interpreter, previously sworn.

THE COURT: It's your motion, Mr. Jacobson, so if you're ready I'll hear you.

MR. JACOBSON: Thank you, Your Honor. I can address standing first, since it's --

THE COURT: I'm sorry?

MR. JACOBSON: I can address standing first, the issue of standing, since it's the threshold question. I think the courts in this Circuit that have addressed standing to challenge additional charges have all said that a defendant does have the standing to make that challenge under the treaty. Those cases are cited in our papers.

THE COURT: Excuse me. Would you say that again? The courts in this Circuit have decided that the plaintiff -- all the courts I think you said have decided that the plaintiff has standing, that the movant?

MR. JACOBSON: The courts that we have found that published written opinions in this Circuit that have addressed the question of challenging additional charges.

THE COURT: Excuse me. Mr. Jacobson, listen to me very carefully. I'm trying to repeat what it is you said just to make sure I understand it.

Did I understand you to say that all the courts in this Circuit have found that the movant in a case such as this has standing to challenge the violation of the treaty, or alleged violation of the treaty? Is that what you said?

MR. JACOBSON: Well, Suarez is an exception, but I was referring specifically to a challenge to additional charges, not standing at large. So --

THE COURT: Well, if a conclusion is reached properly with support of the authorities that the movant has no standing, is there any necessity to go any further?

MR. JACOBSON: Well, the government believes that it has a case to the contrary.

THE COURT: I'm asking you; I'm not asking the government.

MR. JACOBSON: In my opinion, there is no necessity

to address standing, because we believe the courts have held that a defendant does have standing under the treaty. I'm essentially raising it to discuss the government's objection to standing.

THE COURT: All right. Mr. Jacobson, forgive me for interrupting you or intruding upon your presentation.

MR. JACOBSON: I can move to the merits.

THE COURT: I apologize.

MR. JACOBSON: I can move to the merits, Your Honor.

THE COURT: Move to whatever you want. It's your motion. I can't really tell you how it is you should proceed to argue your motion. Do it as you see fit.

MR. JACOBSON: The reason I'm addressing standing is because the government cites a very recent Second Circuit case, U.S. v Suarez, which does say that that particular defendant did not have standing under the treaty to challenge a particular aspect of the extradition.

The reason I'm raising it is because that aspect was the sentence that was issued on that charge. So essentially, there's a distinction between standing to challenge a sentence on an extradited charge and standing to challenge additional charges that are outside the scope of the extradition papers.

THE COURT: Do you want me to comment on that? I think it's just flat wrong, what is being charged as a disregard of the treaty. The treaty specifically said, at

least according to the movant, that the receiving court -- let me rephrase -- that we will extradite the defendant provided you do not impose a life sentence.

Your argument is that by sentencing the defendant to whatever the number of months was, in effect, as a practical matter, was a life sentence; and therefore, you are disregarding the treaty. They are complaining about the essence of what it is that was placed as a condition upon extradition.

In any event, go ahead, unless you're through.

MR. JACOBSON: I'm not through, Your Honor. I think Suarez is explicit that it only applies to -- it says specifically -- and I can cite to Suarez, Your Honor. It says: This Court has never conclusively decided whether a defendant has standing to challenge his sentence on the ground that it violates the extradition decree.

Suarez says nothing about the other cases which hold that a defendant does, in fact, have standing to challenge anything that's outside the scope of the charges on which the defendant was extradited. And I think that's the important distinction, and the reason the Court is making that distinction is because of the idea of notice. The country could have objected in Suarez to the sentence, because they were on notice that that person was being charged with that particular offense.

In the case of additional charges, the country is not even on notice that that person is facing the charges, because it's outside of what they authorized extradition for. And I think that's what Baez stands for. I think that's what U.S. v Jurado-Rodriguez, Martonak, and a number of other opinions cited in our papers, that the reason the defendant has no standing to challenge the sentence is because it's something that that extraditing country is already on notice of, so they are tracking that case and can then object to the final outcome in that case.

In this case and in the other cases cited, it's a matter of challenging additional charges that are outside what the country was even on notice of what was being charged by the receiving country. And I think that's the heart of the standing question is you can't object to something you don't know about.

