# Federal Defenders
## OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

---

David E. Patton
*Executive Director and
Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

May 31, 2017

**By ECF**

The Honorable Brian M. Cogan
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

<u>Re: United States v. Joaquin Guzman Loera, No. 09-466 (S-4) (BMC)</u>

Dear Judge Cogan:

  The defense respectfully submits this letter in reply to the government's letter of May 26, 2017 (Dkt. No. 84)("Gov't Ltr."), and in further support of Mr. Guzman's motion to compel the government to produce documents relating to his extradition to this district from Mexico ("Requested Documents").

  The government opposes producing any of the Requested Documents, arguing that (1) the Requested Documents are immaterial and therefore not discoverable under Fed. R. Crim. P. 16; (2) Section 3500 of Title 18 precludes the Court from ordering production of certain documents; and (3) Fed. R. Crim. P. 6 and 16 prohibit disclosure of any grand jury minutes.

  For the reasons set forth below, the Court should reject the government's position and grant the motion to compel. In the alternative, the Court should review the Requested Documents *in camera* and order the government to turn over to the defense documents that are material to Mr. Guzman's anticipated motion to dismiss and that, in fairness, ought to be produced.

## ARGUMENT

**I. The Requested Documents are material to the defense and should be produced**

  The government suggests that Mr. Guzman's motion to compel is just a "broad and blind fishing expedition" and that he has failed to make "any specific claim of materiality." (Gov't Ltr. at 2.) Not so. Mr. Guzman has articulated a particularized and valid theory of materiality. Mr. Guzman alleges that his extradition to this district for prosecution violates the terms of the extradition treaty between the United States and Mexico. In particular, the extradition violates the doctrine or rule of specialty ("ROS") codified in the treaty, which clearly states that a person extradited under the treaty

"shall not be detained, tried or punished . . . for an offense other than for which extradition was granted."[1] Extradition Treaty, May 4, 1978, [1979] U.S.- Mexico, 31 U.S.T. 5059.

The government concedes that Mexico granted extradition for offenses pending in the Western District of Texas and the Southern District of California and that those offense are distinct from the charges contained in the instant indictment pending in the Eastern District of New York. Mr. Guzman seeks disclosure of the extradition packages and related material in order to fully brief his motion to dismiss the indictment based on this and possibly other violations of the extradition treaty.

As an initial matter, the government claims Mr. Guzman has no standing to attack his extradition and thus the requested documents cannot be considered material to his defense. The government previously agreed to a motion schedule for the defendant's motion to dismiss the indictment. Therefore, the defendant will address the standing issue here only insofar as it relates to the materiality of the requested disclosure. He will address the issue more fully in his motion to dismiss.

### A. The defendant's standing to challenge his extradition

It is an open question in the Second Circuit whether a defendant has standing to bring a claim regarding the government's violation of the ROS. *See United States v. Barinas*, No. 16-2218-CR (2d Cir. filed June 24, 2016); (Dkt. No. 69 at 2, n.2). The federal courts are divided over whether, and under what circumstances, defendants extradited to this country have standing to challenge the legality of their extradition.

The Eighth, Ninth, Tenth, and Eleventh Circuits have held that defendants have standing to challenge the legality of their extraditions generally. *See United States v. Thirion*, 813 F.2d 146, 151 n.5 (8th Cir. 1987) ("The government's argument that [defendant] lacked standing to complain of a violation of the [extradition] treaty is without merit."); *United States v. Najohn*, 785 F.2d 1420, 1422 (9th Cir. 1986) (per curiam) (holding that "the person extradited may raise whatever objections [under the doctrine of specialty] the rendering country might have"); *United States v. Levy*, 905 F.2d 326, 328 n.1 (10th Cir. 1990) (relying on *United States v. Rauscher*, 119 U.S. 407 (1886) for the proposition that defendant had standing to raise a specialty challenge to his extradition); *Gallo-Chamorro v. United States*, 233 F.3d 1298, 1306 (11th Cir. 2000) (holding that "a defendant has standing to assert a violation of an extradition treaty.") (*citing United States v. Puentes*, 50 F.3d 1567, 1572 (11th Cir. 1995)).

