UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------X

UNITED STATES OF AMERICA, : 09-CR-466 (BMC)(RLM)

v. : May 10, 2017

JOAQUIN ARCHIVALDO GUZMAN LOERA, : Brooklyn, New York

Defendant.

-----------------------------X

TRANSCRIPT OF CRIMINAL CAUSE FOR TELEPHONE CONFERENCE
BEFORE THE HONORABLE ROANNE L. MANN
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government: ROBERT CAPERS, ESQ.
UNITED STATES ATTORNEY
BY: HIRAL MEHTA, ESQ.
ASSISTANT U.S. ATTORNEY
271 Cadman Plaza East
Brooklyn, New York 11201

For the Defendant: MICHAEL SCHNEIDER, ESQ.
MICHELE GELERNT, ESQ.

Audio Operator:

Court Transcriber: ARIA SERVICES, INC.
c/o Elizabeth Barron
102 Sparrow Ridge Road
Carmel, NY 10512
(845) 260-1377

Proceedings recorded by electronic sound recording, transcript produced by transcription service

THE COURT: This is Judge Mann on the line. I'm conducting a telephone conference in United States of America v. Guzman Loera, 09-CR-466.

Do I have counsel for the government on the line?

MR. MEHTA: Yes, your Honor. This is Mr. Mehta. I'm here with Ms. Goldbarg, Mr. Robotti and Ms. Notopoulos. Good afternoon, your Honor.

THE COURT: Good afternoon. Ms. Goldbarg, Mr. Robotti and who else?

MR. MEHTA: Ms. Notopoulos.

THE COURT: Who do I have on for defendant Guzman?

MS. GELERNT: Good afternoon, your Honor. For Mr. Guzman, it's Federal Defenders by Michele Gelernt along with Michael Schneider.

THE COURT: I understand that the defendant's presence during this telephonic scheduling conference is waived. Is that correct, Ms. Gelernt?

MS. GELERNT: That is correct, your Honor.

THE COURT: As you know, Judge Cogan has issued an order referring defendant's request for contact visits with his attorneys to this magistrate judge, and he has indicated that the Court at its discretion may inspect the attorney visitor rooms in

the Special Housing Unit.

Before we determine whether or not a visit is necessary, I understand it's the government's position that it is not possible to allow attorney contact visits at the unit in the MCC where Mr. Guzman is housed, that allowing -- is that correct?

MR. MEHTA: That is correct, your Honor, for security reasons.

MS. GELERNT: Your Honor, I don't know -- this is Michele Gelernt. It's our position that that's incorrect, that there's a secure way that we can have counsel visits at the MCC. I think as your Honor is also well aware, there's also a segregated housing unit or a specialized housing unit at the MDC which allows for contact visits, but we think -- I know perhaps we had discussed doing a motion schedule in advance of a visit.

But we think rather than the Court sort of trying to get an impression about what we're asking for from our papers, we think it might be easier for your Honor to rule on this or render a decision if the visits were actually conducted first so that the Court could actually see what we're proposing in terms of where we think there's a suitable location for us to have a secure visit. And then if it needs to be

briefed or there needs to be testimony, either live or by affidavit from the prison, regarding why that proposal is not secure, why they couldn't make the area secure for us, then perhaps that would be the next step. But we think it might be easier for your Honor to make a decision if you were actually reading the appears having viewed the area we're discussing.

THE COURT: I presume that the attorneys on both sides are aware of the layout, so you certainly know what it looks like. Perhaps it makes sense to have you brief it so I have the arguments in mind when I go to visit the location.

MR. MEHTA: Yes, your Honor. That's the government's position, your Honor, that we think it would be best to brief it first. We can frame the issue for your Honor. We also would like to have weigh-in from MCC counsel, which I think is important for your Honor to know the facts from them as well. I think it would be really helpful for the Court, given that both parties are familiar with the layout already, to have a briefing and papers to look at before any hearing or visitation is done by the Court.

THE COURT: Neither side -- I've reviewed the submissions to Judge Cogan as well as the relevant portions of the transcript. Neither side has cited

Judge Levy's opinion in the Bassiano case. In Bassiano, a similar argument was made with respect to Vincent Bassiano. The defense was seeking contact visits. The government was opposing it on security grounds. Judge Levy granted the motion. I'm not suggesting that that case is on all fours with this but the point is, he granted it and apparently, the defendant had attorney contact visits thereafter.

Mr. Mehta, can you tell me what accommodations were made for Mr. Bassiano?

MR. MEHTA: Your Honor, we'll have to review the case and we can also speak to the prosecutors who are in our office, who were on the case, and get some more information on that. That's why we think briefing the issue would be helpful to the Court.

THE COURT: I am aware of the fact that at some point, Mr. Bassiano was moved from the MCC, from the same unit that Mr. Guzman is in, to the MDC. But it's unclear from the record whether or not, before he was moved, he was provided with contact visits with his attorneys in the MCC. That's something that the Court would like to know. If the government's position is that it is not possible now for security reasons to allow contact visits, then the question arises which is set forth in Judge Cogan's order referring this to me,

whether it's possible either as the MCC is already configured or with reasonable modifications, to permit contact visits.

I really want those issues addressed even before I go to see the facility, if I find it's necessary to go see the facility, and I would like evidentiary submissions on that. Obviously, I'm looking in the first instance to the government to make the evidentiary submission, since they have the information about how Mr. Bassiano was treated and what if any modifications could be done. But certainly if the defense has some proposals, those should be submitted as well.

