```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
UNITD STATES OF AMERICA,                                    :
                                                            :
                                                            :
                  - against -                               :
                                                            :   **MEMORANDUM**
                                                            :   **DECISION AND ORDER**
Joaquin Archivaldo Guzman Loera,                            :
*also known as* "El Chapo," "El Rapido,"                    :
"Chapo Guzman," "Shorty," "El Senor,"                       :   09 Cr. 466 (BMC) (S-4)
"El Jefe," "Nana," "Apa," "Papa," "Inge"                    :
"El Viejo," *and* "Joaquin Guzman-Loera,"                   :
                                                            :
                                   Defendant.               :
                                                            :
----------------------------------------------------------- X
```

**COGAN, District Judge.**

Before the Court are three pending issues: (1) defendant's motion for an Order to Show Cause related to the Government's use of *ex parte* filings and seeking disclosure of the *ex parte* filings; (2) defendant's motion to compel discovery; and (3) the Government's request for clarification regarding the Court's May 4, 2017 and May 8, 2017 Orders relating to the use of previously-designated firewall counsel. The Court disposes of each issue as follows.

**I.      Motion for an Order to Show Cause related to the Government's *Ex Parte* Filings**

Defendant has moved for an Order to Show Cause, asking this Court to require the Government to (i) seek Court permission, on notice to defendant, before filing any *ex parte* submission in the future; (ii) provide defendant with all of the *ex parte* filings made thus far, or at a minimum, summaries of these filings; and (iii) provide defendant with, at a minimum, a summary or redacted version of future *ex parte* filings. For the following reasons, the Court denies the motion in all respects except as to disclosure of the Third *Ex Parte* Submission.

### A. Background

The Government has made four *ex parte* submissions since defendant's arraignment in January 2017. See ECF Nos. 31, 45, 66, 78. None of these *ex parte* filings were stand-alone filings; rather, all were supplemental submissions to public submissions or statements by the Government.

The **First *Ex Parte* Submission**, see ECF No. 31, supported the Government's request that the Court prohibit in-person visits or phone calls between the defendant and his wife and between defendant and his private attorneys from Mexico. The First *Ex Parte* Submission contained information obtained from cooperating witnesses and ongoing investigations, and it supplemented the arguments that the Government made during the February 3, 2017 status conference in this matter.

The **Second *Ex Parte* Submission**, see ECF No. 45, supported the Government's motion for a protective order pursuant to Federal Rule of Criminal Procedure 16(d)(1). The Second *Ex Parte* Submission supplemented the Government's publicly-docketed submissions in support of the protective order. See ECF Nos. 28, 44. The information contained in the Second *Ex Parte* Submission included, again, information from ongoing investigations and cooperating witnesses (including expected testimony), in addition to information related to sensitive law enforcement techniques. Moreover, in the public filings, the Government generally summarized the content of the Second *Ex Parte* Submission.

Sometime later, the Government relied on the First and Second *Ex Parte* Submissions in opposing defendant's motion to vacate or modify the Special Administrative Measures ("SAMs"). The Government's briefings regarding the SAMs were public, see ECF Nos. 52, 58,

and the First and Second *Ex Parte* Submissions provided supplements to the arguments that the Government raised publicly.

The **Third *Ex Parte* Submission**, see ECF No. 66, supported the Government's request for a Curcio hearing. The Government had publicly filed its request for a Curcio hearing, see ECF No. 65, and provided the Third *Ex Parte* Submission to give the Court detailed information relating to the potential conflicts. The *ex parte* filing gave the names of the four witnesses, which were previously provided to defense counsel only, locations of the witnesses' families, their relationships with defendant, and whether the witnesses assented to having their identities revealed to defendant (they did not).

The **Fourth *Ex Parte* Submission**, see ECF No. 78, supported the Government's request for clarification arising from the Court's May 4, 2017 and May 8, 2017 Orders. The Government's request, resolved *infra*, see Section III, was publicly filed, see ECF No. 77, and the Fourth *Ex Parte* Submission supplemented the public arguments with detailed examples of new facts learned in the course of the ongoing investigation. The Fourth *Ex Parte* Submission detailed information from a confidential source, cooperating witnesses, and other investigative sources that indicated that defendant had used intermediaries, including family members and attorneys, to facilitate his previous escape from prison and to threaten potential witnesses.

