GMP/MPR/AG
F. #2009R01065

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

- against -

JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as "El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa," "Papa," "Inge" and "El Viejo,"

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

DECLARATION OF [redacted]

Criminal Docket No. 09-466 (S-4)(BMC)

I, [redacted] declare pursuant to 28 U.S.C. § 1746, under penalty of perjury, that to the best of my knowledge and based in part on my review of relevant records:

1. I am employed by the United States Department of Justice, Federal Bureau of Prisons ("BOP") as a [redacted] in the Metropolitan Correctional Center in New York, New York ("MCC"). I have been employed by the BOP since [redacted] I have held the position of [redacted] with the BOP since [redacted] and I have been a [redacted] at the MCC since [redacted]

2. As part of my duties as a [redacted] I am responsible for overseeing and resolving various issues relating to security matters at the MCC, including but not limited to [redacted] serving as resident expert on all custodial and security questions arising at the institution, and making sound decisions in emergency situations. In the course of my duties, I have gained familiarity with the operations

of the MCC, including, among other things, applicable policies and procedures concerning inmates housed under Special Administrative Measures ("SAMs") and the conditions of confinement thereof at the MCC.

3. Inmate Joaquin Archivaldo Guzman Loera (the "defendant") has been in BOP custody, housed at the MCC, since January 19, 2017. Starting on his first day of incarceration at the MCC, the defendant was placed in the MCC's SAMs unit on 10 South, a non-punitive form of separation from the MCC's general population that is used when the presence of the inmate within the general population would pose a serious threat to life, property, staff or other inmates, or to the security or orderly operation of the institution.

4. On February 2, 2017, the Acting Attorney General of the United States directed the BOP to implement specified SAMs to restrict the defendant's access to the mail, the media, the telephone and visitors. The BOP implemented the SAMs that same day.

5. The area on 10 South reserved for legal visits is a divided attorney visiting room ("attorney visiting room"), with an area for attorneys on one side, and a screened-off set of individual cells for SAMs inmates on the other side. Since the defendant has been housed in 10 South, the MCC has made several modifications to the space to make it easier for the defendant to review discovery with his counsel.

6. There have been no modifications made to the attorney visiting room since July 6, 2017. The BOP, however, has been exploring the possibility of modifying one of the other non-contact attorney visiting rooms located on 10 South so that it has a two-sided television screen that would allow the defendant and his counsel to view digital documents on the two screens simultaneously. In this fashion, both the defendant and his counsel can be seated, facing each other, while looking at the same document on their respective television screens.

Similarly, the BOP would place one speaker facing the defendant and one speaker facing counsel, which would allow both the defendant and his counsel to hear the same sound at the same time, while reviewing audio discovery.

7. The MCC remains unable to accommodate contact visits between the defendant and his defense counsel in the attorney visiting room due to a number of security issues. The BOP has begun, however, to investigate the means by which it would need to modify the existing space on 10 South to accommodate a contact legal visit if required to do so by the Court. Based upon the BOP's initial analysis, the changes would cost the BOP tens of thousands of dollars, and the time required to make those changes, including time to obtain approval for the additional expenditure necessary to make the modifications and the renovation time itself, would take more than a year. For example, to obtain approval of the required funding alone, it could take up to 6 months. Moreover, once funding is approved, a safe contact visit arrangement similar to that envisioned by defense counsel would require modifying the interior structure of the walls, relocating fire suppression systems, revising the layout, and other major demolition, which would cost as much as $150,000.00 and take at least 18 months, but possibly as much as 36 months, to complete. These estimates are also subject to delays as a result of the BOP's current focus on repairing our facilities damaged by hurricanes Harvey and Irma.

Dated: New York, New York
September 12, 2017

[redacted]