UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X

UNITED STATES OF AMERICA, :

-against- : DECLARATION

JOAQUIN ARCHIVALDO GUZMAN LOERA : 09 CR 466 (BMC)

Defendant. :

----------------------------------------------------X

MICHAEL K. SCHNEIDER, declares under penalty of perjury, pursuant to 28 U.S.C. §1746, that the following is true and correct:

1. I am an attorney employed by the Federal Defenders of New York, Inc. ("Federal Defenders"). I have been appointed to represent Mr. Guzman in this matter. In the course of my representation, I have met with Mr. Guzman numerous times at the Metropolitan Correctional Center ("MCC"). Each of my visits with Mr. Guzman at MCC has taken place inside the Special Housing Unit located on 10 South.

2. My visits with Mr. Guzman, as well as other visits between Mr. Guzman and other members of the defense team, have taken place inside any of three non-contact visiting areas. Inside two of these booths, Mr. Guzman is separated from his visitor by a rigid plastic window and a metal screen. It is impossible for Mr. Guzman or the visitor to pass or receive paper documents while in the visiting booth. If either Mr. Guzman or the visitor wants to share a paper document, he or she must hold it up against the window.

3. Mr. Guzman has access to a laptop computer on which he can review electronic discovery. He is allowed to bring this laptop to the visiting booth. However, to share discovery displayed on the laptop's screen with a visitor, he must hold the laptop up to the dividing screen. On several visits, I have attempted to view and discuss discovery documents in this manner and the process is inordinately time-consuming and frustrating. Additionally, it has been difficult for me to hear audio files when Mr. Guzman plays them from the other side of the visitor booth.

4. One of the three non-contact visiting areas now contains a computer and monitor secured to a cart. When visiting with Mr. Guzman in this booth, he is locked in one of five small booths along one wall of the room. The visitors are in a larger area with access to the computer. Because the window and screens in the inmate's booth are located several feet from the floor, I have found it impossible to see and speak to Mr. Guzman while seated. When seated, I find myself staring at the metal

door, or looking up at the top portion of Mr. Guzman's head. The four or five times I have met with Mr. Guzman in this area, I have stood during the entire visit.

5. The modifications made to the visiting areas at 10 South consist of placing a small fold-down surface inside Mr. Guzman's booth in the larger area, placing a stool (rather than a chair) inside Mr. Guzman's booth in the larger area, and providing a computer, monitor, and speaker on a cart. I have found this arrangement inadequate to view and discuss electronic discovery with Mr. Guzman. Because the screen must be positioned close to the door of the booth for Mr. Guzman to see the screen, it is impossible for both he and the visitor to view the screen at the same time. Also, the cart must be wheeled away from the door so that the visitor can see the screen to navigate through the electronic discovery and then wheeled back to the door to enable Mr. Guzman to see the screen.

6. The non-contact rooms make the review of paper documents difficult as well. As noted above, if either Mr. Guzman or a visitor wants to share a document, he or she must hold it up to the glass. Though a visitor may provide Mr. Guzman with documents at the beginning of a visit, this does not make the review of documents any easier. In the smaller visiting booths, Mr. Guzman does not have a desk on which to rest papers (though in one booth there is a small ledge.) Thus, when Mr. Guzman brings papers to the visiting booth he invariably ends up trying to stack them on his lap with the result that it sometimes takes a minute or two for him to look through the entire stack of documents to produce the one he wants to discuss. This process is repeated for each document.

7. The small, fold-down surface provided in Mr. Guzman's booth in the larger area is positioned so that, when it is folded down, Mr. Guzman must sit two or three feet away from the window. This makes it more difficult for both Mr. Guzman and his visitors to hear each other. The fold-down surface is small and, when looking through a large stack of documents, Mr. Guzman is again forced to go through the entire stack to find the one he wants to discuss. The visitor portion of the larger area contains a table large enough for visitors to spread out several documents at once. Mr. Guzman, however, cannot see those documents well enough to read them from inside his booth.

8. As I and Ms. Gelernt noted during the Court's tour of 10 South, the visitor portion of the larger visiting room is large enough to allow Mr. Guzman to meet with two or three defense team members at the same time. As already noted, there is a table in the visitor portion of the room large enough to display several documents at once. It appears to me that the only modification needed to make this room secure is to add a secure door to the larger visiting room. During the Court's visit to the MCC, a BOP staff member explained that similar secure doors had been added to two of the general population attorney visiting rooms on the 3rd floor to allow for visits with inmates being held in the SHU, but not under SAMs.

9. The government's and BOP's stated concern that Mr. Guzman could rip down the sprinkler system pipes to create a flood is belied by the fact that these pipes are located six-and-a-half to seven feet off the ground and consist of one-and-one-half inch and one inch steel pipes secured at regular intervals to the concrete ceiling. There appears no realistic possibility that Mr. Guzman or anybody else could damage such a system. Also, the booth where Mr. Guzman sits during the visits has an exposed sprinkler head which seems more susceptible to tampering than the supply pipes.

10. Based on my observations of the MCC SHU, it appears that the larger visiting room in 10 South is the most appropriate area to have contact visits with Mr. Guzman. However, I have also noticed a cell just outside the door to 9 South marked "holding cell" which appeared large enough for three people to meet together around a small table. I observed no water pipes or cables inside this cell. Also, since one of the two cells designated for Mr. Guzman is always empty, either appear to be an appropriate area for contact visits.

I declare, pursuant to 28 U.S.C. §1746, under penalty of perjury and under the laws of the United States of America that the foregoing is true and correct.

DATED: BROOKLYN, N.Y.
September 15, 2017

/s/
MICHAEL K. SCHNEIDER, ESQ.