UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
   UNITED STATES,

                 Plaintiffs,

                 - against -

JOAQUIN ARCHIVALDO GUZMAN
LOERA,

                 Defendants.

----------------------------------------------------------- X

**DECISION & ORDER**

09-cr-00466 (BMC)

**COGAN,** District Judge.

       This order addresses defendant's request for contact visits with his attorneys. Defendant argues that the space where the Government permits him to meet with his attorneys denies him the Sixth Amendment right to counsel because it is insufficient to review the volumes of discovery that the Government is producing. The Government opposes the request. This Court referred the issue to Chief Magistrate Judge Roanne L. Mann for a Report and Recommendation. Judge Mann's Report concluded that the conditions restricting defendant's access to his attorneys violated his right to counsel, and recommended that the Court grant defendant's request.

       The Court agrees with Judge Mann's conclusion that, in light of the quantity of documents and other discovery involved in this case, the attorney-visiting rooms described in her Report may deprive defendant of his constitutional right to access counsel. But the Court denies defendant's request for contact visits, because the Government's proposed modifications to what this Court will refer to as the "auxiliary room," are sufficient to address the concerns raised by Judge Mann raised and shared by the Court. The Court directs the Government to complete its

proposed modifications, as discussed below, before the November 8, 2017 status conference, and to permit defendant to access the modified auxiliary room whenever he meets with his attorneys.

## DISCUSSION

### I. Background

On April 21, 2017, defendant filed a letter requesting contact visits with his attorneys for the purpose of reviewing discovery. In his letter, defendant discussed two meeting rooms. The first, the "divided room," contains an attorney portion, equipped with a 32-inch computer monitor, and an inmate portion that is subdivided into four phone-booth-like cells. During meetings held in the divided room, the inmate and his attorney are separated by a heavy metal door with a narrow rectangular plexiglass window in the top half. The second room, the auxiliary room, was equipped with a computer on the inmate's side, but no monitor on the attorney's side. Defendant argued in his letter that both rooms were inadequate. As to the divided room, defendant argued that the metal door and narrow window made it difficult for him to see and hear the monitor on the attorney's side, and the high window required both defendant and his attorney to stand during the entire visit. As to the auxiliary room, defendant complained that his attorney could not see or hear the computer on the inmate's side of the room, making it impossible for them to review documents simultaneously.

The Government objected to defendant's request, citing security concerns and noting that 10 South does not currently have a space for contact visits. The Government proposed to add a speaker and an elevated chair to address some of defendant's objections to the divided room.

On May 8, 2017, this Court referred the contact-visit issue to Chief Magistrate Judge Roanne L. Mann for a Report and Recommendation. While Judge Mann was preparing her Report, the Government made a few modifications to its policies and to the divided room itself,

including: giving defendant a laptop and copies of the discovery discs; permitting counsel to give defendant up a four-inch stack of documents (through corrections officials) before an attorney visit; moving the computer monitor onto a cart with wheels so that it could be brought closer to defendant; adding speakers; raising the computer monitor to make it easier for defendant to see through the high plexiglass window; and building a fold-out shelf on which defendant could place his laptop.

On September 27, 2017, Judge Mann issued a thorough Report. Judge Mann applied the four-factor test discussed in Turner v. Safley, 482 U.S. 78 (1987), for determining if a prison regulation impermissibly impinges on a defendant's constitutional rights.[1] She concluded that the Government had identified "a legitimate concern for safety and security in the [Metropolitan Correctional Center]," and "a rational connection between that concern and the prohibition on attorney contact visits." But she also concluded that despite the Government's "substantial efforts" to respond to defendant's concerns, it was impracticable for defendant and his counsel to review the substantial documentary and electronic discovery in the confines of the divided room. She noted that if defendant and his counsel wished to review hard-copy documents that counsel had not provided in advance, counsel was forced to hold documents up to the narrow plexiglass window in the door for defendant to read them. She also noted that the narrowness of the plexiglass window and defendant's booth made it difficult for defendant and his counsel to simultaneously review documents using the moveable monitor on counsel's side.

Judge Mann also considered alternative sites for defendant and his counsel to meet,

---

[1] Under the Turner v. Safley test, "[t]he court must consider first whether there is a 'valid, rational connection' between the regulation and the legitimate governmental interest used to justify it; second, whether there are alternative means for the prisoner to exercise the right at issue; third, the impact that the desired accommodation will have on guards, other inmates, and prison resources; and fourth, the absence of 'ready alternatives.'" United States v. El-Hage, 213 F.3d 74, 81 (2d Cir. 2000) (quoting Turner v. Safley, 482 U.S. 78, 89-90 (1987)).

