# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES,** | : | |
| | : | |
| *v.* | : | |
| | : | **Criminal No. 09-0466(BMC)** |
| **JOAQUÍN GUZMÁN LOERA,** | : | **Trial Date: 9/5/18** |
| | : | |
| *Defendant.* | : | |

## DEFENDANT'S OPPOSITION TO
## GOVERNMENT'S FIRST MOTION *IN LIMINE*

**DEFENDANT** Joaquin Guzmán ("Guzmán"), by and through undersigned counsel, respectfully submits his opposition to the government's First Motion *in Limine*.

The government has filed a voluminous and wide-ranging motion *in limine*-cum-press release, featuring a colorful narrative of what it hopes to prove at trial, but very little in terms of the specific evidence it seeks to admit. For this reason, Mr. Guzmán cannot properly respond to many of the government's requests, because they are based on prose and storytelling, rather than specific reference to particular testimony or exhibits. Where possible, Mr. Guzmán has requested this Court to recognize fundamental principles of law, has posed general objections to the government's general requests, and specific objections where the proposed or challenged evidence at issue is clearly set forth.

### I(B). The government's request to introduce wide-ranging, unspecified, uncharged acts of violence and uncharged "drug activity"[1]

The government asks for a blanket ruling that "any evidence concerning murders or conspiracies to murder individuals who posed a threat to the Sinaloa cartel" (Gov. at 9) be

---

[1] For ease of reference, Mr. Guzmán has attempted to track the numbering and lettering of the government's motion, if not the precise titles of the government's requests.

admissible, either as intrinsic to the charged offenses or as "other crimes" evidence under

Federal Rule of Evidence 404(b).   This is simply far too broad for Mr. Guzmán to respond to or

for the Court to rule on.   *See Nat'l Union Fire Ins. Co.*, 937 F.Supp. 276, 287 (S.D.N.Y 1996)

(courts considering a motion *in limine* may "reserve judgment until trial so that the motion is

placed in the appropriate factual context.").   If the government seeks an *in limine* ruling, it must

state specifically which murder or act of violence it seeks to prove and what specifically the

evidentiary role of that murder is.   While Mr. Guzmán does not disagree that, in certain

instances, certain uncharged violent acts may be relevant to proving the existence of a

conspiracy, the government has cited no case indicating the admission of such evidence is

unfettered.[2]   The government simply fails to describe how the alleged acts arose out of the same

transaction or series of transactions as the charged offenses; how it is inextricably intertwined

with the evidence regarding the charged offense; or how it is necessary to complete the story of

the crime on trial.

      Moreover, even to the extent such evidence is relevant, either as evidence intrinsic

to the charged offenses or as other crimes evidence under Rule 404(b), evidence of countless,

enumerated acts of murder, "torture," and kidnapping must plainly be excluded under Rule 403,

which provides for the exclusion of evidence if its probative value is outweighed by its potential

to prejudice the jury.   In evaluating the appropriateness of evidence under Rule 403, the Court

is to consider whether the proposed evidence is "more sensational or disturbing than the crimes

with which [defendant is] charged." *United States v. Pitre*, 960 F.2d 1112, 1120 (2d Cir.1992).

---

[2] The government argues that, in general, evidence of kidnapping and torture committed by or at the direction of Mr. Guzmán or by or at the direction of his alleged co-conspirators, is admissible under Rule 404(b) as evidence of "preparation or plan" to a subsequent murder. The government cites no cases allowing the admission of uncharged conduct to prove other uncharged conduct, and certainly provides no examples involving kidnapping and torture and "preparation or plan" evidence.

Here, the government does not attempt to claim that evidence of the "thousands of murders," "bodies strewn in the street" and bodies set on fire, (or evidence of torture and kidnapping which allegedly preceded some of them), which it intends to place before the jury, is not more sensational than the series of drug transactions it has set forth in the indictment. To be sure, there are cases in which a shooting, a murder, or a number of murders, have been admitted over an objection based on Rule 403. *See* Gov. at 17 (citing cases). The government, however, cites no cases in which a court has allowed the quantity and quality of uncharged conduct the government seeks to introduce here. If an uncharged act alleging the defendant killed "thousands of people" does not result in exclusion under Rule 403, it is difficult to imagine what would.

Rather than attempting to overcome Rule 403, the government instead contends that evidence of its unspecified murders is admissible direct evidence of "Violation 85" of Count One of the Superseding Indictment. Violation 85 charges Mr. Guzmán with a general conspiracy to commit murders of unnamed individuals in the course of violating 21 U.S.C. § 846 and 21 U.S.C. § 960, in violation of 21 U.S.C. § 848(e). Violation 85, however, fails to state an offense.[3] Title 21 U.S.C. § 848 (e)(1) provides an enhanced penalty for,

> Any person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in an offense punishable under section 841(b)(1)(A) of this title or section 960(b)(1) of this title who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results, shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death.

*Id.* The statute does not provide an enhanced penalty for conspiracy to commit murder.

Moreover, Mr. Guzmán is also suspected of being charged with distributing

---

[3] Mr. Guzmán will file separately a motion to dismiss "Violation 85" on these grounds.

narcotics to many countries other than the United States.    He may only be charged with

violating 18 U.S.C. § 924(c) if he is convicted of using or carrying a firearm "during and in

relation to any crime of violence or drug trafficking crime .... for which the person may be

prosecuted in a court of the United States."    The United States has not and cannot show that on

any occasion when he was possessing a gun that Mr. Guzmán was acting in relation to a crime

against the United States and not another crime.    Therefore, evidence of kidnapping, torture,

and murder to prove use and carrying of a firearm during such a crime would be unduly

prejudicial in violation of Rule 403.

