UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES, | : |
| | : |
| *v.* | : |
| | : Criminal No. 09-0466(BMC) |
| JOAQUÍN GUZMÁN LOERA, | : Trial Date:11/5/18 |
| | : |
| *Defendant.* | : |

### DEFENDANT'S MOTION TO PRECLUDE EVIDENCE PERTAINING TO VIOLATION 85 OR, ALTERNATIVELY, TO COMPEL DISCLOSURE OF EVIDENCE AND TO CONTINUE TRIAL

Defendant Joaquín Guzmán Loera ("Guzmán"), by and through undersigned counsel, respectfully moves this Court for an Order precluding the government from introducing at trial any evidence relating to Violation 85 of Count 1, or alternatively, for a continuance of trial and directing the government to immediately produce evidence relating to Violation 85. In support of this Motion, Mr. Guzmán states as follows:

### FACTS

As this Court is well aware, the United States government has been investigating and seeking to prosecute Mr. Guzmán for many years. In fact, the government first charged Mr. Guzmán in Arizona in 1991 for his alleged illicit activities during the1980s and early 1990s. *See United States v. Guzmán*, No. 91-CR-446 (FRZ) (D. Ariz.). The government subsequently indicted him in the Southern District of California (95-CR-0973); Western District of Texas (01-CR-0659); Southern District of Florida (07-CR-020508); Northern District of Illinois (09-CR-0383); District of New Hampshire (11-CR-0084) and the Southern District of New York (12-CR-0439). Needless to say, the government has been playing Javert to Mr. Guzmán's Jean Valjean for a very long time.

1

Mr. Guzmán is before this Court on a fourth superseding indictment filed on May 11, 2016, which charges him and codefendant Ismael Zambada Garcia with a laundry list of offenses, including operating a continuing criminal enterprise (Count 1); participating in a wide-ranging narcotic trafficking conspiracy (Counts 2, 3 and 4); eleven counts of specific acts of distribution of cocaine (Counts 5 through 15); use of a firearm during a drug trafficking crime (Count 16); and conspiracy to launder narcotics proceeds (Count 17).

Although the government has not charged Mr. Guzmán with any violent offenses, it alleges in Count 1 (CCE) that:

> The defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMIBADA GARCIA and other leaders of the Sinaloa Cartel also employed "sicarios," or hitmen, who carried out hundreds of acts of violence, including murders, assaults, kidnappings, assassinations and acts of torture at the direction of the defendants.

Indictment at ¶ 5. The government also alleges in Violation 85 of Count 1, that Mr. Guzmán conspired "to kill and cause the intentional killing of one or more persons, to wit: persons who posed a threat to the Sinaloa Cartel." *Id*. ¶ 13.

Despite the fact that the Department of Justice and virtually every national law enforcement agency has been investigating and preparing this prosecution for many years, it was not until July 5, 2018 that the government decided to produce to the defense over 117,000 recordings and approximately 3,500 pages of 18 U.S.C. § 3500 material, leaving counsel with just over three months to review that material, investigate it, incorporate it to counsel's trial strategy and prepare for trial. Then, on July 20, 2018, the government served the defense with a "bill of particulars" vaguely describing "the murder conspiracy victims and dates relating to

Violation Eighty-Five of Count One." Doc. 269.[1] Unlike with the July 5 discovery dump, the late disclosure of which the government blamed on the government of Colombia, there is simply no reason for making the murder conspiracy disclosure at such a late date, except that the government is seeking to conceal from and game Mr. Guzmán.

The government stated that it "intended to prove" the murder conspiracies at trial and that it was "not disclosing the names of murder conspiracy victims if the disclosure of such names would reveal the identity of cooperating witnesses." *Id.* It also informed the defense that it would disclose the names of those additional murder conspiracy victims at the time it discloses its 18 U.S.C. § 3500 material for cooperating witnesses. *Id.* Those disclosures are to be made *two weeks* before the cooperators testify.

The government's "disclosure" is illusory. The first three "disclosures" cover a time period from January 1989 to September 2014 and list the victims as "Informants," "Members of law enforcement" and "Associates who betrayed the Sinaloa Cartel." The next several dates are slightly more "specific":

| | |
|---|---|
| September 2008 – September 2014 | Members of Beltran-Leyva Organization |
| September 2004 – September 2014 | Members of Carillo [*sic*]-Fuentes Organization |
| January 2001 – September 2014 | Members of Los Zetas |
| January 1990 – December 2011 | Members of the Arellano-Felix Organization |
| November 8, 1992 | Members of the Arellano-Felix Organization at Christine's Discotheque |

---

[1] The government disclosed this information less than two months from the initial trial date of September 5, 2018, and four days after the Court continued the trial to November 5, 2018 as a result of the government's late disclosure of over 117,000 recordings and other materials.

