```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------x
                                         09-CR-466(BMC)
UNITED STATES OF AMERICA,
                                         United States Courthouse
          Plaintiff,                     Brooklyn, New York

          -against-                      February 15, 2018
                                         10:00 a.m.
JOAQUIN GUZMAN LOERA,

          Defendant.
------------------------------x

     TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
            BEFORE THE HONORABLE BRIAN M. COGAN
                 UNITED STATES DISTRICT JUDGE

APPEARANCES
For the Government:        UNITED STATES ATTORNEY'S OFFICE
                           Eastern District of New York
                           Brooklyn, New York 11201
                           BY:  ANDREA GOLDBARG
                                MICHAEL P. ROBOTTI
                                PATRICIA E. NOTOPOULOS
                                AMANDA LISKAMM
                                MICHAEL P. ROBOTTI
                                GINA PARLOVECCHIO

                           UNITED STATES ATTORNEY'S OFFICE
                           Southern District of Florida
                           Miami, Florida 33132
                           BY:  ADAM S. FELS
                                LYNN KIRKPATRICK

                           NARCOTIC AND DANGEROUS DRUG SECTION
                           Dept. of Justice, Criminal Division
                           Washington, DC 20530
                           BY:  AMANDA LISKAMM, ESQ.
                                ANTHONY NARDOZZI, ESQ.

For the Defendant:         BALAREZO LAW
                           400 Seventh Street, NW
                           Suite 306
                           Washington, DC 20004
                           BY:  ANGEL EDUARDO BALAREZO, ESQ.

Proceedings recorded by mechanical stenography.  Transcript
produced by computer-aided transcription.
```

1                (In open court.)

2                THE LAW CLERK:  All rise.

3                THE COURT:  Good morning.

4                MS. GOLDBARG:  Good morning, Your Honor.

5                THE COURT:  Be seated please.

6                THE COURTROOM DEPUTY:  United States versus Guzman,
7    Docket Number 09-CR-466.

8                Counsel, please state your appearances starting with
9    the government.

10               MS. GOLDBARG:  Good morning, Your Honor.  For the
11   government, Andrea Goldbarg, Amanda Liskamm, Gina
12   Parlovecchio, Anthony Nardozzi, Michael Robotti and Adam Fels.

13               THE COURT:  Okay.  Good morning.

14               MR. BALAREZO:  Good morning, Your Honor.  Eduardo
15   Balarezo on Behalf of Mr. Guzman.

16               THE COURT:  Good morning, Mr. Balarezo.

17               Good morning Mr. Guzman.

18               I'll note for the record that we have an interpreter
19   for Mr. Guzman, who is sitting next to him and has been
20   previously sworn.

21               All right, thank you both sides for the agenda that
22   I got.  It looks like we have agreement that March 23rd should
23   be the date for the submission of the jury questionnaire.  So
24   that's ordered.

25               If you can't agree on it, I hope you can -- we've

1 done enough of them in this courthouse -- but if you can't
2 agree on it, then please just give me marked versions of what
3 one side wants and the other side objects to and I'll make a
4 decision on those.
5       Okay. Next let's talk about the trial date.
6       Mr. Balarezo, I certainly understand why you needed
7 the case moved, given the volume of discovery. I'm not sure
8 why we can't start right after the holiday instead of sometime
9 towards the end of September.
10       MR. BALAREZO: Your Honor, the simple reason is my
11 wife would kill me. But I am at the Court's pleasure.
12       THE COURT: How long have you been married?
13       MR. BALAREZO: Close to 20 years.
14       THE COURT: You're still here, so odds are, you
15 know, she won't. I think we're all, mostly the lawyers but
16 even the Court, has to make sacrifices in a case like this,
17 and I do want to get it underway as soon as possible. So
18 let's start with jury selection on September 5th, okay.
19       Next, I do need a discovery cutoff date from the
20 government as to the non-3500 material.
21       Now I understand in a case like this there's always
22 going to be last minute small discoveries, and when I say
23 "last minute," I mean after the date that I'm going to set.
24 But I think the government ought to be done by, say, middle of
25 March, towards the end of March. When I say "done," I mean

