

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

GMP:ASF/MPR/AJN
F. #2009R01065

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

August 13, 2018

**SUBMITTED <u>EX</u> <u>PARTE</u> AND UNDER SEAL**

<u>By ECF</u>
The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re: United States v. Joaquin Archivaldo Guzman Loera
          Criminal Docket No. 09 CR 466 (S-4) (BMC)

Dear Judge Cogan:

      The government respectfully submits this <u>ex</u> <u>parte</u> letter (the "Twelfth <u>Ex</u> <u>Parte</u> Submission") in support of its supplemental application for a protective order permitting the government to defer production of materials that identify witnesses (collectively, the "Supplemental Materials"). As the government explained in its public filing that accompanies this Twelfth <u>Ex</u> <u>Parte</u> Submission, <u>see</u> Dkt. No. 282, the Supplemental Materials provide information about cooperating witnesses whose identity as cooperating witnesses has not yet been disclosed to the defendant, his counsel or the public. These witnesses, together with their families, would face serious safety risks if the government revealed their cooperation or status as prospective trial witnesses at this time.[1] Accordingly, the Court should grant the government's motion for deferred disclosure of the Supplemental Materials.

---

     [1] Although the government previously filed motions to permit deferred disclosure of certain Rule 16 materials, <u>see</u> Dkt. Nos. 168, 203, which the Court granted, <u>see</u> Dkt. Nos. 176, 207, the Supplemental Materials covered by this motion either (1) were not in the government's possession at the time of the government's previous applications or (2) the government had not yet identified them as discoverable material at that time.

I.   Safety Concerns Related to the Disclosure of Witnesses

In its previous ex parte submissions, the government has explained its concern for the security of witnesses and the risks of disclosure of sensitive information in this case. See, e.g., Dkt. No. 31 at 3-4 (detailing defendant's attempts to silence cooperating witness by kidnapping his family members); Dkt. No. 45 at 2-3 (describing defendant's attempts to murder multiple cooperating witnesses, as well as murder of sons of cooperating witness by defendant's associates); Dkt. No. 78 at 2-3 (describing defendant's attempts to intimidate one cooperating witness and kidnapping of family of another cooperating witness at defendant's direction). In part because of the concerns raised in the government's prior ex parte submissions, the Court has entered a protective order, see Dkt. No. 57; upheld restrictions on the defendant's ability to receive visitors and contact third parties, see Dkt. No. 71; and ordered the defense not to reveal the names of potential witnesses in public filings, see Dkt. Nos. 116, 129. The Court also granted the government's previous motions to defer disclosure of Rule 16 materials that would identify the government's witnesses (the "First Deferred Disclosure Motion" and the "Second Deferred Disclosure Motion," respectively). See Dkt. No. 168, 176, 203, 207. The government respectfully submits that the same concerns that motivated its prior ex parte submissions and its previous motions for deferred disclosure likewise justify deferred disclosure of the Supplemental Materials.

II.   The Supplemental Materials

Set forth below is a particularized description of the Supplemental Materials organized by cooperating witness. The numbers used to identify the cooperating witnesses in this supplemental application continue the numbering used in the previous delayed disclosure motions, see Dkt. Nos. 168, 203.[2]

   A.   Cooperating Witness #6 ("CW #6")

CW #6 is an American-born cocaine wholesaler who estimates moving nearly 40 tons of the defendant's and Mayo Zambada's cocaine from May 2005 until December 2008. CW #6 and his brother surrendered to U.S. authorities in December 2008 and immediately became targeted by the defendant and the Sinaloa Cartel as soon as their cooperation was made

---

[2] The government does not believe that the identities of the cooperating witnesses are necessary for the Court to address the government's application for deferred disclosure of the Supplemental Materials. Should the Court find it helpful, however, the government will provide ex parte the identities of the cooperating witnesses referenced herein. In an abundance of caution, the government notes that, although it has not revealed the names of the cooperating witnesses in this submission, it has provided detail sufficient to allow the defendant or his co-conspirators to identify the witnesses described herein. As discussed further below, it is appropriate, therefore, for this submission to remain sealed and ex parte.

public. Their father moved to Mexico not long after CW #6's cooperation became known, and was murdered soon after relocating there.

CW #6 turned over drug ledgers detailing some of his myriad drug transactions with the Sinaloa Cartel. The ledgers do not mention the defendant by name, but do reference the defendant's right-hand man, Confidential Source #1 ("CS #1"), who himself was recently extradited to the United States to face charges. Were CS #1 to agree to testify against the defendant, these ledgers would corroborate CW #6's account and CS #1's anticipated account of engaging in cocaine transactions with each other and with the defendant. Were the government to turn over these ledgers now, however, the defendant would quickly be able to ascertain that CW #6 maintained the ledgers and that CW #6 is expected to testify in the upcoming trial. These ledgers are approximately 6 pages in total.

