

August 13, 2018

The Honorable Brian M. Cogan
United States District Judge
   for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY  11201

        Re:    *United States v. Joaquín Archivaldo Guzmán Loera*
                 Case No. 09-CR-0466(S-4)(BMC)

Dear Judge Cogan:

      I respectfully write on behalf of Mr. Guzmán to object to the government's request for an order permitting deferred disclosure of materials that identify cooperating witnesses.  (Doc. 282).  The government alleges that the materials "provide information that would identify one or more cooperating witnesses.  These witnesses, together with their families, would face serious safety risks if the government revealed their cooperation or status as prospective trial witnesses at this time."  (Gov. Mot. At 1-2).  As a result, the government seeks to defer production of the Rule 16 material until the time it produces § 3500 material for each witness identified by the materials.  *Id.*  Mr. Guzmán objects to the government's request.

## BACKGROUND

      As is painfully clear to anyone, Mr. Guzmán is currently detained at the Special Housing Unit of the Metropolitan Correctional Center under Special Administrative Measures (SAMs) imposed by the government and approved by the Court.  Under the SAMs, Mr. Guzmán is effectively not allowed any visitors except for his seven-year old daughters, who have visited with him a few times since he was extradited from Mexico in January 2017.  The government has forbidden (with the Court's approval) any visits or telephone calls with his wife.  The government approved visits with Mr. Guzmán's sister; however, shortly after her fist visit, the government revoked her visa so she can no longer enter the United States.  Mr. Guzmán is allowed only two monthly fifteen-minute telephone calls with his sister, mother and daughters.  He is completely isolated from other prisoners in the SHU.  He has no regular visitors except for his defense team.  The point is that Mr. Guzmán is completely isolated from the world outside of his dismal cell and equally dismal legal visiting room.

      The government has already sought and obtained from the Court a protective order severely limiting how Mr. Guzmán and his defense team can handle discovery.  For example, the defense cannot share the material with third-parties absent prior approval of government "firewall counsel" and the Court.  The government has justified these restrictions

400 Seventh Street NW    Ste 306    Washington, DC 20004

A. Eduardo Balarezo, Esq.      tel 202.639.0999      email aeb@balarezolaw.com
Admitted in DC, NY & MD      fax 202.639.0899      web www.balarezolaw.com

using multiple *ex parte* submissions to the Court. Including the current filing, the government has submitted, and the Court has accepted, twelve (12) separate *ex parte* submissions that resulted in Court orders that severely curtailed Mr. Guzmán's ability to defend himself. Without knowing what the government alleges, Mr. Guzmán is denied an opportunity to rebut the government's allegations.

According to the government, it has produced over 329,000 pages of documents and "hundreds of thousands of recorded conversations." (Gov. Mot. at 2). The bulk of this discovery has been produced since counsel entered their appearance in September 2017. When the defense reviews discovery with Mr. Guzmán, it must do so in an approximately 20 square foot room that is usually extremely hot or extremely cold; physically separated from Mr. Guzmán; and with no work space. Because of the size of the room, it is extremely difficult to have more than two people in the room at the same time.

The government has informed the Court that it will produce § 3500 on a rolling basis. The government "will disclose § 3500 material with respect to most of its lay and cooperating witnesses one month in advance of trial. Due to safety concerns related to particular witnesses, the government may delay disclosure of § 3500 material for certain witnesses until closer to the date of the witness's testimony at trial." (Gov. Mot. at 4). As the Court may be aware, the § 3500 material is extremely important to the preparation of the defense because it contains the statements of cooperating witnesses that are expected to directly implicate Mr. Guzmán in the conduct charged in the indictment. As it stands, Mr. Guzmán will have at most one month to review, investigate and prepare to cross-examine a long list of expected cooperators.

Now, the government seeks to keep from Mr. Guzman additional discovery due to undisclosed "serious safety risks" if the identities of the cooperating witnesses are revealed. Needless to say, the conditions under which counsel must defend Mr. Guzmán are abysmal and not conducive to effective representation.

## ARGUMENT

Federal Rule of Criminal Procedure 16(d)(1) states that

> At any time the court may, for good cause shown, deny, restrict, or defer discovery and inspection, or grant other appropriate relief. The court may permit a party to show good cause by a written statement that the court will inspect *ex parte*. If the relief is granted, the court must preserve the entire text of the party's statement under seal.

Fed. R. Crim. P. 16(d)(1). The granting of a protective order is left to the discretion of the trial court and the party seeking the protective order has the burden of showing that good cause exists for the issuance of that order. *See Gambale v. Deutsche Bank AG,* 377 F.3d 133, 142 (2nd Cir. 2004); *In re Terrorist Bombings in U.S. Embassies in E. Africa*, 552 F.3d 93, 122 (2nd Cir. 2008). The requested protective order at base seeks to restrict the dissemination of discovery material to the defense. The government fails to show good cause and bases its broadside on the attorney-client relationship and the defense function on an unspecified and unfounded assertion that the

disclosure of the discovery may threaten the safety of witnesses in this case.

