**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

GMP:MPR/AJN
F. #2009R01065

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 29, 2018

**TO BE FILED UNDER SEAL**

By ECF

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Joaquin Archivaldo Guzman Loera
Criminal Docket No. 09-466 (BMC) (S-4)

Dear Judge Cogan:

The government respectfully submits this letter to request that the Court impose sanctions on defense counsel Eduardo Balarezo, Esq., for his deliberate violation of the protective order in this case. See Dkt. No. 57. Specifically, following the filing of the government's second motions in limine on Friday, September 21, 2018, see Dkt. No. 327, Mr. Balarezo disseminated information filed under seal and subject to the protective order. Based on such protected information, Mr. Balarezo contacted the attorney for a potential cooperating witness in this case, stating that the government had "outed" [redacted] and that he would see defense counsel "in EDNY." Given Mr. Balarezo's ongoing disregard for the protective order in this case, as well as his pattern of conduct with respect to this particular witness, the government respectfully requests that the Court impose sanctions on him.[1]

[1] Although the government learned of Mr. Balarezo's conduct earlier in the week, it delayed filing this motion until it could address certain security concerns related to the potential cooperating witness's family. The government was unable to resolve those particular security concerns until early this morning.

I. Background

A. Defense Counsel's Prior Conduct

In support of the government's second supplemental motion for delayed disclosure, the government noted that Mr. Balarezo had openly speculated in the press regarding the identity of a potential cooperating witness. See Dkt. No. 286 at 2-4. In granting the government's motion to delay disclosure for certain material discoverable under Federal Rule of Criminal Procedure 16, the Court stated:

> As the Government explained to the Court in an ex parte filing submitted in conjunction with its application, these supplemental materials implicate the safety of certain of the Government's cooperating and testifying witnesses, because their contents will likely reveal those individuals' identities. Instead of disputing this claim, defendant has confirmed that the Government's fear is legitimate. At the August 14 conference, defense counsel stated that the Government's "[w]itnesses are going to be in danger when they're named in court. At some point, the Government is going to have to disclose these people's names publicly not just to us . . . ." 8/14/2018 Conf. Tr. 7:10-12. But this argument misses the point. As defense counsel acknowledged, the danger will crystalize as soon as the witnesses' names become public. The earlier their identities are revealed, the greater the risk. The Court continues to agree with the Government on this issue, and defendant has done nothing to assuage the Court of its very real concerns.
>
> Indeed, defendant had an opportunity during the August 14 conference to convince me that he would take measures to protect the witnesses' identities. At that conference, I considered defense counsel's suggestion that limiting the use of these supplemental materials to attorneys' eyes only ("AEO") would be a reasonable compromise. The Government disagreed, and argued that defense counsel have been speculating to the press as to the identity of testifying witnesses and discussing publicly the individuals whom they believe to be cooperating with the Government. In response, defense counsel made it clear that they would take no extra precautions if the Government provided the information on an AEO basis. 8/14/2018 Conf. Tr. 8:13-9:7. Instead, defense counsel said they would continue speaking about these matters in the same manner they have been throughout this case—which includes speculation about potential witnesses. That answer did not convince me that they would respond

> appropriately and adhere to both the letter and spirit of the AEO designation.
>
> . . .
>
> In support of their conduct, defense counsel argue that this speculation is perfectly fine where the fact of a witness's possible cooperation and testimony is publicly available. Defense counsel do not seem to appreciate that, although they may accurately profess ignorance of the Government's witness list, their words still carry significant weight. When defense counsel speak publicly about an issue, they not only draw attention to information that, while publicly available, may not have been widely known, but they also suggest to the public that they might have some underlying knowledge on the issue nevertheless. And if defense counsel were armed with identifying information about specific cooperating witnesses—which would be public knowledge if I granted counsel's request for an AEO designation on these materials—the implications of future public discussions and speculation could be serious.
>
> . . .
>
> Defense counsel has represented to the Court that they intend to continue speculating, including with the press, about whom the Government might call as witnesses in this case, and which individuals may be cooperating with the Government. I am convinced that the requested relief is necessary to protect the Government's witnesses.

Dkt. No. 291 at 2-4.

In response to the Court's order, Mr. Balarezo filed a motion for reconsideration, assuring the Court that he had not been "sufficiently articulate" and "inartfully explained" at the status conference on August 14, 2018. Dkt. No. 294 at 1. He asserted that he could be "trusted" and that, "if the information at issue was disclosed for attorney's eyes only, counsel would not disclose or discuss the material or its contents with any third-party, including Mr. Guzman." Id. at 2.

