**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

GMP:MPR
F. #2009R01065

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 1, 2018

**TO BE FILED UNDER SEAL**

By ECF

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Joaquin Archivaldo Guzman Loera
Criminal Docket No. 09-466 (BMC) (S-4)

Dear Judge Cogan:

The government writes in reply in support of its motion to impose sanctions on defense counsel Eduardo Balarezo, Esq., for his deliberate violation of the protective order in this case. See Dkt. Nos. 334, 335. In his opposition to the government's motion, Mr. Balarezo admits that he contacted the attorney for a potential cooperating witness ("CW4"), stating, "the government outed [CW4]. see you in EDNY." See Dkt. No. 336 at 4. Nonetheless, he attempts to minimize his conduct and argues that it does not warrant sanctions. The Court should reject these arguments and sanction Mr. Balarezo.

First, Mr. Balarezo attempts to explain away his conduct as harmless banter with a friend. See id. at 3-5. The protective order, however, does not contain a carve out for Mr. Balarezo's friends. Friend or not, CW4's counsel is not a person to whom Mr. Balarezo is authorized to disseminate protected material under the protective order. See Dkt. No. 57 ¶ 1. Moreover, Mr. Balarezo's claim that his text message was harmless banter is belied by the fact that CW4's counsel was concerned enough about the text message that she notified the government of it immediately after Mr. Balarezo sent it.[1]

[1] Additionally, Mr. Balarezo's opposition makes clear that CW4's counsel had previously—and quite properly—declined to confirm to Mr. Balarezo that CW4 was a cooperating witness against the defendant, even as Mr. Balarezo pressed in a text message to CW4's counsel that he "knew" that CW4's counsel wanted to speak to him about the representation and that CW4's counsel should "say hey" to CW4 for him. Dkt. No. 336 at 3.

Second, Mr. Balarezo claims that his conduct did not violate the protective order. See Dkt. No. 336 at 4-6. Specifically, he asserts that his statement the "government outed [CW4]" did not refer to protected material in the government's second motions in limine. But Mr. Balarezo's own words squarely contradict this argument. The government's brief contained identifying information related to CW4. By stating that the "government outed" CW4, Mr. Balarezo was clearly referring to the identifying information related to CW4 in the government's brief, which was filed under seal pursuant to the protective order. To violate the protective order, Mr. Balarezo need not have disseminated the specific identifying information cited in the government's brief. It is more than sufficient that he disseminated the fact that the government identified CW4 as a potential cooperating witness. Indeed, the whole point of the protective order is to prevent dissemination of the identities of the government's witnesses; it is the government's confirmation of a person as a witness that poses the gravest security risk to that person. Thus, by disseminating the fact that the government identified CW4 as a potential witness, Mr. Balarezo explicitly violated the protective order.[2]

Third, Mr. Balarezo's claim that he did not violate the protective order because CW4's counsel already knew CW4 was cooperating merits little discussion. The protective order does not permit Mr. Balarezo to disseminate protected material whenever he believes that the recipient of the protected material is already aware of it. It specifically limits dissemination of the protected material to specified members of the defense. There is good reason to prohibit defense counsel from sharing his knowledge of the protected material with counsel for cooperating witnesses and the cooperating witnesses themselves. Defense counsel's dissemination of that information to the cooperating witnesses can have the effect of intimidating those witnesses into silence. Coming from the defense camp, a simple message such as "we know you're a witness" strikes fear and—despite Mr. Balarezo's assertions to the contrary, see Dkt. No. 336 at 7—those messages violate the spirit of the protective order. Given the Sinaloa Cartel's history of extreme violence, the government does not take such violations lightly, and it will seek to redress them with the Court.

Fourth, the defendant asserts that he has not engaged in a pattern of questionable behavior with respect to CW4. See id. at 7-8. The government does not dispute Mr. Balarezo's right to prepare his case and his duty to investigate. But legitimate investigative techniques may be undertaken in a manner designed to intimidate. In light of the defendant's history of [redacted] Mr. Balarezo's pattern of conduct [redacted] raises serious concerns.

---

[2] Indeed, as the Court has noted, it has "explicitly put limits on the dissemination of § 3500 material even where it has been made publicly available, because such dissemination connects the testifying witness with this case, suggesting that he is a potential witness or cooperator, thus raising the most serious security concerns." Dkt. No. 116 at 2 (emphasis in original; internal quotation marks omitted). Mr. Balarezo's dissemination of the fact that the government has identified CW4 as a potential cooperating witness clearly implicates those same concerns.

Lastly, Mr. Balarezo asserts that he did not openly speculate about a cooperating witness in the press. See Dkt. No. 336 at 8. But Mr. Balarezo's transcript of his interview proves that he did. [redacted] Id. at 11. As the Court pointed out in granting the government's previous motion for a protective order, such comments by defense counsel are dangerous:

> In support of their conduct, defense counsel argue that this speculation is perfectly fine where the fact of a witness's possible cooperation and testimony is publicly available. Defense counsel do not seem to appreciate that, although they may accurately profess ignorance of the Government's witness list, their words still carry significant weight. When defense counsel speak publicly about an issue, they not only draw attention to information that, while publicly available, may not have been widely known, but they also suggest to the public that they might have some underlying knowledge on the issue nevertheless. And if defense counsel were armed with identifying information about specific cooperating witnesses—which would be public knowledge if I granted counsel's request for an AEO designation on these materials—the implications of future public discussions and speculation could be serious.

Dkt. No. 291 at 3.

Given Mr. Balarezo's pattern of conduct in this case, the government respectfully requests that the Court impose sanctions. The danger to the government's witnesses increases as trial approaches. To protect them, the Court must deter future violations of the protective order. It thus should grant the government's motion.

Pursuant to the protective order in this case, the government respectfully requests permission to submit this brief partially under seal. See Dkt. No. 57 ¶ 8. Portions of this brief refer to a cooperating witnesses. Although the cooperating witness is not identified by name herein, the defendant's criminal associates likely could use the information described herein to identify that witness. Thus, partial sealing is warranted because of the concerns regarding the safety of potential witnesses and their families, and the danger posed by disclosing the potential witnesses' identities and their cooperation with the government. See United States v. Amodeo, 44 F.3d 141, 147 (2d Cir. 1995) (need to protect integrity of ongoing investigation, including safety of witnesses and identities of cooperating witnesses, and to prevent interference, flight and other obstruction, may be compelling reason justifying sealing); see Feb. 5, 2018 Mem. & Order Granting Gov't Mot. for Anonymous and Partially Sequestered Jury, Dkt. No. 187 at 2-3 (concluding that defendant's actions could pose risk of

harm to cooperating witnesses). As the facts set forth herein provide ample support for the "specific, on the record findings" necessary to support partial sealing, Lugosch v. Pyramid Co., 435 F.3d 110, 120 (2d. Cir. 2006), the government respectfully requests that the Court permit the government to file this reply in support of its motion for sanctions partially under seal. Should any order of the Court regarding this application describe the sealed information in question with particularity, rather than in general, the government likewise requests that those portions of the order be filed under seal.

Respectfully submitted,

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

ARTHUR G. WYATT, CHIEF
Narcotic and Dangerous Drug Section
Criminal Division,
U.S. Department of Justice

OF COUNSEL:

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY
Southern District of Florida

cc: Clerk of Court (BMC) (via ECF)
Defense Counsel (via Email)