

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

GMP:MPR                              *271 Cadman Plaza East*
F. #2009R01065                       *Brooklyn, New York 11201*

October 19, 2018

**TO BE FILED UNDER SEAL**

By ECF

The Honorable Brian M. Cogan
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re:   United States v. Joaquin Archivaldo Guzman Loera
              Criminal Docket No. 09-466 (S-4) (BMC)

Dear Judge Cogan:

       The government respectfully submits this letter in connection with the trial in the above-referenced matter. Concurrently with this letter, and pursuant to its obligations under Giglio v. United States, 405 U.S. 150 (1972), the government has notified the defendant by separate letter of information related to certain potential government witnesses. In this letter, the government moves in limine to preclude cross-examination about certain of the disclosed information and for a limiting instruction related to court-imposed sentences on the government's cooperators. Additionally, for purposes of streamlining its case, the government has elected not to proceed on certain violations charged in Count One of the Indictment as well as several additional counts in the Indictment, which are outlined below.

I.      Motion to Limit Cross-Examination

      A.     Legal Standard

       The scope and extent of cross-examination is committed to the sound discretion of the district court. See United States v. Wilkerson, 361 F.3d 717, 734 (2d Cir. 2004). The court may properly bar cross-examination that is only marginally relevant to a defendant's guilt or other issues before the court. See United States v. Maldonado-Rivera, 922 F3d. 934, 956 (2d Cir. 1990); see also Fed. R. Evid. 611 (stating that "court should exercise reasonable

control . . . so as to . . . avoid wasting time[] and protect witnesses from harassment or undue embarrassment").

A "decision to restrict cross-examination will not be reversed absent an abuse of discretion." United States v. Lawes, 292 F.3d 123, 131 (2d Cir. 2002) (citing United States v. Rosa, 11 F.3d 315, 335 (2d Cir. 1993)).  The Second Circuit has repeatedly upheld district courts' exercise of discretion in imposing reasonable limits on the subjects that may be inquired into on cross-examination.  See United States v. Rivera, 971 F.2d 876, 886 (2d Cir. 1992) ("The court is accorded broad discretion in controlling the scope and extent of cross-examination."); Rosa, 11 F.3d at 336 (holding that district court properly precluded cross-examination on alleged rape and burglary by witness because conduct did not bear directly on witness's credibility and allegations were unsubstantiated).

Where a party seeks to elicit testimony regarding specific instances of a witness's conduct to attack the witness's character for truthfulness, the admission of that testimony is governed by Federal Rule of Evidence 608(b).  See United States v. Peterson, 808 F.2d 969, 973-74 (2d Cir. 1987); see also United States v. Cruz, 894 F.2d 41, 43 (2d Cir. 1990) ("Under Rule 608(b), the court has discretion to permit or deny a line of inquiry on cross-examination.").  Rule 608(b) provides in pertinent part:

> Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.  But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness.

Fed. R. Evid. 608(b).  The advisory committee's note to Rule 608(b) also notes that because the "possibilities of abuse are substantial" in cross-examination, specific instances may only be inquired into if they are probative of truthfulness, "not remote in time," and not "outweighed by danger of unfair prejudice, confusion of issues, or misleading the jury."  Fed. R. Evid. 608 ad. comm. note.

Rule 609(a)(1)(A) provides that evidence of a witness's conviction for a felony offense "must be admitted, subject to Rule 403" and that evidence "for any crime regardless of the punishment . . . must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement."  Fed. R. Evid. 609(a)(2).  Moreover, if more than 10 years have passed since the witness's conviction or release from confinement, whichever is later, evidence of a conviction

is "admissible only if its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b).

