1

1   UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF NEW YORK
2   ------------------------------x
                                        09-CR-466(BMC)
3   UNITED STATES OF AMERICA,
                                        United States Courthouse
4              Plaintiff,               Brooklyn, New York
                                        June 26, 2018
5              -against-                9:30 a.m.

6   JOAQUIN GUZMAN LOERA,

7              Defendant.
    ------------------------------x
8          TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
                 BEFORE THE HONORABLE BRIAN M. COGAN
9                   UNITED STATES DISTRICT JUDGE
    APPEARANCES
10  For the Government:        UNITED STATES ATTORNEY'S OFFICE
                               Eastern District of New York
11                             Brooklyn, New York 11201
                               BY:  ANDREA GOLDBARG
12                                  MICHAEL P. ROBOTTI
                                    GINA PARLOVECCHIO
13                             Assistant United States Attorneys

14                             UNITED STATES ATTORNEY'S OFFICE
                               Southern District of Florida
15                             Miami, Florida 33132
                               BY:  ADAM S. FELS
16                                  LYNN KIRKPATRICK
                               Assistant United States Attorneys
17
                               NARCOTIC AND DANGEROUS DRUG SECTION
18                             Dept. of Justice, Criminal Division
                               Washington, DC 20530
19                             BY:  AMANDA LISKAMM, ESQ.
                                    ANTHONY NARDOZZI, ESQ.
20
    For the Defendant:         BALAREZO LAW
21                             400 Seventh Street, NW
                               Suite 306
22                             Washington, DC 20004
                               BY:  ANGEL EDUARDO BALAREZO, ESQ.
23
                               LAW OFFICE OF PURPURA AND PURPURA
24                             8 East Mulberry Street
                               Baltimore, Maryland 21202
25                             BY:  WILLIAM B. PURPURA, ESQ.

*LINDA D. DANELCZYK, RPR, CSR, CCR, OCR*
*718-613-2330 - LindaDan226@gmail.com*
*Proceedings recorded by mechanical stenography.*
*Transcript produced by computer-aided transcription.*

PROCEEDINGS                                    2

1              (In open court.)

2              THE COURTROOM DEPUTY:  All rise.

3              THE COURT:  Good morning.  Have a seat, please.

4              THE COURTROOM DEPUTY:  United States versus Guzman,

5    Docket Number 09-CR-466.

6              Counsel, please state your appearances starting with

7    the government.

8              MS. GOLDBARG:  Good morning, Your Honor.  On behalf

9    of the government, Andrea Goldbarg, Amanda Liskamm, Adam Fels,

10   Lynn Kirkpatrick, Anthony Nardozzi, Michael Robotti, and Gina

11   Parlovecchio.

12             THE COURT:  Good morning.

13             MS. PARLOVECCHIO:  Good morning, Your Honor.

14             MR. BALAREZO:  Good morning, Your Honor.  Eduardo

15   Balarezo and Bill Purpura on behalf of Mr. Guzman.

16             THE COURT:  Good morning, counsel.

17             Good morning, Mr. Guzman.

18             I will note for the record that we have an

19   interpreter who has previously been sworn for Mr. Guzman.

20             I want to thank the parties for the midnight excuse

21   to get up last night.  I could say to the government, you

22   know, just because something is due the day before the

23   hearing, it doesn't mean you have to file it at midnight,

24   right?  You could have filed it at 5.  You could have even

25   filed it the day before.  That is permissible, just so you

PROCEEDINGS                              3

1   know, for future reference.

2          Mr. Balarezo, I have say, that reply you got in two

3   hours after the government filed its opposition, that was a

4   great job.  I mean, I don't know how you did it.

5          MR. BALAREZO:  A lot of coffee, and some concern,

6   but otherwise we had to get it in before the hearing because

7   it was an agenda item, Your Honor.

8          THE COURT:  Okay, but you understand, both sides

9   understand, that while you might be able to sleep in today, I

10  haven't had as much time as I want to review those papers that

11  came in at midnight and later.  I've looked at them.  I think

12  I understand what you're saying, but I'm not going to rule

13  precipitously without having a chance to review them further.

