UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES, | : |
| | : |
| v. | : |
| | : Criminal No. 09-0466(BMC) |
| JOAQUÍN GUZMÁN LOERA, | : Trial Date: 11/5/18 |
| | : |
| Defendant. | : |

## DEFENDANT'S MOTION TO CONTINUE TRIAL

**DEFENDANT** Joaquín Guzmán Loera ("Guzman"), by and through undersigned counsel, respectfully submits this Motion to Continue Trial, and states as follows:

### BACKGROUND

On January 19, 2017, the government of Mexico extradited Mr. Guzmán to stand trial in this District. Since then, the government has been producing extensive discovery. This is an historically expansive investigation spanning the period from 1985 to 2015, involving multiple countries, hundreds of individuals and numerous law enforcement agencies. The amount of discovery produced is staggering – over 330,000 pages of documents and tens of thousands of recorded communications. Although the Court may have presided over more voluminous cases, those cases surely have been civil matters where discovery is completed and all witnesses identified long before trial begins. Rarely has a criminal matter of this magnitude been tried – let alone with **over 14,000 pages of critical information** from the mouths of **previously unidentified cooperators** being produced so late in the process, with more expected to be produced for three additional unnamed cooperators.

The overwhelming majority of the material is in English, requiring the defense to contemporaneously translate the material while reviewing it with Mr. Guzmán.[1]  Furthermore, the manner in which the government produced the PDF files makes it impossible to use a translation software to facilitate the process.  Mr. Guzmán has a constitutional right to review the evidence and assist counsel in his defense.  The process of giving him the opportunity to do so itself takes an extraordinarily large amount of time.

On July 3, 2018, after the bulk of Rule 16 discovery was supposed to have been produced, the government unexpectedly produced over 82 gigabytes of data, including over 117,000 recordings.  This belated production required a two-month continuance of trial then-scheduled for September 5.  On July 5, 2018, the government produced 18 U.S.C. §3500 material for law enforcement witnesses.  The government produced supplemental §3500 material for law enforcement agents on September 5 and October 5.  These productions concern material for 116 witnesses and consists of 1,373 individual files and over 15,000 pages.

On October 5, 2018, the government produced §3500 material for 13 cooperators who had not been previously identified.[2]  That production consisted of approximately 1,061 individual files and over 14,000 pages.  Because of the large volume of material produced just for the cooperators, the defense had to have the material printed by a government-approved[3] printing company.  That company produced hard copies of the production on October 22, 2018, over two weeks after the government initially "produced" the material on disks.  The government has represented that it will produce §3500 for at least three additional unidentified

---

[1] With respect to Rule 16 discovery, Mr. Guzmán had access to the material in his cell and could review it at his pace.  He cannot review the §3500 material on his own because he cannot read English.
[2] So far, the government has identified at least 132 witnesses who it expects to call at trial.
[3] Because the productions are subject to the Court's Protective Order, the defense could not have the material printed by a vendor of its choice. Rather, it was obligated to use a government approved vendor.

2

cooperators. It is unknown how much material that production will involve.

The cooperators' proffers and testimony concern events occurring over a 30-year period. On average, each cooperator has been debriefed over 20 times by numerous prosecutors and multiple law enforcement agencies. Each proffer sessions typically generated a lengthy and detailed report of investigation anywhere from a few pages to over 90 pages. This does not include hundreds of pages of prior grand jury and trial testimony or hundreds of pages of sometimes illegible handwritten notes.

To further complicate matters, the government and the MCC have set up one specific legal visiting room for Mr. Guzmán's use. That room is approximately five feet by ten feet, divided in half by a cement wall and a metal mesh/Plexiglas window. On the attorney side of the room there is cement block measuring approximately two feet by two feet containing a metal drawer that slides into the inmate side of the visiting room. The drawer is meant to facilitate the passing of documents back and forth and was installed because the Court rejected contact visits with Mr. Guzmán.

The computer setup for at the MCC for viewing discovery involves an HDMI connection in the attorney side of the visiting room and a screen on Mr. Guzmán's side to view documents. The defense has to rely on the government provided laptop for document review because it is prohibited from bringing in its own computer. This "legal visiting room" does not contain any table space for the defense to spread out papers or even write on – defense team members must write on their laps. Additionally, the room is so small that at most only three defense team members can be in the room at the same time and even then, there is no room to move. Due to the SAMs imposed by the government and approved by the Court, and notwithstanding the "accommodations" made by the government, the logistical aspects of

reviewing the discovery and §3500 material with Mr. Guzmán have been utterly abysmal. The defense team is visiting Mr. Guzmán for at least 6 hours per day, 7 days a week to review the §3500 material. Nevertheless, that is still insufficient to review all the material prior to trial.

## ARGUMENT

The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. The right to confront and cross-examine witnesses has long been recognized as essential to due process. *See Chambers v. Mississippi*, 410 U.S. 284, 295 (1973).

The Jencks Act unambiguously permits the disclosure of witness statements only after the witness has testified on direct examination at trial. *See* 18 U.S.C. §3500. However, counsel must be given adequate time to review the material and prepare an effective cross-examination. Although the Court has discretion to grant such a recess, its refusal to grant a reasonable continuance is reversible error. *See United States v. Holmes*, 722 F.2d 37, 40-41 (4th Cir. 1983) (reversing conviction where continuance denied to review *Jencks* material "eight inches" thick that was provided on the day before trial). Here, the *Jencks* production for cooperators alone is not 8 inches thick – it is over 14,000 pages, with more expected, as well as thousands of recordings.

