UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES, | : |
| | : |
| *v.* | : |
| | : Criminal No. 09-0466(BMC) |
| JOAQUÍN GUZMÁN LOERA, | : Trial Date: 11/5/18 |
| | : |
| *Defendant.* | : |

### DEFENDANT'S MOTION TO PRECLUDE AND
### SUPPLEMENTAL MOTION TO CONTINUE TRIAL

Defendant, Joaquín Guzmán Loera ("Guzmán") by and through undersigned counsel, hereby submits his Motion to Preclude and Supplemental Motion to Continue Trial. Mr. Guzmán states as follows:

### FACTS

On July 20, 2018, the government filed a "bill of particulars" vaguely describing "murder conspiracy victims and dates relating to Violation Eighty-Five of Count One." Doc. 269.[1] The government stated that it "intended to prove" the murder conspiracies at trial and that it was "not disclosing the names of murder conspiracy victims if the disclosure of such names would reveal the identity of cooperating witnesses." *Id.* It also informed the defense that it would disclose the names of those additional murder conspiracy victims at the time it discloses its 18 U.S.C. § 3500 material for cooperating witnesses. *Id.*

The government's initial list of alleged victims pertaining to Violation 85 included 20 specific alleged victims and 8 categories of alleged victims. They were identified

---

[1] The government disclosed this information less than two months from the initial trial date of September 5, 2018, and four days after the Court continued the trial to November 5, 2018 as a result of the government's late

as:

<u>Violation Eighty-Five</u>
(Conspiracy to Murder Individuals Who Posed a Threat to the Sinaloa Cartel)

| Approx. Date(s) | Murder Conspiracy Victim(s) |
|---|---|
| January 1989-September 2014 | Informants |
| January 1989-September 2014 | Members of law enforcement |

| | |
|---|---|
| January 1989-September 2014 | Associates who betrayed the Sinaloa Cartel |
| January 2008-September 2014 | Members of Beltran-Leyva Organization |
| September 2004-September 2014 | Members of Carillo-Fuentes Organization |
| January 2001-September 2014 | Members of Los Zetas |
| January 1990-December 2011 | Members of the Arellano-Felix Organization |
| November 8, 1992 | Members of the Arellano-Felix Organization at Christine's Discotheque |
| Mid-1990s | "Tesoro" Salazar |
| February 10, 2002 | Ramon Arellano-Felix |
| September 11, 2004 | Rodolfo Carrillo Fuentes |
| July 13, 2005 | Julio Cesar Beltran Quintero |
| 2007-2009 | Juan Pablo Ledezma (also known as "JL") |
| 2008 | Victor Cañedo Verduzco |
| 2008 | Amadeo Vega Vergara (also known as "El Caimán") |
| 2008 | Javier LNU, leader of Los Charros |
| 2008 | Emilio LNU, Los Charros worker |
| 2009 | Yamileth Bonnilla |
| October 2010 | Israel Rincon Martinez (also known as "El Guacho" or "El Wuacho") |
| December 15, 2011 | Juan Guzman Rocha (also known as "Juancho" or "Virgo") |
| December 15, 2011 | Jose Miguel Bastidas Manjares (also known as "Guero Bastidas") |
| December 7, 2012 | Leopoldo Ochoa (also known as "Polo Ochoa") |
| January 3, 2014 | Hector Rios Espinosa |
| April 9, 2014 | Manuel Alejandro Aponte Gomez (also known as "Bravo") |
| 2015 | Ingeniero Barrozo |
| February 16, 2015 | Francisco Aceves Urias (also known as "Barbarino") |
| December 11, 2015 | Cristobal Muro Valdez (also known as "02") |
| 2011-2012 | Mario Nuñez Mesa (also known as "El Mayito" and "M10") |

Doc. 269. Mr. Guzmán moved to strike Violation 85 or alternatively to continue trial due to the vague and late disclosure. The Court did not continue trial beyond the already scheduled trial

---

disclosure of over 117,000 recordings and other materials.

date of November 5.

The Court subsequently directed the government to identity for the defense which violations correspond to which cooperating witnesses. The government eventually did so for the alleged victims listed in its filing of July 20. The defense relied in good faith on the governments July 20 "bill of particulars" in conducting investigation on the alleged acts of violence in preparation for trial.

