

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| GMP:BCR | *271 Cadman Plaza East* |
| F. #2009R01065 | *Brooklyn, New York 11201* |

October 28, 2018

<u>By Hand and ECF</u>

The Honorable Brian M. Cogan
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re: <u>United States v. Joaquin Archivaldo Guzman Loera</u>
             <u>Criminal Docket No. 09-466 (S-4) (BMC)</u>

Dear Judge Cogan:

      The government respectfully submits this letter in opposition to the defendant's Motion to Preclude and Supplemental Motion to Continue Trial. <u>See</u> Dkt. No. 395 ("Def. Br."). Feigning surprise that the government disclosed a bill of particulars listing additional murder conspiracy victims concurrently with its disclosure of 18 U.S.C. § 3500 material, the defendant contends that the trial must be delayed and the government precluded from introducing evidence of various murders and murder conspiracies at trial in this matter. <u>See</u> Def. Br. at 4-5. Contrary to what the defendant implies in his incomplete and, at times, incorrect presentation of the facts, the defendant has long known that the government would be identifying additional murder victims concurrently with its disclosure of § 3500 material. Indeed, the defendant wholly omits the fact that the government provided the defendant with a detailed roadmap, including an index referring to specific documents in the § 3500 material it has produced, showing the defendant how it intends to prove the murder conspiracies at trial. The Court should reject the defendant's latest attempt to manufacture a basis for an adjournment.

I.     <u>Background</u>

      A full and accurate accounting of the facts, stripped of the defendant's insinuations and rhetoric, makes clear that there has been no unfair surprise to the defendant in relation to the government's disclosure of its revised bill of particulars.

      On July 20, 2018, the government—without any request from the defendant or any prompting by the Court—voluntarily filed and provided the defendant with a bill of

particulars setting forth additional detail regarding its anticipated proof for Violation 85 of Count One of the Fourth Superseding Indictment (the "Indictment"). See Dkt. No. 269. That bill of particulars set forth the names of the victims of the defendant's murder conspiracies (where known and where doing so would not reveal the identities of the government's cooperating witnesses), the dates (where known) of the murder conspiracies and other pertinent information about the conspiracies that the government intends to prove at trial. See id. The bill of particulars included a footnote informing the Court and the defense that it would disclose additional murders at the time of its disclosure of the cooperating witnesses' § 3500 material, to the extent that disclosure of those murders could identify the government's cooperating witnesses. The defendant never challenged this plan to disclose additional murders at the time of its disclosure of cooperating witnesses' § 3500 material.[1]

On July 25, 2018, in response to a motion filed by the defense arguing that Violation 85 should be stricken from the Indictment, the Court issued an order advising the government to "strongly consider revising its bill of particulars for Violation 85" to more closely reflect its order of proof at trial. See July 25, 2018 Order, Dkt. Entry.

Mindful of the Court's July 25, 2018 order, the government revised its bill of particulars in its July 30 opposition to the defendant's July 24, 2018 motion to dismiss Violation 85. The revised bill of particulars (1) narrowed the timeframe of the defendant's conspiracy to murder unnamed informants, (2) deleted a general category of victims previously described as "[a]ssociates who betrayed the Sinaloa Cartel," and (3) removed the category previously described as "members of law enforcement." See Dkt. No. 275 at 8.

On September 7, 2018, the Court issued an order holding that Violation 85 stated an offense, and it declined to grant the defendant's application to strike Violation 85 from the Indictment. In that order, the Court ordered the government to advise the defendant of any evidence pertaining to the murder conspiracies alleged in Violation 85 that had been disclosed with its § 3500 material for law enforcement officers. See Dkt. No. 303 at 16 n.6. In response to that order, the government sent a letter to the defendant on September 19, 2018 advising the defendant about a report contained in a law enforcement witness's § 3500 material that discussed the defendant's war with the Arellano-Felix drug trafficking organization.

