LAW OFFICES OF

# JEFFREY LICHTMAN

11 EAST 44TH STREET
SUITE 501
NEW YORK, NEW YORK 10017
www.jeffreylichtman.com

JEFFREY LICHTMAN
JEFFREY EINHORN
PAUL TOWNSEND

PH: (212) 581-1001
FX: (212) 581-4999

November 2, 2018

**FILED VIA ECF & UNDER SEAL**
Hon. Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11217

Re: <u>United States v. Guzman Loera</u>, S4 09 CR 466 (BMC)

Dear Judge Cogan:

      I am writing on behalf of defendant Joaquin Guzman Loera to respectfully request reconsideration of the Court's October 30, 2018 Order (Dkt. No. 403) prohibiting the defendant from cross-examining CW1 regarding his troubling and farcical beliefs. Specifically, while the Court ordered that cross-examination on this topic be precluded, it also noted that evidence of CW1's mental instability "might be proper impeachment material if it impaired CW1's ability to perceive the events at the time they occurred or to tell the truth at trial." Dkt. No. 403, at p. 4. Reconsideration is warranted here as the information disclosed by the government in their October 5, 2018 <u>Giglio</u>[1] letter and the § 3500 material clearly demonstrates that CW1's ability to understand the events taking place around him and about which he will likely testify was severely compromised, and raises issues that the jury should be permitted to consider in making their credibility assessment.

      <u>First</u>, contrary to the government's assertion, cross-examination of CW1's mental stability will neither waste time or subject CW1 to harassment or undue embarrassment. <u>See</u> Fed. R. Evid. 611; <u>see also</u> Dkt. No. 350, at p. 7. Instead, this information goes directly to the credibility of one of the chief government witnesses against the defendant, and whose credibility is therefore "subject to close scrutiny." <u>Hargrave v. McKee</u>, 248 F.App'x. 718, 727 (6th Cir. 2007) <u>quoting</u> <u>Gordon v. United States</u>, 344 U.S. 414, 417 (1953) (trial court erred in prohibiting cross-examination into witness' paranoia, violating the Sixth Amendment's Confrontation Clause); <u>see also</u> <u>Davis v. Alaska</u>, 415 U.S. 308, 318 (1974) (cross-examination was inappropriately limited

---

[1] <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

JEFFREY LICHTMAN
Hon. Brian M. Cogan
United States District Judge
November 2, 2018
Page 2

by failing to allow defense counsel to elicit *specific facts* on the record which supported the defendant's claim that the witness was not credible).

As the Davis Court observed, it is imperative that a defendant be permitted to elicit specific details as to why the jury should discredit a government witness; a simple inquiry into whether a witness is biased, or has credibility issues, without the ability to explore the underlying details leaves the jury with the impression that defense counsel is merely speculating or is engaging in a baseless line of attack. Davis, 415 U.S. at 318. Therefore, "defense counsel should [be] permitted to expose to the jury the facts from which the jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." Id.

Second, the government's own disclosures call into question CW1's ability to perceive the events about which he is anticipated to testify. Specifically, the government admits that CW1's "former family wealth and power *possibly influenced his perception of reality at times, giving him delusions of grandeur*." See Government's October 5, 2018 Giglio Letter (Gov. Ltr.), at p. 5 (emphasis supplied). The government further describes CW1 as "paranoid," "a believer in conspiracy theories" and as an individual who is "confident that the Pentagon and the CIA were aware of the impending apocalypse and were making appropriate preparations." Id. Beyond merely obsessing over completely unsubstantiated conspiracy theories, CW1 also "consistently brought up with others his belief on the impending apocalypse due to the inevitable collision of the Earth with planet 'Nibiru'[2] or planet 'Ofiuco'[3].'" Id.

These theories and beliefs – which do not constitute religious beliefs protected by Rule 610 – clearly demonstrate that CW1 maintains an alternative perception of reality, and the jury should be allowed to consider this critical fact in determining whether or not they believe parts, or all, of his testimony. Indeed, allowing such cross-examination is regularly permitted in the Eastern District. For instance, in United States v. Dupree, Judge Matsumoto ruled that factors which may affect an individual's ability to accurately perceive events were fair topics for cross-examination. Dupree, 833 F.Supp.2d 255, 264-265 (E.D.N.Y. 2011) *overruled on other grounds*

---

[2] The idea of a collision with planet "Nibiru" was first proposed in 1995 by Nancy Lieder, who describes herself as a "contactee," and claims that she can receive messages through an implant in her brain from aliens in the Zeta Reticuli star system. She originally predicted the end of the world in May 2003, but later her followers shifted the expected apocalypse to 2012 to be consistent with the prophecies of the Mayan calendar. See Natalie Wolchover, NASA: Scientists Reject Impending Nibiru-Earth Collision, Solar System Exploration Research Virtual Institute (July 8, 2011), available at https://lunarscience.nasa.gov/articles/scientists-reject-impending-nibiru-earth-collision/ (last accessed November 1, 2018).

[3] Counsel has been unable to find any information regarding any celestial bodies named "Ofiuco." See 3500-[CW1]-63. It does not appear to exist.

JEFFREY LICHTMAN
Hon. Brian M. Cogan
United States District Judge
November 2, 2018
Page 3

in United States v. Dupree, 706 F.3d 131 (2d Cir. 2013). In Dupree counsel was permitted to inquire into certain medications the witness was taking during the time period at issue (see id.), and in the instant case, the government has disclosed that CW1 was a "hypocondriac," who complained about "a variety of unidentified medical ailments and overall general sickness, *seeking a variety of unidentified vitamins, medicines, and unspecified medical procedures.*" See Gov. Ltr., at p. 5 (emphasis supplied).

Finally, it is noted in the October 30, 2018 Order that in the three cases cited by the defendant and the government,[4] the evidence of the witness's mental illness is "significantly stronger." See Dkt. No. 403, at p. 4. We respectfully disagree with this assessment. While the witnesses in these cases may have had more extensively documented psychological treatment and lengthy hospitalization records, here, CW1's belief in a 15 foot-tall alien race from another universe, called the Anunakis, who once mined earth's gold and precious metals at the very least rivals any mental illness or alternative view of reality espoused by those witnesses. See 3500-[CW1]-63. The mere fact that CW1 never sought formal therapy for his myriad psychological ailments should not preclude the defendant from exploring how these addled beliefs shaped CW1's view of reality and whether the jury should find him credible.

For the foregoing reasons, the Court should reconsider barring the defendant from cross-examining CW1 on the topic of his beliefs and opinions.

                                              Respectfully submitted,

                                              Jeffrey Lichtman

cc:     All counsel (by email and ECF)

---

[4] United States v. Butt, 955 F.2d 77 (1st Cir. 1992); United States v. Moore, 923 F.2d 910 (1st Cir. 1991); and United States v. Bari, 750 F.2d 1169 (2d Cir. 1984).