```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :   **MEMORANDUM**
                        - against -                         :   **DECISION AND ORDER**
                                                            :
JOAQUIN ARCHIVALDO GUZMAN                                   :   09-cr-0466 (BMC)
LOERA,                                                      :
                                                            :
                        Defendant.                          :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

The Government filed a supplemental motion *in limine* renewing four motions that the Court previously denied on October 25, 2018. This order addresses one of those motions.[1] Defendant has confirmed on the record that he does not object to this motion (specifically with respect to the photographs and sketches).[2] For the reasons below, the motion [396] is granted in part and reserved in part.

## BACKGROUND

The Government previously requested that the Court prohibit the dissemination of photographs of cooperating witnesses that are introduced as exhibits at trial and prohibit courtroom sketches of those same witnesses. The Court denied the motion without prejudice, informing the Government that, before the Court would grant its motion, the Government needed

---

[1] The Court will issue a separate order addressing the other renewed motions, including the motion regarding the 2001 prison escape on which the Government requests a pretrial ruling. That order is forthcoming.

[2] A reporter with Newsday also responded [339] to the Government's initial motion. The reporter requested that the Court order the Government to pixelate these exhibits in advance so that the press and public can have immediate access to them once the non-pixelated versions are introduced into evidence. This order resolves that request. The Court's previous order – requiring the Government to provide a witness-by-witness factual proffer before it may pixelate exhibits or limit sketching of that witness – resolved the reporter's second request that the Government obtain permission from the Court for each exhibit that it would like to pixelate.

to (1) identify the exhibits at issue and explain how it intended to use those exhibits at trial; and (2) make factual proffers on a witness-by-witness basis.

The Government has made a pretrial factual proffer about two cooperating witnesses and seeks an advance ruling as to those witnesses because of the unique security concerns they present. The Government has supplemented its motion with a sealed, *ex parte* letter that contains detailed information about the specific safety risks these two witnesses face. The Government attached to that letter the eight photographic exhibits that the Government would like to pixelate before disseminating them to the public.

The Court remains convinced that cooperating witnesses who testify at this trial and their families are and will continue to be at risk. But the Court also recognizes that the Government's request is in tension with the public's common law and First Amendment rights of access to this trial and the judicial documents used in it.

The Court makes the following findings based on the Government's sealed, *ex parte* proffer letter for these two cooperating witnesses:[3]

1. Both witnesses will face significant safety risks once the fact of their cooperation becomes public – that is, when they take the witness stand at trial.
2. The families of both cooperating witnesses will also face significant safety risks once the fact of these witnesses' cooperation becomes public.
3. Although the trial transcript will include the witnesses' names – and therefore identify them as cooperating witnesses – there is a much greater risk to these witnesses' safety if pictures of them are also disseminated to the public.
4. All eight photographs identify the witness captured in them: three portray the witnesses' faces and five portray ▮▮▮▮▮▮▮▮▮▮, which are sufficiently identifying to anyone who knows about ▮▮▮▮.
5. These two witnesses do not have social media accounts or any other type of public page associated with their identities. The Government has represented to the Court

---

[3] Under the relevant standards (discussed further below), my factual findings must be made on the record. But the information I must consider to make those findings is too sensitive to discuss publicly. To balance those opposing interests, I have made these findings as specific as possible under the circumstances.

2

that there are no public photographs of these witnesses, and these exhibits and any sketches would be the first identifying images of these witnesses available to the public.[4]

6. If images – whether photographs or sketches – of these witnesses are readily available to the public there is a significant risk that the images will be disseminated to people who want to harm the witnesses and would not otherwise know what they look like now or where they are located.

7. In addition, these witnesses' coworkers and acquaintances do not know about their pasts. They therefore face significant and serious disruption to their lives if their cooperation becomes general knowledge. They have a strong privacy interest in limiting public knowledge of their cooperation (along with the details of their past that make them cooperating witnesses) as much as possible.

