```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :
            - against -                                     :   ORDER
                                                            :
JOAQUIN ARCHIVALDO GUZMAN                                   :   09-cr-0466 (BMC)
LOERA,                                                      :
                                                            :
                        Defendant.                          :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Defendant has moved for reconsideration of the Court's October 30, 2018 order precluding cross-examination on a cooperating witness's unorthodox interests. For the reasons set forth below, the motion is denied.

## BACKGROUND

The Government previously moved to preclude defendant from cross-examining one of the Government's cooperating witnesses about that witness's "unorthodox interests, and religious and spiritual beliefs." As described in more detail below, these interests include the Illuminati, Freemasonry, other planets and galaxies, UFOs, the apocalypse, witchcraft, and astrology. In its motion, the Government proffered that the witness learned about these matters from watching videos on the internet and the Discovery Channel. The Government also proffered that, when questioned about these matters by the Government, the witness stated that the witness is interested in reading and watching videos about them, but the witness does not believe that they are real or accurate. In its motion to preclude, the Government argued that these interests are not proper impeachment material because they are not relevant to defendant's guilt or innocence and do not bear on the witness's credibility or veracity. The Court agreed and granted the Government's motion over defendant's opposition.

Defendant now moves the Court to reconsider that decision on the ground that this evidence goes to the credibility of an important cooperating witness because it suggests that the witness could not accurately perceive the events about which the witness will testify. Defendant has consistently taken the position that the "bizarre" nature of these interests suggests that the witness is delusional, unstable, or suffering from a psychological illness or impairment.

Defendant points to several examples from the Government's § 3500 material to support his position that these interests and beliefs are properly considered impeachment material:[1]

- The witness has communicated with a close associate about the witness's interests in "Illuminati, Freemasonry, other planets, other galaxies, UFO's and the idea that there was an impending apocalypse in 2012."

- The witness has said that a Discovery Channel show about a 15-foot-tall alien race from another universe that used to mine the Earth's metals "made a big impression" on the witness.

- The witness has "consistently brought up with others [the witness's] belief on [*sic*] the impending apocalypse due to the inevitable collision of the Earth with planet 'Nibiru' and planet 'Oficuco.'"

- The witness told the Government that the witness "doesn't know to what point this is reality."

- The Government in its <u>Giglio</u> letter described the witness as "paranoid," "a believer in conspiracy theories," and "confident that the Pentagon and the CIA were aware of the impending apocalypse and were making appropriate preparations."

- The witness's email address is Illuminatixxx13@gmail.com.

- Someone overheard the witness tell the witness's mother that the witness fired a longtime maid because the witness "felt [the maid] was doing witchcraft."

- The witness has "personally availed . . . the services of a witch doctor on several occasions."

- The witness once requested that the witness's gardener bring the witness to a witch doctor, who told the witness that "someone had passed their life to [the witness]," and

---

[1] The Court has compiled these examples from the briefing on the Government's original motion *in limine* and defendant's motion for reconsideration of the Court's order granting that motion.

2

- the witness "recalled feeling 'a lot of energy' on the same day that an individual named Francisco was killed."

- The witness has discussed the "herbal bathes [sic] than [sic] clense[] [sic] the soul."

- The Government in its Giglio letter described the witness as a "hypochondriac" who has complained about "a variety of unidentified medical ailments and overall general sickness, seeking a variety of unidentified vitamins, medicines, and unspecified medical procedures."

- The Government in its Giglio letter claimed that witness's "former family wealth and power possibly influenced [the witness's] perception of reality at times, giving [the witness] delusions of grandeur."

- Some of these observations and statements occurred during the period charged in the indictment, including at the time of events to which the witness will testify at trial.

## DISCUSSION

The Sixth Amendment guarantees a criminal defendant the right to confront the Government's witnesses against him, which includes the right to cross-examine those witnesses. See U.S. Const. amend. VI; United States v. Vitale, 459 F.3d 190, 195 (2d Cir. 2006) (quoting Davis v. Alaska, 415 U.S. 308, 315 (1974)). "Cross-examination is the principal means to show that a witness is biased, or that the testimony is exaggerated or unbelievable." Id. (internal quotation marks and citation omitted).

Under Federal Rule of Evidence 608(b), a party may cross-examine a witness on specific instances of the witness's conduct if they are probative of the witness's character for truthfulness or untruthfulness. Counsel is permitted to "expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witnesses." Davis, 415 U.S. at 319. And "[w]here . . . the Government's case may stand or fall on the jury's belief or disbelief of one witness, his credibility is subject to close scrutiny." Gordon v. United States, 344 U.S. 414, 417 (1953).

