

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

GMP:BCR/MPR  *271 Cadman Plaza East*
F. #2009R01065  *Brooklyn, New York 11201*

November 13, 2018

By ECF

The Honorable Brian M. Cogan
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Joaquin Archivaldo Guzman Loera
                 Criminal Docket No. 09-466 (S-4) (BMC)

Dear Judge Cogan:

      The government respectfully submits this motion to strike the opening statement made by defense counsel on the first day of trial.[1]

I.     Legal Standard

      Chief Justice Burger explained long ago that opening statements are not argument, and should be confined to statements about the evidence:

> An opening statement has a narrow purpose and scope. It is to state what evidence will be presented, to make it easier for the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole; it is not an occasion for argument. To make statements which will not or cannot be supported by proof is, if it relates to significant elements of the case, professional misconduct. Moreover, it is fundamentally unfair to an opposing party to allow an attorney, with the

---

[1] The Court recessed in the middle of the defendant's opening statement, so this motion only pertains to the portion of the opening statement heard so far. Granting this motion, therefore, will not deprive the defense of the ability to make an opening statements; it will only require the defense to make an appropriate one. In any event, the defense should be admonished that the principles articulated herein should guide any remaining part of the opening.

> standing and prestige inherent in being an officer of the court, to present to the jury statements not susceptible of proof but intended to influence the jury in reaching a verdict.
>
> A trial judge is under a duty, in order to protect the integrity of the trial, to take prompt and affirmative action to stop such professional misconduct.

United States v. Dinitz, 424 U.S. 600, 612 (1976) (Burger, C.J., concurring); see also United States v. Yakobowicz, 427 F.3d 144, 150 (2d Cir. 2005) ("Opening statements are generally confined to expectations as to what the evidence will show and usually do not contain large amounts of argument." (citing Dinitz)); New York Rule of Professional Conduct 3.4(d) ("A lawyer shall not…in appearing before a tribunal on behalf of a client, state or allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence…[or] assert a personal opinion as to…the credibility of a witness, [] or the guilt or innocence of an accused.").

As the Second Circuit has explained, opening statements should be "confined to expectations as to what the evidence will show and usually do not contain large amounts of argument." Yakobowicz, 427 F.3d at 150. A trial judge, moreover, may "exclude irrelevant facts from opening statements and stop arguments from being made in them." Id. (citing United States v. Zielie, 734 F.2d 1447, 1455 (11th Cir. 1984)). The portion of defense counsel's opening statement made in this case yesterday by Mr. Lichtman was so rife with impropriety that the Court should strike it in its entirety. Mr. Lichtman's opening statement was permeated with improper argument, unnoticed affirmative defenses and inadmissible hearsay. The Court should strike it, and instruct the jury to disregard it. See Clanton v. Rivera, No. No. 06-CV-4756, 2008 WL 2839712, *15 (S.D.N.Y. Jul. 22, 2008) ("[S]ince defense counsel elected to give an opening statement, she was required to confine her statement to its proper purpose." (internal quotation marks omitted)).

II. Defense Counsel's Opening Statement Improperly Argued Selective Prosecution in Violation of the Court's Order and the Defendant's Previous Representations

In its first motions in limine, the government argued that the Court should preclude the defendant from arguing to the jury that the governments of the United States and Mexico selectively targeted him for prosecution. See Dkt. No. 213 at 91-94. As the government explained in that motion, because the "government's motive in bringing charges against a defendant is irrelevant to guilt, by asking the jury to focus on the government's conduct, the defense would be encouraging the jury to decide the case based on something other than the elements of the charged crimes." Id. at 92 (citing United States v. Rosado, 728

2

F.2d 89, 93 (2d Cir. 1984)); see United States v. Farhane, 634 F.3d 127, 167 (2d Cir. 2011) ("[A] selective prosecution defense alleges a defect in the institution of the prosecution, and as such is an issue for the court rather than the jury.") (internal quotations omitted); United States v. Cuervelo, 949 F.2d 559, 567 (2d Cir. 1991) ("Outrageous governmental conduct is a question of law to be directed to the trial judge . . . ."). In response, the defendant declined to respond. With that representation, the Court denied the government's motion as premature. See Dkt. No. 240 at 12. Again in its second motions in limine, the government raised its argument that the defendant should be precluded from arguing selective prosecution. See Dkt. No. 326 at 84-86. In response, the defendant insisted that he would not raise such an argument. See Dkt. No. 360 at 14. Relying on that representation, the Court granted the government's motion to preclude evidence and argument of selective prosecution as unopposed. See Dkt. No. 390 at 15.

