

U.S. Department of Justice

United States Attorney
Eastern District of New York

GMP:BCR/AJN  
F. #2009R01065

271 Cadman Plaza East  
Brooklyn, New York 11201

November 27, 2018

By ECF

The Honorable Brian M. Cogan  
United States District Judge  
United States District Court  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201

        Re:    United States v. Joaquin Archivaldo Guzman Loera  
              Criminal Docket No. 09-466 (S-4) (BMC)

Dear Judge Cogan:

      The government respectfully submits this letter to request that the court impose sanctions on defense counsel ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Special Administrative Measur▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ all in relation to the use of a cellular telephone by the defendant's wife, Emma Coronel Aispuro. Based on the facts detailed herein, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ appear to have used cellular telephones in concert with an attorney visit to the defendant following two trial days last week to facilitate unauthorized and, under the SAMs, impermissible contact between the defendant and Ms. Coronel.

I.     Factual Background

      As the Court is well aware, the United States Marshals Service ("USMS") and applicable local rules do not permit non-attorneys to bring cellular telephones into the courthouse. See, e.g., Local Civ. Rule 1.8; In re: Electronic Devices, Administrative Order 07-10, available at: https://img.nyed.uscourts.gov/files/general-ordes/adminorder07-10.pdf.[1]

---

[1] Enforcement of these provisions are codified at 41 C.F.R. § 102-74.385, which provides that "Persons in and on [federal] property must at all times comply with official signs of a prohibitory, regulatory or director nature and with the lawful direction of Federal police officers and other authorized individuals." Violation of this provision carries a penalty of up to 30 days' imprisonment. See 41 C.F.R. § 102-74.450.

Upon entering the courthouse, signs advise visitors that they may not bring any cellular telephones, cameras or recording devices of any kind into the courthouse and are directed to secure any such devices with the court security officers at the entrance of the building. Under the additional security measures imposed in connection with this case, additional signs prohibiting electronic devices are displayed and CSOs conduct extra screening in the hallway outside of the courtroom in order to verify that non-attorney visitors to the courtroom are not in possession of cellular telephones or other contraband.

       Yesterday, the Court held two sidebars with counsel for the parties at which the Court raised a concern brought to the Court's attention by the USMS that courthouse security staff had observed Ms. Coronel using a cellular telephone inside the courthouse. See 11/26/18 Tr. 1210:2-1212:15; 1308:7-1311:17.

Specifically, the courthouse is outfitted with a video surveillance system which provides footage of numerous locations throughout the premises including courtrooms, common areas, and certain restricted areas. The surveillance system is controlled by the USMS. The video footage is unified by a consistent time stamp that is synchronized across all video feeds. This means that videos from different locations in the courthouse with identical timestamps depict footage of events that occurred simultaneously. The video footage captured through the video surveillance system is viewed in real time and is also preserved for later review.

In light of the information regarding Ms. Coronel's use of a cellular telephone in the courthouse on November 20, 2018, USMS security personnel reviewed footage from on and around that date involving Ms. Coronel in an effort to determine if Ms. Coronel did, in fact, possess a cellular telephone within the courthouse. While surveillance footage did not yield video evidence of Ms. Coronel in possession of a cellular telephone on November 20, 2018, images captured over the video surveillance system confirmed that Ms. Coronel did possess a cellular telephone on November 19, 2018, a day prior to the observations made by the CSO.

The following series of images depicting the events of November 19, 2018 are instructive.[2]

---

[2] Full video footage of all images depicted in this filing are available upon request. Furthermore, as this filing was prepared on an expedited basis, higher quality versions of the images depicted within can also be made available upon request.








7





II. <u>Analysis</u>

The SAMs authorized in this case impose various restrictions on the defendant and defense counsel, based on a determination by the Attorney General that communications and contacts between the defendant and other persons could result in death or serious bodily injury to others. <u>See generally</u> Dkt. No. 53 at 4-5. Notwithstanding the limits on third-party contacts with the defendant, however, the SAMs permit counsel and other precleared staff who have signed affirmations to communicate with the defendant in a variety of ways to prepare his defense. <u>See</u> Dkt. No. 50-1 at 6, ¶ 2c ("Attorney/Client Privileged Visits"); <u>id.</u> at 6, ¶ 2e ("Unaccompanied Attorney's Precleared Paralegal(s) May Meet With Client"); <u>id.</u> at 7, ¶ 2f ("Simultaneous Multiple Legal Visitors"); <u>id.</u> at 7, ¶ 2g ("Legally Privileged Telephone

Calls"); id. at 8, ¶ 2h ("Documents Provided by Attorney to Inmate"); id. at 10, ¶ 2i ("Legal Mail").

The SAMs also restrict telephone calls with the defendant. In particular, the SAMs provide that:

> For all non-legally privileged telephone calls or communications, no telephone call/communication, or portion thereof: i. Is to be overheard by a third party. ii. Is to be patched through, or in any manner forwarded or transmitted, to a third party. iii. Shall be divulged in any manner to a third party.

Id. at 10, ¶ 3b. See also id. at 7, ¶ 2g (forbidding counsel from, inter alia, patching phone calls through to the defendant). Subsequent modification to the SAMs on May 3, 2017 prohibited the defendant from having telephone contact with Ms. Coronel specifically.[3] By signing affirmations of the SAMs, counsel and counsel's staff agree not to forward third-party messages to or from the defendant. See id. at 5, ¶ 2a. Counsel are not permitted to meet with the defendant without signing an affirmation acknowledging the SAMs.



---

[3] The reasons for this modification are outlined in the government's First Ex Parte submission to the Court dated February 2, 2017 at 2-3 (Dkt. 31), and Fourth Ex Parte submission to the Court dated May 18, 2017 (Dkt. 78).



* * *

The government submits that sanctions are warranted. The government defers to the Court as to the proper sanction, but at a minimum,

III. Partial Sealing is Appropriate

Partial sealing may be appropriate because of the nature of the matters discussed above. Although the government does not believe this submission should be completely sealed, it is filing it substantially under seal to allow defense counsel to articulate its view as to sealing. As the facts set forth herein provide ample support for the "specific, on the record findings" necessary to support sealing, Lugosch v. Pyramid Co., 435 F.3d 110, 120 (2d. Cir. 2006), this letter should be sealed. Should any order of the Court regarding this application describe the sealed information in question with particularity, rather than in general, the government likewise requests that those portions of the order be filed under seal.

IV. Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose sanctions on defense counsel in connection with Ms. Coronel's use of a cellular telephone.

Respectfully submitted,

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

ARTHUR G. WYATT, CHIEF
Narcotic and Dangerous Drug Section
Criminal Division,
U.S. Department of Justice

OF COUNSEL:

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY
Southern District of Florida

cc: Clerk of Court (BMC) (via ECF)
Defense Counsel (via Email)