

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

GMP:MPR
F. #2009R01065

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 2, 2019

**TO BE FILED UNDER SEAL**

By ECF

The Honorable Brian M. Cogan
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Joaquin Archivaldo Guzman Loera
                Criminal Docket No. 09-466 (S-4) (BMC)

Dear Judge Cogan:

      The government respectfully submits this letter in connection with the trial in the above-referenced matter. The government moves <u>in limine</u> to preclude cross-examination of one of its cooperating witnesses ("CW1") in regard to three topics that are either marginally probative or completely irrelevant to CW1's character for truthfulness

I.    Motion to Limit Cross-Examination

    A.    Legal Standard

      The scope and extent of cross-examination is committed to the sound discretion of the district court. <u>See</u> <u>United States v. Wilkerson</u>, 361 F.3d 717, 734 (2d Cir. 2004). The court may properly bar cross-examination that is only marginally relevant to a defendant's guilt or other issues before the court. <u>See</u> <u>United States v. Maldonado-Rivera</u>, 922 F3d. 934, 956 (2d Cir. 1990); <u>see also</u> Fed. R. Evid. 611 (stating that "court should exercise reasonable control . . . so as to . . . avoid wasting time[] and protect witnesses from harassment or undue embarrassment").

      A "decision to restrict cross-examination will not be reversed absent an abuse of discretion." <u>United States v. Lawes</u>, 292 F.3d 123, 131 (2d Cir. 2002) (citing <u>United States</u>

v. Rosa, 11 F.3d 315, 335 (2d Cir. 1993)).  The Second Circuit has repeatedly upheld district courts' exercise of discretion in imposing reasonable limits on the subjects that may be inquired into on cross-examination.  See United States v. Rivera, 971 F.2d 876, 886 (2d Cir. 1992) ("The court is accorded broad discretion in controlling the scope and extent of cross-examination."); Rosa, 11 F.3d at 336 (holding that district court properly precluded cross-examination on alleged rape and burglary by witness because conduct did not bear directly on witness's credibility and allegations were unsubstantiated).

Where a party seeks to elicit testimony regarding specific instances of a witness's conduct to attack the witness's character for truthfulness, the admission of that testimony is governed by Federal Rule of Evidence 608(b).  See United States v. Peterson, 808 F.2d 969, 973-74 (2d Cir. 1987); see also United States v. Cruz, 894 F.2d 41, 43 (2d Cir. 1990) ("Under Rule 608(b), the court has discretion to permit or deny a line of inquiry on cross-examination.").  Rule 608(b) provides in pertinent part:

> Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.  But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness.

Fed. R. Evid. 608(b).  The advisory committee's note to Rule 608(b) also notes that because the "possibilities of abuse are substantial" in cross-examination, specific instances may only be inquired into if they are probative of truthfulness, "not remote in time," and not "outweighed by danger of unfair prejudice, confusion of issues, or misleading the jury."  Fed. R. Evid. 608 ad. comm. note.

Rule 609(a)(1)(A) provides that evidence of a witness's conviction for a felony offense "must be admitted, subject to Rule 403" and that evidence "for any crime regardless of the punishment . . . must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement." Fed. R. Evid. 609(a)(2).

Admission of such evidence is further limited by Federal Rules of Evidence 402 and 403, which exclude otherwise relevant evidence if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues . . . , or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." United States v. Figueroa, 548 F.3d 222, 229 (2d Cir. 2008); United States v. Devery, 935 F. Supp. 939, 407-08 (S.D.N.Y. 1996) ("[E]ven if the prior act does concern the witness's character for

2

truthfulness under Rule 608(b), its probative value must not be substantially outweighed by its unfairly prejudicial effect under Rule 403."); United States v. Brown, No. 07-CR-874 (KAM), 2009 WL 497606, at *4 (E.D.N.Y. Feb. 26, 2009).  "In evaluating the probity of specific instances of conduct, courts consider numerous factors, including 'whether the testimony of the witness in question is crucial or unimportant, the extent to which the evidence is probative of truthfulness or untruthfulness, the extent to which the evidence is also probative of other relevant matters, the extent to which the circumstances surrounding the specific instances of conduct are similar to the circumstances surrounding the giving of the witness's testimony, [and] the nearness or remoteness in time of the specific instances to trial . . . .'" United States v. Nelson, 365 F. Supp. 2d 381, 390 (S.D.N.Y. 2005) (quoting John W. Strong, McCormick on Evidence § 41).

