GMP: HDM/PEN/BCR
F.# 2009R01065/OCDETF# NY-NYE-616

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

      -against-                               09 CR 466 (BMC) (S-4)

JOAQUIN ARCHIVALDO GUZMAN LOERA,
   also known as "El Chapo," "El Rapido,"
  "Chapo Guzman," "Shorty," "El Senor,"
  "El Jefe," "Nana," "Apa," "Papa,"
  "Inge" and "El Viejo,"

                      Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## THE GOVERNMENT'S REQUESTS TO CHARGE

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

ARTHUR G. WYATT, CHIEF
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice

OF COUNSEL:
ARIANA FAJARDO ORSHAN
United States Attorney
Southern District of Florida

## PRELIMINARY STATEMENT

Pursuant to Rule 30 of the Federal Rules of Criminal Procedure, the government respectfully requests that the Court include the following instructions in its charge to the jury, and requests leave to offer additional instructions as may become appropriate during the trial.

The government also respectfully requests that copies of the jury instructions be provided to the jurors during their deliberations.

## GENERAL REQUESTS

The government respectfully requests that the Court charge the jury in its usual manner on the following subjects:

a.   Function of the Court and the Jury;

b.   Jury Communications with Lawyers and the Court;

c.   Equality of the Prosecution and the Defense before the Court;

d.   Function of the Indictment and What Is Not Evidence;

e.   Circumstantial Evidence and Direct Evidence;

f.   The meaning of "and" in the Indictment

g.   Permissible Inferences Drawn from the Evidence;

h.   Objections;

i.   Dates Approximate;

j.   Deliberations;

k.   Right to See Exhibits and Have Testimony Read During Deliberations; and

l.   Questioning Wisdom of Law or Basing Verdict on Sympathy or Prejudice Prohibited.

<u>REQUEST NO. 1</u>

(Burden of Proof and Reasonable Doubt)

<u>Presumption of Innocence</u>

The defendant is before you today because he has been charged with violations of federal law.  As I have told you before, the defendant has pleaded not guilty to the charges.  The government must prove him guilty beyond a reasonable doubt. The government's burden to prove the defendant guilty beyond a reasonable doubt never shifts to the defendant.  A defendant in a criminal case need not call any witness, question any of the government's witnesses, or produce any evidence.  The law presumes the defendant to be innocent of all the charges, and he must be presumed by you to be innocent throughout your deliberations.  Only if you, as a jury, are satisfied that the government has proved the defendant guilty beyond a reasonable doubt of the particular charge you are considering will this presumption cease to operate.  If the government fails to prove a defendant guilty beyond a reasonable doubt, you must find him not guilty.  The presumption of innocence alone is sufficient to require that result unless you, as jurors, are unanimously convinced beyond a reasonable doubt of his guilt.

<u>Reasonable Doubt</u>

What is a reasonable doubt?  It is a doubt based upon reason and common sense.  It is a doubt that a reasonable person has after carefully weighing all of the evidence or lack of evidence.  It is a doubt that would cause a reasonable person to hesitate to act in a matter of importance in his or her personal life.  Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate

to rely and act upon it in the most important of his or her own affairs.  A reasonable doubt is not a caprice or whim; it is not a speculation or suspicion.  It is not an excuse to avoid the performance of an unpleasant duty.  And it is not sympathy.  The law does not require that the government prove guilt beyond all possible doubt; proof beyond a reasonable doubt is sufficient to convict.

If, after fair and impartial consideration of all of the evidence or lack of evidence, you have a reasonable doubt concerning the particular charge you are considering, it is your duty to acquit the defendant of that charge.  On the other hand, if after fair and impartial consideration of all the evidence you are satisfied of his guilt beyond a reasonable doubt, you should vote to convict.

**Authority**: adapted from the charge of the Hon. John Gleeson in <u>United States v. James Rosemond</u>, 11-CR-424 (E.D.N.Y.); Modern Federal Jury Instructions-Criminal (Leonard Sand) (2018) ("Sand"), Instruction 4-1.

REQUEST NO. 2

Other Persons Not on Trial

You have heard evidence about the involvement of certain other people in the crimes charged in the indictment.  You may not draw any inference, favorable or unfavorable, towards the government or the defendant from the fact that certain persons are not on trial before you.  That these other individuals are not on trial before you is not your concern.  You should neither speculate as to the reason these other people are not on trial before you nor allow their absence as parties to influence in any way your deliberations in this case.  Nor should you draw any inference from the fact that any other person is not present at this trial.  Your concern is solely the defendant on trial before you.  The possible guilt of others is no defense to a criminal charge.  Your job is to decide if the government has proven this defendant guilty.  Do not let the possible guilt of others influence your decision in any way.  The only issue in this case is whether the government has proven the charges against this defendant beyond a reasonable doubt.

**Authority**: adapted from the charge of the Hon. Kiyo A. Matsumoto in United States v. Rivera, 13-CR-149; Sand, Instruction 2-18 (citing the Sixth Circuit Pattern Criminal Jury Instruction 2.01).

<u>REQUEST NO. 3</u>

(Summary of Indictment)[1]

I will now instruct you as to the legal elements of the crimes charged in the Indictment.  That is to say, I will now instruct you as to the specific elements of the crimes charged, each of which the government must prove beyond a reasonable doubt to warrant a finding of guilt.

In order to place my instructions in context, I will start by giving you a summary of the crimes charged.  They are stated in the Indictment.  [I will give you a copy of the Indictment to refer to during your deliberations], but the Indictment is not evidence; it is simply the instrument by which the charges are brought.  It is an accusation. It may not be considered by you as any evidence of the guilt of the defendant.

I am permitting you to have the Indictment solely as a reference during your deliberations.

The Indictment contains eleven counts, or separate offenses. You must consider each count separately as to the defendant, and must return a verdict based only upon the evidence as it relates to that specific count with respect to the defendant.  Whether you find the defendant not guilty or guilty as to one offense should not affect your verdict as to any other offense charged.

---

[1] As the government has previously indicated to the Court and the defense, it has not proceeded to trial on certain counts of the Indictment and certain violations of the CCE charge (Count One).  Other violations were added to the CCE charge before trial through a revised Bill of Particulars.  To avoid confusion and any apparent gaps in numbering, this proposed charge has renumbered the counts and violations in this set of proposed jury instructions.  As revised, the Indictment alleges eleven counts and twenty-nine violations of Count One.

Count One charges the defendant with engaging in a continuing criminal enterprise.  Count Two charges the defendant with international cocaine, heroin, methamphetamine and marijuana manufacturing and distribution conspiracy.  Count Three charges the defendant with cocaine importation conspiracy.  Count Four charges the defendant with cocaine distribution conspiracy.  Counts Five, Six, Seven, Eight, and Nine charge the defendant with international cocaine distribution.  Count Ten charges the defendant with the use of a firearm during a drug trafficking crime.  Count Eleven charges the defendant with money laundering conspiracy.

<u>REQUEST NO. 4</u>

(Acting "Knowingly" and "Intentionally")

Because all of the charges implicate the concepts of knowledge and intent, I will discuss these concepts before addressing the individual charges.  A person acts knowingly if he acts intentionally and voluntarily, and not because of ignorance, mistake, accident or carelessness.  Whether a defendant acted knowingly may be proven by his or her conduct and by all of the facts and circumstances surrounding the case.

[IF APPLICABLE: In determining whether the defendant acted knowingly, you may consider whether the defendant deliberately closed his eyes to what would otherwise have been obvious to him.  If you find beyond a reasonable doubt that the defendant acted with (*or* that the defendant's ignorance was solely and entirely the result of) a conscious purpose to avoid learning the truth, then this element may be satisfied.  However, guilty knowledge may not be established by demonstrating that the defendant was merely negligent, foolish or mistaken.

It is entirely up to you whether you find that the defendant deliberately closed his eyes and any inferences to be drawn from the evidence on this issue.]

A person acts intentionally when he acts deliberately and purposefully. That is, the defendant's acts must have been the product of his conscious objective rather than the product of a mistake or accident.  It is sufficient that a defendant intentionally engages in conduct that the law forbids. The government is not required to prove that a defendant is aware of the law that actually forbids his conduct.

**Authority**: adapted from the charge of the Hon. John Gleeson in <u>United States v. James Rosemond</u>, 11-CR-424 (E.D.N.Y.); Sand, Instruction 3A-1. 3A-2 and 3A-4.

9

REQUEST NO. 5

(Aiding and Abetting)

In Counts One, Five, Six, Seven, Eight, Nine and Ten, the defendant is charged, in addition to being a principal who committed the alleged crime, with aiding and abetting others to commit a crime.  With respect to those charges, it is not necessary for the government to show that a defendant himself physically committed the crime with which he is charged in order for the government to sustain its burden of proof.  This is because a person who aids or abets another to commit an offense is just as guilty of that offense as if he committed it himself.

