

U.S. Department of Justice

United States Attorney
Eastern District of New York

GMP: BCR
F. #2009R01065

271 Cadman Plaza East
Brooklyn, New York 11201

January 9, 2019

**TO BE FILED UNDER SEAL**

By ECF

The Honorable Brian M. Cogan
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Joaquin Archivaldo Guzman Loera
                  Criminal Docket No. 09-466 (S-4) (BMC)

Dear Judge Cogan:

      The government submits this brief reply in support of its motion to preclude cross-examination regarding preclude cross-examination of one of its cooperating witnesses ("CW1") in regard to three topics that are either marginally probative or completely irrelevant to CW1's character for truthfulness. See Dkt. No. 524.

      As to the issue concerning CW1's misrepresentations to his family members concerning the cause of his girlfriend's ███████████, the defendant conflates two separate factual scenarios. The subject of the government's motion to preclude – i.e., a telephone call on January 3, 2010 between CW1's brother ███ and their mother during which ███ discusses the fact that CW1 falsely told him that CW1's girlfriend had ███ ███████████ when, in fact, she ███████████—does not concern an instance when CW1 was "on the run" with the defendant. See Def. Br at 2. To the contrary, on an entirely separate occasion in 2012 when CW1 was living at a ranch owned by the defendant, CW1's wife went to Canada with their child for 15 days and was not answering CW1's messages. When CW1 received a message from an unknown number, he told the unknown person, which he suspected might be his wife, that he had been shot. See 3500-███-68 at 4. The government does not dispute the defendant's right to cross-examine CW1 on this latter incident from 2012. The former instance in 2010 involving a misstatement about the reasons for ███████████████████████, however, is a topic that is too embarrassing and inflammatory to be the subject of proper cross-examination. See Fed. R. Evid. 403 and 611. Moreover, as the government conceded in its opening motion, the

defendant can inquire about the fact that CW1 lied to his family member about his personal affairs without venturing into this highly prejudicial and unduly embarrassing issue.[1]

With respect to the issues related to CW1's ▮ purported relationship with U.S. law enforcement, the defendant argues that testimony about CW1's ▮ bribe of a supposed DEA agent is appropriate for cross-examination because CW1 was "clearly culpable of the bribe." Def. Br. at 4. In truth, the record shows that CW1 unwittingly accompanied ▮ to a meeting where ▮ passed a box that he believed contained money to a law enforcement agent. CW1 himself did not pass the box which CW1 believed to be filled with cash to the purported agent. Indeed, CW1 did not even know the amount of money allegedly in the box. See 3500-▮-25 at 5. Additionally, the only suggestion that the recipient of the bribe was associated with U.S. law enforcement came from ▮ statements to CW1, not CW1's independent knowledge. CW1 also noted that the purported agent did not speak Spanish with an American accent and that Colombian law enforcement officials were present. For a U.S. law enforcement agent to speak Colombian Spanish without a perceptible accent would be unlikely, as U.S. law enforcement agents are typically only detailed to foreign countries for a few years at a time. Similarly, it stretches belief that a U.S. law enforcement agent taking bribes from a major drug trafficking target would do so in the presence of foreign law enforcement.

Additionally, the defendant misleads the Court in asserting that CW1 and ▮ were "drug trafficking partners" who "lived together in ▮ apartment in Cancun" and "worked together in a warehouse in Medellin." Def. Br. at 4. This description greatly exaggerates the relationship between ▮. In truth, ▮ was much older than CW1, and was effectively CW1's supervisor in the warehouse, not his partner. And they only shared an apartment for a temporary period after CW1's own apartment was destroyed in a hurricane. See 3500-▮-25 at 4.

Moreover, as the government noted in its motion, CW1 <u>himself</u> paid bribes on multiple occasions. To the extent that the defendant seeks to attack CW1's credibility, those admitted bribes – not one paid by ▮ – provide more than sufficient basis to do so. The fact that the defendant is going out of his way to seek to examine CW1 about a bribe that he himself did not pay and that is so tenuously connected to U.S. law enforcement

---

[1] The fact that the defendant was eager to avoid having the government elicit another cooperating witness's extra-marital affair, see Tr. at 4109-4110, but now vigorously asserts his right to cross-examine a witness about ▮ reveals the real reason that the defendant wants to pursue this line of cross-examination: to inflame the passions of the jury and prejudice them against CW1 using one of the most hot-button topics in American political discourse.

exposes the defendant's true motive: to confuse the issues and invite the jury to make unwarranted and unsupported assumptions about U.S. law enforcement in order to cause spillover prejudice to the government's case against the defendant. As set forth in the government's motion, applicable case law and Rules 403 and 611(a) permit the Court to limit cross-examination in precisely this scenario.

With respect to CW1's ▮ alleged relationship with the CIA, CW1 has stated to the government that he had heard that ▮ had some connection to the CIA, but that he has no direct knowledge of it and never heard ▮ discuss it. The defendant's opposition brief reveals that the defense has no way to connect those rumors to an appropriate line of cross-examination, such as an attack on CW1's credibility. Specifically, the defense admits that they desire to bring up the supposed connection not because of any particular attack on CW1's credibility or bias, but because "no witness other than CW1" could testify as to the purported relationship. See Def. Ltr. at 5. But the fact that no other witness could testify to this effect has no bearing on the issue at hand. CW1's ▮ rumored but unsubstantiated connections have no bearing on the defendant's guilt or innocence, and as the defense implicitly concedes, they do not bear on CW1's own veracity, either. As with the allegations of DEA bribery, cross-examination on these unsubstantiated allegations could have no effect

3

but to confuse the issues and "suggest decision on an improper basis." Fed. R. Evid. 403 advisory committee's note. The Court should limit cross-examination on this topic.

        Respectfully submitted,

        RICHARD P. DONOGHUE
        UNITED STATES ATTORNEY
        Eastern District of New York
        271 Cadman Plaza East
        Brooklyn, New York 11201

        ARTHUR G. WYATT, CHIEF
        Narcotic and Dangerous Drug Section
        Criminal Division,
        U.S. Department of Justice

        OF COUNSEL:

        ARIANA FAJARDO ORSHAN
        UNITED STATES ATTORNEY
        Southern District of Florida

cc:    Clerk of Court (BMC) (via ECF)
        Defense Counsel (via Email)