

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

GMP: BCR
F. #2009R01065

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 11, 2019

<u>By ECF</u>

The Honorable Brian M. Cogan
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:   United States v. Joaquin Archivaldo Guzman Loera
>        Criminal Docket No. 09-466 (S-4) (BMC)

Dear Judge Cogan:

The government submits this response to the December 21, 2018 letter from the New York Times (the "Times Letter") and the January 2, 2019 letter from Vice Media LLC (the "Vice Letter"). The Times Letter and the Vice Letter generally concern the sealing and redaction of various docket entries in the above-captioned case. This response addresses the general contours of the governing law as well as the specific docket entries specified in the Times Letter.

A.   <u>Legal Standards</u>

Public access to the proceedings and documents of courts is "integral to our system of government," <u>United States v. Erie Cty. N.Y.</u>, 763 F.3d 235, 238-39 (2d Cir. 2014), and the First Amendment provides "the press and general public [with] a constitutional right of access to criminal trials." <u>Globe Newspaper Co. v. Superior Court for Norfolk Cty.</u>, 457 U.S. 596, 603 (1982). There is a "qualified right of access," in turn, to "judicial documents." <u>Lugosch v. Pyramid Co. of Onondaga</u>, 435 F.3d 110, 120 (2d Cir. 2006) (internal quotation marks and citation omitted). In this case alone, thousands of pages of judicial documents have been made available to the public and the press; the Court took measures to ensure that jury selection would be open to the press while balancing competing security and privacy concerns, <u>see</u> Dkt. No. 402; and local, national, and international press and members of the public have attended every day of the public trial so far.

As the Second Circuit has explained, however, and as this Court recognized in addressing earlier press letters on this subject, <u>see</u> Dkt. No. 404, the qualified right of access

to certain judicial documents does not provide blanket public and press access to all filings. "[D]ocuments may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Lugosch, 435 F.3d at 120 (citing In re New York Times Co., 828 F.2d 110, 116 (2d Cir. 1987)). Thus, documents may be properly sealed where necessary to protect, inter alia, the defendant's Sixth Amendment right to a fair trial, the privacy interests of prospective jurors, the identities of sources, witnesses, and law enforcement personnel, as well as information related to ongoing law enforcement investigations.  See United States v. Amodeo, 44 F.3d 141, 147 (2d Cir. 1995) (Amodeo I) (explaining that the law enforcement privilege is worthy of protection in order to "prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation").

Where cooperating witnesses are used, moreover, this district has recognized that it is not merely ongoing but future investigative efforts that justify keeping certain information relating to cooperation under seal.  See United States v. Armstrong, 185 F. Supp. 3d 332, 336-37 (E.D.N.Y. 2016) ("[T]he government retains a unique interest in keeping documents relating to cooperation under seal even after a given investigation is completed. If we limit the government interest in protecting documents to a narrow interest in the secrecy of ongoing investigations, we fail to acknowledge how profoundly the federal criminal justice system relies on cooperators.").  See also United States v. Amodeo, 71 F. 3d 1044, 1050 (2d Cir. 1995) (Amodeo II) (recognizing that where the release of information is "likely to cause persons in the particular or future cases to resist involvement where cooperation is desirable, that effect should be weighed against the presumption of access") (emphasis added).

The Second Circuit has also held that the "privacy interests of innocent third parties…should weigh heavily" in a Court's balancing of the interests in determining whether judicial documents should be sealed.  New York Times, 828 F.2d at 116.  See Amodeo II, 71 F.3d at 1049 ("[F]amily affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public.").  In light of these and related precedents, courts have held that redactions to the specific identities of persons named in court filings may be appropriate, and that disclosure of specific identities "neither furthers the need for public monitoring of federal courts, nor fosters an appearance of fairness in the criminal trial." United States v. Silver, No. 15-CR-93 (VEC), 2016 WL 1572993, *7 (S.D.N.Y. Apr. 14, 2016) (internal quotation marks omitted) (citing Lugosch, 435 F.3d at 123 and Globe Newspaper Co., 457 U.S. at 606).

