

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

GMP:ASF/BCR
F. #2009R01065

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 15, 2019

**TO BE FILED UNDER SEAL**

By ECF

The Honorable Brian M. Cogan
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   United States v. Joaquin Archivaldo Guzman Loera
      Criminal Docket No. 09-466 (S-4) (BMC)

Dear Judge Cogan:

The government respectfully submits this letter in connection with the trial in the above-referenced matter. The government moves in limine to preclude cross-examination of Alexander Cifuentes-Villa, the cooperating witness currently on the stand, in regard to a line of inquiry that is marginally probative, irrelevant to Cifuentes-Villa's character for truthfulness, and evidently pursued by defense counsel only in order to generate press coverage and jury interest about persons not on trial and the irrelevant motivations of foreign governments.

I.   Background

In his opening statement, defense counsel promised the jury that the trial would reveal salacious detail about bribery of high-ranking persons, including multiple presidents of Mexico:

> How did [Mayo Zambada] get away being the biggest narco trafficker on the planet whose name you never even heard of? I'm going to tell you why: he pays for it. He bribes the entire government of Mexico, including up to the very top: the current president of Mexico. And for good measure, the previous one as well.

> I'm going to say that again with some emphasis: the current and former presidents of Mexico received hundreds of millions of dollars in bribes from Mayo, according to the Government's witnesses.

Tr. 585:1-10 (Nov. 13, 2018). Counsel for the defendant did not, at the time, indicate which witnesses they expected to offer the testimony that Mayo Zambada had supposedly paid hundreds of millions of dollars in bribes to "current and former" Mexican presidents.

The defense's opening promptly became the subject of motions practice, as the government moved that evening to strike the defendant's opening statement then in progress. See Dkt. No. 444. In argument on that motion the next day, defense counsel proffered that the relevance of that line of argument was that "Mayo Zambada framed Guzman, made all of his efforts to keep a target on Guzman while he remained free . . . [and] he did this by bribing the Mexican government to help him." Tr. 607:2-6 (Nov. 14, 2018). The Court denied the government's motion to strike, but noted that the argument was "misleading to the jury," because it "distracts [] from the guilt or innocence of the defendant, which is what they have to determine." Tr. 610:16-19.

Relatedly, a few days later the government moved to preclude the defense from inquiring of cooperating witness Jesus Reynaldo Zambada Garcia as to a bribe allegedly paid to the current president of Mexico. See Dkt. No. 451. As the government explained in its motion, the defense's planned cross-examination was misleading, because the bribe in question had been paid to an individual associated with the failed presidential campaign, over a decade ago, of the current president of Mexico. See id. at 2. The bribe was not paid, as the defense had promised, to the current president.

In argument on that motion, the Court noted that defense counsel had mentioned the bribery of Mexican presidents by Mayo Zambada in the opening statement, and defense counsel responded that the current president of Mexico had not been the subject of his opening: "I did not say that that putative president[ial] candidate received the money. I said the last two presidents of Mexico, which is Calderon and Pena Nieto." Tr. 1022:4-6 (Nov. 20, 2018). Critically, defense counsel revealed for the first time the identity of the government witness whom he expected would offer the testimony, saying, "that's what Alex Cifuentes said in the 3500 [material]." Id. at 1022:6-7. Thus, defense counsel confirmed that only Alexander Cifuentes was expected to offer testimony to support the argument made in the opening statement that Mayo Zambada had bribed the former president of Mexico.

In the courtroom on January 15, 2019, cross examining Alexander Cifuentes-Villa, defense counsel elicited a direct contradiction of what he had promised the jury in his opening statement, also contradicting his assurance to the Court that what "Alex Cifuentes said in the 3500" supported his opening statement about Mayo Zambada's payment of bribes to

2

Mexican presidents. Specifically, defense counsel elicited from Cifuentes-Villa that <u>the defendant</u> had paid a $100 million bribe to the former president of Mexico. This testimony matched the 3500 document that defense counsel showed to the witness to refresh recollection – a document that nowhere indicates or even suggests that <u>Zambada</u>, rather than the defendant, had paid the bribe in question, as defense counsel promised the jury in opening statements. <u>See</u> 3500-HACV-32 ¶ 19. The government did not elicit any testimony about this particular alleged bribery by the defendant on direct examination of Cifuentes-Villa.

At the end of the afternoon trial session on January 15, 2019, defense counsel began to question Cifuentes-Villa about a former high-ranking Colombian police officer named Oscar Naranjo, who served as Colombia's Vice President until August of 2018. According to a DEA-6 of an interview conducted of Cifuentes-Villa in late February 2016, Naranjo provided the Cifuentes family with protection, and obtained payment by Cifuentes-Villa's now-deceased brother, Francisco. <u>See</u> 3500-HACV-28 ¶ 42. The interview notes also report that Cifuentes-Villa stated that Francisco maintained a hard drive containing scans of all checks given to Naranjo, stated that Naranjo once threatened Francisco's wife with turning over the entire Cifuentes-Villa family over to the authorities, and stated that Naranjo asked the defendant in 2008 for a $2.8 million dollar payment to allow the defendant to continue working with the Medellin Cartel.

