

*U.S. Department of Justice*

*United States Attorney*
*Eastern District of New York*

GMP:ASF
F. #2009R01065

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 23, 2019

By ECF

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Joaquin Archivaldo Guzman Loera
      Criminal Docket No. 09-466 (BMC) (S-4)

Dear Judge Cogan:

  The government respectfully submits this letter and seeks to preclude extrinsic evidence of government witness Jorge Cifuentes-Villa's prior statements to law enforcement agents. All of these statements that the defense seeks to elicit are purely collateral to Cifuentes-Villa's testimony, and are, therefore, inadmissible under Rule 608(b) of the Federal Rules of Evidence.[1]

  Factual Summary

  On December 11, 2018, the government called a cooperating witness named Jorge Cifuentes-Villa to testify about his criminal interactions with the defendant in the above-styled case. During Cifuentes-Villa's direct examination, which ended in the morning session on December 13, 2018, the government elicited a number of facts bearing on Cifuentes-Villa's credibility, including the fact that he had set up a climate-change foundation in order to engage in self-dealing, Tr. at 2996 (Dec. 12, 2018), that he had attempted to lure an individual to a meeting so he could be kidnapped over a drug debt, Tr. at 2997 (Dec. 12, 2018), that he used

---

[1] Although this motion concerns law enforcement agents who the defendant has indicated he may call at trial in relation to the testimony of Jorge Cifuentes-Villa, the government reserves the right to raise similar objections should the defense seek to call additional law enforcement witnesses in an attempt to impeach other government witnesses based on collateral matters.

false identification documents and then lied about the use of such documents, Tr. at 2998 (Dec. 12, 2018), and that he used his left hand instead of his right to provide a writing sample to authorities in a successful effort to avoid prosecution, Tr. at 3021 (Dec. 13, 2018).

The cross-examination of Cifuentes-Villa began in the morning of December 13, 2018, and ended in the morning of December 18, 2018. Throughout the cross-examination, Cifuentes-Villa was confronted by the defense with statements contained in DEA-6s and other reports of Cifuentes-Villa's prior debriefs. While Cifuentes-Villa agreed that he had actually made some of the statements attributed to him in the reports, Cifuentes-Villa denied making a number of other statements contained in the reports. For example, Cifuentes-Villa: 1) denied that his father processed cocaine when Cifuentes-Villa was younger (Tr. at 3065-66, Dec. 13, 2018); 2) claimed that he had told agents that his father was involved in dealing drugs (Tr. at 3067, Dec. 13, 2018); 3) denied telling the Government that his nephew, Jaime Alberto Roll was a drunk and lived off of women (Tr. at 3076, Dec. 13, 2018); 4) denied obtaining a fake university diploma from Texas (Tr. at 3100-01, Dec. 13, 2018); 5) acknowledged attempting to kill an individual in prison when he was 18 years old but denied receiving favors in exchange for doing so (Tr. at 3010, Dec. 13, 2018); 6) denied helping his older brother in 1986 by driving trucks to Ecuador for his brother's drug trafficking organization (Tr. at 3117, Dec. 13, 2018); 7) denied telling an agent that he had ever been an electrical engineering student (Tr. at 3121, Dec. 13, 2018); 8) denied telling the government that he and his partner withdrew $2 million per month for over five years (Tr. at 3123, Dec. 13, 2018); 9) denied allowing his former boss, Don Efra, to blame and subsequently order a retaliatory murder of another individual (Tr. at 3185-86, Dec. 17, 2018); 10) admitted killing an individual but denied killing him for stealing drugs from Cifuentes-Villa (Tr. at 3192-93, Dec. 17, 2018); 11) admitted being responsible for the death of a second individual, but denied that that individual was arrested and sent to Colombia before being killed (Tr. at 3195, Dec. 17, 2018); 12) denied that an individual turned over property to Cifuentes-Villa to make up for some cocaine that the individual had stolen from him (Tr. 3198-99, Dec. 17, 2018); 13) admitted that in 2010, a coronel in the Colombian National Police provided security for Cifuentes-Villa but denied that the coronel used an official armored car for that purpose (Tr. 3200, Dec. 17, 2018); 14) denied using a false name at the time of his arrest in Colombia (Tr. 3216-17, Dec. 17, 2018); 15) denied telling the government that he attempted to launder drug proceeds through the export of emeralds from a mine (Tr. 3238, Dec. 17, 2018); and 16) denied telling the government that a corrupt Colombian official helped his family and their associates intercept telephones, conduct surveillance, and give dossiers on individuals (Tr. 3270, Dec. 17, 2018).

