

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

GMP:BCR
F. #2009R01065

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 27, 2019

<u>By ECF</u>

The Honorable Brian M. Cogan
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: <u>United States v. Joaquin Archivaldo Guzman Loera</u>
       <u>Criminal Docket No. 09-466 (S-4) (BMC)</u>

Dear Judge Cogan:

    The government respectfully submits this reply in response to the defendant's opposition (Dkt. No. 561) ("Def. Opp.") to the government's motion to preclude introduction of extrinsic evidence on collateral matters (Dkt. No. 559) ("Gov. Mot."). The defendant's opposition withdraws its proposed stipulation as to Jorge Cifuentes-Villa, but nonetheless seeks to introduce testimony related to two alleged inconsistencies involving Jorge Cifuentes-Villa, and for the first time also seeks to introduce testimony related to three alleged inconsistencies involving Alexander Cifuentes-Villa.

    The defendant's opposition identifies five areas in which the defense proposes to introduce extrinsic evidence and testimony, through a law enforcement officer, in order to attack the Cifuentes-Villas' credibility. Specifically, the defendant intends to call a law enforcement witness who drafted certain reports of Jorge and Alexander Cifuentes-Villa's proffer sessions in order to elicit alleged inconsistencies between trial testimony and the proffer session reports. All five topics are collateral matters, several of which do not even establish real inconsistencies, and extrinsic evidence and testimony to rebut the Cifuentes-Villas' testimony is therefore inadmissible. <u>See</u> Gov. Mot. at 4.

    First, the defendant seeks to introduce evidence and testimony related to Jorge Cifuentes-Villa's testimony about the fact that a law enforcement officer had showed him evidence relating to his own case. On direct examination, Cifuentes-Villa testified that a <u>Colombian</u> naval intelligence officer provided him with information on a USB drive, including evidence and recordings. Tr. 2969-70. On cross examination, Cifuentes-Villa testified that he did not recall ever telling the government that a <u>United States</u> naval intelligence officer had

provided him with the USB drive. Tr. 3235. Particularly in light of Cifuentes-Villa's testimony about his and his family's extensive bribery of Colombian officials, the fact that a report of one of his proffer sessions indicates that the officer was American rather than Colombian seems like an obvious transcription error. More to the point, it is collateral: it does not bear on the issues of consequence in this case, and was only raised in direct examination in order to elicit Cifuentes-Villa's admitted bribery, among other "bad acts," in anticipation of the defendant's attack on his credibility. Counsel for the defendant cross-examined Cifuentes-Villa about this precise point, and the government did not revisit it on redirect. The defendant may not "impeach by contradiction" merely because defense counsel raised this collateral point on cross-examination. See Gov. Mot. at 4.

The defendant's related argument that there is a supposed inconsistency arising out of Jorge Cifuentes-Villa's trial testimony that he destroyed all of the evidence that he could that was in his possession or control, but that he wasn't successful in destroying all of it, see Tr. 2970-71, simply misreads the testimony. Cifuentes-Villa testified that following the meeting with the Colombian naval intelligence officer, who he attempted to bribe, he tried to destroy evidence on his computer and in his control relating to his crimes. The defendant's error is in believing that the information that Cifuentes-Villa instructed his employees to destroy is coextensive with the information he was presented by the Colombian intelligence officer. He said no such thing. See Tr. 2971:5-7. His testimony was that, following the realization that the Colombian government had some information about his crimes, he gave an order to "destroy all of the accounting records" maintained by his workers, see id., but that he was evidently "not too efficient" at it, because he was confronted at trial in this case with the kinds of records he wanted to destroy. See id. ("This [evidence] is part of the information [I ordered destroyed]."). He did not testify that the accounting records were part of the information that he viewed during the meeting with the corrupt official, only that the accounting records were what he had wanted destroyed. Even if the defendant's attempted impeachment on this point were proper, there is no contradiction to be elicited.[1]

Second, the defense seeks to elicit testimony related to Jorge Cifuentes-Villa's improper phone call, while in jail, to his brother, Alexander Cifuentes-Villa. See Def. Br. at 4. To be clear on this point, the testimony and evidence currently before the jury are that Jorge Cifuentes-Villa disclosed the call to the government shortly after it was made. See Tr. 3384-85. Cifuentes-Villa also testified that he has never been played a recording of that call, but

