```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :
                   - against -                              :    ORDER
                                                            :
JOAQUIN ARCHIVALDO GUZMAN                                   :    09-cr-0466 (BMC)
LOERA,                                                      :
                                                            :
                           Defendant.                       :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

The Government has moved *in limine* [559] to preclude defendant from calling the authors of DEA-6 reports memorializing law enforcement agents' notes of proffer sessions with one of the Government's cooperating witnesses, Jorge Cifuentes-Villa. This motion arose out of stipulations that defendant proposed to the Government of how the authoring agents would testify about certain statements that Jorge made during those proffer sessions if defendant were to call them as witnesses. In his opposition, defendant withdrew those stipulations to avoid unnecessary litigation on collateral issues, but he proffered five additional factual scenarios related to Jorge Cifuentes-Villa and his brother, Alex, about which defendant intends to call law enforcement witnesses to testify if the Government refuses to stipulate to that testimony. For the reasons below, the motion is granted in part and denied in part.

## BACKGROUND

In its motion, the Government references 16 lines of Jorge's testimony which were elicited at trial when defense counsel confronted him with DEA-6 reports. The purportedly inconsistent statements contained in the DEA-6 reports were presumably the subject of defendant's proposed stipulations. Defendant, as noted, has withdrawn those proposed

stipulations (and, in effect, waived his opposition to that specific portion of the Government's motion), but seeks to call law enforcement witnesses to testify about the following five topics:

1. Jorge's statements about a USB drive containing information about Jorge's case and the individual who provided that drive.
2. A January 2015 prison telephone call between Jorge and Alex.
3. How Alex met his lawyer while he was incarcerated.
4. Alex's statements that he personally observed defendant's stash houses in locations throughout Mexico.
5. Alex's statements that defendant incurred approximately $20 million in debt from 2007 until 2013.

The Government argues that this testimony concerns collateral matters, and defendant should be precluded from introducing extrinsic evidence for the purpose of impeaching Jorge and Alex through their prior inconsistent statements. The Government also argues that defendant should be precluded from introducing extrinsic evidence of specific instances of Jorge's and Alex's conduct to show their character for truthfulness. Defendant, on the other hand, contends that these purported inconsistencies are critical to exposing the Cifuentes-Villa brothers' biases and motives in testifying against defendant, as well as avoiding misleading the jury about material information in the case.

## DISCUSSION

Under Federal Rule of Evidence 613(b), "[e]xtrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires." It is well-established, however, that "[a] witness may be impeached by extrinsic proof of a prior inconsistent statement only as to matters which are not collateral, i.e., as

2

to those matters which are relevant to the issues in the case and could be independently proven." United States v. Blackwood, 456 F.2d 526, 531 (2d Cir. 1972).

There is a tension between Rule 613(b) and Rule 608(b), which provides that "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack . . . the witness's character for truthfulness." This rule "addresses situations in which a witness's prior activity, *whether exemplified by conduct or by a statement*, in and of itself casts significant doubt on his veracity . . . [and] bars the introduction of extrinsic evidence of specific instances of a witness's misconduct if offered to impugn his credibility." 4 Weinstein's Federal Evidence § 608.02[3][c] (2d ed. 2016) (quoting United States v. Winchenbach, 197 F.3d 548, 558 (1st Cir. 1999) (emphasis added)). "Rule 613 does not provide a loophole in these circumstances." Id. Essentially, then, extrinsic evidence of a witness's prior inconsistent statement is admissible only when the statement relates to the defendant's guilt or innocence of the crimes charged or the witness's bias.

There is an exception to the collateral evidence rule with respect to Rule 608(b) (and by extension, Rule 613(b)) – that is, impeachment by contradiction. "[T]his doctrine provides that when a witness puts certain facts at issue in his testimony, the government may seek to rebut those facts, including by resorting to extrinsic evidence if necessary." United States v. Ramirez, 609 F.3d 495, 499 (2d Cir. 2010). As the Second Circuit has suggested, however, this exception is narrow and should only be invoked when there are material falsehoods in the record upon which a party may capitalize to mislead the jury or create an objectively incorrect record on a material fact. See United States v. Garcia, 900 F.2d 571, 575 (2d Cir. 1990); see also United States v. Estevez, 164 F.3d 619 (2d Cir. 1998) ("Impeachment by contradiction is a well-recognized technique used to bring specific errors in testimony to the attention of the jury.").

