

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

GMP:BCR                                  *271 Cadman Plaza East*
F. #2009R01065                           *Brooklyn, New York 11201*

October 9, 2018

**TO BE FILED UNDER SEAL**

By ECF

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11217

Re: United States v. Joaquin Archivaldo Guzman Loera
Criminal Docket No. 09-466 (S-4) (BMC)

Dear Judge Cogan:

Pursuant to its obligations under Giglio v. United States, 405 U.S. 150 (1972), on October 5, 2018, the government disclosed information relating to the majority of its cooperating witnesses. The government respectfully moves in limine to preclude cross-examination of certain of the government's witnesses as detailed below.[1]

I.      Legal Standard

The scope and extent of cross-examination is committed to the sound discretion of the district court. See United States v. Wilkerson, 361 F.3d 717, 734 (2d Cir. 2004). A court may properly bar cross-examination that is only marginally relevant to a defendant's guilt or other issues before the court. See United States v. Maldonado-Rivera, 922 F3d. 934, 956 (2d Cir. 1990); see also Fed. R. Evid. 611 (stating that "court should exercise reasonable

---

[1] The government anticipates that it may file additional motions to preclude cross-examination of certain witnesses pursuant to Federal Rules of Evidence 608 and 609 in advance of their testimony, including the witnesses for whom the government has delayed disclosure of 18 U.S.C. § 3500 material until two weeks prior to their testimony.

control . . . so as to . . . avoid wasting time[] and protect witnesses from harassment or undue embarrassment").

A "decision to restrict cross-examination will not be reversed absent an abuse of discretion." United States v. Lawes, 292 F.3d 123, 131 (2d Cir. 2002) (citing United States v. Rosa, 11 F.3d 315, 335 (2d Cir. 1993)).  The Second Circuit has repeatedly upheld district courts' exercise of discretion in imposing reasonable limits on the subjects that may be inquired into on cross-examination.  See United States v. Rivera, 971 F.2d 876, 886 (2d Cir. 1992) ("The court is accorded broad discretion in controlling the scope and extent of cross-examination."); Rosa, 11 F.3d at 336 (holding that district court properly precluded cross-examination on alleged rape and burglary by witness because conduct did not bear directly on witness's credibility and allegations were unsubstantiated).

Federal Rule of Evidence 608(b) governs where a party seeks to elicit testimony regarding specific instances of a witness's conduct to attack the witness's character for truthfulness.  See United States v. Peterson, 808 F.2d 969, 973-74 (2d Cir. 1987); see also United States v. Cruz, 894 F.2d 41, 43 (2d Cir. 1990) ("Under Rule 608(b), the court has discretion to permit or deny a line of inquiry on cross-examination.").  Rule 608(b) provides in pertinent part:

> Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.   But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness.

Fed. R. Evid. 608(b).  The advisory committee's note to Rule 608(b) also notes that because the "possibilities of abuse are substantial" in cross-examination, specific instances may only be inquired into if they are probative of truthfulness, "not remote in time," and not "outweighed by danger of unfair prejudice, confusion of issues, or misleading the jury."  Fed. R. Evid. 608 advisory committee's note.

Rule 609(a)(1)(A) provides that evidence of a witness's conviction for a felony offense "must be admitted, subject to Rule 403" and that evidence "for any crime regardless of the punishment . . . must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement."  Fed. R. Evid. 609(a)(2).  Moreover, if more than 10 years have passed since the witness's conviction or release from confinement, whichever is later, evidence of a conviction is "admissible only if its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect."  Fed. R. Evid. 609(b).

Admission of such evidence is further limited by Federal Rules of Evidence 402 and 403, which exclude otherwise relevant evidence if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues . . . , or by considerations

of undue delay, waste of time, or needless presentation of cumulative evidence." United States v. Figueroa, 548 F.3d 222, 229 (2d Cir. 2008); United States v. Devery, 935 F. Supp. 939, 407-08 (S.D.N.Y. 1996) ("[E]ven if the prior act does concern the witness's character for truthfulness under Rule 608(b), its probative value must not be substantially outweighed by its unfairly prejudicial effect under Rule 403."); United States v. Brown, No. 07-CR-874 (KAM), 2009 WL 497606, at *4 (E.D.N.Y. Feb. 26, 2009).

