**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

GMP:PEN
F. #2009R01065

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 9, 2018

**TO BE FILED UNDER SEAL**

By ECF

The Honorable Brian M. Cogan
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Joaquin Archivaldo Guzman Loera
Criminal Docket No. 09-466 (S-4) (BMC)

Dear Judge Cogan:

The government respectfully submits this letter in connection with the trial in the above-referenced matter. At trial, the government anticipates calling the following law enforcement witnesses, among others: (1) Customs and Border Protection ("CBP") Officer [redacted]; (2) Drug Enforcement Administration ("DEA") Special Agent ("SA") [redacted] Jr.; (3) DEA SA [redacted] (4) Chicago Police Officer [redacted] (5) DEA Senior Forensic Chemist [redacted] (6) CBP Officer [redacted] (7) DEA Supervisory Intelligence Research Specialist ("SIRS") [redacted] (8) CBP Officer [redacted] (9) SA [redacted] of the Federal Bureau of Investigation ("FBI"); (10) FBI Evidence Custodian [redacted]; and (11) DEA Special Agent [redacted] Pursuant to its obligations under Giglio v. United States, 405 U.S. 150 (1972), the government hereby notifies the defendant of the incidents detailed below, for which certain of the witnesses received a reprimand and/or disciplinary action. The government moves in limine to preclude cross-examination about all of the disclosed incidents.

I. Anticipated Testimony and Disclosures by the Government

A. CBP Officer [redacted]

The government anticipates that, at trial, Officer [redacted] would testify regarding his involvement in the seizure of [redacted] Officer [redacted] was previously involved in a motor vehicle accident while he was driving a government vehicle. An investigation of the accident determined that Officer [redacted] failed to exercise caution. He received a one- day suspension.

B. DEA Special Agent [redacted]

The government anticipates that, at trial, SA [redacted] would testify to being part of the chain of custody for a quantity of heroin that was seized in Chicago on November 13, 2008. SA [redacted] put the seized heroin in a locker, removed it the next day it and gave it to another officer. On December 16, 2008, after SA [redacted] and other law enforcement officers executed a search warrant at a defendant's home, the defendant alleged that certain personal property had gone missing from the home. Although an Office of the Inspector General ("OIG") investigation determined that no evidence of theft could be attributed to any personnel that participated in the execution of the search warrant, the investigation did conclude that, as the primary case agent, SA [redacted] failed to ensure that all of the seized evidence was properly documented, inventoried and secured. As a consequence, OIG recommended that SA [redacted] be issued a letter of caution for failing to follow written instructions.

C. Retired DEA SA [redacted]

The government anticipates that, at trial, SA [redacted] would testify regarding a meeting he had with the defendant at the Puente Grande prison in Mexico in March 1998. In 2009, SA [redacted] was suspended for 45 days without pay for conduct occurring between 2005 and 2007, to include: (1) four instances of being under the influence of alcohol on duty, (2) two instances of unauthorized use of a government vehicle after consuming alcohol, and (3) two instances of using poor judgment. One incident of poor judgment involved SA [redacted] carrying his DEA issued weapon into a foreign country without authorization. The other involved consuming alcohol and allowing his staff to consume alcohol during office lunches.

D. Retired [redacted] Police Officer [redacted]

The government anticipates that, at trial, Officer [redacted] would testify about the seizure of [redacted]

Officer [redacted] advised the government that he was involved in the arrest of a distraught woman in his precinct in the 1970s. After several warnings about the disruptive nature of her conduct, officers in the precinct arrested the woman. The woman ultimately filed a civil suit against the arresting officers. Officer [redacted] states the civil suit was resolved when a jury found in Officer [redacted] favor. It should be noted that, in corroboration of Officer [redacted] statements, there is no mention of this incident in Officer's [redacted] police file.

E. DEA Senior Forensic Chemist [redacted]

The government anticipates that, at trial, Forensic Chemist [redacted] will testify regarding findings he made on February 29, 2016, when he tested cocaine that was related to a previous cocaine seizure. On August 26, 2009, while on temporary duty status, after consuming an alcoholic beverage, Forensic Chemist [redacted] operated a rental vehicle, which he had rented with his government travel card. On January 7, 2011, Forensic Chemist [redacted] was suspended without pay for 30 days based on the charge of unauthorized use of an official government vehicle.

