**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

GMP:MPR
F. #2009R01065

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 19, 2018

**TO BE FILED UNDER SEAL**

By ECF

The Honorable Brian M. Cogan
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Joaquin Archivaldo Guzman Loera
Criminal Docket No. 09-466 (S-4) (BMC)

Dear Judge Cogan:

The government respectfully submits this letter in connection with the trial in the above-referenced matter. Concurrently with this letter, and pursuant to its obligations under Giglio v. United States, 405 U.S. 150 (1972), the government has notified the defendant by separate letter of information related to certain potential government witnesses. In this letter, the government moves in limine to preclude cross-examination about certain of the disclosed information and for a limiting instruction related to court-imposed sentences on the government's cooperators. Additionally, for purposes of streamlining its case, the government has elected not to proceed on certain violations charged in Count One of the Indictment as well as several additional counts in the Indictment, which are outlined below.

## I. Motion to Limit Cross-Examination

### A. Legal Standard

The scope and extent of cross-examination is committed to the sound discretion of the district court. See United States v. Wilkerson, 361 F.3d 717, 734 (2d Cir. 2004). The court may properly bar cross-examination that is only marginally relevant to a defendant's guilt or other issues before the court. See United States v. Maldonado-Rivera, 922 F3d. 934, 956 (2d Cir. 1990); see also Fed. R. Evid. 611 (stating that "court should exercise reasonable

PROTECTED MATERIAL

control . . . so as to . . . avoid wasting time[] and protect witnesses from harassment or undue embarrassment").

A "decision to restrict cross-examination will not be reversed absent an abuse of discretion." United States v. Lawes, 292 F.3d 123, 131 (2d Cir. 2002) (citing United States v. Rosa, 11 F.3d 315, 335 (2d Cir. 1993)). The Second Circuit has repeatedly upheld district courts' exercise of discretion in imposing reasonable limits on the subjects that may be inquired into on cross-examination. See United States v. Rivera, 971 F.2d 876, 886 (2d Cir. 1992) ("The court is accorded broad discretion in controlling the scope and extent of cross-examination."); Rosa, 11 F.3d at 336 (holding that district court properly precluded cross-examination on alleged rape and burglary by witness because conduct did not bear directly on witness's credibility and allegations were unsubstantiated).

Where a party seeks to elicit testimony regarding specific instances of a witness's conduct to attack the witness's character for truthfulness, the admission of that testimony is governed by Federal Rule of Evidence 608(b). See United States v. Peterson, 808 F.2d 969, 973-74 (2d Cir. 1987); see also United States v. Cruz, 894 F.2d 41, 43 (2d Cir. 1990) ("Under Rule 608(b), the court has discretion to permit or deny a line of inquiry on cross-examination."). Rule 608(b) provides in pertinent part:

> Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness.

Fed. R. Evid. 608(b). The advisory committee's note to Rule 608(b) also notes that because the "possibilities of abuse are substantial" in cross-examination, specific instances may only be inquired into if they are probative of truthfulness, "not remote in time," and not "outweighed by danger of unfair prejudice, confusion of issues, or misleading the jury." Fed. R. Evid. 608 ad. comm. note.

Rule 609(a)(1)(A) provides that evidence of a witness's conviction for a felony offense "must be admitted, subject to Rule 403" and that evidence "for any crime regardless of the punishment . . . must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement." Fed. R. Evid. 609(a)(2). Moreover, if more than 10 years have passed since the witness's conviction or release from confinement, whichever is later, evidence of a conviction

PROTECTED MATERIAL

is "admissible only if its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b).

