GMP:BCR
F.#2009R01065/OCDETF# NY-NYE-616

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

JOAQUIN ARCHIVALDO GUZMAN LOERA,
also known as "El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa," "Papa," "Inge" and "El Viejo,"

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**TO BE FILED UNDER SEAL**

Docket No. 09-CR-466(S-4)(BMC)

MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S TRIAL MOTIONS *IN LIMINE*

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

ARTHUR G. WYATT, CHIEF
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice

OF COUNSEL:
ARIANA FAJARDO ORSHAN
United States Attorney
Southern District of Florida

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in support of additional motions in limine to (1) preclude cross-examination or the introduction of evidence related to a government agent's email describing his personal opinions and characterization of the defendant; (2) preclude the defense from introducing irrelevant, self-serving portions of the defendant's statements made in 1998 to United States law enforcement agents; (3) preclude cross-examination or the introduction of evidence related to a cooperating witness's unsuccessful public authority defense in his own case; (4) preclude the introduction of evidence related to cooperation with the government by a non-testifying coconspirator; (5) preclude cross-examination of a cooperating witness regarding a racially-tinged conversation he had with a family member; (6) preclude cross-examination of a cooperating witness regarding information that the government was obliged to provide to him by the government in light of the defendant's opening statement.

These motions relate to issues that the defendant raised in his opening statement, have arisen during the course of trial so far, or were only recently discovered by the government in the course of preparing for trial. They could not, therefore, have reasonably been raised before trial.

For the reasons set forth herein, the Court should grant the government's motions in limine.

## ARGUMENT

I. Motion to Preclude Admission of and Cross-Examination Regarding a Government Agent's Email Describing His Personal Opinions and Characterization of the Defendant

In opening statements, defense counsel read in a portion of an email written by a Homeland Security Investigations ("HSI") agent offering his personal opinions and characterizations about the defendant and a year-long wiretap investigation in which the agent participated. See 11/13/18 Tr. 597:11-16. During the break in the opening statement, the government objected that this was inadmissible hearsay. See id. at 593:14-17. As the Court explained in providing its initial view of the issue at that time, "if an agent says, 'I believe this guy,' or 'I don't believe this guy,' that's not admissible evidence." Id. at 594:10-12.

During a sidebar the next day, the Court commented that it would be "absolutely impermissible to put in an email from an agent opining on the culpability of the defendant. That's none of the agent's business. He has no ability to form that." 11/14/18 Tr. 611:11-14. Counsel for the defendant suggested that such statements might be admissible as nonhearsay pursuant to Fed. R. Evid. 801(d)(2)(D), which provides that a statement "made by a party's agent or employee on a matter within the scope of that relationship and while it existed" is not hearsay within the general prohibition of the Federal Rules of Evidence. See id. at 611:20-612:2. The Court indicated that it would take argument and briefing on the issue. The next day, the Court provided case citations that the Court understood as standing for the proposition that out-of-court statements of government agents do not fall within the ambit of Rule 801(d)(2)(D). See 11/15/18 Tr. 804:8-14 (citing United States v. Yildiz, 355 F.3d 80 (2d Cir. 2004); United States v. Santos, 372 F.2d 177 (2d Cir. 1967)).

By way of background, the email that defense counsel quoted in his opening statement was produced by the government as part of the Section 3500 materials relating to an HSI Special Agent (the "HSI Agent"). See JJZ0000002172. The government anticipates calling the HSI Agent to introduce the evidence from a Title III wiretap investigation conducted from February 14, 2013 through August 21, 2014. The HSI Agent's testimony will lay the foundation for admission of the Title III intercepts of BlackBerry Messenger ("BBM") communications involving the defendant and his associates during that time period.[1] The government expects the HSI Agent will testify to the mechanics of the wiretap investigation and to what he learned about the structure of the defendant's communication systems based upon his observations. The HSI Agent's testimony will be limited to his observations of the communication systems that were the subject of the wiretap investigation in which he participated. While the government intends to elicit some general testimony regarding the methods and means of communication and communication patterns the HSI Agent observed, it is wholly distinct from testimony regarding the HSI Agent's personal opinions and impressions of the defendant. The government cannot, under the Rules of Evidence, and will not elicit testimony regarding the HSI Agent's personal opinions and impressions about the defendant, the defendant's guilt or the Sinaloa Cartel more generally. The defense is not entitled to do so either. Such opinion testimony would not be the proper subject of examination of a government agent.

