**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

GMP:ASF
F. #2009R01065

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

December 9, 2018

**TO BE FILED UNDER SEAL**

By ECF

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Joaquin Archivaldo Guzman Loera
Criminal Docket No. 09 CR 466 (S-4) (BMC )

Dear Judge Cogan:

The government submits this letter pursuant to its obligations under Giglio v. United States, 405 U.S. 150 (1972), and respectfully moves the Court for a ruling precluding cross-examination on potential Giglio information related to one of its cooperating witnesses.

I. Facts

The allegations relate to a cooperating defendant named Pedro Flores (hereinafter "Flores"), whom the government anticipates will testify at trial in the above-styled matter on December 17, 2018. Pursuant to its obligations under Giglio, the government has already turned over to the defense a substantial amount of material which the defendant can use to cross-examine Flores on a variety of topics, including, but not limited to, information that Flores: 1) engaged in unauthorized drug trafficking ventures while cooperating with the DEA; 2) impregnated his wife while in DEA custody; 3) arranged for his family members to collect drug debts while cooperating with the DEA, then minimized some of his family members' involvement in the collection efforts to interviewing agents; 4) believed that the Sinaloa Cartel killed his father in Mexico, and believes that the defendant may have played a role in his father's death; 5) still owed the defendant approximately $12.7 million dollars in drug debts; and 6) violated a number of prison rules by, among other things, arranging for family members to place money in other inmates' commissary accounts to circumvent prison regulations.

Several years ago, the government received an allegation from a fellow inmate from the federal prison system that Flores and his twin brother Margarito had withheld $20 million dollars in drug proceeds from U.S. Government, and that their lawyer was helping to pay out this money to family. The source of the allegation correctly identified where the brothers had been housed and had some other information about the brothers' family members' whereabouts, and alleged that the brothers carried AK-47s in Mexico for protection. Upon receiving the allegation, the DEA conducted an investigation into the claims about the withholding of money and could not substantiate the claims. For his part, Flores denied withholding any drug proceeds from the government and denied that his lawyer was helping to pay out any money to the family (although he did acknowledge that he did carry an AK-47 in Mexico for protection).

The government recently received an allegation from the facility where Flores is currently housed. On September 22, 2018, another inmate in the prison facility provided a statement to his prison counselor about activities in the unit. Among the allegations made by the inmate was [redacted] The prison counselor noted that, while the informant was obligated to report the accusations, through the counselor's observation, the counselor did not believe any of the allegations to be true.

Following the interview, [redacted] That investigation is currently underway; however, none of the inmate's allegations regarding [redacted] has been substantiated. Prison officials confronted Flores with the allegation that he was using his family members to send money to other inmates' commissary accounts, and he acknowledged that he had done so. Accordingly, the facility handed out disciplinary punishment: Flores lost his phone privileges for 180 days because of his involvement in sending money to other inmates' commissary accounts.

On October 12, 2018, a DEA agent and prosecutor confronted Flores with the allegation of the inmate commissary account scheme, and Flores acknowledged his

participation in the scheme. The agent and prosecutor asked Flores whether he had engaged in any other inappropriate conduct while in prison over the last few months, and Flores volunteered that he, along with other inmates in his unit, had discovered that a "regular" telephone in the unit could be used to make unauthorized outside calls, and that he had used this phone to call his wife on a number of occasions. Flores also explained to the agent and prosecutor that he was aware that another inmate in the unit with whom he had an ongoing dispute was making false accusations about him involving pills and cell phones. Flores pointed out that because he had access to the phone in his unit, he would have no need to have a cell phone. Flores also denied making any payments to any prison officials.

Because the Bureau of Prison investigation has not substantiated the allegation that Flores [redacted] the government seeks to preclude cross-examination of Flores as to the allegations under Federal Rule of Evidence 403, because they would be cumulative of other impeachment material and would unfairly inflame the passions of the jury by raising an uncorroborated suggestion of government misconduct or neglect.

