GMP:ASF/HDM/BCR
F.#2009R01065/OCDETF# NY-NYE-616

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

**TO BE FILED UNDER SEAL**

- against -

Docket No. 09-CR-466(S-4)(BMC)

JOAQUIN ARCHIVALDO GUZMAN LOERA,
also known as "El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa," "Papa," "Inge" and "El Viejo,"

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

REPLY MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S SECOND MOTIONS *IN LIMINE*

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

ARTHUR G. WYATT, CHIEF
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice

OF COUNSEL:
ARIANA FAJARDO ORSHAN
United States Attorney
Southern District of Florida

TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 3

I. The Court Should Grant the Government's Motion to Admit Evidence of the Defendant's Uncharged Acts of Violence and Certain Drug Trafficking Activity ..... 3

A. The Court Should Admit the Uncharged Acts of Violence ..... 3

B. The Court Should Admit Evidence of Pre- and Post-Indictment Drug Trafficking ..... 5

II. The Court Should Grant the Government's Motion to Admit Evidence of Defendant's Flight from Justice ..... 6

III. The Court Should Admit Evidence of the Existence of the Government's Indictments and Rewards for the Defendant's Capture ..... 7

IV. The Court Should Admit the Defendant's Voluntary Statements to U.S. Law Enforcement ..... 7

V. The Court Should Admit the Defendant's Letters as Statements by a Party-Opponent ..... 8

VI. The Court Should Grant the Government's Motion to Admit the Defendant's Book ..... 9

VII. The Court Should Grant the Government's Motion to Admit Statements of a High-Ranking Cartel Leader to His Son as Either Coconspirator Statements or Declarations Against Penal Interest ..... 9

VIII. The Court Should Grant the Government's Motion to Admit Statements in Video Evidence ..... 10

IX. The Court Should Grant the Government's Motion to Prohibit Dissemination of Photographs and Sketches of Cooperating Witnesses ..... 12

X. The Court Should Grant the Government's Motion to Preclude Elicitation of Information Related to the Witness Security Program and Cooperating Witnesses' Family Members ............................................ 13

XI. The Court Should Grant the Government's Motion to Redact Certain Names and Replace Them With Initials in Transcripts and Translations of Recorded Messages ........................................................... 13

XII. The Court Should Grant the Government's Motion to Preclude Evidence and Argument Alleging Selective Prosecution of the Defendant ........................................................................................... 13

XIII. The Court Should Grant the Government's Motion to Preclude Irrelevant and/or Unfairly Prejudicial Evidence and Argument ................................ 14

XIV. Partial Sealing is Appropriate ........................................................................ 14

CONCLUSION.......................................................................................................... 16

PRELIMINARY STATEMENT

The government respectfully submits this reply memorandum of law in further support of its second motions in limine. See Mem. of Law in Support of Gov't's Second Motions In Limine, Dkt. No. 326 ("Gov't Br."). The defendant's opposition to the government's motions makes some concessions, thereby narrowing the issues before the Court. See Def. Opp. to Gov't's Second Motions In Limine, Dkt. No. 360 ("Def. Br.") at 14. As an initial matter, the Court should grant the government's motions, or portions thereof, not opposed by the defendant.

Specifically, the defendant does not oppose a ruling that (1) information related to witness security and cooperating witnesses' family members not be elicited at trial, see Gov't Br. at 79-83; Def. Br. at 14; and (2) the names of minor children be redacted where appropriate, see Gov't Br. at 83; Def. Br. at 14. Additionally, the defendant asserts that he will not advance a selective prosecution argument, which the government had sought to preclude. See Gov't. Br. at 84-86; Def. Br. at 14. Accordingly, the Court should grant these motions.

