

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

GMP:BCR/ASF
F. #2009R01065

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 22, 2018

**TO BE FILED UNDER SEAL**

By ECF

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11217

   Re: United States v. Joaquin Archivaldo Guzman Loera
     Criminal Docket No. 09-466 (S-4) (BMC)

Dear Judge Cogan:

  The government respectfully submits this reply to the defendant's October 17, 2018 opposition, see Dkt. No. 372 ("Def. Br.") to the government's October 9, 2018 motions in limine to preclude cross-examination of certain of the government's witnesses, see Dkt. No. 350.  For the reasons detailed below and in the government's opening brief, the government's motions in limine should be granted because allowing cross-examination of the subjects outlined in the government's motions would be cumulative, irrelevant and unduly prejudicial.

I.  Legal Standard

  As the government noted in its prior submissions, see Dkt. Nos. 350, 354, the scope and extent of cross-examination is committed to the sound discretion of the district court. See United States v. Wilkerson, 361 F.3d 717, 734 (2d Cir. 2004).  A court may properly bar cross-examination "that is repetitive or only marginally relevant" to a defendant's guilt or other issues before the court.  See United States v. Maldonado-Rivera, 922 F.3d 934, 956 (2d Cir. 1990) (emphasis added); see also Fed. R. Evid. 611 (stating that "court should exercise reasonable control . . . so as to . . . avoid wasting time[] and protect witnesses from harassment or undue embarrassment").

  It is well-settled in the Second Circuit that evidence offered to further impeach a "witness whose character was already challenged at trial" is considered "cumulative" and

may be excluded or otherwise limited. United States v. Damblu, 134 F.3d 490, 494 (2d Cir. 1998). Indeed, the Second Circuit has repeatedly upheld a district court's decision to preclude areas of cross-examination where the defense had ample opportunity to attack the credibility of a government witness, and the additional material precluded by the district court was cumulative in nature. See United States v. Locascio, 6 F.3d 924, 949 (2d Cir. 1993) (finding that witness "had already confessed to numerous crimes, including murders, and was subject to withering cross examination for those actions. The addition of a few more allegations would not have materially affected the defense's cross examination of him."); Shabazz v. Artuz, 336 F.3d 154, 166 (2d Cir. 2003) ("[W]here the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material."); see also United States v. Lisyansky, No. 11 CR 986 (GBD), 2014 WL 1046750, at *4 (S.D.NY. Mar. 13, 2014) (finding that additional material for cross-examination was cumulative where cross-examination of government witness was "extensive and was designed to raise questions about both [the government witness'] mental state and credibility as a witness").

As detailed in the government's prior submission and below, the government's cooperating witnesses are likely to be cross-examined on a variety of bad acts, including their own involvement with the defendant's criminal enterprise and acts of violence associated with that involvement. Thus, the topics the government seeks to limit would merely be cumulative, and granting the government's motion will not materially limit the defendant's ability to cross-examine the government's witnesses.

II.     Discussion

        A.     CW1's Domestic Violence Incidents

In his opposition, the defendant seeks to cross-examine CW1 about instances of domestic violence with his wife because: (1) it resulted in a bribe to a police official, which is indicative of lack of truthfulness; and (2) it is probative of the veracity of CW1's prior claims to the government that he is a non-violent person. Def. Br. at 2. The defendant also seeks to question CW1 about an argument he had with his wife concerning his unsuccessful attempt to seduce their child's babysitter. Id. For the reasons outlined below, the Court should deny these requests because cross-examination on these topics is cumulative, and the marginal additional probative value of this evidence is substantially outweighed by the highly prejudicial nature of the underlying facts relating to these episodes.

During debriefings with the government, and as documented in his § 3500 material, CW1 engaged in multiple acts of bribery during his lengthy drug trafficking career and while engaged in drug trafficking with the defendant. For example, CW1 is expected to testify about orchestrating the release from prison of an Ecuador-based drug trafficking associate who had previously supplied CW1 and the defendant with ton-quantities of cocaine. The defendant will have ample opportunity to explore CW1's character for truthfulness in light of this episode of bribery, among others. Any questioning of CW1 about his bribing officials

2

to avoid criminal charges as a result of his domestic violence episode is thus cumulative and highly prejudicial. See Fed. R. Evid. 403 and 611. The fact that this bribery incident involved domestic violence adds nothing to the probity of this line of inquiry. See, e.g., United States v. Fama, No. 12-CR-186 (WFK), 2012 WL 6094135, *1 (E.D.N.Y. Dec. 7, 2012) (precluding cross-examination as to domestic violence allegations, noting that there is not "anything inherent in the nature of such acts that would directly involve truthfulness"); United States v. Gambardella, No. 10-CR-674 (KBF), 2011 WL 6314198, at *1 n.1 (S.D.N.Y. Dec. 15, 2011) (witness's past domestic abuse is not probative of character for truthfulness).

