

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| GMP:BCR<br>F. #2009R01065 | *271 Cadman Plaza East*<br>*Brooklyn, New York 11201* |

October 24, 2018

**TO BE FILED UNDER SEAL**

<u>By Hand and ECF</u>

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: <u>United States v. Joaquin Archivaldo Guzman Loera</u>
      <u>Criminal Docket No. 09-466 (S-4) (BMC)</u>

Dear Judge Cogan:

    The government respectfully submits this letter in opposition to the defendant's request to continue the trial date, which is scheduled to begin on November 5, 2018. <u>See</u> Dkt. No. 386.

I.  <u>Background</u>

    This is the defendant's fifth request for an adjournment of the trial date. On December 24, 2017, with trial scheduled for April 2018, the defendant requested an adjournment of trial to August or September 2018, citing, among other things, the volume of discovery that had by that point been produced to the defendant. <u>See</u> Dkt. No. 180 at 2 (referencing "more than 290,000 pages of documents"). On January 10, 2018, the Court granted a continuance to September 2018. Then, in July 2018, the defendant again sought a continuance of the trial date, citing, among other things, the volume of discovery that had by that point been produced to the defendant. <u>See</u> Dkt. No. 262 at 1 (referencing "more than 320,000 pages of documents"). On July 16, 2018, the Court granted a 60-day continuance of the trial date, setting trial for November 5, 2018.

    On August 20, 2018, Jeffrey Lichtman, Esq. entered his appearance for the defendant. <u>See</u> Dkt. No. 289. Over a year earlier, Mr. Lichtman had previously appeared in the gallery of the courtroom as potential counsel for the defendant and revealed publicly that he was being engaged by the defendant. <u>See</u> Tr. of Aug. 14, 2017 Status Conf. at 2-3 ("THE COURT: First, on this question of the potential for incoming counsel, I don't have much to

say about that. The fact of the matter is, that I'm not going to hear from counsel who have not come in, without qualification. . . . The only thing I will say, is that if private counsel wants to come in, they need to do it soon because we have a schedule, and if it takes another couple of months, I'm not going to listen to, oh, now we need to move the trial date because we are new to the case."); see also Alan Feuer, El Chapo Gives Up Public Defenders and Hires a Private Lawyer, New York Times, Aug. 8, 2017, available at https://www.nytimes.com/2017/08/08/nyregion/el-chapo-lawyer.html (last visited Oct. 24, 2018) ("Giving up his taxpayer-funded public defenders, Joaquin Guzman Loera, the Mexican drug lord best known as El Chapo, has hired a private lawyer: Jeffrey Lichtman.").

When Mr. Lichtman first appeared at a status conference after filing his notice of appearance, he orally moved the Court for another continuance of the trial date, citing, among other things, the volume of discovery that had by that point been produced to the defendant. See Tr. of Sep. 20, 2018 Status Conf. at 20 ("I would ask for a two-month adjournment of the trial . . . . I'm dealing with thousands of recordings, hundreds of thousands of paper [sic], many of it in Spanish . . . ."). The Court denied the request. See id. at 20-21. At the next status conference, on October 10, 2018, defense counsel again requested a continuance of the trial date. See Tr. of Oct. 10, 2018 Status Conf. at 16 ("Again, I would respectfully renew my request for adjournment of this case."). The Court again denied the request, noting that the defense had been "on the record as having made it," and that defense counsel "need not make it again." Id.[1]

Now, in blatant disregard of the Court's admonition, the defense seeks to continue the trial date in this matter yet again. As before, the defense cites the total volume of discovery produced to date, see Dkt. No. 386 at 1 (referencing "over 330,000 pages of documents and tens of thousands of recorded communications"), which was the basis for the Court's two prior adjournments. To its list of complaints, however, the defense adds the government's recent production of 18 U.S.C. § 3500 material. See id. at 2 ("On October 5, 2018, the government produced § 3500 material for 13 cooperators who had not been previously identified. That production consisted of approximately 1,061 individual files and over 14,000 pages.").

Notably, the government's schedule for producing § 3500 material to the defendant has long been clear to the parties and the Court. At the August 14, 2017 status conference, the Court noted that, in light of the complexities of this case, there might be a need for "3500 material not [to] go[] [out] the normal week or two before trial." See Tr. of Aug. 14, 2017 Status Conf. at 8. In response, the government offered to make a "staggered 3500 production" in which § 3500 material would be produced on a rolling basis in the months before trial. Id. at 9.

---

[1] With the trial date appearing firm, the government has now arranged for witnesses to travel to New York City from across the country, worked with the U.S. Marshals Service and other law enforcement agencies to arrange for the transportation to the New York area of cooperating witnesses, and otherwise finalized the logistical details for trial.

