GMP:BCR
F.#2009R01065/OCDETF# NY-NYE-616

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

JOAQUIN ARCHIVALDO GUZMAN LOERA,
also known as "El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa," "Papa," "Inge" and "El Viejo,"

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**<u>TO BE FILED UNDER SEAL</u>**

Docket No. <u>09-CR-466(S-4)(BMC)</u>

REPLY MEMORANDUM IN SUPPORT OF THE GOVERNMENT'S
<u>TRIAL MOTIONS *IN LIMINE*</u>

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

ARTHUR G. WYATT, CHIEF
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice

OF COUNSEL:
ARIANA FAJARDO ORSHAN
United States Attorney
Southern District of Florida

The government respectfully submits this reply memorandum in further support of its additional motions in limine to (1) preclude cross-examination or the introduction of evidence related to a government agent's email describing his personal opinions and characterization of the defendant; (2) preclude the defense from introducing irrelevant, self-serving portions of the defendant's statements made in 1998 to United States law enforcement agents; (3) preclude cross-examination or the introduction of evidence related to a cooperating witness's unsuccessful public authority defense in his own case; (4) preclude the introduction of evidence related to cooperation with the government by a non-testifying coconspirator; (5) preclude cross-examination of a cooperating witness regarding a racially-tinged conversation he had with a family member; and (6) preclude cross-examination of a cooperating witness regarding [redacted]

The government submits this reply to respond to the defendant's arguments regarding the first, third and fourth issues raised in the government's brief. See Dkt. No. 477 at 1, 3 ("Def. Br."). First, the defendant is incorrect that the statements of the law enforcement agent who wrote the email referenced in the defendant's opening statement are admissible as non-hearsay pursuant to Fed. R. Evid. 803(3). If the personal opinions of a law enforcement agent as to a criminal defendant were admissible to show the agent's "state of mind," the exception would swallow the rule: any agent would be permitted to offer "opinion" testimony as to a defendant's role in an offense or even a defendant's ultimate guilt under the guise of the opinion reflecting the agent's "state of mind" vis-à-vis the defendant. The rules of evidence allow for no such thing. Second, the defense is incorrect to argue that an unsuccessful public authority defense raised in a witness's own case is admissible here. The fact that a witness

advanced an unsuccessful legal argument in his own case does not bear on his credibility with respect to the issues in this trial, and it certainly does not necessarily demonstrate that the witness "was lying to the Court [in his own case]." Def. Br. at 3. If this were so, then any unsuccessful legal argument could be weaponized against any criminal defendant in subsequent proceedings as evidence that the defendant must have "lied" (or else, according to the defendant's contorted interpretation here, the prior court would have accepted the argument). The contours of zealous advocacy and the Sixth Amendment are not so narrow. Third, the fact that a non-testifying coconspirator cooperated with the government years after the coconspirator made the statements introduced at trial does not impeach that non-testifying coconspirator's statements or call his credibility into question. His cooperation therefore is entirely irrelevant and should be precluded.

With respect to the second issue raised in the government's brief (i.e., to preclude the defense from introducing irrelevant, self-serving portions of the defendant's statements made in 1998 to United States law enforcement), the defendant's opposition does not raise facts or argument not previously anticipated or covered in the government's opening brief. The government respectfully refers the Court to its opening brief for the legal argument and relevant facts on that topic. See Dkt. No. 460 at 7-10 ("Gov. Br."). With respect to the final two issues (i.e., to preclude cross-examination of a cooperating witness regarding a racially-tinged conversation he had with a family member, and to preclude cross-examination of a cooperating witness regarding information that the government [redacted]), the defendant asserts in his opposition brief that the defense will not cross-examine those witnesses in the manner that the government seeks to preclude. Those two motions may therefore be granted as unopposed.

For the reasons set forth herein, in addition to those in the government's opening brief, the Court should grant the government's motions in limine.

## ARGUMENT

### I. The Court Should Grant the Government's Motion to Preclude Admission of and Cross-Examination Regarding a Government Agent's Email Describing His Personal Opinions and Characterization of the Defendant

As set forth in the government's opening brief, this motion stems from comments by defense counsel regarding the HSI Agent's email during the defendant's opening statement. During a sidebar relating to this issue at the time the government first raised it, counsel for the defendant suggested that such statements might be admissible as non-hearsay pursuant to Fed. R. Evid. 801(d)(2)(D), which provides that a statement "made by a party's agent or employee on a matter within the scope of that relationship and while it existed" is not hearsay within the general prohibition of the Federal Rules of Evidence. See id. at 611:20-612:2. The defense appears to have abandoned that argument. Now, instead, the defendant argues that because the HSI Agent's opinions related to his investigation of the defendant, they are admissible as "professional rather than [] personal opinion[s]." Def. Br. at 2 (emphasis in original). In the defendant's view, this "professional opinion" reflects the HSI Agent's "state of mind" and is therefore admissible as non-hearsay pursuant to Fed. R. Evid. 803(3).

