

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

GMP:AJN/BCR
F. #2009R01065

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

November 22, 2017

**SUBMITTED EX PARTE AND UNDER SEAL**

By ECF
The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re: United States v. Joaquin Archivaldo Guzman Loera
         Criminal Docket No. 09 CR 466 (S-4) (BMC)

Dear Judge Cogan:

      The government respectfully submits this ex parte letter (the "Sixth Ex Parte Submission") in further support of its application for a protective order permitting the government to defer production of materials that identify cooperating witnesses, as well as photographs of the government's witnesses and the defendant's co-conspirators that the government plans to introduce at trial (collectively, the "Materials"). As the government explained in the public filing that accompanies this Sixth Ex Parte Submission, see Dkt. No. 168, the Materials provide information about cooperating witnesses whose identities as cooperating witnesses and/or potential trial witnesses have not yet been disclosed to the defendant, his counsel or the public. These witnesses, together with their families, would face serious safety risks if their cooperation and status as prospective trial witnesses were revealed at this time.

I.      Concerns Regarding the Disclosure of Witnesses' Cooperation

      In previous ex parte submissions, the government has explained the basis of its concern for the security of witnesses and the risks of disclosure of sensitive information in this case. See Dkt. No. 31 at 3-4 (detailing defendant's attempts to silence a cooperating witness by kidnapping his family members); Dkt. No. 45 at 2-3 (describing defendant's attempts to murder multiple cooperating witnesses, as well as the actual murder of the sons of a cooperating witness by the defendant's associates); Dkt. No. 78 at 2-3 (describing defendant's attempts to intimidate one cooperating witness and the kidnapping of the family of another

cooperating witness at the defendant's direction). The government incorporates those ex parte filings here by reference. In part because of the concerns raised in the government's prior ex parte submissions, the Court has entered a protective order, see Dkt. No. 57, upheld restrictions on the defendant's ability to receive visitors and contact third parties, see Dkt. No. 71, and ordered the defense not to reveal the names of potential witnesses in public filings, see Dkt. Nos. 116, 129. The government respectfully submits that the same concerns which motivated its prior ex parte submissions continue today, and justify deferred disclosure of the Materials.

II.     Description of the Materials and Specific Concerns

The government sets forth below a particularized description of the Materials, organized by cooperating witness.[1]

      A.    Cooperating Witness #1 (CW #1)

CW #1 was a computer engineer who designed a private, encrypted communications system used by the defendant and some of his Colombian cocaine suppliers. CW #1 proactively cooperated against the defendant and other large-scale drug traffickers, providing the FBI and Dutch authorities access to servers in the Netherlands containing the defendant's and his co-conspirators' encrypted communications.[2] There is particular concern about revealing that CW #1 may be a witness in this case, because other cooperating witnesses are expected to testify that the defendant and a high-level associate had discussed killing CW #1. Indeed, one such cooperating witness was recruited to attempt to lure CW #1 to a specific location in order to be murdered; however, the other cooperating witness did not ultimately go forward with the plan. CW #1 continues to cooperate with the government, but he is not currently in custody. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

The evidence related to CW #1 for which the government seeks deferred disclosure is comprised of (1) audio and video recordings of CW #1 in which CW #1 discusses his or her work for the defendant, which were made by a confidential informant prior to CW #1's cooperation with the government, (2) copies of CW #1's passport and other travel records,

---

[1] The government does not believe that the identities of the cooperating witnesses are necessary for the Court to address the government's application for deferred disclosure of the Materials. Should the Court find it helpful, however, the government will provide ex parte the identities of the cooperating witnesses referenced herein. In an abundance of caution, the government notes that although it has not revealed the names of the cooperating witnesses in this submission, it has provided detail sufficient to allow the defendant or his co-conspirators to identify the witnesses described herein. It is appropriate, therefore, for this submission to remain sealed and ex parte.

[2] Dutch authorities obtained judicial approval to intercept these communications. The FBI obtained the communications through a Mutual Legal Assistance Treaty request to the Netherlands.

2

showing travel between Colombia and Mexico in order to visit the defendant. Disclosure of these materials will indicate that CW #1 is likely to be a trial witness against the defendant. That disclosure risks exposing CW #1 to the kinds of intimidation and interference set forth above and in the government's previous ex parte submissions.

B. Cooperating Witness #2 (CW #2)

CW #2 was an assistant of a large-scale drug trafficker associated with the defendant. Eventually, CW #2 oversaw exchanges of money for the defendant in Mexico and engaged in drug trafficking activities, such as helping to source precursor chemicals for the manufacture of methamphetamine. CW #2 ultimately agreed to proactively cooperate with the government, and operated as a confidential source for U.S. law enforcement for over a year before voluntarily appearing in the United States to plead guilty to drug trafficking charges. While proactively cooperating, CW #2 met with the defendant and provided information that helped government authorities eventually arrest and capture him. Ultimately, the defendant issued a contract to have CW #2 killed.

The evidence related to CW #2 for which the government seeks deferred disclosure is comprised of (1) drafts of book chapters and a film script about the defendant, stemming from an arrangement with a ghost writer which CW #2 brokered at the defendant's request; (2) photographs that CW #2 took of the defendant's gun and safe house; (3) video recordings that CW #2 made of another associate of the defendant, whom CW #2 met with on behalf of the defendant and his high-level associate; and (4) travel documents showing CW #2's travel on behalf of the defendant and the Sinaloa Cartel. Disclosure of these materials, which the defendant likely will recognize as being provided to the government by CW #2, will reveal CW #2's cooperation against the defendant and the fact that he or she is a likely trial witness. That disclosure risks exposing CW #2 to the intimidation and interference set forth above and in the government's previous ex parte submissions.

