

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

GMP:BCR
F. #2009R01065

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 19, 2018

**SUBMITTED EX PARTE AND UNDER SEAL**

By ECF
The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

> Re: United States v. Joaquin Archivaldo Guzman Loera
>     Criminal Docket No. 09 CR 466 (S-4) (BMC)

Dear Judge Cogan:

   The government respectfully submits this ex parte letter (the "Eighth Ex Parte Submission") in support of its supplemental application for a protective order permitting the government to defer production of materials that identify witnesses (collectively, the "Supplemental Materials").  As the government explained in its public filing that accompanies this Eighth Ex Parte Submission, see Dkt. No. 203, the Supplemental Materials provide information about cooperating and lay witnesses whose identities as cooperating witnesses and/or potential trial witnesses have not yet been disclosed to the defendant, his counsel or the public.  These witnesses, together with their families, would face serious safety risks if the government revealed their cooperation or status as prospective trial witnesses at this time.[1]  Accordingly, the Court should grant the government's motion for deferred disclosure of the Supplemental Materials.

---

[1] Although the government previously filed a motion to permit deferred disclosure of certain Rule 16 materials, see Dkt. No. 168, which the Court granted, see Dkt. No. 176, the Supplemental Materials covered by this motion either (1) were not in the government's possession at the time of the government's first application or (2) the government had not yet identified them as discoverable material at that time.

I.  Safety Concerns Related to the Disclosure of Witnesses

In its previous ex parte submissions, the government has explained its concern for the security of witnesses and the risks of disclosure of sensitive information in this case. See, e.g., Dkt. No. 31 at 3-4 (detailing defendant's attempts to silence cooperating witness by kidnapping his family members); Dkt. No. 45 at 2-3 (describing defendant's attempts to murder multiple cooperating witnesses, as well as murder of sons of cooperating witness by defendant's associates); Dkt. No. 78 at 2-3 (describing defendant's attempts to intimidate one cooperating witness and kidnapping of family of another cooperating witness at defendant's direction). In part because of the concerns raised in the government's prior ex parte submissions, the Court has entered a protective order, see Dkt. No. 57; upheld restrictions on the defendant's ability to receive visitors and contact third parties, see Dkt. No. 71; and ordered the defense not to reveal the names of potential witnesses in public filings, see Dkt. Nos. 116, 129. The Court also granted the government's previous motion to defer disclosure of Rule 16 materials that would identify the government's witnesses (the "First Deferred Disclosure Motion"). See Dkt. No. 168, 176. The government respectfully submits that the same concerns that motivated its prior ex parte submissions and its previous motion for deferred disclosure likewise justify deferred disclosure of the Supplemental Materials.

II.  The Supplemental Materials

Set forth below is a particularized description of the Supplemental Materials organized by cooperating witness. The numbers used to identify new cooperating witnesses in this supplemental application continue the numbering used in the First Deferred Disclosure Motion, see Dkt. No. 168. Additionally, Cooperating Witnesses #1, #2 and #3, and Lay Witness #1, are listed in this application again in order to cover materials newly provided to the government by those witnesses or identified as discoverable since the previous motion.[2]

A.  Cooperating Witness #1 (CW #1)

As set forth in the government's First Deferred Disclosure Motion, see id. at 2, CW #1 was a computer engineer who designed a private, encrypted communications system used by the defendant and some of his Colombian cocaine suppliers. CW #1 proactively cooperated against the defendant and other large-scale drug traffickers, providing the FBI and Dutch authorities access to servers in the Netherlands containing the defendant's and his co-

---

[2] The government does not believe that the identities of the cooperating witnesses are necessary for the Court to address the government's application for deferred disclosure of the Supplemental Materials. Should the Court find it helpful, however, the government will provide ex parte the identities of the cooperating witnesses referenced herein. In an abundance of caution, the government notes that, although it has not revealed the names of the cooperating witnesses in this submission, it has provided detail sufficient to allow the defendant or his co-conspirators to identify the witnesses described herein. As discussed further below, it is appropriate, therefore, for this submission to remain sealed and ex parte.

2

conspirators' encrypted communications.[3] There is particular concern about revealing that CW #1 may be a witness in this case, because other cooperating witnesses are expected to testify that the defendant and a high-level associate had discussed killing CW #1. Indeed, the defendant and his associate recruited one such cooperating witness to attempt to lure CW #1 to a specific location in order to be murdered; however, the other cooperating witness did not ultimately go forward with the plan. CW #1 continues to cooperate with the government, but is not currently in custody. ███████████████████████████████████████

The evidence related to CW #1 for which the government seeks deferred disclosure in this application are emails that CW #1 sent to FBI agents during CW #1's proactive cooperation. These emails, among other things, (1) establish the dates that CW #1 obtained certain evidence that the government may introduce at trial, such as recorded telephone calls and text messages of the defendant and his co-conspirators and (2) contain CW# 1's prior voice identifications of the defendant. Disclosure of these materials will disclose CW #1's cooperation and indicate that CW #1 is likely to be a trial witness against the defendant. That disclosure risks exposing CW #1 to the kinds of intimidation and interference set forth above and in the government's previous ex parte submissions.

