UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES, | : |
| | : |
| v. | : |
| | : Criminal No. 09-0466(BMC) |
| JOAQUÍN GUZMÁN LOERA, | : Trial Date: 11/5/18 |
| | : |
| *Defendant.* | : **FILED UNDER SEAL** |

**DEFENDANT'S OPPOSITION TO
GOVERNMENT'S SECOND MOTION *IN LIMINE***

**DEFENDANT** Joaquin Guzmán ("Guzmán"), by and through undersigned counsel, respectfully submits his opposition to the government's Second Motion *in Limine*.[1]

**I.     The government's motion to admit acts of violence and
drug trafficking as direct evidence and/or pursuant to Fed. R. Evid. 404(b)**

The government has charged Mr. Guzmán, in a lengthy indictment spanning *twenty-five years* from 1989 to 2014.   There is very little precedent of a charged conspiracy of this magnitude. *See, e.g., United States. v. D'Amico*, 734 F. Supp. 2d 321, 332 (S.D.N.Y. 2010) (twenty-nine years "is an unusually long time period to be charged in an indictment..[.]") But for the government, it is still not enough.

*Violent acts*

As if the 25-year period of the charged conspiracy are not sufficient to encompass the government's evidence, the government seeks to admit evidence of alleged violent conduct that occurred before and after the charged conspiracy.

---

[1]  Mr. Guzmán's opposition was due on October 5, 2018.   Unfortunately, due to technical difficulties (draft file was accidentally deleted) and out of state travel, undersigned were not able to timely file this opposition.   Pursuant to Fed. R. Crim. P. 45(b), Mr. Guzmán respectfully requests that the Court accept his opposition as if timely filed and to accord the government a   commensurate amount of time (three days) to reply.

For example, the government seeks admission of evidence of the following:

a. Torture and kidnapping committed by the defendant, and the defendant's orders to commit such acts, some of which occurred *prior to the date* on which the charged CCE and drug trafficking conspiracy counts begin;

b. Uncharged violent acts that relate to the defendant's relationship of trust with his coconspirators and completes the story of the crime on trial;

c. Threats and intimidation of potential witnesses *after the end date of the charged conspiracy*;

d. Defendant's drug trafficking *prior to January 1989*, and *after September 2014*, the charged date range for the CCE and drug trafficking conspiracy counts; and

e. Defendant's drug trafficking activity while he was imprisoned in Mexico from 1993 to 2001.

Gov. Motion at 7 (emphasis added).

Although the Court has already ruled that acts violence relevant to Violation 85 are likely admissible as direct evidence of the continuing criminal enterprise alleged generally in Count One, Mr. Guzmán objects to the introduction of any evidence that supposedly occurred before or after the conspiracies. Although the government seeks to introduce evidence of "torture and kidnapping committed by the defendant, and the defendant's orders to commit such acts, some of which occurred *prior to the date*" of the charged conspiracy, the government does not specify what particular violent acts Mr. Guzmán is alleged to have committed prior to 1989. Therefore, Mr. Guzmán is not able to object specifically to the evidence. However, to the extent such evidence is relevant, either as evidence intrinsic to the charged offenses or as other crimes evidence under Rule 404(b), evidence of countless, enumerated acts of murder, "torture," and kidnapping must plainly be excluded under Rule 403, which provides for the exclusion of evidence if its probative value is outweighed by its potential to prejudice the jury. In evaluating

2

the appropriateness of evidence under Rule 403, the Court is to consider whether the proposed evidence is "more sensational or disturbing than the crimes with which [defendant is] charged." *United States v. Pitre*, 960 F.2d 1112, 1120 (2d Cir.1992). To be sure, there are cases in which a shooting, a murder, or a number of murders, have been admitted over an objection based on Rule 403. The government, however, cites no cases in which a court has allowed the quantity and quality of uncharged conduct the government seeks to introduce here. If an uncharged act alleging the defendant killed "thousands of people" does not result in exclusion under Rule 403, it is difficult to imagine what would.

