# The Law Office of
# Michael L. Lambert

369 Lexington Ave
2nd Floor, PMB #229
New York, NY, 10016
Ph: (917) 743-7071
Email: mariel.colon8@gmail.com

May 9, 2019

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *United States v. Joaquín Archivaldo Guzmán Loera*
                Case No. 09-CR-0466 (S-4)(BMC)

Your Honor:

      I am writing on behalf of defendant Joaquín Guzmán Loera to respectfully request that the Court order the Bureau of Prisons ("BOP") to allow Mr. Guzmán to have at least two hours of outdoor recreation a week, access to general population commissary, the ability to purchase six water bottles every week, and access to a set of earplugs in order to alleviate his ear pain, and to assist his ability to sleep.

      Recognizing the difficulty in dealing with MCC's administrative process, the Court advised, "If defendant encountered similar problems in the future, he may bring those issues to the attention of the Court." See Dkt. No. 71, at p. 8. Therefore, we are seeking an order directing the BOP to grant Mr. Guzmán access to outdoor exercise, earplugs, general population commissary privilege, and that he be permitted to purchase of six water bottles every week.

## BACKGROUND

      Mr. Guzmán has been detained for 27 months at the Unit 10 South of the Special Housing Unit of the Metropolitan Correctional Center in New York ("MCC") in solitary confinement, in conditions that violate the Eighth Amendment's ban on cruel and unusual punishment, as well as fundamental norms of human decency. *See Apodaca v. Raemish*, 139 S. Ct. 5, 8 202 L. Ed. 2d 251 (2018) ("Courts and corrections officials must accordingly remain alert to the clear constitutional problems raised by keeping prisoners…in near-total isolation from the living world...")

1

Even when Mr. Guzmán was a pretrial detainee, and, therefore, presumed innocent, he was placed and has remained in the MCC's Special Housing Unit ("SHU") despite not having committed a single violation of the prison's rules. As per the Court's order, the Special Administrative Measures ("SAMs") were imposed on Mr. Guzmán because of, "a legitimate government objective…of preventing defendant from running the Sinaloa Cartel from prison, coordinating any escape from prison, or directing any attack on individuals that he may believe are cooperating with the Government." See Dkt. No 71, at p. 5.

Presently, pursuant to the SAMs, Mr. Guzmán is confined to a small, windowless cell, of approximately 10 x 8 feet. Mr. Guzmán is permitted a single hour of solitary exercise from Monday through Friday in another indoor cell that contains one stationary bicycle. On the weekends, he is not permitted any exercise. Mr. Guzmán has been over two years now without any access to fresh air or natural sunlight. Furthermore, the light in his cell is always on, leading to serious issue of sleep deprivation.

As your Honor pointed out, "defendant's conduct during what are surely difficult proceedings and conditions of confinement for him has been exemplary, and he has displayed considerable grace under pressure." See Dkt. No 426, at p. 1. Mr. Guzmán has behaved in an exemplary fashion in the 27 months that he has been in custody. Mr. Guzmán has never been disrespectful, disruptive, or violent, towards any MCC staff member, and has never had a single write up. Yet, his detention is far more onerous than that of detainees being punished for acts of violence within the prison, and other infractions of the rules. These conditions are excessively punitive given his established track record of behavior thus far.

One of the most damaging conditions is the lack of sunlight and fresh air. This deprivation of sunlight and fresh air, over an excessive 27-month period, is causing psychological scarring. He has complained to his attorneys that he is suffering many symptoms of distress as a result of this lengthy unwarranted punishment. As previously mentioned before in a letter asking the Court to modify the SAMs, "Mr. Guzmán was showing signs of mental fatigue" see Dkt. No 426, at p. 1, and it therefore was, and still is, necessary to repeat things to him many times, because it appears that he has trouble understanding things that have just been explained to him.

Mr. Guzmán has also complained of daily headaches and ear pain. The ear pain has progressed to the point that, during Mr. Guzmán's three-month trial, he was not able to use the earphones provided to him, and instead, the Spanish translators had to sit next to him and whisper to translate. In order to ease the pain, Mr. Guzmán has been using toilet paper as makeshift earplugs. Additionally, the air conditioner system in his cell is so loud, that he is unable to sleep through the night.

