*Mariel Colón Miró, Esq.*
*The Law Office of*
*Michael L. Lambert*
*369 Lexington Ave*
*2nd Floor, PMB #229*
*New York, NY, 10016*
*Ph: (917) 743-7071*
*Email: mariel.colon8@gmail.com*

June 2, 2019

The Honorable Brian M. Cogan
United States District Court Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *United States v. Joaquín Archivaldo Guzmán Loera*, Criminal Docket No. 09-CR-0466 (S-4) (BMC)

Your Honor:

I am writing in reply to the Government's Response in Opposition to Defendant's Motion to modify his conditions of incarceration. See Dkt. No. 617. In their letter, the Government opposes to grant Mr. Guzmán all of the following requests: (1) at least two hours of outdoor exercise a week; (2) access to general population commissary; (3) the ability to purchase six small water bottles a week; and (4) access to a set of earplugs. *Id*. at 1. It is the Government's position that these draconian conditions of confinement, that were imposed on Mr. Guzmán, are necessary to "prevent his communication with other members of the Sinaloa Cartel, or other criminal associates who could carry out orders on his behalf." *Id*. at 5. For the reasons that follow, the Court should grant Mr. Guzmán's requests.

## BACKGROUND

As stated in Mr. Guzmán's motion, he has been held in solitary confinement for more than two years. See Dkt. No. 614, at p. 1. He has not breathed fresh air in all this time. Nor has Mr. Guzmán been exposed to the natural light of day. The MCC administrators are well aware of Mr. Guzmán's exemplary conduct, despite his confinement under very disturbing conditions, as well as this Court.

MCC officials have been aware of the health issues that Mr. Guzmán has suffered while incarcerated, under the conditions imposed upon him at MCC. It must be pointed out that Mr. Guzmán has not been sentenced at this point, and there is no basis for MCC officials to consider the conditions they have imposed on Mr. Guzmán, as any type of appropriate punishment. The Court has yet to determine or impose punishment upon Mr. Guzmán. Therefore, it cannot be legitimately claimed that the conditions upon which Mr. Guzmán has been incarcerated, are meant to serve as an "appropriate punishment."

The Government is trying to say that the concerns raised here are similar as the issues presented on March 13, 2017, where Mr. Guzmán complained about the size of his cell, the parameters of his window, the presence of phantom music and the television programming available to him. See Dkt. No. 50. At least two of the concerns presented in our submission of May 9, 2019 (Dkt. No. 614) are completely different, because access to natural sunlight and fresh air, and water consumption, are basic human needs, and present constitutional concerns, which cannot be ignored.

The Government also alleges that the MCC did not receive a single administrative request regarding the complaints raised by Mr. Guzmán, and that Mr. Guzmán is aware that he has the ability to make requests regarding his housing conditions, as he has made in the past. See Dkt. No. 617, at p. 2. However, the Government seems to forget, or perhaps ignore, that in the May 4, 2017, Order, the Court noted:

> As to the specific conditions imposed on defendant that create additional burdens that he has characterized as atypical or arbitrary, for example, *inter alia*, the bar on purchasing bottled water, the lack of a Spanish-language commissary list, and the removal of items from his cell, defendant has been appropriately making use of the Bureau of Prison's ("BOP") Administrative Remedy Program though his filing of Requests for Administrative Remedies (known as "BOP- 9s"). Nevertheless, defendant's description of the bureaucratic hoop-jumping associated with his use of the BOP-9 process raises concerns about the practical availability of remedies to Guzman. Were it not for his able counsel and their continued follow-up with BOP, it does not appear that defendant could independently have been able to seek any remedies at all. If defendant encounters similar problems in the future, he may bring those issues to the attention of the Court.

See Dkt. No. 71, at p. 7-8.

