

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| GMP/MPR | *271 Cadman Plaza East* |
| F. #2009R01065 | *Brooklyn, New York 11201* |

July 10, 2019

<u>By ECF</u>

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:   <u>United States v. Joaquin Archivaldo Guzman Loera</u>
              <u>Criminal Docket No. 09-0466 (S-4) (BMC)</u>

Dear Judge Cogan:

        The government respectfully submits this letter in advance of the sentencing of the defendant Joaquin Archivaldo Guzman Loera. The defendant is scheduled to be sentenced on July 17, 2019 at 9:15 a.m.

        I.   <u>Background</u>

        On February 12, 2019, following an eleven-week trial, a jury found Guzman guilty of all ten counts in the above-referenced indictment ("Indictment"). These counts charged the defendant with engaging in a continuing criminal enterprise ("CCE") (Count One), in violation of Title 21, United States Code, Section 848(a)-(b); substantive drug and drug conspiracy offenses (Counts Two through Eight), in violation of multiple provisions of Title 21, United States Code, as set forth in the Indictment; the unlawful use of a firearm (Count Nine), in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(A)(iii) and 924(c)(1)(B)(ii); and money laundering conspiracy (Count Ten), in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), 1956(a)(1)(B), 1956(a)(2)(A), 1956(a)(2)(B) and 1956(h). <u>See</u> Presentence Report ("PSR") at ¶¶ 1-36. With respect to the CCE, the jury found that the defendant was a principal leader of the Sinaloa Cartel (the "Cartel"), trafficked 150 kilograms or more of cocaine and obtained $10,000,000 or more in gross receipts within a twelve-month period—findings that trigger the statutory mandatory penalty of life imprisonment. <u>See</u> 21 U.S.C. § 848(b); PSR ¶¶ 2, 163. Of the 27 violations charged as part of the CCE, the jury found the defendant committed 25 of them. Among these, the jury found that the defendant conspired to murder victims who posed a threat to the Sinaloa Cartel. Specifically, the murder conspiracy targets included informants (or

people the defendant or his co-conspirators believed to be informants), rival cartel members, law enforcement officers, close associates who betrayed the Sinaloa Cartel in some fashion, and even family members.  See PSR ¶¶ 83-89.  During the course of trial, the government presented evidence that the defendant ordered the murders of or, in some instances, personally tortured and murdered 26 individuals and groups of individuals.

In addition to the CCE charged in Count One, the jury found the defendant guilty of unlawfully using a firearm in relation to drug trafficking (Count Nine), one or more of which firearms was brandished and discharged, and one or more of which was a machinegun, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii) and 924(c)(1)(B)(ii).  Specifically, the jury found that the defendant had discharged firearms and had used a machinegun in the course of committing his drug crimes, the latter of which carries an enhanced penalty of thirty years' imprisonment.

The overwhelming evidence at trial showed that the defendant was a ruthless and bloodthirsty leader of the Sinaloa Cartel.  Fourteen cooperating witnesses testified that the defendant was one of the Cartel's principal leaders.  Testimony showed that the Sinaloa Cartel was one of the most powerful drug trafficking organizations in Mexico, and that it was able to seize control of vast swaths of territory throughout Mexico.  It did so by wielding extraordinary violence, including kidnapping, torture and murder, as a tool to enforce discipline against its members and those who acted against the Cartel's interests, as well as through extensive public corruption.  The defendant's army of sicarios frequently carried out this violence on the defendant's direct orders; sometimes he carried out this violence himself.  Testimony also showed that from the 1980s until his arrest, the defendant was relentless in devising new methods to evade law enforcement detection to enable him to transport multi-ton quantities of cocaine from South America to the United States for distribution.  See PSR ¶¶ 54-61, 75.  In addition to cocaine, the defendant oversaw the shipment of heroin, cocaine base, ephedrine, methamphetamine and marijuana into the United States.  See PSR ¶ 90.  Over the course of trial, the evidence showed that the defendant was responsible for the importation or attempted importation into the United States of at least 1,213,100 kilograms of cocaine, 1,440 kilograms of cocaine base, 222 kilograms of heroin, 49,800 kilograms of marijuana and quantities of methamphetamine.