And in Suarez, the country did, in fact, know about that case, that charge, that sentence. In all of the other cases, the country was unable to object because they did not know that the defendant was being held to face those charges. And that's the distinction, these are additional charges that are outside of the scope completely of what Mr. Barinas and the other defendants in the standing cases were extradited for.

I'm happy to answer any questions about standing. I

can also move to the merits of the case.

I think the two tests on the merits in the Circuit and explicitly in the treaty itself is whether the offense that is being charged, the additional charges, whether they are based on the same set of facts as the extradited case or whether it's, in fact, a separate offense. And really, you look explicitly at what is enumerated to the extraditing country in terms of the facts that are alleged in the extradition request.

The District of New Jersey, in requesting Mr. Barinas's extradition, pointed to the underlying facts of the narcotics case. But in order to face a violation of supervised release case, the Dominican Republic would have had to be advised of an additional set of facts, and that pertains to Mr. Barinas's status as a supervised releasee. And because they weren't on notice of that, it's outside the scope of the facts that the Dominican Republic was apprised of.

And so under the cases in the Circuit, this VOSR would be considered to be a separate offense from what he was extradited for and, therefore, under the rule of specialty, it would be a violation of the Dominican Republic-U.S. extradition treaty.

The government in the extradition papers would also have to make a showing that a VOSR charge is even an extraditable offense to begin with. And if we reach the

merits, I think that's an additional threshold issue, which is that all of the offenses that Mr. Barinas faces in the United States have to be extraditable offenses under the treaty. And the treaty says what an extraditable offense is, and the requesting country has to make a showing that the offenses he will face are, indeed, extraditable.

And I think there's a question. Part of how an extraditable offense is defined is the idea of dual criminality. In other words, it has to be something that is chargeable conduct in both the receiving and the requesting country. And I don't -- nowhere in the extradition papers does the government -- in addition to not alleging the supervised release facts also doesn't indicate that these VOSR charges would be extraditable to begin with.

Finally, we very briefly mention -- and I think you would only have to reach this question, Your Honor, if you denied our application on the other prongs, but there's a question of whether Mr. Barinas is still on supervised release at all under -- the Second Circuit has not addressed that question, but in the First Circuit --

THE COURT: What's the question?

MR. JACOBSON: The question is whether supervised release is tolled for an individual who's not in the country. So the First Circuit held that a fugitive who had absconded from supervised release to another country, it doesn't toll

the supervised release period so it continues to run and, therefore, if it's a five-year period after five years it's up. And he can't be charged after that period has run.

THE COURT: You're making the Speedy Trial argument, is that it?

MR. JACOBSON: That's essentially it.

THE COURT: Do you have Title 18 of the United States code handy?

MR. JACOBSON: I'm sure I could procure a copy, Your Honor.

THE COURT: Can I loan you mine?

MR. JACOBSON: I think it's more of a statute of limitations argument.

THE COURT: Can I loan you mine? Would you look at Section 3583.

MR. JACOBSON: Yes, Your Honor, I'm there.

THE COURT: Would you look at subdivision (i). Would you read it, please, out loud.

MR. JACOBSON: Subdivision I says: "The power of the Court to revoke a term of supervised release for violation of a condition of supervised release, and to order the defendant to serve a term of imprisonment and, subject to the limitations in subsection (h), a further term of supervised release, extends beyond the expiration of the term of supervised release for any period reasonably necessary for the

adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation."

THE COURT: Does that apply here?

MR. JACOBSON: It does not to charge three. Charge three in this VOSR is that he committed additional criminal conduct while on supervised release, but that criminal conduct was after the expiration of the term of his supervised release, if the supervised release was not tolled.

In other words, a warrant issued on the original absconding from supervised release, but the additional criminal conduct, which is the District of New Jersey case, is much more recent. It's on the order of ten years after his supervised release would have expired.

THE COURT: The statute speaks of a violation of supervised release. It means the supervised release is still in existence. It's still valid.

In any event, when a person is charged with violating a supervised release for having been convicted of a narcotics offense, as was true in this case -- Mr. Barinas was convicted in this court for importing drugs, yes?