The Seventh Circuit, on the other hand, has ruled that "individuals have no standing to challenge violations of international treaties in the absence of a protest by the sovereigns involved." *Matta-Ballesteros v. Henman*, 896 F.2d 255, 259 (7th Cir. 1990)).

The Fifth and Sixth Circuits have expressed doubt as to whether defendants can challenge their extraditions in the context of the doctrine of specialty, but have not spoken definitively. *See United States v. LeBaron*, 156 F.3d 621, 627 (5th Cir. 1998) ("Whether [defendant] has standing to

---

[1] The extradition may also violate other aspects of the treaty.

raise the doctrine of specialty is an undecided issue in this circuit.") (citing *United States v. Kaufman*, 874 F.2d 242, 243 (5th Cir. 1989) (per curiam); *United States v. Garrido-Santana*, 360 F.3d 565, 579 n.10 (6th Cir. 2004) ("This circuit has not expressly decided whether an extradited individual has standing to seek the enforcement of [the rule of specialty]" but has "observ[ed] that a serious question existed as to whether the defendant had standing") (citing *Demjanjuk v. Petrovsky*, 776 F.2d 571, 583-84 (6th Cir. 1985), *vacated on other grounds*, 10 F.3d 338 (6th Cir. 1993).

The Third Circuit has held that only the parties to the treaty may raise a specialty challenge. *See United States ex rel. Saroop v. Garcia*, 109 F.3d 165, 168 (3d Cir. 1997) ("Had [petitioner] brought suit invoking the [extradition] treaty or the Rule of Specialty, she would lack standing."). However, it seemed to retreat from this position in a more recent, unpublished decision. *See United States v. Thomas*, 322 F. App'x 177, 180 (3d Cir. 2009) ("Although we previously stated, in dicta, that a defendant lacks standing to invoke a treaty or the rule of specialty . . . we believe . . . that a defendant . . . has standing to raise these arguments.") (citing *Saroop*, 109 F.3d at 168).

The First, Fourth, and District of Columbia Circuits have recognized the circuit split on this question without settling on a position. *See United States v. Saccoccia*, 58 F.3d 754, 767, n.6 (1st Cir. 1995) ("tak[ing] no view" of the standing issue but noting that "the side that favors individual standing has much to commend it"); *United States v. Day*, 700 F.3d 713, 721 (4th Cir. 2012) ("[T]he circuits are split on the question of whether an individual defendant has standing to raise a specialty violation, and the Fourth Circuit has yet to rule on the matter.") (citing *United States v. Davis*, 954 F.2d 182, 186 (4th Cir. 1992)); *United States v. Sensi*, 879 F.2d 888, 892 n.1 (D.C. Cir. 1989) (acknowledging "authority on this point is uncertain").

In support of its position that Mr. Guzman has no standing to challenge his extradition and in an attempt to avoid disclosure, the government relies heavily on *United States v. Garavito-Garcia* and *United States v. Suarez*. But those decisions are distinguishable from the case at bar, and thus do not resolve the discovery issues presented here.

In *Suarez*, which did not implicate a purported waiver of the ROS, the defendant challenged his extradition on the basis that he had been sentenced to a term of years exceeding his life expectancy despite the United States government's assurances to the Colombian government that "a sentence of life imprisonment will not be sought or imposed." *United States v. Suarez*, 791 F.3d 363, 365 (2d Cir. 2015). Thus, *Suarez* focused on standing to challenge a sentence in violation of the extradition agreement rather than standing to challenge prosecution for charges outside the scope of the extradition agreement, and the court's language must be understood in that context. *See id.* at 367 ("Suarez would only have prudential standing to raise the claim that his *sentence* violated the terms of his extradition if the Government of Colombia first makes an official protest.") (emphasis added). This distinction is salient because violations of specialty, unlike violations of sentencing terms, are understood by courts to constitute defects in their personal jurisdiction over a defendant. *United States v. Levy*, 947 F.2d 1032, 1034 (2d Cir. 1991) ("[Specialty] is a jurisdictional limitation, restricting a court's power to enter judgment against the defendant.") (citing *United States v. Sorren*, 605 F.2d 1211, 1214 (1st Cir. 1979)). Moreover, the extradition in *Suarez* was conducted pursuant to "assurances [made] in a Diplomatic Note," rather than a formal treaty with the force of law. *Suarez*, 791 F.3d at 365.