MS. GELERNT: That's fine, your Honor. I don't know if the Court would consider or if the Court would find it helpful allowing us -- signing an order -- I think the MCC would probably oppose this, but if there were some way to photograph exactly where we're saying we would like to have the meeting, or ask the MCC to provide those photographs. I think the reason we're at a disadvantage is, we're not -- other than our written words about the physical locale, we have no independent information about what modification they might be willing to make other than to say just what we observe at the jail and where we think we could all sit

together comfortably. But we're certainly happy to propose anything that we think is reasonable and then to the extent that we can also find it in other case law, propose modifications that have been made in the past.

THE COURT: It did occur to me that photographs would be useful, although I can already anticipate what the government is going to say in response.

MS. GELERNT: Sure.

THE COURT: Would the government oppose having photographs provided for attorneys' eyes only?

MR. MEHTA: Yes, your Honor, we would at least initially oppose it. We would like to at least confer with our counterparts at the Bureau of Prisons and MCC. But just as a general matter, we're off to the Court and we can make representations to the Court, and of course the Court is also able to, if necessary, come visit the facilities. At this point, without having conferred with BOP or the MCC counsel on this fairly sensitive issue, right now, we're going to say we wouldn't want to allow photographs.

MS. GELERNT: We understand, your Honor, and we can -- I'm sorry, I didn't mean to cut you off, Judge.

THE COURT: I was just going to say, I asked if the government would object to photographs for attorneys' eyes only. I didn't seek your position on that, whether that's something that you would agree to if you could not share the photographs witness your client for reasons --

MS. GELERNT: He sees it for himself so that would be fine with us.

MR. SCHNEIDER: It would be fine with us to have photographs for just the parties and the Court as well.

THE COURT: Not parties, not parties.

MR. SCHNEIDER: Not parties but counsel.

THE COURT: Yes.

MS. GELERNT: Counsel and the Court, sorry.

THE COURT: Why don't we do this? Mr. Mehta should certainly have an opportunity to speak with the MCC about that but you can do so with the assurance that any photographs would be for attorneys' eyes only. Ms. Gelernt and Mr. Schneider and their office would not be permitted to share that with their client or anyone else.

MS. GELERNT: Correct.

THE COURT: Mr. Mehta, you can speak with the appropriate individuals. Do you want to set up a

briefing schedule now or do you want to confer with the in-house counsel for the MCC and confer with defense counsel and then submit a joint proposed schedule?

MS. GELERNT: We can --

MR. MEHTA: That's fine, your Honor, we can -- I'm sorry, Michele, I didn't mean to cut you off. We can submit a joint proposed schedule.

MS. GELERNT: That's fine. I was just going to say the same thing.

THE COURT: All right.

MR. MEHTA: On the photographs, your Honor, I just want to note also that, from being at the facility ourselves, I think it would be helpful for the Court to see the facility in person because I don't know if photographs are really going to capture -- illuminate for the Court the concerns the government has.

THE COURT: You may be right that a visit in the first instance would be necessary, and let's assume that I do visit it and there are photographs, and then an objection is filed. Maybe Judge Cogan doesn't wish to make a visit himself. Then we might as well just cut out the middle man and have you make the motion directly to him. I'm looking ahead and it certainly would make sense that even if I see the facility, that

there be some physical representation in the record that would be available for Judge Cogan.

MR. MEHTA: Yes, your Honor, we completely understand your perspective. Let us confer with MCC and we'll get back to you on that in the papers.

THE COURT: All right. And confer obviously with Ms. Gelernt and Mr. Schneider as well. How much time do you need in order to do the necessary consultations and talk with one another and file that joint proposed schedule?

MR. MEHTA: Your Honor, we're happy to submit something by Friday.

THE COURT: Will that give you sufficient time?

MS. GELERNT: I think that should be fine, your Honor. The only I guess question about the briefing schedule is based it seems on the question you've been asking today, what might be appropriate is that the government files the initial brief saying what modifications can be made or what their position is, but I don't know what the Court was thinking.

MR. MEHTA: That's fine by the government. I think the Court did indicate that it would be the government in the first instance. We (ui) with Federal Defenders previously and we'll provide a concrete

schedule to the Court on Friday, but we would submit something in about two weeks and then two weeks for the defense reply and then a week for the government to respond, something to that effect, your Honor.

THE COURT: That's a useful framework to have in mind but if it turns out that after each respective group talks with whoever you might be consulting with to put in evidentiary submissions, if you want more time, I'll leave that up to you hash out initially. Just submit the schedule by the end of the week.

MS. GELERNT: Sure, your Honor.

MR. MEHTA: Thank you, your Honor. We appreciate it.

MS. GELERNT: Thank you very much.

THE COURT: And I do think it's appropriate, even though it is the defendant's motion, that given the scenario here, that the government is saying it's not feasible to do this and it's not feasible to make alternative arrangements, you should go first. You may want to, in your discussion about scheduling, if the defense has certain proposals -- it may well be -- I would ask the government to keep an open mind. If there can be minor modifications made that would accommodate everyone's concerns, keep an open mind.

Maybe you can work this out informally.

I would also say to the government that if this arose in Bassiano and it's now arising in this case, I would assume that a lot of the inmates who are in 10 South are probably also involved in very complex cases. This is going to be a recurring issue so the government may want to be proactive and take certain steps that will address these issues not only in this case but going forward.

MR. MEHTA: Yes, your Honor.

THE COURT: All right, thank you all very much.

MR. MEHTA: Thank you.

MS. GELERNT: Thank you, Judge.

* * * * * * * * *

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.



ELIZABETH BARRON May 23, 2017