Thus, all four of the *ex parte* submissions were supplemental filings, containing information related to either cooperating witnesses, confidential sources, the ongoing investigation, or sensitive law enforcement techniques. All of the *ex parte* submissions presented additional facts for the Court's consideration in resolving the publicly-filed motion practice.

B.  **Legal Analysis**

Generally, *ex parte* communications[1] between the Government and the courts are disfavored because such communications deprive a defendant of notice relating to the precise content of the communications and an opportunity to respond.  See In re Taylor, 567 F.2d 1183, 1187-88 (2d Cir. 1977).  Moreover, some courts have posited that *ex parte* communications can "create both the appearance of impropriety and the possibility of actual misconduct."  United States v. Napue, 834 F.2d 1311, 1319 (7th Cir. 1987).

These observations, however, do not mean that *ex parte* communications are never appropriate.  In fact, courts across the country and in this Circuit have long recognized and accepted the use of *ex parte* communications from the Government in precisely the situations at issue here.  First, *ex parte* communications between courts and prosecutors "have been recognized as necessary where the safety of witnesses is concerned."  United States v. McTier, No. 05-CR-401, 2006 WL 2707439, at *1 (E.D.N.Y. Sept. 20, 2006) (citing Napue, 834 F.2d at 1318; United States v. Pringle, 751 F.2d 419, 426 (1st Cir. 1984)).  Cf. Roviaro v. United States, 353 U.S. 53, 59 (1957) ("What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law.").

Second, *ex parte* communications have been routinely permitted where "there are ongoing investigations into criminal conduct related to the discovery materials" and "public

---

[1] In virtually all of the cases discussing "*ex parte* communications" between the prosecution and the Court, this case included, the term "communications" refers to the one-way communications from the prosecution to the Court. There are no conversations occurring between the Court and the Government, and the Court has not issued any *ex parte* Orders to either the Government or the defense. As will be discussed in detail, the prosecution is authorized to provide the Court with sensitive information under various provisions of law, and the Court, in its discretion, may or may not consider that information. Therefore, all of the references in this Order to "*ex parte* communications" are references to this one-way provision of sensitive information.

disclosure of some of these materials plausibly could undermine these investigations." United States v. Smith, 985 F. Supp. 2d 506, 531 (S.D.N.Y. 2013). *Ex parte* communications in this context are particularly appropriate where disclosure could "(i) reveal the targets of the investigations and the suspected criminal conduct being investigated; (ii) disclose the type of evidence being collected, or that could be collected, against these individuals; and (iii) officially confirm who some of the cooperating witnesses in these investigations are." Id. at 532. Courts, therefore, must be cognizant as to whether "[u]nsealing [this] information would eviscerate the Government's ability to continue its covert investigation." United States v. Park, 619 F. Supp. 2d 89, 94 (S.D.N.Y. 2009).

These latter concerns also animate consideration of the third kind of *ex parte* communications, that is, information related to sensitive law enforcement techniques. This is because the disclosure of certain techniques (*i.e.*, that certain kinds of evidence have been or could be collected) would likely prompt investigation targets to change course in how they conduct themselves, thus "eviscerat[ing] the Government's ability to continue its covert investigation." Id.

With all of these precedents in mind, it is abundantly clear that the Government's use of *ex parte* submissions to the Court has been appropriate in all respects. Each instance of an *ex parte* submission to the Court contained information relating to cooperating witnesses, confidential sources, ongoing investigations, or law enforcement techniques that courts, including this Court, have recognized as requiring protection to maintain the integrity of ongoing investigations and the judicial process.[2]

---

[2] As will be discussed later, even the Third *Ex Parte* Submission was technically proper as it contained information related to cooperating witnesses and confidential sources; however, as will be explained later, the Government

5

I also reject defendant's argument that this Court should analyze the factors enunciated by the Second Circuit in United States v. Abuhamra, 389 F.3d 309 (2d Cir. 2004), to determine whether the *ex parte* filings were appropriate. The distinctions between the facts in this case and those in Abuhamra – and the cases that follow Abuhamra – are significant, such that the test is inapplicable. First, Abuhamra did not consider the propriety of *ex parte* filings in the pre-trial discovery context, "an area that is peculiarly within the discretion of the district court." Napue, 834 F.2d at 1318 n.3. Rather, Abuhamra involved the submission of *ex parte* evidence in connection with post-trial detention proceedings, so that the Circuit's concern was "the most elemental of liberty interests – the interest in being free from physical detention by one's own government." Abuhamra, 389 F.3d at 318 (internal quotation marks omitted).