3

including the inmate exercise room on 10 South, the law library on 9 South, the attorney-client rooms for the general population at the MCC, and the Special Housing Unit library at Brooklyn's Metropolitan Detention Center. Judge Mann accepted the Government's arguments that those places were either not secure enough or, in the case of the general-population visiting rooms, would unfairly preclude all other inmates from using the rooms.

Judge Mann also concluded that none of the potential security risks the Government claimed could result from contact visits – defendant rushing the door, using exposed cords to harm himself or his attorneys, or pulling down sprinklers to cause havoc – were "irremediable." She noted that the now-divided room was, before 2010, a single, larger attorney-visiting room where contact visits were held. She reasoned that given that the room was modified in anticipation of a large influx of inmates from Guantanamo Bay (who so far have not shown up), it could presumably be modified again to accommodate defendant.

Based on the inadequacy of the divided room, and in light of the potential to modify the attorney side of the divided room to alleviate the Government's concerns about defendant harming himself or his attorneys, Judge Mann concluded that contact visits were the only acceptable arrangement for defendant to prepare effectively for trial.

On October 11, 2017, the parties filed objections to Judge Mann's Report and Recommendation. Defendant objected to Judge Mann's endorsement of shackling as a means of restraint during contact visits.

The Government raised a series of objections to contact visits, arguing that the MCC's legitimate safety objectives justified the burden imposed on defendant by restricting him to non-contact meetings. To alleviate this burden, the Government proposed to install a computer monitor on the attorney side of the auxiliary room. Because the inmate's side of the auxiliary

room already contained a computer, this second monitor on the attorneys' side would allow defendant and his counsel to review electronic discovery documents simultaneously. The Government also stated that it was "considering installing a small slot" in the room, which would allow defendant and his counsel to pass hard-copy documents to each other without the contact that the Government stated would be a security risk. By Order dated October 12, 2017, the Court directed the Government to implement these modifications immediately pending its decision on defendant's motion.

**II. Analysis**

The Court agrees with Judge Mann's conclusion that the divided room does not allow defendant to adequately prepare for his trial. But the Court concludes that contact visits are unnecessary given the Government's proposed modifications to the auxiliary room. It is worth noting that Judge Mann could not have considered these modifications because the Government only introduced them in its objections to her Report. As described, these modifications address Judge Mann's concerns (which the Court shares) with the existing divided room, while also accommodating the Government's legitimate security interests.

As discussed above, Judge Mann emphasized that it was impracticable for defendant and his counsel to review electronic discovery through a narrow plexiglass pane, and to anticipate which physical documents they would need during each session. Indeed, defendant's original request for contact meetings emphasized the importance of being able to simultaneously review documents with counsel.

The Government's furnishing of a monitor on the attorney side of the auxiliary room, its installation of a slot facilitating the secure transfer of documents, and its placement of a significant portion of plexiglass in the wall dividing defendant from counsel would ameliorate

those concerns. The Court is satisfied that, with these improvements in place, the defendant would be able to work effectively with his counsel.

Importantly, these modifications would permit productive attorney-client meetings without risking the security concerns about contact visits credibly raised by the Government. Furthermore, the Government has stated that it will implement these straightforward modifications in a matter of weeks. Given that the Government suggested this arrangement, the Court is confident that employing the auxiliary room will not be a burden on guards, other inmates, or the facility in general. The Government's proposed modifications grant defendant a constitutionally adequate means of preparing for trial without interfering with the safe operation of the MCC.

## CONCLUSION

Defendant's request for contact visits with his attorneys is denied. The Report and Recommendation [144] is adopted in part as set forth above, and the parties' objections are overruled except as set forth above. The Government is directed to continue implementing its proposed modifications to the auxiliary room consistent with this Order and the Court's October 12, 2017 Order, and to complete the modifications before the November 8, 2017 status conference. The Government shall allow defendant to access the newly equipped auxiliary room whenever he meets with his attorneys.

**SO ORDERED.**

                                                                  _____
                                                                                U.S.D.J.

Dated: Brooklyn, New York
      October 17, 2017