   The government in effect seeks to admit evidence of multiple murders of persons

who are not identified; for which it has not provided discovery; that it does not connect to the

charged conspiracy; and for which there is no evidence but the testimony of cooperators seeking

to curry favor with the government and the Court.    Under a Rule 403 analysis, the government's

attempt to admit this "evidence" should fail because of the extreme prejudice that will be

suffered by Mr. Guzmán if it were to be admitted.    This Court should deny the government's

general motion to admit this broad, unspecific, highly prejudicial, uncharged evidence of

"thousands of murders" as well as alleged incidents of kidnapping and torture.

### I(C). The government's motion to introduce an uncharged conspiracy spanning seventeen years prior to the charged conspiracy

   The government has charged Mr. Guzmán, in a lengthy albeit very general

indictment, with a conspiracy spanning *twenty-five years*.    There is very little precedent of a

charged conspiracy of this magnitude. *See, e.g., United States. v. D'Amico*, 734 F. Supp. 2d 321,

332 (S.D.N.Y. 2010) (twenty-nine years "is an unusually long time period to be charged in an

indictment..[.]") But for the government, it is still not enough.    The government apparently

wishes to offer evidence of uncharged misconduct beginning in 1972, when Mr. Guzmán was

fifteen years old, through the next seventeen years, until the beginning of the charged conspiracy. The government alleges this evidence will supply evidence of the prequel to the charged conspiracy. *See* Gov. at 19.    This Court should deny the government's general motion to admit this evidence.

First, the government's description of what the evidence will show is, as with most of the narrative in the motion, both vague and broad.    As such, Mr. Guzmán cannot make specific objections to any of the government's proposed evidence at this time.    As a general matter, Mr. Guzmán does not dispute that conduct occurring prior the charged conspiracy may, in some cases, be admissible.    In this case, however, given the age of the evidence, and its breath, Mr. Guzmán asks that the Court categorically exclude the evidence under Federal Rule of Evidence 403.    That rule permits the Court to exclude evidence if it is cumulative or creates a waste of time.    Adding another seventeen years of evidence to a charged conspiracy already spanning twenty-five years does both of those things.

Moreover, if the Court allows the government, for all intents and purposes, to extend its evidence back to 1972, Mr. Guzmán requests a significant continuance of the trial date so that he can be prepared to defend against this additional evidence, which is not only extensive, but obviously old, and challenging to investigate.    Mr. Guzmán also requests that the Court order the government to immediately produce all discovery relating to these offenses.    To compel Mr. Guzmán to prepare to defend against this additional evidence at this point will violate his constitutional rights to due process, a fair trial, the right to present a defense, and the effective assistance of counsel.    U.S. Const. amend V, VI.

**I(D). The government's motion to admit evidence of drug trafficking while in prison**

The government wishes to introduce evidence that Mr. Guzmán was engaging in

drug trafficking while he was in prison.    Mr. Guzmán objects to the admission of this evidence under Federal Rule of Evidence 403, as it will alert the jury that Mr. Guzmán was previously arrested, detained or convicted of a crime, which is not proper for their consideration.[4] Moreover, the evidence raises the improper specter for the jury that Mr. Guzmán cannot be securely held in prison.    Thus, if the Court permits the introduction of the evidence, he will seek to rebut with evidence demonstrating the lax security of Mexican prisons, as compared with American prisons, and the relative ease with which narcotics trafficking can take place there. U.S. Const. amend. V, VI (providing for rights to due process, a fair trial, and right to present a defense).

### I(E).    The government's motion to introduce evidence of an uncharged conspiracy to distribute fentanyl allegedly committed after the charged conspiracy

The government seeks to introduce, as additional uncharged conduct, a conspiracy to distribute fentanyl.    This Court should deny the government's request.    First, this evidence is irrelevant.    Fed. R. Evid. 401.    The government attempts to cobble together an argument that because fentanyl is, according to the government, sometimes sold in conjunction with heroin, as a mechanism for diluting it, that a separate, subsequent conspiracy to distribute fentanyl is probative of a previous intention to distribute heroin.    The speculation of the government's expert as to what Mr. Guzmán intended to do with the supposed fentanyl is neither probative of Mr. Guzmán's alleged conspiracy to distribute other narcotics, nor is it evidence of his knowledge and intent.    Fed. R. Evid. 401, 404.

---

[4] The government also indicates it will impeach Mr. Guzmán with his prior conviction if he is convicted.    The government has yet, however, to provide any information with regard to what this conviction actually was.    Once that happens, Mr. Guzmán must evaluate it to determine whether it is sufficiently reliable to use for impeachment purposes. *United States. v. Manafzadeh*, 592 F.2d 81, 90 (2d Cir. 1979) (defendant may demonstrate unfairness of conviction precludes its use for impeachment).    As such, Mr. Guzmán requests that this Court deny this aspect of the government's motion as premature.