3

*Id.* The government's "disclosure" then names twenty additional purported victims and gives either a specific date or a year of their demise. *Id.* In effect, the government seeks to introduce evidence that Mr. Guzmán conspired to murder somewhere between twenty and an infinite number of people over a twenty-five-year period.

The government has provided extensive discovery in this case;[2] however, it has provided virtually no evidence of any homicides or violent acts. For example, the government has produced a "video related to the torture of a rival of the defendant." Doc. 184 at 3. That video is in Spanish, 3:57 minutes long and contains no information such as a date or location of the event or the identity of the purported victim, who appears to be bruised. The video does not show any actual violence and appears to have been downloaded from the internet. The government has also produced a video that it alleges is Mr. Guzmán questioning an unidentified person and also appears to have been downloaded from the internet, Doc. 109 at 2, and "photographs of a murder victim." Doc. 191 at 3; Doc. 232 at 2.

It is assumed that the source of government's "evidence" will be multiple cooperating foreign nationals and that the acts they will testify about took place outside the United States. The defense must be able to investigate the allegations, the circumstances and any possible witnesses in order to properly prepare for trial. Each event will result in a mini-trial and Mr. Guzmán is entitled to the evidence now so that he can defend himself. Disclosure of vague information such as the victim's identity two weeks prior to when the cooperator testifies is wholly inadequate in a case such as this, where there are already multiple counts and the alleged events took place in multiple countries over a long period of time.

---

[2] The government's discovery production is more akin to a document dump without any index, including "more than 320,000 pages of documents, and thousands of intercepted and recorded audio and electronic communications and dozens of videos." Doc. # 229 at 3.

Mr. Guzmán requests that this Court strike Violation 85 of Count 1 from the indictment, or greatly curtail the number of murder conspiracies the government may seek to prove, and grant counsel such additional time as will be commensurate with the number of murder conspiracies they will now have to defend against. If the Court grants a continuance, Mr. Guzmán requests that the Court direct the government to immediately produce: a) the identities of all victims; b) the exact dates of the events; c) the location of the events; d) any documents or other memorialization pertaining to each event; e) a cross-reference to the discovery produced to date for each event; f) all evidence pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) for each event.[3]

## ARGUMENT

The ultimate aim of our criminal justice system is not only to secure convictions, but also to ensure that the rights of the accused are protected. *See Harvey v. Horan*, 285 F.3d 298 (4th Cir. 2002) (Luttig, J., *concurring); Brady v. Maryland*, 373 U.S. 83, 87 (1963). So fundamental is that two-fold aim that our forefathers drafted substantive and procedural due process requirements into the language of the Fifth and Fourteenth Amendments to the Constitution, thereby mandating that prosecutions "comport with prevailing notions of fundamental fairness." *California v. Tombetta*, 467 U.S. 479, 485 (1984). "Fundamental fairness" is not merely an academic ideal, but is, in fact, "essential to the very concept of justice.'" *United States v. Valenzuela-Bernal*, 458 U.S. 858, 872 (1982) (quoting *Lisenba v. California*, 314 U.S. 219, 236 (1941).

---

[3] Mr. Guzmán requested this information via letter dated July 20, 2018. The government has failed to respond to that letter.

## A. THE COURT SHOULD STRIKE VIOLATION 85

As a threshold matter, this Court should dismiss Violation 85 because of the government's continued gamesmanship in the manner it produces evidence to which Mr. Guzmán is entitled and which is crucial for him to be able to defend himself. Here, on July 20, 2018, the government "disclosed" to the defense that it intended to present at trial evidence of no fewer than twenty to an unknown number of murder conspiracies in which Mr. Guzmán was somehow involved. Not only does the government not disclose the actual number of murders but also it does not even identify many of the victims. This "disclosure" was in addition to the more than 117,000 recordings the government dumped on the defense a few days earlier. That discovery dump caused the Court to delay trial for two months.