1 substantially done but for a few documents that may have been
2 overlooked.
3             MS. GOLDBARG: Your Honor, we agree with that, but
4 we believe that we produced the vast majority of the discovery
5 and we are waiting for items that are not in our possession or
6 control, and we are turning those over as soon as we get them.
7             THE COURT: Okay, so let's say March 19th.
8             MS. GOLDBARG: Yes, sir.
9             THE COURT: That's the cutoff date for the
10 government to make discovery. It's a somewhat flexible date,
11 but we can't have a truck load of documents going to the
12 defendant after that date.
13             Okay, now, in terms of the motion schedule, I'm not
14 sure why the government is proposing two tranches. Why can't
15 we have all the motions at once?
16             MS. GOLDBARG: Your Honor, as we indicated in our
17 agenda, some of the motions will deal with information related
18 to 3500 material or witnesses that are subject to the delay
19 disclosure motion that we requested, therefore, we wouldn't be
20 in a position to do that earlier on.
21             THE COURT: Okay.
22             MS. GOLDBARG: So we think it would be logical to
23 split them up in that way.
24             THE COURT: Okay. That makes some sense, but your
25 proposed schedule is going to jam us up on the September 5th

trial.  I mean you're talking about reply papers on the second tranche of August 20th with a trial date of September 5th.

Let me ask this question.  It's always hard to set motion schedules without really knowing what the motions are.

Does the government anticipate any of its motions will require an evidentiary hearing?

MS. GOLDBARG:  I don't believe so, Your Honor.

THE COURT:  Okay.  It's still, for the second tranche, a short time.  I understand the government's concern about too early disclosure, but can't we move it up, the second tranche, the first tranche is fine, but the second tranche say ten days?

MS. GOLDBARG:  That's fine, Your Honor.

THE COURT:  Okay, let's do that.  I'm not going to count the days, but instead of August 6th, August 13th and August 20th, it will be ten days earlier.

Now with regard to the defendant's motions, I understand, Mr. Balarezo, that you want to have all the production in hand before you decide what motions you want to make.  On the other hand, you've got most of it now.  So what I'm going to do is this, unless you talk me out of it.  I'm going to say make your motions, particularly if you think they will require an evidentiary hearing.

Do you have any feel for that one way or the other right now?

1         MR. BALAREZO: Your Honor, I don't based on what
2 we've received, but I do based on just common sense.
3         THE COURT: I understand.
4         MR. BALAREZO: So I've asked the government for
5 certain information with respect to discovery. I've been told
6 by the government that I wouldn't have standing to raise
7 certain issues, which I don't believe is for the government to
8 tell me, but I will be making motions of that nature as soon
9 as I obtain the documents and/or make some kind of intelligent
10 argument to the Court.
11         THE COURT: Okay. Let me suggest this. Why don't
12 you make all motions that you can make by the government's
13 first tranche on April 9th.
14         Now that would have to be based on documents that
15 you already received as of this date, or at least that you're
16 going to shortly receive within the next few weeks.
17         MR. BALAREZO: April 9th?
18         THE COURT: April 9th, yes, that's when the
19 government has to move. You would move on the same day.
20         Oh, I'm sorry, I changed the government's dates. I
21 moved up the first tranche.
22         Can I move up the first tranche?
23         MS. GOLDBARG: Yes, sir.
24         MR. BALAREZO: There are a lot of people over there.
25         THE COURT: That's why I'm saying. Is there

1  anything I'm not perceiving that would make it impossible for
2  the government to move on April 9th instead of May 7th?
3            MS. GOLDBARG: Your Honor, just in light of the
4  discovery, we wanted to make sure that we had ample time to
5  get everything to defense counsel so he would be in a
6  position, but if the Court will like, we'll make that work.
7            THE COURT: I really want that to happen. I don't
8  want all these motions to be grouped towards the end.
9  Whatever we do, there are going to be things grouped towards
10 the end, so let's do as much as we can well in advance. So
11 let's say April 9th, May 7th, and May 21st for the first
12 tranche.
13           That will apply to defendant as well as to all
14 motions that could reasonably have been made based on
15 information turned over prior to that date. If you get
16 something after that date that requires either a motion or
17 maybe it strengthens a motion that I've denied because you
18 didn't have the document, then move again, move for a new
19 motion or move for a reconsideration. And on a
20 reconsideration motion, I'll give you a de novo review if it's
21 based on a newly received document.
22           MR. BALAREZO: Thank you.
23           THE COURT: Okay, so that will be the motion
24 schedule.
25           I have two pending motions. The defendant's motion