### B. Cooperating Witness #8 ("CW #8")

CW #8 was the head of a significant Colombian-based drug trafficking organization that provided several tons of cocaine to the defendant during the mid-2000s. While the government has obtained evidence suggesting that the defendant believes that CW #8 may be cooperating with the government, the government has not yet revealed to the defendant that CW #8 is expected to testify against the defendant at the upcoming trial.

The evidence related to CW #8 for which the government seeks deferred disclosure in this application are: (1) drug ledgers which detail the purchase of cocaine from CW #8's supplier in Ecuador in 2008 as well as the disbursement of a significant amount of funds for various expenses related to an upcoming shipment of this cocaine to the defendant in Mexico; and (2) maps of CW #8's family properties in Colombia, including photographs of clandestine airstrips on these properties. These ledgers, maps and photographs, which had been sought by the trial team for several months, were recently discovered when a copy of a hard drive was inadvertently produced to the trial team by an FBI agent who is not on the trial team. These ledgers—some of which contain CW #8's nicknames—and the maps and photographs of CW #8's properties—which the defendant initially sought to obtain in order to understand CW #8's logistical capabilities—would likely indicate that CW #8 is cooperating with the government. Disclosure of these materials would therefore expose CW #8 to the kinds of intimidation and interference set forth in the government's previous ex parte submissions. The ledgers, maps and photos consist of approximately 152 pages in total.

### C. Cooperating Witness #9 ("CW #9")

CW #9 is a Mexican national who began working for the defendant in approximately 2004. From 2004 until 2007, CW #9 worked directly for the defendant as a member of the defendant's security detail and as a personal secretary. CW #9 previously worked for the Mexican military, which provided him with weapons and training prior to working for the defendant. During 2007, CW #9 was a Cartel representative in Honduras. From late 2008-2010, CW #9 worked for the defendant's older sons, Ivan Guzman Salazar and Alfredo Guzman Salazar, as a member of their security detail. Towards the end of 2009, CW

3

#9 was summoned to a ranch with other members of the Cartel to plan an attack against the leader of a rival drug trafficking organization, Fausto Isidro Mesa Flores aka "Chapo Isidro," and his workers. This plan resulted in a large-scale armed conflict that led to multiple deaths and garnered coverage from the Mexican press.

The evidence related to CW #9 for which the government seeks deferred disclosure in this application is a single video (6:50 in length), which depicts news coverage of the aftermath of the planned incursion. To the government's knowledge, CW #9 is the only individual currently in custody in the United States who was involved with this particular armed conflict pursuant to the defendant's direction. For this reason, the government believes that disclosure of this particular video could potentially identify CW #9 as a cooperating witness. CW #9 recently made the government aware of the existence of the news coverage.

III.     Sealing and *Ex Parte* Filing

The government respectfully requests permission to submit this letter under seal and ex parte. Sealing and ex parte filing is warranted because of the concerns discussed supra regarding the safety of the witnesses and their families, and the danger posed by disclosing the witnesses' identities and their cooperation with the government. See Fed. R. Crim. P. 16(d)(1) (stating that court may permit party to show good cause for protective order "by a written statement that the court will inspect ex parte"); June 29, 2017 Mem. & Order, Dkt. No. 101 at 4-9 (describing appropriate circumstances for submitting information ex parte, including to protect witness safety); United States v. Amodeo, 44 F.3d 141, 147 (2d Cir. 1995) (need to protect the integrity of an ongoing investigation, including the safety of witnesses and the identities of cooperating witnesses, and to prevent interference, flight and other obstruction, may be a compelling reason justifying sealing). As the facts set forth herein provide ample support for the "specific, on the record findings" necessary to support sealing, Lugosch v. Pyramid Co., 435 F.3d 110, 120 (2d. Cir. 2006), the government respectfully requests that the Court permit the government to file this supplement to the government's application for a protective order permitting delayed disclosure ex parte and under seal. Should any order of the Court regarding this application describe the evidence or witnesses in question with particularity, rather than in general (as in the government's accompanying public filing and

proposed order), the government likewise requests that such order be filed under seal and <u>ex parte</u>.

        Respectfully submitted,

        RICHARD P. DONOGHUE
        United States Attorney
        Eastern District of New York

        ARTHUR G. WYATT, CHIEF
        Narcotic and Dangerous Drug Section
        Criminal Division,
        U.S. Department of Justice

        OF COUNSEL:

        BENJAMIN GREENBERG
        United States Attorney
        Southern District of Florida