Good cause exists "when a party shows that disclosure will result in a clearly defined, specific and serious injury." *In re Terrorist Attacks on September 11, 2001,* 454 F.Supp.2d 220, 222 (S.D.N.Y. 2006) (quoting *Shingara v. Skiles,* 420 F.3d 301, 306 (3rd Cir. 2005)). A finding of harm "must be based on a particular factual demonstration of potential harm, not on conclusory statements." *Anderson v. Cryovac, Inc.,* 805 F.2d 1, 8 (1st Cir. 1986)); *see also United States v. Wecht,* 484 F.3d 194, 211 (3rd Cir. 2007) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." (internal quotation marks omitted)). "The nature of the showing of particularity, however, depends upon the nature or type of protective order at issue." *United States v. Bulger,* 283 F.R.D. 46, 52–53 (D. Mass. 2012). Protective orders come in all shapes and sizes, "from true blanket orders (everything is tentatively protected until otherwise ordered) to very narrow ones limiting access only to specific information after a specific finding of need." *Poliquin v. Garden Way, Inc.,* 989 F.2d 527, 532 (1st Cir. 1993).

In *United States v. Barbeito*, 2009 WL 3645063, at *1 (S.D. W. Va. Oct. 30, 2009), the Court found that "it is appropriate ... to employ Rule 16(d) protective orders to curtail the public dissemination of sensitive discovery materials that may endanger witnesses or informants." *Id.* However, the *Barbeito* court noted that the risks present *in that case* was to informants *in that case*. Although the so-called risks were not specifically defined, at least there "appear[ed] to be allegations and evidence in the record already of efforts to harm informants by at least some of the defendants *in this case.*" *Id.* (emphasis added).

### I. There is No Basis to Restrict the Discovery

The supposed danger to cooperators is, at best, speculative. There has been no particular showing of any specific witness being threatened or harmed in relation to this case nor of any danger such a witness may face. Upon information and belief, the majority of the government's cooperating witnesses are in custody and it is also believed that their families are under government protection. Considering the extremely restrictive conditions of Mr. Guzmán's confinement, there is no credible assertion that he is in a position to direct or cause any harm to come to the cooperators. In fact, unless the government is suggesting that the defense team will disseminate hit orders from Mr. Guzmán, there is no realistic way for him to do anything with the identity of the cooperators.

### II. The Government's Request Will Further Prejudice the Defense

The government's case relies primarily on cooperators who are trading their testimony for lenient sentences. The government asks to keep the identity of these witnesses from the defense until "closer to the date of the witness' testimony at trial." Gov. Mot. at 4. At this point, neither the Court nor the defense know when "closer to the date" will be. Assuming the government wants to make these disclosures a mere week or two before the witness testifies, Mr. Guzmán's defense will be severely prejudiced. For example, not only are counsel currently attempting to prepare for a trial that is two-and-a-half months away; counsel are attempting to complete review of "more than 329,000 pages of documents"; listen to "hundreds of thousands of recorded conversations"; identify and interview dozens of possible witnesses; investigate at

over twenty alleged murders; meet with Mr. Guzmán regularly along with performing countless other tasks that are necessary to properly defend any case, let alone one such as this one. Once trial begins, the defense will have to spend all day in court and hours afterwards preparing for the next day. In addition, while the trial is ongoing, the defense will have to review, analyze, investigate and discuss with Mr. Guzmán the contents of the § 3500 material that is expected to be substantial.

## **CONCLUSION**

The government has failed to show good cause for a protective order. Granting the government's motion on speculative and hypothetical grounds obliterate Mr. Guzmán's due process rights and the ability of counsel to provide effective assistance. For the foregoing reasons and any other that may appear to the Court, Mr. Guzmán respectfully requests that the government's motion be denied.

Alternatively, were the Court inclined to grant the government's Motion, Mr. Guzmán respectfully requests that immediate disclosure be made to defense counsel for counsel's eyes only. Counsel would agree to abide by whatever conditions the Court deems appropriate. Counsel would then have an opportunity to perform whatever investigation is necessary in order to effectively represent Mr. Guzmán.

Respectfully submitted,

**BALAREZO LAW**

By: _____
A. Eduardo Balarezo, Esq.
EDNY Bar No. AB7088
400 Seventh Street, NW
Suite 306
Washington, DC  20001
Tel: (202) 639-0999
Fax: (202) 639-0899
E-mail: aeb@balarezolaw.com

*Counsel for Joaquín Guzmán Loera*

cc:     The parties via ECF