Following these complaints, the Court denied Mr. Balarezo's reconsideration motion. See Aug. 30, 2018, Dkt. Entry. The Court noted, however, that it "accept[ed] the explanation that defense counsel merely misspoke and is acting in good faith, but as the Court's August 24, 2018 order points out, it is easy to inadvertently disclose sensitive information of this nature." Id.

B. Defense Counsel's Violation of the Protective Order

On Friday, September 21, 2018, the government filed its second motions in limine. See Dkt. No. 327. In that motion, for the first time, it disclosed identifying information regarding its cooperating witnesses to defense counsel. Among the cooperating witnesses the government discussed in that motion was cooperating witness #4 ("CW4"). The government filed that information under seal and pursuant to the protective order. See id. at 95.

On September 23, 2018, the government received a voicemail message from counsel for CW4. She stated that she had received a text message from Mr. Balarezo, informing her that the government had disclosed the identity of CW4 to him. The government subsequently spoke directly with counsel for CW4 and received further details. Counsel for CW4 stated that she received a text message at 6:53 p.m. on Sunday, September 23, 2018, which read, "You know the gov outed [CW4]? See you in EDNY." A screen shot of Mr. Balarezo's text message is attached hereto as Exhibit A.

The government referred to CW4 in multiple portions of its second motions in limine. See Dkt. No. 327. [redacted] Id. at 56-58. Pursuant to the protective order in this case, the government filed the information described above under seal, and it redacted that information in the publicly filed version of its motion. Id.

From the government's motion, Mr. Balarezo appears to have deduced that CW4 is a witness the government intends to call against the defendant at trial. It is clear from the timing of Mr. Balarezo's message, shortly after the government filed its motion, that Mr. Balarezo made his deduction by reviewing the sealed portion of its motion. See Dkt. No. 327.

His blatant disregard for the Court's clear orders notwithstanding, the government's concerns with Mr. Balarezo's conduct are heightened based upon a pattern of questionable behavior as it relates to CW4. On [redacted] Mr. Balarezo appeared at a status hearing for CW4 [redacted] Mr. Balarezo sat in the front row of the nearly empty courtroom in a location where CW4 could see him. Later, on September 5, 2018, Mr. Balarezo sent counsel for CW4 a written request asking for the opportunity to speak with CW4. Both of those instances of conduct could be defended as attempts to gather information for the purposes of representing the defendant in the instant

matter. However, the text message Mr. Balarezo sent serves no constructive purpose and cannot be construed as anything other than an attempt to frighten and intimidate a potential witness against the defendant.

II. The Court Should Impose Sanctions

A. The Protective Order

Rule 16 authorizes a court to, "[a]t any time . . . , for good cause, deny restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1). "If a party fails to comply with this rule, the court may . . . enter any other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2)(D). The Court is authorized to impose sanctions for a violation of a protective order. See United States v. Seltzer 227 F.3d 36, 41 (2d Cir. 2000) (stating that courts have "inherent power" to impose sanctions); United States v. Basciano, No. 03-CR-929 (NGG), 2006 WL 2270432, at *2 (E.D.N.Y. June 30, 2006) ("I hereby order that the distribution of any disclosed Jencks Act materials to any individual outside of the trial defendants, trial counsel and their paralegals or other legal staff is strictly prohibited and any such distribution will be met with sanctions."); United States v. Barrett, No. 10-CR-809 (S-4)(KAM), Feb. 10, 2012 Dkt. Entry, Dkt. Nos. 504, 604 (imposing sanctions on defense counsel for violation of protective order); see also In re Debs, 158 U.S. 564, 594 (1895) ("[T]he power of a court to make an order carries with it the equal power to punish for a disobedience of that order, and the inquiry as to the question of disobedience has been, from time immemorial, the special function of the court."); Dorsett v. Cty. of Nassau, No. CV 10-01258 ADS, 2012 WL 2076911, at *6 (E.D.N.Y. June 7, 2012) ("[C]ourts have the inherent power to maintain the integrity of protective orders by imposing sanctions on those who violate them.").