       Admission of such evidence is further limited by Federal Rules of Evidence 402 and 403, which exclude otherwise relevant evidence if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues . . . , or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." United States v. Figueroa, 548 F.3d 222, 229 (2d Cir. 2008); United States v. Devery, 935 F. Supp. 939, 407-08 (S.D.N.Y. 1996) ("[E]ven if the prior act does concern the witness's character for truthfulness under Rule 608(b), its probative value must not be substantially outweighed by its unfairly prejudicial effect under Rule 403."); United States v. Brown, No. 07-CR-874 (KAM), 2009 WL 497606, at *4 (E.D.N.Y. Feb. 26, 2009).  "In evaluating the probity of specific instances of conduct, courts consider numerous factors, including 'whether the testimony of the witness in question is crucial or unimportant, the extent to which the evidence is probative of truthfulness or untruthfulness, the extent to which the evidence is also probative of other relevant matters, the extent to which the circumstances surrounding the specific instances of conduct are similar to the circumstances surrounding the giving of the witness's testimony, [and] the nearness or remoteness in time of the specific instances to trial . . . .'" United States v. Nelson, 365 F. Supp. 2d 381, 390 (S.D.N.Y. 2005) (quoting John W. Strong, McCormick on Evidence § 41).

       Likewise, Federal Rule of Evidence 611 requires district courts to exercise "reasonable control" over the mode of interrogating witnesses so as to avoid "needless consumption of time" and to "protect witnesses from harassment or undue embarrassment." Fed. R. Evid. 611(a).  Thus, when considering the admission under Rule 608(b) of specific instances of conduct that the court finds probative of truthfulness, the court must balance the probative nature of the conduct against the Rule 403 and Rule 611 factors.  See Brown, 2009 WL 497606 at *4.  Moreover, pursuant to Rule 608(b), extrinsic evidence of a witness's prior conduct may not be admitted to attack his truthfulness.  Peterson, 808 F.2d at 973-74; Brown, 2009 WL 497606 at *3.

       Additional legal standards that specifically relate to the particular items of evidence or lines of questioning that the government seeks to preclude are referenced below.



4









8



9



II.     Motion for Limiting Instruction Regarding Court-Imposed Sentences

████████████████████████████████████████████████████ Because sentencing is a judicial determination based on many factors, the defendant's questions and arguments based on a cooperating witness's sentence may mislead the jury into believing that the government selected and imposed a cooperating witness's sentence. To avoid any such confusion, the government therefore moves for a limiting instruction following CW10's testimony regarding judicially imposed sentences.

The government requests that the Court give the same instruction that it gave in United States v. Cacace, No. 08-CR-240 (S-7)(BMC).  There, the Court instructed the jury as follows:

> Ladies and gentlemen, let me explain to you a little bit about how federal sentencing works, particularly with regard to cooperating witnesses.  When someone cooperates with the government the government does not determine what sentence they are going to get. Nor does the government [typically] make a recommendation to the sentencing judge as to how much time they're going to get. What the government will do, if it is satisfied with the level of cooperation, is write to the sentencing judge what is known as a 5k1 letter. That sets forth the nature of the crimes that the defendant has committed and all the cooperation that the defendant has undertaken. The judge takes that letter, together with a lot of other information about the defendant and all of the crimes that he's committed, and it is the judge exclusively that decides upon the appropriate sentence; not the government.
>
> So all that a cooperating witness gets from the government, if the government is satisfied with their cooperation, is this 5k1 letter.
>
> I won't tell you that the 5k1 letters aren't important to sentencing judges, they generally are, but it is the judge's decision and only the judge's decision as to what the sentence should be.

Trial Tr. dated Mar. 20, 2012 at 327:15-328:12.

III.    Counts and Violations at Trial

In an effort to streamline its case, the government has determined that it will not proceed on the following violations charged in Count One and listed in its bill of particulars

11

dated May 11, 2018, see Dkt. No. 227: Violations 13-69, 71, 73-75, 79-80, 90, 92, 94.  The government also will not proceed on Counts Five through Nine and Eleven of the Indictment. For ease of reference for the jury, should the Court elect to send the Indictment to the jury during its deliberations, the government requests that the Court submit the Indictment with the Counts and violations re-numbered without altering the substance of the violations and Counts themselves.  The government further requests that the Court consecutively number the Counts and violations in the verdict sheet.