14  I do want to ask a couple of questions about them, though.

15         First of all, am I correct that the current *Brady*

16  dispute arises entirely out of the government's June 4th

17  letter where the government listed 41 categories of

18  potentially exculpatory information that it has.

19         Am I right about that?

20         MR. BALAREZO:  Yes, Your Honor.

21         THE COURT:  Okay.

22         MR. BALAREZO:  The government made its first *Brady*

23  disclosure on June 4th of the 41 items, specific items of what

24  we consent is exculpatory or helpful information.

25         THE COURT:  Okay.  And the problem, just to

PROCEEDINGS                    4

1    summarize it, seems to be that the government has that

2    information, not that it's going to use that information, but

3    it has it from cooperators who it's not going to call at trial

4    and, therefore, the defense has no opportunity to develop that

5    information.

6              Is that what's going on?

7              MR. BALAREZO:  Your Honor, that's correct.  We

8    didn't find out until last night that the government does not

9    intend to call any of those cooperators as witnesses against

10   Mr. Guzman at trial, and that's the position that we're put

11   in.

12             If they were to call these individuals, at least we

13   could develop the testimony and elicit that information

14   through cross-examination; however, here, given that the

15   government has not identified the individuals, has not given

16   us any other information besides just the summary of what the

17   evidence is, we have no way of making use of it at this point.

18             THE COURT:  Okay.

19             MR. BALAREZO:  And sorry, the other thing is we have

20   to keep in mind, a lot of this information has been in the

21   government's hands for years.  This is not something that they

22   just came upon on June 3rd and said, hey, let's disclose it to

23   Guzman when we got it.  They've had information from '93,

24   2002, 2007, almost every year before Mr. Guzman was even

25   actually indicted in the United States.

PROCEEDINGS                               5

1          THE COURT:  I know, but if they had given you what

2     is, in your view, enough information on June 4th, that would

3     give you three months prior to trial to develop it; probably

4     longer, since you wouldn't have to do it until the end of the

5     government's case.

6          So that would have been okay.  But the linchpin to

7     me is what happens with the fact that you don't know where

8     this information is from and, therefore, how do you get to it.

9          Let me ask the government that question.  Let's

10     suppose there is a witness out there that has exculpatory

11     information, you've told the defense that there is that

12     information, but the defense doesn't know who that is that

13     said that.

14          MS. GOLDBARG:  Yes, Your Honor.  First of all, I

15     think it's a mischaracterization to say that these people are

16     cooperators with the government.  As we indicated in the

17     reports, some of this information was provided by one-time

18     sources, the people that walked into law enforcement that

19     provided information in other ways.

20          THE COURT:  Yes, I used the term "cooperators" too

21     broadly.  That's right.

22          MS. GOLDBARG:  And, again, some of that we provided

23     the basis of their information, whether or not they had

24     first-hand knowledge of it, and most of this is not witnesses

25     that had first-hand knowledge of this information, but we're

PROCEEDINGS                                    6

1    hearing it from various layers of hearsay.  That's why we do

2    not characterize it as exculpatory, per se, but in an

3    abundance of caution, we did produce it.

4           So, you know, we provided the information we believe

5    that *Brady* requires us to provide.  And we believe that the

6    information that we've provided is sufficient to allow him to

7    conduct the necessary investigation that he has, including the

8    redactable reports that we did, which show the nature and the

9    attenuance of the information that we provided.

10          THE COURT:  Okay, but now put yourself in his shoes.

11   Somebody walking off the street and said, you know, Tom told

12   Charlie, who told Sean, and then Sean told me this

13   information.  And he thinks that information might be useable

14   and he wants to track that down.  How does he do that?

15          MS. GOLDBARG:  Your Honor, the case law in this

16   circuit clears states that the defense has to make a

17   particularized showing of why he's met that threshold.  And

18   today with the information we provided, he has not met that

19   threshold.