The case against Mr. Guzmán involves allegations of a 25-year charged conspiracy where the conduct occurred mainly overseas, where investigations have been ongoing for decades and where the expected cooperators have proffered with the government over many years. Some of the cooperators have proffered dozens of times. The sheer amount of material to wade through makes it impossible for counsel to be prepared to effectively cross-examine the cooperating witnesses.

Because the cooperators' testimony will be the centerpiece of the government's case, defense counsel have an ethical and moral obligation to read and assimilate the entirety of the more than 14,000 pages of cooperator §3500 material recently produced in order to be effectively prepared for trial. Additionally, counsel have a duty and obligation to share and review this material with Mr. Guzmán. The conditions imposed by the Court and government upon Mr. Guzmán make it almost impossible to adequately review the material with him.

As it stands, the defense is expected not only to read tens of thousands of pages of §3500 material recently produced, but also to make sense of it, digest it and prepare to cross-examine key witnesses that were identified only recently. Mr. Guzmán's three trial counsel have over 70 years of combined criminal defense experience. They have tried dozens of federal trials, including racketeering, capital and narcotics cases around the country. They have also tried countless cases in state courts. In all their combined experience, counsel have never experienced, nor are aware of through numerous contacts, any case where such a large volume of information critical to the preparation of the defense has been disclosed so late in the process. The situation is such that, absent a continuance, defense counsel will be forced to request that the Court recess proceedings after each cooperator testifies "for such time as it may determine to be reasonably required for the examination" of the §3500 material for its use at trial. *Id.*

The defense is now aware that at least 16 cooperators will testify against Mr. Guzmán and will connect him to various narcotics transactions, violent acts and other crimes. These cooperating witnesses are the centerpiece of the government's case. Counsel are experienced and have a very good notion of what it takes to be sufficiently prepared for trial and have been preparing as diligently as humanly possible. It is simply impossible for counsel to

meet their ethical obligations and Constitutional standard of effective representation given the sheer amount of information to process in such a short time and to also use effectively.

The defense understands that the Court has considerable discretion with regard to the establishment of a trial schedule and that it wants to try this case sooner rather than later. *Ungar v. Sarafite,* 376 U.S. 575, 564 (1964). A court abuses its discretion, however, and violates due process, by engaging in "a myopic insistence on expeditiousness in the face of a justifiable request for delay." *Id.* The decision must be based on the facts and circumstances of the case. In this case, the circumstances are simply unprecedented. Counsel cannot be expected to review and understand tens of thousands of pages of §3500 material and prepare effective cross-examinations with trial two weeks away. Additionally, counsel cannot be expected to participate in trial and review and analyze the additional §3500 material for certain cooperators that will be produced two weeks prior to their testimony. Finally, given the Court's prior rulings, the defense cannot also be expected to be prepared to defend against an unknown number of distinct murder conspiracies at the same time. Forcing Mr. Guzmán and counsel to go forward to trial under the current circumstances will "render the right to defend with counsel an empty formality." *Id.* at 849-850 (citing *Chandler v. Fretag*, 348 U.S. 3 (1954)).

**WHEREFORE**, Mr. Guzmán respectfully requests that trial in this matter be continued to the beginning of 2019. Absent a continuance, Mr. Guzmán requests that the Court allow the defense at least one full day after each cooperator testifies on direct to attempt to effectively assimilate the voluminous §3500 material and prepare cross-examination. Alternatively, Mr. Guzmán requests a continuance of at least 2 weeks after the selection of a jury, as well as the disclosure by the government of its projected order of witnesses and

6

identification of any witnesses whom the government may not call.  In this manner the defense will not waste time preparing for witnesses that may not be called.

A hearing on this Motion is requested.

**WHEREFORE**, for the foregoing reasons and any other that may become apparent to the Court, Mr. Guzmán respectfully requests that this Motion be **GRANTED**.

**Dated**: Washington, DC
October 23, 2018

Respectfully submitted,

**BALAREZO LAW**

By: /s/
_____
A. Eduardo Balarezo, Esq.
EDNY Bar # AB7088
400 Seventh Street, NW
Suite 306
Washington, DC  20004
Tel: (202) 639-0999
Fax: (202) 639-0899
E-mail: aeb@balarezolaw.com

**PURPURA & PURPURA**

By: /s/
_____
William B. Purpura, Esq.
D.MD Bar # MD 00074
8 East Mulberry Street
Baltimore, MD  21202
Tel: ((410) 727-8550
Fax: (410) 576-9351
E-mail: wpurpura@purpuralaw.com

|  |  |
|---|---|
|  | **LAW OFFICES OF JEFFREY LICHTMAN** |
| By: | /s/ |
|  | Jeffrey H. Lichtman, Esq.<br>11 East 44th Street<br>Suite 501<br>New York, NY 10017<br>Tel: (212) 581-1001<br>Fax: (212) 581-4999<br>E-mail: jhl@jeffreylichtman.com |

*Counsel for Defendant Joaquín Guzmán Loera*

# CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 23rd day of October 2018, I caused a true and correct copy of the foregoing Defendant's Motion to Continue Trial to be delivered via Electronic Case Filing to the parties in this case.

/s/

A. Eduardo Balarezo