Well, the government is at it again. On October 9, 2018, the government filed a supplemental "bill of particulars." Doc. 347 (under seal). This second filing, made one month prior to the start of trial, deleted 4 alleged named victims from the initial "bill of particulars" and substituted them with 16 new named alleged victims. The alleged victims deleted from the original list were:

   1) Victor Canedo Verduzco
   2) Javier LNU, leader of Los Charros
   3) Emilio LNU, Los Charros worker; and
   4) Mario Nunez Mesa ("el" or "M10").

These alleged victims were replaced by the following new alleged victims:



3

Doc. 347.  On October 17, 2018, the government filed a second supplemental "bill of particular" naming ▮▮▮▮▮▮▮▮▮▮ as an additional alleged victim.  While the Court did allow the government to delay the naming of some alleged victims if naming them would identify cooperators, there was no indication from the government that it would almost double the list of alleged victims so close to the trial date.  In effect, less than one month before trial, the government again ambushed the defense by expanding the number of alleged victims to 39 total – 6 general categories and 33 named persons.

**The government's deliberate action of disclosing 17 new alleged murder conspiracy victims less than one month prior to trial is a violation of Mr. Guzmán's Constitutional rights to due process and prevents him from having a fair trial and the opportunity to defend himself.**

## ARGUMENT

The ultimate aim of our criminal justice system is not only to secure convictions, but also to ensure that the rights of the accused are protected. *See Harvey v. Horan*, 285 F.3d 298 (4th Cir. 2002) (Luttig, J., *concurring); Brady v. Maryland*, 373 U.S. 83, 87 (1963).  So fundamental is that two-fold aim that our forefathers drafted substantive and procedural due process requirements into the language of the Fifth and Fourteenth Amendments to the Constitution, thereby mandating that prosecutions "comport with prevailing notions of fundamental fairness." *California v. Tombetta*, 467 U.S. 479, 485 (1984). "Fundamental fairness" is not merely an academic ideal, but is, in fact, "essential to the very concept of justice.'" *United States v. Valenzuela-Bernal*, 458 U.S. 858, 872 (1982) (quoting *Lisenba v. California*, 314 U.S. 219, 236 (1941).

      A.      **THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM PRESENTING EVIDENCE RELATING TO THE 17 NEW ALLEGED MURDER CONSPIRACY VICTIMS**

As a threshold matter, this Court should preclude the government from presenting any evidence relating to the 17 new alleged murder conspiracy victims because of the government's continued gamesmanship in the manner it discloses evidence to which Mr. Guzmán is entitled and which is crucial for him to be able to defend himself. Here, on July 20, 2018, the government "disclosed" to the defense that it intended to present at trial evidence of 20 specific murder conspiracies in which Mr. Guzmán was somehow involved. At that time, not only did the government not disclose the actual number of murder conspiracies but also did not even identify many of the alleged victims.

Although the Court allowed the government to withhold some alleged victims' names if the disclosure of those names would reveal the identity of cooperating witnesses, the government's latest disclosure sandbags the defense with 17 new alleged murder conspiracy victims against which Mr. Guzmán will have to defend at trial. In addition to the over 14,000 pages of 18 U.S.C. § 3500 material recently dumped on the defense, Mr. Guzmán will now have the insurmountable task of also investigating 17 new alleged events that happened abroad over a period of many years. While the government has provided the defense an index of what discovery pertains to which alleged victim, the defense cannot simply rely on the government's evidence to prepare for trial. The defense must be allowed to conduct an independent investigation as part of its trial preparations if counsel is to effectively represent Mr. Guzmán.

In all of their collective experience, defense counsel have never seen anything like this. It is almost as if the government believes that due to the breadth of their allegations against Mr. Guzmán he is entitled to diminished due process and only an illusory semblance of

5

effective assistance of counsel. It is physically impossible for counsel to review, investigate, and prepare to defend against the new alleged murder conspiracies. As a result, it is also impossible to ensure that Mr. Guzmán's rights to due process of law, effective assistance of counsel, and to present a defense are protected if the Court permits the government to proceed as it intends.

The Court must preclude the government from presenting evidence of the 17 new alleged murder conspiracy victims for its eve-of-trial disclosure.