Immediately after disclosing its § 3500 material on October 5, 2018, and as promised in its July 20, 2018 letter, the government provided to the defense a supplemental bill of particulars including the murder conspiracies that the government had previously

---

[1] As the government explained in its opposition to the defendant's most recent motion to continue trial, the defendant has long been aware of and acknowledged the government's proposal to disclose § 3500 material for cooperating witnesses a month before trial. See Tr. Of Nov. 8, 2017 Status Conf. at 17 (Court holding that it "can't tell the government to give you [Section 3500 material] six weeks prior to trial" where there are security concerns for cooperating witnesses); see id. ("MR. BALAREZO: I understand. It's not my first rodeo. I understand how it works.").

2

withheld out of concern that disclosure of such information could identify its witnesses. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ The government also provided the defense with a detailed index corresponding to the government's § 3500 production, as the Court had previously ordered. See Dkt. No. 303 at 16. That index provides the defense with a roadmap of the government's anticipated proof of the murder conspiracies at trial. It identifies the cooperating witnesses whom the government expects to call to testify as to each murder conspiracy listed in the bill of particulars, and it identifies the Bates numbers of the documents setting forth the substance of each witness's expected testimony. On October 17, 2018, the government provided the defendant with a revised bill of particulars and index listing one additional witness-victim, pursuant to the Court's October 11, 2018 order denying the government's motion to delay disclosure of § 3500 material as to that cooperating witness and one additional witness. See Dkt. No. 364.

Now, the defendant complains that he has been "ambushed" by the disclosure of these murder conspiracy victims. Def. Br. at 4. The defendant asks the Court to preclude the government from presenting evidence relating to these murder conspiracy victims, see id. at 6, 8, and to continue the trial, see id. at 9-10. The defendant also provides two photographs that he purports are boxes and binders of printouts of the government's recent production of § 3500 material, See id. at 11-12, a production which is approximately 44 percent smaller than the government anticipated in July 2018, just prior to the Court's last adjournment of this trial.

II.     Argument

There is no basis to preclude the introduction of evidence related to the defendant's murder conspiracies or to continue the trial date. By voluntarily issuing a bill of particulars for Violation 85 and providing the defendant with the court-ordered index of its § 3500 material, the government has provided the defendant with far more than is legally required—or typically provided to the defense prior to trial. It has identified the murder conspiracy victims on precisely the schedule that it has long promised it would. The disclosure of this detailed roadmap of the government's evidence—which the defendant is not entitled to at all—is a wholly inadequate foundation for the defendant's motion. The motion is meritless, and the Court should deny it.

    A.    <u>The Bill of Particulars Provides No Basis to Continue the Trial Date or Preclude the Introduction of Evidence</u>

As the Court has previously explained in denying the defendant's earlier motion to strike Violation 85, a bill of particulars is "necessary 'only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.'" Dkt. No. 303 at 13 (quoting United States v. Chen, 378 F.3d 151, 163 (2d Cir. 2004)). A bill of particulars is "not a discovery device and should not function to disclose evidence, witnesses, and legal theories to be offered by the Government at trial or as a general investigative tool for the defense." Id. (citing United States v. Barrera, 950 F. Supp. 2d 461, 477 (E.D.N.Y. 2013)).

In terms of its legal sufficiency, the government's revised bill of particulars, which discloses cooperating witnesses, is no different than the previous version. It "name[]s the various cartels whose members it intends to prove at trial were victims of the murder conspiracy," it names with specificity the victims and intended victims of the murder conspiracy where their identities are known, it "sets forth the approximate dates during which these events took place," and, with its accompanying index, directs the defendant to precisely which documents and cooperating witnesses the government intends to use to prove each line item of the bill of particulars at trial. Dkt. No. 303 at 15. "[T]ogether with the other information available to the defendant," therefore, the government's bill of particulars is "sufficiently specific to put the defendant[] on notice of the crimes charged." Id. (citing United States v. Cutolo, 861 F. Supp. 1142, 1149 (E.D.N.Y. 1994) (internal quotation marks omitted)). The bill of particulars is therefore more than legally sufficient to "inform [the] defendant of charges with sufficient precision to allow preparation of a defense, to avoid unfair surprise, and to preclude double jeopardy." United States v. GAF Corp., 928 F.2d 1253, 1260 (2d Cir. 1991). Indeed, the defendant's motion does not substantially challenge the level of detail or the specific disclosures contained in the bill of particulars.