## DISCUSSION

The public's right of access to judicial proceedings and documents is protected by both the common law and the First Amendment. These two rights overlap significantly. But because the latter is constitutional, it sets a higher bar for restriction. See Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 124-25 (2d Cir. 2006)).

### I. Pixelated Photograph Exhibits

The Government seeks to pixelate eight photographs that it will introduce into evidence as exhibits at trial. Seven of these photographs pertain to one of the cooperating witnesses at issue. Of these, five depict ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ attacks that defendant allegedly ordered (only one shows the witness's face). The Government intends to introduce these five photographs to corroborate that witness's testimony about the alleged attacks. The sixth photograph is a headshot, which the Government intends *other* witnesses "to identify to corroborate testimony regarding the past drug trafficking relationship between the cooperating witness [pictured] . . . and the defendant" – presumably by having those other

---

[4] The seventh photograph that the Government seeks to pixelate has ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3

witnesses identify the cooperating witness pictured and confirm that the cooperating witness pictured engaged in drug trafficking with defendant. The seventh photograph is ▓▓▓▓ ▓▓▓▓ and shows the cooperating witness ▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓, which the Government will use to corroborate the witness's testimony about his drug trafficking relationship with defendant.

The eighth photograph pertains to the other cooperating witness at issue. It is a headshot of that witness that the Government intends to introduce as an identification tool and a means to corroborate that witness's testimony generally.[5]

### A. *Common Law Right of Access*

Under the common law right of access, there is "a general right to inspect and copy public records and documents, including judicial records and documents." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978). The Second Circuit has established a three-step process to determine whether the common law right applies: first, the court must determine whether the documents are "judicial documents"; second, the court must determine what weight to assign to the presumption of access; and third, the court must balance countervailing interests against the presumption to determine whether they outweigh the presumption of access. See United States v. Erie Cty., 763 F.3d 235, 239 (2d Cir. 2014). But ultimately, "the decision as to access [under the common law] is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." Nixon, 435 U.S. at 599.

---

[5] The Government does not fully explain how it will use the eighth photograph, but its proffer seems to suggest that the Government might introduce it as a mere identification aid for the jury. But in an abundance of caution, the Court assumes that the Government will be using this photograph in the same way it will use the others: as a means of corroborating cooperating witnesses' testimony.

4

The presumption of access only applies to "judicial documents." A judicial document is one that is "relevant to the performance of the judicial function and useful in the judicial process." United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) ("Amodeo I"). Whether a document is a "judicial document" depends on its role in the judicial process, Erie Cty., 763 F.3d at 239, not simply whether it was filed with the court, Amodeo I, 44 F.3d at 145, or formally admitted into evidence, United States v. Graham, 257 F.3d 143, 153 (2d Cir. 2001).

These photograph exhibits are properly considered judicial documents under the common law right of access. Although it is not dispositive, the fact that they will be introduced as exhibits during trial counsels towards finding that they are judicial documents. Exhibits are usually introduced at trial because they are relevant and useful to that judicial process. Moreover, the Government's proffer suggests that the Government is not simply introducing these photographs as helpful visual aids for the jury; instead, it is using them to corroborate substantive testimony. The presumption of access therefore attaches to these photographs.

Once a document is deemed to be a "judicial document," a court must then determine what weight to assign to the presumption of access to it. "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." United States v. Amodeo, 71 F.3d 1044, 1049 (2d Cir. 1995) ("Amodeo II"). "[D]ocuments that directly affect an adjudication and play a significant role in determining litigants' substantive rights receive the benefit of a relatively strong presumption." Graham, 257 F.3d at 153 (internal quotation marks and citation omitted). On the other hand, the presumption is weak for those documents in which the public interest "is not as pressing." Id. (internal quotation marks and citations omitted). If a document falls in the middle of the continuum, the

court looks to "whether such documents are usually filed with the court and are generally available."  Id.  Generally, however, there is a "strong presumption" of access to documents that are introduced at trial.  Graham, 257 F.3d at 150-51 & n.2.