"[E]vidence of a witness's psychological history may be admissible when it goes to her credibility." Vitale, 459 F.3d at 195 (internal quotation marks and citation omitted). But the Second Circuit has indicated that psychological problems "which would directly bear upon the credibility of the witness" must be "deep or sustained." Id. at 196. When determining whether such evidence is admissible, a court should consider (1) "the nature of the psychological problem"; (2) "the temporal recency or remoteness of the history"; and (3) "whether the witness suffered from the problem at the time of the events to which she is to testify, so that it may have affected her ability to perceive or to recall events or to testify accurately." Id. (quoting United States v. Sasso, 59 F.3d 341, 347-48 (2d Cir. 1995)).

Both parties agree on the law. They disagree, however, about whether defendant has made a sufficient showing for the first factor – the nature of the witness's alleged psychological problem – for the Court to admit this evidence as probative of the witness's ability to perceive the events about which the witness will testify. The Government claims that having unorthodox interests and beliefs does not make someone psychologically unstable, and therefore, this multi-factor test should not apply at all. But defendant does not simply argue that the witness's interests are uncommon: he argues that the witness's interests are *so* uncommon and *so* pervasive that they are more akin to psychological symptoms than unorthodox beliefs.[2]

In support of his position that the witness is delusional, defendant points to the witness's statement that the witness "doesn't know to what point this is reality." This statement does not

---

[2] Defendant's argument relies on statements by the Government about the witness provided in the Government's § 3500 material and Giglio letter. As former Judge Forrest's Guidelines Regarding Appropriate Use of 302 Forms in Criminal Trials explain, a law enforcement agent's characterization of a witness's statements or demeanor in the § 3500 material is a hearsay statement or opinion of the agent. They are not statements adopted by the witness that can be used against the witness as impeachment, and they certainly do not qualify as a medical expert's opinion about whether this witness suffers from a mental disease or defect. These statements do not, therefore, provide any guidance on the real issue here, which is whether this witness suffers from a deep or sustained psychological problem.

4

necessarily mean that the witness cannot discern what is or is not reality, and thus cannot accurately perceive the world; it is equally plausible that this statement means that the witness does not know whether the things the witness is interested in, such as UFOs, other planets, and the Illuminati, are, in fact, real. Either way, this statement (whether assessed alone or in conjunction with the witness's other statements) does not demonstrate that the witness has a deep or sustained psychological impairment under the Second Circuit's standard.

As the Court mentioned in its previous order on this issue, defendant can point to nothing besides the sheer implausibility of these interests and beliefs to suggest that the witness has a psychological problem. In this motion for reconsideration, defendant argues that he should not be prevented from questioning the witness about mental instability just because the witness did not seek treatment for any psychological symptoms that the witness may have. But this puts the cart before the horse: defendant may not cross-examine the witness to first determine whether the witness has a psychological impairment in order to use that hypothetical psychological impairment to attack the witness's credibility.

It is of course true that a lack of treatment does not mean that someone does not have psychological issues. But it would be improper for the Court to decide in the first instance that these unorthodox interests constitute psychological symptoms rather than non-mainstream beliefs and interests. There is no evidence or indication from a medical professional that this witness suffers from a psychological problem.

This type of evidence – such as a medical diagnosis or record – might not have been necessary if defendant had proffered, for example, that the witness's interests and beliefs were so deep-rooted that they fundamentally altered the witness's ability to function or participate in everyday life. But the only behavioral impact defendant can point to is the fact that the witness

once fired a maid because the witness believed the maid was doing witchcraft. That is not enough to show that these beliefs have affected the witness's ability to perceive reality. Similarly, if defendant had proffered that the witness firmly believed in something that is patently false – for example, if the witness believed that one of the 15-foot-tall aliens was currently living in the witness's home – that might have compelled a different result. But defendant has not made such a showing, and the Court disagrees with defendant's claim that the facts proffered suggest that this witness has an "obvious mental instability."

Defendant points to the fact that the witness held an actual belief in the pending apocalypse in 2012 in further support of his argument that these are not mere interests, but deep-rooted and troublesome beliefs bearing on credibility. Of course, this impending apocalypse did not happen. But defendant has not proffered anything to suggest that the witness maintained this belief after 2012, and importantly, that the witness still maintains this belief now – at the time that the witness will testify. Therefore, this statement of purported "belief" does not indicate a psychological impairment any more than the other statements that defendant provides.

Further, even if the Court could rely on the hearsay, opinion evidence that defendant proffered from the Government's § 3500 and Giglio material – which, for the reasons described in former Judge Forrest's Guidelines, see supra n.2, it cannot – those statements by law enforcement agents or prosecutors do not constitute the kind of formal medical diagnosis required by the caselaw.