Despite that Court order, Mr. Lichtman made a variety of remarks in his opening statement arguing or suggesting that the government (1) was out to get the defendant because of his status as a "mythical" figure; (2) had chosen to prosecute the defendant rather than other drug traffickers, specifically, his codefendant Ismael Zambada Garcia; and (3) had engaged in outrageous conduct because it was so desperate to prosecute the defendant. For example, Mr. Lichtman stated:

- "This is a case that will require you to throw out much of what you were taught to believe in about the way Government's work and how they behave, governments in South and Central American and Mexico and even the United States. This is a case which will require you to open your minds to the possibility that government officials at the very highest level can be bribed, can conspire to commit horrible crimes; that American law enforcement agents can also be crooked . . . ." Tr. at 576:21-24.

- "Why is the Government going so far in this case, using these gutter human beings as their prized evidence? . . . It's not because of their claim that they need to stop Joaquin Guzman from dealing drugs which reach America. It's because a conviction of Chapo Guzman is the biggest prize that this prosecution could ever dream of. And they have dreamed of it for decades." Tr. at 578:18-22.

- "[The defendant] is not even alleged to be the biggest drug dealer in Mexico. But who is? … A man who is 70 years old and has operated as a drug trafficker for 55 years in Mexico without ever being arrested, despite being first charged in an American federal court 40 years ago, a man you've never heard of before today: A man named Ismael Zambada, or Mayo for short, Mayo Zambada." Tr. at 584:14-25.

3

- "Mayo [Zambada] was under multiple indictments in America, his sons and brother are cooperating with this government, and, yet, not only has he never been arrested, but he is continuing his multibillion dollar leadership of the Sinaloa Cartel." Tr. at 585:19-23.

- "The U.S. government pretends to want [Zambada].... But somehow they still can't seem to develop the information required to lead to his arrest. You figure it out." Tr. at 585:24-586:3.

- "They work together when it suits them, Mayo and the United States Government. The Government witnesses will testify they can make evidence appear and disappear. Criminal files disappear."

- "The bottom line is that the world is focusing on this mythical El Chapo figure. The world is not focusing on Mayo Zambada, to allow him to remain free and in business." Tr. 587:23-25.

- "I ask you to treat Mr. Guzman as you would want yourself or a loved one treated if God forbid you or they have the great misfortune to be sitting at that table over there with the entire Government on your neck." Tr. 588:12-15.

These are the precise arguments that the government moved to preclude in its motions in limine, which the Court granted. Indeed, the government cited statements in the press by defense counsel that mirror the statements made during Mr. Lichtman's opening. For example, the government pointed to the following defense counsel statements: (1) It "plan[ned] to challenge the broader tactics of American agents in their decades following Guzman"; (2) "[S]ome of the ways that the DEA operates abroad are unethical or illegal . . . .They are walking a thin line and sometimes stepping over it"; and (3)"This is literally an inquisition. Constitutional fairness has gone out of the window because the government wants a show trial with a quickie conviction." Dkt. No. 327 at 84-85.

In fact, given these statements to the press, in its brief, the government warned of this precise outcome:

> The government understands the Court's reticence to issue a definitive ruling without first learning whether the defense intends to pursue a "selective prosecution" strategy at trial. However, the government is faced with the very significant possibility that the defense may not move in limine to introduce

4

> such selective prosecution evidence or argument as required under Federal Rule of Criminal Procedure 12(b)(3), and may attempt to introduce such arguments to the jury in its opening statement. In effect, the defense may attempt to seek forgiveness from this Court rather than permission.
>
> The danger to the prosecution's case is evident. If the defendant does not signal his willingness and desire to introduce a selective prosecution argument until he makes the argument to the jury, it will be too late. While the Court can admonish the defense and issue a curative instruction, the damage will have already been done.