Likewise, Federal Rule of Evidence 611 requires district courts to exercise "reasonable control" over the mode of interrogating witnesses so as to avoid "needless consumption of time" and to "protect witnesses from harassment or undue embarrassment." Fed. R. Evid. 611(a).  Thus, when considering the admission under Rule 608(b) of specific instances of conduct that the court finds probative of truthfulness, the court must balance the probative nature of the conduct against the Rule 403 and Rule 611 factors.  See Brown, 2009 WL 497606 at *4.  Moreover, pursuant to Rule 608(b), extrinsic evidence of a witness's prior conduct may not be admitted to attack his truthfulness.  Peterson, 808 F.2d at 973-74; Brown, 2009 WL 497606 at *3.

B.   Discussion

1. Family Discussions about CW1's Girlfriend's

The government seeks to preclude cross-examination related to allegations that CW1 was untruthful with his family members about the circumstances surrounding his girlfriend's ▇.



In a text message between CW1's ▇ claimed that CW1 lied to his family members about the reasons surrounding his girlfriend's ▇.  Further, in a debriefing, ▇ stated that CW1 was sometimes prone to dramatics to prompt people to action.  As an example, ▇ stated that on one occasion, CW1 told his family that his girlfriend had ▇ due to CW1 having been shot; ▇ stated that he believed the girlfriend had not ▇.

The Court should preclude cross-examination into CW1's discussions with his family members about his girlfriend's ▇ under Rules 608, 403, and 611.  While cross-examination concerning this topic arguably may be permitted pursuant to Rule 608(b) due to the fact that it involved a mischaracterization by CW1, as noted above, a

3

district court nonetheless enjoys "broad discretion" to impose limits on cross-examination. Rivera, 971 F.2d at 886. Rule 608(b) is "intended to be restrictive" and "does not authorize inquiry on cross-examination into instances of conduct that do not actually indicate a lack of truthfulness." Nelson, 365 F. Supp. 2d at 386. A person's discussions with family members about an intensely private and difficult topic, such as the reasons for ▇▇▇▇▇▇▇▇▇▇▇▇, have limited probative value here because there are multiple reasons a person might withhold facts from, or give alternate explanations to, family members for such a decision.

Even if this instance of dishonesty is admissible under Rule 608(b), cross-examination on this topic should also be excluded under Rules 403 and 611. Cross-examination on this topic could mislead and confuse the jury, and risk unfair prejudice by inviting the jury improperly to judge the witnesses' credibility based on the jurors' views of ▇▇▇▇▇▇ rather than a proper assessment of the witness's truthfulness. Any probative value would be substantially outweighed by the risk of unfair prejudice. Fed. R. Evid. 403. Moreover, cross-examination on this topic would only subject CW1 to the type of "harassment or undue embarrassment," under which courts can limit cross-examination under Rule 611. The defendant is free to cross-examine CW1 about whether he has lied to his family members about personal matters, but he should not be permitted to venture into this particular subject matter due to the prejudice and undue embarrassment it entails.

2. CW1's ▇▇▇▇▇▇ Purported Relationship with U.S. Law Enforcement

In its Section 3500 production, the government previously disclosed to the defendant that CW1 stated in a debriefing session that in 2006, CW1's ▇▇▇▇▇▇▇▇▇▇▇▇, who is now deceased, bribed an individual who ▇▇▇▇▇▇ stated was a high-level Drug Enforcement Administration ("DEA") agent. Specifically, CW1 accompanied ▇▇▇▇▇▇ to a meeting in 2006 during which CW1 witnessed ▇▇▇▇▇▇ pass a cell phone box, which CW1 believed was filled with cash, to the purported DEA agent. Prior to this meeting, CW1 did not know any details about the purported DEA agent and only learned about it when he was accompanying ▇▇▇▇▇▇ on the way to the meeting. CW1 observed individuals at this meeting who appeared either to be with the Colombian military or the Colombian police. CW1 observed that the purported DEA agent appeared to be Colombian and spoke Spanish without an American accent. The purported DEA agent did not identify himself as DEA or law enforcement and was dressed in civilian clothing. Similarly, CW1 stated in a debriefing that he heard rumors that ▇▇▇▇▇▇▇▇▇▇ bought planes from, and was working with, the Central Intelligence Agency ("CIA"), but CW1 has no direct knowledge of this fact and never heard ▇▇▇▇▇▇ state that he engaged in this activity.