Accordingly, you may find the defendant guilty of the offense charged if you find beyond a reasonable doubt that the government has proven that another person actually committed the offense with which the defendant is charged, and that the defendant aided or abetted that person in the commission of the offense.

As you can see, the government must first prove beyond a reasonable doubt that another person has committed the crime charged.  Obviously, the defendant cannot be convicted of aiding or abetting the criminal acts of another if the government has failed to prove that a crime was committed by the other person in the first place.  But if you do find that a crime was committed, then you must consider whether the defendant aided or abetted the commission of that crime.

First, that the defendant knowingly associated himself in some way with the crime; and

10

Second, that he participated in the crime by doing some act to help make the crime succeed.

To establish that the defendant knowingly associated himself with the crime, the government must prove that the defendant acted knowingly and intentionally. To establish that the defendant participated in the commission of the crime, the government must prove that the defendant engaged in some affirmative conduct or overt act for the specific purpose of bringing about that crime. The mere presence of a defendant where a crime is being committed, even coupled with knowledge by the defendant that a crime is being committed, or merely associating with others who were committing a crime is not sufficient to establish aiding and abetting. One who has no knowledge that a crime is being committed or is about to be committed but inadvertently does something that aids in the commission of that crime is not an aider and abettor. An aider and abettor must know that the crime is being committed and act in a way that is intended to bring about the success of the criminal venture.

To determine whether a defendant aided or abetted the commission of the crime with which he is charged, ask yourself these questions:

Did he participate in the crime charged as something he wished to bring about?

Did he knowingly associate himself with the criminal venture?

Did he seek by his actions to make the criminal venture succeed?

If he did all of these things, then the defendant is an aider and abettor, and therefore guilty of the offense. If, on the other hand, your answer to any one of these

questions is "no," then the defendant is not an aider and abettor, and you must find him not

guilty.

**Authority**: adapted from the charge of the Hon. John Gleeson in United States v. James Rosemond, 11-CR-424 (E.D.N.Y.); Sand, Instruction 11-01.

12

<u>REQUEST NO. 6</u>

(Conspiracy Generally)

Because violation twenty-nine in Count One, and Counts Two, Three, Four and Eleven al involve conspiracy charges, I will first instruct you about conspiracies in general.  I will then instruct you on the requirements for finding a conspiracy relating to each count. These instructions will apply to violation twenty-nine in Count One and Counts Two, Three, Four and Eleven, and will be discussed in particular for each count.

The defendant is accused of having been a member of conspiracies to violate certain federal laws.  A conspiracy is a kind of criminal partnership -- a combination or agreement of two or more persons to join together to accomplish some unlawful purpose.

The crime of conspiracy to violate a federal law is an independent offense.  It is separate and distinct from the actual violation of any specific federal laws, which the law refers to as "substantive crimes."

Thus, if a conspiracy exists, even if it should fail to achieve its purpose, it is still punishable as a crime.  Indeed, you may find a defendant guilty of the crime of conspiracy to commit an offense against the United States even though the substantive crime that was the object of the conspiracy was not actually committed.  Here, for example, since the defendant is charged with, among other conspiracy charges, conspiring to distribute cocaine, it is <u>not</u> necessary for you to find that any member of the conspiracy, including the defendant, succeeded in actually selling, transporting or distributing cocaine to another person.  It is sufficient if you conclude that an unlawful agreement existed to do so.

13

Moreover, you may find the defendant guilty of conspiracy despite the fact that he himself was incapable of committing the substantive crime.

Congress has deemed it appropriate to make conspiracy, standing alone, a separate crime even if the conspiracy is not successful.  This is because collective criminal activity poses a greater threat to the public's safety and welfare than individual conduct, and increases the likelihood of success of a particular criminal venture.

**Authority**: adapted from Sand, Instruction 19-2.

REQUEST NO. 7

(Conspiracy Elements)

I have instructed you on the law of conspiracy generally.  I will now instruct on the elements of conspiracy.  As I stated earlier, these instructions will apply to violation twenty-nine in Count One, and Counts Two, Three, Four and Eleven, and will be discussed in particular for each count.

In order to prove the crime of conspiracy, the government must establish as to the defendant the following two elements of the crime beyond a reasonable doubt:

First, that two or more persons entered into the particular unlawful agreement charged in the Indictment; and

Second, that the defendant knowingly and intentionally became a member of the conspiracy.

**First Element: Agreement**

The first element which the government must prove beyond a reasonable doubt to establish the offense of conspiracy is that two or more persons entered the unlawful agreement charged in the Indictment.  In other words, one cannot commit the crime of conspiracy by oneself.  Rather, the proof must convince you that at least two persons had joined together in a common criminal scheme.

In order for the government to satisfy this element, however, you need not find that the alleged members of the conspiracy met together and entered into any express or formal agreement.  Similarly, you need not find that the alleged conspirators stated, in words or writing, what the scheme was, its object or purpose, or every precise detail of the scheme

15

or the means by which its object or purpose was to be accomplished.  What the government

must prove is that there was a mutual understanding, either spoken or unspoken, between two

or more people to cooperate with each other to accomplish an unlawful act.

You may, of course, find that the existence of an agreement to disobey or

violate the law has been established by direct proof.  But because conspiracy is, by its very

nature, characterized by secrecy, you may also infer its existence from the circumstances of

this case and the conduct of the parties involved.

In a very real sense, then, in the context of conspiracy cases, actions often

speak louder than words.  In this regard, you may, in determining whether an agreement

existed here, consider the actions and statements of all of those you find to be participants as

proof that a common scheme existed on the part of the persons charged to act together to

accomplish an unlawful purpose.

### Second Element: Member of the Conspiracy

If you are satisfied that a conspiracy charged in the Indictment existed, the

second element that the government must prove beyond a reasonable doubt is that the

defendant knowingly and intentionally became a member of the charged conspiracy.

I have previously instructed you as to the terms "knowingly" and

"intentionally." Follow those instructions here.  A person acts knowingly and intentionally if

he acts voluntarily, deliberately and purposefully, and not because of ignorance, mistake,

accident or carelessness.  In other words, did the defendant join the conspiracy with an

awareness of at least some of the basic aims and purposes of the unlawful agreement?  And

did the defendant participate in the conspiracy with the intention of furthering its business or objectives?

In that regard, it has been said that in order for a defendant to be deemed a participant in a conspiracy, he must have had a stake or interest in the venture or its outcome. You are instructed that, while proof of a financial stake or interest in the outcome of a scheme is not essential, if you find that the defendant had such a stake or interest, that is a factor that you may properly consider in determining whether or not the defendant was a member of the conspiracy charged in the Indictment.

It is important for you to note that the defendant's participation in the conspiracy must be established by independent evidence of his own acts or statements, as well as those of the other alleged co-conspirators, and the reasonable inferences which may be drawn from them.

The defendant's knowledge is a matter of inference from the facts proven. I instruct you that to become a member of the conspiracy, the defendant need not have known the identities of each and every other member, nor need he have been apprised of all of their activities. Moreover, the defendant need not have been fully informed as to all of the details, or the scope, of the conspiracy in order to justify an inference of knowledge on his part. Furthermore, the defendant need not have joined in all of the conspiracy's unlawful objectives.

In addition, the extent of the defendant's participation has no bearing on the issue of the defendant's guilt. A conspirator's liability is not measured by the extent or duration of his participation. Indeed, each member may perform separate and distinct acts

17

and may perform them at different times.  Some conspirators play major roles, while others play minor parts in the scheme.  An equal role is not what the law requires.  In fact, even a single act may be sufficient to draw the defendant within the ambit of the conspiracy.

I want to caution you, however, that the defendant's mere presence at the scene of an alleged crime does not, by itself, make him a member of the conspiracy.  Similarly, mere association with one or more members of the conspiracy does not automatically make the defendant a member.  A person may know, or be friendly with, a criminal, without being a criminal himself.  Mere similarity of conduct or the fact that they may have assembled together and discussed common aims and interests does not necessarily establish membership in the conspiracy.

I also want to caution you that mere knowledge, without participation, in the unlawful plan is not sufficient.  Furthermore, the fact that a person, without any knowledge that a crime is being committed, merely happens to act in a way that furthers the purposes or objectives of the conspiracy does not make that person a member.  More is required under the law.  What is necessary is that the defendant must have participated with knowledge of at least some of the purposes or objectives of the conspiracy and with the intention of aiding in the accomplishment of those unlawful ends.

In sum, to find the defendant guilty of conspiracy, you must find beyond a reasonable doubt that, with an understanding of the unlawful nature of the conspiracy, he intentionally engaged, advised or assisted in the conspiracy for the purpose of furthering an illegal undertaking.

**Authority**: adapted from the charge of the Hon. Kiyo Matsumoto in <u>United States v. Barret, et al.</u>, 10-CR-809 (S-4) (E.D.N.Y.); Sand, Instruction 19-3.