Applying these principles to determine whether sealing is appropriate requires a court to determine, first, that the document in question is a "judicial document" to which a

2

presumption of access would attach.  See Newsday LLC v. Cty. of Nassau, 730 F.3d 156, 166, 167 n.15 (2d Cir. 2013).  If it is a judicial document, the next step is to determine whether the presumption of access is the common law right of access or the First Amendment's qualified "right to attend judicial proceedings and to access certain judicial documents."  Lugosch, 435 F.3d at 120.  The common law right of access applies if the documents are judicial documents, and the First Amendment right of access applies if either (1) the documents "have historically been open to the press and general public" and that "public access plays a significant positive role in the functioning of the particular process in question," or (2) the documents are "derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings."  Id.

If the documents at issue are subject to the First Amendment's qualified right of access, a court must determine by "specific, on-the-record findings [whether] higher values necessitate a narrowly tailored sealing."  Lugosch, 435 F.3d at 326.  If the common law presumption of access applies, a court must "determine the weight of the presumption and measure it against competing considerations."  Erie Cty., 763 F.3d at 241.  The Second Circuit has also held that partial redaction may be "a viable remedy" in weighing the appropriateness of sealing, while acknowledging that some documents present an "all or nothing matter."  Amodeo II, 71 F.3d at 1053.

B.  Discussion

In this case, and consistent with the authorities cited above, the government has generally sought to seal or redact information that would identify or otherwise risk the safety of its cooperating witnesses, law enforcement witnesses, or cooperating sources, or that would reveal sensitive law enforcement techniques, investigative procedures, or ongoing investigations.[1]  The government's sealing and redaction practices to date have therefore been appropriate and consistent with governing law.

The sealed documents identified with specificity in the Times Letter generally relate either to cooperating witnesses or law enforcement witnesses.  (The Vice Letter does not identify any documents with specificity.)  With respect to cooperating witnesses, most of the government's requests to seal documents and information before trial (whether through full

---

[1] The government assumes arguendo that the filings identified by docket number in the Times Letter are "judicial documents" and that both the First Amendment qualified right of access and the common law presumption of access apply to them.  Should other filings not specifically identified herein become the subject of later motion practice, however, the government reserves the right to argue that those filings are not "judicial documents" within the meaning of applicable precedent.

sealing or redaction) were intended to limit the disclosure of identifying information that would have revealed cooperating witnesses' identities prior to their testimony.  Pre-trial sealing was therefore appropriate in order to ensure witness safety.  See United States v. Armstrong, 185 F. Supp. 3d 332, 336 (E.D.N.Y. 2016) (Gershon, J.) ("The safety of a cooperating defendant can constitute a compelling interest that may be weighed against a First Amendment presumption of access.").  By the end of trial, however, with the cooperating witnesses having testified – and therefore with their identities having been publicly revealed – many of the redactions to identifying information in the government's pretrial motions will be able to be lifted.

Nonetheless, in certain instances, the government submits that certain information under seal in the government's filings related to cooperating witnesses in this case could, if revealed, nonetheless threaten the safety of cooperating witnesses or their families, jeopardize ongoing investigations, or otherwise reveal information legally protected from disclosure, even if the identities of the relevant cooperating witnesses have been revealed in open court.  This would be the case, for instance, for at least the following categories of information:

- sealed information that would reveal information not disclosed about trial concerning cooperating witnesses' interactions with fugitives still at large, such that the information sealed is relevant to ongoing investigations related to fugitive defendants, see Armstrong, 185 F. Supp. 3d at 336 ("Unquestionably, there is a government interest in the secrecy of ongoing investigations.");

- sealed information that would reveal operational information or details related to government witness security programs, or would identify trial witnesses as participants in witness security programs, see id., see also Amodeo I, 44 F.3d at 147 (recognizing that law enforcement privilege to "prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, [and] to protect witness and law enforcement personnel" is an interest worthy of protection when weighing the right of access to judicial documents);

- sealed information that would reveal witnesses' attempts to ensure their personal safety by undertaking efforts to conceal from others that they were testifying at this trial, see id.;

- sealed information that would reveal sensitive personal medical, health-related, or other sensitive collateral matters in a manner that connects the

4

conditions to the witness, see United States v. Martoma, No. 12-CR-973 (PGG), 2014 WL 164181, *6 (S.D.N.Y. Jan. 9, 2014) (holding that courts "grant the greatest protection" to information involving "medical, health-related, family, or personal financial matter[s]") (citing Amodeo II);

- sealed information already subject to the Court's rulings finding a sufficient rationale for sealing.