There is no indication in the notes, nor is the government aware, of the ultimate source of this last allegation. However, the allegation does not relate to the Cifuentes-Villa family, which was not part of the Medellin Cartel. According to a DEA-6 of an interview conducted of Cifuentes-Villa on June 13, 2018, Naranjo was also bribed at some indeterminate time by the North Valley Cartel. The North Valley Cartel, too, is another drug trafficking organization separate and apart from the Cifuentes family. The government elicited none of this information from Cifuentes-Villa during his direct examination.

II.   <u>Argument</u>

Further cross-examination of Cifuentes-Villa regarding the alleged bribe to the former Mexican president, or cross-examination as to the defendant's alleged bribe to Naranjo, should be precluded under Federal Rules of Evidence 402 and 403, which allow exclusion of otherwise relevant evidence if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues . . . , or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." <u>United States v. Figueroa</u>, 548 F.3d 222, 229 (2d Cir. 2008).

The government does not dispute the defendant's right to cross-examine Cifuentes-Villa about Cifuentes-Villa's own prior bad acts, including those involving bribery and public corruption. But the information contained in the reports of Cifuentes-Villa's prior

3

interviews and the defense's apparent intended lines of inquiry are not proper impeachment material. First, the defendant's alleged bribes of the highest levels of the Mexican and Colombian governments did not involve Cifuentes-Villa. They cannot, therefore, bear on his credibility. Even assuming for the sake of argument that Cifuentes-Villa had personally bribed the former president of Mexico or the former vice president of Colombia, the defense has already elicited that Cifuentes-Villa bribed a number of individuals during the course of his drug trafficking career, so any additional evidence of his bribes would be cumulative.[1]

Second, as for the allegations contained in Cifuentes-Villa's Section 3500 material that Naranjo asked the defendant for bribes, there is no valid ground for eliciting this information on cross-examination. Cifuentes-Villa's statements on this score have not changed over time, nor has Cifuentes-Villa testified about these allegations on direct examination, so there is no prior inconsistency to elicit. And the alleged bribes do not relate to the witness, so questioning the witness would not be probative of any bias.

Indeed, it is now apparent that the only plausible reason for defense counsel to elicit evidence of bribery of presidents and vice presidents of foreign countries is to create a public sideshow in an attempt to damage United States foreign relations and publicly damage the Mexican president who extradited him, in retaliation for his current prosecution. Such motivations are the only explanation for the fact that defense counsel elicited testimony that directly contradicts his own opening statement, in which he claimed that Mayo Zambada, not the defendant, paid the bribes in question to Mexican presidents. These bribery allegations are also irrelevant to the defendant's guilt or innocence of the crimes charged, and therefore do not fairly bear on the issues before the jury.

III.   Conclusion

For the foregoing reasons, the Court should preclude cross-examination of Cifuentes-Villa on the topics described above and preclude the defense from arguing these matters in closing argument.

---

[1] To the extent that the testimony about alleged inconsistencies between Cifuentes-Villa's various proffer sessions on this subject are conceivably relevant, the government notes that the Court on January 15 noted that defense counsel was "going far beyond" the alleged inconsistency and that defense counsel asserted he had arrived at his last question on the subject. There is no basis to revisit the testimony on further cross-examination.

IV.     Sealing is Appropriate

Sealing of this motion is warranted in order to avoid the release of misleading information calculated to damage the diplomatic relationships between the United States and foreign governments.  Among other things, harm to the government's relationships with foreign governments could negatively impact foreign governments' willingness to extradite defendants properly charged in United States courts, thereby "impairing law enforcement or judicial efficiency."  United States v. Amodeo, 71 F.3d 1044, 1049 (2d Cir. 1995).  And because the information that the government seeks to preclude is not relevant to the defendant's guilt or innocence, it is not material "relevant to the performance of the judicial function" nor does it play a "role . . . in the exercise of Article III judicial power."  Lugosch v. Pyramid Co., 435 F.3d 110, 119 (2d Cir. 2006).  As the facts set forth herein provide ample support for the "specific, on the record findings" necessary to support sealing, Lugosch, 435 F.3d at 120, the government respectfully requests that the Court permit the government to file this motion to limit cross-examination under seal.  The defense should also file any response under seal until the Court can rule on the government's sealing request.  Should any order of the Court regarding this application describe the sealed information in question with particularity, rather than in general, the government likewise requests that those portions of the order be filed under seal.

        Respectfully submitted,

        RICHARD P. DONOGHUE
        UNITED STATES ATTORNEY
        Eastern District of New York
        271 Cadman Plaza East
        Brooklyn, New York 11201

        ARTHUR G. WYATT, CHIEF
        Narcotic and Dangerous Drug Section
        Criminal Division,
        U.S. Department of Justice

        OF COUNSEL:

        ARIANA FAJARDO ORSHAN
        UNITED STATES ATTORNEY
        Southern District of Florida

cc:     Clerk of Court (BMC) (via ECF)
      Defense Counsel (via Email)