On January 21, 2019, counsel for the defendant proposed stipulations to the government to the effect that the law enforcement witnesses who drafted the investigative reports in which Cifuentes-Villa made these statements would, if called to testify, testify that

Cifuentes-Villa actually made the statements in question. The government has not assented to these proposed stipulations, and defense counsel has indicated that they therefore intend to call some of the law enforcement officers involved in drafting the reports in the defendant's case-in-chief.

Applicable Rules of Evidence and Case Law

Federal Rule of Evidence 608(b) provides, in relevant part:

> (b) Specific Instances of Conduct. Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness.

Fed.R.Evid. 608(b). The Second Circuit has frequently and consistently recognized that this rule ensures that "cross-examination is generally the proper mechanism by which to test an adverse witness's credibility, and the use of extrinsic evidence to further pursue questions posed on cross-examination is generally not permitted." United States v. Shoreline Motors, 413 Fed. Appx. 322, 329 (2d Cir.2011); citing United States v. Masino, 275 F.2d 129, 133 (2d Cir.1960) ("When a witness is cross-examined for the purpose of destroying his credibility by proof of specific acts of misconduct not the subject of a conviction, the examiner must be content with the answer. The examiner may not, over objection, produce independent proof to show the falsity of such an answer.").

The Second Circuit has recognized some limited exceptions to the rule that extrinsic evidence may not be introduced to impeach a witness. One of these exceptions is "impeachment by contradiction." This exception provides "that when a witness puts certain facts at issue in his testimony, the government may seek to rebut those facts, including by resorting to extrinsic evidence if necessary." United States v. Ramirez, 609 F.2d 495, 499 (2d Cir.2010); see also United States v. Cuadrado, 413 F.2d 633, 635 (2d Cir. 1969) ("[w]here a defendant in his direct testimony falsely states a specific fact, 'the prosecution will not be prevented from proving, either through cross-examination or by calling its own witnesses, that he lied as to that fact.'")(internal citations omitted).

However, logic dictates that the exception does not apply if the opposing party elicits the alleged contradiction solely to attempt to impeach by contradiction. If the opposing party were able to elicit a contradiction on cross-examination for the purpose of allowing it to fit under the "impeachment by contradiction" exception to Fed.R.Evid. 608(b), then the exception would swallow the rule that extrinsic evidence is not allowed to attack a witness's

3

character for truthfulness. A Second Circuit case, United States v. Garcia, is instructive on this point. At issue in Garcia was whether the government could use the "impeachment by contradiction" exception to impeach a defendant with an arrest record showing that the defendant had previously been arrested for drug possession. United States v. Garcia, 900 F.2d 571, 575 (2d Cir. 1990). After the defendant testified on direct examination that he had never been accused of "selling drugs," the government asked him on cross examination if he had ever been "involved in" or possessed drugs; after the defendant replied in the negative, the prosecution attempted to refresh his recollection with the arrest report. Id. After the defendant continued to deny involvement with drugs, the government "properly dropped this line of inquiry without attempting to offer the arrest record into evidence." Id. However, the defendant then delved into the issue of the prior arrest on redirect testimony and left the false impression that the arrest did not relate to drugs. At this point, the Second Circuit noted, the arrest record was properly introduced – "not to impeach [the defendant's] general credibility through extrinsic evidence, see Fed. R. Evid. 608(b), but to contradict a false statement made by [the defendant] in his redirect testimony." Id.