---

[1] Nor would such attempted impeachment "clearly" reveal Jorge Cifuentes-Villa's "bias and motive," as the defendant insists. See Def. Br. at 3. Assuming arguendo that the defense could elicit some inconsistency on this front, it would not reveal that Cifuentes-Villa had a bias against the defendant or an improper motive for testifying against him.

that he does not know whether or not one exists. See Tr. 3390:7-11. Although it has not been elicited in this case other than by implication, the government is not in possession of a recording of that call, and although the lead prosecutor on Cifuentes-Villa's prosecution did not know about the call until after a recording by the jail would have been erased, the government is unable to identify the first point at which an agent or representative of the government was first informed of the call by Cifuentes-Villa. There is therefore no inconsistency to be revealed in calling a government agent who proffered Jorge Cifuentes-Villa as a defense witness, because the proffer notes and reports do not contradict Cifuentes-Villa: they simply do not speak to what, if anything, Cifuentes-Villa revealed about the call. Here too, the matter is collateral. Even if there were extrinsic proof of a statement inconsistent with Cifuentes-Villa's trial testimony, Cifuentes-Villa admitted on direct and cross examination to making the improper phone call to his brother. Precisely when he revealed it to the government does not bear on the issues of consequence in this action, and is not probative of Cifuentes-Villa's bias or credibility. See also United States v. Atilla, Case No. 15-cr-867, 2017 WL 6987997 (S.D.N.Y. Dec. 21, 2017) (RMB) (holding that jail call reflecting collateral matter could not be introduced as an inconsistent statement). Cifuentes-Villa would also have no motive to lie about when he revealed the call to the government, because he was not aware of the jail's call retention policy. See Tr. 3368:19-24. The defense seeks to elicit this extrinsic evidence for one reason, and one reason alone: to impugn Cifuentes-Villa's credibility. This they cannot do. See Gov. Mot. at 4 (detailing impermissible impeachment by contradiction).

Third, the defense seeks to elicit a supposed inconsistency relating to Alexander Cifuentes-Villa's retention of an attorney named Andres Granados. See Def. Br. at 5-6. Here, there is no inconsistency, apart from a misleading question asked on cross-examination by the defendant's own counsel. On direct examination, Alexander Cifuentes-Villa testified that Granados was an attorney for the defendant, that he also represented Cifuentes-Villa, and that Granados had visited Cifuentes-Villa in prison in Mexico. See Tr. 5191:22-5192:3. On cross-examination, counsel for the defendant misstated the testimony on direct, asking, "you testified on direct that Mr. Guzman sent [Granados] to you?" and Cifuentes-Villa agreed with the leading question. See Tr. 5397:1-3.[2] But Cifuentes-Villa promptly clarified any possible misunderstanding, agreeing with the defendant's counsel on cross-examination that it was "not a lie" that he had been referred to Granados by other inmates. See Tr. 5397:16-18. That

---

[2] Tellingly, though the defendant asserts that Cifuentes-Villa testified "on both direct and cross-examination" that Cifuentes-Villa claimed the defendant had sent Granados, the defendant cites only the transcript of the cross-examination. See Def. Br. at 5. Alexander Cifuentes-Villa said no such thing on direct examination, only that Granados was the defendant's lawyer and that Granados and Cifuentes-Villa met multiple times while Cifuentes-Villa was in prison in Mexico.

3

statement is consistent with the proffer report referenced by the defendant. See 3500-HACV-40 at 2 ("Granados was an attorney for Guzman-Loera and Cifuentes-Villa knew that when he hired him. Cifuentes-Villa reached out to Granados through other inmates and associates . . . [who] made the referral for Cifuentes-Villa to Granados.").