With this background, the Court will address each of the five lines of Jorge's and Alex's testimony in turn.

Jorge's testimony about the USB drive that he was shown which contained material information about his case tangentially relates to Jorge's potential bias and motive to testify falsely. Jorge testified on direct examination that a Colombian naval officer showed him a USB drive containing evidence that the Colombian and American authorities had gathered on him. On cross-examination, he denied telling the Government that it was an American naval officer who approached him with this USB drive. But the authoring agent of the DEA-6 report on this issue wrote that Jorge told him it was an American naval officer who showed him the drive. The implication of this purported inconsistency is that Jorge has an incentive to protect the Government by his testimony to obtain his 5K1 letter. Thus, defendant may call the authoring agent of this DEA-6 report to elicit this purported inconsistency.

Defendant is cautioned, however, that he must restrict his examination to this specific inconsistency. As defendant's opposition makes clear, he has already impugned Jorge's credibility on several of the issues he raises in his opposition by eliciting inconsistencies about them on cross-examination – for example, the volume of information Jorge viewed on the USB drive, how this meeting related to Jorge's extradition request, and how Jorge learned that his siblings were trafficking heroin and methamphetamine. The Court will not allow defendant to simply highlight those inconsistencies on direct examination, because that would waste time and needlessly present cumulative evidence under Rule 403, and because those matters are collateral. Moreover, any incentive that Jorge had to align his testimony with the specific evidence amassed against him, as shown to him on the USB drive, does not implicate defendant in any way, and

4

any probative value that this evidence has is substantially outweighed by its risk of confusing the issues, undue delay, and wasting time.

As to the 2015 prison phone call between Jorge and Alex, defendant has already elicited testimony from both brothers – the two most direct sources of information – about their discussion during that call. Moreover, defendant has also elicited testimony about the fact that the lawyer who connected the brothers for the purpose of making this phone call continued to visit Jorge in prison after the phone call was made. No law enforcement witness can provide any more specific information to help the jury understand this issue. Indeed, it does not appear that the DEA-6 reports include relevant statements that might be inconsistent with respect to the content of this phone call.[1] Defendant's other arguments – which imply that the Government avoided obtaining the recording of this call – would only serve to confuse the issues and create a sideshow on a matter that has nothing to do with Jorge's bias or defendant's guilt or innocence of the crimes charged (that is, whether the Government should have obtained a recording of this call).

Defendant is free to make at closing all the arguments he makes in this motion, including that there is no recording of a phone call made between two cooperating witnesses, that the cooperating witnesses' testimony about that phone call is inconsistent, that the lawyer who connected them continued to visit Jorge after the phone call when he presumably still had contact

---

[1] The only possible inconsistency between the brothers' trial testimony and the DEA-6 report is whether Jorge and Alex discussed finding a "Jewish target," but this inconsistency is purely collateral and allowing defendant to explore it again would only create a sideshow on an issue that has nothing to do with this case. Defendant also suggests that the DEA-6 report about the Government's proffer session with this lawyer is inconsistent with Jorge's and Alex's trial testimony. In that report, the agent wrote that the lawyer said Alex was willing to cooperate with the Government one year before this phone call happened, which defendant contends is inconsistent with Jorge's and Alex's testimony that the purpose of the 2015 phone call was to convince Alex to cooperate. But the agent's characterization of the lawyer's statement is hearsay and does not involve either brother's prior statements, so defendant cannot introduce it to create a discrepancy in their testimony where one does not exist and there is nothing to suggest that this is a material falsehood.

with Alex, and that the jury should draw certain inferences from those facts. Defendant already has all the necessary information to make this argument, and further law enforcement testimony on this topic will not serve to bolster that argument.