> In evaluating the probity of specific instances of conduct, courts consider numerous factors, including "whether the testimony of the witness in question is crucial or unimportant, the extent to which the evidence is probative of truthfulness or untruthfulness, the extent to which the evidence is also probative of other relevant matters, the extent to which the circumstances surrounding the specific instances of conduct are similar to the circumstances surrounding the giving of the witness's testimony, [and] the nearness or remoteness in time of the specific instances to trial."

United States v. Nelson, 365 F. Supp. 2d 381, 390 (S.D.N.Y. 2005) (quoting John W. Strong, McCormick on Evidence § 41). As another court in this district has previously explained, "[i]f all that can be said about behavior is that it might be called improper, immoral, or unlawful . . . asking about it can not be justified under Fed. R. Evid. 608." United States v. Stone, No. 05-CR-401 (ILG), 2007 WL 4410054, at *1 (E.D.N.Y. Dec. 14, 2007) (internal quotation marks and citation omitted).

Similarly, Federal Rule of Evidence 611 requires district courts to exercise "reasonable control" over the mode of interrogating witnesses so as to avoid "needless consumption of time" and to "protect witnesses from harassment or undue embarrassment." Fed. R. Evid. 611(a). Thus, when considering the admission under Rule 608(b) of specific instances of conduct that the court finds probative of truthfulness, the court must balance the probative nature of the conduct against the Rule 403 and Rule 611 factors. See Brown, 2009 WL 497606 at *4. Moreover, pursuant to Rule 608(b), extrinsic evidence of a witness's prior conduct may not be admitted to attack his truthfulness. Peterson, 808 F.2d at 973-74; Brown, 2009 WL 497606 at *3.

II.   Discussion

A.   Domestic Violence Allegations

The government seeks to preclude cross-examination related to allegations of domestic violence by three cooperating witnesses.

Cooperating Witness No. 1 ("CW1") was involved in several domestic disputes with his wife, one of which resulted in his arrest in or about 2005 or 2006 in Mexico. CW1 and his girlfriend (later and now wife) were intoxicated; she hit him, which caused him to fall down the stairs, but the police arrested him. Subsequent to that arrest, CW1 paid his girlfriend

to return to her home country and bribed a police official with $10,000 for his release.  Mexican authorities did not pursue charges.

Later, after CW1 reunited with his girlfriend (now wife), in or about 2009, she became pregnant.  When she stated that she intended to abort the pregnancy, CW1 threatened to dissuade her by telling her that if she pursued an abortion she should consider herself dead.  Around the same time, CW1 sent BlackBerry Messenger messages to an associate stating that he wanted to kill his wife after she gave birth over this issue.  After one fight with his wife related to this issue, CW1 asked the defendant for one of the defendant's handguns.  CW1 insists, however, that he was never serious about killing his wife.  Eventually, CW1 sought permission from the defendant to move to where his wife was living in Mexico to watch over her to ensure that she did not terminate the pregnancy.  His wife gave birth to the child and he never attempted to harm her afterward.

After the birth of his child, CW1 had an argument with his wife (they had by then been married) because he had sexually harassed the child's babysitter.  When confronted by his wife, CW1 became upset and stopped talking to her.

Cooperating Witness No. 2 ("CW2") was involved in two domestic disputes, both of which resulted in his arrest, even though legal charges were subsequently dismissed.  Specifically, in December 2014, CW2 had an argument with his wife that resulted in his arrest, and in February 2015, CW2 was involved in a fight with his adult stepson, for which he was arrested.  Both charges were dismissed.

Cooperating Witness No. 3 ("CW3") has told the government that at one point in approximately 1998-2000, he hit his then-wife in an argument and broke her cheekbone, and that he had previously broken her nose during an altercation in approximately 1995-96.  Later, in approximately 2006 or 2007, he was involved in an altercation with a different wife when he pulled her hair and grabbed her arm.  The government has no indication that legal charges were ever filed in relation to these incidents.