F. DEA Supervisory Intelligence Research Specialist [redacted]

DEA SIRS [redacted] is expected to testify regarding the chain of custody of a seized [redacted] In 1990, SIRS [redacted] was charged with being a minor in possession and paid a fine. In 1991, SIRS [redacted] was charged with public intoxication and again paid a fine. Both incidents preceded employment with DEA.

G. CBP Officer [redacted]

The government anticipates that, at trial, Officer [redacted] would testify to his involvement in the seizure of [redacted] Prior to joining CBP, in approximately 2000, Officer [redacted] was issued two tickets for being a minor in possession of alcohol. In approximately 2003 or 2004, while Officer [redacted] was in college, he was arrested for drinking during prohibited hours and ordered to pay a $25 fine. In March 2018, Officer [redacted] vehicle was broken into and his badge was stolen out of the vehicle. He reported the incident within 24 hours and there is currently an investigation open about this incident.

H. CBP Officer [redacted]

The government anticipates that, at trial, Officer [redacted] would testify to authenticate images that were taken [redacted]. Prior to becoming a CBP officer, [redacted] was an

officer with the New York City Police Department ("NYPD"). In 1988, while an NYPD officer, [redacted] was on foot patrol when a man attempted to run over [redacted] with his car. A foot chase ensued between [redacted] and the man, during which the man jumped into the river and never came out. No charges were filed against [redacted] and no grand jury was ever convened to investigate the matter. A civil suit was filed against [redacted] but it was dismissed in 1994.

I. FBI SA [redacted]

The government anticipates that, at trial, SA [redacted] will testify regarding support he, in his official capacity, provided to Mexican law enforcement in an attempted capture operation of the defendant in Cabo San Lucas, Baja California, Mexico, on February 22, 2012. SA [redacted] will testify about observations made on that day, as well as about evidence he collected at the site of the attempted capture. In a report dated March 1, 2012, SA [redacted] described the events leading up to the February 22, 2012 capture operation, and the operation itself. At the end of this twelve-page report, SA [redacted] wrote two paragraphs (attached as Exhibit A) opining on the amount of vigor and competence the Mexican government applied in its efforts to capture the defendant. He also opined about the fact that the Mexican government's lack of effort may be due to the defendant's ties with high-level officials.

J. FBI Evidence Custodian [redacted]

[redacted] is expected to testify at trial regarding the chain of custody of discs containing intercepted communications, which he removed from evidence in 2017. Prior to his employment with the FBI, in 2012, [redacted] received a ticket for underage alcohol drinking. [redacted] pleaded no contest, and he paid a fine

K. DEA Agent [redacted]

The government anticipates that, at trial, SA [redacted] will authenticate a wiretap that was administered in 1994 in Chicago. In an abundance of caution, SA [redacted] provided the government with a myriad of notes from the case file, all of which the government turned over § 3500 material. Upon further examination and discussion with SA [redacted] the government realized that many of those notes were not prepared or adopted by SA [redacted] (the "unrelated notes") and were mistakenly provided to the defendant as SA [redacted] § 3500 material. (The government recently specifically identified to the defendant which of the notes were SA [redacted] § 3500 material and which notes were unrelated notes).

II. Relevant Law

Trial courts have broad "discretion to permit or deny a line of inquiry on cross-examination." United States v. Cruz, 894 F.2d 41, 43 (2d Cir. 1990); see also United States v. Lawes, 292 F.3d 123, 131 (2d Cir. 2002); Fed. R. Evid. 611(a) ("The court shall exercise reasonable control over the mode and order of interrogating witnesses . . . ."). Pursuant to Federal Rule of Evidence 608(b),

> Specific instances of the conduct of a witness . . . may not be proved by extrinsic evidence . . . . [but] may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness . . . .

"Rule 608(b) is intended to be restrictive. . . . The rule does not authorize inquiry on cross-examination into instances of conduct that do not actually indicate a lack of truthfulness." United States v. Nelson, 365 F. Supp. 2d 381, 386 (S.D.N.Y. 2005) (citing Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence 608.22[2][c][1] (2d ed. 1997)). "[E]ven if the prior act does concern the witness's character for truthfulness under Rule 608(b), its probative value must not be substantially outweighed by its unfairly prejudicial effect under Rule 403." United States v. Devery, 935 F. Supp. 393, 407-08 (S.D.N.Y. 1996); see also Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action"); Fed. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless preparation of cumulative evidence.").