Admission of such evidence is further limited by Federal Rules of Evidence 402 and 403, which exclude otherwise relevant evidence if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues . . . , or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." United States v. Figueroa, 548 F.3d 222, 229 (2d Cir. 2008); United States v. Devery, 935 F. Supp. 939, 407-08 (S.D.N.Y. 1996) ("[E]ven if the prior act does concern the witness's character for truthfulness under Rule 608(b), its probative value must not be substantially outweighed by its unfairly prejudicial effect under Rule 403."); United States v. Brown, No. 07-CR-874 (KAM), 2009 WL 497606, at *4 (E.D.N.Y. Feb. 26, 2009). "In evaluating the probity of specific instances of conduct, courts consider numerous factors, including 'whether the testimony of the witness in question is crucial or unimportant, the extent to which the evidence is probative of truthfulness or untruthfulness, the extent to which the evidence is also probative of other relevant matters, the extent to which the circumstances surrounding the specific instances of conduct are similar to the circumstances surrounding the giving of the witness's testimony, [and] the nearness or remoteness in time of the specific instances to trial . . . .'" United States v. Nelson, 365 F. Supp. 2d 381, 390 (S.D.N.Y. 2005) (quoting John W. Strong, McCormick on Evidence § 41).

Likewise, Federal Rule of Evidence 611 requires district courts to exercise "reasonable control" over the mode of interrogating witnesses so as to avoid "needless consumption of time" and to "protect witnesses from harassment or undue embarrassment." Fed. R. Evid. 611(a). Thus, when considering the admission under Rule 608(b) of specific instances of conduct that the court finds probative of truthfulness, the court must balance the probative nature of the conduct against the Rule 403 and Rule 611 factors. See Brown, 2009 WL 497606 at *4. Moreover, pursuant to Rule 608(b), extrinsic evidence of a witness's prior conduct may not be admitted to attack his truthfulness. Peterson, 808 F.2d at 973-74; Brown, 2009 WL 497606 at *3.

Additional legal standards that specifically relate to the particular items of evidence or lines of questioning that the government seeks to preclude are referenced below.

B. Discussion

1. Domestic Violence Allegations

The government seeks to preclude cross-examination related to allegations of domestic violence by two cooperating witnesses.

PROTECTED MATERIAL

Cooperating Witness No. 9 ("CW9")[1] was involved in two domestic disputes, both of which resulted in his arrest, even though legal charges were subsequently dismissed. Specifically, in December 2014, CW9 had an argument with his wife that resulted in his arrest, and in February 2015, CW9 was involved in a fight with his adult stepson, for which he was arrested. Both charges were subsequently dismissed.

Cooperating Witness No. 10 ("CW10") recalls one occasion, in approximately 1996-97, on which he slapped his then-wife. He recalls that he felt jealous about an issue that he cannot recall with specificity, and that he slapped her with an open hand. He recalls physically pushing her away on another occasion, and that he had frequent verbal arguments with her in which he threatened her with violence, although such violence never materialized. They were divorced in approximately 1997.

The Court should preclude cross-examination into these instances of domestic violence under Rules 608, 403, and 611. No criminal convictions resulted from any of these instances, so Rule 609 does not apply. Cross-examination concerning them could therefore only be permitted pursuant to Rule 608(b). But, as noted above, a district court nonetheless enjoys "broad discretion" to impose limits on cross-examination. Rivera, 971 F.2d at 886. Rule 608(b), moreover, is "intended to be restrictive" and "does not authorize inquiry on cross-examination into instances of conduct that do not actually indicate a lack of truthfulness." Nelson, 365 F. Supp. 2d at 386. Applying these principles, this district has previously prohibited defendants from inquiring about instances of domestic violence on cross-examination. See United States v. Fama, No. 12-CR-186 (WFK), 2012 WL 6094135, *1 (E.D.N.Y. Dec. 7, 2012) (precluding cross-examination as to domestic violence allegations, noting that there is not "anything inherent in the nature of such acts that would directly involve truthfulness").