---

[1] Other case agents may also be able to provide testimony sufficient to admit intercepts from this particular Title III investigation into evidence. As such, it is not a certainty that the HSI Agent will be called at all.

The email from the HSI Agent quoted by defense counsel was a response to an email from another federal law enforcement agent. The other agent, who was not involved in the investigation into the defendant, wrote to the HSI Agent, knowing that the HSI Agent had been involved in investigating the Sinaloa Cartel and the defendant, to congratulate the HSI Agent on the defendant's capture a few days earlier, on February 21, 2014. See JJZ0000002173-74. In response, the HSI Agent criticized the press coverage relating to the defendant, and noted that only a so-called "roving" wiretap had been sufficient to aid law enforcement in locating the defendant, whose complicated communications systems, network of tunnels beneath safe houses and public corruption had enhanced his ability to evade capture. See JJZ0000002172. It was in that context, responding to press coverage of the defendant and his notoriety, that the HSI Agent offered the opinions and characterization defense counsel quoted in opening statements.

This email is, on its face, hearsay, and the defendant's opening statement indicates that the defense intends to introduce it for the truth of the matter asserted. As defense counsel explained in introducing the email, "their own witnesses think that he is not who the prosecutors claim he is." 11/13/18 Tr. 579:9-10. Thus, it is clear that the defense intends to use the opinion offered in the email to rebut evidence of the defendant's drug trafficking.

Because the defense intends to introduce the email for its truth, it is admissible only if it is nonhearsay pursuant to Rule 801, or falls within the ambit of an exception to the rule against hearsay pursuant to Rules 803 or 804. The defense has argued, at the sidebars quoted above, that the HSI Agent's email is nonhearsay pursuant to Rule 801(d)(2)(D) as the statement of an agent of an opposing party. As the Second Circuit has explained, however, a "government agent's out-of-court statements are not admissible for their truth in a criminal

prosecution as admissions by a party opponent." Yildiz, 355 F.3d at 80. The Yildiz court allowed that statements or filings by government attorneys that bind the government, statements about which a party has "manifested an adoption or belief in its truth," and sworn statements submitted to a court might be nonhearsay, but emphasized that statements by agents outside of court and which the government has not adopted and which do not bind the government are distinguishable. See id. at 82.

The HSI Agent's email falls clearly within the latter category. It is a conclusory opinion offered outside of court in a casual message to an acquaintance, it has not been adopted by the government, and it does not legally bind the government in any way. Pursuant to Yildiz, it is inadmissible here.

Furthermore, because the HSI Agent's email is inadmissible hearsay, it may not be used in cross-examination to probe any alleged inconsistency pursuant to Rule 613(b). Rule 613(b) permits extrinsic evidence of a witness's prior inconsistent statement to be used in certain circumstances where a witness is given an opportunity to explain or deny the inconsistency. As this Court has already ruled, however, in adopting former Judge Forrest's Guidelines Regarding Appropriate Use of 302 Forms in Criminal Trials, see Nov. 2, 2018 Order, "Rule 613(b) does not itself provide a separate, stand-alone basis for the admissibility of such extrinsic evidence—it only governs the proper use of otherwise admissible evidence. In other words, if the underlying extrinsic evidence is inadmissible (because, for instance, it is hearsay), it cannot come in under rule 613(b)." See Case No. 17-cv-350 (S.D.N.Y.), Dkt. No. 819 at 3.