II. Legal Standards

At the outset, it is not even clear that the government was obligated to provide the defendant with such unsubstantiated allegations of misconduct. Although the Second Circuit does not appear to have directly considered the issue, other courts have declined to hold that a defendant is entitled to potential Brady and Giglio information where that information is related to unsupported and unsubstantiated allegations about government witnesses. See, e.g., United States v. Agurs, 427 U.S. 97, 109 n.16 (1976) ("It is not to say that the State has an obligation to communicate preliminary, challenged, or speculative information.") (internal citation and quotation marks omitted)); United States v. Bulger, 816 F.3d 137, 155 (1st Cir. 2016) (upholding finding that there was no Brady violation where government did not turn over unsubstantiated allegations about government witness); United States v. Fernandez, No. 09-CR-1049, 2009 WL 10637246 (S.D.N.Y. 2009) (holding that evidence related to unsubstantiated claims about police witnesses did not fall within the ambit of Giglio, because "'unsubstantiated' claims are simply allegations of wrongdoing that were withdrawn or abandoned, or allegations about which there was insufficient information to proceed any further"); Bonfilio v. United States, No. 15-CV-1015, 2016 WL 6124487 (W.D. Pa. Nov. 10, 2016) (agreeing with Bulger court that unsubstantiated allegations generally need not be disclosed); United States v. Dabney, 498 F.3d 455 (7th Cir. 2007) (holding that there had been no error in trial court's refusal to order production of unsubstantiated complaints filed with police department against testifying officer).

Even when the government provides information and evidence to the defense, courts have held that it is appropriate to limit cross-examination into unproven and unsubstantiated allegations concerning testifying witnesses. As the Southern District of New York explained in rejecting a claim that the government violated Brady by failing to disclose

a transcript of a DEA agent's testimony in an unrelated case that was rooted in an internal investigation, "cross-examination on this subject would not have been admissible at trial. This Court precluded all cross-examination of the DEA agent on the subject matter of the [Office of Professional Responsibility] investigation, as the investigation had ultimately been found to be unsubstantiated." United States v. Akefe, No. 09-CR-196, 2013 WL 4729174 (S.D.N.Y. 2013). Other courts, too, have limited cross-examination into unsubstantiated allegations pursuant to Rules 608, 609, and 611. See United States v. Novaton, 271 F.3d 968, 1004-07 (11th Cir. 2001) (excluding cross-examination of officer's involvement in prior complaint because it was unproven and pending, and would therefore be more prejudicial than probative); United States v. Wilson, 303 Fed. Appx. 350 (7th Cir. 2008) ("[A]ccusations that [witnesses] engaged in misconduct were merely that: accusations, and offered little indicia of reliability. Thus the district court, acting within its discretion, was free to determine that cross examination into the specific instances of misconduct would have been of limited probative value."); United States v. Innamoranti, 996 F.2d 456, 478-79 (1st Cir. 1993) (holding that district court properly restricted cross examination of DEA agent concerning unsubstantiated claim that he had erased part of an audio tape in an unrelated case).

## III. Discussion

As the government has explained in its separate filings seeking rulings limiting cross-examination of witnesses on various topics, a court enjoys "wide latitude . . . to impose limits on . . . cross-examination." United States v. Maldonado-Rivera, 922 F.2d 934, 956 (2d Cir. 1990). Specifically, a court should "exercise reasonable control" so as to "avoid wasting time[] and protect witnesses from harassment or undue embarrassment." Id. Even where topics of cross-examination are probative of truthfulness and veracity, a district court may limit cross-examination where the probative value is "outweighed by danger of unfair prejudice, confusion of issues, or misleading the jury." Fed. R. Evid. 608 ad. comm. note. See also Fed. R. Evid. 403. [1]

As noted above, the DEA and the Bureau of Prisons has been unable to substantiate the claims that Flores either withheld 20 million dollars from the government, [redacted] or [redacted] Accordingly, the Court should follow the precedent set by other courts that have prohibited cross-examination about unsubstantiated allegations.