The defendant, however, continues to oppose the government's motions for Court rulings that (1) the defendant's acts of violence and certain drug trafficking activity are admissible as direct evidence of the crimes charged and/or pursuant to Federal Rule of Evidence 404(b), see Gov't Br. at 7-33; Def. Br. at 1-4; (2) the defendant's multiple escapes from jail and other flight from justice are admissible as direct evidence of the crimes charged and/or Rule 404(b) evidence, see Gov't Br. at 33-42; Def. Br. at 4-8; (3) the Court should take judicial notice of the public indictments of the defendant and the rewards offered for his arrest, see Gov't Br. at 42-46; Def. Br. at 8; (4) the defendant's voluntary statements to U.S. law enforcement are admissible, see Gov't Br. at 46-56; Def. Br. at 8; (5) the defendant's letters

are admissible as statements of a party opponent, see Gov't Br. at 56-59; Def. Br. at 8; (6) the defendant's book is admissible, see Gov't Br. at 59-64; Def. Br. at 9; (7) the statements of a high-ranking cartel leader to his son are admissible as coconspirator statements or as declarations against penal interest, see Gov't Br. at 64-66; Def. Br. at 9; (8) statements made in video evidence are admissible, see Gov't Br. at 66-73; Def. Br. at 9-13; (9) that dissemination of photographs and sketches of cooperating witnesses should be prohibited, see Gov't. Br. at 73-79; Def. Br. at 13; and (10) the defense should be precluded from introducing evidence or eliciting cross-examination as to (i) sensitive law enforcement techniques in relation to three particular foreign law enforcement operations, (ii) a government official's statements about cooperating witnesses, (iii) certain books relating to the defendant, and (iv) the "Fast and Furious" operation, see Gov't. Br. at 86-95; Def. Br. at 14-15.

For the reasons set forth below, Court should grant the government's motions in limine that remain in dispute.

## ARGUMENT

### I. The Court Should Grant the Government's Motion to Admit Evidence of the Defendant's Uncharged Acts of Violence and Certain Drug Trafficking Activity

The defendant argues that the Court should deny the government's motions to admit evidence of the defendant's (1) uncharged acts of violence, including kidnapping, torture and murder; (2) drug trafficking prior to, and after, the dates of the charged continuing criminal enterprise ("CCE") and drug conspiracies; and (3) drug trafficking while in prison. See Def. Br. at 1-4. The Court should reject these arguments and grant the government's motions.

#### A. The Court Should Admit the Uncharged Acts of Violence

The defendant argues that the government should be prohibited from offering evidence of uncharged acts of violence after the charged period in the indictment, and that the defendant's [redacted] should not be admitted under Rule 403 because it is too prejudicial and unrelated to drug trafficking. These arguments are without merit.[1]

First, the Court should admit threats and intimidation that the defendant engaged in after the conclusion of the charged period. The threats and intimidation that the defendant employed after the conclusion of the charged period are inextricably intertwined with the charged offenses. Namely, they are evidence of the defendant's continued use of the methods and means that he used to operate his continuing criminal enterprise and is "necessary to complete the story of the crime on trial." United States v. Carboni, 204 F.3d 39, 44 (2d Cir.

[1] The defendant opposes the government's motion to admit evidence of the defendant's uncharged violence occurring prior to January 1989, the date on which the charged period begins in Count One of the Indictment. At this time, the government does not intend to introduce acts of violence preceding that date. Should the government seek to elicit such testimony during trial, it will renew its motion at that time.

2000); see United States v. Nathan, 476 F.2d 456, 459-60 (2d Cir. 1972) (post-conspiracy criminal conduct admissible if probative of existence of the conspiracy). Moreover, as noted in the government's opening brief, the defendant's conduct in this regard is probative of his consciousness of guilt. See Gov't. Br. at 22-24.

Second, the Court should admit testimony about [redacted]

[redacted]

[redacted]

[redacted]

B. The Court Should Admit Evidence of Pre- and Post-Indictment Drug Trafficking

In his opposition, the defendant repeats all of the same arguments from his opposition brief to the government's first motion in limine. See Def. Br. at 4. The government respectfully refers the Court to the arguments set forth in its reply brief in support of its first motion in limine and hereby incorporates them by reference. See Dkt. No. 237 at 11-17

---

[2] [redacted].