Similarly, the incident involving CW1's threats to his wife during her pregnancy is also cumulative. As the defendant well knows from the government's Violation 85 Index, see Dkt. No. 269, and as he apparently concedes in its submission, see Def. Br. at 2-3 n.2, CW1 will testify about at least eight murder conspiracies in which he was involved during his membership in the Sinaloa Cartel. He will also testify about his involvement in multiple conspiracies to kidnap drug trafficking associates. Allowing cross-examination into this particular area—CW1's threats to his pregnant wife when she was considering terminating a pregnancy—is not only cumulative, but highly prejudicial and likely to distract the jury. See Fama, 2012 WL 6094135 at *1 (holding that domestic violence allegations against witness are excludable in Rule 403 analysis because any probative value is outweighed by "unfair prejudice that could result if the jury were to focus on the purported instances of abuse rather than [the witness's] testimony about the bank robbery"); United States v. Jeffers, 402 Fed. Appx. 601, 603 (2d Cir. 2010) ("Moreover, even if the alleged abuse was somehow relevant to Hick's motivation for testifying, which is not clear, the district court did not abuse its discretion in concluding that any probative value was substantially outweighed by unfair prejudice and the need for a mini-trial on domestic disputes."). The court should therefore preclude cross-examination on this incident.

Finally, questioning about CW1's unsuccessful attempt to seduce his child's babysitter should precluded as irrelevant, unduly prejudicial and cumulative. Notably, when confronted by his wife about this incident, CW1 admitted that he had attempted to seduce their child's babysitter. Thus, any probative value this incident has in regard to CW1's veracity is marginal at best, and its potential for prejudice is of far greater magnitude. See United States v. Darui, 545 F. Supp. 2d 108, 111-12 (D.D.C. 2008) (precluding defendant in fraud case from inquiring as to witness's adulterous sexual relations with two women because defendant had not demonstrated how "marital fidelity is relevant to the charges in the indictment," and "evidence of polygamous activity is clearly so inflammatory in nature that . . . the evidence is not admissible under Federal Rule of Evidence 403").

    B.  CW1's and Defendant's Sexual Activities With Underage Partners

The defendant also seeks to cross-examine CW1 about highly salacious details concerning the sexual activity that he and the defendant engaged in with minor partners for two reasons: (1) it presents an inconsistency with the way in which CW1 viewed the treatment of other minors, namely young men between the ages of 16- and 17-years-old; and (2) it bears on CW1's relationship with the defendant—although the defendant seeks to limit testimony

3

about his own involvement in this sexual activity that purportedly formed the basis of their relationship. The Court should reject these arguments and preclude cross-examination about this topic in its entirety.

Testimony about these sexual activities is not relevant to any fact of consequence in this action. See Fed. R. Evid. 401. They simply do not bear on and are not probative of the defendant's drug trafficking activities or CW1's relationship with the defendant's drug trafficking organization. To the extent the defendant claims that this testimony somehow exposes inconsistencies about CW1's views concerning minors, it is irrelevant and poses the potential for testimony about an additional highly inflammatory issue: his alleged inconsistent views about what is appropriate for minors of different genders. Given the multiple other grounds on which the defendant can cross-examine CW1, this topic has little-to-no probative value, and risks injecting even more prejudicial testimony that would create a "trial within a trial" about CW1's social attitudes. See, e.g., United States v. Rabinowitz, 578 F.2d 910, 912 (2d Cir. 1978) (affirming trial court's preclusion of cross-examination as to witness's sexual acts with young children, noting that there was no "logical relevance" of those acts to witness's credibility). This area of cross-examination should be precluded.

C.   CW1's Interests

The defendant further asserts that he should be permitted to cross-examine CW1 on the collateral issue of his extracurricular interests in the Illuminati, Freemasonry, other planets, other galaxies, UFOs and the idea that there was an impending apocalypse in 2012. The defendant claims that the Court should also permit him to cross-examine CW1 about CW1's interest in astrology and witch doctors. The defendant makes what amounts to a highly subjective argument—that is, CW1 is "mentally instable" because he has an interest in these purportedly unorthodox or non-mainstream theories.