2

At the next status conference, in November 2017, the topic arose again, following a letter that the government had sent to the defendant outlining its intentions vis-à-vis the schedule for producing § 3500 material. Specifically, on November 6, 2017, the government had informed the defense that it would "provide [] the identity of its law enforcement witnesses and § 3500 material for such witnesses two months in advance of trial," and that it would "provide [] the identity of most of its lay and cooperating witnesses one month in advance of trial," with delayed disclosure of § 3500 material after that date for certain cooperating witnesses for whom there might be particularized security concerns. Dkt. No. 162 at 8-9. At the ensuing status conference, the Court endorsed the government's proposal, noting that it "can't tell the government to give you [§ 3500 material] six weeks prior to trial" where there are security concerns for cooperating witnesses. Tr. of Nov. 8, 2017 Status Conf. at 17. Counsel for the defendant indicated that he understood the concern and the government's proposed schedule for disclosing § 3500 material. See id. ("MR. BALAREZO: I understand. It's not my first rodeo. I understand how it works."). Thus, as defense counsel acknowledged, the government's disclosure of § 3500 material close to the trial date was necessitated by its security concerns related to revealing its cooperating witnesses.

In July 2018, in response to the defendant's motion to continue the trial, the government estimated that its § 3500 material for cooperating witnesses would exceed 25,000 pages. See Dkt. No. 265 at 3 n.2. Thereafter, the Court granted the defendant's motion to continue the trial to its current date. As it happens, the government's original estimate of the number of pages of § 3500 material was excessive. The government has, in fact, only produced approximately 14,000 pages of § 3500 material, not previously produced as Rule 16 material. See Dkt. No. 386 at 1. Thus, the defense has had substantially less § 3500 material to review than the government predicted at the time that the Court granted the continuance leading to the current trial date.[2] The government has also provided the defense with a series of detailed proposed stipulations—to which they have refused to agree—that have provided the defense with a preview of the drug exhibits, public records and expert testimony that the government intends to offer at trial.

II.     The Court Should Deny the Defendant's Motion for a Continuance

On the facts set forth above, there is no basis to grant the defendant's motion to continue the trial.

First, as a legal matter, it is clear that § 3500 does not require the production of witness statements until after each witness's testimony on direct examination. See 18 U.S.C. § 3500(a); see also In re United States, 834 F.2d 283, 287 (2d Cir. 1987) ("[W]e hold that, as to the district court's order for the production of statements of government witnesses, the

---

[2] The government has not yet disclosed § 3500 material for two cooperating witnesses for whom there are particular security concerns, but that it has committed to doing so approximately two weeks before each witness testifies. See Dkt. No. 369. The government anticipates that such material will not be voluminous.

3

Jencks Act controlled, and the district court had no inherent power to modify or amend the provisions of that Act."). Thus, a district court is "without authority to order the government to disclose Jencks material prior to trial." United States v. Hatfield, No.06-cr-0550 (JS), 2009 WL 10673620, *5 (E.D.N.Y. Jul. 10, 2009) (internal citation and quotation marks omitted). Nonetheless, it is common practice for the government to agree to produce § 3500 material prior to trial in order to aid in the efficient conduct of trial proceedings—this is precisely what the government did here, and it produced § 3500 material far earlier than its normal practice. See, e.g., id.

Second, in this particular case, the production schedule for § 3500 material has consistently been tied to concerns for witness safety. For that reason, the government offered to produce § 3500 material for law enforcement witnesses two months before trial, see Dkt. Nos. 260, 301, and the bulk of its cooperating witnesses one month prior to trial, see Dkt. No. 346, with additional information following three weeks prior to trial, see Dkt. No. 369. Due to the adjournment the Court granted in July 2018, the defense has now been in possession of the government's law enforcement witnesses' § 3500 material for nearly four months, and it received the cooperating witness's material precisely one month before trial, as scheduled. To date, the defendant has § 3500 material for all of the government's witnesses but two. To grant the defendant's motion and continue the trial thus would mean that the government exposed these witnesses and their families to security risks not one month prior to trial, as it had planned and as the Court endorsed, but three or four months or more prior to trial, thereby greatly expanding the amount of time that their identities are exposed and they are potentially subject to intimidation and harm.[3]

Third, the defense is hardly as stretched in their trial preparation as they claim. No fewer than seven defense attorneys are currently entered on the docket in this case, and an additional two attorneys—who have not yet filed notices of appearance—have completed Special Administrative Measures ("SAMs") forms that permit them access to the defendant. Six of those attorneys and three paralegals have also signed the Protective Order acknowledgement form that allow them to access to discovery and § 3500 material. This is undoubtedly a case that demands a large commitment of resources from the defense, the

---

[3] The government has previously detailed for the Court the security risks faced by its cooperating witnesses in ex parte filings and respectfully refers the Court to those fillings. See, e.g., Dkt. No. 31 at 3-4; Dkt. No. 45 at 2-3; Dkt. No. 78 at 2-3. ███████

government and the Court, but the defense appears to have more than sufficient personnel at their disposal to aid in preparing their case.[4]