Rule 803(3), however, specifically provides that the rule does not exempt from the rule against hearsay "a statement of memory or belief to prove the fact remembered or believed." Presumably, in light of this limitation, the defendant also asserts that he only intends to offer the HSI Agent's statements for a non-hearsay purpose. See id. ("The defendant is not seeking to elicit this information on cross-examination for the truth of the agent's statement, but rather to show the actor's state of mind at the conclusion of his investigation . . . .").

The defendant's opening statement shows this is not the purpose for which the defendant intends to introduce the email. In the defendant's opening statement, the defense quoted portions of the email concerning whether the defendant was a "myth" or an "actual legend," whether the agent was "impressed" by the defendant-, and what quantities of illicit narcotics the defendant sent to Chicago. 11/13/18 Tr. 579:11-16. As defense counsel explained in offering those quoted excerpts, "the [government's] own witnesses think that he is not who the prosecutors claim he is." Id. at 579:9-10. Thus, the defense indicated that they intended to use the email—which indisputably offers an opinion about the defendant—to rebut government evidence of the defendant's drug trafficking. Advancing the agent's assertions as true—and for the purpose of showing their truth—is the only possible defense use of the portions of the email it quoted in opening statement, and the only use of the email that the defense promised to the jury.

The "state of mind" exception in Fed. R. Evid. 803(3) provides no alternate path to admissibility. Far from supporting the defendant's contentions, Rule 803(3) makes clear that a statement of belief is not admissible to "prove the fact…believed." Fed. R. Evid. 803(3). Thus, to the extent that the defense intends to offer the HSI Agent's email to argue that the government's agents did not believe in the full scope of defendant's enterprise ("How can it be their own witnesses think that he is not who the prosecutors claim he is?"), the email is not admissible to prove that belief. To hold otherwise would vitiate the rule, as any law enforcement agent's "professional opinions" as to a defendant's guilt would be admissible under the theory that they reflect the witness-agent's "state of mind" within the meaning of Rule 803(3). See also Fed. R. Evid. 803, advisory committee's note ("The exclusion [in Rule 803(3)] of 'statements of memory or belief to prove the fact remembered or believed' is

necessary to avoid the virtual destruction of the hearsay rule which would otherwise result from allowing state of mind, provable by a hearsay statement, to serve as the basis for an inference of the happening of the event which produced the state of mind.").

## II. The Court Should Grant the Government's Motion to Preclude Cross-Examination Regarding Cooperating Witness's Previous, Unsuccessful Public Authority Defense in His Own Case

As the government explained in its opening brief, Vicente Zambada Niebla's unsuccessful public authority defense in his own case does not bear on the issues in this trial, risks unfair prejudice and confusion of the issues, and cross-examination should therefore be limited pursuant to Fed. R. Evid. 611.

The defendant asserts, however, that Zambada Niebla's unsuccessful legal strategy is probative of his credibility. See Def. Br. at 3. In the defendant's view, the fact that the Northern District of Illinois rejected Zambada Niebla's argument that he had been granted immunity means that he was "lying to the Court about his purported immunity." Id. The defendant is wrong to suggest that an unsuccessful legal argument bears on a defendant's credibility, and the defendant misleads this Court by implying that Zambada Niebla's own credibility was reflected in the sworn statements filed in support of Zambada Niebla's legal arguments, and in asserting that the Northern District of Illinois made a "determination" that Zambada Niebla had not been truthful.

To be clear, Zambada Niebla himself did not author or sign any affidavits in support of his motion to dismiss his indictment on the basis of purported immunity. See United States v. Zambada Niebla, No. 1:09-cr-00383 (N.D. Ill.), Dkt. No. 170 at 11 (the "NDIL Order"). Nor did that court conclude or state that Zambada Niebla had been untruthful. See id. at 10-11. In fact, that court rejected Zambada Niebla's argument in part on the basis that

he had not provided any sufficient factual evidence in support of his argument. See id. at 11 ("Absent such an affidavit [i.e. from Zambada Niebla] or any other competent evidence, the Court concludes that there are no material issues in dispute regarding Zambada's claim of immunity from prosecution."). It would be misleading if the defense here were permitted to assert on cross-examination that Zambada Niebla had been caught "lying" to the Northern District of Illinois when in fact that court held, in effect, that Zambada Niebla not stated anything of consequence at all regarding his purported immunity.