C. Cooperating Witness #3 (CW #3)

CW #3 was a Mexico-based drug trafficker affiliated with the defendant. Those family members live exposing them to particular risk of retaliation if it is learned that CW #3 is cooperating against the defendant. The defendant's son, Ivan Guzman, and CW #3 have a particularly acrimonious history; if the defendant's family were to learn that the witness will testify against the defendant, it is likely that the defendant's son, who has been indicted in the Southern District of California and is currently a fugitive in Mexico, may retaliate. CW #3's family members' safety would be in danger if the defendant's associates in the cartel knew that CW #3 were cooperating against the defendant and is a potential trial witness.

3

The evidence related to CW #3 for which the government seeks deferred disclosure is a series of ledgers showing drug shipments involving the Sinaloa Cartel. Those documents, once revealed, will show that CW #3 is a likely trial witness against the defendant. That disclosure risks exposing CW #3 to the dangers outlined above and in the government's previous ex parte submissions.

D. Cooperating Witness #4 (CW #4)

CW #4 was a Colombia-based drug trafficker who was a high-level leader of a Colombia-based drug trafficking organization. CW #4 and his organization conducted business with the defendant and his organization. In 2007, CW #4 relocated to Culiacan and lived with the defendant, working with him and developing a close personal relationship during that time.

The evidence related to CW #4 for which the government seeks deferred disclosure is a single photograph showing the defendant with CW #4. Although the photograph is publicly available, its disclosure will indicate that CW #4 is a likely trial witness against the defendant. The government understands that attorneys for the defendant have already attempted to contact attorneys for CW #4, suggesting that the defendant may already suspect that CW #4 is a cooperating witness. Disclosure of the photograph, however, will virtually confirm CW #4's status as a cooperating witness, and disclosure therefore risks exposing CW #4 to the kinds of intimidation and interference set forth above and in the government's previous ex parte submissions.

E. Cooperating Witness #5 (CW #5)

CW #5 was a pilot and logistics coordinator who worked for a drug trafficking organization that did business with the defendant. At one point during the course of his drug trafficking activities, CW #5 traveled to Mexico to meet with the defendant to arrange large shipments of cocaine to occur by airplane flight.

The evidence related to CW #5 for which the government seeks deferred disclosure is a copy of CW #5's passport, demonstrating his travel to meet with the defendant. Its disclosure will indicate that CW #5 is a likely trial witness against the defendant. That disclosure risks exposing CW #5 to the kinds of intimidation and interference set forth above and in the government's previous ex parte submissions

F. Lay Witness #1 (LW #1)



4



G.  Photographs of Witnesses and Co-Conspirators that the Government Intends to Introduce at Trial

The government also intends to introduce at trial photographs of government witnesses and the defendant's co-conspirators. Even though the set of photographs that the government will produce to the defendant will include both witnesses and co-conspirators who are not witnesses against the defendant, production of those photographs will allow the defendant to deduce who the government's witnesses may be, and which witnesses may be cooperating with the government against him (for example, by comparing the photographs to public reporting and the defendant's knowledge of who among his associates had been arrested and/or extradited to the United States). Because disclosure of photographs of witnesses and co-conspirators therefore risks exposing the persons depicted in the photographs to the intimidation and interference described above and in the government's previous ex parte submissions, the government requests permission to defer production of these photographs.

III.  Sealing and Ex Parte Filing

The government respectfully requests permission to submit this letter under seal and ex parte. Sealing and ex parte filing is warranted because of the concerns discussed supra regarding the safety of the witnesses and their families, and the danger posed by disclosing the witnesses' identities and their cooperation with the government. See Fed. R. Crim. P. 16(d)(1) (stating that court may permit party to show good cause for protective order "by a written statement that the court will inspect ex parte"); June 29, 2017 Mem. & Order, Dkt. No. 101 at 4-9 (describing appropriate circumstances for submitting information ex parte, including to protect witness safety); United States v. Amodeo, 44 F.3d 141, 147 (2d Cir. 1995) (need to

---

3 

protect the integrity of an ongoing investigation, including the safety of witnesses and the identities of cooperating witnesses, and to prevent interference, flight, and other obstruction, may be a compelling reason justifying sealing). As the facts set forth herein provide ample support for the "specific, on the record findings" necessary to support sealing, Lugosch v. Pyramid Co., 435 F.3d 110, 120 (2d. Cir. 2006), the government respectfully requests that the Court file this ex parte supplement to the government's application for a protective order permitting delayed disclosure under seal. Should any order of the Court regarding this application describe the evidence or witnesses in question with particularity, rather than in general (as in the government's accompanying public filing and proposed order), the government likewise requests that such order be filed under seal and ex parte.

    Respectfully submitted,

    BRIDGET M. ROHDE
    Acting United States Attorney
    Eastern District of New York

    ARTHUR G. WYATT, CHIEF
    Narcotic and Dangerous Drug Section
    Criminal Division,
    U.S. Department of Justice

    OF COUNSEL:

    BENJAMIN GREENBERG
    Acting United States Attorney
    Southern District of Florida