      B.      Cooperating Witness #2 (CW #2)

As discussed in the government's First Deferred Disclosure Motion, see id. at 3, CW #2 was an assistant of a large-scale drug trafficker associated with the defendant. That associate also is a cooperating witness, whom the government discussed as CW #4 in the government's initial application for deferred disclosure, see id. at 4. CW #2 oversaw exchanges of money for the defendant in Mexico and engaged in drug trafficking activities, such as helping to source precursor chemicals for the manufacture of methamphetamine. CW #2 ultimately agreed to cooperate proactively with the government, and operated as a confidential source for U.S. law enforcement for over a year before voluntarily appearing in the United States to plead guilty to drug trafficking charges. While proactively cooperating, CW #2 met with the defendant and provided information that helped government authorities eventually arrest and capture him. Ultimately, the defendant issued a contract to have CW #2 killed. ████████████████████████████████████████████████████████████

The evidence related to CW #2 for which the government seeks deferred disclosure in this application are (1) a Rolex watch which CW #4 gave to CW #2 while CW #4 resided at one of the defendant's residences in Culiacan, Mexico, as well as photos of that watch; (2) a photograph of CW #4 inside one of the defendant's residences in Culiacan, Mexico, which CW #2 obtained from a third party; (3) consensual recordings that CW #2 made of CW #4 (prior to CW #4's cooperation) and other co-conspirators of the defendant and

---

[3] Dutch authorities obtained judicial approval to intercept these communications. The FBI obtained the communications through a Mutual Legal Assistance Treaty request to the Netherlands.

Case 1:09-cr-00466-BMC-RLM   Document 611-4   Filed 05/05/19   Page 4 of 8 PageID #: 10151

(4) emails that CW #2 sent to FBI agents during CW #2's proactive cooperation. The emails establish, inter alia, the dates on which CW #2 obtained certain evidence that the government may introduce at trial, such as a photograph of the defendant's residence in Culiacan. The emails also contain CW #2's prior identification of photographs of certain of the defendant's co-conspirators.

Disclosure of these materials, which the defendant likely will recognize as being associated with CW #2 and/or CW #4, likely will reveal CW #2 and/or CW#4's cooperation against the defendant and the fact that they are likely trial witnesses. That disclosure risks exposing CW #2 and/or CW #4 to the intimidation and interference set forth above and in the government's previous ex parte submissions.

C.   Cooperating Witness #3 (CW #3)

As discussed in the government's First Deferred Disclosure Motion, see id. at 3-4, CW #3 was a Mexico-based drug trafficker affiliated with the defendant. Those family members live exposing them to particular risk of retaliation if it is learned that CW #3 is cooperating against the defendant. The defendant's son, Ivan Guzman, and CW #3 have a particularly acrimonious history; if the defendant's family were to learn that the witness will testify against the defendant, it is likely that the defendant's son, who has been indicted in the Southern District of California and is currently a fugitive in Mexico, may retaliate. CW #3's family members' safety would be in danger if the defendant's associates in the cartel knew that CW #3 were cooperating against the defendant and is a potential trial witness.

In addition to the materials described in the First Deferred Disclosure Motion, the government has been provided with a thumb drive that contains photographs from CW #3. The photographs show CW #3, various co-conspirators and/or weapons used in furtherance of the defendant's criminal activities. Those photographs, once disclosed, would likely allow the defendant to deduce the identity of the person who provided them and therefore likely would reveal CW #3's identity. For that reason, disclosure of these materials risks exposing CW #3 to the dangers outlined above and in the government's previous ex parte submissions.

D.   Cooperating Witness #6 (CW #6)

CW #6 was a drug trafficker based in both the United States and Mexico who developed a substantial distribution network for cocaine in the United States. In that capacity, CW #6 received thousands of kilograms of cocaine from the defendant, which CW #6 distributed throughout major metropolitan areas in the United States. Ultimately, CW #6 cooperated with the U.S. government; as a cooperator, he recorded a number of conversations with the defendant, the defendant's sons and other co-conspirators. CW #6 is currently in custody in the United States.

4

The evidence related to CW #6 for which the government seeks deferred disclosure is comprised of (1) consensually recorded calls that CW #6 made of the defendant's sons and other co-conspirators and (2) drug ledgers that CW #6 has provided to the government, which show various drug trafficking transactions between CW #6 and the defendant. The government has already produced two recordings of telephone calls between CW #6 and the defendant, as these calls are discoverable under Rule 16 as recordings of the defendant in the government's possession. However, the disclosure of the remaining recordings as Rule 16 material likely would lead the defendant to conclude that CW #6 is a potential trial witness against him. Although CW #6 is currently in protective custody due to the defendant's previous threats against CW #6, disclosure of these materials risks exposing family members and close associates of CW #6 to the kinds of intimidation and interference set forth above and in the government's previous ex parte submissions.