With respect to "threats and intimidation of potential witnesses *after the end date of the charged conspiracy*," Mr. Guzmán objects to the introduction of this evidence absent a proper evidentiary basis being met by the government.

Mr. Guzmán objects to the introduction of evidence ▮▮▮▮ pursuant to Federal Evidence Rule 401 and 403. That rule provides that the Court may preclude the presentation of evidence if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Here, the government has charged a 25-year conspiracy encompassing multiple acts of drug trafficking and is requesting leave to introduce countless acts of murder and violence. Introducing ▮▮▮▮ which is not relevant to the charged offenses, will unfairly prejudice Mr. Guzmán before the jury.

### *Alleged drug trafficking before and after charged conspiracy*

The government also seeks to introduce evidence of Mr. Guzmán's alleged drug trafficking before and after the charged conspiracy. Mr. Guzmán objects to this evidence to the

3

extend a proper evidentiary basis is not met. Additionally, Mr. Guzmán objects to the evidence on Fed. R. Evid. 401 and 403 grounds. The evidence will tend to confuse the issues, mislead the jury, cause undue delay and waste of time and well as result in the needless presentation of cumulative evidence.

### *Drug trafficking while in prison*

Mr. Guzmán objects to the admission of this evidence under Federal Rule of Evidence 403, as it will alert the jury that Mr. Guzmán was previously arrested, detained or convicted of a crime, which is not proper for their consideration. Moreover, the evidence raises the improper specter for the jury that Mr. Guzmán cannot be securely held in prison. Thus, if the Court permits the introduction of the evidence, he will seek to rebut with evidence demonstrating the lax security of Mexican prisons, as compared with American prisons, and the relative ease with which narcotics trafficking can take place there. *See* U.S. Const. amend. V, VI (providing for rights to due process, a fair trial, and right to present a defense).

**II.    Flight from justice**

The government seeks to introduce evidence of two escapes from Mexican prisons: in 2001 and 2015, a purportedly planned escape in 2016-2017, as well as three episodes of flight or attempted flight from imminent arrest in 2012, 2014, and 2016.

Mr. Guzmán agrees that evidence of escape or flight is sometimes admissible as probative of consciousness of guilt. *See, e.g., United States v. Al-Sadawi*, 432 F.3d 419, 424 (2d Cir. 2005). Such evidence, however, "must be accompanied by a satisfactory factual predicate ... from which the jury can infer consciousness of guilt from flight." *See United States v. Amuso*, 21 F.3d 1251, 1260 (2nd Cir. 1994); *United States v. Sanchez*, 790 F.2d 245, 252 (2d Cir.1986).

4

As the Second Circuit has set forth, the probative value of such evidence,

> depends upon the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged." *United States v. Myers*, 550 F.2d 1036, 1049 (5th Cir.1977); *United States v. Beahm*, 664 F.2d 414, 420 (4th Cir.1981) ("If the government wishes to offer evidence of flight to demonstrate guilt, it must ensure that each link in the chain of inferences leading to that conclusion is sturdily supported.") (citing *Myers*, 550 F.2d at 1049); *see also* 1 New Wigmore Evid. § 1.3 (Leonard Rev.2000).

*Al-Sadawi*, 432 F.3d at 424.    Here, the government has not made these showings with respect to each of these events.    For example, the government has not offered a link between Mr. Guzmán's actions and a consciousness of guilt of the particular crimes charged.