Food and other commissary items are routinely withheld without apparent reason or explanation. While other inmates in the SHU unit receive water bottles and comestibles every week, or every other week, that is not the case for Mr. Guzmán. Mr. Guzmán gets a commissary list once a week, and every week, Mr. Guzmán attempts to

purchase water bottles among other things. Over the last six months, Mr. Guzmán has only received a total of 22 small water bottles, even though MCC promised to sell him six small water bottles every two weeks.

This is especially distressing considering that MCC New York was opened in 1975. The pipes are old, and Mr. Guzmán can taste and see mold coming out of the water faucet. Clearly, this is not the best water to drink, and is likely detrimental to his health as mold exposure can cause a variety of medical issues. Similarly, water depravation can cause dehydration and kidney stones.

When Mr. Guzmán was represented by the Federal Defenders of New York ("FDNY"), they faced these problems as well, and spent hours trying to address some of these issues of confinement affecting Mr. Guzmán, and, "after over a month of litigation within the BOP, the office secured the right of Mr. Guzmán to purchase the bottled water that is readily available to inmates in general population." See Dkt. No. 61, at p. 5. However, repeated requests by counsel and our client, to have the MCC sell Mr. Guzmán the six water bottles every two weeks that he was promised, have landed on deaf ears.

In *U.S. v. Brooks*, the Eastern District of New York recognized that only one hour of outdoor exercise in a cage, no contact with other inmates, and restricted commissary, family and religious visiting and telephone privileges, for an inmate who has not committed a disciplinary infraction, are severe conditions of confinement. No. 07-CR-00187 (CPS), 2008 WL 4693335, at *3 (E.D.N.Y. Oct. 23, 2008). In *Brooks*, after the defendant was sentenced to 37 months imprisonment, he filed a motion for a reduction of his sentence based on his conditions of confinement before sentencing. The NYPD learned that defendant's friend was murdered and that defendant was the subject of a death threat. *Id.* at 1. The NYPD passed this information on to the United States Attorney's Office, which in turn, informed the BOP. *Id*. Thereafter, the BOP determined that defendant should be placed in protective custody and transferred to the Special Housing Unit ("SHU") of the MDC. *Id*. While defendant was in the SHU, he was not permitted religious or family visits and was only permitted one telephone call per month. *Id*. He was restricted to his cell for twenty-three hours a day. *Id*. The cell was unsanitary and the food he was served was substandard, leading him to lose twenty pounds, and develop kidney stones. *Id*. Shortly after sentencing, defendant filed a motion for reduction of sentence based on the conditions of confinement in the SHU. *Id*. The defendant argued that his sentence was the result of clear error, because it did not take into account the conditions of pre-sentence confinement. *Id.* at 3. Defendant argued that the conditions he suffered were dramatically harsher than the conditions of imprisonment for the general population at the MDC. *Id*. The Court took into account the defendant's condition of confinement, and granted a reduction of sentence. *Id*. The Court cited the Bureau of Prisons Policy, Inmate Discipline and Special Housing Units, § 5270.07, ch. 9, p. 9., which says, "An inmate housed in administrative detention [is to be provided with] the same general privileges given to inmates in the general population…Institutions shall provide commissary privileges and reasonable amounts of personal property..." *Id*. at 3. The Court concluded that:

> Having reviewed BOP policy and crediting defendant's statements about the conditions of his confinement, I conclude that the restrictions placed on him were severe relative to the conditions of confinement for the general population at the MDC. For approximately ten months, defendant was confined to his cell for 23 hours a day, only permitted one hour per day of outdoor exercise in a cage, had no contact with other inmates, and had restricted commissary… even though he had not committed a disciplinary infraction. While the extent of defendant's physical deterioration may not have been extreme, the impact on his mental health has been severe. Defendant's descriptions of the negative psychological consequences he has suffered comport with cases and studies addressing the harsh impact that prolonged solitary confinement may have on an inmate's mental health…Given the length and nature of defendant's confinement in the SHU, I conclude that the conditions defendant suffered were severe and fell upon him in a disproportionate manner relative to the MDC general population. Accordingly, defendant's motion is granted…

*Id*. at 4.

Similarly, in this case, Mr. Guzmán is on administrative segregation, which is not meant to be a form of punitive segregation. However, he has restricted commissary. Counsel has repeatedly asked MCC staff to provide Mr. Guzmán with general population commissary list, but that request has also been ignored.