Furthermore, although not using a BP-9, counsel for Mr. Guzmán had previously informed the MCC and the Government of some of these issues. For example, in an email sent on June 27, 2018, by Rebecca Heinegg, Esq., to AUSA Andrea Goldbarg, and MCC's legal department Adam Johnson and Stephanie Scannell, Ms. Heinegg notified the following:

> …I write to address an issue with the MCC commissary items available to Mr. Guzmán. Although this issue was litigated over a year ago and the government agreed that Mr. Guzmán would be permitted to purchase

> bottled water and food items, he has not been permitted to do so for over two months now. He is also currently not being permitted to purchase soap or toothpaste. Please address this issue with the MCC staff immediately. Mr. Guzmán has not been charged with any disciplinary violations and therefore should not be subject to any punitive restrictions to his commissary purchases…

E-mail from Rebecca Heinegg, Esq., to AUSA Andrea Goldbarg, and MCC's legal department Adam Johnson and Stephanie Scannell (June 27, 2018, 11:40am EST).[1] Therefore, to say that the first time that the MCC, or the Government, learned of the defendant's complaint was in his filing to the court, see Dkt. No. 617, at p. 2, is absolutely false.

Prior to that email, on June 14, 2018, Ms. Heinegg had sent another email to Adam Johnson informing him of the freezing temperatures in 10 South, and notifying him that she had asked the guards at 10 South to provide Mr. Guzmán with copouts, but he had not received them, and therefore had not been able to file his own requests. E-mail from Rebecca Heinegg, Esq., to Adam Johnson (June 14, 2018, 3:36pm EST).[2] To say that Mr. Guzmán did not make a single attempt to file a complaint regarding at least some of the issues presented here is also false. See Dkt. No. 617, at p. 2. Therefore, we saw no alternative but to bring these issues, two of them being constitutional concerns, directly to the Court.

## ARGUMENT

A. Mr. Guzmán's Complaint as to his Ability to Purchase Water Bottles is Not Moot

The Government seeks to portray Mr. Guzmán's water bottle request as a petty complaint. The Government states in its response that the Court ordered that routine and petty complaints be resolved by the parties, and that Mr. Guzmán failed to do so with respect to the bottled waters. As mentioned herein above, MCC officials and the Government, were well aware of the fact that Mr. Guzmán was not getting the water bottles that were promised to him, but chose to ignore it. Furthermore, MCC was well aware of the physical injury the tap water was causing to Mr. Guzmán, but yet, MCC ignored this fact for more than two years. This is not a petty issue. This is not a new concern, and the facts show that the MCC officials have been deliberately indifferent toward Mr. Guzmán in this regard.

The Government is asking this Court to consider this issue to be moot, while asserting the claim that Mr. Guzmán has received six small bottles of water per week since April 2019. See Dkt. No. 617, at p. 2. As stated in Mr. Guzmán's original moving papers on this matter, MCC promised to sell him six small water bottles every two weeks, two years ago. See Dkt. No. 614, at p. 3. There was no legitimate basis for MCC administrators to deny Mr. Guzmán the bottled water in the first place, especially when it

[1] Counsel has included Exhibit A, which is a picture of the e-mail.
[2] Counsel has included Exhibit B, which is a picture of the e-mail.

was known to them that the tap water was causing harm to Mr. Guzmán. MCC officials were made aware of Mr. Guzmán's constant headaches and related ear pain, long before Mr. Guzmán filed the May 9, 2019, motion (Dkt. No. 614.)

The lack of water has resulted in other injuries to Mr. Guzmán, including dehydration related symptoms, and his constant headaches. At this juncture, there is no guarantee that the MCC personnel will not resort to denying Mr. Guzmán bottled water again. Therefore, this issue is not moot. This Court should resolve this issue, and order that Mr. Guzmán be allowed to buy six small water bottles every week.

The Cedars-Sinai Health Library advises people to consume twelve 8-ounce portions of fluid per day.[3] Currently, by the Government's own admission, Mr. Guzmán is receiving far less than this amount of bottled water.