The defendant maintained his position as a leader of the Sinaloa Cartel for 25 years, in part, through unyielding obstruction of justice.  The defendant ordered the killing, kidnapping and torture of individuals whom he believed were cooperating with law enforcement against his personal interests and the interests of the Sinaloa Cartel.  See PSR ¶ 98.  He also fled from justice for many years following his 2001 escape from prison in Mexico, which he undertook upon learning that he could soon be extradited to the United States.  Indeed, in the years following his 2001 escape, he narrowly escaped capture during multiple large-scale law enforcement operations, escaped prison a second time in 2015 and bribed law enforcement and political officials on numerous occasions.  See PSR ¶¶ 99-100.  Testimony further showed that the defendant planned to escape from prison again only months before his extradition to the United States in January 2017.  See PSR ¶ 52.

## II.      The Guidelines Calculation of Life Plus Thirty Years' Imprisonment Is Correct

With respect to the applicable sentence, the government agrees with the Guidelines calculation set forth in the PSR, which yields a total offense level of 66 and an applicable Guidelines range of life imprisonment. See PSR ¶ 169. Moreover, because the jury found the defendant guilty of all three sentencing enhancements under the CCE in Count One, the statutory mandatory minimum sentence is life imprisonment. See PSR ¶ 163. Because the jury convicted the defendant of unlawful use of a firearm in relation to drug trafficking and found that the offense involved a machinegun, the defendant's statutory mandatory minimum sentence with regard to Count Nine is 30 years, which must run consecutively to the sentence on Count One.  See PSR ¶ 169.

Even if the Court had discretion to impose a sentence of less than life imprisonment, a life sentence would still be warranted under the sentencing factors outlined in Section 3553(a).  The horrific nature and circumstances of the defendant's offense, his history and characteristics and the fact that the defendant committed some of the most serious crimes under federal law make a life sentence warranted. 18 U.S.C. § 3553(a)(1)-(2). A life sentence is warranted to protect the public from further crimes of the defendant, who has spent three decades committing crimes unabated and obstructing justice to avoid taking responsibility for those crimes. Id. A life sentence is just punishment for this defendant and will provide general deterrence to drug kingpins who believe they are beyond the reach of the law.  18 U.S.C. § 3553(a)(2)(A)-(B). The government respectfully requests that the Court find that it would impose a sentence of life imprisonment even if the statute did not require such a sentence.

## III.     Victim Notification and Restitution

As noted above, the defendant conspired to murder numerous persons and groups of persons during his tenure as one of the principal leaders of the Sinaloa Cartel. See PSR ¶¶ 83-89, 97.  To the extent practicable, the government has made notification to the victims of those murder conspiracies whom it was capable of locating. See PSR ¶ 97. At least one of the victims who survived a murder plot initiated by the defendant intends to make a victim-impact statement at the sentencing hearing on July 17.

The government has also attempted to contact these same victims to apprise them of their right to restitution. See 18 U.S.C. § 3771(a)(6) (victims have "[t]he right to full and timely restitution as provided in law"); PSR ¶ 198 (noting that the Court may order restitution to any victims of Count One under 18 U.S.C. § 3663). All but one of the victims the government was able to contact indicated that they would not seek restitution in this case. The government is awaiting a victim loss affidavit from the single victim who has indicated s/he would like to seek restitution.[1]

While the Court may find restitution to victims is warranted at sentencing, it is not necessary for the Court to establish a restitution amount at sentencing.  The Court needs

---

[1] Notably, many of the victims the government notified are cooperating witnesses for the government.  While the statute governing victim restitution does not exclude