MR. JACOBSON: His initial conviction, yes, Your Honor.

THE COURT: By the way, is that an extraditable offense?

MR. JACOBSON: It is.

THE COURT: And is the offense for which he was extradited in the Dominican Republic an extraditable offense, obviously? They're both extraditable offenses.

MR. JACOBSON: But this offense is not.

THE COURT: The Dominican Republic would grant a request for extradition if the offense for which extradition is sought was a drug offense. Yes?

MR. JACOBSON: I would disagree with that, Your Honor. It's not --

THE COURT: Excuse me. Before you tell me you'll disagree, I assume you've listened to the question carefully.

MR. JACOBSON: I did.

THE COURT: Mr. Barinas was extradited from the Dominican Republic because of a request by the United States government on behalf of the District Court of Massachusetts for a drug offense; right?

MR. JACOBSON: That's right.

THE COURT: Would it make any difference whether the drug offense was an offense committed in Massachusetts or a drug offense committed in the Eastern District of New York?

MR. JACOBSON: As long as the district where he was prosecuted requested it.

THE COURT: Listen to my question and try and answer the question and don't go off on a tangent. Just listen.

It's important that you learn to listen. Fair?

MR. JACOBSON: Fair.

THE COURT: Good. Mr. Barinas was extradited from the Dominican Republic because of a drug offense which he was charged with committing in Massachusetts; and based upon the request of the United States of the Dominican Republic to send Mr. Barinas back so that he could be prosecuted in Massachusetts for the drug offense -- the drug offense was an extraditable offense in Colombia; right?

MR. JACOBSON: That's right.

THE COURT: Colombia specifically provides for agreeing to extradite for an offense which is a drug offense. Yes?

MR. JACOBSON: Yes.

THE COURT: Would it have made any difference if the drug offense were committed in the Eastern District of New York and we made a request of the government of the Dominican Republic to extradite Mr. Barinas for a criminal drug offense that he committed here?

MR. JACOBSON: I don't believe so.

THE COURT: It wouldn't have made any difference; right?

MR. JACOBSON: It may. There's a jurisdictional section of the treaty that I haven't read, but --

THE COURT: What are you talking about? What

jurisdictional -- is there a treaty between the United States and the Dominican Republic?

MR. JACOBSON: There is. I accept the premise, Your Honor. He could be extradited for that charge in any district.

THE COURT: And a violation of supervised release which is charged against Mr. Barinas here is for a drug offense, yes?

MR. JACOBSON: He's on supervised release because of an underlying drug offense.

THE COURT: Again, I said the violation of a condition of supervised release for which he's standing here this afternoon is he violated that condition of supervised release which says he should not commit another crime. Yes?

MR. JACOBSON: That's the VOSR charge, yes.

THE COURT: And he committed another federal crime.

MR. JACOBSON: Yes.

THE COURT: And that's a violation of a condition of supervised release.

MR. JACOBSON: Yes.

THE COURT: That's why he's here.

MR. JACOBSON: Yes.

THE COURT: And he's complaining about whether this Court has jurisdiction. Right?

MR. JACOBSON: Yes.

THE COURT: And he complains we don't have jurisdiction because the treaty has been violated.

MR. JACOBSON: Yes.

THE COURT: In the sense that the request for extradition did not specify the drug offense constituting a violation here in New York. Right?

MR. JACOBSON: It didn't mention the violation of supervised release offenses.

THE COURT: It mentioned a drug offense.

MR. JACOBSON: Yes.

THE COURT: But you claim that that doesn't do it, that the treaty, the request for extradition had to specifically say that we're also asking to have Mr. Barinas extradited for the drug offense that he committed or the violation of supervised release that he committed here for the Eastern District?

MR. JACOBSON: It would have to specify the three VOSR charges, yes.

THE COURT: And that's your argument?

MR. JACOBSON: That's part of my argument, yes, Your Honor.

THE COURT: Are you finished?

MR. JACOBSON: I'm finished, subject to any questions.

THE COURT: I don't have any more questions. Does

the government want to respond?

MR. KEILTY: I can be very brief, Your Honor, just on the standing issue. It is the government's position that Suarez clearly stands for the proposition that only the Dominican Republic and not the defendant has standing.