*Garavito-Garcia*, like *Suarez*, did not involve a ROS waiver. In fact, it was not a specialty case at all—the defendant there argued that the extradition was unlawful because it was not effected "within 30 days of [his] being made available to the United States" as required by the formal extradition treaty between the United States and Colombia. *United States v. Garavito-Garcia*, 827 F.3d 242, 246 (2d Cir. 2016). *Garavito-Garcia*, therefore, concerns an alleged treaty violation by the *extraditing* country, and is wholly inapposite here.

Here, the government contends that, even if Mr. Guzman's extradition to this district violated the rule of specialty, Mexico validly waived any such violation, and that the defendant therefore has no enforceable right, and no standing, to raise a violation-of-specialty claim.

The central problem with the government's position is that it assumes and requires both this Court and the defense to accept that the ROS Waiver is valid and immune from challenge on any basis whatever. That is not the law. If the waiver was induced by material misrepresentations or omissions made by the United States government, or assurances that have not been honored, or has other substantial defects, the Waiver may be unenforceable or invalid. But the defense cannot assess those issues, much less present them fully to the Court, if it cannot see any of the underlying documents that induced the Waiver.

Moreover, the ROS Waiver expressly relies on, and thus effectively incorporates by reference, many of the Requested Documents the government refuses to produce. Allowing the government to produce only the ROS Waiver (and only in redacted form), but not the underlying documents upon which the Waiver relies, is fundamentally unfair.

### B. The Requested Documents are material

The government next argues that, even if Mr. Guzman has standing to challenge his extradition including the waiver of the rule of specialty, the requested documents are not material. However, neither of the cases the government relies on to dispute the materiality of the Requested Documents, *United States v. Rigas* and *United States v. Scully*, are availing here.

In *Rigas*, the defendants requested discovery of "memoranda, presentations, reports, and issues catalogues" produced by two law firms and an accounting firm engaged to investigate the alleged wrongdoing of the defendants. *United States v. Rigas*, 258 F. Supp. 2d 299, 306 (S.D.N.Y. 2003). Likewise, the case referenced as "persuasive" by the *Rigas* court in reaching its conclusion involved government production of "all documents gathered in the investigation" except for "witness statements obtained by [allegedly defrauded firm's] investigators; and . . . the work product of [those] investigators." *Id.* At 307 (quoting *United States v. Reddy*, 190 F.Supp.2d 558, 572 (S.D.N.Y.2002)). In contrast, Mr. Guzman is not seeking internal or confidential government documents or analytical conclusions generated by the prosecution. His request pertains only to the extradition requests presented to the Mexican government and communications between the governments of United States and Mexico concerning his extradition, which by definition are not "internal."

*Scully* supports rather than undermines Mr. Guzman's discovery request. The government neglected to mention that the *Scully* court in fact granted discovery of certain recordings, finding them to be material on the basis that they "*may* show that [defendants] operated overtly" and not misleadingly. *United States v. Scully*, 108 F. Supp. 3d 59, 124 (E.D.N.Y. 2015) (emphasis added). In

doing so, the court found "the Government's conclusory assertion that these conversations are not proper Rule 16 discovery to be inadequate." *Id.*; *see also United States v. Budziak*, 697 F.3d 1105, 1112-13 (9th Cir. 2012) ("In cases where the defendant has demonstrated materiality, the district court should not merely defer to government assertions that discovery would be fruitless. . . . [D]efendants should not have to rely solely on the government's word that further discovery is unnecessary.")

*Scully* is in accord with precedent in this Court and others that the "materiality standard [of Rule 16(a)(1)(E) ] normally is not a heavy burden." *United States v. Stein*, 488 F. Supp. 2d 350, 356-357 (S.D.N.Y. 2007) (*citing* 2 Charles Alan Wright et al., *Federal Practice and Procedure Criminal* § 254 (4th ed. 2013) ("Too much should not be required in showing materiality.")); *see also United States v. Holihan*, 236 F. Supp. 2d 255, 262 (W.D.N.Y. 2002) (finding that "any information" that "would be favorable to Defendant's defense theory . . . . is discoverable as material to the defense"); *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013) ("Materiality is a low threshold; it is satisfied so long as the information [requested] would have helped [defendant] prepare a defense. . . . even if it simply causes a defendant to completely abandon a planned defense and take an entirely different path.") (citations and quotation marks omitted).