The closest factual comparison in this case is the Government's reliance on previously-filed *ex parte* information in opposing defendant's motion to vacate or modify the SAMs; however, even that context does not trigger the Abuhamra factors. Although the First and Second *Ex Parte* Submissions were used in support of the Government's opposition to defendant's motion to vacate the SAMs, they were not submitted initially for that purpose; thus, they remain properly confidential for separate reasons. More importantly, the imposition of SAMs on certain inmates implicates a far different constitutional concern than the issue in Abuhamra: The interest arising from the conditions of confinement of a pre-trial detainee is far less substantial than the pure liberty interest a convicted money-launderer has in seeking post-trial bail.

---

cannot reasonably object to disclosure of the Third *Ex Parte* Submission given its earlier disclosure of the names of the witnesses.

6

Even the Supreme Court has recognized that a defendant's interest in his conditions of confinement is "far less weighty" than his liberty interest in avoiding detention in the first instance. Hewitt v. Helms, 459 U.S. 460, 475 (1983). Additionally, there is no question that a detained defendant may be subject to extensive regulations and restrictions when the Government has demonstrated legitimate penological interests in such restrictions. See Overton v. Bazzetta, 539 U.S. 126, 132 (2003); United States v. Workman, 80 F.3d 688, 699 (2d Cir. 1996). In resolving the motion to vacate or modify the SAMs, the Court already determined that the Government has legitimate interests in restricting defendant's conditions of confinement, and the Court incorporates herein its prior findings.

Second, even Abuhamra recognizes its own narrow application. The Second Circuit acknowledged that "[t]he government's strong and legitimate interest in protecting confidential sources from premature identification is undeniable," because "[i]dentification not only compromises the government's ability to use such sources in other investigations, it may expose them to retaliation by those against whom they have cooperated." Abuhamra, 389 F.3d at 324. I recognize that this government interest is not "absolute," and that a criminal defendant's right to a fair trial "may require the government to identify a confidential source who 'has taken a material part' in the criminal activity at issue and 'been present with the accused at the occurrence of the alleged crime.'" Id. at 325 (quoting Roviaro, 353 U.S. at 55). But that is not the case here, at least not yet.

When considering the Government's interest against a defendant's right to a fair trial, the "defendant bears the burden of showing the need for disclosure of an informant's identity," and that without such disclosure, he is "deprived of his right to a fair trial." United States v. Fields, 113 F.3d 313, 324 (2d Cir. 1997). This burden is particularly hard to overcome "in proceedings

in which hearsay evidence may be received and in which the defendant's 'guilt or innocence' is not the issue to be resolved." Abuhamra, 389 F.3d at 325. In fact, the Second Circuit has held that the informant privilege "will generally be upheld" in proceedings "[o]utside the trial context." Id. Given these principles – that we are "outside the trial context" and that there is no determination of "guilt or innocence" at this stage – it is clear that even Abuhamra counsels in favor of permitting the Government to maintain the confidentiality of the witnesses identified in the *ex parte* filings.

Third, and possibly most compellingly, the Court has the discretion to regulate the course of discovery, and this includes when disclosure is or is not appropriate. Specifically, Rule 16 states:

> At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief. The court may permit a party to show good cause by a written statement that the court will inspect *ex parte*. If relief is granted, the court must preserve the entire text of the party's statement under seal.

Fed. R. Crim. P. 16(d)(1). Thus, the Court is well within its discretion to defer the production of certain discovery related to cooperating witnesses, confidential sources, the ongoing investigation, and law enforcement techniques until later down the line. Although defendant appears to suggest that Rule 16 only applies with respect to the Second *Ex Parte* Submission because it related to the actual "protective order" in this case, the language of Rule 16 is simply not that narrow. Rule 16 empowers the Court to broadly defer or even deny access to certain discovery, and here, the Court will exercise that authority in permitting the Government to defer disclosing the information contained in the First, Second, and Fourth *Ex Parte* Submissions until the parties are closer to trial.

As to the Third *Ex Parte* Submission, I reject the Government's argument that disclosure of this submission is unwarranted because it contains more than just the names of the witnesses.

When the Government raised the Curcio issue to the Court, it obligated itself to disclose the names of the potential conflicts to defense counsel. The Government provided that information to defense counsel, on the agreement that it would not be shared with defendant, and defense counsel conducted their own investigation as to the nature and scope of the individuals' representation by the Federal Defenders. Moreover, the Federal Defenders have maintained the confidentiality of those names.