Second, the evidence must be excluded under Federal Rule of Evidence 403 as it will cause a waste of time, confusion of the issues, and will mislead the jury. The government has chosen to charge a conspiracy spanning twenty-five years and charging at least 84 transactions involving cocaine, as well as conspiracies to distribute heroin, methamphetamine, and marijuana. Now, in addition to all of that, the government asks the Court to permit it to present evidence of a separate conspiracy involving fentanyl - based solely, it appears, on cooperator testimony, without actual seizures, wiretaps, surveillance, or any other evidence - occurring supposedly in late 2014. At some point, this Court must exercise its discretion to bookend this prosecution and submits that the government should be limited to the twenty-five-year span it chose to charge.

Third, because there is no physical evidence of these allegations, the government will have to prove that what Mr. Guzmán supposedly intended to manufacture and distribute was the listed form of fentanyl, and not an unlisted analogue. If the latter, the government will have to prove that the substance in question qualified as a controlled substance under the Analog Act. 21 U.S.C. § 841(A); 21 U.S.C § 802 (32)(A). This will create a confusing trial within a trial to prove this uncharged, collateral point, and will hopelessly confuse the issues in violation of Federal Rule of Evidence 403.

Finally, as the Court is aware, fentanyl is the source of a great deal of inflammatory news coverage, and its mention in this case, particularly given the dearth of reliable information that Mr. Guzmán was even involved with it, will be prejudicial, confusing, and misleading. Fed. R. Evid. 403.

## II. The government's motion to admit evidence of flights and escapes

The government seeks to introduce evidence of two escapes from Mexican

prisons: in 2001 and 2015, a purportedly planned escape in 2016-2017, as well as three episodes

of flight or attempted flight from imminent arrest in 2012, 2014, and 2016.   In keeping with the

government's motion as a whole, it offers its narrative version of these events, but does not

specify what evidence in particular in support of these allegations it proposes to offer.   As such,

Mr. Guzmán requests that this Court deny the Motion as premature.

As a threshold matter, Mr. Guzmán agrees that evidence of escape or flight is

sometimes admissible as probative of consciousness of guilt.   *See, e.g., United States v. Al-*

*Sadawi*, 432 F.3d 419, 424 (2d Cir. 2005). Such evidence, however, "must be accompanied by a

satisfactory factual predicate ... from which the jury can infer consciousness of guilt from flight."

*See United States v. Amuso*, 21 F.3d 1251, 1260 (2nd Cir. 1994); *United States v. Sanchez*, 790

F.2d 245, 252 (2d Cir.1986).

As the Second Circuit has set forth, the probative value of such evidence,

> depends upon the degree of confidence with which four inferences can be drawn:
> (1) from the defendant's behavior to flight; (2) from flight to consciousness of
> guilt; (3) from consciousness of guilt to consciousness of guilt concerning the
> crime charged; and (4) from consciousness of guilt concerning the crime charged
> to actual guilt of the crime charged." *United States v. Myers*, 550 F.2d 1036, 1049
> (5th Cir.1977); *United States v. Beahm*, 664 F.2d 414, 420 (4th Cir.1981) ("If the
> government wishes to offer evidence of flight to demonstrate guilt, it must ensure
> that each link in the chain of inferences leading to that conclusion is sturdily
> supported.") (citing *Myers*, 550 F.2d at 1049); *see also* 1 New Wigmore Evid. §
> 1.3 (Leonard Rev.2000).

*Al-Sadawi*, 432 F.3d at 424.   Here, the government has not made these showings with respect to

each of these events.   For example, the government has not offered a link between Mr.

Guzmán's actions and a consciousness of guilt of the particular crimes charged.

If this Court disagrees and finds that the government has done so (or eventually

does so), Mr. Guzmán will seek to counter the evidence with evidence of numerous other reasons

Mr. Guzmán may have wanted to avoid capture and/or extradition to the United States, as

permitted by his constitutional right to present a defense. *See., e.g, Crane v. Kentucky*, 476 U.S. 683, 690,(1986) (citations omitted) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'"); *United States v. Almonte*, 956 F.2d 27, 30 (2d Cir.1992) (*per curiam*) ("The due process clause of the Fifth Amendment and the compulsory process clause of the Sixth Amendment guarantee each criminal defendant the right to present a defense.") (internal citation omitted). *See also Roberts v. State of Me.*, 48 F.3d 1287, 1297 (1st Cir. 1995) (defendant permitted to introduce evidence rebutting government's suggested inference of consciousness of guilt). Mr. Guzmán anticipates these reasons will include the existence of the death penalty in the United States and its disproportionate imposition on minorities; the inhumane conditions of confinement under which Mr. Guzmán anticipated he would be (and is now being) held; and the prison murder of his brother Arturo in 2005.

### A. *Evidence of flight is not admissible as evidence of knowledge under Federal Rule of Evidence 404(b)*

The government contends that evidence of flight should be introduced under Federal Rule of Evidence 404(b). That rule provides for the potential admission of another crime, wrong, or act for a purpose such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. as evidence of knowledge." Fed. R. Evid. 404(b). The government acknowledges that the Second Circuit has never permitted evidence of flight on this ground but cites cases from other circuits suggesting that evidence of flight is admissible as evidence of knowledge. *See* Gov. at 37 (citing cases).

Mr. Guzmán contends Second Circuit law regarding the admission of 404(b) evidence to prove knowledge does not permit the result the government seeks. Second Circuit

cases permitting the admission of 404(b) evidence on this ground have noted that the defendant had affirmatively disclaimed the knowledge element of the offense. *See, e.g., United States v. Garcia*, 291 F.3d 127, 137 (2d Cir. 2002) ("Garcia "squarely placed in issue" his knowledge and intent when he denied the existence of a drug transaction, disputed the topic of the July 10 conversation, and argued that he knew nothing about a code."); *United States v. Martino*, 759 F.2d 998, 1004 (2d Cir. 1985) ("Martino, by his defense, placed in issue the question of knowledge and intent as to his association with alleged co-conspirators on at least three separate occasions..."). Mr. Guzmán has not raised a lack of knowledge in this case at this point.