In their more than sixty years of collective experience,[4] undersigned counsel have never seen anything like this. It is almost as if the government believes that due to the breadth of their allegations against Mr. Guzmán he is entitled to diminished due process and only an illusory effective assistance of counsel. In any event, not only will it be almost physically impossible for counsel to review, investigate, and prepare to defend against literally innumerable murder conspiracies, it will be actually impossible to ensure that Mr. Guzmán's rights to due process of law, effective assistance of counsel, and right to present a defense are protected if the Court permits the government to proceed as it apparently intends.

The Court should also strike Violation 85 for failure to state an offense. Violation 85 charges Mr. Guzmán with a general conspiracy to commit murders of named and unnamed individuals in the course of violating 21 U.S.C. § 846(b)(1)(A) and 21 U.S.C. §

---

[4] Most of these sixty years is attributable to Mr. Purpura's age.
6

960(b)(1), in violation of 21 U.S.C. § 848(e)(1)(A). Title 21 U.S.C. § 848(e)(1)(A) provides an enhanced penalty of death[5] for:

> Any person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in an offense punishable under section 841(b)(1)(A) of this title or section 960(b)(1) of this title who *intentionally kills or counsels, commands, induces, procures, or causes* the intentional killing of an individual and such killing results, shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death.

*Id*. (emphasis supplied). "Statutory interpretation always begins with the plain language of the statute, assuming the statute is unambiguous." *Universal Church v. Geltzer,* 463 F.3d 218, 223 (2d Cir. 2006). In *United States v. Aguilar,* 585 F.3d 652 (2nd Cir. 2009), the Second Circuit explained:

> Upon a literal reading of the statute, then, a § 848(e)(1)(A) offense can be committed in one of three ways. First, such an offense is committed when a person kills while "engaging in ... a continuing criminal enterprise." *Id.* … Second, a § 848(e)(1)(A) offense is committed when a person kills while "working in furtherance of a continuing criminal enterprise." This phrase is not statutorily defined, but, in accordance with settled principles of interpretation, courts have given the phrase its "commonly understood meaning," *i.e.,* "working to promote or advance the interests of a continuing criminal enterprise." … This language signals Congress's "intent to broaden the scope of liability under § 848(e), beyond liability only for" homicidal drug kingpins—a relatively limited class of high-level drug traffickers—"to all who kill while working in furtherance of a [continuing criminal enterprise]," . . . including "hired henchmen ... who commit murder to further a drug enterprise in which they may not otherwise be intimately involved," . . . Third and finally, a § 848(e)(1)(A) offense is committed when a person kills while "engaging in an offense punishable under section 841(b)(1)(A) ... or section 960(b)(1)" of Title 21, *e.g.,* while manufacturing, distributing, or importing large quantities of drugs, *see id.* §§ 841(b)(1)(A), 960(b)(1), or conspiring to do so.

*Aguilar*, 585 F.3d at 657-58 (citations omitted).

    The text of the statute itself makes it clear that it is not intended to cover conspiracy and attempt. Of course, had Congress wished to include conspiracy and attempt, it

---

[5] In fact, the heading for 21 U.S.C. § 848(e) is "Death penalty."

would have done so.  It likely did not do so, because its intent was that those who violated the statute could be eligible for the death penalty.  Conspiracies and attempts to commit murder are categorically excluded from eligibility for the death penalty under modern Eighth Amendment law.  Congress was surely aware of this when it drafted the statute.  Thus, rather than including conspiracy and attempt, Congress went out its way to make clear that a killing must actually result, in order for a person to have violated the statute.  The language "and such killing results" indicates clearly that the *actus reus* is to be analyzed from the present to the past, not from the present to the future:  a person cannot presently attempt or conspire to commit a crime from which an actual "killing results."  Perhaps one could conspire to commit, counsel, command, induce, or procure, a killing, but not one from which an actual killing has resulted.  Violation 85 should be dismissed.  *See, e.g.,* Sandra D. Jordan, Revival of the Federal Death Penalty, Chicago-Kent Law Review (Vol. 67 April 1991) ("Congress passed legislation providing for a death penalty for drug kingpins who intentionally kill.  The 1988 legislation authorizes the death penalty for persons engaging in or working in furtherance of a continuing criminal enterprise ("CCE") who kill or who cause intentional killings.").