1    for disclosure of 404(b) material, and reconsideration on the
2    jury sequestration issue.
3           I'm not going to address those today because the
4    government's time to respond hasn't elapsed, let alone the
5    defendant's time to reply.  But I wonder if the 404(b) can be
6    fit into the schedule that we just set forth.
7           Does that work?
8           MS. GOLDBARG:  Yes, we would have suggested that to
9    the Court.
10          THE COURT:  Which tranche, the first or second?
11          MS. GOLDBARG:  The first tranche.
12          THE COURT:  Okay.  That's good enough.  Right,
13   Mr. Balarezo?
14          MR. BALAREZO:  Yes, Your Honor.
15          THE COURT:  Okay.  And other than setting another
16   status conference, that's all I have.
17          What else do the parties have?
18          MS. GOLDBARG:  Just with regard to the defense
19   motion for reconsideration, there is no current schedule for
20   if you like the government to respond.
21          THE COURT:  Don't we have a local rule?
22          MS. GOLDBARG:  As far as I'm concerned.
23          THE COURT:  I think so.  I think it says 14 days.
24   So your response is due soon.  But whatever the local rule
25   says, that's what we should do.

1       MS. GOLDBARG:  Thank you.

2       THE COURT:  What else, anything?

3       MR. BALAREZO:  Your Honor, not with respect to the
4  issues that were raised in the agenda.  I had an opportunity
5  to speak with my client yesterday and he informed me that he
6  wishes to address the Court with respect to certain issues
7  and...

8       THE COURT:  At the very least, if I'm going to do
9  that, you have to give me a preview of what the issues are,
10 and you need to explain to Mr. Guzman that under our system,
11 you know, he has the absolute right to represent himself,
12 which I would not recommend, but if he is represented by
13 lawyer, then his lawyer is supposed to do the talking, and
14 hybrid representation is really not permitted in most
15 situations.

16      Now I'm going to vary from that rule.  I want to
17 know what I'm getting into.  In fact, if it's anything that
18 can wait until our next status, I'd like a letter in advance
19 so I can give some consideration and not have to make a
20 spur-of-the-moment decision if I want to hear from him.

21      Do you know what the issues are?

22      MR. BALAREZO:  I do.  May I approach?

23      THE COURT:  Is there some reason why you can't say
24 them publicly?

25      MR. BALAREZO:  No.  No.  And the reason -- I

1 actually explained to Mr. Guzman, and I think I told him
2 exactly what the Court just mentioned, however, he is -- he
3 desires to speak to the Court directly, just so that the Court
4 is aware of his particular concerns.
5        And I think if I can characterize his comments, it
6 has to do with the way the conditions of requirement under the
7 SAMs are prohibiting him from obtaining the defense that he
8 wants. And there's a couple other comments, but that is the
9 principal issue that he wishes to address with the Court.
10        THE COURT: What's the government's position on
11 whether I should hear on this directly from the defendant?
12        MS. GOLDBARG: We defer to the Court, Your Honor.
13 There are issues we attempted to address with defense counsel
14 previously.
15        THE COURT: About how long, Mr. Balarezo?
16        MR. BALAREZO: Your Honor, no more than three, four
17 minutes, probably.
18        THE COURT: Okay. Okay.
19        MR. BALAREZO: Do you want him to sit or stand?
20        THE COURT: He can stand or sit, whatever he wants.
21        MS. GOLDBARG: Your Honor, will we be able to
22 approach sidebar on an issue before he starts?
23        THE COURT: Okay, with the understanding that if I
24 don't think it needs to be at sidebar, I'm going to have it
25 repeated publicly.

1  MS. GOLDBARG:  Yes, Your Honor.
2  (Sidebar conference.)
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1       (The following occurred at sidebar.)
2       MS. GOLDBARG:  There have been some issues, and
3 since this, the government's discussed with defense counsel
4 the defendant attempting to pass messages through family
5 members either calls or family visits.  We have a little bit
6 of a concern the defendant may attempt to try to pass a
7 message --
8       THE COURT:  Why didn't you object to his
9 presentation and say that.
10      MS. GOLDBARG:  Because we would defer to defense
11 counsel.
12      MR. BALAREZO:  Your Honor, if I can interrupt.
13      THE COURT:  Go ahead.
14      MR. BALAREZO:  He wants to speak to the Court with
15 respect to the issues that I raised.  The only thing he wants
16 to bring up to the Court that may even touch upon this, is
17 this past week there was an article that was published in
18 multiple Mexican media indicating that his family is not
19 paying for his defense because they have not heard from him
20 and/or know what his wishes are.  And I know because he gave
21 me the notes and I wrote it for him, and that's what he has
22 now.
23      He is going to say he wants his family to know he
24 wants to go to trial and he wants his attorneys to be paid.
25      THE COURT:  Why can't we just go back on the record