On March 21, 2017, the Court entered the protective order in this case. See Dkt. Nos. 51, 57. After he filed a notice of appearance, Mr. Balarezo reviewed the protective order at the government's office and signed an acknowledgment form. See Ex. B ("I understand that I am not allowed to disclose the Protected Discovery, as defined in the Protective Order, to anyone who is not assigned to, and directly involved in, the preparation of the defense in this case"). The protective order in this case specifically protects "[i]nformation that could lead to the identification of potential witnesses, including . . . cooperating witnesses." Dkt. No. 57 ¶ 1. It prohibits dissemination of the Protected Material "to anyone other than the defendant Joaquin Archivaldo Guzman Loera . . . , Defense Counsel or Defense Counsel's Team (as defined below), and must remain in the custody of the Defense Counsel at all times." Id.

The government's request for partial sealing in its second motions in limine was unambiguous, reading in pertinent part:

> Pursuant to the protective order in this case, the government respectfully requests permission to submit this brief partially under seal. See Dkt. No. 57 ¶ 8. Portions of this brief refer to the government's cooperating witnesses. Although the cooperating

> witnesses are not identified by name herein, the defendant's criminal associates likely could use the information described herein to identify those witnesses.

Dkt. 327 at 95.

B. The Court Should Sanction Mr. Balarezo for Violating the Protective Order

Less than 48 hours after receiving access to identifying information about the government's cooperating witnesses for the first time, Mr. Balarezo disseminated that information to a third-party. His actions are an explicit violation of the terms of the protective order in this case. These actions come on the heels of his admitted speculation in the press regarding the identity of a cooperating witness. Either Mr. Balarezo fails to appreciate the affect that his words have on potential witnesses in this case or he is purposefully trying to intimidate them. Regardless, his conduct is dangerous, has the effect of pressuring witnesses into silence and must be stopped prior to the government's disclosure of its § 3500 material.[2] This time, Mr. Balarezo cannot claim that he was not "articulate" or "inartful"; his text message to CW4's attorney referring to protected information is clear, and it warrants sanctions.

The risk to the government's witnesses will be at its height in the coming weeks and months. The protective order is in place to attempt to minimize that risk and to ensure that the Sinaloa Cartel does not harm or kill those witnesses. To deter future violations of that order—which could have dire consequences—and to ensure that Mr. Balarezo takes his obligations pursuant to that order seriously, the government respectfully requests that the Court sanction him by imposing a monetary fine in an amount deemed appropriate by the Court or impose other sanctions that the Court deems appropriate.

III. Partial Sealing is Appropriate

Pursuant to the protective order in this case, the government respectfully requests permission to submit this brief partially under seal. See Dkt. No. 57 ¶ 8. Portions of this brief refer to a cooperating witnesses. Although the cooperating witness is not identified by name herein, the defendant's criminal associates likely could use the information described herein to identify that witness.

Thus, partial sealing is warranted because of the concerns regarding the safety of potential witnesses and their families, and the danger posed by disclosing the potential witnesses' identities and their cooperation with the government. See United States v. Amodeo,

---

[2] In light of Mr. Balarezo's violation of the protective order, the government may seek to delay disclosure of 18 U.S.C. § 3500 material for additional witnesses. The government will make any additional such motions in advance of the October 5, 2018 deadline to disclose § 3500 material for cooperating witnesses.

44 F.3d 141, 147 (2d Cir. 1995) (need to protect integrity of ongoing investigation, including safety of witnesses and identities of cooperating witnesses, and to prevent interference, flight and other obstruction, may be compelling reason justifying sealing); see Feb. 5, 2018 Mem. & Order Granting Gov't Mot. for Anonymous and Partially Sequestered Jury, Dkt. No. 187 at 2-3 (concluding that defendant's actions could pose risk of harm to cooperating witnesses). As the facts set forth herein provide ample support for the "specific, on the record findings" necessary to support partial sealing, Lugosch v. Pyramid Co., 435 F.3d 110, 120 (2d. Cir. 2006), the government respectfully requests that the Court permit the government to file this motion for sanctions partially under seal. Should any order of the Court regarding this application describe the sealed information in question with particularity, rather than in general, the government likewise requests that those portions of the order be filed under seal.

Respectfully submitted,

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

ARTHUR G. WYATT, CHIEF
Narcotic and Dangerous Drug Section
Criminal Division,
U.S. Department of Justice

OF COUNSEL:

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY
Southern District of Florida

cc: Clerk of Court (BMC) (via ECF)
Defense Counsel (via Email)