"[N]arrowing the scope of an indictment, whether through proof of a lesser offense offered at trial, or by redaction, does not offend the notice and review functions served by a grand jury's issuance of an indictment.  United States v. Smith, 918 F.2d 1032, 1037 (2d Cir. 1990) (citing United States v. Miller, 471 U.S. 130, 135 (1985) ("As long as the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment, the right to a grand jury is not normally violated by the fact that the indictment alleged more crimes or other means of committing the same crime.")).  The Second Circuit in Smith further noted that "those sections which will not be part of the proof at trial are treated as 'useless averment' that can be 'ignored,' or simply redacted."  Smith, 918 F.2d at 1036 (citation omitted).  Further, it is well settled that a "district court or the prosecutor may make 'ministerial change[s]' to the indictment, such as to correct a misnomer or typographical errors."  United States v. Dhinsa, 243 F.3d 635 (2d Cir. 2001) (quoting United States v. McGrath, 558 F.2d 1102, 1105 (2d Cir.1977) (collecting cases)); see United States v. Levy, 440 F. Supp. 2d 162, 164 (E.D.N.Y. 2006) (allowing alteration of the name of the ammunition charged in the indictment without resubmission to the grand jury); United States v. Lorefice, 192 F.3d 647, 653 (7th Cir. 1999) ("An indictment may be altered without resubmission to the grand jury as long as the alteration makes no material change and there is no prejudice to the defendant.").

Here, renumbering the Indictment would not constitute the government is not making changes to any factual allegations or altering the substance of any of the charges on which it will proceed; rather, it would involve deleting and re-numbering portions of the Indictment in order to prevent confusion for the jury.  None of these alterations affects the charging language of the Indictment and none of the changes alters the essential elements of the charged offenses.  Moreover, since the defendant is receiving notice of the deletions and renumbering in advance of the trial, he cannot claim surprise or unfair prejudice.

IV.    Conclusion

For the foregoing reasons, the Court should preclude argument and cross-examination of the above-listed witnesses, on the topics described above.

12

V.      Partial Sealing is Appropriate

Pursuant to the protective order in this case, the government respectfully requests permission to submit this brief partially under seal. See Dkt. No. 57 ¶ 8. Portions of this brief refer to the government's cooperating witnesses. The defendant's criminal associates could use the information described herein to identify those witnesses.

Thus, partial sealing is warranted because of the concerns regarding the safety of potential witnesses and their families, and the danger posed by disclosing the potential witnesses' identities and their cooperation with the government. See United States v. Amodeo, 44 F.3d 141, 147 (2d Cir. 1995) (need to protect integrity of ongoing investigation, including safety of witnesses and the identities of cooperating witnesses, and to prevent interference, flight and other obstruction, may be a compelling reason justifying sealing); see Feb. 5, 2018 Mem. & Order Granting Gov't Mot. for Anonymous and Partially Sequestered Jury, Dkt. No. 187 at 2-3 (concluding that defendant's actions could pose risk of harm to cooperating witnesses). As the facts set forth herein provide ample support for the "specific, on the record findings" necessary to support partial sealing, Lugosch v. Pyramid Co., 435 F.3d 110, 120 (2d. Cir. 2006), the government respectfully requests that the Court permit the government to file this motion to limit cross-examination partially under seal. Should any order of the Court regarding this application describe the sealed information in question with particularity, rather

than in general, the government likewise requests that those portions of the order be filed under seal.

Respectfully submitted,

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

ARTHUR G. WYATT, CHIEF
Narcotic and Dangerous Drug Section
Criminal Division,
U.S. Department of Justice

OF COUNSEL:

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY
Southern District of Florida

cc:     Clerk of Court (BMC) (via ECF)
        Defense Counsel (via Email)

14