20          THE COURT:  I got that, and that's one of the

21   reasons I have to study the papers a little bit more.

22          But I will say, Mr. Balarezo, I'm not entirely

23   convinced of the materiality, and maybe it's because I don't

24   understand what the defense is as well as I might, but how is

25   this information material to the defense?

PROCEEDINGS                                          7

1          MR. BALAREZO:  Well, Your Honor, the government in

2    its filing of yesterday specifically discussed nine points out

3    of the 41 that it says is arguably exculpatory or favorable to

4    the defense.  And they say we don't believe it is, but we're

5    going to provide this information out of the abundance of

6    caution, and I guess we thank them for that.

7          The problem is the additional nine points that we

8    mention as an example, each one of those points, and those are

9    identified in my filing, each of those points being -- so the

10   record's complete -- number 4, 5, 9, 10, 11, 12, 19, 21, 23,

11   and these would be at page 3 of the unredacted filing.

12         Those are direct quotes from the government's

13   June 4th disclosure.  Each one of those particular bits of

14   information indicate that -- as the first one indicates, and I

15   think I can say this, that he was not a leader of the cartel.

16   That he was a lieutenant of another person.  That

17   Mr. Guzman -- that another person was the king of trafficking.

18   That another person was the leader of the Sinaloa Cartel.

19   That Mr. Guzman worked under another person.  That Mr. Guzman

20   did not take any action without the approval of another

21   person.

22         THE COURT:  Okay, I got it, but let me ask you this.

23   Let's assume you prove all that.  Does that get him acquitted

24   on the charges?

25         MR. BALAREZO:  Your Honor, let's not forget

1  Mr. Guzman is charged with 17 counts.  The first count is the

2  CCE, that he was the -- participated in the criminal --

3  continued criminal enterprise and that he was a leader, an

4  organizer, or one of the group, the leader or organizer.

5          The government has to prove those particular things

6  beyond a reasonable doubt; they're an element of the defense.

7  I believe and we believe that this information where somebody

8  has told the government ten years ago or two years ago that

9  Mr. Guzman was not a leader; that he was working under

10 somebody else; that he had to take orders from somebody else;

11 that he was not in a position of leadership goes directly to

12 an element of the offense that the government has to prove.

13 And if we were to prove or show that Mr. Guzman was not a

14 leader of the Sinaloa Cartel or another drug trafficking

15 organization, maybe he would be acquitted of the CCE.  That

16 doesn't affect the other ones, obviously, but we still have to

17 contend with each count individually.

18         And for the government to say that these particular

19 items that we highlighted yesterday are not *Brady*, they are

20 not favorable, they are not exculpatory to say, well, you

21 don't need them, that is really patently offensive.

22         THE COURT:  Don't be offended, it's okay.

23         MR. BALAREZO:  At least in the courtroom.

24         It's ridiculous, because the government, number one,

25 is not in a position to tell the defense what we can and

PROCEEDINGS                                9

1    cannot do.  The government is not in a position to tell

2    Mr. Guzman what he can defend himself with and not defend

3    himself with.  And I think at the very least, the government

4    should provide to the defense the identity of the individuals

5    who made these statements, because without that it's utterly

6    useless to us.  And that's all we're asking for.  All we're

7    asking for is Mr. Guzman to have the ability to fairly defend

8    himself.

9              THE COURT:  Okay.  Well, I understand.

10             Let me ask the government this.  Do you agree that,

11   at least as to the charge that's been identified, if the

12   defendant could introduce evidence raising a reasonable doubt

13   that he was not the leader of the cartel, that would exonerate

14   him from that count?

15             MS. GOLDBARG:  No, Your Honor, because defense

16   counsel's mischaracterizing the government's burden in proving

17   that the defendant was a leader or had a leadership role in

18   the continuing criminal enterprise.  As it's laid out, we have

19   to prove that he was one, just merely one of several leaders;

20   that he had a leadership position; that he supervised five or

21   more people.  Whether or not someone else was equally as

22   powerful as him, or more powerful than him does not negate his

23   leadership role within the organization.  And the defendant

24   was, in fact, indicted originally in this case with five other

25   leaders.