### B. THE GOVERNMENT'S CONDUCT VIOLATES MR. GUZMÁN'S RIGHT TO A FAIR TRIAL AND TO DUE PROCESS

Although ours is an adversarial system, the government's "chief business" in a criminal prosecution "is not to achieve victory, but to establish justice." *See Brady*, 373 U.S. at n.2 (quoting remarks of Solicitor General Sobeloff). While "there was a time when concealment and gamesmanship were accepted as part and parcel of the adversarial process of the criminal justice system" under common law, courts "decidedly rejected this system long ago." *Harvey,* 285 F.3d at 317-18. In fact, the Supreme Court has long held that the government's "overriding interest" in a prosecution is that "justice be done," and, with that basic tenet in mind, the Court has recognized that a prosecutor serves the law above all else. *See United States v. Agurs*, 427 U.S. 97, 110-11 (1976) (internal citations omitted).

Obviously, the government has an obligation to prosecute its cases zealously, however its "primary obligation is to try each case fairly and with due regard for the accused's rights." *United States v. Carter*, 566 F.2d 1265, 1271 (5th Cir. 1978). When the government's conduct violates notions of fundamental fairness and is "shocking to the universal sense of justice," substantive due process is denied. *Kinsella v. United States ex rel. Singleton*, 361 U.S. 234, 246 (1960).

6

The Supreme Court has "long interpreted this standard of fairness to require that defendants be afforded a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984). "To safeguard that right….what might loosely be called the area of constitutionally guaranteed access to evidence" was developed. *Id.* (quoting *Valenzuela-Bernal,* 485 U.S. at 867); *See also Harvey*, 285 U.S. at 298; *United States v. Moussaoui*, 382 F.3d 453, 474 (4th Cir. 2004).

Since Mr. Guzmán arrived in the United States, the government has gone out of its way to make it almost impossible for Mr. Guzmán to defend himself: a) he has been held in solitary confinement incommunicado from most of his family; b) he cannot perform a meaningful review of discovery with counsel because they cannot even be in the same room together; c) the immense amount of discovery has been produced in a disorganized fashion with no index or means to identify the relevance of much of it; d) the government dumped over 14,000 pages of § 3500 material on the defense 30 days before trial; e) the § 3500 material is mainly in English, making it impossible for Mr. Guzmán to review it without translation from the defense team; f) the government dumped over 117,000 recordings on the defense shortly before a previously scheduled trial date; and g) less than one month prior to trial, the government disclosed to the defense that it wants to introduce evidence of at 17 new murder conspiracy victims. All this amounts to trial by ambush and prevents Mr. Guzmán from properly preparing a defense and putting the government to its burden. The manner in which the government has conducted itself will result in a show trial where guilt is a foregone conclusion.

In this case, the government has lost sight of these basic tenets and is seeking to win no matter the cost. The government is engaging in concealment and gamesmanship and is intentionally obliterating any semblance of due process and fairness for Mr. Guzmán by

7

repeatedly withholding evidence and then dumping it on the defense at the last minute, thus making it impossible for Mr. Guzmán to prepare for trial. The government obviously considers Mr. Guzmán a prized target and his prosecution is meant to be an example to deter others who are alleged to have committed similar offenses. The government's allegations against him are wide-ranging and span decades. Nevertheless, the fact that the government has charged him with multiple serious crimes, that his nickname is "el Chapo," or that many cooperators are testifying against him in order to reduce their sentences, does not diminish Mr. Guzmán's right to a fair trial and due process. **The Constitution does not have a sliding scale of due process based on the identity of the defendant. Mr. Guzmán deserves no less due process, and is entitled to no less due process, than any other criminal defendant regardless of the allegations against him.**

Because of the government's repeated machinations and clear intentions to deprive Mr. Guzmán of a fair trial, the Court must preclude the government from introducing any evidence pertaining to the new alleged victims at trial.

### C. THE GOVERNMENT'S CONDUCT DEPRIVES MR. GUZMÁN OF THE EFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment provides that:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI. That counsel is ethically obligated to thoroughly investigate the allegations against Mr. Guzmán is axiomatic. *See* U.S. Const. amend. VI; *Strickland v.*

8

*Washington*, 466 U.S. 668 (1984). The American Bar Association Criminal Defense Function guidelines provide the following with regard to duty to investigate:

> Defense counsel should conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. The investigation should include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to defense counsel of facts constituting guilt or the accused's stated desire to plead guilty.