With respect to the timing of the government's disclosure of its bill of particulars, the defendant insists that the government's disclosure of the bill of particulars amounts to "trial by ambush." Def. Br. at 395. Nothing could be further from the truth. The government made clear months ago that it would be disclosing a revised bill of particulars, adding items that would reveal cooperating witnesses, simultaneously with its production of cooperating witness § 3500 material. See Dkt. No. 269. The Court also acknowledged this schedule in its September 7, 2018 order denying the defendant's previous motion to strike Violation 85. See Dkt. No. 303 at 16. The defendant has long known, therefore, that additional detail as to Violation 85 would be revealed in the government's revised bill of particulars. What the defense claims as an "ambush" is, in truth, information it has known about for months, and it has occurred on a schedule previously approved by the Court. See id. There is no basis to revisit the Court's earlier ruling and conclusion that a revised bill of particulars one month prior to trial would sufficiently inform the defendant of the charges against him.

Additionally, pursuant to the Court's order, the government has already taken steps to provide the defendant with information to help prepare his case. As set forth above, the government provided the defense with a line-by-line index linking each item on its bill of particulars to the identities of cooperating witnesses who will testify as to that item and the Bates numbers of related § 3500 material already produced to the defendant. This information far exceeds the scope of a typical bill of particulars, in that it essentially provides a roadmap to precisely how the government intends to prove Violation 85 at trial. This extraordinary disclosure, unprecedented in the experience of the prosecutors working on this case, far exceeds what the law requires, and it has provided the defense with a tremendous advantage as compared to the typical case. See, e.g., United States v. Bellomo, 263 F. Supp. 2d 561, 580 (S.D.N.Y. 2003) ("A bill of particulars is not designed to: obtain the government's evidence; restrict the government's evidence prior to trial; assist the defendant's investigation; obtain the

precise way in which the government intends to prove its case; interpret evidence for the defendant, or disclose its legal theory.").[2]

Ultimately, while the defendant's motion is replete with exaggerated rhetoric, it provides no substantive basis for delaying the trial or precluding the government from presenting evidence related to the defendant's murder conspiracy charged in Violation 85. In fact, none of the cases cited in the defendant's motion involve the remedy of striking elements of a government's case or precluding the government from presenting evidence.[3] The Court should therefore deny the defendant's motion to preclude evidence related to Violation 85 or to continue the trial date in light of the bill of particulars.

    B.  The Additional Arguments in the Defendant's Motion Provide No Basis to Continue the Trial Date or Preclude the Introduction of Evidence

The defendant makes several additional stray assertions in his motion, unrelated to the Violation 85 bill of particulars itself, in further support of his contention that the trial should be delayed or the government precluded from introducing evidence related to the defendant's murder conspiracies. None of them has merit.

For instance, the defendant faults the government for streamlining its case by dismissing several counts and violations from the Indictment. Def. Br. at 10. But that streamlining and simplification of the trial is a reason to <u>keep</u> the current schedule, not to delay it. And only a few months ago, defense counsel asserted that he not only wished to have the government narrow its case, but that the defense was using the promise of pretrial stipulations in order to persuade the government to do so. See Tr. of Aug. 4, 2018 Status Conf. at 14 ("THE COURT: . . . [I]t sounds like you're trying to leverage stipulations in order to get them to withdraw some of the counts. Am I misreading that? MR. PURPURA: You're not, judge."). Having obtained what they sought, defense counsel should not now be heard to cast aspersions about the fact that the government dismissed charges in order to simplify the trial. Instead,

---

[2] Even aside from the Violation 85 and § 3500 disclosures, the defendant repeats his common refrain that its discovery has been produced "in a disorganized fashion with no index." Def. Br. at 7. This continues to be a false assertion. Every single discovery letter has provided a general description of each Bates range of documents produced, consistent with standard practice in this district. See, e.g., Dkt. Nos. 60, 72, 93, 109, 119, 140, 165, 167, 184, 191, 205, 218, 232, 235, 249, 281, 315. It is not the government's job to explain the evidence to defense counsel in advance of trial.