The same reason why these photographs are properly considered judicial documents also suggests that they should fall on the "stronger" end of the presumption-weight continuum:  they are exhibits intended to lend credibility to testimony given by the Government's cooperating witnesses at trial.  The Government has said that it expects a significant portion of its case to consist of cooperating witness testimony, so evidence that tends to corroborate that testimony will certainly be useful in these proceedings.  It means that the jury will consider these photographs when determining defendant's guilt or innocence.  Therefore, they will necessarily have a direct effect on this adjudication and play a role in "determining [defendant's] substantive rights."  Amodeo II, 71 F.3d at 1049.  As a result, the weight assigned to the presumption of access for these photographs is strong.

"[A]fter determining the weight of the presumption of access, the court must balance competing considerations against [disclosure]."  Erie Cty., 763 F.3d at 239 (internal quotation marks and citations omitted).  The Second Circuit has identified two countervailing factors that can balance against even a strong presumption of access: "(i) the danger of impairing law enforcement or judicial efficiency and (ii) the privacy interests of those resisting disclosure."  Amodeo II, 71 F.3d at 1050.  Both factors overcome the presumption of access here.

There is a danger of impairing law enforcement interests because "release [of the photographs] is likely to cause persons in the particular [case] or future cases to resist involvement where cooperation is desirable."  Id.  Based on the Government's sealed, *ex parte* proffer, these two cooperating witnesses are testifying despite a risk of grave danger to

6

themselves and their families.  If the witnesses know that their photographs will be disseminated to the public, including to people who want to harm them, they may cabin their testimony to reduce their exposure.  Moreover, dissemination of these photographs in this case may dissuade future witnesses from cooperating with law enforcement in other prosecutions of this magnitude that present comparable safety concerns.  See id.

There is also a risk of unnecessarily interfering with these witnesses' privacy interests.  This factor requires the Court to consider the "degree to which the subject matter is traditionally considered private rather than public" and the "nature and degree of injury."  Id. at 1051.  The latter consideration is critical here:  it depends on both the sensitivity of the information and the subject at issue, as well as "how the person seeking access intends to use the information."  Id.  The Court has already found that the identifying photographs (whether they identify the cooperating witness by face or by ▮▮▮▮▮▮▮) represent sensitive subject matter that should not be readily accessible to the public, which counseled against releasing these photographs under the common law framework.  That finding is also relevant to show the nature and degree of injury.  First, although one's appearance and physical features are not normally sensitive information, they are for these individuals, who have created new lives for themselves so that their employers, coworkers, and friends do not know about their connection to the Sinaloa Cartel.  For these people, the connection between the fact of their cooperation and their current identity is highly sensitive information.  Second, the individuals who would be most interested in this information (that is, the identity and likeness of the cooperating witnesses and their connection to this case) do not have a proper motive in seeking it.  Those who would benefit most from dissemination of these identifying photographs are the very individuals who might harm the cooperating witnesses; as a result, the nature and degree of the injury are great.

The effect of both countervailing factors – protecting law enforcement interests and third-parties' privacy interests – is compounded where, as here, the media attention on the case is extraordinary. That media coverage has focused not just on this case generally, but specifically on who will testify at trial. Indeed, national news outlets have published articles dedicated entirely to speculating about the cooperating witnesses' identities.

## B. *First Amendment*

The First Amendment "also protects the public's right to have access to judicial documents." Erie Cty., 763 F.3d at 239. The Second Circuit has instructed that the First Amendment applies when "'experience and logic' support making the document available to the public." Id. (quoting Lugosch, 435 F.3d at 120). Under this so-called "experience and logic" approach, a court must "consider (a) whether the documents have historically been open to the press and general public (experience) and (b) whether public access plays a significant positive role in the functioning of the particular process in question (logic)." Id. (internal quotation marks and citation omitted).