Defendant's arguments further highlight the critical role of a medical professional in evaluating the witness's statements to determine whether the witness suffers from a psychological impairment. For example, defendant argues that the Government's statement that the witness's former family wealth and power "possibly influenced [the witness's] perception of

6

reality at times," causing the witness to suffer from "delusions of grandeur" proves that this witness is psychologically unstable and cannot accurately perceive the world.  A delusion is a psychological symptom with a specific scientific and diagnostic meaning.  The Government is not trained to recognize psychological symptoms or make such diagnoses.  Its use of the phrase "perception of reality" and the word "delusion" was colloquial here, not as defined by the DSM-5, and the Government's imprimatur does not make it more likely that this witness's conduct constitutes psychological symptoms.

This decision is consistent with the reasoning of other federal courts addressing the distinction between a diagnosed psychological illness and conduct that simply suggests the mere possibility of one.  Defendant cites to United States v. Butt, 955 F.2d 77, 82 (1st Cir. 1992), for the proposition that there is a strong history of federal courts "permit[ing] the impeachment of government witnesses based on their mental condition at the time of the events testified to."  The Court agrees; the question here, however, is whether a psychological condition bearing on the witness's credibility even exists.  Butt itself acknowledged that, "[d]espite this precedent, . . ."

> no court [has] found relevant an informally diagnosed depression or personality defect.  Rather, federal courts appear to have found mental instability relevant to credibility only where, during the time-frame of the events testified to, the witness exhibited a pronounced disposition to lie or hallucinate, or suffered from a severe illness, such as schizophrenia, that dramatically impaired her ability to perceive and tell the truth.

Id. at 82-83.  Thus, mental instability of the ilk defendant seeks to invoke requires a more definite diagnosis of psychological impairment than defendant points to here.

Otherwise, the Court would be imposing on the witness what defendant (and, admittedly, many other people) believe to be right and true.  But the Court cannot say for sure what is accurate about the universe and the life that may or may not occupy it.  The Court has no way of knowing that the witness is wrong, except for the witness's belief in the impending apocalypse in

2012. Just because the Court, like defense counsel, may not agree with the witness does not mean the Court can conclude that the witness suffers from a psychological problem that defendant can explore on cross-examination. Instead, "a tighter logical nexus [is] necessary to justify the introduction of such personal and potentially stigmatizing material." Butt, 955 F.2d at 83-84; see also Sasso, 59 F.3d at 347-48 (no abuse of discretion in precluding cross-examination where the witness's "psychiatric history was too remote, both from the [alleged event triggering psychological symptoms] and from the subject matter of [the witness's] testimony").

Federal Rule of Evidence 610 supports this conclusion, particularly as to defendant's belief in an impending apocalypse in 2012 and as to the fact that the witness consulted witch doctors for healing and believed that herbal baths cleansed his soul. Rule 610 provides that "[e]vidence of a witness's religious beliefs or opinions is not admissible to attack or support the witness's credibility." Defendant correctly points out that the witness's beliefs are not religious or spiritual ones. But that does not mean the logic underlying Rule 610 cannot apply to them. Under that rule, a witness's religious beliefs, including, for example, a belief in God or reincarnation, cannot be used to attack that witness's credibility or veracity. "[T]he purpose of the rule is to guard against the prejudice which may result from disclosure of a witness's faith." United States v. Kalaydjian, 784 F.2d 53, 56 (2d Cir. 1986). A witness's belief about an impending apocalypse because of interplanetary collisions is no more probative (relative to the potential for prejudice or stigma) of the witness's character for truthfulness than a witness's belief in an impending apocalypse because of divine judgment or something similar.

Indeed, if the witness's decision to forego traditional forms of medical treatment was motivated by the witness's religious beliefs, that decision would not be permissible impeachment. Just because the witness's decision to seek nontraditional treatments was not

8

rooted in a religious text does not mean it is automatically the byproduct of a mental disease or defect. And without anything suggesting that it is, the Court cannot conclude that it is probative of the witness's veracity or ability to perceive the world.

The Court agrees, however, that the Government cannot "pick and choose" those medical (or, for that matter, non-medical) treatments with which the witness may be impeached. Defendant may cross-examine the witness about treatment that the witness sought for physical or mental ailments, including treatment received from witch doctors. That cross-examination is proper because the physical and mental symptoms the witness experienced and the treatments that the witness used to address those symptoms may have affected the witness's ability to perceive the world. The origin of those treatments, however, is irrelevant. Contrary to defendant's arguments, consulting a witch doctor does not make one less likely to tell the truth or affect one's ability to perceive the world. Defendant may not, therefore, elicit testimony about the identity of the source of these treatments.

## CONCLUSION

Defendant's motion for reconsideration [410] of the Court's October 30, 2018 order is denied.

**SO ORDERED.**

                                                                                                                     U.S.D.J.

Dated: Brooklyn, New York
       November 11, 2018

9