Dkt. No. 327 at 85-86. Nonetheless, despite the Court's clear ruling in place to avoid this exact situation, Mr. Lichtman chose to present this argument in opening statements in an attempt to improperly sway the jury. Mr. Lichtman's calculated decision to disregard the Court's order has prejudiced the government; to attempt to rectify that prejudice, the Court should strike the statement and instruct the jury to disregard it.

III.   Defense Counsel's Opening Statement Made Improper Argument Not Based on Anticipated Evidence

In his opening statement yesterday, Mr. Lichtman repeatedly engaged in improper argument not related to the anticipated evidence:

- "[T]here is another side to this story, an uglier side to this story…that the governments of Mexico and the United States do not want you or anyone else to hear about." Tr. at 576:13-16.

- "This is a case which will require you to open your minds to the possibility that government officials at the very highest level can be bribed, can conspire to commit horrible crimes; that American law enforcement agents can also be crooked; that governments can allow drug kingpins to operate openly for decades solely for the bribes and the economic advantages that drug dealing does for their impoverished countries, but mostly for the money." Tr. at 576:21-577:3.

- "So, who did the Government of Mexico and the Arellano Felix organization decide to frame for this murder? Joaquin Guzman." Tr. at 582:24-583:1.

5

At times, too, Mr. Lichtman tied this prosecution to irrelevant matters such as the so-called "war on drugs" and the U.S. government's broader drug use prevention efforts, thereby suggesting to the jury that this case is a broader referendum on policy rather than a criminal trial:

- "Now, the backdrop, if I can, to this trial is the American war on drugs." Tr. at 589:4-5.

- "We had that whole 'Just Say No' era during the Reagan years, which obviously accomplished nothing." Tr. at 589:12-13.

- "And you will see again that while he has been here in America, the flow of drugs hasn't stopped. Nothing has changed, business as usual." Tr. at 590:3-5.

Another repeated refrain in Mr. Lichtman's opening statement misstated the government's allegations about the defendant, in that Mr. Lichtman insisted that the government contends that the defendant is the "biggest" drug trafficker in the world:

- "They claim that he is the biggest drug dealer in the world, the biggest that the world has ever seen." Tr. 578:24-579:1.

- "And that began the beginning of the mythological status as El Chapo, the biggest drug dealer in the history of the world according to the press and the governments of America and Mexico." Tr. at 583:16-20.

- "But as I said earlier, this team of prosecutors from all over the United States will tell you that Joaquin Guzman is the biggest drug dealer in the history of the world." Tr. at 584:10-12.

This repeated assertion is false. The government has not charged the defendant as "the biggest" drug trafficker in the world, and it is required to prove no such thing. The Continuing Criminal Enterprise charge of the Indictment only requires that the defendant be "one of several such principal administrators, organizers, or leaders" of the charged enterprise. 21 U.S.C. § 848(e). And, the importation and distribution conspiracy counts of the indictment do not require that the defendant have been <u>any</u> kind of leader or administrator of his cartel. Mr. Lichtman's refrain is nothing more than an attempt to put the government to a higher legal burden than it actually has by misrepresenting the governing law.

Some of Mr. Lichtman's opening statement even seems to demonstrate that he understood that his commentary and rhetoric may not be supported by anticipated evidence in this case:

6

- "In fact, the cardinal was assassinated.  And <u>very possibly</u> by the Mexican Government in an effort to shut the cardinal up."  Tr. at 580:13-15 (emphasis added).

- "THE COURT: I need you, as discussed, to focus more on what the evidence is going to show and not argument.  MR. LICHTMAN: Judge, this is going to be coming, <u>perhaps</u>, from a witness in this case."  Tr. at 580:24-581:2 (emphasis added).

Such speculation, untethered from the anticipated evidence, is wildly improper and the Court should prevent it.  <u>See</u> <u>Yakobowicz</u>, 427 F.3d at 150.