The Court should not permit the defendant to cross-examine CW1 about ▇▇▇▇▇▇▇▇▇▇▇▇ alleged conduct with either the DEA or the CIA, as ▇▇▇▇▇▇ conduct is not "probative of the character for truthfulness or untruthfulness of" CW1. Fed. R. Evid.

4

608. While CW1 accompanied ▇▇▇ to the meeting with the purported DEA agent, CW1 was no more than a bystander who witnessed the alleged bribe and had no role in paying it. CW1 did not know about the purported DEA agent until he was on his way to the meeting with ▇▇▇, he merely witnessed the bribe and had no interaction with the purported DEA agent after that day.  Moreover, there is no evidence – other than ▇▇▇ uncorroborated belief – that this individual was actually a DEA agent.  Thus, to the extent a bribe could be probative of truthfulness, the probative value of this particular bribe concerns the truthfulness of ▇▇▇, rather than CW1's truthfulness.  Cross-examination should also be precluded on Rule 403 grounds, as this instance of bribery does not bear on CW1's credibility or the issues about which he will testify at trial, but risks an "undue tendency to suggest decision on an improper basis" by inviting the jury to be distracted by a trial-within-a-trial about the alleged misconduct of a purported U.S. law enforcement agent in Colombia.  Fed. R. Evid. 403 advisory committee's note.

To the extent the Court views CW1's attendance at this meeting as an instance of bribery attributable to him, the Court should nonetheless preclude cross-examination regarding this incident.  Cross-examination on this particular subject would be cumulative of other impeachment evidence that the defense is free to use in examining the credibility of CW1.  For example, the government anticipates that CW1 will testify about multiple instances in which he either actively bribed government officials, or government officials were bribed on his behalf.  United States v. Damblu, 134 F.3d 490, 494 (2d Cir. 1998); see also United States v. Locascio, 6 F.3d at 949 (holding that new allegations involving credibility of government witness, which were cumulative of information about which the witness was subject to cross-examination, would not have materially affected the outcome of the case and did not warrant a new trial); Shabazz v. Artuz, 336 F.3d 154, 166 (2d Cir. 2003) ("[W]here the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material.").  Therefore, given the highly prejudicial and cumulative nature of this testimony, the Court should preclude it from cross-examination.

Similarly, cross-examination about ▇▇▇ alleged cooperation and/or conduct with the CIA should be precluded.  CW1 heard all of this information second hand and had no participation in this alleged activity.  Therefore, there is no proper basis for cross-examination of CW1 on this topic.  Given that the probative value of this instance of conduct by ▇▇▇ is non-existent, its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues . . . , or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Figueroa, 548 F.3d at 229.

II.   Conclusion

For the foregoing reasons, the Court should preclude argument and cross-examination of CW1 on the topics described above.

III.   Partial Sealing is Appropriate

Pursuant to the protective order in this case, the government respectfully requests permission to submit this brief partially under seal. See Dkt. No. 57 ¶ 8. Portions of this brief refer to one of the government's cooperating witnesses. The defendant's criminal associates could use the information described herein to identify those witnesses.

Thus, partial sealing is warranted because of the concerns regarding the safety of potential witnesses and their families, and the danger posed by disclosing the potential witnesses' identities and their cooperation with the government. See United States v. Amodeo, 44 F.3d 141, 147 (2d Cir. 1995) (need to protect integrity of ongoing investigation, including safety of witnesses and the identities of cooperating witnesses, and to prevent interference, flight and other obstruction, may be a compelling reason justifying sealing); see Feb. 5, 2018 Mem. & Order Granting Gov't Mot. for Anonymous and Partially Sequestered Jury, Dkt. No. 187 at 2-3 (concluding that defendant's actions could pose risk of harm to cooperating witnesses). As the facts set forth herein provide ample support for the "specific, on the record findings" necessary to support partial sealing, Lugosch v. Pyramid Co., 435 F.3d 110, 120 (2d. Cir. 2006), the government respectfully requests that the Court permit the government to file this motion to limit cross-examination partially under seal. Should any order of the Court regarding this application describe the sealed information in question with particularity, rather than in general, the government likewise requests that those portions of the order be filed under seal.

Respectfully submitted,

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

ARTHUR G. WYATT, CHIEF
Narcotic and Dangerous Drug Section
Criminal Division,

6

        U.S. Department of Justice

        OF COUNSEL:

        ARIANA FAJARDO ORSHAN
        UNITED STATES ATTORNEY
        Southern District of Florida

cc:    Clerk of Court (BMC) (via ECF)
        Defense Counsel (via Email)