<u>REQUEST NO. 8</u>

(Co-Conspirator Statements and Liability)

The charges against the defendant allege that he participated in a conspiracy. In that regard, I admitted into evidence against the defendant the acts and statements of others because these acts and statements were committed by persons who, the government charges, were also confederates or co-conspirators of the defendant on trial.

The reason for allowing this evidence to be received against the defendant has to do with the nature of the crime of conspiracy. A conspiracy is often referred to as a partnership in crime. Thus, as in other types of partnerships, when people enter into a conspiracy to accomplish an unlawful end, each and every member becomes an agent for the other conspirators in carrying out the conspiracy.

Accordingly, the reasonably foreseeable acts, declarations, statements and omissions of any member of the conspiracy and in furtherance of the common purpose of the conspiracy, are deemed, under the law, to be the acts of all of the members, and all of the members are responsible for such acts, declarations, statements and omissions.

Thus, if you find that the defendant was a member of a criminal conspiracy charged, then any acts done or statements made in furtherance of the conspiracy by persons also found by you to have been members of that conspiracy, may be considered against the defendant. This is so even if such acts were done and statements were made in the defendant's absence and without his knowledge.

Before you may consider the statements or acts of a co-conspirator in deciding the issue of the defendant's guilt, you must first determine that the acts and statements were

19

made during the existence, and in furtherance, of the unlawful scheme. If the acts were done or the statements made by someone whom you do not find to have been a member of the conspiracy, or if they were not done or said in furtherance of that conspiracy, they may not be considered by you as evidence against the defendant as to that conspiracy.

**Authority:** adapted from the charges in United States v. Rivera, 13-CR-149 (KAM) (E.D.N.Y.), United States v. Scalisi, 10-CR-46 (SJ) (E.D.N.Y.) and United States v. Barret, 10-CR-806 (KAM) (E.D.N.Y).

<u>REQUEST NO. 9</u>

(Count Two – International Cocaine, Heroin, Methamphetamine and

Marijuana Manufacture and Distribution Conspiracy)

I will now instruct you on the law regarding Count Two.  Count Two reads:

In or about and between January 1989 and September 2014, both dates being approximate and inclusive, the defendant[] JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as "El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa," "Papa," "Inge" and "El Viejo," together with others, did knowingly and intentionally conspire to manufacture and distribute one or more controlled substances, which offense involved: (a) a substance containing cocaine, a Schedule II controlled substance; (b) a substance containing heroin, a Schedule I controlled substance; (c) a substance containing methamphetamine, a Schedule II controlled substance; and (d) a substance containing marijuana, a Schedule I controlled substance, intending and knowing that such substances would be unlawfully imported into the United States from a place outside thereof, contrary to Title 21, United States Code, Sections 959(a) and 960(a)(3).  The amount of cocaine involved in the conspiracy attributable to the defendant[] as a result of [his] own conduct, and the conduct of other conspirators reasonably foreseeable to [him], was at least five kilograms or more of a substance containing cocaine.  The amount of heroin involved in the conspiracy attributable to the defendant[]s as a result of [his] own conduct, and the conduct of other conspirators reasonably foreseeable to [him], was at least one kilogram or more of a substance containing heroin.  The amount of methamphetamine involved in the conspiracy attributable to the defendant[] as a result of [his] own conduct, and the conduct of other conspirators reasonably foreseeable to [him], was at least 500 grams or more of a mixture or substance containing methamphetamine.  The amount of marijuana involved in the conspiracy attributable to the defendant[] as a result of [his] own conduct, and the conduct of other conspirators reasonably foreseeable to [him], was at least one thousand kilograms of a substance containing marijuana.

In order to prove this charge against the defendant, the government must prove

beyond a reasonable doubt each of the following elements of the offense:

First, that the defendant entered into an agreement to manufacture or distribute

cocaine or heroin or methamphetamine or marijuana;

21

Second, that the defendant knowingly and intentionally became a member of the conspiracy; and

Third, that the defendant knew that the cocaine, heroin, methamphetamine or marijuana he conspired to manufacture or distribute was to be illegally imported in the United States.

Because my prior instructions as to "knowing" and "intentional" conduct, the meaning of "distribute," and the elements of a conspiracy charge apply equally to the conspiracy charged in Count Two, I will not repeat them here.  See pages 9, 13-18 of these instructions

I remind you that the defendant is not charged in Count Two with actually committing the unlawful acts of manufacturing and distributing, but rather with conspiring to commit them.  The government must prove beyond a reasonable doubt either that the defendant conspired to manufacture a controlled substance, or that the defendant conspired to distribute a controlled substance with the intent to distribute it.

The government must prove beyond a reasonable doubt that the defendant conspired to manufacture or distribute cocaine, heroin, methamphetamine or marijuana, and that the defendant knew that the cocaine, heroin, methamphetamine or marijuana he conspired to manufacture or distribute was to be illegally imported in the United States.

If you determine that the defendant is guilty beyond a reasonable doubt of the crime charged in Count Two, you must also determine whether the government has established beyond a reasonable doubt that the conspiracy involved at least five kilograms or more of cocaine or at least one kilogram of heroin or at least five hundred grams of

22

methamphetamine or at least one thousand kilograms of marijuana, attributable to the

defendant as a result of his own conduct, or the conduct of other conspirators reasonably

foreseeable to the defendant.  You will see those questions on the verdict sheet.

**Authority**: adapted from the charge of the Hon. Kiyo Matsumoto in United States v. Barret, et al., 10-CR-809 (S-4) (E.D.N.Y.), Sand, Instruction 56-05.

REQUEST NO. 10

(Cocaine Importation Conspiracy)

Count Three charges the defendant with conspiracy to import cocaine into the United States.  Count Three reads as follows:

> In or about and between January 1989 and September 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant[] JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as "El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa," "Papa," "Inge" and "El Viejo," together with others, did knowingly and intentionally conspire to import a controlled substance into the United States from a place outside thereof, which offense involved a substance containing cocaine, a Schedule II controlled substance, contrary to Title 21, United States Code, Sections 952(a) and 960(a)(1).  The amount of cocaine involved in the conspiracy attributable to the defendant[] as a result of [his] own conduct, and the conduct of other conspirators reasonably foreseeable to [him], was at least five kilograms or more of a substance containing cocaine.

In order to prove this charge against the defendant, the government must establish beyond a reasonable doubt each of the following elements of the offense:

First, that the defendant entered into an agreement to bring cocaine into the United States from some place outside the United States as charged in the indictment;

Second, that the defendant knowingly and intentionally became a member of the conspiracy.

Because my prior instructions as to "knowing" and "intentional" conduct and the meaning of "distribute," and the elements of a conspiracy charge apply equally to the conspiracy charged in Count Three, I will not repeat them here.  See pages 9, 13-18 of these instructions.

I remind you that the defendant is not charged in Count Three with actually committing the unlawful act of importing, but rather with conspiring to commit it.

24

The government must prove beyond a reasonable doubt that the defendant conspired to import cocaine into the United States.

If you determine that the defendant is guilty beyond a reasonable doubt of the crime charged in Count Three, you must also determine whether the government has established beyond a reasonable doubt that the amount of cocaine involved in the conspiracy attributable to the defendant as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, was at least five kilograms or more of a substance containing cocaine.  You will see those questions on the verdict sheet.

**Authority**: adapted from the charge of the Hon. Kiyo Matsumoto in United States v. Barret, et al., 10-CR-809 (S-4) (E.D.N.Y.), Sand, Instruction 56-05.

<u>REQUEST NO. 11</u>

(Cocaine Distribution Conspiracy)

I will now instruct you on the law regarding Count Four.  Count Four reads:

In or about and between January 1989 and September 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant[] JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as "El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa," "Papa," "Inge" and "El Viejo," together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute a controlled substance, which offense involved a substance containing cocaine, a Schedule II controlled substance, contrary to Title 21, United States Code, Section 841(a)(1).  The amount of cocaine involved in the conspiracy attributable to the defendant[] as a result of [his] own conduct, and the conduct of other conspirators reasonably foreseeable to [him], was at least five kilograms or more of a substance containing cocaine.

To find the defendant guilty of Count Four, the government must establish beyond a reasonable doubt both of the following two elements of the crime:

<u>First</u>, that the defendant entered into an agreement to distribute or possess with intent to distribute cocaine, within the Eastern District of New York and elsewhere;

<u>Second</u>, that the defendant knowingly and intentionally became a member of the conspiracy.

Because my prior instructions as to "knowing" and "intentional" conduct, the meaning of "distribute," and the elements of a conspiracy charge apply equally to the conspiracy charged in Count Four, I will not repeat them here. <u>See</u> pages 9, 13-18 of these instructions.

Again, I remind you that the defendant is not charged in Count Four with <u>actually committing</u> the unlawful acts of distributing and possessing cocaine with intent to distribute, but rather with <u>conspiring</u> to commit them.

26

The government must prove beyond a reasonable doubt <u>either</u> that the defendant conspired to distribute a controlled substance, <u>or</u> that the defendant conspired to possess a controlled substance with the intent to distribute it.