Thus, the government submits that the appropriate balance to be struck with respect to sealed or redacted pretrial motions relating to cooperating witnesses is that at the conclusion of trial, unsealed versions of most pretrial motions describing cooperating witnesses can be publicly docketed, but that information that poses a threat to cooperating witnesses' families or associates, or that reveals ongoing investigations, be redacted. This proposal would result in the vast majority of the contents of the government's pretrial filings relating to cooperating witnesses being unsealed. With respect to the specific filings identified in the Times Letter, the government anticipates that this proposal would result in the public filing of redacted or fully unsealed versions of docket entries 350, 375, 396, 413, 421, 460, 494, 504, and 506.[2] Docket entry 451 would remain publicly available in its currently-redacted form, which reflects the Court's previous findings as to the need for partial sealing. See Dkt. No. 465. Although not listed in the Times Letter because they were filed after the Times Letter, docket entries 522 and 524 would remain sealed, with their redacted versions available at docket entries 523 and 525, respectively, pursuant to the Court's rulings on those sealing requests.

With respect to law enforcement witnesses, the motion identified in the Times Letter that relates to the government's request to preclude cross-examination of certain lines of inquiry of government officers and agents is docket entry 354. As an initial matter, the government notes that the Court granted the government's motion, precluding the introduction of evidence relating to the issues of judgment and discipline identified in the government's motion, except as to one officer. See Dkt. No. 403 at 7-8. Like a number of the officers and agents identified in the government's motion, that officer will not be called to testify at trial.

The Second Circuit has recognized the "government's legitimate right to protect the confidentiality of its agents' records." United States v. Preldakaj, 456 Fed. App'x 56, 59 (2d Cir. 2012). And, as the Southern District of New York has recognized, citing Supreme Court and Second Circuit precedent, disclosure of the specific identities of witnesses "neither

---

[2] On a preliminary review, the government does not believe that the necessary redactions would be extensive.

furthers 'the need for the public monitoring of federal courts,' <u>Lugosch</u>, 435 F.3d at 123, nor 'fosters an appearance of fairness [in the criminal trial],' <u>Globe Newspaper Co.</u>, 457 U.S. at 606, which are the rationales underlying the right of public access to judicial documents and proceedings." <u>Silver</u>, 2016 WL 1572993, at *7.

The government therefore proposes to file a redacted version of docket entry 354 at the conclusion of trial, redacting the names of law enforcement witnesses as well as identifying information that could lead to the discovery of their identities. On this proposal, the press and public would be given access to the facts on which the Court based its ruling, as well as the government's legal arguments, without harming the privacy interests of the officers and agents in question. <u>See</u> <u>Silver</u>, 2016 WL 1572993, at *7 ("The privacy interests of the Jane Does do warrant redactions to protect their identities."); <u>see also</u> Dkt. No. 453 ("[T]his information is both identifying and inflammatory, and the witnesses should not be judged in the court of public opinion on information that this Court has determined is too prejudicial or unrelated to defendant's guilt or innocence to be admitted at trial.").

C.   <u>Conclusion</u>

For the reasons set forth above, the redactions and sealing of the government's filings in this trial have been appropriate on the facts of this case and pursuant to governing law. Now that the end of trial is approaching, however, and the identities of witnesses have largely been revealed, certain of the government's sealing and redaction requests are no longer necessary. Should the Court agree with the general framework set forth herein, the government

will provide proposed redactions of the documents specifically identified in the Times Letter for the Court's review.

Respectfully submitted,

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

ARTHUR G. WYATT, CHIEF
Narcotic and Dangerous Drug Section
Criminal Division,
U.S. Department of Justice

OF COUNSEL:

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY
Southern District of Florida

cc:     Clerk of Court (BMC) (via ECF)
        Defense Counsel (via Email)