As Garcia makes abundantly clear, the "impeachment by contradiction" exception cannot be simply invoked because defense counsel believes that a government witness has falsely answered a question on cross-examination; the witness must affirmatively testify falsely in his direct or re-direct examination in order to invoke the exception. If a witness denies an allegation in cross-examination, and does not "open the door" on either direct examination or redirect examination, then Rule 608(b) applies, and the questioner is stuck with the witness's answer. See Corpus Juris Secundum, Witnesses § 848 ("In general, a witness may be impeached by contradiction only if the statements in issue have been volunteered on direct examination. A party may not cross-examine a witness upon collateral matters for the purpose of eliciting something to be contradicted. If a question is put to a witness on cross-examination which is collateral or irrelevant to the issue, his or her answer cannot be contradicted to impeach the witness by the party who asked him or her the question."); see also United States v. Lambert, 463 F.2d 552, 557 (7th Cir.1972) ("a witness may not be impeached by contradictions as to collateral or irrelevant matters elicited on cross-examination.")

Another set of exceptions to the general rule that extrinsic evidence of "bad acts" cannot be introduced under Rule 608(b) allows for the introduction of extrinsic evidence to prove such things as prior inconsistent statement, bias or mental capacity. See Fed.R.Evid. 608 Advisory Committee Note 2003 Amendment ("By limiting the application of the Rule to proof of a witness' character for truthfulness, the amendment leaves the admissibility of extrinsic evidence offered for other grounds of impeachment (such as contradiction, prior inconsistent statement, bias and mental capacity) to Rule 402 and 403."). In this circuit, extrinsic evidence can be introduced, for example, to demonstrate that a witness's fabrication of documents

4

demonstrated motive to cover up his own thefts, see United States v. Blum, 62 F.3d 63, 68 (2d Cir. 1995), or to demonstrate an animus against a defendant such that the witness would attempt to manufacture evidence in order to ensure the defendant's conviction, see United States v. Haggett, 438 F.2d 396, 399 (2d Cir. 1971). Absent some reason such as bias, motive, or mental capacity, however, Rule 608(b) prohibits the introduction of extrinsic evidence.

As for prior inconsistent statements, it is clear in this Circuit that "a witness may be impeached by extrinsic proof of a prior inconsistent statement only as to matters which are not collateral." United States v. Rivera, 273 Fed.Appx. 55, 58 (2d Cir. 2008); quoting United States v. Blackwood, 456 F.2d 526, 531 (2d Cir. 1972). At issue in Rivera was whether the court properly excluded extrinsic proof that one of the Government's witnesses allegedly committed a murder he did not disclose to the Government. The Rivera panel reasoned that because the "alleged murder was not connected to the murders at issue in the trial and was clearly a collateral matter," extrinsic evidence of the murder was plainly collateral and therefore correctly excluded. Rivera, 237 Fed.Appx. at 58.

More recently, a district court in the Southern District of New York cited Rivera in denying the defendant's motion to introduce a cooperating witness's jail call as extrinsic evidence to prove a "prior inconsistent statement." The defendant in United States v. Atilla, who had been charged with violations of foreign sanctions, cross-examined the government's cooperating witness about a jail call that the witness had with a family member about what the witness had needed to do in order to cooperate and get out of jail. United States v. Atilla, Case No. 15 Cr. 867 (RMB), slip op, 2017 WL 6987997 (S.D.N.Y. Dec. 21, 2017) at *1. After the defendant cross-examined the witness about the substance of the call, and after the witness denied the defendant's characterization of the call, the defendant sought to introduce the call as extrinsic evidence of a prior inconsistent statement. Id. Citing Rivera, the district court found that the "phone call in question is clearly collateral to the violation of U.S. sanctions against Iran issue presented here" and properly denied the defendant's motion to admit the call as extrinsic evidence. Id. at *2

Analysis

Fed. R. Evid. 608(b) flatly prohibits the admission of extrinsic evidence of the collateral matters covered by the sixteen (16) statements made by Cifuentes-Villa on cross-examination that defense counsel have indicated they intend to call law enforcement witnesses to introduce.