Fourth, the defendant seeks to call a law enforcement witness in order to present an inconsistency between Alexander Cifuentes-Villa's testimony that he had not "personally seen many of the [defendant's] stash houses throughout Culiacan, Mazatlan, Guadalajara, Chihuahua, Sonora, and Baja California," Tr. 5418:7-11, and a report of a proffer session indicating that Cifuentes-Villa had personally seen many stash houses. See 3500-HACV-40 at 9. [3] But any inconsistency on this front is collateral. Cifuentes-Villa testified on cross-examination that he had told the government about stash houses in Mexico City and Culiacan, but denied having visited stash houses in other locations. If a law enforcement agent instead recalls that Cifuentes-Villa had admitted to visiting stash houses in other locations, the inconsistency would not be probative of the facts at issue in this case, because whether or not the defendant had stash houses in Mexico and the precise details as to their locations are not material to the defendant's guilt or innocence. Nor would the inconsistency bear on Cifuentes-Villa's credibility or expose any bias. If anything, the cross-examination as elicited at trial revealed that Cifuentes-Villa had less first-hand knowledge of the defendant's stash house operations than the government's proffer reports suggested. But that is not indicative of bias against the defendant any more than any inconsistency between documentary and testimonial evidence reveals bias. Ultimately, the defendant appears to have pursued this line of inquiry on cross-examination in order to elicit a matter to be contradicted. That is not a permissible use of impeachment by contradiction. See Gov. Mot. at 4.

Finally, the defendant asserts a material contradiction between Alexander Cifuentes-Villa's testimony that the defendant had a deficit in 2008 of approximately $20 million, see Tr. 5420:3-8, and a proffer report which described Cifuentes-Villa as stating the

---

[3] The defendant confuses the record regarding at least one aspect of the notes. He asserts that Cifuentes-Villa provided the government with details about the Baja California stash house owned by the defendant, arguing that such a level of detail rules out the possibility of an agent's mistake in writing the report and proves that Cifuentes-Villa lied at trial. See Def. Br. at 6. But the relevant part of the report in question makes a distinction between the Baja California property, see 3500-HACV-40 at 5-6, and the "stash houses," see id. at 8-9. In fact, in the report, Cifuentes-Villa is described as believing the Baja California property to be worth $20 million and the stash houses to be worth $40-50 thousand. See id. It is clear, therefore, that the Baja California property described is not one of the "stash houses" in question, so it does not show Cifuentes-Villa to have been lying.

4

defendant had incurred $20 million in debt between 2007 and 2013. See 3500-HACV-40 at 10. As the defendant points out, substantial income is an element of the Continuing Criminal Enterprise charge of Count One of the Fourth Superseding Indictment. In the defendant's view, $20 million in debt over the course of six years suggests a lack of substantial income, whereas a $20 million deficit in a single year supports the government's case for substantial income. See Def. Br. at 7. It is difficult to see why this would be so. In either case, the defendant is free to argue that Cifuentes-Villa's testimony demonstrates serious financial losses incompatible with a finding of substantial income.[4] Nor is there necessarily an inconsistency at all, because accumulated debt and single-year deficits are not the same thing: it could be that the defendant accumulated $20 million in debt over the course of six years, and had a $20 million loss in one of those years. And to the extent there is any inconsistency or contradiction, it is an inconsistency created by the defendant's own cross-examination. As the government explained in its opening motion, the "impeachment by contradiction" exception would swallow Rule 608(b)'s rule forbidding extrinsic evidence to attack a witness's character for truthfulness if merely eliciting a supposed contradiction on cross-examination – of a matter not explored on direct examination – was sufficient to permit the introduction of extrinsic evidence.

---

[4] The government notes, however, that this is not necessarily correct. Only a person or an enterprise with substantial income could even accumulate $20 million in debt. Certainly in the conventional business world, no individual or company would be able to take on such debt, either in a single year or over a course of years, without demonstrating sufficient income and assets to lenders.

For the foregoing reasons, as well as those set forth in the government's opening motion, the Court should decline to permit the defendant to call law enforcement witnesses and introduce extrinsic evidence on collateral matters.

Respectfully submitted,

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

ARTHUR G. WYATT, CHIEF
Narcotic and Dangerous Drug Section
Criminal Division,
U.S. Department of Justice

OF COUNSEL:

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY
Southern District of Florida

cc: Clerk of Court (BMC) (via ECF)
    Defense Counsel (via Email)