With respect to how Alex was introduced to his lawyer, defendant may call the authoring law enforcement agent to elicit testimony about the statements Alex made during his proffer sessions. Alex testified that defendant connected him with the lawyer, but the authoring agent wrote in the DEA-6 report that Alex said two other individuals referred him to the attorney, not defendant.[2] The Court agrees with defendant that this inconsistency relates to defendant's credibility – namely, that it establishes a closer (and more nefarious) relationship between defendant and Alex, lending credibility to the rest of his testimony about the crimes defendant committed, and creates an inference that defendant attempted to shape Alex's testimony.

As to Alex's testimony about defendant's stash houses, however, defendant does not need to elicit any inconsistencies to prevent the Government from capitalizing on a material omission or falsehood about a fact in issue. It does not matter to defendant's case that Alex previously told the Government details about defendant's stash houses, which he then denied saying on the stand. Alex did not testify as to any affirmative facts about the stash houses that defendant must correct on the record to avoid misleading the jury. If the reverse had happened – that is, if Alex testified as to a number of details about the stash houses but previously told the Government that he did not know any of those details – that would warrant a different outcome. But defendant

---

[2] The Government contends that the only reason this inconsistency exists in the record is because of a misleading question that defense counsel asked during cross-examination. This is not exactly true: Alex's testimony on both direct and cross-examination suggests that defendant sent this lawyer to Alex while Alex was incarcerated, and that the other inmates referred Alex to another one of defendant's attorneys. Because of the risk that this inconsistency implicates defendant, defendant may call the authoring agent for the sole purpose of correcting this inconsistency, and only if defense counsel truly believes the record needs to be corrected on this issue, in light of the testimony that the Government highlighted that Alex agreed with defense counsel later that other inmates referred the lawyer to him.

has not provided a persuasive reason as to why he must call a law enforcement witness to explore Alex's purported omission of facts, and doing so would only be a distraction to the jury.

Defendant argues that Alex changed his story to align with the Government's theory of the case, and that cooperating witnesses' potential fabrication about defendant's stash houses relates to his guilt or innocence of the crimes charged, but the fact is, the purported fabrications here were not advanced to the jury, and thus have no impact on defendant's case. And any bearing that these purported fabrications have on Alex's bias or motive to testify favorably for the Government is too big a stretch. Alex had no way of knowing whether the Government had or would advance at trial other information about defendant's stash houses in contravention of his own testimony, and to the extent Alex lied to the Government during the proffer session, then his testimony at trial was not fabricated to align with the Government's theory of the case. Indeed, the omission inured to defendant's benefit.

Finally, defendant may call the authoring agent to discuss Alex's statements during proffer sessions about defendant's financial means between 2007 and 2013. During his testimony, Alex testified that defendant incurred $20 million in debt in the year of 2008, but the DEA-6 report suggest that Alex previously told law enforcement that defendant incurred and faced this debt over a six-year period. To meet its burden with respect to the continuing criminal enterprise count, the Government must prove beyond a reasonable doubt that defendant obtained substantial income or resources from his drug trafficking activities. Inconsistencies in a cooperating witness's statements about this element are plainly relevant to defendant's guilt or innocence of the crimes charged. For example, an enterprise that incurs and resolves $20 million of debt in one year might have significantly more resources than an enterprise which incurs $20 million in debt but cannot pay it off for years.

But this testimony might be precluded under Rule 403 as needlessly presenting cumulative evidence because, as defendant has acknowledged, Alex did testify that at some point during the period charged in the indictment, defendant faced a $20 million debt. That fact in and of itself tends to dispute the Government's evidence in support of the substantial resources element of the continuing criminal enterprise charge.

The Court will allow defendant to introduce evidence of some of these inconsistencies, but defendant is cautioned that he must constrain his points to only those which are critical to elicit Jorge's and Alex's biases or motives to testify falsely, or which relate to a material fact in issue relating to defendant's guilt or innocence. The inconsistencies which defendant points to are not critical to his case, but the Court will afford him some leeway on issues which he believes he needs to dispute the Government's case against him. This leeway is narrow, and the Court will not allow defendant to belabor the point or explore areas that are not within the scope of this ruling.

## CONCLUSION

The Government's [559] motion *in limine* is GRANTED IN PART AND DENIED IN PART.

**SO ORDERED.**

 _____
 U.S.D.J.

Dated: Brooklyn, New York
 January 28, 2019

8