Cross-examination into these instances of domestic violence should be precluded under Rules 608, 403, and 611.  No criminal convictions resulted from any of these instances, so Rule 609 does not apply.  Cross-examination concerning them could therefore only be permitted pursuant to Rule 608(b).  But as noted above, a district court nonetheless enjoys "broad discretion" to impose limits on cross-examination.  Rivera, 971 F.2d at 886.  Rule 608(b), moreover, is "intended to be restrictive" and "does not authorize inquiry on cross-examination into instances of conduct that do not actually indicate a lack of truthfulness."  United States v. Nelson, 365 F. Supp. 2d 381, 386 (S.D.N.Y. 2005).  Applying these principles, courts in this circuit have previously prohibited defendants from inquiring about instances of domestic violence on cross-examination.  See, e.g., United States v. Fama, No. 12-CR-186 (WFK), 2012 WL 6094135, *1 (E.D.N.Y. Dec. 7, 2012) (precluding cross-examination as to domestic violence allegations, noting that there is not "anything inherent in the nature of such acts that would directly involve truthfulness"); United States v.

Gambardella, No. 10-CR-674 (KBF), 2011 WL 6314198, at *1 n.1 (S.D.N.Y. Dec. 15, 2011) (witness's past domestic abuse is not probative of character for truthfulness).

Even if admissible under Rule 608(b), these instances of domestic violence should also be excluded under Rules 403 and 611. Details of abuse could mislead and confuse the jury, and risk unfair prejudice by inviting the jury to improperly judge the witnesses' credibility based on the jurors' views of domestic violence rather than a proper assessment of the witnesses' truthfulness. See Fama, 2012 WL 6094135 at *1 (holding that domestic violence allegations against witness are excludable in Rule 403 analysis because any probative value is outweighed by "unfair prejudice that could result if the jury were to focus on the purported instances of abuse rather than [the witness's] testimony about the bank robbery"). See also United States v. Jeffers, 402 Fed. App'x. 601, 603 (2d Cir. 2010) ("Moreover, even if the alleged abuse was somehow relevant to Hick's motivation for testifying, which is not clear, the district court did not abuse its discretion in concluding that any probative value was substantially outweighed by unfair prejudice and the need for a mini-trial on domestic disputes."). The court should therefore preclude cross-examination on the incidents described above.

B.      Sexual Activities With Underage Partners

The government seeks to preclude cross-examination regarding one cooperating witness's sexual activities with minors. Specifically, CW1 lived with the defendant from approximately 2007-2008, during which time both he and the defendant engaged in sexual acts with girls under the age of eighteen. CW1 will generally testify about drug trafficking activities and related crimes, such as murder conspiracies, that he undertook while working with the defendant from approximately 2007 to 2014. The defense should be precluded from eliciting evidence or pursuing cross-examination of the witness about this sexual activity, because it is not probative of CW1's truthfulness pursuant to Rule 608, and because any slight probative value is outweighed by the danger of unfair prejudice and confusion of the issues, pursuant to Rules 403 and 611.

Specifically, CW1 has indicated that an associate of the defendant known as "Commadre Maria" would regularly send photographs of girls as young as thirteen years old to the defendant. For approximately $5,000, the defendant or one of his associates could have the girl of his choice brought to one of the defendant's ranches for sexual intercourse. CW1 availed himself of this service on 3-4 occasions with girls as young as fifteen years old, and he witnessed the defendant do the same on multiple occasions, with girls as young as thirteen years old.[2] Additionally, CW1 assisted the defendant in drugging the girls with whom the defendant intended to have sex by placing a powdery substance into their drinks at the defendant's direction. CW1 did not drug his own sexual partners. CW1 recalls that the defendant called the youngest of the girls his "vitamins" because he believed that sexual

---

[2] Other cooperating witnesses corroborate the defendant's actions in this regard.

5

activity with young girls gave him "life."  The government does not plan to elicit or introduce testimony related to these events.