Courts in this Circuit have consistently precluded cross-examination of government witnesses concerning substantiated complaints about a law enforcement witnesses' conduct in the line of duty where the alleged conduct is not related to the witness's character for truthfulness. See, e.g., United States v. Lawes, 292 F.3d 123, 131-32 (2d Cir. 2002) (affirming district court's decision to bar defense from cross-examining officer about a CCRB finding in an unrelated case that the officer used excessive force against an arrestee as it "provides nothing of value with respect to [the officer's] motivation to lie about the circumstances of appellant's arrest in the present case"); United States v. Lights, No. 15 CR. 721, 2016 WL 7098633, at *3-4 (S.D.N.Y. Dec. 5, 2016) (precluding cross-examination about substantiated allegations that law enforcement witness abused his authority by questioning

individual during traffic stop and not preparing required stop and frisk report, because such allegations did not bear on witness's credibility); United States v. Stone, No. 05 CR 401 (ILG), 2007 WL 4410054, at *1 (E.D.N.Y. Dec. 14, 2007) (precluding cross-examination concerning a substantiated CCRB complaint regarding assault allegations because it was not "probative of truthfulness or untruthfulness"); United States v. Laster, No. S1 06 CR 1064 (JFK), 2007 WL 2872678, *2 (S.D.N.Y. Sep. 28, 2007) (finding "no basis under Rule 608(b) for the defense to cross-examine [government witness] regarding the CCRB complaint, the findings of the CCRB, or the events that underlay the CCRB proceedings" where three-year-old allegations were not relevant to instant case or to witness's credibility).

## III. Cross-Examination and Argument Should Be Precluded

As explained further below, the matters outlined above do not constitute proper impeachment material pursuant to Federal Rule of Evidence 608(b) because none of them relate to any of the issues to be resolved at trial, and they are not relevant to the witnesses' capacity for truthfulness; and the prejudice to the witnesses outweighs the minimal probative value of the evidence. Alternatively, even if the Court were to conclude there was some relevance to these matters, they should nevertheless be excluded because their probative value is substantially outweighed by the danger of unfair prejudice. See Fed. R. Evid. 403. Therefore, the government respectfully moves for an order precluding defense counsel from raising these matters on cross-examination or in argument.

### A. CBP Officer [redacted]

Officer [redacted] disciplinary action for his failure to exercise caution while using an official government vehicle does not constitute proper impeachment material, because it bears no connection to his capacity for truthfulness. It also does it bear any relevance to his testimony in this case. Thus, any questioning on this topic should be precluded pursuant to Rules 608, 401 and 403.

### B. DEA Special Agent [redacted]

SA [redacted] should not be questioned about the matter for which he received a letter of reprimand—failure to ensure that all of the evidence seized during the execution of a search warrant was properly documented, inventoried and secured—under Rule 608, because his conduct does not bear on his capacity for truthfulness. In fact, SA [redacted] was cleared of the underlying allegation, namely that property was stolen from a defendant during an arrest. Thus, questioning of Officer [redacted] should also be precluded under Rules 401 and 403. The execution of the search warrant took place a month after the drug seizure that is the subject of SA [redacted] testimony in this case, and therefore is not relevant to SA [redacted] actions related

to the drug seizure that is the subject of his testimony. Therefore, the Court should also preclude questioning about the reprimand under Rules 401 and 403.

C. Retired DEA SA [redacted]

The matter for which SA [redacted] was disciplined—namely, his being under the influence of alcohol on duty, his unauthorized use of a government vehicle after consuming alcohol, and his exercising poor judgment—do not constitute proper impeachment material. First, this conduct post-dated the interaction that SA [redacted] had with the defendant by approximately seven years, and therefore his improper conduct is irrelevant to the instant case. Thus, the Court should preclude questioning of SA [redacted] concerning these actions under Rule 401. Second, the Court should not permit SA [redacted] to be questioned about his actions, because they do not relate to SA [redacted] capacity for truthfulness and should be precluded under Rule 608. Moreover, his disciplinary records have little probative value of SA [redacted] interaction with the defendant, yet it would be overly prejudicial to the witness. Thus, Rule 403 justifies preclusion of cross-examination.