Even if admissible under Rule 608(b), domestic violence instances should also be excluded under Rules 403 and 611. The instances of abuse could mislead and confuse the jury, and risk unfair prejudice by inviting the jury improperly to judge the witnesses' credibility based on the jurors' views of domestic violence rather than a proper assessment of the witnesses' truthfulness. See Fama, 2012 WL 6094135 at *1 (holding that domestic violence allegations against witness are excludable in Rule 403 analysis because any probative value is outweighed by "unfair prejudice that could result if the jury were to focus on the purported instances of abuse rather than [the witness's] testimony about the bank robbery"); see also United States v. Jeffers, 402 Fed. Appx. 601, 603 (2d Cir. 2010) ("Moreover, even if the

[1] The government continues sequentially here the numbering of cooperating witnesses from its first motion to preclude cross-examination of cooperating witnesses. See Dkt. No. 350.

PROTECTED MATERIAL

alleged abuse was somehow relevant to Hick's motivation for testifying, which is not clear, the district court did not abuse its discretion in concluding that any probative value was substantially outweighed by unfair prejudice and the need for a mini-trial on domestic disputes.").

2. Prior Arrests

The government previously disclosed to the defendant that CW7 was arrested in 1999 for misdemeanor criminal trespass of a vehicle and in 2000 for misdemeanor domestic battery/bodily harm. In the former arrest, CW7 was operating a family member's vehicle with that family member's consent when he was pulled over and arrested for driving what the police initially believed had been a stolen vehicle. The charges were ultimately dropped. In the latter, CW7 was attacked by a family member in a shopping mall, then pushed the family member away to escape from the situation, and did not learn until some time later when the family member decided to press charges and accuse him of domestic battery. This charge was also dropped. As CW7 was not convicted of either crime, Rule 609 does not apply, and extrinsic evidence of the crimes cannot be admitted. Nor should the defendant be allowed to cross examine the witness about the conduct under Rule 608, as the conduct underlying the two arrests is not "probative of the character for truthfulness or untruthfulness of . . . the witness." Fed. R. Evid. 608. This is particularly the case given the fact that 19 and 18 years, respectively, have passed since the arrests. See Fed. R. Evid. 608 advisory committee's note. The Court should preclude the defendant from questioning CW7 about these two arrests.

The government previously disclosed to the defendant that CW3 was arrested for drunk driving in Mexico. In approximately 1988-1990, CW3 got into a car accident, while he was high on cocaine and drunk. The defendant's girlfriend suffered a minor head injury after the car spun out of control. CW3 was arrested, but the case was dismissed. He believes that his mother may have paid the prosecutor a bribe, but does not recall for certain. In approximately 1990 to 1993, as CW 3 was driving home, he was drunk and high on cocaine. He ran multiple red lights and a pickup truck crashed into his car. The man driving the pickup truck fractured his arm. CW3 was arrested, but the case was dismissed after he paid the prosecutor a bribe of approximately $300 to $500. Pursuant to Rule 608, the nature of these arrests may be inquired into only if "probative of the character for truthfulness or untruthfulness of the witness." But CW3's consumption of alcohol and cocaine is not a bad act related to fraud or other acts of dishonesty, and conduct related thereto should be excluded. See Fed. R. Evid. 608 advisory committee's note (noting that "possibilities of abuse are substantial" with respect to cross-examination on particular instances of conduct, and that "consequently safeguards are erected in the form of specific requirements that the instances inquired into be probative of truthfulness or its opposite and not remote in time"). The arrests also should also be excluded on Rule 403 grounds, as they do not bear on CW3's credibility or the issues about which he will testify at trial, but risk an "undue tendency to suggest decision

PROTECTED MATERIAL

on an improper basis" by inviting the jury to assess CW3 based on the accidents which occurred while he was under the influence of drugs and alcohol. Fed. R. Evid. 403 advisory committee's note.