Because the HSI Agent's email is hearsay and does not fall within the scope of Rule 801(d)(2)(D), it is inadmissible. Because it is inadmissible, it may not be introduced at

trial either for its truth or as extrinsic evidence of a prior inconsistent statement under Rule 613(b) should the HSI Agent allegedly testify inconsistently at trial.[2]

## II. Motion to Preclude the Defense from Introducing Irrelevant, Self-Serving Portions of Defendant's Statements to United States Law Enforcement

The government intends to call a retired Drug Enforcement Administration ("DEA") special agent ("retired DEA agent") who conducted an interview of the defendant in 1998 ("the 1998 Statement") while the defendant was being housed at the Puente Grande prison in Mexico. During that interview, the defendant made the following statements that the government intends to elicit at trial:

- The defendant acknowledged that he knew several individuals involved in drug trafficking such as Juan Jose Esparragoza "El Azul".
- The defendant acknowledged that Ismael Zambada Garcia ("Mayo Zambada") was fighting the Arellano Felix Organization because the Arellano Felix Organization killed a drug trafficker named "Chapo Caro."
- The defendant acknowledged that he had charges pending in the United States and requested assistance in avoiding extradition to the United States to face those charges.
- The defendant admitted an alliance with a drug trafficker named Hector "Guero" Palma Salazar.

---

[2] The defense should also not be permitted to attempt to elicit testimony in an effort to create an inconsistency with the email so that they can argue for the admission of the email pursuant to Rule 613(b). It is dubious, under former Judge Forrest's ruling, that Rule 613(b) provides a path to admissibility for otherwise inadmissible evidence, see supra. But in any event, the HSI Agent's opinions about the defendant and his personal reactions to the Title III investigation—such as whether he was "impressed" or not by the defendant—are irrelevant to the defendant's actual guilt or innocence, and risk confusing the jury as to the issues properly before it. Any attempt to elicit the HSI Agent's personal opinions to generate an inconsistency should therefore be prohibited pursuant to Federal Rules of Evidence 402, 403, and 611(a).

- The defendant offered to provide information to the DEA about the Arellano Felix Organization's routes and locations; as well as those of Guero Palma's workers.

- The defendant stated he had met with other drug traffickers in the early 1990s in Mexico City to form an alliance. This alliance was later broken when Ramon Arellano tried to kill the defendant.

- The defendant acknowledged his brother, Arturo Guzman Loera, had legal problem in the United States as well.

For the reasons set forth below, the Court should preclude the defendant from admitting any portion of the defendant's statements to this retired DEA agent at trial. Because the defendant would not be offering any such statements against an opposing party, and there are no other hearsay exceptions that apply, the other statements in the report would be inadmissible hearsay. Additionally, as the Court previously noted in the Memorandum Decision and Order (June 7, 2018 Order, Dkt No. 240 at 9-10), the Rule of Completeness does not compel introduction of the other portions of the defendant's statement not offered into evidence by the government.

As previously argued in the Government's Motion in Limine to Admit Portions of the 2015 Interview Video and Preclude the Defense from Introducing Irrelevant, Self-Serving Portions (See Dkt No. 213, incorporated by reference), Rule 801(d)(2) provides in part that a statement is not hearsay when it is "(a) offered against an opposing party and (b) the statement was made by a party in an individual capacity." See Fed. R. Evid. 801(d)(2)(A). Thus, a defendant's statement may be admissible against him even as it is impermissible for the defendant to offer the same statement.

As articulated by Federal Rule of Evidence 106, the doctrine of completeness provides that "even though a statement may be hearsay, an omitted portion of the statement

must be placed in evidence if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion." United States v. Johnson, 507 F.3d 793, 796 (2d Cir. 2007) (alteration and internal quotation marks omitted).

However, the Second Circuit has explained, while the rule of completeness may "require that a statement be admitted in its entirety when [it] is necessary to explain the admitted portion, to place it in context, or to avoid misleading the trier of fact," it does not require the "introduction of portions of a statement that are neither explanatory of nor relevant to the admitted passages." United States v. Marin, 669 F.2d 73, 84 (1982) (internal citations omitted); see United States v. Jackson, 180 F.3d 55, 73 (2d Cir. 1999) ("The completeness doctrine does not, however, require the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages.").