The Second Circuit has repeatedly observed that evidence of prior arrests or charges that have not resulted in convictions generally cannot be used to impeach the credibility of a witness. See United States v. Salameh, 152 F.3d 88, 131-32 (2d Cir. 1998); United States v. Semensohn, 421 F.2d 1206, 1208 (2d Cir. 1970) ("It is settled that in a trial a

---

[1] The government previously moved the Court to preclude cross-examination on a variety of topics related to the government's cooperating witnesses and law enforcement witnesses, and respectfully refers the Court to those briefs for a more detailed discussion of the legal standards related to limits on cross-examination.

witness's acts of misconduct are not admissible to impeach his credibility unless the acts resulted in the obtaining of a conviction."); United States v. Acarino, 408 F.2d 512, 514 (2d Cir. 1969) ("The prosecuting attorney was correct in his apparent assumption that such evidence of misconduct as an indictment is not normally admissible for impeachment purpose."). In Akefe, for instance, the Southern District of New York precluded cross-examination related to a DEA Office of Professional Responsibility investigation where the allegations were ultimately found to be unsubstantiated. See Akefe, 2013 WL 472174 at *6. Here, too, an investigation has determined that the "accusations that [the witness] engaged in misconduct [are] merely that: accusations . . . ." Wilson, 303 Fed. Appx. at 355. Here, the allegations regarding hiding of assets, bribery and introduction of contraband are unsubstantiated, and are not appropriate for use in cross-examining Flores.

Finally, granting the government's instant motion will in no way deprive the defendant of a meaningful opportunity to cross-examine Flores. The defendant will be able to cross-examine Flores as to the matters set forth above (see supra, p.1) his extensive history of drug trafficking, his motivations for cooperating with the government in the expectation of a sentence reduction, and various other topics which have been or will be revealed to the defense in Rule 16 and § 3500 discovery. See United States v. Locasio, 6 F.3d 924, 949 (2d Cir. 1993) ("However, as the district court found, these reports would have had no effect on Gravano's credibility, not only because they were untrustworthy, but also because they would merely have been cumulative. Gravano confessed to numerous crimes, including murders, and was subject to withering cross examination for those actions. The addition of a few more allegations would not have materially affected the defense's cross examination of him."). The fact that cross-examination as to the unsubstantiated allegations would be needlessly cumulative offers an additional reason why should be s appropriately precluded in the face of its marginal probative value. See United States v. Figueroa, 548 F.3d 222, 229 (2d Cir. 2008) (noting that cross-examination may be properly limited where "unduly prejudicial, confusing or misleading to the jury, or cumulative").

IV. Conclusion

For the foregoing reasons, the government respectfully moves the Court to determine that the defendant not be allowed to preclude cross-examination of Flores as to the unsubstantiated allegations.

V. Sealing is Appropriate

Pursuant to the protective order in this case, the government respectfully requests permission to submit this brief under seal. See Dkt. No. 57 ¶ 8. This brief details information regarding the government's cooperating witnesses. Moreover, the information discussed herein is sensitive information about which the government seeks to preclude questioning.

Thus, sealing is warranted because of the concerns regarding the safety of potential witnesses and their families, and the danger posed by disclosing the potential

witnesses' identities and their cooperation with the government. Sealing is further warranted to protect the disclosure of sensitive information regarding the government's witnesses. See United States v. Amodeo, 44 F.3d 141, 147 (2d Cir. 1995) (need to protect integrity of ongoing investigation, including safety of witnesses and identities of cooperating witnesses, and to prevent interference, flight and other obstruction, may be compelling reason justifying sealing); see Feb. 5, 2018 Mem. & Order Granting Gov't Mot. for Anonymous and Partially Sequestered Jury, Dkt. No. 187 at 2-3 (concluding that defendant's actions could pose risk of harm to cooperating witnesses). As the facts set forth herein provide ample support for the "specific, on the record findings" necessary to support partial sealing, Lugosch v. Pyramid Co., 435 F.3d 110, 120 (2d. Cir. 2006), the government respectfully requests that the Court permit the government to file this motion under seal and that any resulting order by the Court also be filed under seal.

Respectfully submitted,

RICHARD DONOGHUE
United States Attorney
Eastern District of New York

ARTHUR G. WYATT, CHIEF
Narcotic and Dangerous Drug Section
Criminal Division,
U.S. Department of Justice

OF COUNSEL:

ARIANA FAJARDO ORSHAN
United States Attorney
Southern District of Florida