[3] [redacted]

(arguing that defendant's pre-indictment drug trafficking and drug trafficking activity while in prison is critical direct evidence of charged conspiracy).

II. The Court Should Grant the Government's Motion to Admit Evidence of Defendant's Flight from Justice

The defendant's opposition to the government's second motion in limine regarding the issue of flight of justice recites verbatim his response in opposition to the government's first motion in limine on this issue. Compare Dkt No. 231 at 7-12 with Def. Br. at 4-8. The defendant once again concedes that "evidence of escape or flight is sometimes admissible as probative of consciousness of guilt." See Def. Br. at 4. The defendant argues, however, that the government has not offered "a link between Mr. Guzman's actions and a consciousness of guilt of the particular crimes charged," and that the evidence is not therefore admissible under Rule 404(b). See id. at 5. The defendant also claims that the Court should exclude evidence of his attempts to flee from justice and escape prison under Rule 403. See id. at 7-8. The defendant's arguments are without merit.

First, contrary to the defendant's assertions, the government's opening brief proffered specific facts, including anticipated cooperating witness testimony, establishing the link between the defendant's attempts to flee justice and his consciousness of guilt. See Gov't. Br. at 34-40. The defendant's opposition wholly ignores this factual background.

Moreover, because the defendant has wholly repeated his response from the first motion in limine in the present opposition brief, the defendant once again ignores the government's primary argument: that his efforts to flee from justice are admissible as direct evidence that is "inextricably intertwined" with the charged crimes. See Gov't Br. at 33-42. The government will not rehash this argument, as it was fully briefed in the government's reply

on the first motion in limine. See Dkt No. 237 at 18-19 (discussing how evidence of defendant's escapes and attempts to flee from justice demonstrates existence of charged CCE, drug and money laundering conspiracies and firearms charge). Nor will the government repeat its response to the defendant's remaining arguments regarding Rule 404(b) and 403, as they are, verbatim, the same arguments the defendant made in his opposition to the government's first motion in limine. The government fully briefed its response to those arguments in the government's reply on the first motion in limine, and hereby incorporates them by reference. See Dkt No. 237 at 20-22.

## III. The Court Should Admit Evidence of the Existence of the Government's Indictments and Rewards for the Defendant's Capture

The defendant's opposition to the government's motion regarding the issue of indictments and rewards recites almost verbatim his response in opposition to the government's first motion in limine on this issue, compare Dkt No. 231 at 12-13 with Def. Br. at 7, even though the government has provided substantial additional argument and factual detail since the filing of the defendant's previous opposition. See Gov't. Br. at 42-45; Dkt. No. 237 at 28. Because the defendant's arguments are the same, the government need not repeat its response, which was briefed in the government's reply on the first motion in limine. See Dkt No. 237 at 28 (discussing, inter alia, how the public and globally-publicized U.S. charges against the defendant are highly probative of the defendant's knowledge of those charges and a reason why he would want to escape Mexican prison to avoid extradition).

## IV. The Court Should Admit the Defendant's Voluntary Statements to U.S. Law Enforcement

The defendant states, in conclusory fashion, that he "objects to the introduction of this evidence absent a proper evidentiary basis being met by the government and on Fed. R.

Evid. 401 and 403 grounds." Def. Br. at 8. Aside from this one sentence, the defendant provides no further argument or legal citation.

The government, in its opening brief, articulated the evidentiary basis for admitting the defendant's voluntary statements to the DEA in 1998. See Gov't Br. at 46-58. The government explained that these statements are admissible as statements made by a party-opponent under Federal Rule of Evidence 801(d)(2)(A). See id. In addition, the government discussed why Miranda did not apply to the defendant's 1998 interview with the DEA because he was neither in custody nor subject to interrogation. The defendant had requested the interview with the DEA, the defendant was not restrained during the interview and the agents were not armed. See id. He was not, therefore, in "custody" within the meaning of Miranda and its progeny. See id. Nor was the defendant subject to interrogation. See id. The defendant requested the meeting, the defendant chose the topics discussed and the defendant initiated the only conversation about leniency or consideration for the information he was providing. See id.