As an initial matter, there is no evidence that CW1 has suffered from any form of psychiatric illness or mental instability. Moreover, the fact that CW1 indicated that he "doesn't know the point to which [these ideas are] reality," Def. Br. at 5, is not inconsistent with CW1's statements that he does not believe these theories are actually real. In any event, while some may not view these interests as "mainstream," there are numerous examples in popular culture of widespread interest in these topics. For example, the Illuminati was the subject of a bestselling novel, "Angels & Demons," by Dan Brown. While it is perhaps not surprising that a member of one of the world's largest drug conspiracies would also have a fascination with other secret societies like the Illuminati, it is not an indicator of mental illness. Similarly, famed scientists, such as astrophysicists Carl Sagan and Neil DeGrasse Tyson, have indicated that they believe it is likely that there is life on other planets. See Famous Scientists: Carl Sagan, available at https://www.famousscientists.org/carl-sagan/ (last visited Oct. 22, 2018) ("Sagan is known to have been one of the earliest scientists to propose that there might be life on other planets. He encouraged NASA to explore the solar system for signs of life"); Patrick Caughill, Neil DeGrasse Tyson Says We're Not Likely Alone in the Universe, Futurism (June 25, 2017), available at https://futurism.com/neil-degrasse-tyson-says-not-

4

likely-alone-universe (last visited Oct. 22, 2018). Finally, the use of witchcraft and sorcery was not uncommon in Mexico in 2011, which is in and around the time that CW1 was availing himself of similar services. See Karla Zabludovsky, Driven to Cast Charms Against Drug Lords' Darker Forces, New York Times (Nov. 1, 2011), available at https://www.nytimes.com/2011/11/02/world/americas/mexicans-turn-to-witchcraft-to-ward-off-drug-cartels.html (last accessed Oct. 22, 2018) ("Policemen and cartel thugs are also turning to Catemaco's shamans for protection. Policemen are fearful of being killed in an ambush or risking harm to their families in a retaliatory act; drug traffickers worry about 'being caught by the federal police or losing their territory,' explained a sorcerer in a nearby town").

In support of his argument that he should be permitted to cross CW1 about these interests, the defendant cites a series of inapposite case law that is distinguishable on the facts. For example, the defendant cites United States v. Butt, 955 F.2d 77, 82-83 (1st Cir. 1992), for the proposition that he should be permitted to cross-examine CW1 about his "mental condition at the time of the events testified to." Def. Br. at 5. While that proposition of law may be true, the defendant conveniently omits the fact that Butt concerned cross-examination of a witness for whom there was a record of hospitalization that suggested the witness may have suffered from mental instability—and the court denied the request. See Butt, 933 F.2d at 83. Indeed, the court found that federal courts considered evidence of mental instability during the timeframe at issue relevant only if the condition caused the person to hallucinate or the person "suffered from a severe illness, such as schizophrenia, that dramatically impaired her ability to perceive and tell the truth." Id. (citing series of cases finding admissible evidence of mental instability during relevant timeframe where there was documented medical history of psychosis, delusions and hallucinations). Simply being intrigued by documentaries on the Discovery Channel does not rise to the level of "mental instability" required by Butt or any of the other cases cited by the defendant. See, e.g., United States v. Moore, 923 F.2d 910, 913 (1st Cir. 1991) (declining to overturn district court's decision to preclude evidence of witness's consultation with therapist); United States v. Bari, 750 F.2d 1169, 1179 (2d Cir. 1984) (affirming district court preclusion of cross-examination of government witness regarding mental instability; "Conducting a mini-trial on [government witness's] sanity might well have been a time-wasting, confusing digression ultimately degenerating into a battle of psychiatric opinions. Moreover, his hospitalization had ended over ten years before and was of marginal relevance").

These unorthodox interests are not relevant and do not bear on either the defendant's guilt or innocence or on CW1's veracity and credibility. They do not, therefore, have any probative value. Moreover, as noted above, the defendant will have more than ample fodder for cross-examination on a variety of topics, while cross-examination on his interests in these areas will be unduly prejudicial and will create confusion of the issues before the jury. See Fed. R. Evid. 403.