Fourth, the defense should not be heard to complain or express concern that the "overwhelming majority of the [§ 3500] material is in English," which the defense complains requires additional efforts to translate the material for the defendant. See Dkt. No. 386 at 2. Only one month ago, defense counsel sought a continuance in part on the basis that much of the discovery was in Spanish. See Tr. of Sep. 20, 2018 Status Conf. at 20 (seeking continuance because much of discovery was "in Spanish, and frankly, I didn't study hard enough in high school where I had four years of Spanish and that was [lost] on me as well"); Tr. Of Oct. 10, 2018 Status Conf. at 10 ("Within each of those electronic files are thousands of documents, many of them in Spanish."). Additionally, the government is aware that at least two of the defendant's attorneys and three of the paralegals who have filed SAMs forms are Spanish speakers.

Finally, the government reiterates its commitment to reveal to defense counsel shortly before trial which specific witnesses it intends to call in the first several weeks of trial in order to allow the defense to appropriately prioritize its review of discovery material and its preparation for cross-examination. See Dkt. No. 265 at 3 n.2.[5] As this Court has observed, this is projected to be a long trial, and the defense will have time to review and make use of § 3500 material as trial proceeds.[6]

---

[4] The government also notes that the defense was able to cite with alacrity numerous documents from the government's § 3500 materials for cooperating witnesses in its opposition to the government's motion to preclude cross-examination, which it filed just 12 days after the government's production of those materials. See Dkt. No. 372 at 2-5. Such familiarity with the material hardly demonstrates an inability to keep up with the volume of the government's § 3500 production.

[5] At this point, however, the government will do so only once the instant motion is denied or, should it be granted, one to two weeks before the eventual trial date should that date appear firm.

[6] In his motion, the defendant again raises complaints about the conditions of his confinement at the Metropolitan Correctional Center ("MCC"). See Dkt. No. 386 at 3-4. The Court has previously addressed those concerns and need not revisit them here. See Dkt. No. 155 at 6 ("The Government's proposed modifications grant defendant a constitutionally adequate means of preparing for trial without interfering with the safe operation of the MCC."). In any event, as the Court is aware, the defendant will be housed during trial, in part, in the courthouse. By virtue of the location alone, those arrangements may be more convenient for defense counsel to visit with their client during trial.

5

III.     Partial Sealing is Appropriate

Pursuant to the protective order in this case, the government respectfully requests permission to submit this brief partially under seal. See Dkt. No. 57 ¶ 8. Portions of this brief refer to specific safety risks posed to the government's cooperating witnesses and their families, as well as the arrangements for the defendant's confinement during trial.

Thus, partial sealing is warranted because of the concerns regarding the safety of potential witnesses and their families, and the danger posed by disclosing details related to the government's housing. See United States v. Amodeo, 44 F.3d 141, 147 (2d Cir. 1995) (need to protect integrity of ongoing investigation, including safety of witnesses and the identities of cooperating witnesses, and to prevent interference, flight and other obstruction, may be a compelling reason justifying sealing); see Feb. 5, 2018 Mem. & Order Granting Gov't Mot. for Anonymous and Partially Sequestered Jury, Dkt. No. 187 at 2-3 (concluding that defendant's actions could pose risk of harm to cooperating witnesses). As the facts set forth herein provide ample support for the "specific, on the record findings" necessary to support partial sealing, Lugosch v. Pyramid Co., 435 F.3d 110, 120 (2d. Cir. 2006), the government respectfully requests that the Court permit the government to file this opposition to the defendant's adjournment request partially under seal. Should any order of the Court regarding this application describe the sealed information in question with particularity, rather than in general, the government likewise requests that those portions of the order be filed under seal.

IV.     Conclusion

As of the date of this filing, jury questionnaires have been completed by the venire, the government has revealed the identities of its cooperating witnesses and produced § 3500 material for almost all of them (although the volume has been much less than previously anticipated), and both parties and the Court have been diligently preparing for trial on the schedule previously set by the Court. The defendant's motion offers no legal or factual

6

basis why the trial should now be continued. It should therefore be denied, and trial should proceed as scheduled on November 5, 2018.

          Respectfully submitted,

          RICHARD P. DONOGHUE
          UNITED STATES ATTORNEY
          Eastern District of New York
          271 Cadman Plaza East
          Brooklyn, New York 11201

          ARTHUR G. WYATT, CHIEF
          Narcotic and Dangerous Drug Section
          Criminal Division,
          U.S. Department of Justice

          OF COUNSEL:

          ARIANA FAJARDO ORSHAN
          UNITED STATES ATTORNEY
          Southern District of Florida

          Counsel for the United States of America

cc:    Defense Counsel (via Email)
       Clerk of the Court (BMC) (by ECF)