Not only do the facts not support the defendant's contention that Zambada Niebla's unsuccessful legal arguments bear on Zambada Niebla's credibility here, but the defense does not even attempt to offer a legal theory for the admissibility of the pleadings in Zambada Niebla's case, or for even examining Zambada Niebla about the arguments made in his case without offering the pleadings. Nor could they. Because Zambada Niebla himself did not write or subscribe to any affidavit or other statement, the only articulation of his defense in the Northern District of Illinois was made by his attorneys in pleadings. Rule 613(b), however, which governs the admissibility of extrinsic evidence of prior inconsistent statements, does not provide a means of admitting the pleadings because it applies only to statements actually made by the witness. See United States v. Cuevas Pimentel, 815 F. Supp. 81, 83 (D. Conn. 1993) (Cabranes, J.) ("[C]ourts appear to take it for granted that a statement is admissible as a statement of a witness only where that statement was in fact made by the witness."). And Rule 801(d)(2)(D), which provides that a statement of a party's agent is not hearsay, and could therefore theoretically permit the introduction of a statement by an attorney-agent, only applies to parties. Zambada Niebla is not a party here, so Rule 801(d)(2) does not permit introduction of his attorneys' assertions in the Northern District of Illinois. See Cuevas

Pimentel, 815 F. Supp. at 84 ("Rule 613(b) does not authorize the introduction of these statements because they were not actually made by the witness against whom they would be offered. Rule 801(d)(2) does not permit the introduction of these statements because they are not attributable to a witness rather than a party to the case.").

## III. The Court Should Grant the Government's Motion to Preclude Introduction of Evidence Related to Cooperation of Non-Testifying Coconspirator

The defendant argues that [redacted]'s cooperation with the government—which occurred years after the events involving [redacted] which have been related at trial—is admissible because it speaks to his credibility as a non-testifying witness. But because the only statements by [redacted] that the government has elicited occurred years before [redacted]'s cooperation with the government, his later cooperation cannot possibly call into question or otherwise undermine those statements. See [redacted].[1] The fact of his cooperation is therefore not Giglio material in relation his statements as a non-testifying coconspirator.

## IV. Partial Sealing is Appropriate

Pursuant to the protective order in this case, the government respectfully requests permission to submit this brief partially under seal. See Dkt. No. 57 ¶ 8. Portions of this brief refer to the government's cooperating witnesses. The government has identified one of them by his full name, for the convenience of the Court and in light of the fact that reference to the district in which he was charged and pleaded guilty would likely reveal him to many observers even if a code number or pseudonym were used.

[1] The government does not intend to elicit additional witness testimony relating to [redacted].

Thus, partial sealing is warranted because of the concerns regarding the safety of potential witnesses and their families, and the danger posed by disclosing the potential witnesses' identities and their cooperation with the government prior to their testimony in this case. See United States v. Amodeo, 44 F.3d 141, 147 (2d Cir. 1995) (need to protect integrity of ongoing investigation, including safety of witnesses and the identities of cooperating witnesses, and to prevent interference, flight and other obstruction, may be a compelling reason justifying sealing); see Feb. 5, 2018 Mem. & Order Granting Gov't Mot. for Anonymous and Partially Sequestered Jury, Dkt. No. 187 at 2-3 (concluding that defendant's actions could pose risk of harm to cooperating witnesses). As the facts set forth herein provide ample support for the "specific, on the record findings" necessary to support partial sealing, Lugosch v. Pyramid Co., 435 F.3d 110, 120 (2d. Cir. 2006), the government respectfully requests that the Court permit the government to file this reply brief partially under seal. Should any order of the Court regarding this application describe the sealed information in question with particularity, rather than in general, the government likewise requests that those portions of the order be filed under seal.

## CONCLUSION

For the foregoing reasons, the Court should grant the government's motions in limine in their entirety.

Dated: Brooklyn, New York
December 3, 2018

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney
Eastern District of New York

ARTHUR G. WYATT, CHIEF
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice

OF COUNSEL:
ARIANA FAJARDO ORSHAN
United States Attorney
Southern District of Florida