  E. Cooperating Witness #7 (CW #7)

CW #7 was a Mexico-based drug trafficker who worked very closely with the defendant for many years, and is in a position to testify about the defendant's use of aircraft, trains, boats and cross-border tunnels to transport multi-thousand kilogram quantities of cocaine into the United States. CW #7 is expected to testify that, while CW#7 was in jail in Mexico, CW #7 suffered multiple attacks—including being stabbed on multiple occasions and having hand grenades thrown in front of his jail cell—at the hands of persons who were sent by the defendant. [REDACTED].

The evidence related to CW #7 for which the government seeks deferred disclosure is a set of photographs taken in February 2018 of CW #7's scars from the above-referenced attacks, which demonstrate acts of violence undertaken at the defendant's direction. Once produced to the defendant, these photographs will likely reveal the identity of CW #7. [REDACTED], disclosure of his identity as a potential trial witness could lead the defendant and his criminal associates to attempt to locate CW #7 or family members and associates of CW #7 who still reside in Mexico.[4] That disclosure therefore risks exposing CW #7 to the dangers outlined above and in the government's previous ex parte submissions.

---

[4] CW #7 is one of the potential witnesses previously exposed by the defense in its briefing in support of its motion to dismiss the indictment. See Dkt. No. 110. The Court concluded that the defendant's disclosure of the identity of CW #7 and one other person as potential witnesses in this case violated the Protective Order and "expos[ed] [the] witnesses and their families to a greater threat of harm." Dkt. No. 116 at 1.

F. Cooperating Witness #8 (CW #8)

CW #8 is a Colombian national who led a large-scale drug trafficking organization that did business with the defendant. At numerous points during the course of his drug trafficking activities, CW #8 traveled to Mexico to meet with the defendant. CW #8 is currently in custody in the United States.

The evidence related to CW #8 for which the government seeks deferred disclosure is a copy of CW #8's passport, demonstrating his travel to meet with the defendant. Its disclosure will indicate that CW #8 is a likely trial witness against the defendant. Although CW #8 is currently in custody, that disclosure risks exposing family members and close associates of CW #8, ███████████████████████ to the kinds of intimidation and interference set forth above and in the government's previous ex parte submissions.

G. Confidential Source #1 (CS #1)

CS #1 is a Mexican drug trafficker who was one of the defendant's closest associates. He was widely presumed to be the defendant's successor as the head of the Sinaloa Cartel until CS #1's arrest by Mexican authorities several months after the defendant's extradition to the United States.

The evidence related to CS #1 for which the government seeks deferred disclosure is a set of letters that the defendant sent to CS #1 while the defendant was incarcerated in Mexico. Their disclosure will indicate that CS #1 is a potential trial witness against the defendant, or at least that CS #1 has cooperated by providing the letters to the government. Although CS #1 is in custody in Mexico, such disclosure risks exposing family members and close associates of CS #1 to the kinds of intimidation and interference set forth above and in the government's previous ex parte submissions.[5]

H. Lay Witness #1 (LW #1)



---

[5] Mexican has not yet extradited CS #1 to the United States. Should he not testify at trial, the government may still seek to introduce the letters that he provided into evidence through other means, such as a handwriting comparison.



III. <u>Sealing and *Ex Parte* Filing</u>

The government respectfully requests permission to submit this letter under seal and <u>ex parte</u>. Sealing and <u>ex parte</u> filing is warranted because of the concerns discussed <u>supra</u> regarding the safety of the witnesses and their families, and the danger posed by disclosing the witnesses' identities and their cooperation with the government. <u>See</u> Fed. R. Crim. P. 16(d)(1) (stating that court may permit party to show good cause for protective order "by a written statement that the court will inspect <u>ex</u> <u>parte</u>"); June 29, 2017 Mem. & Order, Dkt. No. 101 at 4-9 (describing appropriate circumstances for submitting information <u>ex</u> <u>parte</u>, including to protect witness safety); <u>United States v. Amodeo</u>, 44 F.3d 141, 147 (2d Cir. 1995) (need to protect the integrity of an ongoing investigation, including the safety of witnesses and the identities of cooperating witnesses, and to prevent interference, flight and other obstruction, may be a compelling reason justifying sealing). As the facts set forth herein provide ample support for the "specific, on the record findings" necessary to support sealing, <u>Lugosch v. Pyramid Co.</u>, 435 F.3d 110, 120 (2d. Cir. 2006), the government respectfully requests that the Court permit the government to file this supplement to the government's application for a protective order permitting delayed disclosure <u>ex</u> <u>parte</u> and under seal. Should any order of the Court regarding this application describe the evidence or witnesses in question with particularity, rather than in general (as in the government's accompanying public filing and

---

<sup>6</sup> 

8

proposed order), the government likewise requests that such order be filed under seal and <u>ex parte</u>.

                                            Respectfully submitted,

                                            RICHARD P. DONOGHUE
                                            United States Attorney
                                            Eastern District of New York

                                            ARTHUR G. WYATT, CHIEF
                                            Narcotic and Dangerous Drug Section
                                            Criminal Division,
                                            U.S. Department of Justice

                                            OF COUNSEL:

                                            BENJAMIN GREENBERG
                                            United States Attorney
                                            Southern District of Florida