If this Court disagrees and finds that the government has done so (or eventually does so), Mr. Guzmán will seek to counter the evidence with evidence of numerous other reasons Mr. Guzmán may have wanted to avoid capture and/or extradition to the United States, as permitted by his constitutional right to present a defense. *See., e.g, Crane v. Kentucky*, 476 U.S. 683, 690,(1986) (citations omitted) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'"); *United States v. Almonte*, 956 F.2d 27, 30 (2d Cir.1992) (*per curiam*) ("The due process clause of the Fifth Amendment and the compulsory process clause of the Sixth Amendment guarantee each criminal defendant the right to present a defense.") (internal citation omitted).    *See also Roberts v. State of Me.*, 48 F.3d 1287, 1297 (1st Cir. 1995) (defendant permitted to introduce evidence rebutting government's suggested inference of consciousness of guilt).    Mr. Guzmán anticipates these reasons will include the existence of the death penalty in the United States and its disproportionate imposition on minorities; the

5

inhumane conditions of confinement under which Mr. Guzmán anticipated he would be (and is now being) held; and the prison murder of his brother Arturo in 2005.

### *Evidence of flight is not admissible as evidence of knowledge under Federal Rule of Evidence 404(b)*

The government contends that evidence of flight should be introduced under Federal Rule of Evidence 404(b). That rule provides for the potential admission of another crime, wrong, or act for a purpose such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. as evidence of knowledge." Fed. R. Evid. 404(b). The government previously acknowledged that the Second Circuit has never permitted evidence of flight on this ground but cites cases from other circuits suggesting that evidence of flight is admissible as evidence of knowledge.

Mr. Guzmán contends Second Circuit law regarding the admission of 404(b) evidence to prove knowledge does not permit the result the government seeks. Second Circuit cases permitting the admission of 404(b) evidence on this ground have noted that the defendant had affirmatively disclaimed the knowledge element of the offense. *See, e.g., United States v. Garcia*, 291 F.3d 127, 137 (2d Cir. 2002) ("Garcia "squarely placed in issue" his knowledge and intent when he denied the existence of a drug transaction, disputed the topic of the July 10 conversation, and argued that he knew nothing about a code."); *United States v. Martino*, 759 F.2d 998, 1004 (2d Cir. 1985) ("Martino, by his defense, placed in issue the question of knowledge and intent as to his association with alleged co-conspirators on at least three separate occasions..."). Mr. Guzmán has not raised a lack of knowledge in this case at this point.

Moreover, even if he had (or does), the government "must identify a similarity or connection between the two acts that makes the prior act relevant to establishing knowledge of the current act." *Garcia*, 291 F.3d at 137. The government has failed to explain why Mr.

6

Guzmán's escapes or flight rebut a claim of lack of knowledge. Mr. Guzmán has not, for example, indicated he sold a quantity of cans of peppers, but did not know there was cocaine inside. If he did, it is not clear how the fact that he escaped from a police raid in 2015 would demonstrate his knowledge as to that event. "[T]he interpretation to be gleaned from an act of flight should be made with a sensitivity to the facts of the particular case." *United States v. Ramon-Perez*, 703 F.2d 1231, 1233 (11th Cir. 1983).

### *Evidence of escape and flight is inadmissible under rule 403*

Even if this Court were to find that the government has demonstrated a connection between Mr. Guzmán's escapes and flights and consciousness of guilt of particular charges or knowledge thereof, the evidence (to the extent the undersigned and the Court are aware of what it is), must be excluded under Federal Rule of Evidence 403. That rule provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

In this case, evidence of prison escapes is unduly prejudicial because it alerts the jury to the fact of Mr. Guzmán's prior arrest, detention or conviction in Mexico. In addition, the government's introduction of Mr. Guzmán's flights and escapes will create an impermissible likelihood that the jury will speculate that Mr. Guzmán cannot and will not be securely detained if convicted. As such, Mr. Guzmán will seek to counter the government's implications with evidence of Mr. Guzmán's current conditions of confinement and his likely conditions of confinement under Special Administrative Measures at ADX-Florence if convicted. U.S. Const. amend. V, VI (providing rights to Due Process, fair trial, and right to present a defense).

7

Mr. Guzmán requests that this Court deny the government's motion on this ground.