These types of restrictions have no relation to the security concerns and they only serve to punish Mr. Guzmán, and further his sense of frustration and isolation. This has resulted in a profound effect on his general health and wellbeing, which in turn affects his ability to help in his own defense.

> In *Wilson v. Beame*, Judge Weinstein stated,
> The need to equalize the conditions of those administratively segregated is recognized by the Department of Corrections itself, for Order 33 mandates that equality. It provides in part: 4.45C An individual in an Administrative Segregation status shall not be deprived of any right guaranteed by law, nor shall he be deprived of any privilege enjoyed by the general inmate population at large, except that the head of the institution may, in his discretion, permit these privileges at a different time and at a different place than is permitted to the general inmate population.

380 F. Supp. 1232, 1237–38 (E.D.N.Y. 1974).

In this case, Mr. Guzmán is being deprived of privileges enjoyed by the general population, specifically general population commissary, outdoor exercise, and the opportunity to purchase bottled water, even though he is in administrative segregation. MCC officials are not permitting any of these privileges to Mr. Guzmán.

The Court advised, "if the defendant encountered similar problems in the future, he may bring those issues to the attention of the Court." See Dkt. No. 71, at p. 8. Consequently, we see no alternative but to bring these issues to the attention of the Court.

ARGUMENT
**THE MCC'S REFUSAL TO PERMIT MR. GUZMÁN ANY OUTDOOR EXERCISE AND TO TREAT HIM ON AN EQUAL FOOTING WITH OTHER DETAINEES WHO HAVE VIOLATED NO REGULATIONS CONSTITUTES IMPERMISSIBLE PUNISHMENT AND VIOLATES A CONVICTED PRISONER'S EIGHTH AMENDMENT RIGHT.**

Mr. Guzmán is singled out for punishment, isolation and disparate treatment, including an abject denial of fundamental access to basic outdoor exercise. As set forth below, his treatment clearly violates the Eighth Amendment standards applicable to convicted prisoners.

**A. Applicable Standards**

**1. Eighth Amendment Standards of Review**

As a convicted prisoner, but not yet sentenced, Mr. Guzmán's constitutional claim falls under the Eighth Amendment Clause, which prohibits cruel and unusual punishment by depriving him of outdoor exercise. See U.S. Const. amend. VIII. "It is well established, and the majority does not dispute, that pain or other suffering that is part of the punishment imposed on convicted criminals is subject to Eighth Amendment scrutiny without regard to an intent requirement." *Wilson v. Seiter*, 501 U.S. 294 (1991).

The United States Supreme Court has noted "no static test can exist by which courts determine whether conditions of confinement are cruel and unusual, for the Eighth Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101 (1958); see also *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); see also *Kennedy v. Louisiana*, 554 U.S. 407, 419 (2008). "Evolving standards of decency must embrace and express respect for the dignity of the person, and the punishment of the criminals must conform to that rule." *Id*. at 420.

The Southern District of New York has also recognized that "rather than provide courts with a fixed formula to determine whether particular conditions constitute cruel and unusual punishment, the Eighth Amendment requires courts to look to the evolving standards of decency that mark the progress of a maturing society" *Davidson v. Coughlin*, 968 F. Supp. 121, 128 (S.D.N.Y. 1997); see also *Crawford v. Cuomo*, 796 F. 3d 252, 249 (2d Cir. 2015).

**2. Outdoor Exercise**

The Supreme Court of the United States, and courts across the nation, have long recognized the importance of outdoor exercise for a prisoner's health and well-being, and that unreasonable imposition of isolation violates constitutional rights.

In her opinion in *Apodaca v. Raemish*, Justice Sotomayor recognized the dangers of depriving an inmate of outdoor exercise:

> I write to note, however, that what is clear all the same is that to deprive a prisoner of any outdoor exercise for an extended period of time in the absence of an especially strong basis for doing so is deeply troubling—and has been recognized as such for many years. Then–Judge Kennedy observed as much in 1979, ruling that, "in the absence of an adequate justification from the State, it was cruel and unusual punishment for a prisoner to be confined for a period of years without opportunity to go outside except for occasional court appearances, attorney interviews, and hospital appointments." *See Spain v. Procunier*, 600 F.2d 189, 200 (9th Cir. 1979). And while he acknowledged that various security concerns—including the safety of staff and other prisoners and preventing escape—could justify not permitting plaintiffs to mingle with the general prison population, he observed that those generalized concerns did "not explain why other exercise arrangements were not made." *Ibid.* The same inquiry remains essential today, given the vitality—recognized by the Tenth Circuit in other cases—of the basic human need at issue. It should be clear by now that our Constitution does not permit such a total deprivation in the absence of a particularly compelling interest.