B. Outdoor Exercise

Mr. Guzmán has made many attempts to convey the inhumane nature of his incarceration at MCC. This Court has already heard the claims of inhumane conditions, and once again, the same claims are necessarily being asserted by Mr. Guzmán. Mr. Guzmán's physical and mental conditions have suffered, and his health is deteriorating rapidly. MCC officials and the Government have been aware of the risk of harm to Mr. Guzmán by his being kept in solitary confinement indefinitely. The conditions of incarceration imposed on Mr. Guzmán, which he has complained about, serve no penological purpose. Mr. Guzmán is being punished by MCC officials in a cruel manner, arbitrarily determined by the MCC. The window in the recreation room that the Government makes reference to (see Dkt. No. 617, at p. 5) is covered with bars, leaving almost no space for the fresh air or natural sunlight to come in. Suggesting that Mr. Guzmán can possibly get any fresh air or natural sunlight is irrational.

It should be noted once again, that Mr. Guzmán has not been sentenced, and no punishment has been imposed by the Court. Therefore, it is not the place or authority for MCC officials to determine what punishment falls within parameters of what Mr. Guzmán deserves as punishment. It is glaringly obvious that being locked up for over 27 months, with no exposure to the outdoor air or natural sunlight, is anything less than unnatural and inhumane, especially when there is an obvious alternative to his conditions of confinement, which is allowing Mr. Guzmán two hours of outdoor exercise a week.

The Supreme Court of the United States, and courts across the nation, have long recognized the importance of outdoor exercise for a prisoner's health and well-being, and that unreasonable imposition of isolation, violates constitutional rights. As recognized by Justice Sotomayor:

> …what is clear all the same is that to deprive a prisoner of any outdoor exercise for an extended period of time in the absence of an especially strong basis for doing so is deeply troubling—and has been

[3] *Dehydration Definition*, Cedars-Sinai Medical Center, https://www.cedars-sinai.org/health-library/diseases-and-conditions/d/dehydration.html (last visited May 29, 2019).

> recognized as such for many years. Then–Judge Kennedy observed as much in 1979, ruling that, "in the absence of an adequate justification from the State, it was cruel and unusual punishment for a prisoner to be confined for a period of years without opportunity to go outside except for occasional court appearances, attorney interviews, and hospital appointments." *See Spain v. Procunier*, 600 F.2d 189, 200 (9th Cir. 1979). And while he acknowledged that various security concerns—including the safety of staff and other prisoners and preventing escape—could justify not permitting plaintiffs to mingle with the general prison population, he observed that those generalized concerns did "not explain why other exercise arrangements were not made." *Ibid.* The same inquiry remains essential today, given the vitality—recognized by the Tenth Circuit in other cases—of the basic human need at issue. It should be clear by now that our Constitution does not permit such a total deprivation in the absence of a particularly compelling interest.

*Apodaca v. Raemish*, 139 S. Ct. 5, 8 202 L. Ed. 2d 251 (2018).

The Government points to a failed escape attempt by someone else that occurred in 1981, as a justification for this inhumane treatment. The Government also claims that this inhumane treatment is justified, because Mr. Guzmán, if exposed to the highly secured rooftop covered by wire screening, might signal someone in a nearby building. MCC is surrounded by highly surveilled buildings, including the Police Department, the U.S. Attorney's Office, the Southern District Court and the Second Circuit Court, where a stranger could not possibly be able to freely access their rooftops. Furthermore, Mr. Guzmán has no kind of special vision to be able to see rooftops miles away. These arguments are not merely misapplied in an Eighth Amendment situation, but they exaggerate the safety concern that the MCC officials and the Government have about Mr. Guzmán attempting to escape or attempting to run a drug cartel from an obscure rooftop.

In the incident that the Government makes reference to, where an inmate attempted to escape MCC in a helicopter 38 years ago, the inmate's conditions of confinement were very different from Mr. Guzmán's conditions in that, the inmate was not under the SAMs. The inmate was therefore, able to communicate with third parties and plan this escape. The inmate needed the help of third parties to escape, and he still did not succeed, as they were not able to cut through the extremely secure and heavy wire fencing.