3

only to determine a restitution amount within 90 days following sentencing. See 18 U.S.C. § 3664 ("If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing. If the victim subsequently discovers further losses, the victim shall have 60 days after discovery of those losses in which to petition the court for an amended restitution order."); Dolan v. United States, 560 U.S. 605, 608 (2010) ("We hold that a sentencing court that misses the 90-day deadline nonetheless retains the power to order restitution—at least where, as here, the sentencing court made clear prior to the deadline's expiration that it would order restitution, leaving open (for more than 90 days) only the amount."). Under Dolan, as long as the Court orders restitution at sentencing in an amount to later be determined, it can then amend the judgment at a later date (even after the statutory 90-day period expires). See id. The Court may amend the judgment based on written submissions by the parties, rather than holding a hearing. See United States v. Pickett, 612 F.3d 147, 148 (2d Cir. 2010) ("On March 27, 2009, the government submitted a letter that presented the evidence of loss, and on May 1, 2009—ninety-eight days after Pickett's sentencing hearing—the District Court adopted the loss figures set forth in the government's letter and entered an amended judgment imposing restitution in the amount of $2,400,800.").

Accordingly, the government requests that the Court order restitution for the murder conspiracy victims in an amount to be later determined by the Court. Within 90 days of sentencing, the government will submit proposed restitution amounts for any identifiable victims seeking restitution.

    IV.    <u>The Court Should Dismiss the Drug Conspiracy Counts Without Prejudice</u>

To avoid a potential double jeopardy issue, the government respectfully moves the Court to dismiss Counts Two through Four—the narcotics distribution conspiracy counts, which constitute lesser-included offenses of the CCE charged in Count One—so as not to impose double punishment for the same underlying criminal conduct. See United States v. Miller, 116 F.3d 641, 678 (2d Cir. 1997) ("Given the Supreme Court's recent decision in Rutledge v. United States, 517 U.S. 292, 116 S. Ct. 1241, 134 L.Ed.2d 419 (1996), ruling that '[a] guilty verdict on a [21 U.S.C.] § 848 charge necessarily includes a finding that the defendant also participated in a conspiracy violative of [21 U.S.C.] § 846, conspiracy is therefore a lesser included offense of CCE,' . . . the government concedes, and we agree, that Miller's conviction for narcotics conspiracy should be reversed, and that count of the indictment against him should be dismissed."). In the event the conviction on Count One is reversed or vacated on appeal, the Court may reinstate the convictions on Counts Two through Four and sentence the defendant pursuant to those three counts. See Rutledge, 517 U.S. at 305 ("[F]ederal appellate courts appear to have uniformly concluded that they may direct the entry

---

cooperating witness-victims from being awarded restitution, courts in this district have found that cooperating witnesses may waive their right to restitution. See United States v. Agate, 613 F. Supp. 2d 315, 326 (E.D.N.Y. 2009).

4

of judgment for a lesser included offense when a conviction for a greater offense is reversed on grounds that affect only the greater offense."); see, e.g., Rutledge v. United States, 230 F.3d 1041, 1049 (7th Cir. 2000) (concluding that district court may reinstate vacated conspiracy conviction); United States v. Cabaccang, 481 F.3d 1176, 1183 (9th Cir. 2007) ("However, if the greater offense is later reversed on appeal, the appellate court should reinstate the previously vacated convictions on the lesser-included offenses." (internal quotation marks omitted)).  Accordingly, the government requests that the Court dismiss Counts Two through Four without prejudice to reinstatement following appeal.

V.   Conclusion

For the reasons discussed above, the Court should sentence the defendant to the statutory mandatory minimum of life imprisonment with thirty years' imprisonment to run consecutively, the defendant should be ordered to pay restitution, with the amount to be determined within 90 days of the defendant's sentencing hearing, and the Court should dismiss Counts Two through Four without prejudice to reinstatement following appeal.

Respectfully submitted,

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

ARTHUR G. WYATT, CHIEF
Narcotic and Dangerous Drug Section
Criminal Division,
U.S. Department of Justice

OF COUNSEL:

ARIANA FAJARDO ORSHAN
United States Attorney
Southern District of Florida

cc:   Counsel of Record (by ECF)

5