Defense counsel's attempt to cabin-hole Suarez to just -- as the holding just to be relating to sentencing is misplaced. In fact, Suarez quotes U.S. versus Fusco, where the Circuit explicitly declined to resolve whether the defendant had credential standing to challenge his prosecution and sentencing on the grounds that they violate the terms of the extradition treaty.

And the same with -- Suarez also quotes U.S. versus Banks. In Banks, the Circuit declined to resolve whether the right to enforce an extradition agreement belongs to the Dominican Republic. So clearly, in Suarez the Court is not just talking about sentencing as they are holding, Your Honor.

In addition, Suarez goes on to examine other principles of international law. It cites U.S. versus Reed. Absent protest or objection by the offended sovereign, the defendant has no standing to raise a violation of international law; and it goes on to say the right to challenge the terms of defendant's extradition is derivative through the state. The holding in Suarez is in line with many other Circuits throughout the country, Your Honor.

Just briefly with respect to the defendant's argument about notice to the Dominican Republic. That argument could be made in the vast majority of rule of specialty cases. Furthermore, the government is unaware of any attempt by the defendant or his counsel to communicate with the Dominican Republic about this issue.

If the Court has any other questions on standing, I'm happy to answer them, Your Honor.

THE COURT: No, I don't have any further questions. I'm denying the motion. I'm just going to deny the motion and cite just a few cases which I would suggest, Mr. Jacobson, you read if you haven't already; and if you have, I would suggest you re-read them carefully.

First, with respect to your position that the courts in this Circuit have not commented on the standing issue specifically, I refer you to a case that was decided back in 1973. It's Shapiro versus Ferrandina, in which the Court, I think writing by Judge Friendly, said: "As a matter of international law, the principle of specialty has been viewed as a privilege of the asylum state, designed to protect its dignity and interests, rather than a right accruing to the accused."

Suarez does quite clearly say: "As a matter of international law, the principle of specialty has been viewed as a privilege of the asylum state, designed to protect its

dignity and interests, rather than a right accruing to the accused." As a matter of international law, the principle of specialty has been viewed as a privilege of the asylum state, designed to protect its dignity and interests.

With respect to the whole matter of notice, there's an interesting case decided also back in 1972. As it so happens, it was also written by Judge Friendly. That case is Fiocconi, F-i-o-c-c-o-n-i, versus the Attorney General of the United States. Have you read that one?

MR. JACOBSON: I have not. Can you say the name? I didn't hear the --

THE COURT: The defendant is the Attorney General of the United States. The plaintiff is F-i-o-c-c-o-n-i.

The Court there said, I'll read the whole paragraph: If the matter were res novo, raised for the first time anew, something could be said for the proposition that appellants' claim is not a matter proper for judicial cognizance. The argument would be that since appellants were lawfully arrested in the Southern District of New York for an offense allegedly committed there, that should end the matter so far as the courts are concerned; consideration of the effect on this country's international relations of holding appellants for trial on a charge differing from the one presented to the Italian Government should be a matter solely for the executive departments, which can better weigh the relative importance of

the conviction of two alleged large scale narcotics violators against possible difficulties in securing future extradition from Italy and other foreign affairs considerations. The position would be that extradition is a matter of treaty or of comity between governments; that a breach of faith by the receiving government entails international consequences, but that confers no rights on persons who have been so extradited unless this has been spelled out.

And although Judge Friendly says, well, that may be true, there are other bases upon which the case will be disposed of and the merits of the case would be enough to decide this case. And he goes on to cite favorably a case which I think you've cited favorably, United States versus Paroutian.

Have you read that, Mr. Jacobson?

MR. JACOBSON: The 1962 case, Your Honor?

THE COURT: United States versus Paroutian.

MR. JACOBSON: Yes, I have.

THE COURT: No. Paroutian, this goes back to before 1972.

MR. JACOBSON: '62. Yes, Your Honor.

THE COURT: Well, Paroutian answers the specific objection that you have that the extradition request does not specifically describe the offense for which he is being tried here. And the Circuit Court in Paroutian couldn't have been

clearer. In the absence of any affirmative protest from Italy, we do not believe that that government would regard the prosecution of the defendants for subsequent offenses of the same character as the crime for which they were extradited as a breach of faith by the United States.