For instance, courts in this Circuit have found discovery documents to be material as long as they "conceivably may provide a different version of events from that presented at trial by the Government," *United States v. Urena*, 989 F. Supp. 2d 253, 261 (S.D.N.Y. 2013), or "may [allow defendant to] be able to assert a [potential] defense." *United States v. Giffen*, 379 F. Supp. 2d 337, 342 (S.D.N.Y. 2004). In *Giffen*, the district court found evidence material and ordered disclosure prior to the defendant interposing a public authority defense. The court found that disclosure was necessary in order to allow the defendant to determine whether the defense was available to him. *See Giffen*, 379 F. Supp. 2d at 342. The court held, "[a]s the public authority defense would immunize Giffen, documents pertaining to such a defense are material." *Giffen*, 379 F. Supp. 2d at 342 *citing United States v. Stevens*, 985 F.2d 1175 at 1180 (2d Cir. 2004). The same rationale applies to the requested disclosure in this case because, if Mr. Guzman were to win his motion, the charges would be dismissed.

A court in this District has also granted discovery under Rule 16 where the defendant did "not clarify precisely how having access to the [requested materials] would enhance his motion [to suppress]" on the presumption that the materials would be "central" to the motion. *United States v. Ashburn*, 76 F. Supp. 3d 401, 450 (E.D.N.Y. 2014). Other courts have found materiality where the evidence sought had "any tendency" to show that the defendant may not have been guilty, even though at the time of the request the defendant could not demonstrate the existence of the evidence. *See United States v. Stever*, 603 F.3d 747, 753 (9th Cir. 2010). Such a finding comports with the recognition that, prior to the turning over of the discovery materials sought, there is often an inherent limit to how specific a defendant's discovery request could be. *See United States v. Doe*, 705 F.3d 1134, 1150-51 (9th Cir. 2013) (finding defendant's request for "[a]ny and all records or reports which document any and all telephone numbers, license plate numbers, or individuals, provided or identified by [defendant] to FBI [agents], as being associated, involved or related to criminal activity" to be "not overbroad at all, but rather well tailored" because it "explain[ed] the specific information [defendant] was requesting and the types of documents that would likely contain the information he

sought" and "[u]nless [defendant] had knowledge of specific FBI documents he could point to . . . [his] requests could not have been any more pointed.")

### C     The government's practice in other cases undermines its refusal to provide disclosure here

The government acknowledges that it has disclosed extradition documents in other cases, even without a court order, but argues that this practice does not make disclosure here mandatory. That may be. But the practice shows that the government is treating Mr. Guzman differently than it treats other defendants, that it is fully capable of obtaining and producing extradition documents when it wishes, and that it recognizes in other cases that extradition documents are important. The government's practice in other cases thus counsels in favor of requiring disclosure here.

### D.     The government's other arguments to avoid disclosure lack merit

The government further claims that the Requested Documents are "attorney work product" under Rule 16 and, in any event, are not within the government's control. Neither argument holds water.

First, the work product doctrine is subject to waiver, as the government does not dispute. By sharing the Requested Documents with Mexican officials, the government waived any work-product privilege that might otherwise exist. The government suggests the work-product doctrine should be construed broadly to protect government secrecy. On the contrary, the doctrine should be construed narrowly to ensure that the defendant's constitutional rights are protected.

Second, the government claims that only documents within the control of the "prosecution team" itself need be disclosed. It cites nothing to support this remarkable proposition. If it were accepted, the government could severely limit disclosure in any case simply by making the "prosecution team" very small and cloistered. Clearly, the government is broader than just the Assistant United States Attorneys working on this case. It includes the other United States officials and agencies who have participated in the process leading to Mr. Guzman's extradition. The Court should therefore order disclosure of any Requested Documents which are under the control of the government, not just the prosecutors.