Accordingly, the Government cannot reasonably object to the disclosure of the Third *Ex Parte* Submission because the identities have already been shared. It seems arbitrary to now protest the disclosure to defense counsel of little more than the names of the witnesses and information already available on the criminal dockets for those witnesses. Therefore, the Court will partially unseal the Third *Ex Parte* Submission and make it available to defendant's attorneys, on the express condition that the Third *Ex Parte* Submission may be viewed by defendant's attorneys only. Defendant's attorneys may not share the contents of the Third *Ex Parte* Submission with any other member of the defense team, unless and until the Government produces this information as part of its discovery in this matter.

Defendant's motion is denied as to disclosure of the First, Second, and Fourth *Ex Parte* Submissions, and his motion is further denied as to his requests that (i) the Government seek Court permission before filing any *ex parte* submission in the future and (ii) the Government provide defendant with, at a minimum, a summary or redacted version of future *ex parte* filings.[3]

---

[3] The Court does in fact scrutinize every filing that either party makes that bears either an *ex parte* designation or under seal designation or both. If the Court is unsatisfied with the reasons supporting sealing, it can (and has) re-designated those filings *sua sponte*. See, e.g., ECF No. 97 (disclosing an *ex parte* and under seal letter to all parties and ordering the parties to show cause why the public should not have access to the letter).

**II.     Motion to Compel Discovery**

Defendant intends to file a motion to dismiss the Indictment.  He intends to argue that his prosecution in this district violates the Rule of Specialty under the extradition treaty between the United States and Mexico.  To that end, defendant has moved to compel the production of certain extradition-related documents as bearing on his intended motion.  Specifically, he requests (i) an unredacted waiver of the Rule of Specialty from the Mexican Government[4] and "all of the underlying documentation, including, but not limited to" communications between the two governments and any assurances by the United States or requested by Mexico related to possible penalties and conditions of confinement; (ii) the extradition requests from the Southern District of California and the Western District of Texas; and (iii), as to the charges pending here, transcripts of the grand jury proceedings which led to the Indictment and all Superseding Indictments in this district.  Defendant has requested these materials several times, and now defendant moves to compel their production, which the Government opposes.

Defendant has no entitlement to the requested discovery, and his motion to compel is denied for the following reasons.

### A.  Materiality of the Requested Documents

Rule 16 of the Federal Rules of Criminal Procedure governs pre-trial discovery in criminal cases and provides, in pertinent part, that a defendant is entitled to obtain from the Government documents and objects that are "within the government's possession, custody, or control" if "(i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the

---

[4] Pursuant to the Court's February 11, 2017 Order, defendant received a Spanish-language, redacted copy of the waiver of the Rule of Specialty and a draft English translation.

10

defendant." Fed. R. Crim. P. 16(a)(1)(E). Evidence that the Government does not intend to use in its case-in-chief is still material "if it could be used to counter the government's case or to bolster a defense[, but] information not meeting either of those criteria is not to be deemed material within the meaning of the Rule." United States v. Stevens, 985 F.2d 1175, 1180 (2d Cir. 1993).

None of the production defendant seeks is material under Rule 16(a)(1)(E)(i), as there is no nexus between the documents sought and the arguments proffered to the Court as forming the basis of defendant's motion to dismiss the Indictment. First, defendant has stated that, among the arguments he will make to dismiss the Indictment, he intends to move on the basis of a Rule of Specialty violation. This is the only specific basis he has articulated, and given the fact that he already has the Rule of Specialty waiver,[5] he has failed to articulate any basis for the remaining documents, including the material precipitating Mexico's provision of the waiver. Accordingly, the requested extradition documents are unnecessary and immaterial.

Second, to the extent defendant seeks to challenge the Mexican Government's waiver (or as he puts it, "whether the government of Mexico could and did validly waive the Rule of Specialty over his objection"), the Court notes that international comity precludes federal courts from sitting in review of another country's grant of extradition, or by extension, that country's grant of a Rule of Specialty waiver. See United States v. Garavito-Garcia, 827 F.3d 242, 247 (2d Cir. 2016) (holding that federal courts cannot "second-guess another country's grant of extradition to the United States").[6]

---

[5] As noted above, the version defendant received is redacted, and the Court considers the propriety of the redactions *infra*, see Section II.C.