Moreover, even if he had (or does), the government "must identify a similarity or connection between the two acts that makes the prior act relevant to establishing knowledge of the current act." *Garcia*, 291 F.3d at 137. The government has failed to explain why Mr. Guzmán's escapes or flight rebut a claim of lack of knowledge. Mr. Guzmán has not, for example, indicated he sold a quantity of cans of peppers, but did not know there was cocaine inside. If he did, it is not clear how the fact that he escaped from a police raid in 2015 would demonstrate his knowledge as to that event. "[T]he interpretation to be gleaned from an act of flight should be made with a sensitivity to the facts of the particular case." *United States v. Ramon-Perez*, 703 F.2d 1231, 1233 (11th Cir. 1983).

The government also suggests in a footnote that evidence regarding Mr. Guzmán's escapes and flights are admissible to corroborate "testimony about the defendant's narcotics trafficking enterprise. Gov. at 37 n. 19. Mr. Guzmán acknowledges that the Second Circuit permits the introduction of 404(b) evidence for the purpose of corroboration. *See United States v. Everett*, 825 F.2d 658, 660 (2d Cir.1987). That court has also held, however,

> this allowance for corroboration is not unlimited: "[T]o avoid potential
> prosecutorial abuse, we have required the proponent of the evidence to

demonstrate a close relationship between the proffered evidence and the
evidence to be corroborated.

*United States v. Scott*, 677 F.3d 72, 81 (2d Cir. 2012) (citing *Everett*, 825 F.2d at 660).    The

government has not articulated what evidence it suggests is corroborated by evidence of Mr.

Guzmán's escapes and flights, much less demonstrated a "close relationship," between the two.

Thus, Mr. Guzmán requests this Court deny the government's Motion as premature on this

ground.

> **B.      *Evidence of escape and flight is inadmissible
> under rule 403***

Even if this Court were to find that the government has demonstrated a

connection between Mr. Guzmán's escapes and flights and consciousness of guilt of particular

charges or knowledge thereof, the evidence (to the extent the undersigned and the Court are

aware of what it is), must be excluded under Federal Rule of Evidence 403.    That rule provides

that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed

by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading

the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."    Fed. R.

Evid. 403.

In this case, evidence of prison escapes is unduly prejudicial because it alerts the

jury to the fact of Mr. Guzmán's prior arrest, detention or conviction in Mexico.    In addition,

the government's introduction of Mr. Guzmán's flights and escapes will create an impermissible

likelihood that the jury will speculate that Mr. Guzmán cannot and will not be securely detained

if convicted.    As such, Mr. Guzmán will seek to counter the government's implications with

evidence of Mr. Guzmán's current conditions of confinement and his likely conditions of

confinement under Special Administrative Measures at ADX-Florence if convicted.    U.S.

Const. amend. V, VI (providing rights to Due Process, fair trial, and right to present a defense).

Mr. Guzmán requests that this Court deny the government's motion on this ground.

**C.**  ***Collateral evidence of indictments, rewards and "most wanted" designations are irrelevant, prejudicial and cumulative***

In addition to evidence of the escapes and flights themselves, the government apparently also seeks to introduce evidence of all of the indictments returned against him in various jurisdictions of the United States, various rewards offered by the American and Mexican governments for his capture, and the editorial decisions of Forbes magazine to rank him on their list of most wanted fugitives. *See* Gov. at 30. This evidence is irrelevant. Federal Rule of Evidence 401 provides "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Neither the extent of the interest of the American and Mexican governments in apprehending and prosecuting Mr. Guzmán, nor Forbes' magazines subjective assessment of that interest provides the jury with any proper basis to resolve any fact before it.

Even it if it were relevant, the subjective assessment of the Mexican and American governments of the "value" of Mr. Guzmán as a target of prosecution would prejudicial in the extreme and would invite the jury to convict Mr. Guzmán on improper basis in violation of Federal Rule of Evidence 403. Finally, even if this Court were to permit one or two examples of these collateral rewards and designations, the remainder would be cumulative, also in violation of Federal Rule of Evidence 403.[5] Mr. Guzmán requests that this Court deny the

---

[5] There is some suggestion in the government's claim that it also seeks to introduce evidence of flight and escape as evidence of Mr. Guzmán's ability to bribe officials, as well as to introduce his means of escape as evidence of his wealth. The government has simply not offered enough indication of what this precise evidence would be to allow

government's motion to include these specific items of evidence.

**III.    The government's motion to admit intercepted recorded communications and video evidence**

As part of its Motion on this ground, the government appears to be asking this Court to make a general ruling recognizing the law providing that five methods identified by the government to authenticate intercepted communications are permissible methods of authentication under Fed. R. Evid. 901: authentication by a participant to the conversation; authentication by a witness who was present for an overheard the communication; authentication by a witness who can identify the voices of the participants; authentication by the person who made the recording of the conversation; or an unbroken chain of custody.    Mr. Guzmán agrees that these are proper methods through which the government may authenticate recorded conversations.