      **B.**    **THE GOVERNMENT'S CONDUCT VIOLATES MR. GUZMÁN'S RIGHT TO A FAIR TRIAL AND DUE PROCESS**

Although ours is an adversarial system, the government's "chief business" in a criminal prosecution "is not to achieve victory, but to establish justice." *See Brady*, 373 U.S. at n.2 (quoting remarks of Solicitor General Sobeloff).  While "there was a time when concealment and gamesmanship were accepted as part and parcel of the adversarial process of the criminal justice system" under common law, courts "decidedly rejected this system long ago."  *Harvey,* 285 F.3d at 317-18.  In fact, the Supreme Court has long held that the government's "overriding interest" in a prosecution is that "justice be done," and, with that basic

8

tenet in mind, the Court has recognized that a prosecutor serves the law above all else. *See United States v. Agurs*, 427 U.S. 97, 110-11 (1976) (internal citations omitted).

Obviously, the government has an obligation to prosecute its cases zealously, however its "primary obligation is to try each case fairly and with due regard for the accused's rights." *United States v. Carter*, 566 F.2d 1265, 1271 (5th Cir. 1978). When the government's conduct violates notions of fundamental fairness and is "shocking to the universal sense of justice," substantive due process is denied. *Kinsella v. United States ex rel. Singleton*, 361 U.S. 234, 246 (1960).

The Supreme Court has "long interpreted this standard of fairness to require that defendants be afforded a meaningful opportunity to present a complete defense." *Trombetta*, 567 U.S. at 485. "To safeguard that right….what might loosely be called the area of constitutionally guaranteed access to evidence" was developed. *Id.* (quoting *Valenzuela-Bernal,* 485 U.S. at 867); *See also Harvey,* 285 U.S. at 298; *United States v. Moussaoui*, 382 F.3d 453, 474 (4th Cir. 2004).

In this case, the government has lost sight of these basic tenets and is seeking to win no matter the cost. The government is engaging in concealment and gamesmanship and appears to be attempting to obliterate any semblance of due process and fairness for Mr. Guzmán by repeatedly withholding evidence and then dumping it on the defense at the last minute, thus making it impossible for Mr. Guzmán to prepare for trial.

The government obviously considers Mr. Guzmán a prized target and his prosecution is meant to be an example to deter others who are alleged to have committed similar offenses. The government's allegations against him are wide-ranging and span decades. Nevertheless, the fact that the government has charged him with multiple serious crimes, that his nickname is "el Chapo," or that an untold number of cooperators are testifying against him in

9

order to reduce their sentences, does not diminish Mr. Guzmán's right to a fair trial and due process.

Since Mr. Guzmán arrived in the United States, the government has gone out of its way to make it almost impossible for Mr. Guzmán to defend himself: a) he has been held in solitary confinement incommunicado from most of his family; b) he cannot perform a meaningful review of discovery with counsel because they cannot even be in the same room together; c) the immense amount of discovery has been produced in a disorganized fashion with no index or means to identify the relevance of much of it; d) at least 25,000 pages of crucial documents will not be produced to the defense until the literal eve of trial; e) the government only recently dumped 117,000 recordings on the defense; and f) now the government wants to introduce evidence of an infinite number of murders but not disclose to the defense the complete list of names of the victims. All this amounts to trial by ambush with no ability by Mr. Guzmán to properly prepare a defense and put the government to its burden. The way the case has developed will result in a show trial where guilt is a foregone conclusion. If that is the case, the Court may as well dispense with trial and go straight to sentencing.

Notwithstanding the government's many *ex parte* protestations about witness safety to the Court, at some point the witnesses will be identified and will have to testify publicly. The government can hide the evidence for only so long. However, Mr. Guzmán and his counsel must know what that evidence is before it is presented at trial.

Because of the government's repeated machinations and clear intentions to deprive Mr. Guzmán of a fair trial, the Court must preclude the government from introducing any evidence pertaining to Violation 85 at trial.

### C.  THE GOVERNMENT'S CONDUCT DEPRIVES MR. GUZMÁN OF THE EFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment provides that:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI.   That counsel is ethically obligated to thoroughly investigate the allegations against Mr. Guzmán is axiomatic.   *See* U.S. Const. amend. VI; *Strickland v. Washington*, 466 U.S. 668 (1984).   The American Bar Association Criminal Defense Function guidelines provide the following with regard to duty to investigate:

> Defense counsel should conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. The investigation should include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to defense counsel of facts constituting guilt or the accused's stated desire to plead guilty.

Standard 4-4.1(a).

In a typical murder case, at a minimum, the defendant is entitled to know little details like the name of the victim, the date of the murder, the place of the murder or even the manner of death.   This information is crucial for counsel to investigate and to determine whether there actually is a victim; whether there is a defense such as an alibi, self-defense or any other defense.   Without this minimal amount of information presented in sufficient time to investigate, counsel would run afoul of the Sixth Amendment *Strickland* standard.   The government has charged Mr. Guzmán with narcotics trafficking and seeks to introduce evidence of multiple

11

murders.   The impact of drug trafficking allegations will pale in comparison to the allegations of mass murder.