1  and say what we discussed at sidebar is that what the
2  defendant wants to do is refute an article in the newspaper
3  that says his family doesn't want to pay for them when, in
4  fact, he wants them to know that he does want them to pay for
5  them.
6          MR. BALAREZO:  That's one of the issues he wants to
7  discuss with the Court.
8          THE COURT:  What's to discuss?  It is a message that
9  he wants to get to his family, right?
10         MR. BALAREZO:  I guess you can characterize it --
11         MS. GOLDBARG:  The only issue that the defense
12 counsel had raised this issue with us we specifically obtained
13 a modification of the SAMs so the defendant could make that
14 request in writing that we would expedite and review it, and
15 that happened hasn't yet.
16         THE COURT:  I don't see why this has to be at
17 sidebar and not public.  I'm not crazy about it happening at
18 all.  Let's get the discussion in the open.
19         MS. GOLDBARG:  Thank you.
20         (End of sidebar conference.)
21         (Continued on the next page.)

1            (In open court.)

2            THE COURT:  Okay, there were not grounds to have a

3   private session, so the transcript will be available and we're

4   going to repeat essentially what's going on.

5            Notwithstanding the government's earlier statement

6   that it defers to the Court as to whether the defendant should

7   speak, I understand the government has some concerns.  Let me

8   hear the concerns.

9            MS. GOLDBARG:  Yes, Your Honor.

10           Under the terms of the SAMs, the government is

11  concerned that the defendant would use this opportunity to

12  pass messages to family members or others and the media, so

13  those would be our concerns.

14           Under the SAMs, defense counsel sought a

15  modification of the SAMs to be able to pass his message in

16  writing and it would go through the SAMs process in which it

17  would be viewed by the agents.  And we went to the appropriate

18  authority and got authorization for that modification, and we

19  didn't realize that this would be the same instance on the

20  same materials.  So there's already a process in place where

21  this information can be relayed.

22           THE COURT:  Mr. Balarezo.

23           MR. BALAREZO:  Your Honor, with respect to the issue

24  of the passing messages, per se, Mr. Guzman, in part of what

25  he wants to say, he wants to clarify certain media reports

1  that have been circuited regarding his family and their
2  ability and/or desire to pay for attorney's fees.
3           THE COURT: Be as specific as you were at sidebar,
4  please.
5           MR. BALAREZO: He wants to, in public, advise his
6  family that he wishes to go to trial in this case. He's not
7  going to cooperate. He's not going to plead guilty. And he
8  also wants the family to know that they should pay for the
9  attorneys.
10          THE COURT: Okay. Having made that record publicly,
11 is there any reason why I now have to hear from him again?
12          MR. BALAREZO: Yes, Your Honor. Because that's not
13 the sole subject of what he wants to discuss with the Court,
14 number one. Number two is part of the issue is not that --
15 believe me, I have told the family that he had hired me and,
16 obviously, I'm standing here.
17          I have told the family that Mr. Guzman obviously
18 wants to pay my fees, but that is not sufficient. Sometimes
19 people need to hear it from the horse's mouth. And because of
20 the rules, I'm not able to pass messages. He cannot talk to
21 family. He cannot give instructions. And that's the problem.
22          THE COURT: That's not quite right, though, right?
23          MS. GOLDBARG: That's correct, Your Honor.
24          THE COURT: As the government has pointed out, there
25 are procedures in place to let him get the kind of information