PROCEEDINGS                            10

1        So that's the nature of the case is what we

2   described in our pleadings and our motion in limine,

3   therefore, the nature of the reports or the summaries of the

4   content that we provided does not negate his role within this.

5        THE COURT:  So, for example, if your evidence shows

6   at trial that he was a middle manager of the organization,

7   that would satisfy your burden in your view?

8        MS. GOLDBARG:  As long as the government were able

9   to prove that he did supervise five or more people and the

10  other elements within the CCE, then, yes, we would be able to

11  meet our burden.

12       THE COURT:  So you disagree.  I understand.  And

13  you're reading the count differently.  I just wanted to know

14  what the issue is, now I can go back and think about it.

15       MR. BALAREZO:  Your Honor, again, the government is

16  basically saying, we, the government, has accused him, has

17  charged him with a particular offense, this is our theory of

18  the case, and there can be no other.

19       That's for the jury to decide.  And we should be

20  able to put before the jury what our evidence is in order to

21  rebut what the government's evidence is and let the jury

22  decide is he guilty or not guilty.

23       Obviously, the government says that he's guilty of

24  this offense, that's not in dispute.  But he has a right, he

25  has a due process right, he has a right under the Constitution

1   to be able to present a viable defense.  And if the Court has

2   an issue with respect to the materiality of it, we would be

3   more than happy to make an in camera disclosure to the Court.

4   But I don't think we need to make that in the courtroom or to

5   the government because the government has no right to know

6   what our defense is.

7          THE COURT:  Okay, but, you know, from the

8   government's perspective, it seems to me they have to make a

9   judgment as to whether information in their possession is

10  material for *Brady* purposes and, therefore, they are required

11  to anticipate, to some extent, what the defense is, because it

12  might be material to one defense, and it might be immaterial

13  to another defense.

14         So it's not as if they have to think of what is your

15  broadest, straight-faced defense that he might have and make

16  disclosure as to that.  They have to think about what is the

17  actual, reasonable view of the defense in this case.  So you

18  do, if you want them to have the obligation to give you

19  information relating to a particular defense, you have to let

20  them know what it is.

21         Now, you've gone maybe as far as you need to this

22  morning by saying our view is if he is not the leader, then he

23  is not guilty of that count.  They understand that.  They

24  disagree with that, but that's their view.

25         MR. BALAREZO:  Your Honor, we respectfully disagree.

PROCEEDINGS                          12

1    We understand that the government has the -- let's say takes

2    the first cut at the evidence.  They have evidence in their

3    possession, they need to make a determination under the case

4    law is this disclosable or not disclosable under *Brady*.

5              We don't believe, and we don't believe that the case

6    law says that that is the end of the analysis, which is why we

7    raised it with the Court.  We believe it is in the Court's

8    discretion to force the government to turn it over based on

9    what we've disclosed.

10             What the government says is not the end of the

11   analysis.  That's why we're asking the Court, based on what

12   we've argued in the papers and what we are prepared to present

13   to the Court in camera, that there is sufficient basis for us

14   to need that information to be able to defend him.

15             THE COURT:  Okay.  Well, you raise a new aspect of

16   this motion practice, which is the possibility of an in camera

17   submission in order to avoid disclosing your theory to the

18   government.  Obviously, I agree with you that the ultimate

19   determination of materiality is mine, not the government's,

20   but in order to do that, I may need more than what you've

21   given me so far.

22             MR. BALAREZO:  And we're prepared to do that, Your

23   Honor, in camera, because the government is not entitled to

24   the defense's theory of the case at this point.

25             THE COURT:  Yes, I'm just not sure that's right in

PROCEEDINGS                                              13

1    terms of the disclosure of *Brady* material.