Standard 4-4.1(a).

In a typical murder or murder conspiracy case, at a minimum, the defendant is entitled to know small details like the name of the victim, the date of the murder, the place of the murder or even the manner of death. It is crucial for the defense to flesh out issues that may pertain to self-defense or any other defense. In counsel's experience, these types of cases are not tried with one month's notice. Here, counsel cannot discharge their obligations within the current trial date and the government's intentions with regard to the number of new murder conspiracies. If counsel is required to proceed under these circumstances, they will have been structurally precluded from providing effective representation to Mr. Guzmán. *See, e.g., Garcia v. Portuondo*, 459 F. Supp. 2d 267, 280 (S.D.N.Y. 2006) ("Representation of a criminal defendant entails certain basic duties, one of which is to investigate the facts of the case so that counsel can prepare a reasonably informed defense.").

This Court has considerable discretion with regard to the establishment of a trial schedule. *See Ungar v. Sarafite,* 376 U.S. 575, 564 (1964). A court abuses its discretion, however, and violates due process, by engaging in "a myopic insistence on expeditiousness in the face of a justifiable request for delay." *Id.* The decision must be based on the facts and circumstances of the case. In this case, the circumstances are simply unprecedented. Counsel

9

cannot be expected to prepare to defend against the 17 recently-disclosed murder conspiracies in two weeks. Forcing counsel to go forward under the current circumstances will "render the right to defend with counsel an empty formality." *Id*. at 849-850 (citing *Chandler v. Fretag*, 348 U.S. 3 (1954)).

**D.  EVIDENCE PERTAINING TO ALLEGED NEW VICTIMS SHOULD BE EXCLUDED UNDER FED. R. EVID. 403**

Mr. Guzmán requests that evidence of the new murder conspiracy victims be excluded pursuant to Federal Rule of Evidence 403. Rule 403 provides that the Court may preclude the presentation of evidence if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. While some of the new alleged murder conspiracies may be probative, it is plain that the sheer numbers involved here will create tremendous delay, will plainly be cumulative, and will be prejudicial almost beyond measure. *See, e.g., United States v. Basciano*, 2007 WL 1791221, at *3 (E.D.N.Y. June 19, 2007) ("numerous uncharged crimes are already being admitted and, at some point, the collective effect of all of these uncharged acts is to suggest criminal propensity."). Here, the government's dismissal of several counts and violations from the indictment indicate that the government purposely overcharged Mr. Guzmán seemingly for the purpose of suggesting a criminal propensity for which the government did not have solid evidence.

If the Court determines that it will permit the government to offer proof of one or more of these murder conspiracies, Mr. Guzmán respectfully requests that the Court grant a continuance, commensurate with the time required to prepare a defense.

E.  **SUPPLEMENT TO MR. GUZMÁN'S MOTION TO CONTINUE TRIAL**

To give the Court a better perspective of the sheer amount of § 3500 material that must be reviewed, analyzed and digested by counsel and Mr. Guzmán in order to prepare for effective cross-examination, Mr. Guzmán submits the following exhibits for the Court's consideration:

Exh. 1 (eight delivery boxes containing the § 3500 material):



Exh. 2 (23 individual binders containing over 14,000 pages of § 3500 material):



**WHEREFORE**, for the foregoing reasons and any other that may become apparent to the Court, Mr. Guzmán respectfully requests that This Motion be **GRANTED**.

**Dated**: Washington, DC
October 27, 2018

Respectfully submitted,

**BALAREZO LAW**

By: /s/
_____
A. Eduardo Balarezo, Esq.
EDNY Bar # AB7088
400 Seventh Street, NW
Suite 306
Washington, DC  20004
Tel: (202) 639-0999
Fax: (202) 639-0899
E-mail: aeb@balarezolaw.com

*Counsel for Defendant Joaquín Guzmán Loera*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 27th day of October 2018, I caused a true and correct copy of the foregoing Defendant's Motion to Preclude and Supplemental Motion to Continue Trial to be delivered via Electronic Case Filing to the parties in this case.

/s/
_____
A. Eduardo Balarezo