[3] Notably, much of the murder conspiracy evidence the defendant seeks to strike relates to cooperating witnesses, who engaged in violent acts on behalf of the Cartel the defendant led. Eliciting the witnesses' acts of violence is necessary to complete their own accounts of their illicit conduct; moreover, the jury would be misled about the defendant's role in the overarching enterprise if it only learned about the witnesses' violent conduct without understanding that the defendant frequently ordered that violent conduct himself.

5

they should consider entering into their long-promised stipulations to further streamline this case. Notably, to date, the defense has not stipulated to a single piece of evidence, and it has indicated that it is doubtful it will do so, thereby, likely extending this trial several weeks.

The defendant also offers photographs that he purports show the volume of printed § 3500 material. See Def. Br. at 11-12. The government notes again that the § 3500 production was barely more than half as large than the government had previously envisioned when it proposed to the Court that it would produce § 3500 material for cooperating witnesses. See Dkt. No. 387 at 3. The fact that the volume is smaller than anticipated is another reason to keep the current trial schedule, not to delay it.

Similarly, the defendant again raises his complaint that the § 3500 material is largely in English. See Def. Br. at 7. This should not have been a surprise: it would have always been apparent to experienced criminal practitioners that § 3500 material for cooperating witnesses would include a large proportion of notes and reports of investigation written by U.S. law enforcement. This complaint also demonstrates the shifting sands on which the defendant stands in his repeated attempts to delay his impending trial. When Rule 16 discovery was at issue, the defendant sought continuances based on the fact that it was in Spanish. See Dkt. No. 387 at 2. Now that § 3500 material is at issue, the defendant seeks a continuance based on the fact that it is in English. Neither contention merits the delay that the defendant seeks.[4] His bilingual defense team is more than capable of reviewing the evidence and preparing for its effective use at trial.[5]

Finally, the defendant blithely dismisses the government's well-documented security concerns for its cooperating witnesses stating that many of them are incarcerated and their families are "presumably in safe locations," and thus its "cooperators are under government protection and safe from any real or imagined threat." Dkt. 391 at 3. Not so. Regardless of where the cooperating witnesses and/or their families are located, the capability of the defendant and his co-conspirators to harm witnesses and their families extends well beyond the reach of Mexico and other Latin American countries. ████████

---

[4] The fact that the defendant has argued both sides of this coin is reminiscent of his assertions with respect to discovery indices. When it suits him, including in the instant motion, the defendant has complained that the government has not provided indices to its discovery. Not only is the complaint not accurate, see supra n.2, but it stands in stark contrast to the defendant's alternate complaint that when the government does provide an index, it is of no value because he "cannot simply rely on the government's evidence." Def. Br. at 5.

[5] Additionally, as the Court is well aware, this is anticipated to be a lengthy trial. The six defense attorneys and three paralegals who have access to discovery under the Protective Order can continue to review discovery and prepare the defendant's case while trial is ongoing. See Dkt. No. 387 at 4. As the government recently noted, once the trial date is firm, the government is willing to reveal to the defense the identities of its first several witnesses to aid defense counsel in appropriately prioritizing its preparation. See id. at 5.

6

Additionally, the defendant's sons remain in charge of his vast drug trafficking empire. Both they, and the defendant's wife, Emma Coronel, are routinely found on social media flaunting their massive financial resources. See Emily Crane, "Gucci, Private Jets, Guns and Cocaine! Photos Show How El Chapo's Fugitive Son Is Living a Lavish Life Despite Being on the DEA's Most Wanted List," Daily Mail (Oct. 22, 2018), available at https://www.dailymail.co.uk/news/article-6303411/El-Chapos-fugitive-son-living-lavish-life-despite-wanted-man.html (last visited Oct. 28, 2018); Isabel Vincent, "El Chapo's Wife is Flaunting Her Wealth While He's On Trial," New York Post (Oct. 28, 2018), available at https://nypost.com/2018/10/20/el-chapos-wife-is-flaunting-her-wealth-while-hes-on-trial/ (last visited Oct. 28, 2018). As such, there is no doubt that the defendant and his Cartel have the capability, the resources and the will to harm cooperating witnesses and their families, even after they have been relocated.