Borrowing from the reasoning behind the common law analysis above, it is clear that trial exhibits have historically been open to the press and general public. Criminal trials are public affairs, and these types of documents are presumed to be public as a result. See also Lugosch, 435 F.3d at 120. And because the process in question is a criminal trial, public access plays a significant role in its functioning. Thus, logic and experience counsel towards applying the First Amendment right of access to these photographs.

However, even where the First Amendment applies, "[d]ocuments may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Id. (quoting In re N.Y. Times Co.,

8

828 F.2d 110, 116 (2d Cir. 1987)). Here, the higher value that would be preserved by pixelating these eight photographs is protecting the safety of the two cooperating witnesses who face significant danger and disruption for testifying. This is certainly an interest worth protecting, and the Court's factual findings above show that the interest is strong here.

Moreover, the Government's request is narrowly tailored to serve the interest of protecting the identity of these witnesses. The Government does not seek to completely preclude dissemination of the photographs. It only seeks to pixelate the portions of the photographs that would be identifying – either the witnesses' faces or ▮▮▮▮▮. The public will still have a right to look at the pixelated exhibit to understand what the photograph portrayed generally – a person – and the public will be able to glean from the transcript of the proceedings how the photograph was used during trial. Only the identifying portions of these photographs will be pixelated, so they will be "sealed" only to the extent necessary to protect the overriding interests here.

Therefore, the Government is ordered to provide the Court with pixelated versions of these exhibits at least one day before the Government seeks to introduce them at trial. The Court will review the Government's proposed pixelated exhibits to ensure that they comply with the letter and spirit of this order and will make a final ruling on the record before the corresponding non-pixelated exhibits are introduced at trial.

## II. Prohibition on Sketching

The Government's related request – to completely prohibit sketching of these two witnesses – conflicts with the public's First Amendment right of access to the trial. Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 577 (1980) (equating the right "to speak and to publish concerning what takes place at a trial" with the right to attend criminal trials implicit in

the First Amendment); see also Globe Newspaper Co. v. Superior Court for Norfolk Cty., 457 U.S. 596, 603 (1982).  Thus, the same facts and law apply, and the Court can impose reasonable restrictions on the public's right of access as long as those restrictions are narrowly tailored to achieve an overriding interest.  See Richmond Newspapers, 448 U.S. at 581.

Permitting sketch artists to memorialize these witnesses would put the witnesses in the same danger as permitting dissemination of their photographs.  Widespread dissemination of their likenesses in sketch drawing will make it easier for someone who wants to harm the witnesses to identify and locate them.  Widespread dissemination would also make it more likely that the lives these witnesses lead now – separate from their pasts, which they will testify about at trial – will be disrupted once their employers, co-workers, and friends find out.  Therefore, the same overriding interests that applied to the photograph exhibits also apply to the dissemination of courtroom sketches.

However, a complete prohibition on sketching these witnesses would not be narrowly tailored to protect those interests.  The general courtroom setting, the other individuals present in the courtroom, and the non-identifiable portions of the witnesses need not be restricted to protect these witnesses.  Therefore, to the extent anyone sketches the courtroom scene while these two witnesses are testifying must portray these witnesses with blank faces and generic features, meaning, for example, without the witnesses' actual hairstyles.

The Court will therefore proceed as follows:  The Government must notify the Court at least one day before these witnesses testify.  The Court will announce to the courtroom before the witnesses take the stand that no one is permitted to sketch the witnesses' faces or distinctive features, including their actual hairstyles.  The Court will also announce that any sketches of these witnesses must be shown to the Government before the sketches are taken from the

courtroom. To the extent that the Government objects to a sketch, the Government shall promptly apply to the Court for a ruling on whether the sketch must be adjusted before it can be publicly disseminated.

**CONCLUSION**

The Government's supplemental motion *in limine* [396] is granted in part. The Court reserves decision on the other motions contained within it.

**SO ORDERED.**

\*

_____
U.S.D.J.

Dated: Brooklyn, New York
November 6, 2018

\*Redacted as of 11/11/18