Finally, Mr. Lichtman compounded this improper argument by asserting to the jury that "everything" he said in his opening was evidence.  <u>See</u> Tr. at 577:5-7 ("I know this is shocking to hear.  But <u>everything I am telling you</u> will be part of the evidence in this case.") (emphasis added).  As the above-quoted examples demonstrate, much of Mr. Lichtman's opening statement was <u>not</u> evidence; it was improper argument.  And to permit him to vouch for his own argumentative assertions heightens the impropriety.  Because Mr. Lichtman's argument was pervasive throughout the opening statement, the entire opening from the first day should be stricken.[2]

IV. <u>Defense Counsel Repeatedly Cited Inadmissible Hearsay to the Jury</u>

On three separate occasions in his opening statement, Mr. Lichtman quoted blatantly inadmissible hearsay.  <u>See</u> Fed. R. Evid. 801.  First, Mr. Lichtman "quote[d]" an email from a law enforcement agent to establish the proposition that "Chapo was more myth than actual legend and didn't move any drugs to Chicago, despite these claims that he supplied eighty percent."  Tr. at 579:12-16.  Second, he quoted the "the Mexican government's initial account," to establish the proposition that "Mr. Guzman was the intended target of the [Guadalajara airport] shooting by the Arellano Felix drug trafficking organization."  Tr. at 4-12.  Third, he attempted to read from report of a DEA agent, until the government objected, and the Court sustained the objection.  Tr. 582:8-13.  Defense counsel attempted to present this improper hearsay to the jury, despite the Court's recent and repeated reminders in recent weeks to counsel regarding the proper usage of government reports during trial.  <u>See, e.g.</u>,

---

[2] To the extent the defense intends to introduce any evidence of his own to support these assertions in his opening statement, the government has not received any discovery in response to its repeated demands.

7

Nov. 2, 2018 Dkt. Entry.  These out-of-court statements are not admissible for the truth of the matter asserted, and it was improper for defense counsel to present them to the jury.

V.        Defense Counsel Raised an Unnoticed Public Authority Defense

>Federal Rule of Criminal Procedure 12.3 provides:
>
>If a defendant intends to assert a defense of actual or believed exercise of public authority on behalf of a law enforcement agency or federal intelligence agency at the time of the alleged offense, the defendant must so notify an attorney for the government in writing and must file a copy of the notice with the clerk within the time provided for filing a pretrial motion, or at any later time the court sets.

Fed. R. Crim. P. 12.3(a)(1).  That rule then provides a procedure for the government to obtain discovery regarding this defense.  See Fed. R. Crim. P. 12.3(a)(4).  The rule further states: "If a party fails to comply with this rule, the court may exclude the testimony of any undisclosed witness regarding the public-authority defense."  Fed. R. Crim. P. 12.3(d).  The government specifically demanded notice of a public-authority defense on April 11, 2017.  See Dkt. No. 60 at 3.  The defendant never provided such notice.

Nonetheless, less than a few minutes into his opening statement, Mr. Lichtman raised a public authority defense, arguing "that government can allow drug kingpins to operate openly decades solely for the bribes and the economic advantages that drug dealing does for their impoverished countries but mostly for the money."  Tr. at 576:24-577:3.  In this statement, Mr. Lichtman carefully blended together allegations and insinuation about the governments of the United States and Mexico.  Regardless, though, the rule requires notice to the government whether the claimed exercise of public authority is derived from a foreign or a domestic governmental authority.  See United States v. Jackson, No. 96 CR 815, 1998 WL 149586, at *3 (N.D. Ill. Mar. 24, 1998) ("Law enforcement agency" within the meaning of Rule 12.3 is worded broadly to cover any agency whose authority the defendant claims to have been exercising whether it is federal, state, local, international, or foreign." (citing 24 Moore's Federal Practice § 612.3App.01 (3d ed.1997) (quoting Original Committee Note to Rule 12.3))).  Such an affirmative defense thus is improper in this case, and it was inappropriate for Mr. Lichtman to present it to the jury.

VI.     Conclusion

        For the foregoing reasons, the government respectfully requests that the Court strike defense counsel's opening statement and instruct the jury to disregard it in its entirety.

        Respectfully submitted,

        RICHARD P. DONOGHUE
        UNITED STATES ATTORNEY
        Eastern District of New York
        271 Cadman Plaza East
        Brooklyn, New York 11201

        ARTHUR G. WYATT, CHIEF
        Narcotic and Dangerous Drug Section
        Criminal Division,
        U.S. Department of Justice

        OF COUNSEL:

        ARIANA FAJARDO ORSHAN
        UNITED STATES ATTORNEY
        Southern District of Florida

cc:     Clerk of Court (BMC) (via ECF)
       Defense Counsel (via Email)