If you determine that the defendant is guilty beyond a reasonable doubt of the crime charged in Count Four, you must also determine whether the government has established beyond a reasonable doubt that the amount of cocaine involved in the conspiracy attributable to the defendant as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, was at least five kilograms or more of a substance containing cocaine.  You will see those questions on the verdict sheet.

**<u>Authority</u>**: adapted from the charge of the Hon. Kiyo Matsumoto in <u>United States v. Barret, et al.</u>, 10-CR-809 (S-4) (E.D.N.Y.).

## REQUEST NO. 12

(Counts Five through Nine – International Distribution of Cocaine)

Counts Five through Nine of the Indictment each charge that the defendant,

together with others, did knowingly and intentionally distribute a controlled
substance, intending and knowing that such substance would be unlawfully
imported into the United States from a place outside thereof, which offense
involved five kilograms or more of a substance containing cocaine, a Schedule
II controlled substance.

While these Counts involve the same crime, each count charges a different

event that occurred at differing times.  Because the underlying law is the same, I will instruct

you on these Counts simultaneously.

In order to prove these charges against the defendant, for each charge

separately as to the defendant, the government must prove beyond a reasonable doubt each

of the following elements of the offense:

First, that the defendant distributed cocaine.  The word "distribute" means to

deliver, and deliver has a simple meaning: it means to transfer from one person to another.

When I instruct you that you must find that the defendant distributed a controlled substance,

this does not mean that you must find that the defendant personally distributed or delivered

the controlled substance.  It is sufficient if you find that the defendant caused or assisted in

the distribution of the controlled substance.

Second, that the defendant knew that the cocaine he distributed would be

illegally imported in the United States.  The defendant does not need to be present in the

United States as long as the defendant knew that the cocaine he distributed would be

illegally imported in the United States.

28

As I mentioned, Counts Five through Nine involve different time periods. Count Five charges the defendant with international distribution of at least five kilograms of cocaine in or about December 2008.  Count Six charges the defendant with international distribution of at least five kilograms of cocaine in or about September 2004.  Count Seven charges the defendant with international distribution of at least five kilograms of cocaine in or about August 2004 and September 2004.  Count Eight charges the defendant with international distribution of at least five kilograms of cocaine in or about and between January 2004 and March 2004.  Count Nine charges the defendant with international distribution of at least five kilograms of cocaine on or about January 25, 2004.  The dates charged in these Counts, and in all of the following Counts, are approximate.

If you determine that the defendant is guilty of any of the crimes charged in Counts Five through Nine, you must also determine whether the government has established beyond a reasonable doubt that the offense involved at least five kilograms or more of cocaine, as charged in the count you are considering.  You will see those questions on the verdict sheet.

**Authority:** adapted from the charge of the Hon. John Gleeson in United States v. James Rosemond, 11-CR-424 (E.D.N.Y.); Sand, Instruction 56-05.

## REQUEST NO. 13

### (Count One – Continuing Criminal Enterprise)

I will now instruct on the law regarding Count One.  Count One reads:

In or about and between January 1989 and September 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as "El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa," "Papa," "Inge" and "El Viejo," together with others, did knowingly and intentionally engage in a continuing criminal enterprise, in that the defendant JOAQUIN ARCHIVALDO GUZMAN LOERA committed violations of Title 21, United States Code, Sections 841(a), 846, 959(a) and 960(a), including Violations One through Twenty-Nine set forth below, which violations were part of a continuing series of violations of those statutes undertaken by the defendant JOAQUIN ARCHIVALDO GUZMAN LOERA, in concert with five or more other persons, with respect to whom the defendant JOAQUIN ARCHIVALDO GUZMAN LOERA occupied a supervisory and management position, and was one of several principal administrators, organizers and leaders of the continuing criminal enterprise, and from which continuing series of violations the defendant JOAQUIN ARCHIVALDO GUZMAN LOERA obtained substantial income and resources, and which enterprise received in excess of $10 million in gross receipts during one or more twelve-month periods for the manufacture, importation and distribution of cocaine.  The violations involved at least 300 times the quantity of a substance described in Section 841(b)(1)(B) of Title 21, United States Code, to wit: 150 kilograms or more of a substance containing cocaine.  The continuing series of violations, as defined by Title 21, United States Code, Section 848(c), includes the following violations set forth below:

In order to meet its burden of proof on this offense, the government must prove beyond a reasonable doubt each of the following five elements of the offense:

First, that the defendant committed at least one violation of the federal drug laws that constitutes a felony;

Second, that this offense was part of a series of three or more offenses committed by the defendant in violation of federal drug laws;

Third, that the defendant committed the offenses in this series of violations in concert with five or more persons, either named or unnamed in the indictment;

Fourth, that the defendant occupied a position of organizer, supervisor or any other position of management with respect to these five or more persons; and

Five, that the defendant obtained a substantial income or resources from the series of violations of federal drug laws.

With respect to the first element, the government must prove beyond a reasonable doubt that the defendant committed at least one felony drug offense. The government has alleged that the defendant committed twenty-nine separate felony violations of federal drug laws. Each of these twenty-nine alleged violations falls into one of three categories of offenses: (1) international cocaine distribution, (2) cocaine, heroin and marijuana distribution and (3) murder conspiracy. I have already described to you the elements of international and domestic narcotics distribution, which covers the charged violations.

In fact, violation three corresponds to Count Six, violation four corresponds to Count Seven, violation nine corresponds to Count Eight, violation thirteen corresponds to Count Five, and violation fourteen corresponds to Count Nine. Thus, if you find that the government has proved beyond a reasonable doubt that the defendant is guilty of any of the offenses charged in Counts Five, Six, Seven, Eight and Nine of the indictment, then you should find that the first element of the continuing criminal enterprise charge has also been satisfied.

With respect to violation twenty-nine, murder conspiracy, the violation charges that the defendant, while engaged in one or more of the narcotics conspiracies as alleged in Counts Two through Four, did knowingly and intentionally conspire to kill or cause the intentional killing of one or more persons, to wit: persons who posed a threat to the Sinaloa Cartel.

In order to prove this violation against the defendant, the government must prove beyond a reasonable doubt each of the following elements of the offense:

First, that the defendant was engaged in a narcotics conspiracy, as alleged in Counts Two through Four.  The defendant is charged in Counts Two, Three and Four of the indictment with engaging in narcotics conspiracy.  It is for you to determine that the government has proven beyond a reasonable doubt that the defendant committed the crime of narcotics conspiracy as charged in Counts Two, Three or Four.

Second, that the defendant agreed with one or more persons to kill individuals or groups of persons, who posed a threat to the Sinaloa cartel, specifically [NOTE: the government will provide the list of individuals and groups of persons at the end of trial].  The government need not prove that the individual or group of persons whom the defendant agreed to kill was in fact killed, only that there was an unlawful agreement to do so.

Because my prior instructions as to "knowing" and "intentional" conduct, and the elements of a conspiracy charge apply equally to the conspiracy charged in violation twenty-nine, I will not repeat those instructions.  See pages 9, 13-18 of these instructions.

Now you have heard the relevant instructions as to the first element of Count One.  I will now briefly summarize the twenty-nine violations.

1.      Violation One charges the defendant with international cocaine distribution of 3,000 kilograms of cocaine in or about and between December 2006 and January 2007.

2.      Violation Two charges the defendant with international cocaine distribution of 3,200 kilograms of cocaine in or about January 2005.

3.      Violation Three charges the defendant with international cocaine distribution of 12,000 kilograms of cocaine in or about and between August 2004 and September 2004.

4.      Violation Four charges the defendant with international cocaine distribution of 10,500 kilograms of cocaine in or about and between August 2004 and September 2004.

5.      Violation Five charges the defendant with international cocaine distribution of 10,000 kilograms of cocaine in or about July 2004.

6.      Violation Six charges the defendant with international cocaine distribution of 10,000 kilograms of cocaine in or about and between May 2004 and June 2004.

7.      Violation Seven charges the defendant with international cocaine distribution of 800 kilograms of cocaine in or about April 2004.

8.     Violation Eight charges the defendant with international cocaine distribution of 10,000 kilograms of cocaine in or about and between March 2004 and April 2004.

9.     Violation Nine charges the defendant with international cocaine distribution of 8,000 kilograms of cocaine in or about and between January 2004 and March 2004.

10.    Violation Ten charges the defendant with international cocaine distribution of 6,465 kilograms of cocaine in or about January 2004.

11.    Violation Eleven charges the defendant with international cocaine distribution of 6,000 kilograms of cocaine in or about and between November 2003 and December 2003.

12.    Violation Twelve charges the defendant with international cocaine distribution of 3,600 kilograms of cocaine in or about and between August 2003 and September 2003.

13.    Violation Thirteen charges the defendant with international cocaine distribution of 450 kilograms of cocaine in or about December 2008.