First, Rule 608(b), by its terms, forbids the introduction of extrinsic evidence "to prove specific instances of a witness's conduct in order to attack or support the witness's

character for truthfulness." Fed. R. Evid. 608(b). The case law developed in this Circuit and elsewhere provides that while the opposing party may inquire of the witness regarding specific instances of his bad conduct, that party has to accept the witness's answer and may not introduce extrinsic evidence. While this Circuit does recognize the "impeachment by contradiction" exception to Fed. R. Evid. 608(b), in this case, because the defense elicited the alleged contradictions during cross-examination, there can be no "impeachment by contradiction." See United States v. Garcia, 900 F.2d 571, 575 (2d Cir. 1990); United States v. Shoreline Motors, 413 Fed.Appx. 322, 329 (2d Cir. 2011); Corpus Juris Secundum, Witnesses § 848 ("A party may not cross-examine a witness upon collateral matters for the purpose of eliciting something to be contradicted.") Put another way, there can be no "impeachment by contradiction" of information solely elicited on cross-examination. Were the defendant in this case allowed to elicit information about the purported contradictions between what Cifuentes-Villa told the agents and then be allowed to introduce, as extrinsic evidence, testimony from the agents about those contradictions, then it is difficult to see how Rule 608(b) could ever preclude the admission of extrinsic evidence.

Nor can defendant conjure another reason why impeachment through extrinsic evidence, such as for bias or for motive, is tenable in this case. Unlike in Haggett, the alleged contradictions here would not bolster any argument that Cifuentes-Villa harbors some bias against the defendant. Unlike in Blum, the alleged conduct here does not demonstrate a motive either to minimize Cifuentes-Villa's conduct or to shift blame for that conduct to another. In this particular case, the defendant cannot elide the dictates of Fed. R. Evid. 608(b) by asserting that the allegations go to motive rather than veracity and credibility. The only conceivable reason that the defendant would want to introduce the extrinsic testimony relating to the alleged inconsistencies between his trial testimony and the interview reports is to attempt to undermine Cifuentes-Villa's character for truthfulness. This he cannot legally do.

Nor, for the reasons set forth in United States v. Rivera, 273 Fed.Appx. 55, 58 (2d Cir. 2008) and United States v. Atilla, Case No. 15 Cr. 867 (RMB), slip op, 2017 WL 6987997 (S.D.N.Y. Dec. 21, 2017), can the defendant credibly assert that the extrinsic evidence is admissible as evidence of a "prior inconsistent statement." The statements at issue here are the very kind of collateral matter that the courts in both Rivera and Atilla prevented from being introduced under the guise of "prior inconsistent statements." Just as the jail calls of the witness and his family member in Atilla relating to the witness's motive to testify and get out of prison by cooperating were collateral to the charges of foreign sanctions violations faced by the defendant in that case, so, too, the allegations that Cifuentes-Villa's father worked in the drug business decades earlier, or that Cifuentes-Villa's nephew was an alcoholic and lived off of women are entirely collateral to the CCE, drug trafficking and weapons charges faced by the Defendant in this case.

6

Conclusion

In light of the foregoing, the government respectfully requests that the Court grant its motion to preclude the defendant from calling the authors of reports of debriefs of Jorge Cifuentes-Villa containing statements relating to collateral matters.

Respectfully submitted,

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

ARTHUR G. WYATT, CHIEF
Narcotic and Dangerous Drug Section
Criminal Division,
U.S. Department of Justice

OF COUNSEL:

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY
Southern District of Florida