Testimony about these sexual activities is not relevant to any fact of consequence in this action.  See Fed. R. Evid. 401.  They simply do not bear on and are not probative of the defendant's drug trafficking activities or CW1's relationship with the defendant's drug trafficking organization.  Because a district court has "wide latitude . . . to impose reasonable limits on . . . cross-examination," Maldonado-Rivera, 922 F.2d at 956, the Court may therefore preclude cross-examination into these sexual activities.  See, e.g., United States v. Stewart, 433 F.3d 273, 313 (2d Cir. 2006) (affirming district court ruling preventing defense counsel from examining prosecution witness about his views of legality of his own conduct); United States v. Thomas, 377 F.3d 232, 241 (2d Cir. 2004) (holding no abuse of discretion where district court restricts cross-examination into irrelevant matters).

Even if relevant, cross-examination of CW1 as to these sexual activities would be unfairly prejudicial and would unnecessarily harass the witness; it is therefore appropriately limited under Rules 403 and 611.  Salacious testimony about a witness's sexual activity with minors is likely to be highly inflammatory, and it would invite the jury to improperly discount CW1's testimony by "suggest[ing] decision on an improper bias, commonly, though not necessarily, an emotional one."  Fed. R. Evid. 403 advisory committee's note.  Any testimony about CW1's sexual activities would be of only marginal relevance, as well, given that they do not bear on the drug trafficking crimes in which he and the defendant engaged.  The limited relevance of the testimony would not therefore outweigh its prejudicial effect.  Other courts have precluded similar lines of examination for precisely these reasons.  See United States v. Darui, 545 F. Supp. 2d 108, 111-12 (D.D.C. 2008) (precluding defendant in fraud case from inquiring as to witness's adulterous sexual relations with two women because defendant had not demonstrated how "marital fidelity is relevant to the charges in the indictment," and "evidence of polygamous activity is clearly so inflammatory in nature that . . . the evidence is not admissible under Federal Rule of Evidence 403"); see also United States v. Bittner, 728 F.2d 1038, 1042 (8th Cir. 1984) (affirming district court's ruling preventing defendant from cross-examining victim-witness in kidnapping case about witness's sexual history with previous boyfriend as irrelevant and more prejudicial than probative).

Finally, CW1 was neither charged nor convicted with a crime in relation to this sexual conduct, so Fed. R. Evid. 609—which allows, in certain circumstances, impeachment of a witness by evidence of a criminal conviction—does not apply.  Fed. R. Evid. 608(b), in turn, would therefore only permit cross-examination into CW1's sexual conduct if it is "probative of [his] character for truthfulness or untruthfulness."  But the Second Circuit has long held that past sexual misconduct, standing alone, does not bear on a witness's propensity to tell the truth.  See United States v. Rodriguez, 648 Fed. Appx. 9, 11 (2d Cir. 2016) ("[T]his Court has found that it is not an abuse of discretion to preclude questioning of prosecution witnesses regarding sex crimes because such evidence has insufficient bearing on the witness's credibility."); see also United States v. Rabinowitz, 578 F.2d 910, 912 (2d Cir. 1978) (affirming trial court's preclusion of cross-examination as to witness's sexual acts with young

6

children, noting that there was no "logical relevance" of those acts to the witness's credibility).
The Court should therefore preclude the defense from cross-examining CW1 in this regard.[3]

### C.    Unorthodox Interests

The government seeks to preclude cross-examination regarding one cooperating
witness's unorthodox interests, and religious and spiritual beliefs.  CW1's BlackBerry
Messenger communications were intercepted by several law enforcement agencies pursuant to
judicially authorized Title III wiretaps, and a confidential source consensually recorded such
communications.  In those communications, CW1 communicated with a close associate about
some of his interests in the Illuminati, Freemasonry, other planets, other galaxies, UFOs and
the idea that there was an impending apocalypse in 2012.  CW1 generally learned about these
matters from internet videos and the Discovery Channel.  When questioned by the government
about these interests, CW1 states that while he is interested in reading about and watching
videos about these topics, he does not believe that they are real or accurate.

CW1 also has an interest in astrology and witch doctors.  He has personally
availed himself of the services of a witch doctor on several occasions.  On one occasion, CW1
observed the defendant consulting with a witch doctor from whom he obtained snake oils.  The
government does not intend to elicit testimony about these topics.