D. Retired [redacted] Police Officer [redacted]

The Court should preclude questioning of Officer [redacted] about the incident with the distraught woman under Rule 403, as being overly prejudicial. There was never a determination that Officer [redacted] engaged in any inappropriate conduct and the only reason to raise the issue would be to embarrass the witness and prejudice the jury against him. This line of questioning would be unfair to Officer [redacted] and it would require a trial within a trial to explain the appropriateness of his conduct. See Rickets 74 F.3d 1414. Moreover, the incident occurred at least two decades before the seizure at issue in this case. Therefore, the incident has no relevance to the officer's testimony in this case and questioning should be precluded under Rules 401 and 403. Finally, the arrest incident does not relate to Officer [redacted] capacity for truthfulness, and the Court therefore should preclude questioning under Rule 608.

E. Forensic Chemist [redacted]

The matter for which Forensic Chemist [redacted] was disciplined—namely, his unauthorized use of an official government vehicle after having had alcohol—occurred approximately seven years prior to his examination of the evidence relevant to this case. Thus, this event does not constitute proper impeachment material pursuant to Rule 608, because it bears no relation to Forensic Chemist [redacted] capacity for truthfulness. Moreover, under Rule 401 and 403, the matter bears no relation to his testimony in the instant case. Thus, any questioning on this topic should be precluded as irrelevant and overly prejudicial.

F. DEA Supervisory Intelligence Research Specialist [redacted]

As with Officer [redacted] the matters for which DEA SIRS [redacted] was charged—namely, being a minor in possession of alcohol—does not constitute proper impeachment material, because it bears no relation to [redacted] capacity for truthfulness. Also, these events do not bear any relevance to [redacted] testimony in this case, as these incidents occurred prior to him ever becoming a DEA SIRS. Thus, the Court should preclude any questioning on this topic under Rules 608, 401 and 403.

G. CBP Officer [redacted]

The matters for which Officer [redacted] received tickets and/or arrested—namely, being a minor in possession of alcohol and drinking during prohibited hours—do not constitute proper impeachment material, because they bear no relation to Officer [redacted] capacity for truthfulness. Also, these events do not bear any relevance to Officer's [redacted] testimony in this case, as these incidents occurred 12 years prior to Officer [redacted] ever becoming a CBP Officer. Thus, the Court should preclude any questioning on this topic under Rules 608, 401 and 403.

Additionally, the open investigation into Officer [redacted] badge being stolen from his vehicle should also be precluded as there have been no substantiated charges arising from this alleged conduct. <u>See United States v. Stone</u>, 2007 WL 4410054, at *1 (E.D.N.Y. Dec. 14, 2007) (holding that unsubstantiated CCRB complaints in which the testifying NYPD witness was accused of conducting an unauthorized search, being rude, and punching an individual were not "probative or truthfulness or untruthfulness").

H. CBP Officer [redacted]

The Court should preclude questioning of CBP Officer [redacted] about the unfortunate incident of the man who jumped into the water under Rule 403, as being overly prejudicial. There was never a determination that Officer [redacted] engaged in inappropriate conduct, and the only reason to raise the issue would be to embarrass the witness and prejudice the jury against him. Not only would this be unfair to the witness, but the government would need to conduct a trial within a trial to explain the appropriateness of Officer [redacted] conduct. <u>Rickets</u>, 74 F.3d at 1414. Moreover, the incident occurred over a decade before the CBP images were taken that are the subject of the Officer [redacted] testimony. Therefore, the incident has no relevance to the instant case or Officer [redacted] testimony and the Court should preclude questioning under Rule 401. Finally, the incident does not bear on Officer [redacted] capacity for truthfulness, and the Court therefore should preclude it under Rule 608.