Similarly, the government previously disclosed that CW1 was arrested for assaulting a cab driver in the early 2000's. Specifically, when CW1 realized that his cab driver was driving in the wrong direction, CW1 choked the driver to make him pull over. As a result, several of the cab driver's friends appeared and beat up CW1; they all ended up in jail. Subsequently, CW1's brother's partner arranged for CW1 to be released from jail. Because CW1 was not convicted of a crime arising from this incident, it is not admissible under Rule 609. Pursuant to Rule 608, the nature of these arrests may be inquired into only if "probative of the character for truthfulness or untruthfulness of the witness." Similarly, because it involves an act of violence, it does not bear on CW1's character for truthfulness and thus should not be a basis for cross-examination under Rule 608(b). See Brown, 2009 WL 497606, at *3 (citing United States v. Flaharty, 295 F.3d 182, 191 (2d Cir. 2002); United States v. Turcotte, 515 F.2d 145, 151 (2d Cir. 1975)).

3. Collection of a Personal Loan

Between 2001 and 2005, CW9 made a $3.5 million personal loan to one of his friends from his teenage years, who had also worked with him in the drug trafficking business in the past. The friend had not yet fully repaid CW9 when he was arrested and sent to prison in the United States. The friend continued to promise CW9 that he would repay this loan, even after CW9 had surrendered to authorities in the United States and was living here. However, CW9's friend fell ill with leukemia without completing repayment of the loan. Prior to dying, CW9's friend promised to repay the loan because he knew it was personal money CW9 had saved for his family. After his friend's death, CW9 approached his friend's widow about repaying the loan, because he was in need of the money to support his family in the United States. CW9's Colombian defense attorney at the time was dating CW9's widow.[2] CW9's attorney tried to avoid having the widow repay the loan by complaining to CW9's handling agent. Around the same period, CW9's new U.S. based attorney contacted CW9's handling agent to alert him to this situation. CW9's handling agent looked into the matter and determined that CW9 had not done anything improper and, in fact, the loan was personal in nature.

The Court should preclude cross-examination into CW9's efforts to collect this personal loan because it is not probative of truthfulness under Rule 608, and does not relate to

[2] Notably, CW9's Colombian defense attorney had represented himself to be a U.S.-qualified attorney; that was not true.

PROTECTED MATERIAL

drug trafficking, and thus is not relevant to the defendant's guilt or other issues before the court, see Maldonado-Rivera, 922 F3d. at 956; see also Fed. R. Evid. 611. Furthermore, because this instance of conduct involves CW9 continuing to collect a loan from a friend after he passed away, some jurors may find this off-putting; it thus should be precluded under Rule 403. Given that the probative value of this instance of conduct is virtually non-existent, its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues . . . , or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Figueroa, 548 F.3d at 229.

4. Accidental Death

In 1986 in Colombia, CW1 was in a vehicular accident after he had been speeding. He drove away from the scene. A 10-year-old girl died as a result of the incident. CW1's family sent an attorney to seek out the girl's family while they were still in the hospital and paid them a large settlement on CW1's behalf. No criminal charges or civil suits were ever brought against CW1.[3]

Cross-examination into this incident should be precluded under Rules 608, 403, and 611. No criminal conviction resulted from this instance, so Rule 609 does not apply. Cross-examination about this incident could therefore only be permitted pursuant to Rule 608(b). But as noted above, a district court nonetheless enjoys "broad discretion" to impose limits on cross-examination. Rivera, 971 F.2d at 886. Rule 608(b), moreover, is "intended to be restrictive" and "does not authorize inquiry on cross-examination into instances of conduct that do not actually indicate a lack of truthfulness." Nelson, 365 F. Supp. 2d at 386. Here, although CW1 left the scene of the accident, he nonetheless sought out the family of the victim and took financial responsibility for the accident. Testimony about CW1's involvement in the death of a 10-year-old girl is highly inflammatory, and it would invite the jury to improperly discount CW1's testimony by "suggest[ing] decision on an improper bias, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 advisory committee's note. The highly prejudicial nature of this testimony far outweighs the marginal probative value that CW1's accidental killing of a young girl in a car accident could possibly have. Additionally, this incident occurred 32 years ago. Considering the "remote[ness] in time" and the "danger of

[3] The government did not know about this incident until CW1 disclosed it to the government on April 13, 2016, almost two years prior to his guilty plea. A report dated April 13, 2016, notes that the defendant's family paid officials in connection with this incident. CW1 subsequently clarified that this was incorrect—it was the victim's family who received a payment from his family, not officials.