The 1998 Statement, which the defendant made in an interview setting while he was housed in a Mexican prison, is hearsay if offered by the defendant and, therefore, the Court should bar the defendant from offering these statements into evidence. The government seeks to admit only portions of the 1998 Statement that are relevant to the charged offenses as admissions of a party opponent pursuant to Federal Rule of Evidence 801(d)(2)(A). The limited portions of the interview that the government proposes to introduce are highlighted in the report attached as Exhibit A.

The 1998 Statement was documented in a DEA-6 which includes a summary of the information the defendant provided to both Mexican and U.S. law enforcement. As seen in Exhibit A, the limited statements that the government seeks to introduce are severable from others so the doctrine of completeness is not a consideration here. See Marin, 669 F.2d at 82

("The completeness doctrine does not, however, require introduction of portions of a statement that are neither explanatory of nor relevant to the admitted passages.")

Further, in the 1998 Statement, the defendant made multiple statements that were purely self-serving and designed to further focus law enforcement attention on the activities of his enemies – the Arellano-Felixes. These statements do not relate to, or provide any, additional context to the portion of the interview the government intends to elicit – namely, the defendant's statements that shed light on his own culpability and the culpability of his co-conspirators. In sum, the Court should preclude the defense from eliciting statements outside the scope of those the government has noted above.

III. Motion to Preclude Cross-Examination Regarding Cooperating Witness's Previous, Unsuccessful Public Authority Defense in His Own Case

One of the government's cooperating witnesses previously advanced an unsuccessful public authority defense in his own case. Although the cooperating witness's argument was unsuccessful, as set forth in further detail below, should the defendant here be permitted to cross-examine the cooperating witness about it, the cross-examination risks suggesting to the jury that the cooperating witness engaged in drug trafficking with the assent of the United States government. Because the cooperating witness was a high-ranking member of the Sinaloa Cartel, eliciting detail about the cooperating witness's public authority defense strategy could, in turn, improperly suggest to the jury that the defendant himself, as the leader of the Sinaloa Cartel, was likewise operating with some level of assent or approval by the government. As the Court is aware, however, the defendant has not filed a notice of public authority defense as required by Fed. R. Crim. P. 12.3, and repeatedly has indicated to the Court that the defense does not intend to pursue such a defense strategy. See 11/13/18 Tr.

593:22-23; 11/14/18 Tr. 600:19-22. Because the defendant cannot now advance a public authority defense of his own, he should not be able to imply one through the questioning of a cooperating witness who was his close associate and coconspirator.

On February 18, 2010, Vicente Zambada Niebla was extradited to the United States to stand trial in the Northern District of Illinois, where he had been indicted on April 23, 2009. See United States v. Zambada Niebla, Case No. 1:09-cr-00383 (N.D. Ill.), Dkt. No. 1. (Superseding indictments against Zambada Niebla added the defendant, Ismael Zambada-Garcia, and others as Zambada Niebla's co-defendants. See id., Dkt. No. 7.) On April 3, 2013, Zambada Niebla pleaded guilty to the Third Superseding Indictment against him and agreed to cooperate with the government. See id. Dkt. No. 217.

Before pleading guilty, however, Zambada Niebla's attorneys provided notice pursuant to Rule 12.3 and filed a number of motions in which his defense counsel advanced a public authority defense, asserting that the United States government had "conferred immunity" on him. See id., Dkt. Nos. 85, 94, 95, 108, 109, 128. As the government explained in opposition to Zambada Niebla's motions in his case in the Northern District of Illinois, Zambada Niebla's public authority theory "rest[ed] on the premise that another criminal defendant, Humberto Loya-Castro, indicted in San Diego in 1995 and alleged to be an attorney for and member of the Sinaloa Cartel, entered into a cooperation agreement with DEA agents and the U.S. Attorney's Office in San Diego in an effort to gain a sentencing benefit in his criminal case. After a period of cooperation, Loya-Castro's pending indictment was dismissed in 2008 upon an application to the court by the U.S. Attorney in San Diego." See id., Dkt. No. 109 at 1-2.