The defendant's statements about drug trafficking have substantial probative value and are highly relevant under Rule 401 as direct evidence of the charged crimes. As for prejudice under Rule 403, the defendant's voluntary statements about his knowledge of drug trafficking are not prejudicial given the charged crimes at issue here. The Court should admit these voluntary statements for the reasons stated in the government's opening brief.

## V. The Court Should Admit the Defendant's Letters as Statements by a Party-Opponent

The defendant states, in conclusory fashion, that he "objects to the introduction of this evidence absent a proper evidentiary basis being met by the government and on Fed. R.

Evid. 401 and 403 grounds." Aside from this one sentence, the defendant provides no further argument or legal citation.

The government, in its opening brief, articulated the evidentiary basis for the admission of the defendant's handwritten letters to his associate in 2014. See Gov't Br. at 58-63. The government explained that these statements are admissible as statements made by a party-opponent under Federal Rule of Evidence 801(d)(2)(A). See id. Moreover, the defendant's statements about drug trafficking have substantial probative value and are relevant under Rule 401 as direct evidence of the charged crimes. As for prejudice under Rule 403, the defendant's statements in handwritten letters about his knowledge of drug trafficking are not prejudicial given the charged crimes at issue here. The Court should admit the defendant's letters for the reasons stated in the government's opening brief.

## VI. The Court Should Grant the Government's Motion to Admit the Defendant's Book

The only argument that the defendant offers in opposition to the government's motion to admit his book is that he objects to its admission "absent a proper evidentiary basis." See Def. Br. at 8. The government's opening brief set forth the evidentiary basis for the book's admission, and the government respectfully refers the Court to that brief. See Gov't. Br. at 59-64. The government will additionally lay the appropriate foundation at trial for its admission, and the defendant has not articulated how a Rule 403 analysis would limit its admission.

## VII. The Court Should Grant the Government's Motion to Admit Statements of a High-Ranking Cartel Leader to His Son as Either Coconspirator Statements or Declarations Against Penal Interest

The government seeks a ruling from the Court to admit evidence from a cooperating witness who is expected to testify about conversations he had with his father, who was a high-ranking member of the Cartel. See Gov't. Br. at 64-66. In his response, the

defendant "objects to the introduction of this evidence absent a proper evidentiary basis being met by the government and on Fed. R. Evid. 401 and 403 grounds." Def. Br. at 9. The government is aware that the statements it would seek to introduce must be relevant to the proceeding under Rule 401 and that they must not violate Rule 403.

In fact, the government has already set forth its evidentiary basis for the introduction of the statements. To the extent that the statements are against the father's interests, the cooperating witness can testify about his father's statements under Fed. R. Evid. 804(b)(3). To the extent that the statements were made in furtherance of the conspiracy, the statements of the father to his son are admissible as non-hearsay pursuant to Rule 801(d)(2)(E). Because the testimony of a cooperating witness about what his father told him about the Cartel is either non-hearsay as a coconspirator statement pursuant to Rule 801(d)(2)(E), or an exception to the hearsay rule as a statement against interest pursuant to Rule 804(b)(3), such testimony should be admissible at trial.

## VIII. The Court Should Grant the Government's Motion to Admit Statements in Video Evidence

In its June 7, 2018 order on the government's first motions in limine, the Court declined to rule on the government's argument that certain descriptions in its video evidence were admissible under the present sense impression exception to the rule against hearsay, noting that the government would identify specific statements closer to trial. See Dkt. No. 240 at 8-9. The government's opening brief does just that, providing the Court and the defendant with the video evidence that it seeks to admit at trial and detailing its legal argument for admissibility of the pertinent statements. See Gov't. Br. at 67-68.