    D.  Previous Civil and Criminal Legal Issues

The defendant also argues that he should be permitted to cross-examine several witnesses in relation to civil and criminal legal issues. Specifically, the defendant contends

5

that he should be permitted to cross-examine CW4 as to his 1994 conviction for disorderly conduct, several other misdemeanors, and a charge of felony criminal nonsupport of children. With respect to CW1, the defendant asserts that he should be permitted to cross-examine CW1 for setting a fire outside of a discotheque, arguing that it is "highly probative of his character for truthfulness" in that CW1 has separately asserted that he is not a violent person. Finally, the defendant argues that he should be permitted to examine CW5 in relation to a civil judgment stemming from a motor vehicle accident.

These arguments are unavailing. With respect to CW4, the defendant seeks to cross-examine him regarding a 1994 misdemeanor for disorderly conduct. While the defendant does not allege that the crime of conviction has as an element a dishonest act or false statement, he seeks to look beyond the crime of conviction to the facts of his arrest.

Fed. R. Evid. 609(a)(2) states that the threshold for admitting a prior conviction is met only when the "elements of the crime required proving—or the witness's admitting—a dishonest act of false statement." Fed. R. Evid. 609(a)(2). As the Second Circuit has previously noted, the words "dishonesty or false statement," are very broad, and "involve activities that are part of nearly all crimes." United States v. Hayes, 553 F.2d 824, 827 (2d Cir. 1977). Interpreting the legislative history of Rule 609, the Hayes panel concluded that "the use of the second prong of Rule 609(a) is thus restricted to convictions that bear directly on the likelihood that the defendant will testify truthfully (and not merely on whether he has a propensity to commit crimes). It follows that crimes of force, such as armed robbery or assault, or crimes of stealth, such as burglary, or petit larceny do not come within this clause." Id. Therefore, even assuming for the sake of argument that CW4 had in fact been convicted of stealing a car, Hayes indicates that such as conviction would be inappropriate impeachment fodder under the rule. However, CW4 was not convicted of stealing a car; he was convicted of disorderly conduct. At least one district court applying Hayes has concluded that misdemeanor convictions for unauthorized use of a vehicle, possession of stolen property, disorderly conduct, resisting arrest and escape are inadmissible under Rule 609. Daniels v. Loizzo, 986 F. Supp. 245, 247 (S.D.N.Y. 1997). The defendant should be precluded from questioning CW4 about this conviction.

The defendant also insists that he be allowed to cross-examine CW4 on his traffic violations (although he presents no legal analysis to counter the government's arguments on this point). He also insists that he be allowed to cross-examine CW4 on his non-payment of child support because it demonstrates his inability to abide by a court order, thus calling into question his veracity as a witness. The defendant has not even attempted to distinguish the case law the government provided in its motion, all of which support its argument that this Court should exclude the unfairly prejudicial value of cross-examination on the non-payment of child support, particularly where the relevance of such evidence to the issues to be tried is, at most, minimal. There are any number of reasons why a parent may not pay court-ordered child support payments, including the simple fact that the parent may not have the financial wherewithal to pay, that have no bearing on the parent's ability to be truthful before a jury. On the other hand, cross-examining the witness on this prior conviction will undoubtedly have precisely the effect that defendant intends: it will inflame the passion of the

jury against the witness. The Court should exclude this line of cross-examination pursuant to Fed. R. Evid. 403.

As for CW1's act of arson, CW1 was never charged or convicted with a crime, and the incident occurred 24 years ago. Nor is CW1's action probative of truthfulness: his was a property crime, committed outdoors and behind a building. No persons were injured nor is there any suggestion in the record that they reasonably could have been or that that was CW1's intention. Thus, the defendant's attempt to shoehorn the arson attempt as probative of truthfulness because it allegedly conflicts with CW1's statement that he is not violent is a non-starter. Finally, as noted above, the defendant will have ample opportunity to cross-examine CW1 on a variety of topics, including his significantly more recent drug trafficking and murder conspiracies in concert with the defendant, so to permit cross-examination on the 1994 episode would be unduly cumulative. See Cruz, 894 F.2d at 43; see also United States v. Brown, No. 07-CR-874 (KAM), 2009 WL 497606, *4 (holding that even acts of violence may be excluded from cross-examination where party seeking their introduction cannot explain how acts are probative of truthfulness); Fed. R. Evid. 608 advisory committee's note (the "remote[ness] in time" and "danger of unfair prejudice [and] confusion of issues" permit limits on cross-examination).