### III. Public Indictments and Rewards

In addition to evidence of the escapes and flights themselves, the government also seeks to introduce evidence of all of the indictments returned against him in various jurisdictions of the United.   This evidence is irrelevant.   *See* Federal Rule of Evidence 401 provides "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.   Neither the extent of the interest of the American and Mexican governments in apprehending and prosecuting Mr. Guzmán provides the jury with any proper basis to resolve any fact before it.

Even it if it were relevant, the subjective assessment of the United States government's of the "value" of Mr. Guzmán as a target of prosecution would prejudicial in the extreme and would invite the jury to convict Mr. Guzmán on improper basis in violation of Federal Rule of Evidence 403.   Finally, even if this Court were to permit one or two examples of these collateral rewards and designations, the remainder would be cumulative, also in violation of Federal Rule of Evidence 403.   Mr. Guzmán requests that this Court deny the government's motion to include these specific items of evidence.

### IV. Voluntary statements

Mr. Guzmán objects to the introduction of this evidence absent a proper evidentiary basis being met by the government and on Fed. R. Evid. 401 and 403 grounds.

### V. Defendant's "letters"

Mr. Guzmán objects to the introduction of this evidence absent a proper evidentiary basis being met by the government and on Fed. R. Evid. 401 and 403 grounds.

8

### VI. Defendant's "book"

Mr. Guzmán objects to the introduction of this evidence absent a proper evidentiary basis being met by the government and on Fed. R. Evid. 401 and 403 grounds.

### VII. Statements of high-ranking cartel member

Mr. Guzmán objects to the introduction of this evidence absent a proper evidentiary basis being met by the government and on Fed. R. Evid. 401 and 403 grounds.

### VIII. Video evidence

As part of its Motion on this ground, the government appears to be asking this Court to make a general ruling recognizing the law providing that five methods identified by the government to authenticate intercepted communications are permissible methods of authentication under Fed. R. Evid. 901: authentication by a participant to the conversation; authentication by a witness who was present for an overheard the communication; authentication by a witness who can identify the voices of the participants; authentication by the person who made the recording of the conversation; or an unbroken chain of custody. Mr. Guzmán agrees that these are proper methods through which the government may authenticate recorded conversations.

*Authentication of video evidence*

Specifically, the government asserts that video evidence appearing to have been generated by Mexican news sources are self-authenticating under Federal Rule of Evidence 902(6). Rule 902(6) provides for the self-authentication of "printed material purporting to be a newspaper or periodical." Mr. Guzmán contends videos are not newspapers or periodicals. The only authority the government cites is a footnote in an opinion authored by this Court, which indicated that the video in question there was "practically self-authenticating," because it was

9

marked with a CNN logo and did not appear to have been edited. *Linde v. Arab Bank, PLC*, 97 F.Supp. 3d 297, 341 n. 28 (E.D.N.Y. 2015). Mr. Guzmán maintains, however, that most videos are quite easily edited without appearing to have been so, and logos are easy to fake. Absent any binding precedent, this Court should reject the government's invitation to expand Rule 902(6) to video evidence. Mr. Guzmán does not suggest that the government may not effectively demonstrate that a logo is valid and a video appears sufficiently likely not to have been edited, but requests that this Court decline to make a blanket ruling that a video purportedly bearing the logo of a news source is self-authenticating under the Rules of Evidence.

Similarly, the government requests that this Court find certain videos to be self-authenticating under Federal Rule of Evidence 902(5). That rule provides for the self-authentication of "[a] book, pamphlet, or other publication purporting to be issued by a public authority." Fed. R. Evid. 902(5). As the Advisory Committee Note to this rule indicates, it is "most commonly encountered in connection with statutes, court reports, rules, and regulations." By its terms, the rule does not apply to videos, the government cites no caselaw indicating that it does, and the undersigned is not aware of any. This Court should decline to authenticate the videos on these grounds.