139 S. Ct. 5, at 8. The facts in *Apodaca* are simple; defendants Apodaca, Vigil, and Lowe were all in administrative segregation, also known as solitary confinement. *Id*. at 251. They were all allowed only an hour a day of exercise in an indoor designated area for between 11 and 25 months. *Id*. In 2015, all three filed lawsuits seeking damages in the District of Colorado, alleging that this deprivation of outdoor exercise and sunlight violated their Eighth Amendment rights to be free from cruel and unusual punishment. *Id*. Respondents, the Executive Director of the Colorado Department of and the Warden of the Colorado State Penitentiary moved to dismiss both cases. The District Court denied the motions to dismiss. *Id*. The U.S. Court of Appeals for the Tenth Circuit reversed the denials, concluding that its prior precedents allowed reasonable debate on the constitutionality of disallowing outdoors exercise for two years and one month in Lowe's case,[1] or, moreover, 11 months in Apodaca and Vigil's case.[2] The petitioners sought certiorari, arguing "that the Tenth Circuit had diverged from the common practice among the Courts of Appeals of allowing a deprivation of outdoor exercise only when it was supported by a sufficient security justification." *See* Pet. for Cert. in No. 17–1284, at pp. 2–3; Pet. for Cert. in No. 17–1289, at pp. 2–3. Justice Sotomayor recognized,

> …the petitioners were correct that the presence (or absence) of a particularly compelling security justification has, rightly, played an important role in the analysis of the Courts of Appeals. But the litigation before the lower courts here did not focus on the presence or absence of a valid security justification, and therefore the factual record before this

---

[1] 864 F.3d 1205, 1209 (2017)
[2] 864 F.3d 1071, 1078 (2017)

Court—as well as the legal analysis provided by the lower courts—is not well suited to our considering the question now.

*Id.* at 251. Consequently, the Court was inclined to deny the writs of certiorari.

The debate in *Apodaca* was not about whether such solitary confinements conditions are cruel. Instead, the issue focused on whether access to outdoor recreation for inmates is established clearly enough as a constitutional right that not providing it means corrections officers can be sued. Even though the Supreme Court denied the writs of certiorari, Justice Sotomayor made an important point against depriving a prisoner of any outdoor exercise for an extended period of time; "We are no longer so unaware. Courts and corrections officials must accordingly remain alert to the clear constitutional problems raised by keeping prisoners like Apodaca, Vigil, and Lowe in near-total isolation from the living world..." *Id*. at 251.

The Second Circuit has not fully explored the issue of outdoor exercise, but other courts have decided on this matter and are in agreement that some form of outdoor exercise is necessary for inmates. "There is substantial agreement among the cases in this area that some form of regular outdoor exercise is extremely important to the psychological and physical well-being of the inmates." *Thomas v. Ponder*, 611 F.3d 1144, 1152 (9th Cir. 2010). The Court should therefore use its discretionary powers to grant this relief.

However, in *Anderson v. Coughlin*, the Second Circuit did note that one hour per day of "outdoor" exercise is constitutionally sufficient for Eighth Amendment purposes. 757 F.2d 33, 36 (2nd Cir. 1985). In *Anderson*, petitioners confined to the SHU in two different state prisons (Green Haven and Sing Sing) brought an action challenging conditions of confinement. *Id.* at 33. The prisoners were confined to the SHU serving time in segregation as punishment for violations of prison rules. *Id.* at 34. Inmates in SHU in both prisons have access to outdoor exercise, but are not afforded access to any indoor exercise area. *Id.* The prisoners claimed that they were entitled to indoor exercise areas and also entitled to recreational equipment at the outdoor exercise areas. *Id*. "With outdoor recreation space provided and opportunity for its daily use assured, the absence of additional exercise space indoors and of recreational equipment for use in the outdoor space is not a denial of constitutional rights" *Id.* at 36.

Years ago, then-Judge Kennedy recognized the importance of outdoor exercise for inmates, noting "the substantial agreement among the cases in this area that some form of regular outdoor exercise is extremely important to the psychological and physical well-being of the inmates." *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979).