In this case, Mr. Guzmán cannot communicate with third parties. The only people he communicates with is his legal team, which have been vetted and screened by the Government, and have no association with the Sinaloa Cartel. If the Government believed the contrary, we would not be allowed to visit Mr. Guzmán.

However, if the Government is genuinely concerned about the recreation area being in a rooftop, then there is an alternative to move Mr. Guzmán to another facility. The Government should not be allowed to claim that it is okay to violate a defendant's constitutional rights because of a design flaw in the building. Mr. Guzmán has not had a court appearance since his trial, so he could have been moved to a nearby facility, like

Otisville or For Dix, pending sentence. The MDC in Brooklyn also has recreation areas that are not on the roof. Even ADX Florence, which is a high maximum-security prison, allows for outdoor recreation for inmates under the SAMs, one hour a day from Mondays through Fridays. If failure to allow outdoor exercise is cruel and unusual, like many cases suggest, then the Government should not be allowed to detain people in a facility where they can't safely provide it.

The pretrial detention for inmates on 10 South, by nature of their cases, is always likely to last more than a year. It has not been any different for Mr. Guzmán, who has spent more than two years detained in Unit 10 South, without access to natural sunlight or fresh air. Furthermore, Mr. Guzmán currently has a pending motion for new trial that, if successful, would mean that he would be spending at least another year at 10 South.

C. Earplugs

The Government has opposed to grant Mr. Guzmán access to a set of earplugs. The Government presents the argument that it is for Mr. Guzmán's own good that he not be allowed earplugs in case there is an emergency. This disingenuous argument flies in the face of the fact, that even if there was some type of emergency, Mr. Guzmán's fate would rest completely in the hands of MCC officials, who would have to first get a lieutenant to come to the 10th floor, and then get two other guards to open his cell, to securely escort Mr. Guzmán out of harms way. There is no way earplugs would prevent this. Once again, this condition serves no penological purpose.

Furthermore, the MCC already sells three different types of ear buds/earphones for inmates, including clear headphones, JVC ear buds and Skullcandy ear buds.[4] This is on top of the MP3 Player that inmates can buy from general population, which can be found on the attached MCC's commissary list. If the concern is really that inmates would ignore the guards' orders like the Government notes, see Dkt. No. 617, at p. 3, then selling MP3 Players with ear buds is even more dangerous. Inmates could use the loud music as an excuse to ignore the guards' orders.

Once again, this restriction imposed on Mr. Guzmán, serves no penological purpose. Mr. Guzmán is being punished by MCC officials in a cruel manner, arbitrarily determined by the MCC.

D. Access to General Population Commissary

Mr. Guzmán's SAMs do not address anything about access to general population commissary. Therefore, using them as an excuse to deny Mr. Guzmán's access to the general population commissary list is irrational. Had the Government believed that this was truly a concern, they would have included it as part of Mr. Guzmán's restrictions under the SAMs.

[4] See Exhibit C, MCC's commissary list, obtained from BOP's website, https://www.bop.gov/locations/institutions/nym/NYM_CommList.pdf (last visited June 2, 2019).

Mr. Guzmán has very restricted access to food. He is provided a limited variety of food and other items, which punishes Mr. Guzmán for no identifiable penological purpose. The Government fashioned an argument over a security concern, providing an example of how an inmate, Salim, utilized some commissary items in a violent attack on a guard. This occurred nearly 20 years ago. Furthermore, what the Government did not mention is that jail regulations call for inmates housed in the MCC's Unit 10 South, to be escorted by three guards, one of them being a lieutenant, and handcuffed every time they enter or exit their cells. However, when Salim's attack occurred, he was not handcuffed, and was being escorted by only one guard, contrary to MCC's regulations, from a recreation room back to his cell, when the attack occurred.[5] Furthermore, Salim had a cellmate, Khalfan Khamis Mohamed, who assisted Salim in the assault by spraying hot sauce in the guard's eyes.