So what the Court is saying is, it may not have been specifically identified or described in the request for extradition, but if it's a crime which is essentially the same crime for which the defendant was extradited and if we had asked the extraditing state, the sending state to extradite for this crime, they certainly would have done it.

So it's not a question of labels. And that goes way back. The theory behind it goes way back to the Rauscher case, which has been cited I don't know how many times in these extradition cases.

The idea behind it is that if the case for which the defendant is being prosecuted in the receiving state was a case which was not the same, it doesn't come out of the same cause of the case for which we requested him to be sent here, then it may be that the extraditing state would not have complied with our request.

To give you a more graphic example than the facts in Rauscher, but it's essentially the same idea, if you make an application or request of a foreign government to extradite the defendant for what you say is murder, you say he committed

murder and we are extraditing him for the crime of murder, which is an extraditable offense in the foreign state. He comes here and we prosecute him not for murder, but for assault in the first degree, the notion being that that would not have been an offense for which the extraditing state would have extradited. They would not have deprived him of the asylum of that state for a crime which, in their view, may not have been that serious and not extraditable.

So the fact that in this case Mr. Barinas is being, in effect, charged here for a drug offense, a violation of supervised release being a federal offense, a drug offense, may have been committed after Mr. Barinas was convicted here. But what is not generally known by U.S. Attorneys and defense attorneys and probably by judges as well, I came upon it quite accidentally, the violation of supervised release is in effect a violation of the crime for which supervised release was imposed.

So the supervised release violation is a violation which was imposed, a condition which was imposed when Mr. Barinas was convicted of a drug offense, when was it, 1994, what year?

MR. KEILTY: I believe it was '94, Your Honor.

THE COURT: It was a long time ago, wasn't it?

MR. KEILTY: Yes, Your Honor.

THE COURT: And the case that says that is a United

States Supreme Court case too which escapes me, but it's United States versus Brown. And United States versus Brown is a Second Circuit case which was written by Judge Newman. And if you go into Westlaw and say -- in Newman, it was not supervised release, it was a violation of probation, which is essentially the same thing.

Go into Westlaw, you know how to do that, say Judge Newman, violation of probation, relation back or whatever, and you'll get United States versus Brown.

So, for all of that, if you read Paroutian carefully and you go back even beyond Paroutian, you go back to a case which is cited in more recent cases as well, it's Collins versus O'Neil back in 1909, it's 29 Supreme Court 373, you'll get the same idea.

For all those reasons, without having to burden myself by writing a long opinion that spells all this out, I think you got the idea. Your motion to dismiss the violation of supervised release is denied; and if we're ready to proceed with the violation of supervised release, we can do it now.

Ready?

MR. JACOBSON: I would ask for an adjournment, Your Honor.

THE COURT: Why?

MR. JACOBSON: I do think that these charges are outside what was spelled out in the extradition request.

THE COURT: Well, Mr. Jacobson, you can appeal the determination.

MR. JACOBSON: What I'm asking for is time to discuss this with the Dominican Republic, because if we don't have standing to object, they do under the treaty and under the cases that Your Honor has cited.

THE COURT: Mr. Jacobson, this is a matter for the executive to deal with. Why don't you ask the Attorney General of the United States to ask the Dominican Republic whether we, the United States, are acting in bad faith by prosecuting Mr. Barinas and whether they would like to object to it at this point.

MR. JACOBSON: That's what I'm asking to --

THE COURT: I'm going to deny that and you can appeal my determination that the violation of supervised release is properly here. You can appeal it for two reasons.

You can appeal it because you believe, as you've indicated, first, that Mr. Barinas has standing, and if he has standing the treaty has not been observed; and, therefore, my determination that he has no standing and if he did have standing on the merits, the treaty hasn't been violated, based upon the cases which I've cited.

And you can also appeal the determination I make for the reason that I have denied you an opportunity to communicate with the Dominican Republic and ask the Dominican

Republic if they want to complain to the United States of America for violating a treaty which the United States and the Dominican Republic have entered into. So you can have three grounds for appeal.