When considering the government's contention that the Requested Documents are not under the control of the government, it is instructive to look to the prosecution of Alfredo Beltran Leyva in the District Court for the District of Columbia. In that matter, Mr. Beltran Leyva successfully asserted his rights under the ROS and the government was not allowed to pursue the charges in the indictment related to the alleged distribution of heroin and marijuana. *See United States v. Beltran Leyva*, No. 12-CR-184 (RJL), Dkt. No. 198 at 6-7 (D.D.C. Jan. 21, 2016). In response to Mr. Beltran Leyva's motion under the ROS, the government provided a Declaration from an Attorney-Adviser with the U.S. Department of State's Office of Law Enforcement and Intelligence. *Id*. Dkt. No. 184 ex. 2. In the Declaration, the Attorney-Adviser explained that a diplomatic note received from the Mexican government did not place any time limits on the conduct which the government was allowed to prosecute. The Attorney-Adviser went on to explain that the State Department had sent a diplomatic note to the Mexican government requesting confirmation that there were no time limits on the conduct that could be prosecuted. Clearly, the prosecutors in the

*Beltran Leyva* case were able to obtain diplomatic notes they believed were helpful to their position. Those prosecutors also believed that the diplomatic notes were material to the court's decision about the applicability of the ROS. Notably, the prosecution team in the instant case includes many of the same prosecutors who handled the *Beltran-Leyva* matter.

Further, it should be noted that, "a prosecutor is not "allowed to avoid disclosure of evidence by the simple expedient of leaving relevant evidence to repose in the hands of another agency while utilizing his access to it in preparing his case for trial." *See Giffen*, 379 F. Supp. 2d at 342–43 *citing United States v. Trevino,* 556 F.2d 1265 at 1272 (5th Cir. 1977); *United States v. Bryan,* 868 F.2d 1032, 1035–36 (9th Cir.1989).

## II. Section 3500 of Title 18 is not a license to withhold documents material to a motion to dismiss based on an illegal extradition

The government cites to 18 USC §3500 as if it provides an independent basis and additional support for its refusal to disclose the requested documents. However, as the cases cited by the government make clear, §3500 does not serve as shield to bar the disclosure of documents the Court finds material to the defense. As the Second Circuit noted, in *In re United States of America*, "[i]t is, of course, a fundamental axiom of American law, rooted in our history as a people and requiring no citations to authority, that the requirements of the Constitution prevail over a statute in the event of a conflict." *In re United States of America,* 834 F.2d 283 at 286–87 (2d Cir. 1987.) *See also United States v. Coppa*, 267 F.3d 132, 145 (2d Cri. 2001)(holding disclosure not required because the Court, in requiring immediate disclosure of all impeachment evidence, applied the wrong standard regarding the both the "scope and timing" of required disclosures, but making clear that material evidence must be turned over "in time for its effective use."); *United States v. Percevault*, 490 F. 2d 126 (2d Cir. 1974)(Government not required to turn over all statements of co-conspirators, discovery denied where no claim of materiality to the defense.) Obviously, in the instant case, for the disclosure to be timely, the Requested Documents must be provided before Mr. Guzman makes his motion to dismiss the indictment because of a violation of the ROS or other defect in the extradition.

Further, the courts in both *Coppa* and *Percevault* specifically noted that, had the district courts granted disclosure as a matter of discretion, rather than as a matter of law, the outcome might have been difference. In *Coppa*, the most recent case cited by the government, the Second Circuit acknowledged that, had the government been seeking review of a discretionary discovery order, "it might be reluctant to grant the writ." *Coppa*, 267 F.3d at 145. The Court of Appeals further noted that it was not deciding the "the scope of a trial judge's discretion to order pretrial disclosures as a matter of sound case management." *Id.* at 145. In *Percevault*, the Second Circuit advised that it generally looks to comply with a district court's discretionary disclosure orders and that its opinion "should not be construed to the contrary." *United States v. Percevault*, 490 F.2d 126, 132 (2d Cir. 1974). The Circuit reversed the district court's decision not merely because the government objected but because the district court's decision "was grounded on a statutory and rule interpretation [it found] untenable." *Id.* at 132.