[6] In a related point, I need not reach, nor have I had the benefit of complete briefing on, the issue of defendant's purported standing to challenge his extradition. The Government's argument that defendant's lack of standing under Second Circuit precedent, see, e.g., United States v. Suarez, 791 F.3d 363, 367-68 (2d Cir. 2015), informs the

11

Additionally, as a practical matter, if defendant's argument is that the Mexican Government committed some error in extraditing defendant to this district and waiving the Rule of Specialty, then the extradition packages proffered by different U.S. Attorney's Offices are irrelevant. Thus, with regard to the extradition packages from the Northern District of California and the Western District of Texas, defendant's argument in support of materiality strains reason – the extradition packages submitted by two separate districts are not material to the particular charges pending in this district, and that is particularly the case given that defendant apparently already has these extradition packages via his private attorneys in Mexico.

As to defendant's argument that the extradition requests may contain other assurances by the United States, in addition to the assurance that the United States will not seek the death penalty, that argument fails as there were no other assurances. The Government conferred with the U.S. Department of Justice's Office of International Affairs ("OIA") and has confirmed that abstention from seeking the death penalty was the only assurance the United States gave. The Court accepts this proffer and sees no need or basis to order an official from OIA to swear an affidavit on this point.

Defendant cites several cases in support of his argument that courts have compelled the production of extradition-related documents, but all are inapposite. For example, defendant's reliance on United States v. Trabelsi, No. CR 06-89, 2015 WL 5175882, at *1 (D.D.C. Sept. 3, 2015), is misplaced. The defendant in that case had moved to compel production of discovery related to his stated claim that the Government violated the double jeopardy provision of the

---

analysis on materiality seems to put the cart before the horse. Moreover, that the Government believes defendant's motion will fail is not a reason to deny him the opportunity to make his motion.

extradition treaty between the United States and Belgium.[7] The holding in United States v. Karake, 281 F. Supp. 2d 302, 309 (D.D.C. 2003), is also inapposite; there, the district court ordered the production of extradition documents because "[q]uestionable extradition procedures of capital defendants may also give rise to mitigating circumstances to be considered during sentencing," and "[i]n light of the expansive approach taken towards mitigating factors . . . , the government is required to disclose any evidence that the United States government represented to any foreign government that defendants would not be subject to the death penalty upon extradition." No such issue exists here, as we know that the United States assured Mexico it would not seek the death penalty, and, in any event, if there is a sentencing in this case, it is a long way off.

At bottom, defendant has not identified any provision in the extradition treaty between the United States and Mexico that he alleges the United States violated; rather, his motion to compel production is more akin to a snipe hunt because there may be nothing there at all – he intends to review all of the materials and then determine what, if anything, supports a permissible argument. But Rule 16 does not permit such a strategy. See United States v. Scully, 108 F. Supp. 3d 59, 123 (E.D.N.Y. 2015) ("Rule 16 does not entitle a criminal defendant to a broad and blind fishing expedition among [items] possessed by the Government on the chance that something impeaching might turn up." (internal quotation marks omitted)).

---

[7] In fact, the case defendant cites is the opinion resolving the Government's motion for reconsideration; in the order resolving the original motion to compel, the district court held that "[b]ecause Trabelsi seeks to compel production of the requested correspondence not to rebut the government's case in chief but to support an independent argument to dismiss the indictment, compelling the discovery sought is not warranted under Rule 16(a)(1)(E)(i)." Memorandum Opinion and Order, United States v. Trabelsi, No. CR 06-89 (RDM) (D.D.C. May 8, 2015), ECF No. 109. If the Court were to adopt the Trabelsi court's holding, then defendant's motion to compel fails because his basis to compel production is to support an anticipated motion. And while the Trabelsi court compelled discovery in its May 8, 2015 Order, it did so because defendant had argued that the discovery was also Brady material. Defendant does not make any Brady argument here.

The Court, therefore, denies the motion to compel for failure to demonstrate materiality.

**B.    Possession, Custody, or Control of the Prosecution Team**

Defendant has no entitlement to discovery of communications between the United States and Mexico because it is not within the custody or control of the prosecution team pursuant to Rule 16(a)(1)(E). The requested communications between the U.S. and Mexican Governments, including the requested diplomatic notes and official letters dated January 19, 2017, are within the possession, custody, and control of the U.S. Department of State ("State") and OIA. Here, State and OIA are not part of the prosecution team and therefore not subject to Rule 16.