**B.    *Authentication of video evidence***

Specifically, the government asserts that video evidence appearing to have been generated by Mexican news sources are self-authenticating under Federal Rule of Evidence 902(6).    Rule 902(6) provides for the self-authentication of "printed material purporting to be a newspaper or periodical."    Mr. Guzmán contends videos are not newspapers or periodicals. The only authority the government cites is a footnote in an opinion authored by this Court, which indicated that the video in question there was "practically self-authenticating," because it was marked with a CNN logo and did not appear to have been edited.    *Linde v. Arab Bank, PLC*, 97 F.Supp. 3d 297, 341 n. 28 (E.D.N.Y. 2015). Mr. Guzmán maintains, however, that most videos are quite easily edited without appearing to have been so, and logos are easy to fake.    Absent

---

Mr. Guzmán to respond.

any binding precedent, this Court should reject the government's invitation to expand Rule 902(6) to video evidence. Mr. Guzmán does not suggest that the government may not effectively demonstrate that a logo is valid and a video appears sufficiently likely not to have been edited, but requests that this Court decline to make a blanket ruling that a video purportedly bearing the logo of a news source is self-authenticating under the Rules of Evidence.

Similarly, the government requests that this Court find certain videos to be self-authenticating under Federal Rule of Evidence 902(5). That rule provides for the self-authentication of "[a] book, pamphlet, or other publication purporting to be issued by a public authority." Fed. R. Evid. 902(5). As the Advisory Committee Note to this rule indicates, it is "most commonly encountered in connection with statutes, court reports, rules, and regulations." By its terms, the rule does not apply to videos, the government cites no caselaw indicating that it does, and the undersigned is not aware of any. This Court should decline to authenticate the videos on these grounds.

Next, the government contends any video that Google represents was ever in its possession is self-authenticating under Federal Rule of Evidence 902(11). Rule 902(11) provides that certain business records can be self-authenticating if they meet the test set forth in Federal Rule of Evidence 806(A)-(C). That rule in turn provides,

> (6) Records of a Regularly Conducted Activity. A record of an act, event, condition, opinion, or diagnosis if:
>
> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity.

Fed. R. Evid. 806(A)-(C). In this case, the government will surely not claim the interrogation

videos it seeks to admit were created by an employee of Google who had knowledge of the videos' contents. As such, the effort to authenticate the documents on this ground fails. To find otherwise would be tantamount to admitting the contents of a book for its truth because libraries regularly keep books in the course of their business.

The basis for the business records exception is that people associated with the business have an independent motivation to record true and accurate information. *See United States v. Shah*, 125 F. Supp. 3d 570, 575 (E.D.N.C. 2015). Google's business interests have no impact whatsoever on the accuracy of the contents of the videos transmitted through its servers. There is nothing about the fact that Google was at one point in possession of these videos that makes it more likely that they are authentic videos depicting Mr. Guzmán interrogating people.

The government appears to cite *United States v. Hassan*, in support of its effort. 742 F.3d 104 (4th Cir. 2014). *Hassan* does not, however, go as far as the government apparently wants to take it. In *Hassan*, the court indicated that screenshots of Facebook pages as well as YouTube videos, could be authenticated as being photos, words, and videos that were in fact posted on Facebook and YouTube. The court did not stop there, however. It also required the government to link the pages and videos to the defendants under Federal Rule of Evidence 901. Mr. Guzmán does not anticipate challenging that the videos the government seeks to admit in fact appeared on YouTube. He will, however, ask this Court to hold the government to its burden of proving that the content of the videos is what the government claims it is under Rule 901.

Finally, the government contends that several of the videos are self-authenticating under Federal Rule of Evidence 901(b)(4). That rule provides that a document may be

authenticated by some specific aspect inherent to the document itself, to wit "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(4). The Advisory Committee notes that this rule provides examples of such occasions, including that the writing includes content in the specific, unique knowledge of the purported author, that the document bears characteristic language patterns, or the document is directly responsive to another document which has already been authenticated. Here, the government offers little more than truisms, rather than specific aspects of the videos that make them more likely to be authentic. For example, the government says that this Court should find the "1993 Chili Can Seizure Video" authentic evidence of Mr. Guzmán's guilt of a narcotics conspiracy, because it "shows law enforcement officers emptying packages of cocaine from hundreds of chili cans," and that "the 2015 Escape Video" should be admitted, because it "shows the defendant pacing back-and-forth in his prison cell before disappearing into the entrance of the tunnel in his shower." Gov. Mot. at 47. Merely restating what the government hopes the video proves is not the same as some particular indicia within the video itself making it more likely that it is an authentic document.

C. *Authentication of certain intercepted and recorded communications*

In this section, the government appears to be asking the Court to rule *in limine* that statements of co-conspirators, recorded or otherwise, are not subject to any objection based on hearsay, by virtue of Federal Rule of Evidence 801(d)(2)(E). That rule provides that a statement may be offered against a party if the statement "was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). Mr. Guzmán concurs that if the government makes these showings, such statements are admissible pursuant to the Rules of Evidence. The government has not yet made that showing, so Mr. Guzmán

requests that this portion of the Motion be denied as premature.