Here, counsel cannot discharge their obligations within the current trial date and the government's intentions with regard to the number of murder conspiracies.   If counsel is required to proceed under these circumstances, they will be forced to move to withdraw, rather than proceed to a trial for which they have been structurally precluded from being prepared. *See, e.g., Garcia v. Portuondo*, 459 F. Supp. 2d 267, 280 (S.D.N.Y. 2006) ("Representation of a criminal defendant entails certain basic duties, one of which is to investigate the facts of the case so that counsel can prepare a reasonably informed defense.").

This Court has considerable discretion with regard to the establishment of a trial schedule.   *Ungar v. Sarafite,* 376 U.S. 575, 564 (1964).   A court abuses its discretion, however, and violates due process, by engaging in "a myopic insistence on expeditiousness in the face of a justifiable request for delay."  *Id.*   The decision must be based on the facts and circumstances of the case.   In this case, the circumstances are simply unprecedented.   Counsel cannot be expected to prepare to defend against an unknown number of distinct murder conspiracies in just over fourteen weeks.   Forcing counsel to go forward under the current circumstances will "render the right to defend with counsel an empty formality."  *Id* . at 849-850 (citing *Chandler v. Fretag*, 348 U.S. 3 (1954)).

As noted previously, counsel has yet to receive any meaningful discovery reflecting Mr. Guzmán's involvement in murder conspiracies.   As the Court is aware, the discovery deadlines in this case have passed.   Any discovery provided by the government regarding these murders at this point is grossly late and the related evidence should be excluded in the name of Due Process.   *See* U.S. Const. amend. V, VI.

### D. EVIDENCE PERTAINING TO VIOLATION 85 SHOULD BE EXCLUDED UNDER FED. R. EVID. 403

If the Court determines that the government may proceed on the murder conspiracies as a legal matter, Mr. Guzmán requests that the number of conspiracies be limited based on Federal Evidence Rule 403. That rule provides that the Court may preclude the presentation of evidence if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. While there may be some murder conspiracies that are probative (and counsel cannot yet know, as they have yet to receive a whiff of discovery that would provide such information), it is plain that the sheer numbers involved here will create tremendous delay, will plainly be cumulative, and will be prejudicial almost beyond measure. *See, e.g., United States v. Basciano*, 2007 WL 1791221, at *3 (E.D.N.Y. June 19, 2007) ("numerous uncharged crimes are already being admitted and, at some point, the collective effect of all of these uncharged acts is to suggest criminal propensity.").

If the Court determines that it will permit the government to offer proof of one or more of these murder conspiracies, Mr. Guzmán respectfully requests that the Court grant a continuance, commensurate with the time required to prepare a defense. If the Court grants a continuance, Mr. Guzmán requests that the Court direct the government to immediately produce what is the bare minimum information needed by Mr. Guzmán to defend himself:  a) the identities of all victims; b) the exact dates of the events; c) the location of the events; d) any documents or other memorialization pertaining to each event; e) a cross-reference to the discovery produced to date for each event; f) all evidence pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) for each event.

## **CONCLUSION**

**WHEREFORE**, for the foregoing reasons, and any other that may become apparent to the Court, defendant requests that this motion be **GRANTED**.

Dated: Washington, DC
       July 24, 2018                      Respectfully submitted,

**BALAREZO LAW**

By: _____
A. Eduardo Balarezo, Esq.
EDNY Bar # AB7088
400 Seventh Street, NW
Suite 306
Washington, DC   20004
Tel: (202) 639-0999
Fax: (202) 639-0899
E-mail: aeb@balarezolaw.com

**PURPURA & PURPURA**

        /s/
By: _____
William B. Purpura, Esq.
8 East Mulberry Street
Baltimore, MD   21202
Tel: ((410) 727-8550
Fax: (410) 576-9351
E-mail: wpurpura@purpuralaw.com

*Counsel for Defendant Joaquin Guzmán Loera*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 24th day of July 2018, I caused a true and correct copy of the foregoing Defendant's Motion to Preclude Evidence Relating to Violation 85 or, Alternatively, to Continue Trial to be delivered via Electronic Case Filing to the Parties in this case.

_____
A. Eduardo Balarezo, Esq.