1  that you've just stated. Which, by the way, I don't see why
2  his family would disbelieve you with him sitting right next to
3  you, so the message has been communicated in any event.
4       And if there's something else, let me know what it
5  is he wants to allude to. That issue seems to me to be
6  covered.
7       MR. BALAREZO: Your Honor, the modification that the
8  government discussed was made at my request.
9       THE COURT: Yes.
10      MR. BALAREZO: The procedure is only when Mr. Guzman
11 wants to write a letter to his family, in this case his wife,
12 is that he writes a letter, he gives it to the guards at the
13 jail. The guards present it to the government and/or the
14 agents, it can take up to 60 days, because the letter is in
15 Spanish to translate it, to interrupt it, whatever it is they
16 do, and then they'll put it in the mail and hopefully she'll
17 get it.
18      I understand that Mr. Guzman has written letters to
19 her in the past that she has not received. So my request was
20 have him write the letter, have the government vet it,
21 investigate it, whatever it is they do in that time, and then
22 give it to me directly so that I can provide it to his wife.
23      They agreed. There is a modification for the SAMs.
24 However, as you can see, his wife is in the audience. The
25 letter, if I give it to the government today, for example, I

can apparently only hand deliver it to her.  So either I have to fly to Mexico to give her a letter or she has to come back to the United States.  I can't email it for whatever reason.  But any way, the letter would not --

THE COURT:  Why not Federal Express, or not to favor anyone, UPS or DHL?

MR. BALAREZO:  Although I did not request the modification to say this, the modification says hand deliver to Ms. Loera.

THE COURT:  Can't we use an international courier?

MS. GOLDBARG:  Yes, Your Honor.  The reason that we put that in the modification was because that actually was what defense counsel requested.  And when this issue was raised, he said we can go back and ask for an additional modification.

THE COURT:  I expect the lawyers to work these kind of issues out.  I think this can be done easily.  I don't need to hear from Mr. Guzman.  Sixty days is too long.  If it's a short letter, get it done in a week.  Okay?

MS. GOLDBARG:  Yes, Your Honor.

MR. BALAREZO:  I'm willing to offer the translation services to translate the letter from Spanish to English, if that will speed up the process.

THE COURT:  And show it to the government in Spanish, that's fine.  Really, you all have to work that out.

1  I don't need to get involved in that.
2          If there's anything else he wants to talk about,
3  what I want you to do is before the next status conference, at
4  least a couple weeks before, send me a letter explaining what
5  it is. And then perhaps, like today, we'll find that with the
6  letter, there's really no need for him to address me.
7          I have no doubt his family has heard what you said,
8  and I have no reason to think they won't believe what you
9  said.
10          MR. BALAREZO: Your Honor, with all due respect, the
11  persons that we are dealing with don't necessarily rely on the
12  attorney's words. That's all I'm saying.
13          THE COURT: If you want to ask your client if he
14  disagrees with anything you've said, because it's been
15  translated to him, he can tell me yes or no. And if he says
16  he agrees, I just don't think I can do much more for him.
17          THE DEFENDANT: Are you in agreement with what you
18  said? Yes. Yes, it's just that --
19          THE COURT: This is two minutes, Mr. Balarezo.
20          MR. BALAREZO: Mr. Guzman, through the interpreter,
21  he agrees with what I represented to the Court, but he also
22  wants to address the Court separate from the issues of fees
23  and telling his family that he wants to address the Court the
24  issues that are pertaining to him and his conditions and how
25  he's affected.

1           THE COURT:  Okay.  I might hear that, but I'm not
2    going to hear that, you need to explain to him in a vacuum.
3    Just because we happen to be here today, I don't want to hear
4    it for the first time here.
5           I will take it up.  All of his concerns.  I will
6    take it up at the next hearing when I've got a letter from
7    you, at least two weeks in advance, explaining what the
8    concerns are and adding that item to the agenda to discuss.
9    That's why I get these agendas.
10          MR. BALAREZO:  Yes, Your Honor.
11          THE COURT:  We'll do it that way.  Tell him I may
12   yet hear from him but not today because it's too sudden.
13          Okay, anything else before we set another date?
14          MS. GOLDBARG:  Not from the government, Your Honor.
15          THE COURT:  I understand you've talked to my deputy
16   and we have a date in April.
17          MS. GOLDBARG:  April 17th at 10 a.m.?
18          THE COURT:  Is that okay with everyone?
19          MR. BALAREZO:  Yes, Your Honor.
20          THE COURT:  Time is to be excluded based on the
21   complexity of the case.  I will see you then.  Thank you very
22   much.
23          MR. BALAREZO:  Thank you, Your Honor.
24          (Whereupon, the matter was concluded.)
25

I certify that the foregoing is a correct transcript from the
record of proceedings in the above-entitled matter.
/s/ Linda D. Danelczyk          February 22, 2018