2            Does the government have a view on that?

3            MS. GOLDBARG:  We believe that we've addressed the

4    issues in our position.  We do not know whether or not -- our

5    perspective of what's been set forth right now, materiality we

6    do believe that we've turned over what we believe is material

7    to the defense.  Without knowing his theory, I know the Court

8    had provided this opportunity in other aspects to have an in

9    camera review --

10           THE COURT:  Well that was in a CIPA context.

11           MS. GOLDBARG:  In this context, again, if we -- as

12   the Court has explained, we can take an expansive view of what

13   we believe would be material and favorable to the defense and

14   we can turn it over.  And that's -- you know, we believe we've

15   fulfilled our obligations on that.

16           THE COURT:  Does the government have any objection,

17   which I think it would be hard pressed to make in this case,

18   of an ex parte submission?

19           MS. GOLDBARG:  We do not have an objection to that,

20   Your Honor.

21           THE COURT:  Okay.  And when are you going to get me

22   that submission?

23           MR. BALAREZO:  Your Honor, hopefully by the end of

24   the day.

25           THE COURT:  That's good.

PROCEEDINGS                                14

1          All right, so I think I have everything I need, once

2   I get that submission, to go ahead and rule on that motion.

3          MR. BALAREZO:  And that would be before midnight,

4   Your Honor.

5          THE COURT:  Thank you very much.

6          Other motions that we need to address today.  The

7   government has asked for a final deadline for the remaining

8   motions.

9          You know, it's, as I've said all along, if the

10  defense gets new information from the government that it

11  didn't have before but could have reasonably anticipated a

12  motion, then it's entitled to make a motion as to that

13  information.  I don't see a need to set a hard deadline on

14  that, as long as the government has not yet completed all of

15  its production.

16         You're not telling that you have; are you?

17         MS. GOLDBARG:  I'm sorry, could you --

18         THE COURT:  Have you completed all of your

19  production?

20         MS. GOLDBARG:  Our discovery production?

21         THE COURT:  Yes.

22         MS. GOLDBARG:  Yes, we have received some late

23  materials from foreign governments and we turned those over.

24  Simply as we turned them over, we did our discovery production

25  today.

PROCEEDINGS                              15

1          THE COURT:  Okay.

2          MS. GOLDBARG:  And there, as the Court anticipated,

3     there may be a document here or there that as we go through

4     our files but, yes, we've completed our discovery obligations.

5          THE COURT:  Okay.  Do you see any motions coming,

6     besides what you made?

7          MR. BALAREZO:  Your Honor, I just want to clarify.

8     We received at 11:59 or whatever yesterday a letter from the

9     government saying that they had a additional discovery that I

10    could obtain from a third-party vendor.

11         They could have brought it this morning to save me

12    the waiting time to get it in four days from that vendor, but

13    we'll get it.  But the government continues to produce

14    discovery long after the Court has imposed its deadline.  I do

15    see a particular motion that I do intend to file, and that is

16    a motion to suppress the interception of the trial

17    communications, to suppress wiretaps.

18         And although the government did present discovery to

19    the defense earlier with respect to the affidavits for those

20    wiretaps, they were severely redacted.  Literally we had black

21    pages after black pages with just Mr. Guzman's name showing.

22    I finally asked them to provide to me the unredacted documents

23    that would put some of context as to why Mr. Guzman's name is

24    there, and they do indicate to me that I do need to file a

25    motion to suppress wiretaps.  So I do intend to file that

PROCEEDINGS                                16

1    shortly.

2            But there's thousands of pages of this material that

3    we're going through to try to make sense of it because, again,

4    it was presented to us without any index or any other context,

5    and that's one motion I will file.

6            When we review the new discovery, if there's

7    something that needs to be filed, we will file it.

8            THE COURT:  Let's talk first about the one motion

9    you intend to file.  What is that?  When are you going to file

10   that motion?

11           MR. BALAREZO:  Your Honor, if I could have three

12   weeks.

13           THE COURT:  That's a very long time in the context

14   of this case.

15           MR. BALAREZO:  It's a very complicated issue, Your

16   Honor.  Again, there's dozens of orders that we're still

17   literally trying to make sense of.