C. Additional Delay Will Impair Jury Selection

Any additional delay occasioned by the defendant's pending motions to continue the trial date risk making it substantially more difficult to select an impartial jury. First, as the Court knows, jury questionnaires have been filled out by prospective jurors, and the parties have submitted a list of mutually acceptable jurors to the Court. Those questionnaires were premised on the current trial date and provided the potential jurors an estimate of the length of the trial. See Dkt. No. 330 at 34. Substantial delay risks rendering those questionnaires obsolete and would require an entirely new set of prospective jurors to provide questionnaires relating to a new trial date.

Additionally, substantial media interest in this trial is beginning to accelerate in anticipation of the impending scheduled trial date. For instance, Vice News is beginning a podcast this week, which promises eight episodes detailing a "journey across Mexico and the U.S. to meet people affected by El Chapo and the drug war." See https://news.vice.com/en_us/article/9k7pm3/welcome-to-chapo-kingpin-on-trial-a-new-podcast-from-vice-news (last visited Oct. 28, 2018). The producers of the podcast apparently have interviewed or will interview "heroin traffickers, cartel hitmen," family members of the defendant, a DEA agent who was involved in efforts to capture the defendant, former Mexican president Felipe Calderon, "families shattered by violence, ordinary citizens caught between drug cartels and the Mexican military," as well as, troublingly, "the lawyers who are defending El Chapo in court." Id. (emphasis added). The longer that trial is delayed, the more that such media interest may taint the jury pool and derail the jury selection process already underway.

III. Conclusion

For the foregoing reasons, the Court should deny the defendant's motion to preclude the government from introducing evidence related to the murder conspiracy victims

added to its revised bill of particulars, and it should deny the defendant's renewed request to continue the trial date in this matter.

IV.     Partial Sealing is Appropriate

Pursuant to the protective order in this case, the government respectfully requests permission to submit this brief under seal. See Dkt. No. 57 ¶ 8. This brief details information regarding the government's cooperating witnesses. Although the cooperating witnesses are not identified by name herein, the defendant's criminal associates likely could use the information described herein to identify that witness.

Thus, sealing is warranted because of the concerns regarding the safety of potential witnesses and their families, and the danger posed by disclosing the potential witnesses' identities and their cooperation with the government. Sealing is further warranted to protect the disclosure of sensitive information regarding the government's witnesses. See United States v. Amodeo, 44 F.3d 141, 147 (2d Cir. 1995) (need to protect integrity of ongoing investigation, including safety of witnesses and identities of cooperating witnesses, and to prevent interference, flight and other obstruction, may be compelling reason justifying sealing); see Feb. 5, 2018 Mem. & Order Granting Gov't Mot. for Anonymous and Partially Sequestered Jury, Dkt. No. 187 at 2-3 (concluding that defendant's actions could pose risk of harm to cooperating witnesses). As the facts set forth herein provide ample support for the "specific, on the record findings" necessary to support partial sealing, Lugosch v. Pyramid Co., 435 F.3d 110, 120 (2d. Cir. 2006), the government respectfully requests that the Court permit the government to file its opposition to the defendant's motion under seal. Should any order of the Court regarding this application describe the sealed information in question with

8

particularity, rather than in general, the government likewise requests that those portions of the order be filed under seal.

                                                 Respectfully submitted,

                                                 RICHARD P. DONOGHUE
                                                 UNITED STATES ATTORNEY
                                                 Eastern District of New York
                                                 271 Cadman Plaza East
                                                 Brooklyn, New York 11201

                                                 ARTHUR G. WYATT, CHIEF
                                                 Narcotic and Dangerous Drug Section
                                                 Criminal Division,
                                                 U.S. Department of Justice

                                                 OF COUNSEL:

                                                 ARIANA FAJARDO ORSHAN
                                                 UNITED STATES ATTORNEY
                                                 Southern District of Florida

                                                 Counsel for the United States of America

.

cc:     Clerk of the Court (BMC) (by ECF)
         Defense Counsel (via Email)