14.    Violation Fourteen charges the defendant with international cocaine distribution of 2,000 kilograms of cocaine on or about January 25, 2004.

15.    Violation Fifteen charges the defendant with international cocaine distribution of 4,716 kilograms of cocaine on or about September 13, 2008.

16.     Violation Sixteen charges the defendant with international cocaine distribution of 5,000 kilograms of cocaine in or about and between September 9, 2008 and September 12, 2008.

17.     Violation Seventeen charges the defendant with international cocaine distribution of 19,000 kilograms of cocaine on or about March 18, 2007.

18.     Violation Eighteen charges the defendant with international cocaine distribution of 1,997 kilograms of cocaine on or about January 28, 2003.

19.     Violation Nineteen charges the defendant with international cocaine distribution of 1,952 kilograms of cocaine on or about August 16, 2002.

20.     Violation Twenty charges the defendant with international cocaine distribution of 1,923 kilograms of cocaine on or about May 24, 2002.

21.     Violation Twenty-one charges the defendant with international cocaine distribution of 1,100 kilograms of cocaine on or about September 15, 1999.

22.     Violation Twenty-Two charges the defendant with international cocaine distribution of 7,300 kilograms of cocaine on or about April 21, 1993.

23.     Violation Twenty-Three charges the defendant with international cocaine distribution of 8,300 kilograms of cocaine on or about and between October 1, 2009 and October 9, 2009.

24.     Violation Twenty-Four charges the defendant with international cocaine distribution of 7,500 kilograms of cocaine on or about and between February 6, 2009 and February 7, 2009.

25.     Violation Twenty-Five charges the defendant with international cocaine distribution of 403 kilograms of cocaine on or about January 30, 2014.

26.     Violation Twenty-Six charges the defendant with marijuana distribution of 409 kilograms of marijuana on or about January 15, 2012.

27.     Violation Twenty-Seven charges the defendant with heroin distribution on of 20 kilograms of heroin or about November 13, 2008

28.     Violation Twenty-Eight charges the defendant with cocaine distribution of 926 kilograms of cocaine on or about May 11, 1990.

29.     Violation Twenty-Nine charges the defendant with murder conspiracy in or about and between January 1989 and September 2014.

Again, to satisfy the first element of Count One, the government must establish beyond a reasonable doubt that the defendant committed one of these twenty-nine violations.

The second element that the government must prove beyond a reasonable doubt is that this violation was one of continuing series of violations of the federal drug laws, which is defined as three or more violations of the federal drug laws committed over a definite period of time and related to each other in some way, as distinguished from isolated or disconnected acts.  If you find three or more of the charged 29 violations proven as part of a continuing series, this element is proven.

To find the defendant guilty, you must unanimously agree on at least three specific violations that constitute a continuing series of violations.

The verdict form I will give you will list each of the alleged violations of federal drug laws alleged by the government that you may consider in determining whether the government has proven a continuing series of violations. You must consider the evidence separately with regard to each and render separate verdicts as to whether the government has proven each alleged violation beyond a reasonable doubt.

The third element which the government must prove beyond a reasonable doubt is that the defendant committed the continuing series of violations in concert with five or more persons. These persons can be anyone who you find, beyond a reasonable doubt, were persons with whom the defendant committed the violations.

You do not have to find that the five or more persons acted together at the same time, or that the defendant personally dealt with them together. You also do not have to find that the defendant had the same relationship with each of the five or more persons. However, the government must prove beyond a reasonable doubt that the defendant and at least five other persons were part of an agreement or joint action to commit the continuing series of violations of the federal drug laws. It is not necessary that you identify each of these five persons by their first and last names. Identifying them by their first names or street names or even "unidentified male" or "unidentified female" is sufficient, as long as you determine that they are, in fact, five separate persons. You must unanimously agree on which five or more people the defendant committed the violations with.

The fourth element the government must prove beyond a reasonable doubt is that the defendant occupied the position of organizer, supervisor or manager with respect to these five or more persons. In considering whether the defendant occupied such a position,

37

you should give the words "organizer, supervisor or manager" their ordinary, everyday meaning.  The government does not need to prove that the defendant was the sole organizer, manager or supervisor of the enterprise.  An enterprise may have more than one organizer or supervisor or manager.  Indeed, it may have many.  The government meets its burden on this element if it proves beyond a reasonable doubt that the defendant exercised organizational, supervisory or managerial responsibilities over five or more persons anywhere within the hierarchy of the enterprise.  As I have instructed you, the government need not prove that the same type of superior subordinate relationship existed between the defendant and each of the people he allegedly organized, supervised or controlled.

In considering whether the defendant occupied an organizational, supervisory or managerial relationship with respect to the five or more persons, you should consider evidence that might distinguish the defendant's position from that of an underling in the enterprise.  You should give the term organize, manage and supervise its everyday meaning as you would in a public or business community.  For example, did the defendant negotiate purchases or sales of the narcotics?  Did he make arrangements for transportation or money laundering?  Did he instruct the participants in the transactions?  These inquiries are not conclusive.  They are the kinds of questions you should ask yourselves in thinking about the defendant's role in these activities and his relationship with other persons involved in them.

The fifth element the government must prove beyond a reasonable doubt is whether the defendant derived substantial income or resources from this continuing series of federal drug law violations. The law does not set forth a minimum amount of money required to constitute substantial income, but it clearly intends to exclude trivial amounts derived from

38

occasional narcotics sales.  If you determine that the defendant received only small sums of money or other insignificant gain from drug related activity, you must find him not guilty of Count One.  However, if you determine that the defendant derived substantial income or resources from this continuing series of federal drug law violations, you must find him guilty.

In considering whether the defendant derived substantial income or resources from the continuing series of drug law violations, you may consider the defendant's gross income and anticipated profits from these violations as well as the net profits he actually realized from them.  You may also consider evidence from which you can infer a receipt of substantial income or resources, such as lavish spending with no visible, legitimate, source of income.  Keep in mind, however, that the government must prove that the defendant actually obtained substantial income from his narcotics activities and that, as with all other elements of the offense, the government must prove this element of the offense beyond a reasonable doubt.

If you determine that the defendant is guilty beyond a reasonable doubt of the crime charged in Count One, you will also be asked to indicate on the verdict sheet whether the government has proven beyond a reasonable doubt that:

1. The defendant was at least one of the principal administrators, organizers, or leaders of the continuing criminal enterprise.  The government does not need to prove that the defendant was the sole principal administrator, organizer or leader of the continuing criminal enterprise.  An enterprise may have more than one principal administrator, organizer

or leader.  You should give the term principal administrator, organizer or leader its everyday meaning as you would in a public or business community.

2(a).  That at least one violation involved at least 150 kilograms of cocaine

or

2(b).  That the enterprise received $10 million dollars in gross receipts during any twelve-month period of its existence for the manufacture, importation, or distribution of cocaine.

**Authority:** adapted from the charge of the Hon. John Gleeson in United States v. James Rosemond, 11-CR-424 (E.D.N.Y.) and Sand, Instructions 56-25 through 56-31.

REQUEST NO. 14

(Use of Firearms)

I will now instruct you on the law regarding Count Ten.  Count Ten reads:

In or about and between January 1989 and September 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as "El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa," "Papa," "Inge" and "El Viejo," together with others, did knowingly and intentionally use and carry one or more firearms during and in relation to one or more drug trafficking crimes, to wit: the crimes charged in Counts One through Four, and did knowingly and intentionally possess such firearms in furtherance of said drug trafficking crimes, one or more of which firearms was brandished and discharged [or] one or more of which firearms was a machinegun.

Under Count Ten, the defendant is charged with using or carrying a firearm during the commission of a drug trafficking crime which is charged in Counts One through Four.  If upon all of the evidence you find that the government has failed to prove Counts One, Two, Three and Four beyond a reasonable doubt, then you will proceed no further.  Count Ten is to be considered only if you first find the defendant guilty under at least one the following charges: Counts One, Two, Three, or Four.  In reaching your verdict on Count Ten, you may consider the evidence of Counts One, Two, Three or Four only for the purpose of determining whether the elements of Count Ten have been satisfied.

The government must prove each of the following elements beyond a reasonable doubt to sustain its burden of proving the defendant guilty as to Count Ten:

First, that the defendant committed, or aided and abetted, one or more drug trafficking crimes, as charged in Counts One, Two, Three or Four.

41

Second, that the defendant either knowingly used or carried a firearm during and in relation to the commission of, or knowingly possessed a firearm in furtherance of, the crimes charged in Counts One, Two, Three or Four.

A.  First Element: Drug Trafficking Crime

The first element the government must prove beyond a reasonable doubt is that the defendant committed a drug trafficking crime.

The defendant is charged in Counts One, Two, Three or Four of the indictment with engaging in narcotics conspiracy and engaging in a Continuing Criminal Enterprise.  I instruct you that the crime of narcotics conspiracy and a Continuing Criminal Enterprise is a drug trafficking crime.  However, it is for you to determine that the government has proven beyond a reasonable doubt that the defendant committed the crime of narcotics conspiracy or Continuing Criminal Enterprise as charged in Counts One, Two, Three or Four.