These unorthodox interests and beliefs are not relevant and do not bear on either
the defendant's guilt or innocence or on CW1's veracity and credibility.  They do not,
therefore, have any probative value, or at most only very slight value.  Moreover, the only
conceivable purpose in eliciting testimony on these subjects would be to invite the jury to
improperly judge the witness based on his spiritual beliefs and interests.  That invitation would
risk unfair prejudice, confusion of the issues, and unnecessary delay should the government
need to rehabilitate CW1 from the embarrassment caused by inquiring into these matters.
Given that the defense will be free to cross-examine CW1 about his involvement in the drug
trafficking and murder conspiracies in which he was involved with the defendant, the risk of
prejudice greatly outweighs any possible probative value.  Cross-examination should therefore
be limited under Rules 401, 403, and 611.  Moreover, to the extent that these interests reflect

---

[3] If the Court should find that cross-examination of CW1 on this topic is proper,
the government submits that it should be permitted to elicit testimony from CW1 about his
involvement in this activity with the defendant, specifically.  Omitting such a critical fact from
CW1's testimony would be misleading to the jury, and such testimony is arguably probative
of the relationship of trust between the defendant and CW1.  United States v. Kalaydijian, 784
F.2d 53, 56 n.3 (2d Cir. 1986) (evidence of defendant's prior meeting with cooperating witness,
at which plan to purchase heroin was discussed, was properly admitted "to establish the basis
of the trust relationship between [cooperating witness] and [defendant]"); see also, Old Chief
v. United States, 519 U.S. 172, 183 (1997) (analyzing the admissibility of evidence and finding
the trial court should make its determinations "with an appreciation of the offering party's need
for evidentiary richness and narrative integrity in presenting a case").

CW1's religious beliefs, cross-examination is prohibited pursuant to Fed. R. Evid. 610, which states that "evidence of a witness's religious beliefs or opinions is not admissible to attack or support the witness's credibility." The Court thus should grant the government's motion to limit cross-examination on these grounds.

D.  Previous Civil and Criminal Legal Issues

The government seeks to preclude cross-examination related to three witnesses' prior civil and minor criminal legal issues.

First, the government expects that Cooperating Witness No. 4 ("CW4") will generally testify regarding his assistance in storing cocaine and marijuana for the Sinaloa Cartel during the late 2000s. The government has disclosed a number of minor prior criminal charges and convictions related to CW4 to the defense. Specifically, CW4 was arrested in Texas in 1994 and charged with misdemeanor disorderly conduct, a charge to which he pleaded guilty, after being arrested for running away from the police in a stolen vehicle. See Tex. Pen. Code § 42.01 (disorderly conduct). CW4 was 17 years old at the time. CW4 was judged guilty of a number of misdemeanor motor vehicle violations in 1999, including having an expired license, an expired registration sticker, speeding, failure to maintain financial responsibility, and failure to yield right of way. CW4 was 21 years old at the time, and was sentenced to five days in jail (which amounted to time served). In 2007, CW4 was judged guilty of misdemeanor public intoxication and ordered to pay a $101 cash bond. In 2010, CW4 pleaded guilty to a charge of criminal nonsupport of his children. He owed his children's mother $12,000, but because he could only pay approximately half of that amount at the time, he spent approximately six months in custody. In Texas, criminal nonsupport is a felony. Tex. Pen. Code § 25.05.

Second, CW1 was involved in an incident in 1994 where he set fire to an area behind a discotheque. Specifically, CW1 and a friend were denied entry to a discotheque because the bouncer thought they were too intoxicated. In retaliation, CW1 and his friend purchased gasoline and set a fire behind the building. No one was harmed, and no criminal charges or civil claims were ever brought in relation to the incident.

Third, the government expects that Cooperating Witness No. 5 ("CW5") will generally testify at trial about his interactions with the defendant and his drug trafficking activities on behalf of the defendant's organization, which occurred from the mid-2000s through the mid-2010s. The government has disclosed to the defense that in 2006 or 2007, CW5 was involved in a motor vehicle accident in Mexico while operating a vehicle under the influence of alcohol and cocaine. As a result of that incident, a civil judgment was entered against CW5. CW5 was delinquent in the satisfaction of that civil judgment, although it was eventually satisfied.