I. FBI SA [redacted]

SA [redacted] comments at the end of his report represent his personal opinions regarding the conduct of Mexican law enforcement during an unsuccessful attempt to capture the defendant. These opinions, which expressed SA [redacted] frustration with Mexican law enforcement, do not bear on his credibility about the matters to which is will testify. See United States v. Estrada, 430 F. 3d 606, 617-618 (2nd Cir. 2005) (distinguishing between "crimes that reflect adversely on a person's integrity, and which therefore bear on honesty—such as those involving deceit, fraud, and theft—and acts of violence, which may result from a short temper, a combative nature, extreme provocation, or other causes, and generally have little or no direct bearing on honesty and veracity").

Moreover, the subject of the Mexican government's lack of motivation for supporting the operation to capture the defendant, and the author's speculation about what fate the defendant could possibly meet, would create a sensational distraction from SA [redacted] testimony, thereby misleading and causing confusion with the jury. The government would be forced to litigate the issue before the jury causing undue delay to an already lengthy trial and creating a "trial within a trial," as the government attempted to provide the jury with a proper context for the statements. See Ricketts v. City of Hartford, 74 F.3d 1397, 1414 (2d Cir. 1996), as amended on reh'g in part (Feb. 14, 1996) (district court did not abuse its broad discretion in determining that trial within a trial concerning a police officer's interaction with a bystander would have been more confusing than helpfully probative).

J. FBI Evidence Custodian [redacted]

As with Officer [redacted] and SIRS [redacted] the matters for which FBI employee [redacted] received a ticket—namely, being a minor in possession of alcohol—does not constitute proper impeachment material, because it bears no relation to [redacted] capacity for truthfulness. Also, these events do not bear any relevance to [redacted] testimony in this case, as these incidents occurred prior to him ever becoming a CBP Officer. Thus, the Court should preclude any questioning on this topic under Rules 608, 401 and 403.

K. SA [redacted]

The government moves pursuant to Rules 403 to preclude cross-examination of [redacted] concerning statements contained in the unrelated notes. To allow such cross-examination would mislead and confuse the jury. It would be overly prejudicial and outright unfair to SA [redacted] given that the statements were neither prepared nor adopted by him. Thus, the Court should preclude this line of cross-examination under Rules 401 and 403. Moreover, the unrelated notes do not relate to SA [redacted] capacity to be truthful. Therefore, the Court should preclude cross-examination of SA [redacted] using the unrelated notes under Rule 608.

IV. Conclusion

For the foregoing reasons, the Court should preclude argument and cross-examination of the above-listed witnesses, on the topics described above.

V. Sealing is Appropriate

Pursuant to the protective order in this case, the government respectfully requests permission to submit this brief under seal. See Dkt. No. 57 ¶ 8. This brief details information regarding the government's law enforcement witnesses. Moreover, the information discussed herein is sensitive information about which the government seeks to preclude public questioning.

Thus, sealing is warranted because of the concerns regarding the safety of potential witnesses and their families, and the danger posed by disclosing the potential witnesses' identities. Sealing is further warranted to protect the disclosure of sensitive information regarding the government's witnesses. See United States v. Preldakaj, 456 Fed. Appx. 56, 59 (2d Cir. 2012) (noting "government's legitimate right to protect the confidentiality of its agents' records"); United States v. Amodeo, 44 F.3d 141, 147 (2d Cir. 1995) (need to protect integrity of ongoing investigation, including safety of witnesses and identities of cooperating witnesses, and to prevent interference, flight and other obstruction, may be compelling reason justifying sealing); Feb. 5, 2018 Mem. & Order Granting Gov't Mot. for Anonymous and Partially Sequestered Jury, Dkt. No. 187 at 2-3 (concluding that defendant's actions could pose risk of harm to witnesses). As the facts set forth herein provide ample support for the "specific, on the record findings" necessary to support partial sealing, Lugosch v. Pyramid Co., 435 F.3d 110, 120 (2d. Cir. 2006), the government respectfully requests that the Court permit the government to file this motion to preclude cross-examination under seal. Should any order of the Court regarding this

application describe the sealed information in question with particularity, rather than in general, the government likewise requests that those portions of the order be filed under seal.

Respectfully submitted,

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

ARTHUR G. WYATT, CHIEF
Narcotic and Dangerous Drug Section
Criminal Division,
U.S. Department of Justice

OF COUNSEL:

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY
Southern District of Florida

cc: Clerk of Court (BMC) (via ECF)
Defense Counsel (via Email)