PROTECTED MATERIAL

unfair prejudice [and] confusion of issues" that is likely to result, cross-examination on this topic should be limited. Fed. R. Evid. 608, advisory committee's note.

To the extent the Court views CW1's payment to the victim's family as a payment to avoid liability, whether it be civil or criminal, the Court should nonetheless preclude cross-examination regarding this incident. Cross-examination on this particular subject would be cumulative of other impeachment evidence that the defense is free to use in examining the credibility of CW1. For example, the government anticipates that CW1 will testify about multiple instances in which he either assisted in bribing government officials, or government officials were bribed on his behalf. United States v. Damblu, 134 F.3d 490, 494 (2d Cir. 1998); see also United States v. Locascio, 6 F.3d at 949 (holding that new allegations involving credibility of government witness, which were cumulative of information about which the witness was subject to cross-examination, would not have materially affected the outcome of the case and did not warrant a new trial); Shabazz v. Artuz, 336 F.3d 154, 166 (2d Cir. 2003) ("[W]here the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material."). Therefore, given the highly prejudicial and cumulative nature of this testimony, the Court should preclude it from cross-examination.

5. Mental Health

CW10 is presently in therapy related to anxiety and sleep deprivation. Additionally, the government has information that while held in solitary confinement in 2002, following his extradition to the United States, CW10 stated to a jail chaplain that he was having thoughts of taking his own life and that he had attempted to hang himself. CW10 later denied reporting to the chaplain that he was having such thoughts or that he had any intention to harm himself. On another occasion, while in solitary confinement in 2001, CW10 reported hearing voices. Additionally, during a medical evaluation while in custody in 2002, CW10 denied a history of using drugs, although he has admitted a history of drug use in subsequent evaluations. Today, CW10 admits to having psychological issues while in solitary confinement in the early 2000s, but does not recall ever denying his history of drug use. CW10's mental health issues all arose well after he was arrested in Mexico in 1998.

Permitting the defense to cross-examine this witness in detail about his mental health issues could only serve to unfairly prejudice the jury and risk confusing the issues. When weighed against the minimal probative value of mental health issues that did not exist during the time of the witnesses' interactions with the defendant, these risks justify limiting inquiry on these subjects pursuant to Rule 403. Indeed, the Second Circuit has held that evidence related to a witness's psychological history may properly be limited on Rule 403 grounds even where the issues in question overlapped with the time about which the witness

PROTECTED MATERIAL

was to testify. See United States v. Sasso, 59 F.3d 341, 348 (2d Cir. 1995) ("In assessing the probative value of [psychological] evidence, the court should consider such factors as the nature of the psychological problem, the temporal recency or remoteness of the history, and whether the witness suffered from the problem at the time of the events to which she is to testify . . ."); Davidson v. Smith, 9 F.3d 4, 7 (2d Cir. 1993) (affirming district court ruling that evidence of the plaintiff's psychiatric institutionalization 15 years prior should be excluded under Rule 403). In this case, the witness's mental health issues did not occur during the time of the events about which he will testify, they are not of a nature that would call into question the veracity of his testimony and are temporally remote. The Court thus should preclude cross-examination on these topics.

6. Cooperating Witness's Concerns with [redacted]

[redacted] These details are not relevant to the jury's assessment of CW10's credibility or the defendant's guilt, risk confusing the issues before the jury or needlessly wasting time, and risk revealing details about a sensitive government program without any probative value. The Court should therefore preclude the defense from eliciting testimony about them on cross-examination of CW10.