Zambada Niebla's public authority arguments derived from the fact that Loya-Castro met with Zambada Niebla while Loya-Castro was cooperating with the DEA and convinced Zambada Niebla to meet with the DEA as well.[3] Zambada Niebla thereafter met with DEA agents in Mexico City in March 2009. Shortly after leaving that meeting, however, Zambada Niebla was arrested by Mexican law enforcement authorities. At no time prior to that meeting, or during the meeting, did the DEA or any other entity of the U.S. government confer any immunity or authorization for Zambada Niebla or the defendant to engage in narcotics trafficking. Nevertheless, Zambada Niebla's attorneys advanced three theories of public authority or immunity: first, that he had a valid immunity agreement with the United States government; second, that the United States government granted the Sinaloa Cartel full immunity from prosecution in Loya-Castro's cooperation agreement with the DEA; and third, that Zambada Niebla detrimentally relied on assurances from the United States government that he was immune from prosecution.

The district court in the Northern District of Illinois rejected all of these arguments. See id., Dkt. No. 170. As that court noted, the only evidence provided by Zambada Niebla's attorneys in support of these arguments was an affidavit by his own attorney. See id. at 3-4. Additionally, Loya-Castro's own cooperation agreement indicated Loya-Castro's understanding that he would "not be promised any benefits…for [his] ongoing cooperation," and several DEA Confidential Source Agreements that Loya-Castro signed also indicated that the DEA provided "no immunity or protection from investigation, arrest, or prosecution," and

[3] Loya-Castro and Zambada Niebla informed both the defendant and his co-defendant (and Zambada Niebla's father) Mayo Zambada about this meeting. The defendant and Mayo Zambada permitted Zambada Niebla to attend the meeting.

that the DEA did not "promise or agree to any consideration by a prosecutor or a court in exchange for cooperation." Id. at 5. With those agreements, as well as additional evidence offered by the government, see id. at 7, the court concluded that there were "no material issues in dispute regarding Zambada [Niebla]'s claim of immunity from prosecution," and therefore rejected the public authority and immunity arguments. Id. at 11. As noted above, Zambada Niebla thereafter pleaded guilty, and has been cooperating with the government since that point. The government anticipates calling Zambada Niebla to testify against the defendant in this trial and does not anticipate eliciting any testimony regarding Zambada Niebla's interactions with Loya-Castro.

The scope and extent of cross-examination is committed to the sound discretion of the district court. See United States v. Wilkerson, 361 F.3d 717, 734 (2d Cir. 2004). A court may properly bar cross-examination that is only marginally relevant to a defendant's guilt or other issues before the court. See United States v. Maldonado-Rivera, 922 F3d. 934, 956 (2d Cir. 1990); see also Fed. R. Evid. 611 (stating that "court should exercise reasonable control . . . so as to . . . avoid wasting time[] and protect witnesses from harassment or undue embarrassment"). A "decision to restrict cross-examination will not be reversed absent an abuse of discretion." United States v. Lawes, 292 F.3d 123, 131 (2d Cir. 2002) (citing United States v. Rosa, 11 F.3d 315, 335 (2d Cir. 1993)). The Second Circuit has repeatedly upheld district courts' exercise of discretion in imposing reasonable limits on the subjects that may be inquired into on cross-examination. See United States v. Rivera, 971 F.2d 876, 886 (2d Cir. 1992) ("The court is accorded broad discretion in controlling the scope and extent of cross-examination."). Additionally, admission of all evidence is limited by Federal Rules of Evidence 402 and 403, which exclude otherwise relevant evidence if its "probative value is

substantially outweighed by the danger of unfair prejudice, confusion of the issues . . . , or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." United States v. Figueroa, 548 F.3d 222, 229 (2d Cir. 2008).

In this case, to permit cross-examination as to Zambada Niebla's unsuccessful public authority defense in his own case would provide the jury with no additional facts or evidence from which it could draw any conclusion as to the defendant's guilt or innocence, nor would it be probative of Zambada Niebla's credibility. The fact that Zambada Niebla's defense counsel made various arguments in his own case and prior to his agreement to cooperate with the government simply do not bear on the defendant's drug trafficking or Zambada Niebla's role in the defendant's organization. Such cross-examination would, however, have an unfairly prejudicial and confusing effect, as it would suggest to the jury that the United States government granted Zambada Niebla "immunity" or authorization to engage in drug trafficking, from which the jury might improperly and incorrectly infer that the government extended some form of assent to the broader drug trafficking activities of the Sinaloa Cartel as a whole, and to the defendant. Lengthy redirect testimony and rebuttal witnesses might then be required to rebut this suggestion of public authority—which, as noted above, is not a defense noticed by the defendant. The Court should exercise its discretion to preclude cross-examination into this irrelevant issue and avoid an unnecessary mini-trial on the defenses raised in Zambada Niebla's own case. See Fed. R. Evid. 611.