In response, the defendant argues that neither the present sense impression nor the excited utterance exceptions to the bar against hearsay cover journalists' and law enforcement officers' narrations of their observations while walking through residences, warehouses, tunnels and jails depicted in the videos that the government seeks to introduce. See Def. Br. at 13. Specifically, the defendant attempts to distinguish United States v. Urena, 989 F. Supp. 2d 253, 260 (S.D.N.Y. 2013), claiming that while the decision did hold that "'a real time narration of events may be admissible as a present sense impression,' the only examples it provides are of tapes of 911 calls, not journalists describing places." Def. Br. at 13 (citing Urena). This is a distinction without a difference. If anything, the present sense impressions of journalists, who are trained to maintain objectivity in their reporting, would be more objective and accurate in descriptions than a random citizen making a 911 call. Moreover, defendant fails to address United States v. Bundy, No. 2:16-CR-46-GMN-PAL, 2017 WL 4803929, at *5 (D. Nev. Oct. 24, 2017), an example of a case in which a court ruled that a journalist's statement was admissible as a present-sense impression. This Court should follow Bundy and allow journalists' and law enforcement officers' present sense impressions and excited utterances to be played for the jury.

The defendant next argues that the impressions should not be played because they are not relevant and "the jury can view the evidence themselves and come to their own conclusions" without journalists' impressions. But as the government argued in its opening brief, such present sense impressions would greatly aid the jury in understanding the images depicted in the video, especially given that many of the images depict the inside of dark tunnels. Without the narration, the jurors might not be able to make out various structures

within the tunnels or appreciate the sophistication of their construction. In summary, the present sense impressions and excited utterances should be presented to this jury.[4]

## IX. The Court Should Grant the Government's Motion to Prohibit Dissemination of Photographs and Sketches of Cooperating Witnesses

In response to the government's motion to prohibit dissemination of photographs and sketches of cooperating witnesses, the defendant simply responds that he "objects to the government's request to the extent that it conflicts with the First Amendment and with his right to a public trial." Def. Br. at 13. As the government set forth at great length in its initial brief on this topic, which it incorporates herein by reference, see Gov't. Br. at 73-79, the relief sought by the government is narrowly tailored so as not to conflict with the First Amendment and with the defendant's right to a public trial. See, e.g., Feb. 24, 2015 Order, United States v. Nasser, 10-CR-19 (S-4) (RJD) (E.D.N.Y.), Dkt. No. 398; Feb. 24, 2016 Order, United States v. Pugh, 15-CR-116 (NGG) (E.D.N.Y.), Dkt. No. 99; United States v. Alimehmeti, 284 F. Supp. 3d 477, 490 (S.D.N.Y. 2018). In light of these rulings and the government's arguments in the second set of motions in limine, the Court should grant the government's motion to prevent courtroom sketches of the witnesses' faces and to alter,

[4] The defendant raises a variety of other arguments in his opposition brief related to video evidence and intercepted communications. See Def. Br. at 9-12. In so arguing, the defendant largely repeats verbatim his opposition to the government's first motions in limine, including with respect to arguments that the government did not reopen or raise again in its second motions in limine. Compare Def. Br. at 9-13 with Dkt. No. 231 at 13-18. There is no basis for the Court to revisit its prior rulings regarding this evidence, particularly because the defendant has offered no additional argument beyond what was already before the Court in the parties' briefing on the government's first motion. The government therefore will not repeat its previous arguments here, but respectfully refers the Court to its reply brief in support of its first motions in limine. See Dkt. No. 237 at 25-32.

pixelate or otherwise obscure the cooperating witnesses' faces in any exhibit made available to the public and press.

## X. The Court Should Grant the Government's Motion to Preclude Elicitation of Information Related to the Witness Security Program and Cooperating Witnesses' Family Members

The defendant does not object to the government's motion to preclude elicitation of information relating to the witness security program and cooperating witnesses' family members. See Def. Br. at 14. The Court should therefore grant the government's motion.