Similarly with respect to CW5's civil judgment stemming from a motor vehicle accident, the defendant notes that CW5 was delinquent in paying the judgment, leading the defendant to explain that CW5 therefore "disobey[ed] a court order," and from there the defendant leaps without explanation or citation to any case law to asserting that CW5's veracity is therefore called into question. See Def. Br. at 6. As the government explained in its opening brief, this kind of civil judgment is not probative of his veracity, because there is no suggestion that CW5 deceived a court in relation to his failure to promptly satisfy the judgment. Ultimately, as with several of the defendant's other arguments, the defendant's proffered reading of the law would swallow the rule: any civil judgment or criminal conviction, no matter how remote or minor, could be recast as "disobedience" in relation to the law or a court order and therefore be admissible as probative of veracity. Rule 608(b)'s exception to the general prohibition on the admission of specific instances of past conduct is not so broad. See United States v. Nelson, 365 F. Supp. 2d 381, 386 (S.D.N.Y. 2005) (explaining Rule 608(b) is "intended to be restrictive" and "does not authorize inquiry on cross-examination into instances of conduct that do not actually indicate a lack of truthfulness"). Cross-examination regarding CW5's civil judgment should be precluded.

E.  Attempted Murder of Coconspirator

Not content to cross-examine CW6 about the handful of people he either attempted to kill or ordered to be killed during his drug trafficking career, the defendant seeks to cross-examine CW6 on that witness's attempt to kill ▇▇▇▇▇▇▇▇▇▇▇▇ Specifically, he argues that the attempt to kill ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ This argument, while certainly novel, is not grounded in the facts of this case. CW6 attempted to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

7

CW6 will testify that he did not even meet the defendant until 2002. CW6's actions cannot possibly demonstrate a "lack of loyalty" or "possible bias" against the defendant if they were undertaken a half-decade before CW6 was introduced to the defendant. Under these circumstances, any cross-examination about CW6's ▓▓▓▓ ▓▓▓▓ would be purely cumulative, and is excludable under Rule 403 on this ground alone. However, such cross-examination is also properly excludable because of the safety issues that CW6 and his family would face ▓▓▓▓ ▓▓▓▓. It is one thing to provide information to the government and testify about a dangerous individual ▓▓▓▓ ▓▓▓▓ If ▓▓▓▓, the risk to CW6's and his family's life would increase. In light of the lack of relevance posed by this line of cross-examination, therefore, the Court should exclude this line of cross-examination under Rule 403.

        F.        <u>Movie/Television Production Contract</u>

The defendant seeks to question CW7 about a contract that CW7's wife entered into to sell the rights of her book, even though there is a nondisclosure agreement in place to prevent the parties from disclosing the details of her agreement. The defendant explains that CW7's wife, and therefore, by extension, CW7 himself, stands to make more money by "making his testimony as salacious and theatrical as possible to increase" the value of the agreement. The defendant certainly should be free to cross-examine CW7 about the fact that his wife wrote a book, and may certainly ask CW7 whether his wife stands to make more money the more salacious and theatrical CW7's testimony is. The government merely seeks to preclude inquiry into the specific details of CW7's wife's contract. Those details, if elicited, could not possibly advance the defendant's core bias argument. The defendant will already be able to show that the witness's wife made a significant amount of money for writing her book and stands to make a substantial amount more. Because the defendant has not articulated how exposing the details of the protected contract—specifically, the amount of money CW7's wife is guaranteed to make—would do anything for the defendant other than to exact a penalty for CW7's cooperation with the government. This line of cross-examination should be precluded.

        G.        <u>Irrelevant Messages and Communications</u>

The defendant opposes the government's motion to preclude cross-examination as to irrelevant text messages and other communications involving two cooperating witnesses, arguing that the government has not identified with specificity the messages that it seeks to preclude. In its opening brief on this subject, the government provided a summary of the types of irrelevant messages that should be precluded from cross-examination: "memes, GIFs, cartoons, images, and inside jokes, many of a politically incorrect or ribald nature" with respect to CW8, and "banter with friends and associates about non-relevant issues, such as his romantic interests," with respect to CW1. See Dkt. No. 350 at 11-12.