Next, the government contends any video that Google represents was ever in its possession is self-authenticating under Federal Rule of Evidence 902(11). Rule 902(11) provides that certain business records can be self-authenticating if they meet the test set forth in Federal Rule of Evidence 806(A)-(C). That rule in turn provides,

> (6) Records of a Regularly Conducted Activity. A record of an act, event, condition, opinion, or diagnosis if:
>
> > (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;

10

>>(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
>>(C) making the record was a regular practice of that activity.

Fed. R. Evid. 806(A)-(C). In this case, the government will surely not claim the interrogation videos it seeks to admit were created by an employee of Google who had knowledge of the videos' contents. As such, the effort to authenticate the documents on this ground fails. To find otherwise would be tantamount to admitting the contents of a book for its truth because libraries regularly keep books in the course of their business.

>The basis for the business records exception is that people associated with the business have an independent motivation to record true and accurate information. *See United States v. Shah*, 125 F. Supp. 3d 570, 575 (E.D.N.C. 2015). Google's business interests have no impact whatsoever on the accuracy of the contents of the videos transmitted through its servers. There is nothing about the fact that Google was at one point in possession of these videos that makes it more likely that they are authentic videos depicting Mr. Guzmán interrogating people.

>The government appears to cite *United States v. Hassan*, in support of its effort. 742 F.3d 104 (4th Cir. 2014). *Hassan* does not, however, go as far as the government apparently wants to take it. In *Hassan*, the court indicated that screenshots of Facebook pages as well as YouTube videos, could be authenticated as being photos, words, and videos that were in fact posted on Facebook and YouTube. The court did not stop there, however. It also required the government to link the pages and videos to the defendants under Federal Rule of Evidence 901. Mr. Guzmán does not anticipate challenging that the videos the government seeks to admit in fact appeared on YouTube. He will, however, ask this Court to hold the government to its burden of proving that the content of the videos is what the government claims

it is under Rule 901.

Finally, the government contends that several of the videos are self-authenticating under Federal Rule of Evidence 901(b)(4). That rule provides that a document may be authenticated by some specific aspect inherent to the document itself, to wit "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(4). The Advisory Committee notes that this rule provides examples of such occasions, including that the writing includes content in the specific, unique knowledge of the purported author, that the document bears characteristic language patterns, or the document is directly responsive to another document which has already been authenticated. Here, the government offers little more than truisms, rather than specific aspects of the videos that make them more likely to be authentic. Merely restating what the government hopes the video proves is not the same as some particular indicia within the video itself making it more likely that it is an authentic document.

### *Authentication of certain intercepted and recorded communications*

The government asks the Court to rule *in limine* that statements of co-conspirators, recorded or otherwise, are not subject to any objection based on hearsay, by virtue of Federal Rule of Evidence 801(d)(2)(E). That rule provides that a statement may be offered against a party if the statement "was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). Mr. Guzmán concurs that if the government makes these showings, such statements are admissible pursuant to the Rules of Evidence. The government has not yet made that showing, so Mr. Guzmán requests that this portion of the Motion be denied as premature.

12

### *Admissibility of "certain statements" in video evidence as non-hearsay*

The government contends that a journalist's real-time description of "the defendant's residence and his tunnels as he tours them" are not hearsay under rule Federal Rule of Evidence 803(1). That rule provides for the admission of statements "describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1). The rule does not provide for the admission of subjective descriptions of places. The case relied upon by the government for its assertion that a journalist's description of a place is an exception to the rule against hearsay is *United States v. Urena,* 989 F.Supp.2d 253, 260 (S.D.N.Y. 2013). That case involved distinctions made between materials required to be turned over under 18 U.S.C. § 3500 and Federal Rule of Criminal Procedure 16. While the case does contain the statement "a real time narration of events may be admissible as a present sense impression," the only examples it provides are of tapes of 911 calls, not journalists describing places. *See id.* (citing cases). Describing events as they unfold are infused with reliability because they are being described in real time as they unfold, prior to the witness having any reason to adjust their description. A journalist's personal impressions of homes and tunnels he believes to be associated with Mr. Guzmán do not fall within that category. In any event, the descriptions are not relevant and do not make any fact for the jury's determination more or less likely. *See* Fed. R. Evid. 401. Jurors can view the evidence themselves and come to their own conclusions. Mr. Guzmán requests that this Court deny the government's motion to admit journalists' narration of videos.