The Seventh Circuit has established a guideline that outdoor exercise privileges cannot be denied for longer than 90 days. In *Davenport v. DeRobertis*, 844 F. 2d, 1310, 1315-16 (7th Cir. 1988), the Court upheld the district court's injunction mandating that prisoners held in segregation longer than 90 days must be given at least five hours of outdoor exercise weekly.

Here, Mr. Guzmán is allowed five hours a week of indoor exercise only. He is not allowed any outdoor exercise. There is no strong basis for prohibiting Mr. Guzmán any outdoor access. The point to be made is the importance of outdoor exercise with sunlight and not just indoor exercise. Outdoor exercise is important for the psychological and physical well being of Mr. Guzmán, especially since he's been deprived for far too long. There is extensive research and scientific opinion supporting the benefits of outdoor exercise for inmates. Therefore, based on these expert opinions and case law, it follows that Mr. Guzmán should have access to outdoor exercise for his psychological and physical well being. *Spain,* 600 F.2d at 199.

### 3. **Safety Exception and Cost or Inconvenience**

The Second Circuit has stated, "a prisoner may be denied out-of-cell exercise under what is termed a safety exception." *Williams v. Greifinger,* 97 F.3d 699, 704 (2nd Cir. 1996). The Second Circuit has expressly recognized that deprivations of exercise for safety reasons "must be limited to unusual circumstances or circumstances in which exercise is impossible because of disciplinary needs." *Id.* In addition, even if a prisoner is deemed an unusual security risk, that fact alone would not justify subjecting him to a blanket policy denying such prisoners any opportunity for out-of-cell exercise. "[T]he fact that an inmate is violent may justify segregating him or her from the general population, but does not necessarily justify a prison's failure to make other exercise arrangements." *Id.* at 704-05; see also *Williams v. Goord*, 142 F. Supp. 2d 416, 429 (S.D.N.Y. 2001).

In *Apodaca v. Raemisch*, Justice Sotomayor revisited then-Judge Kennedy's opinion and further stated, "It should be clear by now that our Constitution does not permit such a total deprivation in the absence of a particularly compelling interest" 139 S. Ct. at 8.

In *Spain v. Procunier*, the court observed that "in the absence of an adequate justification from the State, it was cruel and unusual punishment for a prisoner to be confined for a period of years without opportunity to go outside except for occasional court appearances, attorney interviews, and hospital appointments" 600 F.2d. at 200.

In *Spain*, the inmates in question were deemed responsible for a number of deaths in an escape attempt and were considered both risks of violence and targets of retribution. The prisoners were detained and deprived of all outdoor exercise for periods of up to four-and-a-half years. *Id.* at 192. The court affirmed the district court finding that "[t]he denial of fresh air and regular exercise constitutes cruel and unusual punishment, without reaching the question of whether a denial is a per se violation of the eighth amendment." *Id.* at 199. Although the state argued that the deprivation was a security measure to prevent violent attacks and escape attempts, the Court rejected this argument forcefully. As then-Judge Kennedy noted:

> The state argues that outdoor exercise was withheld to protect prison staff and other inmates from violent attacks by the plaintiffs, and to protect plaintiffs from attacks by other inmates. The state also cites the

8

objective of reducing the risk of escape, a risk which existed with the plaintiffs even under conditions where security was greater than in the prison exercise yard. These concerns justify not permitting plaintiffs to mingle with the general prison population, but do not explain why other exercise arrangements were not made," noting that "[t]he cost or inconvenience of providing adequate facilities is not a defense to the imposition of a cruel punishment.

*Id.* at 200.

In this case, Mr. Guzmán has never had any issues with MCC staffers- therefore, no unusual circumstance exists. As Mr. Guzmán is permitted indoor exercise outside of his cell, there are no such safety concerns here. The outdoor courtyard at MCC is secured with wire fencing and because of the SAMs, Mr. Guzmán is not permitted to communicate with anyone but his legal team. His only two 15-minute phone calls per month with his sister are monitored by multiple federal agencies. The argument that Mr. Guzmán being under SAMs restrictions may justify segregating him from the general population, but does not justify depriving him from basic human needs such as outdoor exercise and natural sunlight.