In this case, Mr. Guzmán does not have a cellmate, and as counsel has observed, Mr. Guzmán is always handcuffed, and accompanied by a lieutenant and two other guards, when being escorted from his cell to the attorney-client visitation room and vice versa. The doors on both the attorney-client visitation room and Mr. Guzmán's cell have a smaller door, where he turns around with his back facing the door, and then places his hands on that smaller door, to be handcuffed prior to exiting his cell or the attorney-client room. Counsel has never seen Mr. Guzmán being escorted without handcuffs or without a lieutenant and two other guards present. Mr. Guzmán has also corroborated these observations. Furthermore, after Salim's incident, it is safe to assume that the MCC carefully follows the regulation that an inmate under SAMs must be escorted by three guards at all times, one of them being a lieutenant, and that the inmate be handcuffed prior to exiting or entering his cell.

The fact that the Government could only produce one example of such a situation, where commissary items presented a security threat, given the long history of the MCC facility, actually supports the argument that a threat of a violent attack by Mr. Guzmán is highly unlikely.

Also, it cannot be disputed that Mr. Guzmán has behaved in an exemplary manner during his time at MCC. Even this Court recognized that "defendant's conduct during what are surely difficult proceedings and conditions of confinement for him has been exemplary, and he has displayed considerable grace under pressure." See Dkt. No. 426, at p. 1. Mr. Guzmán has never been disrespectful or violent towards any MCC staff member or legal team. It would be unreasonable to assume that he would start now.

Furthermore, the MCC already provides Mr. Guzmán with items that could very well be used as a weapon. For example, Mr. Guzmán gets tomato juice in cans. The lid could be used to cut someone or even worst, himself. Similarly, Mr. Guzmán gets a razor to shave. That razor could also be used as a weapon. However, this has never happened, and there is no reason to assume that this would ever happen.

---

[5] Phil Hirschkorn, *Bin Laden Aide Sentenced to 32 Years in Prison for Jail Stabbing*, CNN International (May 4, 2004), http://edition.cnn.com/2004/LAW/05/03/attacks.prison.stabbing/index.html

Denying Mr. Guzmán general commissary items serves no penological purpose. This restriction has no relation to the security concern, and only serves to punish Mr. Guzmán, and further his sense of frustration and isolation. Mr. Guzmán is on administrative segregation, which is not meant to be a form of punitive segregation.

As cited before, in *Wilson v. Beame*, Judge Weinstein stated,

> The need to equalize the conditions of those administratively segregated is recognized by the Department of Corrections itself, for Order 33 mandates that equality. It provides in part: 4.45C An individual in an Administrative Segregation status shall not be deprived of any right guaranteed by law, nor shall he be deprived of any privilege enjoyed by the general inmate population at large, except that the head of the institution may, in his discretion, permit these privileges at a different time and at a different place than is permitted to the general inmate population.

380 F. Supp. 1232, 1237-38 (E.D.N.Y. 1974).

In this case, Mr. Guzmán is being deprived of privileges enjoyed by the general population, such as the general population commissary and outdoor exercise, even though he is in administrative segregation. MCC officials are not permitting any of these privileges to Mr. Guzmán at any time. Mr. Guzmán is therefore, being singled out for punishment, isolation and disparate treatment. There is no penological purpose for any of these restrictions, and the Eighth Amendment prohibits prison officials from subjecting an inmate like Mr. Guzmán to excessive punishment without reasonable justification.

## CONCLUSION

For the reasons stated above, the Court should grant Mr. Guzmán's motion, and order MCC officials to allow Mr. Guzmán access to outdoor exercise twice a week, for an hour each time, with the reaming three days of the week on indoor exercise. The Court should order that Mr. Guzmán be provided with a set of earplugs, and access to general population commissary list. The Court should further order that Mr. Guzmán be allowed six eight-ounce water bottles per week. Mr. Guzmán respectfully requests that the Court grant such other and further relief it deems appropriate and just.

Respectfully Submitted,

/s/ Mariel Colón Miró, Esq.
*Attorney for Joaquín Guzmán Loera*

cc: All counsel via ECF