Now, if you're not ready to go forward for reasons other than communicating with the Dominican Republic and asking the Dominican Republic whether they want to complain to the United States, because it's the United States which is, in effect, breaching the treaty, we, the United States District Court is, in effect, disregarding the treaty which the United States, the government, has entered into with the Dominican Republic.

So if you're not prepared to go forward with the violation of supervised release for a reason which you think has merit other than those which I've disposed of with respect to standing and merits or with respect to whether you will ask the Dominican Republic whether they want to complain to the United States that a United States District Court is not paying attention to the treaties which the government has entered into, you can raise that argument.

Now, having said all that, are you ready to go forward with the violation of supervised release or do you want a day or two or whatever to do that?

MR. JACOBSON: My understanding, Your Honor, is that to preserve the issues for appeal, we can't plead to the

charges and that we would have to go forward with a hearing even if it was a hearing on stipulated facts.

THE COURT: Do you want to go forward with a hearing to determine whether Mr. Barinas violated a federal law, having been convicted, I think -- has he been convicted in Massachusetts? He pleaded guilty.

MR. KEILTY: He was convicted in New Jersey, Your Honor.

THE COURT: You want a hearing on that?

MR. JACOBSON: We don't want a hearing on that, Your Honor, but I believe if we plead to the charges we don't preserve the right to appeal. We waive an issue on appeal if we plead to the charges.

THE COURT: So what do you want to do? You want to have a hearing? I don't understand what you want. You want a hearing with respect to the violation, you want to try to prove that he didn't violate a federal statute?

MR. JACOBSON: We do not wish to prove that, Your Honor, but we do wish to preserve our appeal; and if we plead to the charges we can't appeal the decision today. So I believe that in order to appeal, we have to go forward with a hearing, even if it's a hearing on stipulated facts. That's my understanding. I could be wrong and the government could correct me on that.

THE COURT: Well, I think the government would be

willing to go forward and stipulate to the fact that Mr. Barinas has violated federal law. He has been convicted of importing drugs. I think it was importing.

MR. KEILTY: Conspiracy to import I believe, Your Honor.

THE COURT: In Massachusetts.

MR. KEILTY: In New Jersey, Your Honor.

THE COURT: The District Court in Massachusetts. So the government would I think stipulate to that.

MR. KEILTY: Your Honor, we would stipulate to that conviction in New Jersey.

THE COURT: All right.

MR. JACOBSON: If I could have a few moments just to discuss --

THE COURT: Do you want to have until tomorrow? Would that be better?

MR. JACOBSON: One moment, Your Honor, if I could discuss the issue with Mr. Barinas.

THE COURT: By all means.

MR. JACOBSON: Thank you.

(Counsel confers with defendant.)

MR. JACOBSON: Your Honor, if we could have the brief adjournment that you suggested, I think that would be our preference.

THE COURT: Will tomorrow be okay?

COURTROOM DEPUTY: 3 p.m. tomorrow.
MR. JACOBSON: That works for Mr. Barinas.
THE COURT: Okay.
MR. KEILTY: That's fine.
THE COURT: Very good.
MR. JACOBSON: Would the Court accept doing a hearing without witnesses, but on stipulated facts between the parties?
THE COURT: By all means.
MR. JACOBSON: Thank you.
THE COURT: What do we need witnesses for?
MR. JACOBSON: I don't think we do.
THE COURT: What are they going to testify? Do you want a written stipulation, would you like that? What do you want? Tell me what you want, we'll try and accommodate you.
MR. JACOBSON: Thank you. I think we'll be prepared tomorrow.
THE COURT: I'll see you tomorrow. What time?
COURTROOM DEPUTY: 3 p.m.
MR. KEILTY: Thank you, Your Honor.
THE COURT: Thank you very much.
Just so that the record is clear, I have made a determination with respect to the issue of standing for all the reasons I indicated on the record. It was essentially the defendant's objection and reason for proposing the violation

of the treaty.

MR. KEILTY: Thank you, Your Honor.

THE COURT: You're very welcome. I'll see you tomorrow at 3:00.

MR. KEILTY: Yes, Your Honor.

(Whereupon, the proceedings were adjourned.)