Mr. Guzman is not seeking disclosure of impeachment evidence in order to attack the credibility of witnesses at trial. The defendant is seeking disclosure of the documents underpinning his extradition to this District. In determining if the documents are material, the question the Court must answer is: are the documents material to the defendant's "specialty defense" and if so what is the proper timing for disclosure in order to provide for their "effective use." The Court has already

ruled that the ROS waiver is "essential to the defendant's specialty defense." (*See* Court's Order of February 11.). For the reasons stated above, we maintain that the Requested Documents are also material to the defendant's extradition challenge and that §3500 does not bar disclosure.  *See* § I.A, *supra*.

### III. Disclosure under the protective order would address the government's alleged "security concerns"

Finally, the government asserts that security concerns justify its continued refusal to disclose the Requested Documents. In support of this argument, the government once again relies on its four previous *ex parte* fillings. The use of *ex parte* submission in this context is especially troubling because, were Mr. Guzman to prevail on his motion, the instant indictment would be dismissed. For the reasons set forth in defendant's Motion for an Order to Show Cause dated May 29 (Dkt. No. 86), Mr. Guzman renews and continues his objection to the use of *ex parte* submission to curtail his rights to due process and the effective assistance of counsel. As the Court has already reviewed the *ex parte* submissions, it cannot realistically be expected to block their content from its mind when considering the instant motion. Should the Court be inclined to deny the defendant's motion to compel, we request that Court order the disclosure of the government's *ex parte* submissions, or, in the alternative provide summaries of those documents to the defendant and permit the defendant to supplement this brief as necessary to controvert the allegations contained in the *ex parte* filings.

The government's "safety concerns regarding potential witnesses in this case" are undermined by its acknowledgement that some of the Requested Documents were provided to the defendant months ago in Mexico. (Gov't Ltr. at 5, fn. 4.)  That Mr. Guzman and his Mexican attorneys had the extradition requests during the year he was held in jail awaiting extradition and there was apparently no attempt to influence witnesses or obstruct justice is powerful evidence that the government's professed security concerns about turning over the Requested Documents are unwarranted. Further, that some of the Requested Documents were provided to Mr. Guzman's Mexican attorneys is no reason that they should not be disclosed to the defense in this case. Both the Court and the defendant must rely on the authenticity of the Requested Documents in relation to the anticipated motion to dismiss. Disclosure by the government provides the necessary assurance of authenticity.

The defendant maintains that any potential security concerns are already addressed by the combined effect of the Protective Order and the SAMs. These limitations severely restrict defense counsels' ability to disseminate any information learned through the disclosure of protected material as well as Mr. Guzman's ability to communicate anything he learns through the disclosure of protected material to the outside world.  The Court may also put additional measure in place if it determines that the combined effect of the Protective Order and the SAMs is insufficient to guarantee the security of witnesses or the integrity of an ongoing investigation. As suggested by the defendant in his Motion for an Order to Show Cause, the Court could order the government to disclose the documents to defense counsel with an assurance that counsel will not provide the names of any witnesses disclosed in the documents to the defendant. (*See* Dkt. No. 86 at fn. 2.) However, even legitimate security concerns cannot justify the governments blanket refusal to disclose any of the requested material.

Finally, as the defendant has demonstrated that the requested documents are material and necessary to assert his specialty defense, the government's purported security reasons cannot be used thwart Mr. Guzman's ability to challenge the Court's personal jurisdiction.

## CONCLUSION

For these reasons and those stated in our prior submissions, this Court should compel the government to produce the Requested Documents to the defense. Alternatively, the Court should review the Requested Documents *in camera* to ensure that any material documents are turned over to the defense.

Respectfully submitted,

/s/

Michelle Gelernt, Esq.
Michael K. Schneider, Esq.
Edward Zas, Esq.

cc:     Clerk of the Court [by ECF]
       AUSA Patricia Notopoulos, Esq.
       AUSA Andrea Goldbarg, Esq.
       AUSA Michael Robotti, Esq.
       AUSA Hiral Mehta, Esq.
       Mr. Joaquin Guzman