Contrary to defendant's argument, these agencies are not so closely aligned with the prosecution as to be considered part of the prosecution team. Certainly, in one way or another, there must be contact between the diplomatic arms of the U.S. Government seeking extradition of a defendant and the U.S. Attorney's Office that intends to prosecute the extradited defendant, but that contact does not intimately involve the agencies nor align the agencies for all intents and purposes. See United States v. Meregildo, 920 F. Supp. 2d 434, 441-42 (S.D.N.Y. 2013), aff'd sub nom. United States v. Pierce, 785 F.3d 832 (2d Cir. 2015) ("Interacting with the prosecution team, without more, does not make someone a team member."); see also id. at 442 (finding that circumstances that make another agency member part of the prosecution team include "whether the individual actively investigates the case, acts under the direction of the prosecutor, or aids the prosecution in crafting trial strategy"). In fact, State and OIA are aligned in neither intent nor purpose with the prosecution team. State and OIA are operating with different goals and considerations in mind than the prosecution team, and nothing supports imputing common possession across these agencies based on bare assertions of contact.

## C. Order of Proof

The Court will not compel production of the block-redacted portions of the Rule of Specialty waiver nor of the affidavits of law enforcement, prosecutors, cooperators, and witnesses made in support of the Government's application for a waiver. These materials are akin to the Government's order of proof – they outline the Government's case against defendant, including the testimonial, physical, and documentary evidence the Government has against defendant, in addition to information regarding law enforcement investigation tactics – and defendant has no entitlement to them.[8]

Although the U.S. Attorney for this district provided these materials to the Mexican Government as part of the Rule of Specialty materials, that does not necessarily take them outside the purview of Rule 16(a)(2). Rule 16 shields from disclosure "internal government documents made by an attorney for the government . . . in connection with investigating and prosecuting the case." Fed. R. Crim. P. 16(a)(2). It is undisputed that the extradition treaty between the United States and Mexico requires the United States to detail at length its case against a defendant, and providing that material to defendant amounts to an improper disclosure of the Government's order of proof. These materials remain internal communications regarding trial tactics, even when provided to the extraditing country. See United States v. Koskerides, 877 F.2d 1129, 1133-34 (2d Cir. 1989) (stating that Rule 16(a)(2) "clearly recognizes the prosecution's need for protecting communications concerning legitimate trial tactics" (internal quotation marks omitted)).

---

[8] Moreover, the Court has already held, pursuant to its authority under Rule 16(d)(1) and well-settled law, that the Government need not disclose information from ongoing investigations and cooperating witnesses, in addition to information related to sensitive law enforcement techniques. See supra, Section I.B.

15

### D. Grand Jury Material and Prior Statements

Finally, as to the grand jury material and the affidavits of cooperating witnesses, prosecutors, law enforcement, and other witnesses, while these materials are already not discoverable by virtue of Rule 16, see *supra* Sections I.B and II.A, they are also protected from disclosure under Rule 6(e)(3)(E)(ii) and 18 U.S.C. § 3500.

Rule 6 prohibits the disclosure of matters occurring before the grand jury, absent certain circumstances, including "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). Defendant bears the burden "to show a particularized need that outweighs the need for secrecy," In re Grand Jury Subpoena, 103 F.3d 234, 239 (2d Cir. 1996) (internal quotation marks omitted), and here, he has not done so. Further, it is fairly well-settled that "review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct." United States v. Torres, 901 F.2d 205, 233 (2d Cir. 1990). Defendant has not come close to making a particularized showing that his need outweighs the need for secrecy, and his vague proffer that he may have other arguments in support of his anticipated motion to dismiss the Indictment does not tilt the scale in his favor.

Regarding the affidavits, those contain § 3500 material that is not subject to disclosure at this time. Section 3500 "provides that no prior statement made by a government witness shall be the subject of discovery until that witness has testified on direct examination." United States v. Coppa, 267 F.3d 132, 145 (2d Cir. 2001). In fact, federal courts have no authority to order the production of this material unless the statements qualify as material Brady/Giglio statements. See United States v. Percevault, 490 F.2d 126, 129 (2d Cir. 1974) ("Since the only statements in issue here are clearly those of prospective witnesses and are accordingly within the scope of 18 U.S.C. § 3500(a), the district court did not have the statutory authority to compel disclosure, over

the government's objection, prior to trial."); Coppa, 267 F.3d at 146. Defendant makes no argument that the affidavits contain Brady/Giglio material. The Government has advised that the affidavits do not contain Brady/Giglio material, and thus, the Court has no basis to compel their disclosure. The Court is confident that the Government is aware of its obligations under Brady and Giglio and will disclose such material sufficiently in advance of trial so that defendant can effectively use such information at trial.[9]