        **D.**    ***Admissibility of "certain statements" in video evidence***
                ***as non-hearsay***

        The government contends that a journalist's real-time description of "the defendant's residence and his tunnels as he tours them" are not hearsay under rule Federal Rule of Evidence 803(1). That rule provides for the admission of statements "describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1). The rule does not provide for the admission of subjective descriptions of places. The case relied upon by the government for its assertion that a journalist's description of a place is an exception to the rule against hearsay is *United States v. Urena,* 989 F.Supp.2d 253, 260 (S.D.N.Y. 2013). That case involved distinctions made between materials required to be turned over under 18 U.S.C. § 3500 and Federal Rule of Criminal Procedure 16. While the case does contain the statement "a real time narration of events may be admissible as a present sense impression," the only examples it provides are of tapes of 911 calls, not journalists describing places. *See id.* (citing cases). Describing events as they unfold are infused with reliability because they are being described in real time as they unfold, prior to the witness having any reason to adjust their description. A journalist's personal impressions of homes and tunnels he believes to be associated with Mr. Guzmán do not fall within that category. In any event, the descriptions are not relevant and do not make any fact for the jury's determination more or less likely. *See* Fed. R. Evid. 401. Jurors can view the evidence themselves and come to their own conclusions. Mr. Guzmán requests that this Court deny the government's motion to admit journalists' narration of videos.

        The government seeks to admit "the statements of hostages" in 2010 or 2011. It claims that it is not offering the statements for their truth, rather it offers them to "show that they

were elicited in response to interrogation by, or at the direction, of the defendant." Gov. at 52.

Once again, the government fails to specify what statements it seeks to elicit; fails to identify the

hostage; fails to identify the person doing the interrogation and, more importantly, fails to

identify how the interrogation is related to the charged offenses.

### D. *Use of translations and transcripts*

Mr. Guzmán has no objection to providing the jury with translated transcripts of

Spanish language evidence in order to follow along as the exhibit is put into evidence. Mr.

Guzmán objects to the entry of the transcript itself into evidence, as the recording, not the

transcript, is the proper evidence for the jury to consider. As with any other testimony, if the

jury wishes to rehear the recording, it may return to the courtroom where the recording will be

played and translated, and the jury may again follow along. Mr. Guzmán also requests that the

Court order the government to produce final transcripts with side by side transcriptions in

English and the original language (presumably Spanish) so that the defense can verify the

accuracy of the translations.

### E. *Witness interpretation of intercepted and recorded communications and video evidence*

The government asks the Court to rule *in limine* that it may offer testimony of co-

conspirators' interpretation of the meanings of conversations they were part of, or the meanings

of which they understand by virtue of their participation in the alleged conspiracy. The

government alleges that these unspecified conversations will be admissible under Federal Rule of

Evidence 701. Mr. Guzmán agrees that such testimony may be admissible under that rule,

provided that the requirements of that rule are met. The government has not offered Mr.

Guzmán or this Court any evidence that would allow a ruling to be made regarding its

admissibility on this ground at this point. Mr. Guzmán respectfully requests that this Court

reserve ruling on the admissibility of this testimony under Rule 701 (or any other ground) until such time as the government proffers the specific testimony or until trial. *See, e.g., In re Parmalat Securities Litig.*, 477 F. Supp. 2d 637, 642 (S.D.N.Y. 2007) (ruling on motion *in limine* for admission of testimony under Rule 701 premature where movant had "not indicated what testimony they propose to offer on this basis.").

### IV. Motion to admit portions of the 2015 interview video and to preclude the defense from introducing irrelevant, self-serving portions

Mr. Guzmán does not challenge the admission of his statement by the government under Federal Rule 801(d)(2) which provides for admission of out of court statements made by party opponents. The government contends that no aspects of the statement that it will redact will be admissible by Mr. Guzmán pursuant to the Rule of Completeness found in Federal Rule of Evidence 106. The government has not, however, identified which portions of the statement it will admit and redact. Therefore, Mr. Guzmán cannot respond to this aspect of the government's motion, nor can this Court rule on it at this time. Mr. Guzmán requests that this aspect of the government's motion be denied as premature. *See, e.g., United States v. Korbe*, 2:09-CR-05, 2010 WL 4676116, at *2 (W.D. Pa. Nov. 9, 2010) (deferring as premature motion *in limine* to preclude defendant's ability to introduce portions of statement under Rule of Completeness).

### V. Motion to admit satellite photographs

The government has not offered evidence indicating how these photographs will be authenticated. Neither the Court nor Mr. Guzmán can evaluate the propriety of the government's motion without this information. This section of the motion should be denied as premature.

## VI.    Motion to admit drug ledgers

Here, the government makes another highly sweeping and generalized request. Mr. Guzmán will attempt to respond to the extent possible without knowing precisely what evidence the government is seeking to have admitted.    The government asks this Court to rule *in limine* that it may admit "various books and records," which "generally contain notations related to dates, quantities and prices of drug shipments and/or accountings of monies collected from and owed to various drug traffickers."    Gov. at 62.