18           THE COURT:  You're talking about suppression of

19   recorded telephone conversations, which you have.  There may

20   be facts I can't imagine that made it very complicated.  It

21   doesn't sound that complicated to me right now.  I'm going to

22   ask you to make that motion in ten days.

23           MR. BALAREZO:  Ten days?

24           THE COURT:  Ten days.

25           MR. BALAREZO:  Fine.

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                          17

1          THE COURT:  Okay.  Obviously, you're going to have

2    to demonstrate in that motion, and any others, that you could

3    not reasonably have been expected to make it earlier based on

4    the information that you had.  You've given me a reason that

5    sounds plausible on its face, and I'll consider that, but

6    remember, we had an April 9th date for motions, and we're well

7    past April 9th.

8          MS. GOLDBARG:  Your Honor, may I just clarify for

9    the record.  We have been working with defense counsel as much

10   as possible to help him identify the documents.  The documents

11   he's talking about now were provided in August of 2017.

12          When we knew that he was raising the issue of a

13   possible suppression motion, in our discovery letter filed on

14   April 16th of this year, we detailed every single intercept;

15   where it came from, the Bates stamp numbers.  He asked for

16   additional information.  The unredacted copy he's asking for,

17   we produced.  He asked for them in May, we produced them

18   within I believe a week or two.  And we produced them

19   unredacted.  Those are the same documents he received in

20   August.

21          We have been working with him.  In fact, when we had

22   discussions before, we made sure to arrange the filing

23   schedule.  He indicated he was going to file this.  He was

24   going to try before the status conference, but if not this

25   week, and we agreed that we would ask for three weeks to

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

1   respond to it.  We do believe that we provided him everything

2   in a timely fashion, and we're working with him to make sure

3   he has everything he needs.

4          THE COURT:  Like I said, he's going to need to

5   demonstrate that he could not have reasonably made the motion

6   earlier, based on the April disclosures.  If he doesn't, I'm

7   going to say it's untimely.  But I think we need to get it in

8   and decide this as quickly as possible.

9          Second.  Transcripts.  The government is proposing

10  August 17th.  That also strikes me as late.

11         MS. GOLDBARG:  Your Honor, we anticipate that there

12  will be approximately 100 to 150 transcripts that we will use

13  at trial.  That will include recorded communications as well

14  as electronic communications.

15         We understand defense counsel's concern is the

16  defendant's -- the transcript relating to the defendant's

17  interceptions.

18         We are, as we say in our letter, going to start

19  producing finalized transcripts on a rolling basis.  We

20  believe we will start that in mid-July.  We will work with

21  defense counsel to make sure that we can reach a stipulation

22  as to the contents and the quality of the transcription and

23  the translation.

24         THE INTERPRETER:  Sorry.  Speak a little bit slower.

25         MS. GOLDBARG:  I'm sorry.  Where do you want me to

PROCEEDINGS                    19

1  start from?

2                THE INTERPRETER:  Go back to when you were producing

3  the transcripts.

4                MS. GOLDBARG:  We would anticipate that we can start

5  producing the transcripts, especially of the defendant's

6  calls, in mid-July, and we will produce them on a rolling

7  basis.  We will work with defense counsel to hopefully reach

8  stipulations as we turn them over.

9                The defense counsel has received draft transcripts

10 of almost every interception that we have.  There are a few

11 that he received summaries of only.  Those draft transcripts

12 will be provided by the end of this week.  So defense counsel

13 does have a starting point.  We're finalizing those, and we

14 believe we will start the rolling process in mid-July.

15               THE COURT:  The only question is, when are you going

16 to stop rolling?

17               MS. GOLDBARG:  As we say, based on where we are with

18 the Spanish translators, we believe that we will finish it by

19 August 15th.

20               THE COURT:  How about a week shorter than that.

21               MS. GOLDBARG:  We can try, Your Honor.

22               THE COURT:  Try harder.

23               MR. PURPURA:  Your Honor, will the Court consider a

24 little earlier on that particular issue.  And the reason being

25 we know the jury questionnaires are being disseminated the

PROCEEDINGS                          20

1   first week of August.  We also know we are going to receive

2   10,000 pages of *Jencks* the first week of August.  The

3   transcripts, the amount of pages, and *Jencks*, and a lot of

4   pages.