B.  Second Element: Use, Carrying or Possession

The second element the government must prove beyond a reasonable doubt is that the defendant knowingly used or carried a firearm during and in relation to the commission of one or more drug trafficking crimes as charged in Counts One through Four and that the defendant knowingly possessed a firearm in furtherance of the commission of one or more of the drug trafficking crimes as charged in Counts One through Four.

A "firearm" is any weapon that will or is designed to or may be readily converted to expel a projectile by the action of an explosive.  I instruct you that a gun is a firearm.

42

In order to prove that the defendant "used" the firearm, the government must prove beyond a reasonable doubt an active employment of the firearm by the defendant during and in relation to the commission of the drug trafficking crime.  This does not mean that the defendant must actually fire or attempt to fire the weapon, although those would obviously constitute use of the weapon.  Brandishing, displaying, or even referring to the weapon so that others present knew that the defendant had the firearm available if needed all constitute use of the firearm.  However, the mere possession of a firearm at or near the site of the crime without active employment as I just described it is not sufficient to constitute a use of the firearm.

In order to prove that the defendant carried the firearm, the government must prove beyond a reasonable doubt that the defendant had the weapon within his control in such a way that it furthered the commission of the drug trafficking crime or was an integral part of the commission of the crime.  To "carry" the firearm in furtherance of the offense means that the defendant had control of the firearm or of the place it was located and the intention to exercise that control in such a way that it would further the commission of the drug trafficking crime.

To prove that the defendant possessed the firearm in furtherance of the crime, the government must prove that the defendant had possession of the firearm and that such possession was in furtherance of that crime.  Possession means that defendant either had physical possession of the firearm on his person or that he had dominion and control over the place where the firearm was located and had the power and intention to exercise control over the firearm.  To possess a firearm in furtherance of the crime means that the firearm helped forward, advance or promote the commission of the crime.  The mere possession of the firearm

43

at the scene of the crime is not sufficient under this definition. The firearm must have played some part in furthering the crime in order for this element to be satisfied.

To satisfy this element, you must also find that the defendant possessed or carried or used the firearm knowingly.  This means that he carried the firearm purposely and voluntarily, and not by accident or mistake.  It also means that he knew that the weapon was a firearm, as we commonly use the word.  However, the government is not required to prove that the defendant knew that he was breaking the law.

C.     Aiding and Abetting

You may also find the defendant you are considering guilty of Count Ten if the government has proven beyond a reasonable doubt that he aided and abetted another in using or carrying a firearm during and in relation to, or in possessing a firearm in furtherance of, a crime of violence or drug trafficking crime. In determining whether the defendant is guilty as an aider and abettor, you must follow the general instructions on aiding and abetting that I have already given you (see pages 10-12 of these instructions).

You will recall that the government must first prove beyond a reasonable doubt that some person did the underlying crime, namely, that some person used or carried a firearm during and in relation to, or possessed a firearm in furtherance of, the underlying crime of violence or drug trafficking crime. To find the defendant guilty as an aider and abettor on this count, however, it is not enough to simply find beyond a reasonable doubt that the defendant knew a firearm would be used, carried, or possessed during the commission of the underlying crime of violence or drug trafficking crime. Rather, there are two additional requirements that apply to aiding and abetting the use, carrying, or possession of a firearm.

44

In order to find the defendant guilty of aiding and abetting the use or carrying of a firearm during and in relation to, or possession of a firearm in furtherance of a crime of violence or drug trafficking crime, you must find that the defendant (1) took an affirmative act in furtherance of that offense (2) with the intent of facilitating the offense's commission.

1) Affirmative Act

A person takes an affirmative act in furtherance of an offense if he facilitates, that is, if he acts to help or assist or make possible, any part—though not necessarily every part—of the crime. An affirmative act includes all assistance rendered by words, acts, encouragement, support, or presence. As a result, in the context of aiding and abetting the use or carrying of a firearm during and in relation to, or possession of a firearm in furtherance of a crime of violence or drug trafficking crime, a person takes the necessary affirmative act if he facilitates the use, carrying or possession of the firearm or the commission of the crime of violence or drug trafficking crime. It is not necessary that the person facilitate both the possession of the firearm and the crime of violence or drug trafficking crime.

2)  Intent

A person acts with the required intent if he knowingly associates himself in some way with the crime and participates in the crime by doing some act to help make the crime succeed. This intent requirement is satisfied when a person actively participates in a criminal venture with full knowledge of the circumstances constituting the charged offense. In the context of aiding and abetting the use or carrying of a firearm during and in relation to, or possession of a firearm in furtherance of, a crime of violence or drug trafficking crime, a person acts with the requisite intent if he had advance knowledge that a confederate would use or carry a firearm during and in relation to, or possess a firearm in furtherance of a crime of violence or drug trafficking crime.

Advance knowledge means knowledge at a time the person can attempt to alter the plan or withdraw from the enterprise. Knowledge of the gun may, but does not have to, exist before the underlying crime is begun. It is sufficient if the knowledge is gained in the midst of the underlying crime, as long as the individual continues to participate in the crime and has a realistic opportunity to withdraw. You may, but need not, infer that the defendant had sufficient foreknowledge if you find that the defendant continued his participation in the crime after learning about the use, carrying or possession of a gun by a confederate.

*** 

If you determine that the defendant is guilty beyond a reasonable doubt of the crime charged in Count Ten, you will also be asked to indicate on the verdict sheet whether the government has proven beyond a reasonable doubt that the defendant brandished or discharged a firearm.  To brandish a firearm means to display all or part of the firearm, or

46

otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person.

You may find that the government has proven beyond a reasonable doubt that the defendant brandished a firearm if he aided and abetted the brandishing of a firearm during and in relation to a crime of violence or drug trafficking crime. The defendant is guilty of aiding and abetting the brandishing of a firearm if he had advance knowledge that a confederate would display or make the presence of a firearm known for purposes of intimidation. The defendant need not have had advance knowledge that a confederate would actually brandish the firearm. This requirement is satisfied if the defendant knew that a confederate intended to brandish a firearm to intimidate if the need arose.

You may find that the government has proven beyond a reasonable doubt that the defendant discharged a firearm if he aided and abetted the discharging of a firearm during and in relation to a crime of violence or drug trafficking crime.  To aid and abet the possession or carrying of a firearm that was discharged, the defendant need not have advance knowledge that the discharge would occur.

You will also see a question on the verdict sheet about whether the defendant committed this offense using a "machinegun."  The term "machinegun" is defined in the statute as any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. A trigger is any mechanism used to initiate the firing sequence.  The term machinegun also includes the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon

into a machinegun, and any combination of parts from which a machinegun can be assembled

if such parts are in the possession or under the control of a person.

**Authority:** adapted from the charge of the Hon. Kiyo A. Matsumoto in United States v. Rivera,

13-CR-149; Sand, Instruction 2-35.

<u>REQUEST NO. 15</u>

(Conspiracy to Launder Narcotics Proceeds)

I will now instruct you on the law for Count Eleven.  Count Eleven reads:

In or about and between January 1989 and September 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as "El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa," "Papa," "Inge" and "El Viejo," together with others, did knowingly and intentionally conspire to: (i) conduct one or more financial transactions in and affecting interstate and foreign commerce, to wit: the transfer and delivery of United States currency, which transactions in fact involved the proceeds of specified unlawful activity, to wit: narcotics trafficking, in violation of Title 21, United States Code, Sections 841(a)(1), 846, 848, 952(a), 959 and 963, knowing that the property involved in the transactions represented the proceeds of some form of unlawful activity, (a) with the intent to promote the carrying on of the specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(A)(i), and (b) knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity, and to avoid one or more transaction reporting requirements, contrary to Title 18, United States Code, Section 1956(a)(1)(B); and (ii) transport, transmit and transfer monetary instruments and funds from a place in the United States to and through one or more places outside the United States, to wit: Mexico and Colombia, (a) with the intent to promote the carrying on of the specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(2)(A), and (b) knowing that the funds represented the proceeds of some form of unlawful activity and knowing that the transportation, transmission and transfer were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity, and to avoid one or more transaction reporting requirements, contrary to Title 18, United States Code, Section 1956(a)(2)(B).

I have already instructed you on the elements of a conspiracy charge and the same principles apply to the conspiracy charge in Count Eleven.  <u>See</u> pages 9, 13-18 of these instructions.  By way of brief summary, in order to prove the crime of conspiracy, the government must establish the following elements of the crime beyond a reasonable doubt.

First, that two or more persons entered into the charged agreement – to launder money.

Second, that the defendant knowingly and intentionally became a member of the conspiracy.