With respect to CW4's criminal charges, the elements of the crimes of disorderly conduct, the motor vehicle violations, and public intoxication do not require proving—or CW4 admitting—a dishonest act or false statement. As a consequence, those convictions cannot be used to impeach CW4 pursuant to Rule 609(a)(2). See Fed. R. Evid.

8

609(a)(2) ("[F]or any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness admitting—a dishonest act or false statement."); see also United States v. Ashburn, No. 11-CR-303 (NGG), 2015 WL 5098607, *24 (E.D.N.Y. Aug. 31, 2015) (granting government motion to preclude cross-examination into misdemeanor convictions of witness) (citing United States v. Hayes, 553 F.2d 824, 827 (2d. Cir. 1977) ("Congress emphasized that [Rule 609(a)(2)] was meant to refer to convictions peculiarly probative of credibility, such as those for perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of crimen falsi, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully.")).

CW4's felony conviction for criminal nonsupport of his children could only be admissible pursuant to Rule 609(a)(1), which subjects its potential admission to a Rule 403 analysis. Rule 403 provides that the Court may exclude relevant evidence where its "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Here, given that his expected testimony is that he arranged for the storage of drugs and weapons on behalf of the Sinaloa Cartel, and will undoubtedly be cross-examined extensively regarding his criminal activity related to drug trafficking, the probative value of CW4's failure to pay child support is minimal. However, given that the offense involved CW4's own children, the risk of unfair prejudice is high. A number of district courts have excluded evidence of a witness's or a party's failure to pay child support on similar grounds. See, e.g., Watkins v. Genesee, No. 13-cv-13678, 2016 WL 727855, *5 (E.D. Mich. Feb. 24, 2016) (granting motion in limine to exclude evidence of plaintiff's failure to pay child support where "relevance of such evidence to the issues to be tried is, at most, minimal and the unfair prejudicial value of such evidence would be substantial"); Lauhoff v. Quality Corr. Health Care, Inc., No. 5:14-cv-00614, 2016 WL 3618361, *4 (N.D. Ala. Jul. 6, 2016) (granting motion in limine to exclude evidence of failure to pay child support); Perkins v. Fed. Fruit & Produce Co., Inc., 945 F. Supp. 2d 1225, 1271 n.35 (D. Col. 2013) (same).

As for CW1's 1994 act of arson behind a discotheque, Rule 609 does not apply because it only applies to impeachment by evidence of a criminal conviction. CW1 was never convicted or even charged in relation to the arson attempt. Thus, CW1 could be impeached with the arson only pursuant to Rule 608(b). But Rule 608(b) permits cross-examination only where instances of a witness's conduct is probative of the witness's character for truthfulness or untruthfulness. See Fed. R. Evid. 608(b). Because an arson attempt is not probative of truthfulness, cross examination should be limited. See Cruz, 894 F.2d at 43. Additionally, the "remote[ness] in time" (i.e., 23 years ago) and the "danger of unfair prejudice [and] confusion of issues" also merit limiting cross-examination on this topic. Fed. R. Evid. 608, advisory committee's note.

With respect to the civil judgment entered against CW5, Rule 609 does not apply because the civil judgment is not a criminal conviction. Thus, pursuant to Rule 608, it may be inquired into only if "probative of the character for truthfulness or untruthfulness of the

witness." But the civil judgment against CW5 related to a motor vehicle accident and CW5's consumption of alcohol and cocaine; it is not a judgment stemming from fraud or other acts of dishonesty. See Fed. R. Evid. 608 advisory committee's note (noting that "possibilities of abuse are substantial" with respect to cross-examination on particular instances of conduct, and that "consequently safeguards are erected in the form of specific requirements that the instances inquired into be probative of truthfulness or its opposite and not remote in time"); see also Nibbs v. Goulart, 822 F. Supp. 2d 339, 341 (S.D.N.Y. 2011) (granting motion in limine to preclude plaintiff from inquiring into or offering into evidence unrelated, prior lawsuits against defendants, pursuant to Rules 402, 403, 404(b), 608 and 611). CW5's civil judgment should also be excluded on Rule 403 grounds, as the civil judgment is only marginally probative at best of CW5's credibility or the issues about which he will testify at trial, but risks an "undue tendency to suggest decision on an improper basis" by inviting the jury to assess CW5 based on a motor vehicle accident which occurred while he was under the influence. Fed. R. Evid. 403, advisory committee's note.