Specifically, the government has disclosed to the defendant that more than six years ago, CW10 [redacted] As a result of his frustration, CW10 stated the that he wanted to contact 60 Minutes, Univision and anyone else he could reach to detail his complaints about [redacted] He also indicated that he intended to provide all of the [redacted] contact numbers and details that he had, as well as information about his [redacted] to the Sinaloa Cartel so that they could compromise the operations of the [redacted] CW10 believed that if he provided this information to the cartel, he would no longer be a target for killing or other retribution. He also indicated that he no longer intended to cooperate with the government in ongoing cases. More than two years later, largely the same issue reoccurred.

Additionally, the government has information that, when CW10 [redacted]

PROTECTED MATERIAL

The government also has information that a [redacted] has written that CW10 misrepresented some of his experiences [redacted] to his lawyer and prosecutor and misrepresented to them that he was in immediate danger. The government also has information that in 2008, CW10 notified [redacted] that he wanted to [redacted] so that he could obtain employment that would make it possible for him to travel outside of the United States. [redacted]

Cross-examination into these topics may properly be limited because they are not legally relevant to the issues before the jury. See Thomas, 377 F.3d at 241. Additionally, any slight probative value inherent in examination of CW10's frustrations with [redacted] and the conclusions of [redacted] that CW10 had been deceptive is outweighed by the danger of unfair prejudice, unnecessary delay and confusing the issues before the jury. See Fed. R. Evid. 403. In particular, the jury may interpret CW10's actions as [redacted] The jury may also give undue weight to CW10's threats, never carried out, to provide information about [redacted] to the Sinaloa Cartel. The risk of confusion on this front justifies precluding cross-examination into these matters under Rules 403 and 611. See Figueroa, 538 F.3d at 229.

7. Identifying Details and Witness's Obfuscation Necessary to Protect His Identity

[redacted]

PROTECTED MATERIAL

II. Motion for Limiting Instruction Regarding Court-Imposed Sentences

CW10, like two other cooperating witnesses who are expected to testify following him at trial, already has been sentenced. Because sentencing is a judicial determination based on many factors, the defendant's questions and arguments based on a cooperating witness's sentence may mislead the jury into believing that the government selected and imposed a cooperating witness's sentence. To avoid any such confusion, the government therefore moves for a limiting instruction following CW10's testimony regarding judicially imposed sentences.

The government requests that the Court give the same instruction that it gave in United States v. Cacace, No. 08-CR-240 (S-7)(BMC). There, the Court instructed the jury as follows:

> Ladies and gentlemen, let me explain to you a little bit about how federal sentencing works, particularly with regard to cooperating witnesses. When someone cooperates with the government the government does not determine what sentence they are going to get. Nor does the government [typically] make a recommendation to the sentencing judge as to how much time they're going to get. What the government will do, if it is satisfied with the level of cooperation, is write to the sentencing judge what is known as a 5k1 letter. That sets forth the nature of the crimes that the defendant has committed and all the cooperation that the defendant has undertaken. The judge takes that letter, together with a lot of other information about the defendant and all of the crimes that he's committed, and it is the judge exclusively that decides upon the appropriate sentence; not the government.
>
> So all that a cooperating witness gets from the government, if the government is satisfied with their cooperation, is this 5k1 letter.
>
> I won't tell you that the 5k1 letters aren't important to sentencing judges, they generally are, but it is the judge's decision and only the judge's decision as to what the sentence should be.

Trial Tr. dated Mar. 20, 2012 at 327:15-328:12.

III. Counts and Violations at Trial

In an effort to streamline its case, the government has determined that it will not proceed on the following violations charged in Count One and listed in its bill of particulars

PROTECTED MATERIAL

dated May 11, 2018, see Dkt. No. 227: Violations 13-69, 71, 73-75, 79-80, 90, 92, 94. The government also will not proceed on Counts Five through Nine and Eleven of the Indictment. For ease of reference for the jury, should the Court elect to send the Indictment to the jury during its deliberations, the government requests that the Court submit the Indictment with the Counts and violations re-numbered without altering the substance of the violations and Counts themselves. The government further requests that the Court consecutively number the Counts and violations in the verdict sheet.