## IV. Motion to Preclude Introduction of Evidence Related to Cooperation of Non-Testifying Coconspirator

The Court should also preclude cross-examination and the introduction of evidence related to Humberto Loya-Castro's cooperation with the United States government.

As noted above, Loya-Castro was indicted in the Southern District of California in 1995, and subsequently cooperated with the United States government. Loya-Castro's cooperation with the DEA spanned from 2005 to 2015, and the government voluntarily dismissed his indictment in 2008, in part because of his cooperation. Loya-Castro will not be called by the government to testify in this trial. (Indeed, he has not been actively cooperating with the government for some time.) He is, however, a former associate of the Sinaloa Cartel and coconspirator of the defendant. The government intends to elicit testimony from one cooperating witness that from approximately 1987 to 1993, Loya-Castro was responsible for making corrupt payments to police on behalf of the defendant and the Sinaloa Cartel. Loya-Castro made those payments at the direction of the defendant. A second cooperating witness will corroborate that Loya-Castro served this role for the Sinaloa Cartel prior to 2003.

The government does not intend to elicit testimony from other cooperating witnesses about Loya-Castro; although in light of Loya-Castro's role in the cartel and as one of the defendant's coconspirators, the government is aware that other of its cooperating witnesses knew Loya-Castro and are familiar with the activities he undertook in support of the Sinaloa Cartel. Specifically, that Loya-Castro would meet with the defendant and his partner, Mayo Zambada to gather information about rivals of the Sinaloa Cartel and provide this information to the DEA during the 2005 to 2015 period. The government also does not intend to elicit testimony about Loya-Castro's cooperation with the government. That cooperation occurred many years after the activities for which the government intends to elicit testimony relating to Loya-Castro, and does not bear on Loya-Castro's role from 1987 to 1993 as being responsible for corruption payments to police on behalf of the defendant and the Sinaloa Cartel.

As set forth in Section III above, the Court has broad latitude to limit the scope of cross-examination and may properly bar cross-examination that is only marginally relevant to a defendant's guilt or other issues before the court. See Maldonado-Rivera, 922 F.3d at 956; see also Fed. R. Evid. 611 (stating that "court should exercise reasonable control . . . so as to . . . avoid wasting time[] and protect witnesses from harassment or undue embarrassment").

Cross-examination of the government's cooperating witnesses regarding Loya-Castro's cooperation would not be relevant to the issues before the jury: the fact that Loya-Castro cooperated with the government many years after making payments to police on behalf of the Sinaloa Cartel does not relate to the defendant's guilt or the credibility of the testifying witnesses. Such cross-examination would only serve to waste time and confuse the issues. As with cross-examination regarding Zambada Niebla's unsuccessful public authority defense, moreover, cross-examination of other cooperating witnesses regarding Loya-Castro's cooperation would risk unfair prejudice to the government and the specter of an impermissible public authority defense by insinuating that the government "immunized" Loya-Castro or otherwise assented to his conduct on behalf of the defendant and the Sinaloa Cartel.[4] Cross-examination into Loya-Castro's cooperation should therefore be precluded. It has virtually no probative value, and would risk confusion of the issues, wasting time, and unfair prejudice to the government. See Fed. R. Evid. 611.

[4] Were Loya-Castro to testify for the government, the defense would of course be permitted to cross-examine him as to the benefits he received or hoped to receive for his cooperation. But as noted above, Loya-Castro is no longer cooperating with the government and the government will not be calling him to testify in this trial. The purpose of cross-examining testifying witnesses about their plea agreements and cooperation is to aid the jury in assessing their credibility. Here, however, cross-examining other witnesses about Loya-Castro's cooperation would not aid the jury, as Loya-Castro's credibility is not at issue because he is not testifying.