The defendant's opposition brief also requests that the Court direct the government to produce records of payments made to cooperating witnesses and their families. See Def. Br. at 14. The defendant's request—made without any legal argument or analysis, and only raised in an opposition brief to a motion that did not raise the issue—is not properly before the Court and the Court need not rule on it. The government notes that it will provide the defendant with the amounts paid to cooperating witnesses. As a general matter, the government is aware of and will comply with its Giglio obligations. There is no obligation, however, for the government to turn over the full underlying documentation of payments made to witnesses and the government does not intend to do so.

## XI. The Court Should Grant the Government's Motion to Redact Certain Names and Replace Them With Initials in Transcripts and Translations of Recorded Messages

The defendant does not object to the government's motion to redact the full names of minor children. See Def. Br. at 14. The Court should thus grant the motion.

## XII. The Court Should Grant the Government's Motion to Preclude Evidence and Argument Alleging Selective Prosecution of the Defendant

The defendant indicates that he does not intend to raise a selective prosecution argument. See Def. Br. at 14. The Court should therefore grant the motion.

XIII. The Court Should Grant the Government's Motion to Preclude Irrelevant and/or Unfairly Prejudicial Evidence and Argument

With respect to the government's motion to preclude the admission of evidence or argument regarding sensitive law enforcement techniques, the defendant asserts that the government's request is "broad [and] unspecific." Not so. In its second set of motions in limine, the government explained that it sought to preclude cross-examination and evidence related to sensitive law enforcement techniques related to three operations, one in Mexico in 2012, one in Mexico in 2013 and the third in Colombia in 2014. See Gov't. Br. at 87-91. The government does not seek to limit the defendant's ability to generally cross-examine law enforcement witnesses, only to preclude inquiry into the specific details of the capabilities and methods available to Mexico and Colombia in relation to those three operations. See generally id. Specific detail about the means and methods available to foreign law enforcement is "irrelevant to the defendant's innocence and guilt," and an "inquiry at trial into the details of law enforcement [] methods would invite the jury to pass judgment on the propriety of such investigative techniques." Alimehmeti, 284 F. Supp. 3d at 494. The Court therefore should grant the government's motion.

With respect to the remaining motion in this section of the government's brief, the defendant offers no new argument or discussion in opposition; the government therefore respectfully refers the Court to its opening brief. See Gov't. Br. at 91-95.

XIV. Partial Sealing is Appropriate

Pursuant to the protective order in this case, the government respectfully requests permission to submit this brief partially under seal. See Dkt. No. 57 ¶ 8. Portions of this brief refer to the government's cooperating witnesses. Although the cooperating witnesses

are not identified by name herein, the defendant's criminal associates likely could use the information described herein to identify those witnesses.

Thus, partial sealing is warranted because of the concerns regarding the safety of potential witnesses and their families, and the danger posed by disclosing the potential witnesses' identities and their cooperation with the government. See United States v. Amodeo, 44 F.3d 141, 147 (2d Cir. 1995) (need to protect integrity of ongoing investigation, including safety of witnesses and the identities of cooperating witnesses, and to prevent interference, flight and other obstruction, may be a compelling reason justifying sealing); see Feb. 5, 2018 Mem. & Order Granting Gov't Mot. for Anonymous and Partially Sequestered Jury, Dkt. No. 187 at 2-3 (concluding that defendant's actions could pose risk of harm to cooperating witnesses). As the facts set forth herein provide ample support for the "specific, on the record findings" necessary to support partial sealing, Lugosch v. Pyramid Co., 435 F.3d 110, 120 (2d. Cir. 2006), the government respectfully requests that the Court permit the government to file this reply in support of its second motions in limine partially under seal. Should any order of the Court regarding this application describe the sealed information in question with particularity, rather than in general, the government likewise requests that those portions of the order be filed under seal.

## CONCLUSION

For the foregoing reasons, the Court should grant the government's second motions in limine in their entirety.

Dated: Brooklyn, New York
October 15, 2018

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney
Eastern District of New York

ARTHUR G. WYATT, CHIEF
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice

OF COUNSEL:
ARIANA FAJARDO ORSHAN
United States Attorney
Southern District of Florida