As the government explained in its opening brief, the Court may exclude cross-examination on these messages as irrelevant, and more prejudicial than probative. <u>See id.</u> The

defendant asserts in response that the irrelevant messages may nonetheless "bear directly on the witness[es'] credibility and motive to testify falsely." Def. Br. at 8. But the defendant never explains how that is so, nor does he offer any examples of text messages that he may seek to use to cross-examine CW1 and CW8 as probative of their credibility. The government cannot therefore respond to the defendant's argument, and reserves the right to object to any attempt by the defendant to cross-examine CW1 and CW8 at trial regarding these irrelevant communications, even if the defendant seeks to do so under the guise that banter among friends, inside jokes, and memes are somehow probative of witness credibility and bias.

III.  Law Enforcement Officers

As the government explained in its motion to preclude cross-examination regarding law enforcement witnesses, courts in this Circuit have consistently precluded cross-examination of government witnesses concerning substantiated complaints about a law enforcement witness's conduct in the line of duty where the alleged conduct is not related to the witness's character for truthfulness. See Dkt. No. 354 at 5 (collecting cases). The defendant's only substantive response to most of the instances of conduct for which the government seeks to preclude cross-examination is that they "bear on the judgment" of the law enforcement witnesses. Def. Br. at 9. But the fact that judgment—and even allegations of poor judgment—may have been involved does not justify the admission of these avenues of cross-examination. Rule 608(b) is concerned with credibility, and for the reasons set forth in the government's motion, the specific instances of conduct in question do not bear on the witnesses' credibility and truthfulness.

For one law enforcement witness, DEA Special Agent ███, the defendant argues that he should be permitted to cross-examine Special Agent ███ as to a letter of caution for failing to properly secure evidence, reasoning that the letter concerned the "very same type of conduct to which he is expected to testify, namely, his securing of evidence." Def. Br. at 9. This glosses over the requirements of Rule 608(b), which permits cross-examination into instances of conduct reflecting on veracity and truthfulness; there is no blanket exception for the "same type of conduct" as that to which the witness testifies. But Special Agent ███s letter of caution does not bear on his credibility or veracity. The defendant may not, therefore, inquire into or introduce evidence related to Special Agent ███ previous incident related to securing evidence in order to call into question his role in relation to the chain of custody in this case.

Finally, the defendant has not articulated how DEA Special Agent ███'s inadvertent production of unrelated notes could bear on his credibility and therefore be properly subject to cross-examination. (In fact, the defendant does not even attempt to do so, asserting only—and dubiously—that Special Agent ███ preparation of this case is "relevant.") See Def. Br. at 9. Cross-examination as to the inadvertently produced notes should be precluded for the reasons set forth in the government's opening brief.

9

IV.	Sealing is Appropriate

Pursuant to the protective order in this case, the government respectfully requests permission to submit this brief under seal. See Dkt. No. 57 ¶ 8. This brief details information regarding the government's cooperating witnesses. Although the cooperating witnesses are not identified by name herein, the defendant's criminal associates likely could use the information described herein to identify that witness. Moreover, the information discussed herein is sensitive information about which the government seeks to preclude public questioning.

Thus, sealing is warranted because of the concerns regarding the safety of potential witnesses and their families, and the danger posed by disclosing the potential witnesses' identities and their cooperation with the government. Sealing is further warranted to protect the disclosure of sensitive information regarding the government's witnesses. See United States v. Amodeo, 44 F.3d 141, 147 (2d Cir. 1995) (need to protect integrity of ongoing investigation, including safety of witnesses and identities of cooperating witnesses, and to prevent interference, flight and other obstruction, may be compelling reason justifying sealing); see Feb. 5, 2018 Mem. & Order Granting Gov't Mot. for Anonymous and Partially Sequestered Jury, Dkt. No. 187 at 2-3 (concluding that defendant's actions could pose risk of harm to cooperating witnesses). As the facts set forth herein provide ample support for the "specific, on the record findings" necessary to support partial sealing, Lugosch v. Pyramid Co., 435 F.3d 110, 120 (2d. Cir. 2006), the government respectfully requests that the Court permit the government to file this motion to limit cross-examination under seal. Should any order of the Court regarding this application describe the sealed information in question with

10

particularity, rather than in general, the government likewise requests that those portions of the order be filed under seal.

          Respectfully submitted,

          RICHARD P. DONOGHUE
          United States Attorney
          Eastern District of New York

          ARTHUR G. WYATT, CHIEF
          Narcotic and Dangerous Drug Section
          Criminal Division,
          U.S. Department of Justice

          OF COUNSEL:

          ARIANA FAJARDO ORSHAN
          United States Attorney
          Southern District of Florida

cc:    Clerk of Court (BMC) (by ECF)
        Defense Counsel (by ECF and E-mail)