  **IX.**  **Photographs and sketches of cooperators**

Mr. Guzmán objects to the government's request to the extent that it conflicts with the First Amendment and with his right to a public trial.

13

### X. Witness security and family information

Mr. Guzmán does not object to this request. However, Mr. Guzmán requests that the Court direct the government to produce all records for any payments made to cooperators and their families by any government agency.

### XI. Redactions of names of minor children

Mr. Guzmán does not object to this request.

### XII. Selective prosecution argument

Mr. Guzmán does not intend to base his defense on a theory of selective prosecution.

### XIII. Miscellaneous requests

*Sensitive law enforcement techniques*

The government asks this Court to make a pretrial ruling precluding inquiry by the defense into means and methods used by law enforcement to track and locate the defendant. This Court should deny this broad, unspecific request. At the heart of any criminal defense is the right of the defendant to question law enforcement officers on the capabilities and limitations of the techniques they used.

The cases actually cited by the government seem to point to a narrower request, which the undersigned can address. First, the government cites *United States v. O'Brien*, for the proposition that "this court and other courts in this circuit routinely instruct juries not to consider how evidence was obtained." No. 13-CR-586, 2017 WL 2371159 *12 (E.D.N.Y. May 31, 2017) The ruling in *O'Brien*, was not, however, quite so broad. In that case, the jury was instructed not to consider whether the searches which resulted in the seizure of evidence against the defendant were lawful. Mr. Guzmán does not intend to ask the jury to consider the

14

lawfulness of any seizures of evidence or to elicit the technical specifications of particular instruments used to conduct surveillance of Mr. Guzmán, unless he somehow discovers that a particular device is unreliable or incapable of gathering the evidence that the sponsoring officer claims it is.

### *Donald Trump's statements concerning "flippers"*

The defense is familiar with the Federal Rules of Evidence and will apply them as appropriate.

### *Books regarding Mr. Guzmán*

The defense is familiar with the Federal Rules of Evidence and do not intend to introduce into evidence third-party accounts of the case, except in the event that such material contains proper impeachment evidence or necessary rebuttal to any representations by the government.

### *Fast and Furious operation*

The government asks this Court to preclude the defense from making any reference to the source of a weapon allegedly seized in Mexico as being the "Fast and Furious" operation run by the Bureau of Alcohol, Tobacco, and Firearms. The undersigned cannot determine without hearing the government's evidence regarding how and where this weapon was supposedly possessed by Mr. Guzmán, whether its source – be it United States law enforcement, or otherwise – will be relevant. As such, the undersigned respectfully request that this Court deny the government's motion as premature.

**WHEREFORE**, Mr. Guzmán respectfully requests that this Court rule upon each government request accordingly.

**Dated**: Washington, DC
October 8, 2018

Respectfully submitted,

**BALAREZO LAW**

By: /s/
_____
A. Eduardo Balarezo, Esq.
EDNY Bar # AB7088
400 Seventh Street, NW
Suite 306
Washington, DC   20004
Tel: (202) 639-0999
Fax: (202) 639-0899
E-mail: aeb@balarezolaw.com


**PURPURA & PURPURA**

By: /s/
_____
William B. Purpura, Esq.
8 East Mulberry Street
Baltimore, MD   21202
Tel: ((410) 727-8550
Fax: (410) 576-9351
E-mail: wpurpura@purpuralaw.com

*Counsel for Defendant Joaquín Guzmán Loera*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 8th day of October 2018, I caused a true and correct copy of the foregoing Defendant's Opposition to Government's Second Motion *In Limine* to be delivered via Electronic Case Filing to the Parties in this case

/s/
_____
A. Eduardo Balarezo, Esq.