The justification for imposition of the SAMs on Mr. Guzmán was because of:

> …a legitimate government objective…of preventing defendant from running the Sinaloa Cartel from prison, coordinating any escape from prison, or directing any attack on individuals that he may believe are cooperating with the Government…As the Government has recounted, while defendant was imprisoned in Mexico the first two times, he allegedly used third parties to further his narcotics trafficking enterprise, to plan and execute his escapes from Mexican prisons, and to intimidate possible cooperators.

see Dkt. No 71, at p. 5. According to this, alone, Mr. Guzmán would not be able to plan and much less execute an escape, run a cartel, pass messages to third parties or intimidate possible cooperators. Therefore, Mr. Guzmán's restriction on outdoor exercise at MCC is not rationally connected to the Government's "legitimate purpose." Allowing him two hours a week of solitary outdoor exercise will not pose a security risk and therefore exercise arrangements can be made so that he gets outdoor exercise and sunlight. *Williams v. Greifinger,* 97 F.3d at 704.

The Second Circuit has also said, "that prisons may not invoke cost considerations in denying prisoners the opportunity to exercise." 97 F.3d at 704–05. Therefore, inconvenience to the staff or cost to the facility should not be determinative factors to deny Mr. Guzmán outdoor exercise. MCC personnel already escorts Mr. Guzmán to the indoor exercise cell, so minimal efforts can be made to escort him to the outside courtyard on the 12th floor two hours a week at the very least, with the remaining three hours of the week in indoor exercise. The Ninth Circuit has also noted "The cost or

inconvenience of providing adequate facilities is not a defense to the imposition of a cruel punishment." *Spain*, 600 F. 2d at 200.

B. <u>Application</u>

Under these standards, there is no question that Mr. Guzmán's Eight Amendment rights are being violated by the Bureau of Prisons at the MCC New York. Despite not violating any prison regulations, Mr. Guzmán has been housed in the SHU unit for 27 months and has been categorically denied any and all outside exercise since his arrival at the MCC in January, 2017. He has been subjected to the extreme psychological injury exacted by 27 months of isolation from the general population, confined to his cell most of the day, and being only permitted to speak to his legal team. This would be a flagrant violation in the case of an inmate with multiple prison write-ups. Clearly, then, it is a violation in the case of an inmate who has not had a single write up in his entire 27 months of detention such as Mr. Guzmán. In numerous respects recounted above – regarding the sale of water bottles and access to general population commissary list – he is being singled out for unequal and harmful treatment relative to other detainees. There is no question that MCC officials are deliberately indifferent to the consequences of Mr. Guzmán's detention.

The cases cited above all stand for the singular importance of outdoor exercise to the basic health and welfare of the inmates to the point that its unreasonable deprivation constitutes a constitutional violation.

It cannot be said that it is sufficient for Mr. Guzmán to exercise in a small indoor room. This disregards the 27-month deprivation of sunlight and fresh air, and fails to recognize the singular importance of exercise in fresh air and outdoors.

Nor it can be said that the MCC has some "reason" for the unconscionable treatment of Mr. Guzmán. Some Courts have decided on this issue and have repeatedly rejected such rationales where they did not involve serious violations of prison rules- an argument that is completely unavailable here due to Mr. Guzmán's exemplary behavior during the past 27 months at MCC. In *Williams v. Greifinger*, the court expressly recognized that deprivations of exercise for safety reasons "must be limited to unusual circumstances or circumstances in which exercise is impossible because of disciplinary needs…The fact that an inmate is violent may justify segregating him or her from the general population, but does not necessarily justify a prison's failure to make other exercise arrangements" 97 F.3d at 704-05.

This issue is not a petty complaint "that can be resolved by the parties without resort to judicial intervention such as BOP's removal of the clock that defendant purchased from commissary or BOP's decision to permit defendant to watch only nature programming or the same movie over and over." <u>See</u> Dkt. No 71, at p. 8. This is a valid complaint that is affecting Mr. Guzmán's mental health and has to be resolved through judicial intervention.

**CONCLUSION**

The Court should order the MCC New York to give Mr. Guzmán access to at least two hours of outdoor exercise a week so that he can absorb direct natural sunlight as well as fresh air. Furthermore, the Court should order that Mr. Guzmán be allowed to purchase six water bottles every week, access to the general population commissary list and access to earplugs.

        Respectfully Submitted,

        /s/ Mariel Colón Miró, Esq.
        *Attorney for Joaquín Guzmán Loera*

cc: All counsel via ECF