## III. Request for Clarification

The Government has requested that the Court clarify its May 4th and May 8th Orders. In particular, the Government first questions the alleged requirement for firewall counsel to screen written communications with defendant's family, including his wife. In addition, the Government asks the Court to clarify the inconsistency regarding the need for firewall counsel to vet defendant's non-legal visitors, as well as attorneys and paralegals seeking to visit defendant to discuss their retention by defendant. The Court provides the following clarifications.

### A. Screening Written Communications

First, regarding the screening of communications to defendant's family, the Government misunderstands the Court's Orders. As the Court made clear in the May 8, 2017 Order, the Court included firewall counsel as an option, in addition to the entities already responsible for screening letters, as provided for in the SAMs. The SAMs provide for monitoring by the DEA, Homeland Security, FBI, the U.S. Marshals Service, BOP, and/or detention facility employees (the "screening agencies"). Adding firewall counsel was not to the exclusion of the screening

---

[9] Although § 3500 material need not be disclosed until the witness has testified on direct examination, the U.S. Attorneys' Manual recognizes that due process requires earlier disclosure if the § 3500 material contains Brady/Giglio information: "Due process requires that disclosure of exculpatory and impeachment evidence material to guilt or innocence be made in sufficient time to permit the defendant to make effective use of that information at trial. In most cases, the disclosures required by the Constitution and this policy will be made in advance of trial." U.S. Attorneys' Manual 9-5.001(D).

17

agencies already included in the SAMs, and it was not to the exclusion or modification of whatever practice exists when the screening agencies need to raise issues to the prosecution team. The Court took issue with the Government's proposal that the prosecution team will have sole responsibility for prescreening messages, as that appeared to be a departure from the SAMs.

Further, the Government's argument that the Court is "requiring firewall counsel to screen written messages," is belied by the Court's Order, which states that message-screening can be done by the screening agencies, as provided for in the SAMs, "or firewall counsel." See May 4, 2017 Order at 12 ("*and/or* firewall counsel"), 13 ("*or* firewall counsel"), 14 ("*or* firewall counsel"), 17 ("*or* firewall counsel"), 18 ("*or* firewall counsel") (emphasis added as to all). The disjunctive does not impose a mandate.

To the extent the Government is requesting that the Court modify the SAMs to include the prosecution team as among the entities involved in prescreening messages sent to and from defendant, the Court grants the request. The prosecution team, through its May 18, 2017 *ex parte* letter to the Court, which the Court properly can consider, has demonstrated a legitimate basis to include the prosecution team in the prescreening process.

### B. Vetting Non-Legal Visitors, Attorneys, and Paralegals

The Government believes that, based on the reasoning in the Court's May 8, 2017 Order, the prosecution team, not firewall counsel, should vet defendant's non-legal visitors, as well as attorneys and paralegals seeking to visit defendant to discuss their retention by defendant. The Court agrees that the same reasoning that underpinned the denial of the appointment of firewall agents supports the Government's position here. Therefore, the Court modifies its May 4, 2017 and May 8, 2017 Orders so that the prosecution team assumes responsibility for vetting non-legal visitors, as well as attorneys and paralegals seeking to visit defendant to discuss their retention

18

by defendant. Firewall counsel remains responsible for vetting expert and professional visitors retained by counsel, whose retention would qualify as privileged defense strategy.

In briefing the visitor vetting issue, the Government took an all-or-nothing position. The Government argued that it was better suited to vet all visitors and failed to mitigate the attorney-client and work-product concerns raised by defendant. Nowhere did the Government draw the distinctions in visitors it raises now to the Court. In the future, the parties are advised to put the entire issues, including alternative positions, in their arguments. The Court can only rule on the issues that the parties brief, and waiting until either side gets an adverse ruling to start drawing lines needlessly multiplies proceedings.

## CONCLUSION

Defendant's motion for an Order to Show Cause [86] and defendant's motion to compel discovery [64] are denied, and the Government's request for clarification [77] is granted.

**SO ORDERED.**

                                                              U.S.D.J.

Dated: Brooklyn, New York
       June 29, 2017