The government first indicates that these "books and records" are admissible under Federal Rule of Evidence 801(d)(2)(E).    That rule provides that a "statement is not hearsay if ... [it] is offered against a party and is ... [made] by a co-conspirator of a party during the course and in furtherance of the conspiracy."    Fed. R. Evid. 801(d)(2)(E).    While the government claims it will make this showing, it has not yet done so, nor has it attempted to in its motion, thus the motion is not ripe for ruling by this Court.[6]

Second, the government asks this Court to make a blanket admission of these "books and records" pursuant to the business records exception to the hearsay rule, as set forth in Federal Rule of Evidence 803(6).    In order for an out-of-court statement to be admitted under that rule, the government must show that

(A) the record was made at or near the time by – or from information transmitted by – someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another

---

[6] Mr. Guzmán expects in particular to object to the admission of "books and records" prepared by "third parties" at the "direction of co-conspirators" as statements of those co-conspirators.

qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 806(E).    Again, as the government has not even indicated precisely what evidence it is seeking to have admitted, this Court cannot possibly find that it has made these showings. *See, e.g, United States v. Aiyaswamy*, 15-CR-00568-LHK-1, 2017 WL 1365228, at *2 (N.D. Cal. Apr. 14, 2017) (finding premature motion *in limine* to rule documents admissible as business records where the records had not been produced, and Court did not know whether records would be properly certified). And again, Mr. Guzmán anticipates that he will vigorously contest the government's ability to do so.

Even if the "books and records" are not precluded by rules against hearsay, however, they still must be authenticated - in other words, the government must prove the "books and records," are in fact evidence of narcotics trafficking activity.    *United States v. Natale*, 526 F.2d 1160, 1173 (2d Cir.1975).    Again, the government has yet to make this showing, thus the Court cannot admit the evidence *in limine* at this point. *United States v. Ulbricht*, 79 F. Supp. 3d 466, 488 (S.D.N.Y. 2015). ("Whether the government can meet Rule 901's authentication standard with respect to the challenged exhibits is a question best answered at trial."). Moreover, Mr. Guzmán believes it highly likely counsel will vigorously contest this point at trial, once he is made aware of precisely what evidence it is that the government seeks to introduce.

Finally, the reliability of any expert or "co-conspirator" testimony regarding the "meanings" of the "various books and records," will be contested by counsel at trial.    The government has provided no information whatsoever that would allow the Court to rule on the

admissibility of such testimony at this time.    *See United States v. Persico,* 447 F. Supp. 2d 213,

219 n. 7 (E.D.N.Y. 2006) (denying defendant's motion *in limine* to preclude expert testimony

because "the Court at this juncture has no knowledge of what the substance or basis of the expert

witness' testimony may be.").

## VII.    Motion to admit attorney payment records

The undersigned has already responded to this part of the Motion in a separate

response.

## VIII.    Motion to permit select witnesses to testify under pseudonyms and aliases and to preclude examination of government witnesses regarding certain identifying information

Mr. Guzmán does not oppose the government's motion to have the one witness it

has identified testify under a pseudonym.    Mr. Guzmán specifically requests, however, that the

witness be provided with a highly common name to avoid undue attention to an uninvolved

person with the same name.    Mr. Guzmán further specifically requests that a pseudonym be

used as opposed to initials, the latter of which may cause inappropriate and prejudicial

speculation by the jury as to the reason for reference to the witness with initials, and that the jury

not be informed that the witness is testifying under a pseudonym.    Mr. Guzmán specifically

reserves the right to object to the designations of any other witnesses as requiring the use of

pseudonyms.

## IX.    Motion to preclude evidence and argument alleging selective prosecution of the defendant

The government asks this Court to preclude the undersigned from "playing upon

current social and political controversies," and asking the jury to "focus on the government's

conduct," and "alleged governmental motives."    Gov. at 76.    The government does not specify

precisely what it thinks the defense is planning on arguing, so the undersigned are constrained to

respond.

     **X.**     **Motions to preclude Mr. Guzmán from offering certain evidence in his defense**

     **B.**     *Evidence of defendant's good conduct*

Mr. Guzmán opposes the government's motion to preclude the defendant from eliciting or introducing anything good Mr. Guzmán did, ever. In support of its broad and premature motion, the government cites *United States v. Rivera*, No. 13-CR-149, 2015 WL 1725991, *2 (E.D.N.Y April 15, 2015). As the government acknowledges, *Rivera* held that evidence of good conduct may be offered where the government alleges that the defendant engaged in "ceaseless criminal conduct." *Id*. The government's assertion that it has not done so, despite the bulk of its ninety-page motion that seeks to paint Mr. Guzmán as some kind of evil archetype in a novel-like description of a life of crime spanning from the time he was fifteen years old in 1976 continuing, ceaselessly, over the next thirty-eight years, until 2014, is, respectfully, ludicrous. If this case is not one in which the government intends to demonstrate ceaseless criminal conduct, it is hard to imagine what such a case would look like. The government will seek to paint Mr. Guzmán before the jury, just as it has done in its Motion for the Court, as a purely evil criminal automaton. The defense reserves a right to counter that prejudicial image – also unrelated to his guilt or innocence of specific offenses – which evidence which puts Mr. Guzmán's actions into some kind of realistic context.

Mr. Guzmán also requests that this Court deny the government's motion to the extent that it suggests Mr. Guzmán should be precluded from offering character evidence. Federal Rules of Evidence 404(a)(2)(A) and 405(a) allow a criminal defendant to offer "evidence of [his] pertinent trait" through reputation or opinion testimony and on cross examination the Court may allow inquiry into relevant specific instances of the defendant's conduct.

## C.     *Sean Penn articles and media appearances*

Mr. Guzmán does not presently intend to call Sean Penn as a witness.    Even if Mr. Penn is called, Mr. Guzmán does not anticipate any evidentiary basis on which he would introduce Mr. Penn's subjective impressions regarding Mr. Guzmán or his alleged conduct, via testimony, articles, or otherwise.     As such, the defense does not oppose the government's motion, but asks the Court to reserve ruling on the use of such materials should they become necessary to rebut any representations by the government or its witnesses regarding the existence or content of those materials.