5           The transcripts are 100 to 150 are somewhat

6   voluminous.  Alls we're asking for, is if they had it for a

7   particularly long period of time, is the Spanish and English

8   translations so we can make sure it's accurate, and exactly

9   where it comes from so we can listen to it live as well; the

10  identity of the people who are speaking and the dates of the

11  recording.

12          THE COURT:  Okay, but they're going to start rolling

13  those to you well in advance of what is now I think an

14  August 10th cutoff.  So you're going to have those.

15          And my experience with these transcripts are -- your

16  disagreements are going to be few and far between.  This is

17  really an administerial exercise.  So I don't think it will be

18  the kind of exhaustive investigative exercise that we were

19  talking about with the *Brady* material.

20          MR. PURPURA:  Thank you.

21          THE COURT:  All right.  On the motion to change

22  venue, I'm going to hold on to that.  I appreciate the points

23  the defense is making.  They are not at all invalid.

24          Let me ask the defense this.  If we move the venue

25  to the Southern District, are you looking for -- are you

1    waiving an Eastern District jury pool?

2              MR. PURPURA:  Yes.  I think when venue -- when you

3    do transfer venue, you waive the issue of venue to begin with.

4              THE COURT:  There's different ways to do it.  We can

5    move the case, or we can move the Court.  If we move the

6    Court, it would still be an Eastern District jury.

7              MR. PURPURA:  That's fine.

8              THE COURT:  You don't care either way?

9              MR. PURPURA:  The elephant in the room is the

10   transportation on a daily basis of Mr. Guzman to this

11   courthouse.  And if we do it in the Southern District, that

12   avoids that.

13             I'm not sure if there's a tunnel, but I know that

14   the distance is only about 200 feet, yes, and that's in a

15   secured area, and it avoids really the danger of the --

16             THE COURT:  Okay.  But, again, you're indifferent to

17   whether the panel is drawn from the Southern or Eastern

18   District?

19             MR. PURPURA:  Correct.  Absolutely.

20             THE COURT:  And let me just ask you one more

21   question about that.

22             If the concern is that jurors will be impacted by

23   travel difficulties, and we have an Eastern District jury, and

24   we're sitting in Brooklyn, they're not really going to

25   encounter traffic on the bridge, right?  Or is your concern

PROCEEDINGS                                    22

1    simply the inconvenience to the defendant of being transported

2    every day?

3              MR. PURPURA:  Not simply the defendant.  I think

4    what we're going to have is, we're going to be -- obviously,

5    when you close the Brooklyn Bridge for that brief time, it

6    creates a lot of media and a lot of attention.  Whether the

7    individual jurors are affected, or whether one of their

8    friends or family members are affected, it's a pretty good

9    chance that someone in this area is going to be affected by

10   closing the Brooklyn Bridge.

11             We know what happened when Chris Christie had a lane

12   closed down on another bridge.

13             THE COURT:  I have no idea what you're talking

14   about.

15             Okay, I understand.  I'm going to hold that one.

16             Let's see.  The *Brady* motion we've covered.  The

17   motion to suppress we've covered.

18             There's another motion to suppress that was filed on

19   June 6th.  The government says it's not going to use those

20   statements that are the subject of that motion; is that right?

21             MS. GOLDBARG:  That's correct, Your Honor.

22             THE COURT:  Okay.  So that motion is denied as moot.

23             Let's talk for a minute about the length of trial.

24             You don't have to tell me, but is there a strategic

25   reason, just yes or no, why the defense doesn't want to give

LINDA D. DANELCZYK, RPR, CSR, CCR
Official Court Reporter

PROCEEDINGS                                      23

1    the normal stipulations that are given to shorten trials?