I will now instruct you as to the crime charged as the object of the conspiracy in Count Eleven – the crime of money laundering.  It is sufficient that the defendant agreed with one or more persons to commit the crime of money laundering.  The government need not prove that the defendant actually committed money laundering.

The crime of money laundering consists of the following elements:

First, conducting (or attempting to conduct) a financial transaction involving property constituting the proceeds of drug trafficking offenses.

Second, knowledge that the property involved in the financial transaction was the proceeds of some form of unlawful activity.

Third, that the proceeds were transferred from Mexico to the United States, the United States to Mexico, or the United States to Colombia.

Fourth, acting with the intent to promote the carrying on of the drug trafficking offenses or that the transportation, transmission or transfer of funds were designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds from drug trafficking.

A "transaction" includes a purchase, sale, loan, pledge, gift, transfer, delivery, or other disposition of property.  The term "financial transaction" means a transaction involving a financial institution which is engaged in, or the activities of which affect,

interstate or foreign commerce in any way or degree, or a transaction which in any way or degree affects interstate or foreign commerce and involves the movement of funds by wire or other means, or involves one or more monetary instruments.  A "transaction involving a financial institution" includes a deposit, withdrawal, transfer between accounts, purchase or sale of any monetary instrument or any other payment, transfer, or delivery by, through, or to a financial institution by whatever means.

**Authority:** adapted from the charge of the Hon. John Gleeson in United States v. James Rosemond, 11-CR-424 (E.D.N.Y.); Sand, Instruction 50A-01.

<u>REQUEST NO. 16</u>

(Guilt of Substantive Offense Due to Membership in a Conspiracy)

There is another way in which you should evaluate the guilt of the defendant for the substantive charges in the indictment — Counts Five, Six, Seven, Eight and Nine — even if you do not find that the government has satisfied its burden of proof with respect to each element of those counts.

If, in light of my instructions, you find, beyond a reasonable doubt, that the defendant was a member of the conspiracy charged in Count Two of the indictment, then you may also, but you are not required to, find him guilty of the crimes charged against him in the corresponding substantive Counts Five, Six, Seven, Eight and Nine provided you find, beyond a reasonable doubt, each of the following elements as to the count you are considering:

<u>First</u>, the crime charged in the substantive count was committed;

<u>Second</u>, the person or persons you find actually committed the crime were members of the conspiracy you found to have existed;

<u>Third</u>, the substantive crime was committed pursuant to the common plan and understanding you found to exist among the conspirators;

<u>Fourth</u>, the defendant was a member of that conspiracy at the time the substantive crime was committed; and

<u>Fifth</u>, the defendant could have reasonably foreseen that the substantive crime might be committed by his co-conspirators.

52

If you find all five of these elements to exist beyond a reasonable doubt, then you may find the defendant guilty of the substantive crime you are considering even though he did not personally participate in the acts constituting the crime or did not have actual knowledge of it.

The reason for this rule is simply that a co-conspirator who commits a substantive crime pursuant to a conspiracy is deemed to be the agent of the other conspirators. Therefore, all of the co-conspirators must bear criminal responsibility for the commission of the substantive crimes.

If, however, you are not satisfied as to the existence of any of these five elements, then you may not find the defendant guilty of the substantive crime, unless the government proves, beyond a reasonable doubt, that the defendant personally committed, or aided and abetted the commission of, the substantive crime charged.

As I instructed you earlier, with respect to Count One of the indictment, substantive Counts Five, Six, Seven, Eight, and Nine correspond to Violations Thirteen, Three, Four, Nine, and Fourteen, respectively, charged in Count One. I instructed you that if you find the defendant guilty beyond a reasonable doubt of any of the offenses charged in Counts Five, Six, Seven, Eight, and Nine of the indictment, then you should find that the first element of the continuing criminal enterprise charge of Count One has been satisfied. The same may also be true if you use this alternative way to find the defendant guilty of Counts Five, Six, Seven, Eight, and Nine. That is, if you find the defendant guilty of the substantive Counts of Five, Six, Seven, Eight, and Nine through this alternative theory, derived from his membership in the conspiracy charged in Count Two, you may also find that he committed

53

Violations Thirteen, Three, Four, Nine, and Fourteen of Count One.  If you do so, you should find that the first element of the continuing criminal enterprise charge in Count One has been satisfied; however, you will still need to consider the remaining four elements of the continuing criminal enterprise charge, on which I already instructed you.  See pages 30-40 of these instructions.

**Authority:** adapted from the charge in United States v. Basciano, 05-CR-060 (NGG) (E.D.N.Y.); Sand, Instruction 19-03.

<u>REQUEST NO. 17</u>

(All Available Evidence Need Not be Produced)

The law does not require any party to call as witnesses all persons who may

have been present at any time or place involved in the case, or who may appear to have some

knowledge of the matter in issue at this trial.  Nor does the law require any party to produce

as exhibits all papers and things mentioned during the course of the trial.


**<u>Authority:</u>** adapted from E. Devitt & C. Blackmar, <u>Federal Jury Practice and</u>
<u>Instructions</u>, § 72.11 (3d ed. 1977).

REQUEST NO. 18

(Particular Investigative Techniques Not Required)

Although the government bears the burden of proof, and although a reasonable doubt can arise from lack of evidence, I instruct you that the law does not require that any particular investigative techniques be used by law enforcement authorities to uncover or prosecute crime.  Law enforcement techniques are not your concern.  Your concern is to determine whether or not, based upon all the evidence presented in the case, the government has proven that the defendants guilty beyond a reasonable doubt.

**Authority:** adapted from the charges in United States v. Wilson, 08-CR-690 (BMC) (E.D.N.Y.), and United States v. Breheney, 94-CR-244 (ILG) (E.D.N.Y.); Sand, Instruction 4-4.

<u>REQUEST NO. 19</u>

(Interview of Witnesses)

There was testimony at trial that the attorneys for the government interviewed witnesses when preparing for and during the course of the trial.  You must not draw any unfavorable inference from that fact.  On the contrary, attorneys are obliged to prepare their case as thoroughly as possible, and one way to accomplish this is to properly interview witnesses before the trial and as necessary throughout the course of the trial.

**<u>Authority:</u>** adapted from the charge in <u>United States v. Brady</u>, 92- CR-792 (ILG) (E.D.N.Y.).

REQUEST NO. 20

(Accomplice Testimony)

You have heard the testimony of witnesses who testified that they were involved in planning and carrying out certain crimes with the defendants and others. There has been a great deal said about these so-called "cooperating witnesses" in the summations of counsel and about whether or not you should believe them.

The government argues, as it is permitted to do, that it must take the witnesses as it finds them. It argues that only people who themselves take part in criminal activity have the knowledge required to show criminal behavior by others. For those very reasons, the law allows the use of accomplice and co-conspirator testimony. Indeed, it is the law in federal courts that the testimony of one accomplice or co-conspirator may be enough in itself for conviction, if the jury finds that the testimony establishes guilt beyond a reasonable doubt. However, it is also the case that cooperator testimony is of such a nature that it must be scrutinized with great care and viewed with particular caution when you decide how much of that testimony to believe.

I have given you some general considerations on credibility and I will not repeat them all here. Nor will I repeat all of the arguments made on both sides. However, let me say a few things that you may want to consider during your deliberations on the subject of cooperating witnesses. You should ask yourselves whether such witnesses would benefit more by lying or by telling the truth. Was their testimony made up in any way because they believed or hoped that they would somehow receive favorable treatment by testifying falsely? Or did they believe that their interests would be best served by testifying truthfully?

58

If you believe that the witness was motivated by hopes of personal gain, was the motivation one that would cause him to lie, or was it one that would cause him to tell the truth?

You have also heard testimony that witnesses in this case have been promised that if they provide substantial assistance to the government and testify truthfully, completely and fully, the government will present to the sentencing court what is called a 5K1.1 letter. The 5K1.1 letter sets forth the cooperating witness's criminal acts as well as the substantial assistance the witness has provided. I instruct you that the 5K1.1 letter does not guarantee the cooperating witness a lower sentence. This is because the sentencing court may, but is not required to, take the 5K1.1 letter into account when imposing sentence on the cooperating witness. The Court has discretion, whether or not a 5K1.1 letter is written, to impose any reasonable sentence the Court deems appropriate up to the statutory maximum. Typically, the government does not make a recommendation to the sentencing judge as to how much time a defendant will get, and the final determination as to the sentence to be imposed rests with the Court, not with the government. All that a cooperating witness gets from the government, if the government is satisfied with the witness's cooperation, is the 5K1.1 letter.

Similarly, you may have heard testimony about a Rule 35 sentencing reduction. In certain circumstances, Rule 35 allows the government to ask a sentencing court to reduce the sentence of a defendant who has already been sentenced, if that defendant has provided substantial assistance to the government. As with a 5K1.1 letter, the ultimate sentence, and whether or not a defendant receives a reduction, is up to the sentencing court,

not the government.  All the government can do is make the request pursuant to Rule 35 that

a witness's sentence be reduced.