### E.     Attempted Murder of Coconspirator

The government expects that the defense will cross-examine a number of the government's cooperating witnesses about murders and other acts of violence with which they were involved during the time that they worked with the defendant and the Sinaloa Cartel. In general, the government will not seek to preclude cross-examination as to these acts. The government does seek to preclude cross-examination as to one attempted murder, however, in order to minimize the risk of harm and retribution to a cooperating witness's family, and to limit the presentation of needlessly cumulative evidence pursuant to Rules 611 and 403.



Specifically, the government anticipates that at trial, ████████████ ████████will generally testify about drug trafficking activities and related crimes that he undertook while working with the defendant from approximately ██████████. The government has previously disclosed to the defendant that █████ ordered the murders of a number of individuals, some of whom were in fact killed, and that in approximately ██████ ████he hired an individual to kill ██████████████████████████ ████████████████████████████████████████

The government seeks to preclude cross-examination as to this one attempted murder████████████The potential relevance and probative value ████████████ ██████is minimal, at best. But should the attempted murder become public, the risk of harm to ██████family and close associates is substantial. ██████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████In light of the fact that the defense will be free to cross-examine██████about a number of other murders, as well has his involvement in criminal drug trafficking more generally, this increased risk of danger far outweighs any probative value in cross-examining him as to the specific attempted murder████████████The Court should

therefore limit cross-examination pursuant to Rules 611 and 403.  See Locascio, 6 F.3d at 949 (holding, in Brady/Giglio context, that where witness had "already confessed to numerous crimes, including murders," and was subject to cross-examination about them, there was no error where defense was unable to cross-examine witness about additional murders); see also Fed. R. Evid. 611(a)(3) (court may limit cross-examination to "protect witnesses from harassment").

### F.        Movie/Television Production Contract

The government anticipates that Cooperating Witness No. 7 ("CW7") will testify at trial about the drug trafficking activities that he undertook with the defendant between 2002 and 2008.  The government has previously disclosed to the defendant that CW7's wife has co-written a book, Cartel Wives, about her experiences as the wife of a large-scale narco-trafficker.  She has also sold the rights to her story to a movie and television production company, which the government has disclosed to the defendant, but the details of that transaction are protected by a nondisclosure agreement.

The defense should be precluded from asking CW7 about the details of this transaction, as any details are of only marginal relevance and slight probative value, at best.  The government does not object to defense cross-examining CW7 about the fact that his wife received payment for writing Cartel Wives, and that she stands to make more money through the sale of rights to the book for movie and television production.  But inquiry into the specific details of the sale of the rights to the production company would be protected by the nondisclosure agreement, and it therefore would harm the contractual rights of both parties to the nondisclosure agreement.  Cross-examination could either lead CW7 to inadvertently provide details in violation of the agreement, or require him to attempt to decline to answer questions on that basis.  In either case, there is a substantial risk of undue harassment of the witness, which the Court may decline to permit pursuant to Rule 611, or misleading or confusing the issues before the jury, which permits the Court to preclude the questioning under Rule 403's balancing test.

As for the other side of the Rule 403 balancing test, disclosure of details of the sale of the rights to Cartel Wives would not advance any claim or argument of bias or untruthfulness by CW7, as the defense will already be free to cross-examine CW7 about the book itself and the potential for selling the rights to the story.  The needless presentation of cumulative evidence provides an additional reason to preclude cross-examination as to the specific details of the sale of the rights to Cartel Wives.  See Fama, 2012 WL 6094135 at *1.