"[N]arrowing the scope of an indictment, whether through proof of a lesser offense offered at trial, or by redaction, does not offend the notice and review functions served by a grand jury's issuance of an indictment. United States v. Smith, 918 F.2d 1032, 1037 (2d Cir. 1990) (citing United States v. Miller, 471 U.S. 130, 135 (1985) ("As long as the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment, the right to a grand jury is not normally violated by the fact that the indictment alleged more crimes or other means of committing the same crime.")). The Second Circuit in Smith further noted that "those sections which will not be part of the proof at trial are treated as 'useless averment' that can be 'ignored,' or simply redacted." Smith, 918 F.2d at 1036 (citation omitted). Further, it is well settled that a "district court or the prosecutor may make 'ministerial change[s]' to the indictment, such as to correct a misnomer or typographical errors." United States v. Dhinsa, 243 F.3d 635 (2d Cir. 2001) (quoting United States v. McGrath, 558 F.2d 1102, 1105 (2d Cir.1977) (collecting cases)); see United States v. Levy, 440 F. Supp. 2d 162, 164 (E.D.N.Y. 2006) (allowing alteration of the name of the ammunition charged in the indictment without resubmission to the grand jury); United States v. Lorefice, 192 F.3d 647, 653 (7th Cir. 1999) ("An indictment may be altered without resubmission to the grand jury as long as the alteration makes no material change and there is no prejudice to the defendant.").

Here, renumbering the Indictment would not constitute the government is not making changes to any factual allegations or altering the substance of any of the charges on which it will proceed; rather, it would involve deleting and re-numbering portions of the Indictment in order to prevent confusion for the jury. None of these alterations affects the charging language of the Indictment and none of the changes alters the essential elements of the charged offenses. Moreover, since the defendant is receiving notice of the deletions and renumbering in advance of the trial, he cannot claim surprise or unfair prejudice.

## IV. Conclusion

For the foregoing reasons, the Court should preclude argument and cross-examination of the above-listed witnesses, on the topics described above.

PROTECTED MATERIAL

V. Partial Sealing is Appropriate

Pursuant to the protective order in this case, the government respectfully requests permission to submit this brief partially under seal. See Dkt. No. 57 ¶ 8. Portions of this brief refer to the government's cooperating witnesses. The defendant's criminal associates could use the information described herein to identify those witnesses.

Thus, partial sealing is warranted because of the concerns regarding the safety of potential witnesses and their families, and the danger posed by disclosing the potential witnesses' identities and their cooperation with the government. See United States v. Amodeo, 44 F.3d 141, 147 (2d Cir. 1995) (need to protect integrity of ongoing investigation, including safety of witnesses and the identities of cooperating witnesses, and to prevent interference, flight and other obstruction, may be a compelling reason justifying sealing); see Feb. 5, 2018 Mem. & Order Granting Gov't Mot. for Anonymous and Partially Sequestered Jury, Dkt. No. 187 at 2-3 (concluding that defendant's actions could pose risk of harm to cooperating witnesses). As the facts set forth herein provide ample support for the "specific, on the record findings" necessary to support partial sealing, Lugosch v. Pyramid Co., 435 F.3d 110, 120 (2d. Cir. 2006), the government respectfully requests that the Court permit the government to file this motion to limit cross-examination partially under seal. Should any order of the Court regarding this application describe the sealed information in question with particularity, rather

PROTECTED MATERIAL

than in general, the government likewise requests that those portions of the order be filed under seal.

Respectfully submitted,

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

ARTHUR G. WYATT, CHIEF
Narcotic and Dangerous Drug Section
Criminal Division,
U.S. Department of Justice

OF COUNSEL:

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY
Southern District of Florida

cc: Clerk of Court (BMC) (via ECF)
Defense Counsel (via Email)