V. Motion to Preclude Cross-Examination on Racially-Tinged Conversation Between Cooperating Witness and His Family Member

Among the draft transcripts produced to the defense was a transcript of a January 20, 2010 telephone call between cooperating witness Jorge Milton Cifuentes-Villa (J. Cifuentes-Villa) and his mother. In this transcript, Bates 332073-332109, J. Cifuentes-Villa discussed how a Bolivian man named Don Chucho refused to provide cocaine the defendant had paid for through J. Cifuentes-Villa. After J. Cifuentes-Villa's mother urged J. Cifuentes-Villa to talk to Don Chucho to convince him to provide the cocaine, J. Cifuentes-Villa pointed out that any further discussion would be pointless, because Don Chucho was a liar. Then, on pages 17-18 of the transcript, J. Cifuentes-Villa continues: "Anyone can talk, any black man who sweet talks anyone and then he'll say that he loves you a lot. . . . So what he is looking for there, more money is what he is looking for . . . Because I was the fool that gave him the money." Bates 332088-89.

The defendant should not be allowed to cross-examine J. Cifuentes-Villa about this racially-tinged conversation with his mother. J. Cifuentes-Villa's comments relating to Don Chucho are not relevant in any way. They are not, for example, probative of truthfulness or any other issues in the case, and are therefore presumptively inadmissible.

Even assuming they were relevant, any potential relevance would be substantially outweighed by the unfair prejudice and misleading of the jury that would likely result from cross-examination on J. Cifuentes-Villa's comment. The only possible reason to cross-examine J. Cifuentes-Villa about this comment is to inflame the jury's passions. As a consequence, pursuant to Federal Rules of Evidence 401 and 403, the defendant should be precluded from questioning J. Cifuentes-Villa about these comments. For the same reason,

the government seeks to preclude the defendant from introducing this portion of the transcript into evidence.

VI. Motion to Preclude Cross-Examination on Information Provided By the Government to Cooperating Witness Following Opening Statement

As the Court recalls, [redacted]

[redacted]

VII. Partial Sealing is Appropriate

Pursuant to the protective order in this case, the government respectfully requests permission to submit this brief partially under seal. See Dkt. No. 57 ¶ 8. Portions of this brief refer to the government's cooperating witnesses. The government has identified two of them by their full names for the convenience of the Court and in light of the fact that reference to the district in which one of the cooperating witnesses was charged and pleaded guilty would likely reveal him to many observers even if the government used a code number or pseudonym.

Thus, partial sealing is warranted because of the concerns regarding the safety of potential witnesses and their families, and the danger posed by disclosing the potential witnesses' identities and their cooperation with the government prior to their testimony in this case. See United States v. Amodeo, 44 F.3d 141, 147 (2d Cir. 1995) (need to protect integrity of ongoing investigation, including safety of witnesses and the identities of cooperating witnesses, and to prevent interference, flight and other obstruction, may be a compelling reason justifying sealing); see Feb. 5, 2018 Mem. & Order Granting Gov't Mot. for Anonymous and Partially Sequestered Jury, Dkt. No. 187 at 2-3 (concluding that defendant's actions could pose risk of harm to cooperating witnesses). As the facts set forth herein provide ample support for the "specific, on the record findings" necessary to support partial sealing, Lugosch v. Pyramid Co., 435 F.3d 110, 120 (2d. Cir. 2006), the government respectfully requests that the Court permit the government to file this motion partially under seal. Should any order of the Court regarding this application describe the sealed information in question with particularity, rather

than in general, the government likewise requests that those portions of the order be filed under seal.

## CONCLUSION

For the foregoing reasons, the Court should grant the government's motions in limine in their entirety.

Dated: Brooklyn, New York
November 25, 2018

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney
Eastern District of New York

ARTHUR G. WYATT, CHIEF
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice

OF COUNSEL:
ARIANA FAJARDO ORSHAN
United States Attorney
Southern District of Florida