## D.     *Books, media appearances, and other articles regarding the defendant*

The undersigned are familiar with the Rules of Evidence and do not intend to introduce into evidence third-party accounts of the case, except in the event that such material contains proper impeachment evidence or necessary rebuttal to any representations by the government.

## E.     *Special administrative measures governing the defendant's confinement*

The government seeks to preclude the defense from making any reference to the conditions of confinement under which Mr. Guzmán is held.    On the current state of the evidence, the undersigned cannot specifically respond to this request.    The undersigned are aware of at least three scenarios in which it may seek to elicit this evidence.    First, Mr. Guzmán may offer this evidence in rebuttal to the government's evidence of Mr. Guzmán's escapes from Mexican prison.    (*See* section II, *supra*). Second, if the government otherwise introduces evidence, argument, or implication that Mr. Guzmán is a continuing danger, the undersigned will seek to rebut those efforts with evidence of his conditions of confinement.    Third, the evidence

may become relevant if Mr. Guzmán's behavior in court is affected by the decompensation occasioned by his extreme isolation.    Therefore, Mr. Guzmán respectfully requests that this Court deny the government's motion at this time, and revisit it should it arise during trial.

### F.    *"Fast and Furious" operation*

The government asks this Court to preclude the defense from making any reference to the source of a weapon allegedly seized in Mexico as being the "Fast and Furious" operation run by the Bureau of Alcohol, Tobacco, and Firearms.    The undersigned cannot determine without hearing the government's evidence regarding how and where this weapon was supposedly possessed by Mr. Guzmán, whether its source -- be it United States law enforcement, or otherwise – will be relevant.    As such, the undersigned respectfully request that this Court deny the government's motion as premature.

### G.    *Sensitive law enforcement techniques*

The government asks this Court to make a pretrial ruling precluding inquiry by the defense into "means and methods" used by law enforcement to "track and locate" the defendant.    This Court should deny this broad, unspecific request.    At the heart of any criminal defense is the right of the defendant to question law enforcement officers on the capabilities and limitations of the techniques they used.

The cases actually cited by the government seem to point to a narrower request, which the undersigned can address.    First, the government cites *United States v. O'Brien*, for the proposition that "this court and other courts in this circuit routinely instruct juries not to consider how evidence was obtained."    No. 13-CR-586, 2017 WL 2371159 *12 (E.D.N.Y. May 31, 2017) The ruling in *O'Brien*, was not, however, quite so broad.    In that case, the jury was instructed not to consider whether the searches which resulted in the seizure of evidence against

the defendant were lawful.   Mr. Guzmán does not intend to ask the jury to consider the lawfulness of any seizures of evidence.

The government next cites *United States v. Alimehmeti*, 284 F.Supp. 3d 477, 494 (S.D.N.Y. 2018), to support its assertion that "testimony related to the sensitive law enforcement techniques by which law enforcement located the defendant and apprehended him ... has no bearing on the guilt and innocence of the defendant."   In *Alimehmenti*, the government moved *in limine* to preclude the defense from eliciting testimony as to the type of device that was used to make surreptitious recordings of the defendant and the precise location this device was hidden. The court granted the motion, concluding at the time of the ruling, the evidence did not appear to be relevant.   Mr. Guzmán does not intend to elicit the technical specifications of particular instruments used to conduct surveillance of Mr. Guzmán, unless he somehow discovers that a particular device is unreliable or incapable of gathering the evidence that the sponsoring officer claims it is.

Based on the evidence of which the undersigned are currently aware, the undersigned cannot say that the placement of a recording device may not become relevant.   The undersigned reserve the right to explore this issue to the extent that it had an impact on the ability of the device to record accurately.   To the extent *Alimehmeti* precludes inquiry into how entry to a particular property to place a device was gained, again, Mr. Guzmán cannot respond based on the current state of the evidence.   Although Mr. Guzmán does not currently anticipate raising this issue, the government may offer some evidence, for example as to the high security at a residence, which is directly rebutted by the ability of law enforcement to gain access to the property.

**H.**     *Potential punishment*

The undersigned are familiar with the Rules of Evidence and will not be asking

the jury to consider Mr. Guzmán's potential punishment.

**WHEREFORE**, Mr. Guzmán respectfully requests that this Court rule upon each

government request accordingly.

**Dated**: Washington, DC
        May 15, 2018                          Respectfully submitted,

                                              **BALAREZO LAW**

                                                    /s/
                               By:    _____
                                              A. Eduardo Balarezo, Esq.
                                              EDNY Bar # AB7088
                                              400 Seventh Street, NW
                                              Suite 306
                                              Washington, DC   20004
                                              Tel: (202) 639-0999
                                              Fax: (202) 639-0899
                                              E-mail: aeb@balarezolaw.com


                                              **PURPURA & PURPURA**

                                                    /s/
                               By:    _____
                                              William B. Purpura, Esq.
                                              8 East Mulberry Street
                                              Baltimore, MD   21202
                                              Tel: ((410) 727-8550
                                              Fax: (410) 576-9351
                                              E-mail: wpurpura@purpuralaw.com

                                              *Counsel for Defendant Joaquín Guzmán Loera*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 15th day of May 2018, I caused a true and correct copy of the foregoing Defendant's Opposition to Government's First Motion *In Limine* to be delivered via Electronic Case Filing to the Parties in this case

/s/
_____
A. Eduardo Balarezo, Esq.