2              MR. PURPURA:  That's a yes and a no.

3              THE COURT:  Okay.

4              MR. PURPURA:  What well do, and we mean this with

5    all sincerity, no one is going to benefit by delaying the

6    trial and bringing unnecessary witnesses in.  When we

7    collectively catch our breath, we will, again, go back through

8    the stipulations and see if there is something we can

9    stipulate to to shorten the trial.

10             Once the trial commences, if there's areas to

11   stipulate, we will give the government notice in advance on

12   those as well to save time to the Court.  We will, again, go

13   through those stipulations.  I guess that's a yes and a no

14   answer.

15             THE COURT:  Well, I'm hopeful you will do that.

16             MR. PURPURA:  We will.

17             THE COURT:  If it does not succeed, then I'm held to

18   go with the government's estimate and tell the jurors that

19   they have to be cleared for four months.

20             The reason for that is obvious.  If you tell jurors

21   they're going to be needed for three months, then you can be

22   sure they will make plans to resume their lives on the first

23   day after the three months, and there will be medical

24   appointments, and jobs, and vacations and all kinds of things

25   we will run into.  So if we don't get back the original

1    estimate we were on, then I am going to tell the jurors that

2    they have to be prepared for four months in order to avoid

3    that situation.

4              Okay.  That's all I have.

5              Is there anything else that the parties need to

6    raise?

7              MR. BALAREZO:  Can I consult with the government for

8    one moment?

9              THE COURT:  Sure.  Absolutely.

10             MS. PARLOVECCHIO:  Your Honor, just one more item.

11             In regard to the jury questionnaires, we conferred

12   with defense counsel about how we are handling the copying and

13   the production of the completed questionnaires.  I also

14   conferred with Ms. Clarke before court today about the

15   logistics.

16             The government will have a finalized copy to the

17   Court and fully copied and ready for distribution to the

18   venire a little bit more than a week before they come in on

19   July 31st.  Once we have all the completed questionnaires, the

20   government will give that to the vendor, we will have it

21   reproduced.  The parties are going to share the costs.

22             And defense counsel has asked for two copies.

23             Is that correct?

24             MR. BALAREZO:  Yes.

25             MS. PARLOVECCHIO:  And we'll oversee that entire

PROCEEDINGS                    25

1    process.

2              THE COURT:  Okay, that sounds fine.

3              Anything else?

4              MR. BALAREZO:  There is, Your Honor.

5              As the Court is aware, we have had two evaluations,

6    psychological evaluations performed of Mr. Guzman.  The most

7    recent one was maybe two, three weeks ago.

8              We have consulted with the government, and the

9    government has no objection to our request to have a medical

10   doctor, a psychiatrist, also perform an evaluation of

11   Mr. Guzman for the purposes of medication management, because

12   we believe that he's not getting the adequate and proper

13   dosage of certain medications at the MCC, and we would like

14   that to be modified and corrected.  So I'm orally requesting

15   the Court's authorization so I can file something to allow a

16   psychiatrist to visit Mr. Guzman and do the appropriate

17   evaluations.

18             THE COURT:  That's fine, I'm happy to do that.  You

19   may want to give me a written order, just because the MCC

20   might require it.

21             Okay, anything else?

22             MS. GOLDBARG:  No, Your Honor.

23             THE COURT:  All right, I understand you have

24   discussed a date for the next conference, which is?

25             THE COURTROOM DEPUTY:  August 14th at 9:30 a.m.

PROCEEDINGS                                    26

1              THE COURT:  Works for everybody?

2              MS. GOLDBARG:  Yes, Your Honor.

3              THE COURT:  Okay.  Thank you all very much.

4              We're adjourned.

5              MR. BALAREZO:  Thank you.

6              THE COURT:  Yes, time is excluded because the case

7    is complex.

8              MS. GOLDBARG:  Thank you, Your Honor.

9

10             (Whereupon, the matter was concluded.)

11

12                    *     *     *     *     *

13

14

15   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

16

17   s/ Linda D. Danelczyk               June 26, 2018

18
       LINDA D. DANELCZYK                    DATE
19

20

21

22

23

24

25