           In sum, you should look at all of the evidence in deciding what credence and

what weight, if any, you will want to give to the cooperating witnesses.

**Authority:** adapted from the charge in <u>United States v. Price</u>, 05 CR 492 (NGG) (E.D.N.Y.),
<u>United States v. Cacace</u>, No. 08-CR-240 (BMC) (E.D.N.Y.).

<u>REQUEST NO. 21</u>

(Punishment of Accomplice Witnesses)

The question of punishment of the cooperating witnesses is a duty that rests exclusively upon the sentencing court.  You have heard testimony in this case about who has or will decide the sentence of the cooperating witness and whether or not the sentencing court has the authority to show leniency if the prosecutor does not recommend it.  I instruct you that the decision about punishment for the cooperating witnesses rests at all times with the sentencing court.  In particular, if the government refuses to recommend leniency for a witness and the sentencing court finds that there is no good faith basis for that refusal, the sentencing court may nevertheless show leniency to the witness.  On the other hand, if the government recommends leniency, but the sentencing court does not believe that to be appropriate, the sentencing court may impose as severe a sentence as it believes to be appropriate and as is otherwise consistent with the law.

**<u>Authority:</u>** adapted from the charge in <u>United States v. Boyle</u>, 03-CR-970 (SJ) (E.D.N.Y.); <u>see, e.g.</u>, <u>Wade v. United States</u>, 504 U.S. 181 (1992); <u>United States v. Khan</u>, 920 F.2d 1100 (2d Cir. 1990); <u>United States v. Rexach</u>, 896 F.2d 710 (2d Cir. 1990).

<u>REQUEST NO. 22</u>

(Punishment of the Defendant)

The question of possible punishment of the defendant is of no concern to the jury and should not, in any sense, enter into or influence your deliberations.  The duty of imposing a sentence rests exclusively upon the Court.  Your function is to weigh the evidence in the case and to determine whether or not the defendant is guilty beyond a reasonable doubt, solely upon the basis of such evidence.  Under your oath as jurors, you cannot allow a consideration of the punishment that may be imposed upon the defendant, if he is convicted, to influence your verdict, in any way, or, in any sense, enter into your deliberations.

I want to be clear that as to the charges in this case against this defendant, this defendant does not face the death penalty.  So that's nothing you need to be concerned about.

**<u>Authority:</u>** adapted from Sand, Instruction 9-1; Trial Tr. 2111 at 8-11.

62

<u>REQUEST NO. 23</u>

(Testimony of Law Enforcement Witnesses)

During the trial, you heard testimony from law enforcement agents.  The testimony of these witnesses should be evaluated in the same manner as the testimony of any other witness.  The mere fact that a witness is employed as a law enforcement agent does not mean that his or her testimony is deserving of more or less consideration or greater or lesser weight than that of an ordinary witness.  It is for you to decide, after weighing all the evidence and in light of the instructions I have given you about the factors relevant to determining the credibility of any witness, whether to accept the testimony of a law enforcement witness, and what weight, if any, that testimony deserves.

**Authority**: adapted from the charges in <u>United States v. Mazella</u>, 11-CR-300 (CBA) (E.D.N.Y.), and <u>United States v. Mendoza</u>, 09-CR-292 (JG) (E.D.N.Y.).  Sand, Instruction 7-16.

<u>REQUEST NO. 24</u>

(Discrepancies in Testimony)

You have heard evidence of discrepancies in the testimony of certain witnesses, and counsel have argued that such discrepancies are a reason for you to reject the testimony of those witnesses.

Evidence of discrepancies may be a basis to disbelieve a witness's testimony. On the other hand, discrepancies in a witness's testimony or between his or her testimony and that of others do not necessarily mean that the witness's testimony should be discredited.

People sometimes forget things and even a truthful witness may be nervous and contradict him- or herself. It is also a fact that two people witnessing an event may see or hear it differently. Whether a discrepancy pertains to a fact of importance or only to a trivial detail should be considered in weighing its significance. A willful falsehood always is a matter of importance and should be considered seriously.

It is for you to decide, based on your total impression of a witness, how to weigh the discrepancies in his or her testimony. You should, as always, use common sense and your own good judgment.

**Authority:** adapted from the charge in <u>United States v. Herron,</u> 10-CR-615 (NGG) (E.D.N.Y.). Sand, Instruction 7-19.

REQUEST NO. 25

(Consciousness of Guilt from Flight)

You have heard evidence that the defendant fled after he believed that he was about to be charged and/or apprehended in connection with the crime for which he is now on trial.  If proven, the flight of a defendant after he knows that he is to be accused of a crime may tend to prove that the defendant believed that he was guilty.  It may be weighed by you in this connection, together with all the other evidence.

However, flight may not always reflect feelings of guilt.  Moreover, feelings of guilt, which may be present in innocent people, do not necessarily reflect actual guilt. You are cautioned that evidence of flight of a defendant may not be used by you as a substitute for proof of guilt.  Flight does not create a presumption of guilt.

Whether or not evidence of flight does show that a defendant believed that he was guilty, and the significance, if any, to be given to that defendant's feelings on this matter are for you to determine.

**Authority:**  adapted from the charge of the Hon. Kiyo Matsumoto in <u>United States v. Barret, et al.</u>, 10-CR-809 (S-4) (E.D.N.Y.).

<u>REQEUST NO. 26</u>

(Translation and Interpretation)

The Spanish language was used for some evidence during this trial.  As you observed, some witnesses testified in Spanish through an official court interpreter.

The evidence you are to consider and on which you must base your decision is only the English-language interpretation and transcriptions presented in court.  Although some of you may speak or understand Spanish, it is important for all jurors to consider the same evidence.  For that reason, you must rely solely on the evidence presented in the English interpretation by the court interpreters.

You must not make any assumptions about a witness or a party based solely upon the use of an interpreter to assist that witness or party.

**<u>Authority:</u>**  Adopted from Ninth Circuit Pattern Jury Instruction 1.12; Seventh Circuit Pattern Jury Instruction 10.05.

66

REQEUST NO. 27

(Use of Recordings and Transcripts)

Audio recordings of various conversations have been admitted into evidence. The transcripts of foreign language recordings have also been admitted into evidence. For the transcripts of foreign language recordings, I instruct you that it is the English translation reflected in the transcript that is the evidence. Whether you approve or disapprove of the recording or translation of those conversations may not enter your deliberations. I instruct you that these recordings were made in a lawful manner and that this evidence was properly admitted at trial.

You must, therefore, regardless of any personal opinions, give this evidence full consideration along with all the other evidence in the case. Of course, it is for you to decide what weight, if any, to give this evidence.

If you wish to hear any of the recordings again or to see any of the transcripts of those recordings, they will be made available to you during your deliberations.


**Authority:**  Adopted from the charge in United States v. Prince Awuley, 13-CR-875 (RJS) (S.D.N.Y.).

<u>REQEUST NO. 28</u>

(Government's Discovery Obligations)

You may have heard counsel for the defendant request various documents from the government during trial.  As an initial matter, when an attorney asks a question or makes a comment directed at the court or other attorneys, and not the witness, that question or comment is not evidence and should not be considered by you.  Moreover, it is for the court, and not the jury, to determine whether the government has met its obligations in providing the documents and other discovery that it is required to provide to the defendant.  I am instructing you that the government has fully met those obligations in terms of providing documents and evidence to the defendant.

**<u>Authority:</u>**  Adopted from the Court's comments on Dec. 19, 2018, Tr. 3691:6-12.

68

<u>REQEUST NO. 29</u>

(Testimony of the Defendant)
(If Applicable)

A defendant in a criminal case never has any duty to testify or come forward with any evidence.  This is because, as I have told you, the burden of proof beyond a reasonable doubt remains on the government at all times, and the defendant is presumed innocent.  In this case, the defendant did testify and he was subject to cross-examination like any other witness.  You should examine and evaluate his testimony just as you would the testimony of any witness with an interest in the outcome of the case.

**Authority:** adapted from the charge in <u>United States v. Richardson</u>, 09-CR-874 (JFB) (E.D.N.Y.); <u>United States v. Gaines</u>, 457 F.3d 238, 249 n.9 (2d Cir. 2006). Sand, Instruction 7-13.

CONCLUSION

The government respectfully requests that the Court include the foregoing in
its instructions to the jury.  In addition, the government requests the opportunity to submit
further instructions or amend those submitted as appropriate.


Dated:          Brooklyn, New York
                January 7, 2019
                                          Respectfully submitted,


                                          RICHARD P. DONOGHUE
                                          United States Attorney
                                          Eastern District of New York

                                          ARTHUR G. WYATT, CHIEF
                                          Narcotic and Dangerous Drug Section
                                          Criminal Division
                                          U.S. Department of Justice

                                          OF COUNSEL:
                                          ARIANA FAJARDO ORSHAN
                                          United States Attorney
                                          Southern District of Florida


cc:     DEFENSE COUNSEL (by ECF)