### G.        Irrelevant Messages and Communications

A number of messages sent by cooperating witnesses, Cooperating Witness No. 8 ("CW8") and CW1, were intercepted pursuant to court-authorized Title III wiretap investigations and/or consensually recorded, and have been produced to the defense.  Some of the messages sent by CW8 and CW1 are not related to drug trafficking.  Some of CW8's messages are memes, GIFs, cartoons, images, and inside jokes, many of a politically incorrect or ribald nature.  Some of CW1's messages constitute banter with his friends and associates

about non-relevant issues, such as his romantic interests. Cross-examination as to these messages not related to drug trafficking should be precluded as not relevant, and more prejudicial than probative. See Fed. R. Evid. 402, 403. Their introduction into evidence would risk inviting the jury to assess the issues before it and CW8 and CW1's testimony based on their jokes and banter with friends and associates rather than on their credibility. See Thomas, 377 F.3d at 241 (holding that there is no abuse of discretion where district court restricts cross-examination into irrelevant matters).

### H.    Cumulative Evidence

In addition to the reasons set forth above, the Court should preclude cross-examination regarding the categories of evidence discussed herein because cross-examination on these subjects would be cumulative of other impeachment evidence that the defense is free to use in examining the credibility of the government's witnesses. The Second Circuit has repeatedly held that evidence offered to further impeach a "witness whose character was already challenged at trial" is considered "cumulative" and may be excluded or otherwise limited. United States v. Damblu, 134 F.3d 490, 494 (2d Cir. 1998); see also Locascio, 6 F.3d at 949 (holding that new allegations involving credibility of government witness, which were cumulative of information about which the witness was subject to cross-examination, would not have materially affected the outcome of the case and did not warrant a new trial); Shabazz v. Artuz, 336 F.3d 154, 166 (2d Cir. 2003) ("[W]here the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material."). In this case, the government's cooperating witnesses are likely to be cross-examined on a variety of topics, including their own involvement with the defendant's criminal enterprise, so the limits on cross-examination that the government seeks in this motion relate to evidence which would merely be cumulative, and granting the government's motion will not materially limit the defendant's ability to cross-examine government witnesses.

### III.    Conclusion

For the foregoing reasons, the government respectfully moves under Rules 402, 403, 608, 609 and 611 to preclude various lines of cross-examination as detailed herein.

### IV.    Sealing is Appropriate

Pursuant to the protective order in this case, the government respectfully requests permission to submit this brief under seal. See Dkt. No. 57 ¶ 8. This brief details information regarding the government's cooperating witnesses. Although the cooperating witnesses are not identified by name herein, the defendant's criminal associates likely could use the information described herein to identify that witness. Moreover, the information discussed herein is sensitive information about which the government seeks to preclude public questioning.

Thus, sealing is warranted because of the concerns regarding the safety of potential witnesses and their families, and the danger posed by disclosing the potential witnesses' identities and their cooperation with the government.  Sealing is further warranted to protect the disclosure of sensitive information regarding the government's witnesses.  See United States v. Amodeo, 44 F.3d 141, 147 (2d Cir. 1995) (need to protect integrity of ongoing investigation, including safety of witnesses and identities of cooperating witnesses, and to prevent interference, flight and other obstruction, may be compelling reason justifying sealing); see Feb. 5, 2018 Mem. & Order Granting Gov't Mot. for Anonymous and Partially Sequestered Jury, Dkt. No. 187 at 2-3 (concluding that defendant's actions could pose risk of harm to cooperating witnesses).  As the facts set forth herein provide ample support for the "specific, on the record findings" necessary to support partial sealing, Lugosch v. Pyramid Co., 435 F.3d 110, 120 (2d. Cir. 2006), the government respectfully requests that the Court permit the government to file this motion to limit cross-examination under seal.  Should any order of the Court regarding this application describe the sealed information in question with particularity, rather than in general, the government likewise requests that those portions of the order be filed under seal.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney
Eastern District of New York

ARTHUR G. WYATT, CHIEF
Narcotic and Dangerous Drug Section
Criminal Division,
U.S. Department of Justice

OF COUNSEL:

ARIANA FAJARDO ORSHAN
United States Attorney
Southern District of Florida

cc:    Clerk of Court (BMC) (by ECF)
       Defense Counsel (by ECF and E-mail)

13