*6413*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - -X
UNITED STATES OF AMERICA,    :  09-CR-466(BMC)
                             :
                             :
                             :
     -against-               :  United States Courthouse
                             :  Brooklyn, New York
                             :
                             :
                             :
JOAQUIN GUZMAN LOERA,        :  Tuesday, January 29, 2019
                             :  9:30 a.m.
          Defendant.         :
                             :
                             :
- - - - - - - - - - - - - - -X

TRANSCRIPT OF CRIMINAL CAUSE FOR JURY TRIAL
BEFORE THE HONORABLE BRIAN M. COGAN
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

For the Government:    RICHARD P. DONOGHUE, ESQ.
                       United States Attorney
                       Eastern District of New York
                            271 Cadman Plaza East
                            Brooklyn, New York 11201
                       BY: ANDREA GOLDBARG, ESQ.
                            GINA M. PARLOVECCHIO, ESQ.
                            MICHAEL P. ROBOTTI, ESQ.
                            ADAM S. FELS, ESQ.
                            ANTHONY NARDOZZI, ESQ.
                            MICHAEL LANG, ESQ.
                            AMANDA LISKAMM, ESQ.
                            Assistant United States Attorneys

For the Defendant:     BALAREZO LAW
                       Attorneys for the Defendant -
                       Joaquin Guzman Loera
                            400 Seventh Street, NW
                            Suite 306
                            Washington, DC 20004
                       BY: A. EDUARDO BALAREZO, ESQ.

**6414**

A P P E A R A N C E S: (Continued.)

                    LAW OFFICE OF PURPURA AND PURPURA
                    Attorneys for the Defendant -
                    Joaquin Guzman Loera
                          8 E Mulberry Street
                          Baltimore, Maryland 21202
                    BY: WILLIAM B. PURPURA, ESQ.


Court Reporter:   Anthony D. Frisolone, FAPR, RDR, CRR, CRI
                  Official Court Reporter
                  Telephone: (718) 613-2487
                  Facsimile: (718) 613-2694
                  E-mail:  Anthony_Frisolone@nyed.uscourts.gov


Proceedings recorded by computerized stenography.  Transcript
produced by Computer-aided Transcription.

*Proceedings*                                                    *6415*

1           (In open court.)

2           (Defendant present in open court.)

3           COURTROOM DEPUTY:  All rise.  The United States

4    District Court for the Eastern District of New York is now in

5    session.  The Honorable Brian M. Cogan is now presiding.

6           (Honorable Brian M. Cogan takes the bench.)

7           COURTROOM DEPUTY:  Calling criminal cause for jury

8    trial in Docket No. 09-CR-466, *United States of America*

9    *against Joaquin Guzman Loera.*

10          Counsel, please note your appearances for the

11   record.

12          MS. GOLDBARG:  For the United States of America,

13   Assistant United States Attorney Andrea Goldbarg.

14          Good morning, your Honor.

15          MR. BALAREZO: A. Eduardo Balarezo for Joaquin Guzman

16   Loera.

17          Good morning, your Honor.

18          (Defendant enters the courtroom at 9:36 a.m.)

19          COURTROOM DEPUTY:  All rise.

20          THE COURT:  Good morning.  Let's have the jury in,

21   please.

22          COURTROOM DEPUTY:  Jury entering.

23          (Jury enters courtroom at 9:38 a.m.)

24          THE COURT:  All right.  Everyone be seated.  Good

25   morning, ladies and gentlemen.

*Roberts - Direct/Mr. Lichtman*                    **6416**

1          THE JURY: (Collectively) Good morning.

2          THE COURT:  The Government having rested, how would

3     the defense like to proceed.

4          MR. LICHTMAN:  Judge, we're going to be calling for

5     our first witness FBI Agent Paul Roberts.

6          THE COURT:  All right.

7          (Witness takes the witness stand.)

8          COURTROOM DEPUTY:  Please raise your right hand.

9     **PAUL ROBERTS**, called by the Defendant, having been first

10         duly sworn, was examined and testified as follows:

11         THE WITNESS:  Yes, I do.

12         COURTROOM DEPUTY:  Please state and spell your name

13    for rot record.

14         THE WITNESS:  Paul, P-a-u-l, F. Roberts,

15    R-o-b-e-r-t-s, Jr.

16         COURTROOM DEPUTY:  Thank you.

17         THE COURT:  You may inquire.

18         MR. LICHTMAN:  Thank you, Judge.

19    DIRECT EXAMINATION

20    BY MR. LICHTMAN:

21    Q    Good morning, Agent Roberts.

22    A    Good morning, sir.

23    Q    I'm over here.

24    A    There you are.

25    Q    I was going to wave my arms.

*Roberts - Direct/Mr. Lichtman*                    **6417**

1   A     Okay.

2   Q     You were one of the investigators on this case?

3   A     Not on this case, no.

4   Q     You investigated issues relating to Joaquin Guzman?

5   A     No, I did not, sir.

6   Q     What was your role in connection with the investigation

7   of the Sinaloa Cartel?

8   A     I have no role in the investigation of the

9   Sinaloa Cartel, sir.

10  Q     Did you take notes during the debriefing of any witnesses

11  that appeared in this case?

12  A     Yes, I did.

13  Q     And who was that?

14  A     I spoke to two of the witnesses that were in this case.

15  Jorge Cifuentes and Alex Cifuentes.

16  Q     You were involved in some capacity in this case you were

17  sitting on debriefing?

18  A     Those interviews were not related to this case, sir.

19  Q     But you interviewed witnesses that appeared, defendant

20  witnesses that appeared in this case; correct?

21  A     That's correct, yes.

22  Q     And you've been a special agent for how many years?

23  A     Nearly 11, sir.

24  Q     And you've gone through training as part of becoming a

25  special agent?

1   A    That's correct.

2   Q    And some of the training is in connection on how to

3   interview witnesses?

4   A    Yes, sir.

5   Q    You've taken classes?

6   A    Yes, I have.

7   Q    And that's in Quantico, Virginia?

8   A    Yes, that's correct.

9   Q    And how many classes about have you taken on this?

10  A    I took classes at the academy.  To be honest, I can't

11  remember how many sessions we had that were on interviewing at

12  this point.

13  Q    Numerous?

14  A    Numerous, yes.

15  Q    And interviewing witnesses is an important tool in your

16  law enforcement techniques; correct?

17  A    Absolutely, sir.

18  Q    And it's important when you interview witnesses that

19  you're accurate and careful in what you write down?

20  A    That's correct, sir.

21  Q    And it's important because what you write down, first of

22  all, let me back up.  You initially take your interview notes

23  with handwriting, in your own hand?

24  A    Correct, sir.

25  Q    You are not sitting at a computer typing up what someone

*Roberts - Direct/Mr. Lichtman*                    **6419**

1  is telling you?

2  A    I can't type that fast, sir.

3  Q    Of course.  So you take what we would call rough notes of

4  your interviews?

5  A    Yes.

6  Q    And you listen carefully to what the witness says?

7  A    Correct.

8  Q    Because accuracy matters?

9  A    That's correct.

10  Q    And why does accuracy matter?

11  A    Because you want to properly capture what the witness is

12  saying so that what they say can be reflected later.

13  Q    And sometimes, you interview witnesses years and years

14  and years ago that your ultimate report will not come into

15  play until many years later?

16  A    Correct.

17          MR. FELS:  Objection, form, your Honor, leading of

18  the witness.

19          THE COURT:  Well, I'm going to let him lead the

20  witness.

21          MR. LICHTMAN:  Thank you, Judge.

22  Q    So you've obviously interviewed countless witnesses over

23  the years?

24  A    Yes, I have.

25  Q    Would you say more than a hundred?

*Roberts - Direct/Mr. Lichtman*                    **6420**

1    A    Yes.

2    Q    And you've spent hundreds and hundreds of hours

3    interviewing witnesses over the years?

4    A    Correct, sir.

5    Q    And you would agree that interviewing witnesses is an

6    important part of your day-to-day job?

7    A    As an agent it is yes, sir.

8    Q    And when you are interviewing witnesses and writing your

9    notes down, you understand what they're ultimately for; right?

10   A    Yes, sir.

11   Q    It's ultimately for use by the Government at a trial?

12   A    Correct, sir.

13            MR. FELS:  Objection, your Honor.

14            THE COURT:  I think we got that point, so move on to

15   something else.

16   Q    In connection with your interviews of Alex and Jorge

17   Cifuentes, let me focus on Jorge Cifuentes if I can?

18   A    Okay.

19   Q    You recall that you interviewed him some time in February

20   of 2017?

21   A    That sounds about right, sir.

22   Q    So you were -- when did you become aware that you were

23   going to be testifying in this case?

24   A    Yesterday afternoon.

25   Q    And did you review any of your reports in connection?

1  A    I did, sir, yes.

2  Q    And you read in preparation for your testimony what's

3  called an FBI-302 report?

4  A    I read parts, yes, sir.

5  Q    And the FBI-302 report is a typed-up version of your

6  notes?

7  A    Yes.

8  Q    So what you do is you take your rough notes, your

9  handwritten notes, and after you finished the interview soon

10 thereafter you sit at a computer and you type it up?

11 A    Correct, sir.

12 Q    And you're aware that these notes will be not only

13 provided to the Government but provided to defense counsel as

14 well?

15 A    Yes, sir.

16 Q    So accuracy is hugely important; correct?

17 A    Yes, sir.

18 Q    Now, as past your interview of Jorge Cifuentes, was this

19 your first time you were sitting in an interview with

20 Mr. Cifuentes?

21 A    Yes, sir.

22 Q    And your last time as well?

23 A    Yes.

24 Q    So you had no idea about anything in connection with the

25 Joaquin Guzman case?

*Roberts - Direct/Mr. Lichtman*                    **6422**

1   A    Correct, sir.

2   Q    You were just there as a mirror, basically, to write down

3   what you heard?

4   A    No, sir.  It was related to a different investigation.

5   Q    But you were there to write down what you heard that day?

6   A    Correct, sir.

7   Q    And how long was that interview, if you recall?

8   A    It was couple hours at least.

9   Q    And if you had any questions during that interview where

10  you didn't understand something, you clarified it; correct?

11  A    Yes, myself or the other people that were in the

12  interview room.

13  Q    And there were many other people in this interview with

14  you?

15  A    There were several, yes.

16  Q    Agents?

17  A    Correct.

18  Q    Prosecutors?

19  A    Correct, sir.

20  Q    So everybody heard what you heard that day?

21  A    Correct, sir.

22  Q    And everybody had the opportunity, if you know, to make a

23  correction on what was said that day?

24  A    During the course of the interview, yes.

25  Q    And there was a translator that was there?

*Roberts - Direct/Mr. Lichtman*          **6423**

1   A    Yes, there was.

2   Q    And Mr. Cifuentes, you asked him questions and he gave an

3   answer in Spanish?

4   A    Myself and the other people in the room asked the

5   questions, yes.

6   Q    Were you the sole person that was writing down the notes

7   from that interview?

8   A    Yes, I was, sir.

9   Q    Did anybody see those interview notes before they were

10  typed up?

11  A    I don't believe they did, no, sir.

12  Q    But everybody saw your completed FBI-302 report; correct?

13          MR. FELS:  Objection, your Honor.

14          THE COURT:  Sustained.

15  Q    Now, during that interview, Mr. Cifuentes, described a

16  meeting to you where he received a visit from an American

17  lawyer?

18  A    Yes, he did.

19  Q    And you wrote that down?

20  A    Yes, I did.

21  Q    And you typed that up?

22  A    I did, sir.

23  Q    And then he said to you during the interview on

24  approximately October of 2010 he received a visit from a

25  representative of the U.S. Naval Intelligence; correct?

*Roberts - Direct/Mr. Lichtman*                    **6424**

1   A     That's correct, sir.

2   Q     That's what you heard?

3   A     That's what is in my notes, sir.

4   Q     Did that surprise you?

5   A     At the time it did.

6   Q     He said, in fact, that the naval intelligence officer

7   from the United States had a USB drive which contained much

8   evidence from the American and Colombian investigation of him?

9              MR. FELS:  Objection, leading and it form.

10             THE COURT:  The thing on this one, this kind of

11  question, you need to ask him open questions.

12  Q     What did he tell you, the American naval officer, showed

13  him?

14  A     I would have to look at the notes again.  I believe it

15  was that he showed him a USB drive with some files on it

16  related to an investigation of him.

17  Q     An American investigation of him; correct?

18  A     Correct, sir, yes, sir.

19  Q     And the files that he discussed were evidence that the

20  Americans had gathered against him and other people; correct?

21  A     Evidence and charts detailing that evidence, I believe.

22  Q     Evidence including tapes?

23  A     As I sit here, I don't recall if there were tapes.

24  Q     Let me if I can show you this is JMC-88.

25             If you can read that section to yourself and let me

*Roberts - Direct/Mr. Lichtman*                    *6425*

1   know when you're done.

2   A    The highlighted.

3   Q    The whole last paragraph?

4   A    Okay.  Yes, there were recordings on the USB drive.

5   Q    And the evidence that Mr. Cifuentes told you that the

6   United States naval intelligence officer showed him also dealt

7   with evidence against Mr. Guzman; correct?

8   A    I would like to review my notes as well on that.

9   Q    I helped you out a little bit there?

10  A    Okay, yes, it did, sir.

11  Q    So, in 2010, let's just recap.  Mr. Cifuentes told you

12  that he received a visit from a U.S. naval officer who showed

13  him American-gathered evidence against the Cifuentes family

14  and Mr. Guzman?

15              MR. FELS:  Objection, your Honor.

16              THE COURT:  Sustained.

17              MR. LICHTMAN:  Is that asked and answered, Judge?

18              THE COURT:  No, it was form.

19  Q    The evidence that Mr. Cifuentes told you that he was

20  shown by the U.S. Naval Intelligence officer was evidence,

21  American evidence, gathered against Mr. Guzman?

22              MR. FELS:  Objection, your Honor.

23              THE COURT:  Same problem.  Don't lead him to that.

24  Ask him.

25              MR. LICHTMAN:  Just leading, Judge.

*Roberts - Direct/Mr. Lichtman*　　　　　*6426*

1　　　　　THE COURT:  Okay.

2　Q　　Why don't you tell us what the evidence that

3　Mr. Cifuentes told you that the U.S. Naval Intelligence

4　officer showed you?

5　A　　It was evidence that he told us was from a

6　U.S. investigation of himself and Mr. Guzman.

7　Q　　And his family?

8　A　　And Mr. Cifuentes's family, yes.

9　Q　　And this was American-gathered evidence?

10　A　　I'm not sure if it was American-gathered, but it was from

11　the American investigation.

12　Q　　Okay.  And as you said, this surprised you?

13　A　　It was a little surprising to hear, yes.

14　Q　　It was surprising because, in your mind, you believed, my

15　God, a U.S. Naval Intelligence officer is crooked and is

16　helping the Cifuenteses?

17　　　　　MR. FELS:  Objection.

18　　　　　THE COURT:  Sustained.

19　Q　　Why it did it surprise you?

20　A　　It surprised me that evidence of an ongoing investigation

21　would be shown to a defendant outside of, you know, something

22　more formalized or within the court process.

23　Q　　But what really surprised you was the fact that it was a

24　U.S. Naval Intelligence officer?

25　　　　　MR. FELS:  Objection.

*Roberts - Direct/Mr. Lichtman*                    *6427*

1          THE COURT:  Sustained.

2    Q    Did the nationality of the officer surprise you?

3          MR. FELS:  Objection, your Honor.

4          THE COURT:  I'll allow it.

5    A    It did as well, yes.

6    Q    Of course it did because America isn't crooked; right?

7          MR. FELS:  Objection, your Honor.

8          THE COURT:  Mr. Lichtman, he's your witness.

9          MR. LICHTMAN:  Well, Judge.

10         THE COURT:  You called him.

11         MR. LICHTMAN:  We can agree that he's not exactly a

12   friendly witness to us, Judge.

13         MR. FELS:  Objection, your Honor.

14         THE COURT:  It's an interesting question.  I'm not a

15   hundred percent sure you're allowed to treat him as an adverse

16   party, but my inclination is, no, you can't argue with him.

17   So just get out the information you want to get out.

18   EXAMINATION BY

19   MR. LICHTMAN:

20   (Continuing.)

21   Q    If Mr. Cifuentes told you that it was a Mexican or a

22   Colombian agent, would it have surprised you?

23   A    It still would have surprised me for that person to have

24   the information.

25   Q    I mean, the person who showed it to him?

*Roberts - Direct/Mr. Lichtman*                    **6428**

1  A    Well, I feel that anyone who is working in an official

2  capacity sharing that information that would be surprising to

3  me that they would violate their duty.

4  Q    The fact that it was American sort of heightened it?

5             MR. FELS:  Objection, your Honor.

6             THE COURT:  Sustained.

7  Q    And after you received this information, did you ask him

8  again to clarify?

9  A    I don't recall if I asked him to clarify on that point or

10  not, sir.

11  Q    But you were careful of what you wrote down?

12             MR. FELS:  Objection.

13             THE COURT:  We have that already, Mr. Lichtman.

14  Q    You made sure you were accurate?

15             MR. FELS:  Objection.

16  Q    With regard to this piece?

17             THE COURT:  Did you have any particular degree of

18  accuracy with regard to this notation as opposed to any other

19  notation?

20             THE WITNESS:  No, sir.  I feel that the entirety of

21  it should be accurate.

22  Q    So let's say that the color of a shirt that Mr. Cifuentes

23  claimed that the naval intelligence officer was wearing would

24  be the same as the nationality of him?

25             MR. FELS:  Objection, your Honor.

*Roberts - Cross/Mr. Fels*                    **6429**

1           THE COURT:  I'll allow it.

2           THE WITNESS:  I feel that all details in the

3    interview are equally as important.  Whether it's a detail

4    that's captured, I'm taking the notes and making sure that

5    it's recorded appropriately.

6    Q    If he would have told you that the man was wearing a

7    black shirt, would that have surprised you as much as the fact

8    that -- can I finish the question -- the fact that it was an

9    American naval intelligence officer that was crooked?

10          MR. FELS:  Objection.

11          THE COURT:  Sustained.

12          MR. LICHTMAN:  No further questions.

13          THE COURT:  Any cross.

14          MR. FELS:  Yes, please.

15   CROSS-EXAMINATION

16   BY MR. FELS:

17   Q    Special Agent Roberts, good morning.

18   A    Good morning.

19   Q    You and I have not met, have we?

20   A    We've never met face-to-face, no.

21   Q    We had a conversation yesterday?

22   A    We did, yes.

23   Q    Sir, now, you talked about these reporting requirements?

24   A    Yes.

25   Q    And taking notes and putting it into what's called a

*Roberts - Cross/Mr. Fels*                        *6430*

1   FBI-302; correct?

2   A    Correct, sir.

3   Q    You don't go to the witness afterwards and say, sir, can

4   you take a look at this?  Is this accurate?  Did I get that

5   right.

6        You don't do that with the person you're

7   interviewing, do you?

8   A    No, I do not.

9   Q    And when you're taking these notes, you said on direct

10  that you're doing it through a Spanish interpreter; correct?

11  A    In this interview I was, yes.

12  Q    You don't speak Spanish, do you?

13  A    I do not, sir.

14  Q    So you're relying on the interpreter to get things

15  correct; is that right?

16  A    Correct.

17  Q    And if they get something wrong that could lead to an

18  issue with your notes, is that true?

19  A    If they get something incorrect, then it's going to be

20  reflected incorrectly in my notes.

21  Q    Has every report that you've written been perfect?

22  A    Not perfect, no.

23  Q    You make mistakes?

24  A    I try not to, but.

25  Q    And let's take the jury through this process.

*Roberts - Cross/Mr. Fels*                    **6431**

1          You're asking a bunch of questions to a witness;
2    correct?
3    A    Correct.
4    Q    And this is not a witness you met before; correct?
5    A    Correct.
6    Q    Did you read any report, prior reports before the
7    meeting?
8          MR. LICHTMAN:  Objection.
9    A    I did not.
10   Q    You didn't so you weren't aware --
11         MR. LICHTMAN:  Objection.
12   Q    -- that he actually talked into a prior debrief about his
13   side of the entire incident?
14         MR. LICHTMAN:  Objection.
15         THE COURT:  Stop.  What's the objection?
16         MR. LICHTMAN:  Beyond the scope.
17         MR. FELS:  It goes --
18         THE COURT:  It's not beyond the scope.  Overruled.
19   Q    You're aware, sir, that the same Jorge Cifuentes had
20   talked about this same incident only had --
21         MR. LICHTMAN:  Objection.
22   Q    -- told someone it was a Colombian agent.  You were not
23   aware of that fact, were you?
24         MR. LICHTMAN:  Objection.
25         THE COURT:  Overruled.

*Roberts - Cross/Mr. Fels*                    **6432**

1   A    I was not, sir.

2   Q    Because you hadn't read the prior report; correct?

3   A    That's correct.

4   Q    Had you read that prior report, might that have changed

5   how you perceived what he was telling you in this case?

6            MR. LICHTMAN:  Objection, speculation.

7            THE COURT:  Sustained.

8   Q    Sir, I want -- we talked about this first paragraph that

9   we looked at, you said the first very thing you put down here

10  was he received a visit from an American lawyer.  Do you

11  remember that?

12  A    That's correct, sir.

13  Q    And then, right from there, we go straight into this

14  meeting with a naval intelligence officer; correct?

15  A    That was the next line, I believe, yes.

16  Q    And then, later on, you weren't shown this part I want to

17  show you.

18            Do you remember that Mr. Cifuentes talked to you

19  about this naval officer's cousin and a relationship that

20  cousin had with one of his family members?

21  A    I believe he did, yes.

22  Q    And that family member was Francisco Cifuentes.  Do you

23  remember that?

24  A    It sounds correct.

25  Q    Although you put down a/k/a Pacheto?

*Roberts - Cross/Mr. Fels*                    6433

1  A    If that's on there, then that's what I recall being said.

2  Q    Okay.  You are aware that he's consistently referred as

3  to Pacho or Pachito, not Pacheto?

4  A    I am not aware of that.

5  Q    And you are aware that he is a Colombian; correct?

6         MR. LICHTMAN:  Objection.

7         THE COURT:  Overruled.

8  A    I believe he is.

9  Q    Okay.  So does it make sense that this law enforcement

10 officer, his cousin was a Colombian that he would be a

11 Colombian or an American?

12        MR. LICHTMAN:  Objection.

13        THE COURT:  Sustained.

14 Q    Sir, you were asked a question about the United States

15 investigation.  Do you remember that?

16 A    Yes.

17 Q    There's nothing in this report where you memorialized

18 that this witness said that what he said was from a

19 United States investigation; correct?

20 A    I have to look at my notes again.

21 Q    I'll show it to you.

22        Showing you what's been marked as Government's

23 Exhibit §3500-JMCV-1368 this is for the witness only.

24 A    Okay.  The rest of that paragraph doesn't say that it was

25 a U.S. investigation.

*Roberts - Cross/Mr. Fels*                    **6434**

1   Q    There was an assumption that you made based on your

2   perception that the witness talked about an American as

3   opposed to a Colombian investigator; correct?

4              MR. LICHTMAN:  Objection.

5              THE COURT:  Overruled.

6   A    It was, yes, sir.

7   Q    So if your assumption is based on whether or not the

8   intelligence officer was Colombian or American, and you got

9   that piece wrong, then there really was no American

10  investigation?

11             MR. LICHTMAN:  Objection.

12             THE COURT:  Sustained.

13  Q    Sir, so we talked about the fact that the witness already

14  talked about an American lawyer, and that he talked about this

15  naval officer having Colombian cousins.

16             As you sit here today, do you have an independent

17  recollection of what Mr. Cifuentes said to you?

18  A    I have no recollection beyond what was in my notes.

19  Q    You don't have a court reporter who is there taking

20  down --

21             MR. LICHTMAN:  Objection.

22  Q    -- verbatim notes; correct?

23             MR. LICHTMAN:  Objection.

24             THE COURT:  Overruled.

25  A    That's not how the FBI conducts interviews.

*Roberts - Cross/Mr. Fels*                                    **6435**

1  Q    And you're not sure as you sit here today could have been

2  a mistake that Mr. Jorge Cifuentes said it was an American

3  naval officer instead of a Colombian isn't that right?

4  A    Could you repeat that that question, sir.

5  Q    As you sit here today, you're not sure whether or not

6  Jorge Cifuentes said an American versus a Colombian naval

7  officer?

8  A    I know what was in my 302 and in my notes, and that is

9  the best recollection that I have.

10  Q    It's possible that you made a mistake, isn't it?

11          MR. LICHTMAN:  Objection.

12          THE COURT:  Sustained.

13  Q    Are you sure, with 100 percent confidence?

14          MR. LICHTMAN:  Objection.

15          THE COURT:  Sustained.

16  Q    So if your recollection, since you have no independent

17  recollection, your recollection is based on your notes?

18          MR. LICHTMAN:  Objection.  Asked and answered.

19          THE COURT:  We know that.  We know that.  Go on to

20  something else.

21  Q    So you're not perfect; correct?

22          MR. LICHTMAN:  Objection.

23          THE COURT:  Sustained.

24          MR. FELS:  I have no further questions.

25          THE COURT:  Any redirect.

*Roberts - Redirect/Mr. Lichtman*          **6436**

1      MR. LICHTMAN:  I do, Judge.

2  REDIRECT EXAMINATION

3  BY MR. LICHTMAN:

4  Q    Special agent, you said that you weren't certain that

5  anything of this had to do with an American investigation;

6  correct, that you were told about by Mr. Cifuentes?

7           MR. LICHTMAN:  That's a horrible question.  I

8  withdraw that.

9  Q    You said on cross, that you were not certain whether the

10 information that Mr. Cifuentes was discussing came from an

11 American investigation?

12 A    Based on my notes, it came from an American

13 representative.  But where the underlying source was, I don't

14 have a recollection of where that was from.

15 Q    But you remember writing down in your report that, in

16 fact, this information made its way to the United States;

17 correct?

18 A    Yes, if it came from a U.S. representative, then it would

19 have made its way to the United States.

20 Q    And was used by the United States in connection with

21 their investigation?

22           MR. FELS:  Objection, your Honor.

23           THE COURT:  Sustained.

24 Q    What would be the purpose of the United States receiving

25 that information?

*Roberts - Redirect/Mr. Lichtman*                          *6437*

1   A     In the course of an investigation.

2   Q     Their investigation?

3   A     Yes.

4         MR. FELS:  Objection, your Honor.

5         THE COURT:  Overruled.

6   Q     Now, the prosecutor asked you about whether you showed

7   any of your notes to Mr. Cifuentes after you took them down;

8   correct?

9   A     He did.

10  Q     Could you have followed up with him if you had any

11  question with regard to accuracy?

12  A     Through counsel I could have.

13  Q     Could you have done it that day as well when he said it

14  to you initially?

15        MR. FELS:  Objection, your Honor.

16        THE COURT:  Overruled.

17  A     During the course of the interview, we could have

18  clarified.

19  Q     Did you clarify?

20  A     I don't recall if we clarified on this point or not, sir.

21  Q     Now, Mr. Fels asked you whether or not there was an

22  interpreter there which I asked you as well; correct?

23  A     I believe you did, yes.

24  Q     And do you think that made it more difficult for you to

25  understand what was being said to you because it came through

*Roberts - Redirect/Mr. Lichtman*                    *6438*

1    an interpreter?

2    A    I wouldn't say it was more difficult to understand, but

3    with an interpreter it does make the interview process a

4    little more complicated.

5    Q    Well, but the interpreter speaks in English to you;

6    correct?

7    A    Yes.

8    Q    Are you aware that the words United States in Spanish are

9    Estados Unidos?

10   A    I believe so, that's correct.

11   Q    It's not very difficult to understand what United States

12   means in Spanish?

13           MR. FELS:  Objection.

14           THE COURT:  Sustained.  It's for argument,

15   Mr. Lichtman.

16           MR. LICHTMAN:  I understand.

17   Q    Now, the Government asked you if there was a court

18   reporter present.

19   A    Yes.

20   Q    Do you need a court reporter when you're taking down

21   notes?

22           MR. FELS:  Objection, your Honor.

23           THE COURT:  Overruled.

24   A    We do not, no.

25   Q    Why don't you?

*Roberts - Redirect/Mr. Lichtman*                    **6439**

1    A      That's not FBI policy.

2    Q      What's FBI policy?

3    A      FBI policy is that there is one person taking notes, and

4    that person is the sole note-taker and then they draft a 302

5    based on those notes.

6    Q      Do you think it would have helped if you had a court

7    reporter present?

8    A      It would have meant that I wouldn't have had to write up

9    a long 302, but it would not have been in our policy.

10   Q      Other than the ache of your hand you don't need a court

11   reporter, you're a professional.

12              MR. FELS:  Objection.

13              THE COURT:  Sustained.

14   Q      You've written how many -- taken how many interviews over

15   the years?

16              MR. FELS:  Objection.  Asked and answered.

17              THE COURT:  We've got that.

18   Q      You're confident as you sit here today -- excuse me.

19              MR. LICHTMAN:  Withdrawn.

20   Q      You stand by the reports that you type up --

21              MR. FELS:  Objection.

22   Q      -- for the Government don't you?

23              MR. FELS:  Objection.

24              THE COURT:  No, I'll allow it.

25              THE WITNESS:  I do, yes.

1              MR. LICHTMAN:  Nothing further.

2              MR. FELS:  I have a brief question.  I can do it

3    from here.

4    RECROSS-EXAMINATION

5    BY MR. FELS:

6    Q    Sir, are you aware of a process whereby Colombian

7    investigations information can be passed along to the

8    United States for prosecution here in the United States?

9              MR. LICHTMAN:  Objection.

10             THE COURT:  Overruled.

11   A    I believe that there is a process.  I'm not sure of the

12   actual treaties, I there know there are treaties that are in

13   effect.

14   Q    Do you know what an MLAT is?

15   A    Yes.

16   Q    That's an opportunity the United States to obtain he

17   evidence from a foreign country for prosecution in the

18   United States?

19   A    That's correct.

20   Q    And --

21             MR. LICHTMAN:  Objection.

22             THE COURT:  Overruled.

23   Q    As you sits here today, you don't know how it is that the

24   United States came to have that information; correct?

25             MR. LICHTMAN:  Objection.  Beyond the scope.

*Roberts - Recross/Mr. Fels*                    *6441*

1          MR. FELS:  Within the scope, your Honor.

2          THE COURT:  It's barely within the scope but you got

3    to wrap it up.

4          MR. FELS:  I'm going to wrap it up.

5    Q    Sir, you understand what I'm asking?

6    A    Could you repeat question.

7    Q    As you sit here today, you have no idea one way or the

8    other whether the United States got the information on the

9    Cifuenteses from the Colombians, do you?

10         MR. LICHTMAN:  Objection.

11         THE COURT:  Sustained.

12   Q    Sir, are you aware of how the United States got the

13   information on the Cifuenteses?

14   A    I am not, sir.

15         MR. FELS:  Okay.  No further questions.

16         THE COURT:  Okay.  You may step down.

17         MR. LICHTMAN:  Can I ask one last question.

18         THE COURT:  Yes.

19   REDIRECT EXAMINATION

20   BY MR. LICHTMAN:

21   Q    How do you know as you sit today the Americans got that

22   evidence; crosswalk?

23         MR. FELS:  Objection, your Honor.

24         THE COURT:  Sustained.

25         MR. LICHTMAN:  Nothing further.

*Proceedings*                                                          *6442*

1          THE COURT:  You may step down.

2          THE WITNESS:  Thank you, your Honor.

3          (Witness leaves the witness stand.)

4          THE COURT:  All right.  How would the defense like

5    to proceed?

6          MR. LICHTMAN:  Judge, we have a stipulation to read

7    to the jury.

8          THE COURT:  All right.  Go ahead.

9          MR. LICHTMAN:  This is Defense Exhibit 357.

10         It is hereby stipulated and agreed by between

11   Richard M. Donoghue, United States Attorney for the Eastern

12   District of New York, Arthur G. Wyatt Chief Narcotics and

13   Dangerous Drugs Section, and by Counsel Ariana Fajardo Orshan,

14   United States Attorney for the Southern District of Florida by

15   Assistant United States Attorneys Adam Fels, Andrea Goldbarg,

16   Gina Parlovecchio, and Michael Robotti and trial attorneys

17   Amanda Liskamm, Anthony Nardozzi, and Joaquin Guzman Loera by

18   Eduardo Balarezo, Jeffrey Lichtman, William Purpura and Paul

19   Townshend that if called to testify, Special Agent Patrick

20   Gittleson would testify that on April 26, 2017, he interviewed

21   Hildabrando Alexander Cifuentes Villa, and that during that

22   debriefing, Mr. Cifuentes Villa indicated that Alex Cifuentes

23   Villa first met Andres Granados, the attorneys who would

24   become his attorney, the individual, excuse me, who would

25   become his attorney.

*Proceedings*                                                    *6443*

1          Mr. Cifuentes Villa was incarcerated in Mexico City.

2     He reached out to Mr. Granados after receiving a referral from

3     inmates Nariz, believed to be Mario Hidalgo Arguello and

4     Manuel Lopez Osorio, also known as Picudo.

5          And second, between 2007 and 2013, the defendant had

6     incurred, approximately, $20 million worth of debt.

7          It is further stipulated that this stipulation may

8     be received and admitted as a Defense Exhibit at trial.

9          THE COURT:  All right.  It is in evidence.

10          (Defendant's Exhibit 357 was marked in evidence as

11     of this date.)

12          MR. LICHTMAN:  Judge, with that, the defense rests.

13          THE COURT:  Okay.  Both sides having rested, ladies

14     and gentlemen, let me tell you what's going to happen with the

15     case now.  I'm going to spend the rest of the day with the

16     attorneys going over the instructions that I'm going to give

17     you for your deliberations.

18          You'll come back tomorrow at 9:30 and we will start

19     closing arguments and then I will give you the final

20     instructions.  I think the closing arguments and the

21     instructions will take somewhere between two and three days

22     before you even start deliberating.

23          I know Ms. Clarke inquired of you whether anyone had

24     any problems sitting this Friday because that's probably when

25     you'd start your deliberations and I know that a few of you

*Proceedings*                                                    *6444*

1   have said that you do have problems.  See what you can do

2   about that over the next day since you're going to have the

3   day off, I'm going to send you home now, and see if you can

4   resolve that day, you know, the deal was if that we don't sit

5   on Fridays but if everybody can then we will.  I'd like to get

6   your deliberations under way, I'm sure I would, too, as soon

7   as possible but if we can't, we can't.  But we'll get a final

8   answer to that question tomorrow after you got a chance to

9   consider it, see if you can move appointments, whatever you

10  have to do.

11          And that will be that.  Once you start your

12  deliberations, you'll go until you have reached a verdict in

13  the case.  So you have the day off today.  Please remember

14  that you can't discuss this case with anyone especially at

15  this crucial stage of it you can't do any research on the

16  case.  Don't look up anything on the Internet.  Don't post

17  anything on Facebook.  Stay away from any media coverage that

18  there might be of the case.  We're getting to the end stage

19  and we will start with that end stage tomorrow morning at 9:30

20  for closing arguments.

21          Have a good evening we'll see you tomorrow.

22          (Jury exits courtroom at 10:11 a.m.)

23          THE COURT:  Okay.  Everyone be seated.

24          First, let's talk about scheduling and jury

25  availability.  What Ms. Clarke was able to learn and, like I

*Proceedings*                                                    *6445*

1    said, we will get a final run down tomorrow is that two

2    alternates and one seated juror have various conflicts on

3    Friday.  Maybe they'll work them out, maybe they won't.  If

4    they don't then I think we have no choice but to start

5    deliberations on Monday.  I don't think that will affect the

6    schedule we laid out yesterday we'll do closings and charge

7    Wednesday and Thursday.  And if I have to do part of the

8    charge on Monday, I will.  So that's the story with that.

9              Is everybody ready for the charging conference, or

10   do you need a break.

11             MS. PARLOVECCHIO:  Your Honor, can we have a short

12   break?

13             THE COURT:  Let's reconvene at 10:30 and we'll have

14   the charging conference.

15             MR. LICHTMAN:  Judge, I'm going to take my leave

16   now.

17             THE COURT:  Very good.  Thank you, Mr. Lichtman.

18             (A recess in the proceedings was taken.)

19             (Defendant exits from courtroom at 10:13 a.m.)

20             (Continued on the next page.)

21

22

23

24

25

Charge Conference                          6446

1          (In open court; outside the present of the jury.)

2          THE COURTROOM DEPUTY:  All rise.

3          THE COURT:  Okay.  Have a seat, please.

4          All right.  This is the charging conference.  The

5   parties have been previously given a copy of the Court's

6   proposed charge.  I have, of course, reviewed the proposals

7   that they have given me.

8          The way I would like to proceed, as is always the

9   case, the instruction, the proposed instructions are in

10  three parts.  The first part is, I guess I can call it

11  "boilerplate."  It's general principles.  And so rather than

12  go through page by page as to that, and that is Pages 4

13  through 21, I just like to ask starting with the earliest of

14  those pages, does anyone have any comments, objections,

15  changes, or anything on that part?

16          MS. PARLOVECCHIO:  Your Honor, just with regard to

17  Page 9, there's some language there where it states, "After

18  examining all of the evidence..." --

19          THE COURT:  No, no.  You are going to need to be a

20  little closer to the mic.

21          MS. PARLOVECCHIO:  I'm sorry.  I haven't improved

22  much over the last three months with my loudness.

23          "After examining all the evidence, you may decide

24  that the party calling the most witnesses has not persuaded

25  you because you do not believe its witness or because you do

Charge Conference                                    6447

1    believe the fewer witnesses called by the other side..."

2              THE COURT:  Right.

3              MS. PARLOVECCHIO:  We would just request some

4    language saying that, Other the other hand if you do find

5    that the party calling the most witnesses persuasive, then

6    you may decide in their favor, or something like that.

7              THE COURT:  Right.

8              THE INTERPRETER:  The interpreter cannot hear.

9    Use the microphone, please.

10             MS. PARLOVECCHIO:  I'm sorry.

11             THE COURT:  Do I have to give you a lapel mic?

12             (Pause in proceedings.)

13             MS. PARLOVECCHIO:  How is that?  Better?

14             THE COURT:  Better.

15             MS. PARLOVECCHIO:  Okay.

16             THE COURT:  And I think it is also important that

17   you talk slow.

18             MS. PARLOVECCHIO:  Yes, your Honor.

19             THE COURT:  Okay.

20             So yes, we will add a sentence at the end of that

21   first incomplete paragraph on Page 9 that balances it out to

22   say what happens -- that you can still find in the

23   Government's favor if you find the appropriate predicate for

24   that.

25             MS. PARLOVECCHIO:  Thank you.

Charge Conference                              6448

1           THE COURT:  Okay.

2           Okay.  Anything before Page 9?

3           MS. PARLOVECCHIO:  No.

4           THE COURT:  Anything from 9 to 21?

5           MS. PARLOVECCHIO:  No -- well, actually -- I'm

6    sorry.  Just one thing.  On Page 10 I noticed you have some

7    language in regards to judicial notice?

8           THE COURT:  Yes, we do not need that.

9           MS. PARLOVECCHIO:  We don't need it.

10          THE COURT:  Okay.  We will take that out.  Thank

11   you for catching that.

12          MS. PARLOVECCHIO:  Sure.

13          THE COURT:  Okay.  And nothing else before

14   Page 22; is that right?

15          MS. PARLOVECCHIO:  Oh, your Honor?

16          THE COURT:  Yes.

17          MS. PARLOVECCHIO:  On Page 18 --

18          THE COURT:  Right.

19          MS. PARLOVECCHIO:  -- Section F, Government

20   Informants, there actually weren't any government informants

21   who testified during trial.

22          THE COURT:  No.

23          MS. PARLOVECCHIO:  I think this may have been

24   included in regard to the witness Christian Rodriguez.

25   However, he was testifying pursuant to a nonprof agreement,

1   a non-prosecution agreement; so therefore, I think he would

2   be encompassed in the cooperating witness's section of the

3   instructions.

4            THE COURT:  Okay.

5            All right.  Is there any issue with that from the

6   defense?

7            MR. BALAREZO:  No, your Honor.

8            THE COURT:  All right.  So we will take out that

9   Subparagraph F on Page 18 -- well, two photographs,

10  actually, under F.

11           MR. BALAREZO:  And, your Honor, with respect to

12  that witness also, although he was testifying pursuant to a

13  non-prosecution agreement, it's in effect an immunity

14  agreement and we have requested an instructions on witnesses

15  with immunity, and I don't think that was included --

16           MS. PARLOVECCHIO:  Well, I --

17           MR. BALAREZO:  -- because there is no

18  non-prosecution instruction, for example, and he has been

19  immunized for his testimony.  He's not being prosecuted for

20  it.

21           MS. PARLOVECCHIO:  Your Honor, the character of

22  those two types of agreements are sufficient different that

23  I don't think an immunity instruction would be appropriate

24  there.

25           THE COURT:  Yes.  I didn't think your instruction

Charge Conference                                6450

1   fit for the reason you are saying.  It is really applied to

2   a difference situation.  But I did think that the

3   cooperating witness instruction picked up all of the things

4   that you need to for Rodriguez.  So I think you are in the

5   same boat.  If you can think of any additional language

6   which would in an abstract way address the very slight

7   differences between him and the other cooperators, you can

8   try that, but I do not think it is necessary.

9            MR. BALAREZO:  I'm just going through it again,

10  your Honor.  I would probably just, if it's not in, add

11  something along the lines of, A witness has -- well, The

12  Government has agreed not to prosecute a witness who has

13  admitted to committing crimes and that witness has testified

14  pursuant to that agreement and will not be prosecuted.

15  Something along those lines.

16           THE COURT:  Well, maybe we can put in a sentence

17  that simply refers to that status and says they should be

18  treated the same way as a cooperating witness.

19           MR. BALAREZO:  That's fine.

20           MS. PARLOVECCHIO:  Your Honor, I think maybe the

21  paragraph that begins on Page 20 in the Cooperating Witness

22  Section, the sentence that says, "There is also evidence

23  that the Government agreed to dismiss some charges against

24  those witnesses, and agree not to prosecute them..."

25           MR. BALAREZO:  But where are you?  I'm sorry.

Charge Conference                              6451

1          MS. PARLOVECCHIO:  I'm sorry.  It's the second

2   sentence in the first full paragraph on Page 20.

3          MR. BALAREZO:  Okay.  Thank you.

4          MS. PARLOVECCHIO:  Sure.

5          THE COURT:  It's there.  You are right.

6          MS. PARLOVECCHIO:  I think that should cover it.

7          THE COURT:  Well, that covers you, Mr. Balarezo,

8   right?

9          MR. BALAREZO:  Well, not to be nitpicky, but the

10  Government did not dismiss the charges against our witness.

11  It just agreed not to prosecute them, and this witness did

12  not plead guilty.  I mean, this kind of convolutes many

13  things, but his witness was never charged, was never

14  prosecuted, never pled guilty.  He was just -- nothing

15  happened, basically.

16         MS. PARLOVECCHIO:  What if we said "or" instead of

17  "and"?

18         THE COURT:  Yes, "or agreed not to prosecute."

19         MR. BALAREZO:  "And/or agreed"?

20         THE COURT:  No.  Take out "and" and put in "or"

21  because then you are covering both.

22         MR. BALAREZO:  But then in exchange for the

23  witness's agreement to plead guilty, that's not factually

24  accurate with respect to Rodriguez.

25         THE COURT:  Well, then how about this:  Leaving --

Charge Conference                              6452

1          MS. PARLOVECCHIO:  Or testify?

2          THE COURT:  No.  Leave in "and."  Leave the

3     sentence as is, and then at the end of that sentence, add

4     "or agreed to testify."

5          MS. PARLOVECCHIO:  Uh-huh.

6          THE COURT:  What about that?

7          MS. PARLOVECCHIO:  That would address our

8     concerns, your Honor.

9          MR. BALAREZO:  So "agreed to plead guilty and

10    testify against the defendant"?

11         THE COURT:  "Or agreed to testify" -- "or

12    otherwise agreed to testify."

13         MR. BALAREZO:  Would the Court accepted adding

14    that witness's name?  Because often in other trials that

15    I've had where there's specific situations about one

16    witness, the witness is identified.  For example, Christian

17    Rodriguez has testified --

18         THE COURT:  We are going to get more into that

19    general question as we go through the substantive part of

20    the instruction.  But I would like to avoid that, if I can.

21    I do not want to draw any Court attention to the parties'

22    arguments.  I think if we have the language I just

23    suggested, nothing stops you from pointing to that language

24    in closing and saying, And that means Christian Rodriguez,

25    and you can argue that.

Charge Conference                                    6453

1           MR. BALAREZO:  Okay.

2           THE COURT:  I think that is the way I want to do

3    it.

4           MR. BALAREZO:  That's fine, your Honor.  Thank

5    you.

6           THE COURT:  Hang on one second.

7           (Pause in proceedings.)

8           THE COURT:  Yes.  That first "and" should be an

9    "or" -- was changed to an "or."

10          MR. BALAREZO:  The third line down?

11          THE COURT:  Yes, the third line down.  Correct.

12   But by then I think we have covered the waterfront.

13          Okay.  Anything else before Page 22?

14          MS. PARLOVECCHIO:  Yes, your Honor.  In that same

15   paragraph on Page 20, the Government would request to strike

16   the language beginning, "A witness who has entered into such

17   an agreement has an interest in this case different than any

18   ordinary witness.  If I realize that they may be able to

19   obtain their own freedom or receive a lighter sentence by

20   giving testimony favorable to the prosecution, they have a

21   motive to testify falsely."

22          And we just have some alternative language.

23          THE COURT:  Go ahead.

24          MS. PARLOVECCHIO:  Okay.  Well, actually, we

25   would -- we would actually request to strike that, that

Charge Conference                                6454

1    language from the paragraph.

2           THE COURT:  Well, you are just talking about that

3    once sentence?

4           MS. PARLOVECCHIO:  Uh-huh, yes.

5           MR. BALAREZO:  We object, obviously, to that.  I

6    think that's a standard instruction with respect to that,

7    so...

8           THE COURT:  I do not think that is standard.

9           MS. PARLOVECCHIO:  No, it's not.

10          THE COURT:  The next sentence about "examining

11   testimony with caution and weigh it with great care," that

12   is standard.

13          MS. PARLOVECCHIO:  Right.

14          THE COURT:  And I think that is enough.  I think

15   that's enough.

16          All right.  I am going to grant the Government's

17   request over objection and take out the preceding sentence.

18   That is really more argument it seems to me.

19          Okay.  Is there anything else on 20 or 21?

20          MS. PARLOVECCHIO:  On Page 21, your Honor, in

21   Section I, Sentencing Cooperating Witness.

22          THE COURT:  Right.

23          MS. PARLOVECCHIO:  Just two brief issues:  One is

24   the sentence that says, "what the Government will do if it

25   is satisfied with the level of cooperation," just instead of

Charge Conference                                    6455

1    the words, "level of cooperation," we would suggest some

2    alternative language because that's not really the language

3    that tracks the cooperation agreement at issue in this case.

4              THE COURT:  How about "the witness's cooperation"?

5              MS. PARLOVECCHIO:  That's fine with us, your

6    Honor.

7              THE COURT:  "Would be satisfied with the witness's

8    cooperation."

9              MS. PARLOVECCHIO:  And alternatively -- I think

10   that would suffice, your Honor, but we had also suggested

11   some language in our proposed charge that would say, If the

12   witness has provided substantial assistance to the

13   Government and testified, truthfully, completely, and fully,

14   it tracks that -- it actually tracks the cooperation

15   agreement.

16             THE COURT:  Well, you know, then we --

17             MR. BALAREZO:  We object, your Honor.

18             THE COURT:  Right.

19             We get into the notion of it being the Government

20   that determines the truthfulness of it, which is, of course,

21   the case.  But the bottom line is the Government is

22   satisfied or not.  So I am going to -- I think that gives

23   the jury everything they need to know about that.  I am

24   going to change the word I said, take out "level of" and

25   insert "witness's," but otherwise, I am going to leave it

Charge Conference                                    6456

1    the same.

2              MS. PARLOVECCHIO:  Okay.  Thank you, your Honor.

3              And then just finally in that section, your Honor,

4    makes reference to the 5K1 letter.  We do have a few

5    witnesses who have already been sentenced in this case, and

6    term "Rule 35" has introduced on direct and cross, and we

7    would just ask that there be a reference to Rule 35 in this

8    last paragraph.

9              THE COURT:  Well, you are saying add really a new

10   paragraph to the bottom?

11             MS. PARLOVECCHIO:  Yes.  And we have some

12   suggestions from our requested charge if that would assist

13   the Court.

14             THE COURT:  All right.  Have you given that to us

15   already?

16             MS. PARLOVECCHIO:  Yes.

17             THE COURT:  Okay.

18             MS. PARLOVECCHIO:  It is actually at the bottom of

19   Page 59 of the Government's Government requested charge.

20   And it begins, "Similarly, you may have heard testimony

21   about a Rule 35," and then explains what that is.  It's just

22   basically one sentence.

23             MR. BALAREZO:  Your Honor, can we just keep it

24   simple and just add Rule 35 to the 5k1?  I mean, it's

25   basically the same thing, presentence and postsentence.

Charge Conference                              6457

1              THE COURT:  It's really -- we can keep it simple

2     and inaccurate as a technical matter and you are probably

3     right, the jury would not know that it is technically

4     inaccurate.  But I think by adding that one paragraph that

5     the Government has offered, we are not making it unduly

6     lengthy and we have accurately stated the law.  So I am

7     going to add that paragraph at the bottom.  That is the

8     paragraph that starts at the bottom of Government Proposal

9     59 and continues over to the next page; just that paragraph,

10    not the last sentence of that.

11             MS. PARLOVECCHIO:  Yes.

12             MR. BALAREZO:  Your Honor, I do have one addition.

13    Page 16 on Discrepancies in Testimony --

14             THE COURT:  Hang on.  Hang on.

15             Before you get there, let me just make sure we

16    have closed the loop on this one.

17             MR. BALAREZO:  Sure, sure.

18             THE COURT:  Okay.  So that will go -- that

19    paragraph from 59 of the Government's proposal, will go at

20    the bottom of Page 21 to the end of Section I Sentencing

21    Cooperating Witnesses.

22             Okay.  And you wanted to go back, Mr. Balarezo?

23             MR. BALAREZO:  Yes, your Honor.

24             THE COURT:  No going back.

25             MR. BALAREZO:  No?

Charge Conference                              6458

1          THE COURT:  What do you have?

2          MR. BALAREZO:  Too late now, huh?

3          Page 16, Discrepancies of Testimony/Prior

4     Inconsistent Statement.

5          THE COURT:  Yes.

6          MR. BALAREZO:  I do believe that one or two

7     witnesses were impeached with prior statements under oath,

8     which should be admissible as substantive evidence and I

9     think there should be some mention of that somewhere in

10    here, rather than they were just impeached by inconsistent

11    statements or discrepancies in testimony.

12         THE COURT:  Say it again, I am not seeing your

13    point.  What is --

14         MR. BALAREZO:  Well, if there were -- they are

15    impeached either by the inconsistent statements from prior

16    proffer sessions, that was lot of the testimony.  But there

17    were some witnesses who were also impeached, I believe, with

18    the transcripts of their testimony at trial or there was

19    some other sworn statement also that was used.  And at least

20    my understanding of the rules is that when they're impeached

21    as a prior inconsistent statement under oath, that is

22    substantive evidence we can perhaps, for example, introduce

23    a page of the transcript where that --

24         THE COURT:  Well, I have several questions about

25    the point you just made.

1              First of all, what did you introduce, not what can

2      you introduce because whatever --

3              MR. BALAREZO:  Well, I recall at least -- and I'll

4      check which one introducing the transcripts -- well, the

5      entire transcript was in, but we impeached them with certain

6      parts of the transcript.  And what I would seek to introduce

7      and go back to the jury is the part that they were impeached

8      with, obviously, not the entire transcript.

9              MS. PARLOVECCHIO:  The transcript from this trial

10     or different proceedings?

11             MR. BALAREZO:  I believe there was one that was a

12     transcript from his prior --

13             THE COURT:  One, yes.

14             MR. BALAREZO:  -- from direct, for example.  And

15     then there was another statement that was made under oath.

16     I don't recall if it was an affidavit or --

17             THE COURT:  I, frankly, do not recall if you

18     introduced those into evidence.  I know you read them.

19             MR. BALAREZO:  Well, if the Court would allow me,

20     I would introduce them now.  I know the evidence is closed,

21     but I mean, we're -- or I believe you would.

22             THE COURT:  I would let you do it.  That is fine.

23             But in terms of what it means for this

24     instruction -- well, first of all, the other point we have

25     to realize is, as we have said throughout the trial, the

1    302's are not the witness's statements.

2            MR. BALAREZO:  Right.

3            THE COURT:  So that is not what we are talking

4    about impeaching them with, Some of them said I said that.

5    There is no impeachment.

6            MR. BALAREZO:  Right.

7            THE COURT:  Some of them said I didn't say that,

8    and then there's still no impeachment because it is not

9    their statement.

10           MR. BALAREZO:  Right.

11           THE COURT:  So that is not what this is applying

12   to.

13           This is testimony -- isn't the word "testimony"

14   big enough to pick up testimony in prior trials, assuming I

15   reopen the record like you have asked me to and admit those?

16           MR. PURPURA:  Your Honor, there are admissions.

17   One's Defense Exhibit 165 and 165B are transcripts which you

18   admitted with prior inconsistent statements.

19           THE COURT:  Okay.  But isn't the word -- the

20   discrepancy is any testimony big enough to pick that up?

21   That is testimony.

22           MS. PARLOVECCHIO:  And, your Honor, there's

23   actually in the second sentence of Subsection B, as in

24   "boy," you already have here, "You have also heard evidence

25   that a witness has made a statement on an earlier

Charge Conference                    6461

1    occasion..." which I think would encompass, you know, any

2    foreign testimony or statements on an earlier occasion.

3            THE COURT:  I think it is covered.

4            MR. BALAREZO:  I'm sorry.  I'm having problems

5    hearing you from -- you're facing --

6            THE COURT:  Well, you have got to talk slower.  It

7    is a speed thing at this point.

8            What she is saying is look at the second sentence

9    in that Subsection B.

10           MS. PARLOVECCHIO:  Where the Court says, "The

11   witness has made a statement on an earlier occasion that

12   counsel argues is inconsistent..." we would argue that the

13   phrase "statement on an earlier occasion" would encompass

14   any prior testimony or a prior source statement.

15           MR. BALAREZO:  That's fine, your Honor.  We don't

16   need --

17           THE COURT:  That's fine then.

18           Okay.  Anything else before Page 22?

19           Okay.  Now, as to the substantive instructions, I

20   am going to go through them one page at a time and I will

21   give you, you know, five, ten seconds to tell me if you have

22   got anything on that page.  You do not need to feel you have

23   to say, Yes, I do or No, I don't.  If you have a, Yes, I do,

24   I need to hear that.  But if you don't have anything, just

25   do not say anything and I will move on.

Charge Conference                                    6462

1          All right.  So anything on 22?

2          MS. PARLOVECCHIO:  Just briefly, your Honor.  We

3     have this issue with renumbering the indictment to

4     reflect --

5          THE COURT:  We sure do.  I am completely confused,

6     but we have to get it right.

7          MS. PARLOVECCHIO:  Okay.  So one suggestion we

8     had, your Honor, due to the fact that we have some

9     violations that were included in a bill of particulars

10    rather than the indictment itself is not sending the

11    indictment back to the jury on this occasion because the

12    instructions do track the indictment.  Also they'll have the

13    special verdict form which includes all of the dates, the

14    amounts of the charge violations and track some of the

15    language in the indictment as far as the grouping that were

16    included in the indictment.

17         And just for purposes of not completely confusing

18    the jury, the Government would suggest just letting them

19    have the jury charge and the special verdict form which will

20    give them everything they need to follow the evidence and

21    the charges.

22         THE COURT:  I think that is a lot easier than

23    trying to renumber the indictment and trying to get it to

24    correspond.  Okay.

25         MR. BALAREZO:  Unless the indictment's going to go

1    back with the caption of all the defendants on it.

2              THE COURT:  Yeah.  We are not going to have that

3    either.

4              MR. BALAREZO:  All right.

5              THE COURT:  Good try, though.

6              MR. BALAREZO:  Okay.

7              THE COURT:  Okay.

8              MS. PARLOVECCHIO:  So I would just suggest then

9    striking that last sentence of the second paragraph of

10   Subsection Part 2(i) or Part 2(1).

11             THE COURT:  Hang on a second.  Now you have lost

12   me.

13             MS. PARLOVECCHIO:  I'm sorry.

14             THE COURT:  We are on Page 22?

15             MS. PARLOVECCHIO:  Page 22, the second full

16   paragraph, the last sentence where it says, "I'm permitting

17   you to have the indictment..."

18             THE COURT:  Yes, correct.  Okay.

19             But we still keep in the summary in the next

20   paragraph?

21             MS. PARLOVECCHIO:  Yes.

22             THE COURT:  Okay.

23             Okay.  Anything else on 22?

24             MS. PARLOVECCHIO:  No.

25             THE COURT:  23?

Charge Conference                          6464

1          24?

2          25?

3          26?

4          27?

5          And then we have 28 where I have got a change over

6   the version you have.  This is based on the letter I

7   received from the defense last night which they asked for a

8   multiple conspiracy charge.  I really do not think I have to

9   give that charge.  I think the Government has put in

10  sufficient evidence where the single proof of the conspiracy

11  the way it has charged it.  Nevertheless, I appreciate that

12  there is some argument that the defense has that -- some

13  other conspiracy.

14          What I proposed to do is this:  I am going to add

15  three sentences as a paragraph below the first full

16  paragraph on Page 28, and that paragraph is essentially the

17  multiple conspiracy charge.  It is a lot shorter than the

18  defense requested, but I think it does as much as required

19  for this case.  It would provide as follows:  "Ultimately,

20  the Government must prove beyond a reasonable doubt that the

21  defendant was a member of the conspiracy charged.  If you

22  find that the defendant was not a member of the charged

23  conspiracy, you must find the defendant not guilty of that

24  count even if you find that he was a member of some other

25  conspiracy.  Proof that the defendant was a member of some

1   other conspiracy is not enough to convict."

2          I think that is the essence of what you were

3   looking for.

4          MR. PURPURA:  It is, your Honor.

5          THE COURT:  And I think that is a correct

6   statement of law and there is enough in the record to

7   justify it.

8          Do you need me to read it again?

9          MS. PARLOVECCHIO:  Yes, please, your Honor.

10         THE COURT:  Okay.  Again, this would go under the

11  first full paragraph on Page 28 as a separate paragraph.  It

12  would say:  "Ultimately, the Government must prove beyond a

13  reasonable doubt that the defendant was a member of the

14  conspiracy charged.  If you find that the defendant was not

15  a member of the charged conspiracy, you must find the

16  defendant not guilty of that count, even if you find that he

17  was a member of some other conspiracy.  Proof that the

18  defendant was a member of some other conspiracy is not

19  enough to convict."

20         I know you are not crazy about it, but I think it

21  is right.

22         MS. PARLOVECCHIO:  So, your Honor, I mean just for

23  the record we object to its inclusion as a general matter.

24  But to the extent the Court is going to include that

25  language, we would also include --

Charge Conference                           6466

1          THE COURT:  I am just interested in why you think

2     I should not include that language.  Is it your view that

3     once you show a *prima facia* case as to the charged

4     conspiracy, there cannot be a multiple conspiracy charge?

5          MS. PARLOVECCHIO:  I just don't think there's a

6     factual basis for a multiple conspiracy charge in this case.

7     And I don't think the defense has proffered one, and for the

8     reasons stated in our submission.

9          But in any event, should the Court include such an

10    instruction, which as I stated, I don't think is

11    ^ wanted ^ warranted here given the fact that we've shown

12    over the course of the trial throughout abundant evidence

13    that the defendant has been of the crux of the charged

14    conspiracy for a 25-year period.  Should the Court include

15    such an instruction, we would just request language from

16    *United States v. Payne* in the Second Circuit.

17          THE COURT:  Can you read the language?

18          MS. PARLOVECCHIO:  Yes.  My Post-It was at the

19    wrong place.

20          So the language we would propose is --

21          THE COURT:  Slowly.

22          MS. PARLOVECCHIO:  Yes.  And I can provide a copy

23    to the court reporter as well when we're finished here.  "In

24    addition, even if you find that multiple conspiracies

25    existed, you should convict the defendant if you find that

Charge Conference                    6467

1    one of the conspiracies was the one alleged in the

2    indictment and that the defendant was a member of it."

3              THE COURT:  That's fair.  That's fair.  And I

4    agree with you, the way I wrote it could mislead the jury

5    into thinking that if they find him a member of some other

6    conspiracy they have to acquit, even if they also find he

7    was a member of the charged conspiracy.

8              So we will add a sentence to that effect at the

9    end of that proposed paragraph.

10             Okay.  Anything else on 28?

11             Like me ask a practical question.  I have never

12   seen this done, but do we really have to put venue to the

13   jury?  Aren't the defendants prepared to stipulate on venue?

14             MR. BALAREZO:  Well, we didn't --

15             MR. PURPURA:  We didn't stipulate, but, obviously,

16   the Government proved venue.

17             THE COURT:  Right.  I mean, the cross-examination

18   was not on the venue point.

19             MR. PURPURA:  It's not at issue.

20             THE COURT:  Can I direct the jury to find venue or

21   does that violate his jury trial rights?

22             MS. PARLOVECCHIO:  I actually don't think you can

23   direct them, your Honor.

24             THE COURT:  It seems so silly.

25             MS. PARLOVECCHIO:  I know.

Charge Conference                                           6468

1              THE COURT:  If I were a juror I would be thinking,
2      Why are they doing this?
3              MS. PARLOVECCHIO:  Absolutely.
4              THE COURT:  Is there more to this that what
5      appears to be the case?
6              MS. PARLOVECCHIO:  Right.
7              THE COURT:  All right.  We will do it the
8      old-fashioned way and leave it in.
9              Okay.  Anything on 29?
10             30?
11             (Pause in proceedings.)
12             THE COURT:  All right.  I wanted to ask the
13     Government on Count 2, do we have to get into manufacturing?
14     I am not sure we have got manufacturing.  We have got
15     distributing.
16             MS. PARLOVECCHIO:  We did have evidence of
17     manufacturing, your Honor, in regards to methamphetamine.
18             THE COURT:  Oh, that is true.  Okay.  We will
19     leave it.  Okay.
20             MS. PARLOVECCHIO:  In regard to heroin as well.
21             THE COURT:  Anything on 30?
22             31?
23             32?
24             33?
25             34?

Charge Conference                                6469

1              35?

2              36?

3              37?

4              38?

5              39?

6              40?

7              MR. BALAREZO:  For the record, I'll object to

8     the --

9              THE COURT:  Yes.  The defendants always object,

10    but you know, the law is the law.  It is an available theory

11    to the prosecution.

12             MR. BALAREZO:  You heard the sigh.

13             THE COURT:  Yes.

14             All right.  41?

15             42?

16             MS. PARLOVECCHIO:  Just a very small thing on

17    Page 42, your Honor.  In the second sentence of the first

18    paragraph where it states, "This is a lengthy and

19    complicated instruction...," we would just request to strike

20    "and complicated" simply because, you know, we don't want to

21    put it in the minds of the jury that it's going to be

22    something that's difficult.  I think actually while the

23    elements are indeed lengthy, they're pretty easy concepts,

24    and we don't want to put in the minds of the jury that they

25    should think this is overcomplicated.

1          THE COURT:  Well, frankly, I think it is also

2   wrong, because I am not sure it is more complicated than

3   some of the other instructions.

4          MS. PARLOVECCHIO:  I agree.

5          THE COURT:  So yes, I will take out "and

6   complicated."

7          I should mention to you all just so you are not

8   surprised, my practice is when we get to this Part 2, the

9   substantive instruction, I display it on the overhead screen

10  as I am reading it so the jury can follow along.  I think it

11  kind of helps them focus on the words rather than just

12  hearing the words.

13         Okay.  Anything else on 42?

14         MR. BALAREZO:  Does the jury get a copy of the --

15         THE COURT:  They do.  They do.

16         MR. PURPURA:  Is it your practice not to tell them

17  before you speak or after, at the end?

18         THE COURT:  Well, I tell them they are going get a

19  copy.

20         MR. PURPURA:  All right.

21         THE COURT:  You know, I don't think they tune out

22  just because they know they are going to get it a copy.

23         And, frankly, I have to tell you, this jury, with

24  a couple of exceptions, they were really focused on the

25  case.  So I think they will focus on the instructions, too.

Charge Conference                             6471

1          Okay.  Is there anything on 43?

2          44?

3          MS. PARLOVECCHIO:  Your Honor, just for the

4   record, we have provided some -- there were discrepancies in

5   the numbering, and we provided some clarification last

6   night.

7          THE COURT:  Yes.  Those are not incorporated in

8   here yet.

9          MS. PARLOVECCHIO:  Okay.

10         THE COURT:  Let me ask you another question,

11  though.

12         MS. PARLOVECCHIO:  Sure.

13         THE COURT:  I wonder if we could take all of this

14  out -- probably not.  But my thinking is to take it all out,

15  the numbered charges and put it in the verdict sheet.

16         MS. PARLOVECCHIO:  It actually is in the verdict

17  sheet.

18         THE COURT:  So if it is there, can't I just refer

19  to it generally and tell them it is in the verdict sheet?

20  It is just -- you know, if they are going to lose focus on

21  anything, you give them a laundry list with this many items

22  in it, and, you know, by the time I get down to Violation 16

23  if I turn to turn to them and say, What was Violation 8, no

24  one i s going to know, right?

25         MS. PARLOVECCHIO:  I mean, my suggestion, just for

Charge Conference                    6472

1  clarity's sake, if they're cross-referencing from the

2  charges to the verdict sheet --

3          THE COURT:  Yes.

4          MS. PARLOVECCHIO:  -- is to keep it in both

5  places.  I think the verdict sheet lays it out very clearly.

6          Maybe your Honor could just say, I'm not going to

7  read to you every single one of these while I'm charging

8  you --

9          THE COURT:  Right.

10          MS. PARLOVECCHIO:  -- but it's in here and you

11  also have it in the verdict form.

12          THE COURT:  I explain it on the screen so they

13  will be looking at it.  And I will say to them, Rather than

14  read to you ^ allowed ^ aloud each one of those items, each

15  one of them is going to be here in the charge as you are

16  going to see it, and it also is in the verdict form so you

17  can decide as to each one.  Okay?  That will at least save

18  some vocal strain.

19          MS. PARLOVECCHIO:  Yes.

20          THE COURT:  Okay.  Anything on 44?

21          45?

22          46?

23          MS. PARLOVECCHIO:  Oh, on 46 --

24          THE COURT:  Yes.

25          MS. PARLOVECCHIO:  -- never mind, your Honor.

Charge Conference                          6473

```
 1            THE COURT:  Okay.  Now, on 47 there's a

 2    fill-in-the-blank.  You can see about two-thirds down the

 3    page.

 4            MS. PARLOVECCHIO:  Yes.  We provided the names of

 5    the intended victims of the murder conspiracies to the Court

 6    last night.

 7            THE COURT:  Right.  Now, that is another list that

 8    I think is likely to get lost in the jury instructions.  If

 9    that is not in the verdict form, that might be a better

10    place for that list.

11            MS. PARLOVECCHIO:  It's not in the verdict form

12    currently, your Honor.

13            They actually don't have to render a verdict on

14    each individual.  As long as they find one --

15            THE COURT:  Right.  I mean, well, we would explain

16    that in the verdict form.  The list when I read it down of

17    all these names and categories, it is like gone as soon as I

18    reads it.

19            MS. PARLOVECCHIO:  I mean, I would just suggest to

20    your Honor that you could do the same thing there.  You can

21    say, There's a list of names here.  I'm not going to read

22    them all to you, but they're here for your reference.

23            THE COURT:  Yeah.  But they are because they won't

24    remember.  They're going to have to go back to this

25    instruction --
```

Charge Conference                           6474

1          MS. PARLOVECCHIO:  Correct.

2          THE COURT:  -- to match it up and make a decision

3    as to at least one.

4          MS. PARLOVECCHIO:  Correct.

5          THE COURT:  Okay.  And their decision as to that

6    one has to be unanimous.

7          MS. PARLOVECCHIO:  Right.

8          THE COURT:  We tell them that.

9          MS. PARLOVECCHIO:  Yes.  Actually, it's --

10          THE COURT:  All right.  I cannot think of a better

11    way to do it.

12          (Continued on the next page.)

13

14

15

16

17

18

19

20

21

22

23

24

25

```
                       Charge Conference                    6475
```

1           (In open court; jury not present.)

2           THE COURT:  All right.  Anything on 48?

3           MR. BALAREZO:  Your Honor, just one thing about that

4   list of the alleged victims.  You got it late last night.  We

5   were actually -- I don't think we focused on it.  We will

6   review it as soon as possible just to make sure that we don't

7   have any objections to names because I don't --

8           THE COURT:  Okay.  The charging conference will stay

9   open for the limited purpose of giving you a chance to weigh

10  in on the list.

11          MR. BALAREZO:  Okay.

12          MS. PARLOVECCHIO:  Just to clarify, your Honor, on

13  the murder conspiracies violation, I misspoke.  There actually

14  is not a unanimity requirement.  Okay.  Sorry.

15          THE COURT:  There is, right?

16          MS. PARLOVECCHIO:  There is.

17          THE COURT:  Right.

18          MS. PARLOVECCHIO:  I've gotten turned around myself.

19          So there is a unanimity requirement.  It just has

20  not been referenced in this discussion.

21          THE COURT:  Oh.  Well, it's got to be.  I mean,

22  isn't this the place where we should tell them they have to

23  find at least one, and if they find one, it has to be

24  unanimous?

25          MS. PARLOVECCHIO:  Yes.

Charge Conference                                           6476

1         THE COURT:  And this instruction doesn't do that?
2    Do we do it someplace else?
3         MS. PARLOVECCHIO:  No.  I think we say we -- the
4    charge says they have to be unanimous as to the violations --
5    the three violations.  Three or more, rather.  I don't think
6    it specifically references the murder conspiracy violation.
7         THE COURT:  Okay.  Well, we've got to add that.
8         MS. PARLOVECCHIO:  Yes.
9         THE COURT:  That's what got me thinking that it was
10   more appropriate for the verdict form because it almost calls
11   for one of those shorthand instructions on the verdict form
12   that says, you know, "Consider these.  If you find one
13   unanimously, you may stop," which is all they would have to
14   do.
15        MS. PARLOVECCHIO:  Right.
16        MR. BALAREZO:  Your Honor, with respect to the
17   unanimity issue, when I read it, when I read the proposed
18   instructions, I think there were several places where I would
19   have added "unanimously," or something like that, but perhaps
20   if we can just give them one instruction that you have to
21   consider each count separately, each one has to be -- I mean,
22   make it very clear that --
23        THE COURT:  That's in here.  That's already in here
24   in a couple places.  We are talking about something different
25   now.  We are talking about these 27 charged violations, and

Charge Conference                                  6477

1    they have to find only one of those, but they have to find it

2    unanimously, and that we haven't told them, so the place to do

3    it is here, and I will just find some language to put it in

4    there.

5              MS. PARLOVECCHIO:  If the Court would allow us to,

6    we could submit some suggested language at the end of the

7    charging conference today.

8              THE COURT:  I'm happy to have it.

9              MR. BALAREZO:  Your Honor, I apologize, we are

10   having -- maybe we should move because we are having problems

11   hearing --

12             THE COURT:  The problems are hearing

13   Ms. Parlovecchio?

14             MR. BALAREZO:  Yes.  A, because she's talking that

15   way (indicating) --

16             MR. PURPURA:  -- and B, because we have an

17   interpreter sitting next to us.

18             THE COURT:  What can we do to help you?

19             MR. BALAREZO:  Perhaps we will move over there?

20             MS. PARLOVECCHIO:  At the same table, perhaps?

21             MR. BALAREZO:  We'll do that.

22             THE COURT:  But we are not going to start all over

23   again.

24             MR. BALAREZO:  Just for the obvious, your Honor.

25             THE COURT:  Someone take a picture.  No, I'm

Charge Conference                                    6478

1    kidding, of course.  No pictures.

2            Anything else on 48?

3            MR. PURPURA:  Your Honor, just hold on one second.

4    I apologize.

5            THE COURT:  Yes.

6            (Pause.)

7            MR. PURPURA:  We are fine.  Thank you.

8            THE COURT:  Okay.

9            Anything on 49?  Fifty?  Fifty-one?  Fifty-two?

10           MS. PARLOVECCHIO:  Oh, your Honor, I'm sorry, we

11   just noticed a small typo, yes.  Okay.  So under Count Nine,

12   use of firearms, the second sentence --

13           THE COURT:  On 51?

14           MS. PARLOVECCHIO:  On 51.  The second sentence in

15   that paragraph starts, "in reads" --

16           THE COURT:  Thank you.  Got it.

17           Anything on 52?  Fifty-three?  Fifty-four?

18           MS. PARLOVECCHIO:  Your Honor, just with regard to

19   the aiding and abetting instruction for the firearms --

20           THE COURT:  Yes.

21           MS. PARLOVECCHIO:  -- we have some additional

22   language from *United States vs. Rosemond*.  It's at 134 -- I'm

23   sorry.  It's 572 U.S. 65, and that's from 2014.

24           THE COURT:  Can you read it?

25           MS. PARLOVECCHIO:  It actually -- I believe pursuant

Charge Conference                                    6479

1    to this case, it requires the aiding and abetting instruction

2    that we had in our proposed charge.  It actually adds an extra

3    requirement for aiding and abetting, an extra requirement

4    above and beyond the typical aiding and abetting instruction.

5    It requires that the defendant had prior knowledge of the guns

6    involvement in the drug trafficking crimes.

7                THE COURT:  It's an additional element imposed by

8    that case?

9                MS. PARLOVECCHIO:  Yes.

10               THE COURT:  Okay.  And where would you insert that?

11               MS. PARLOVECCHIO:  I think it would be --

12               THE COURT:  I guess we would have to say now there's

13   a new element; is that right?  Or is this something within an

14   existing element?

15               MS. PARLOVECCHIO:  It's just an extra requirement.

16   We actually had this in our proposed instruction from

17   *United States vs. Rivera*.

18               THE COURT:  Yes.  Where would it go?

19               MS. PARLOVECCHIO:  It was from -- where did we put

20   it?  Let me see.  So after the -- I think you had a reference

21   back to the -- you say something like, I've already explained

22   to you aiding and abetting liability, and we would suggest

23   that after that we insert the following language -- which,

24   again, we will provide to the court reporter -- and it's at

25   the bottom of page 44 of our request to charge.  I will read

Charge Conference                                    6480

1   the first sentence, but it actually is a bit of a lengthy

2   instruction.

3          THE COURT:  I would like to hear the whole thing, if

4   you don't mind.

5          MS. PARLOVECCHIO:  Sure.  I will take it off my

6   lapel so I can be heard very well.

7          Okay.  "To find the defendant guilty an as aider and

8   abettor on this count, however, it is not enough to simply

9   find beyond a reasonable doubt that the defendant knew a

10  firearm would be used, carried, or possessed during the

11  commission of the underlying crime of violence or drug

12  trafficking crime; rather there are two additional

13  requirements that apply to aiding and abetting the use,

14  carrying, or possession of a firearm.  In order to find the

15  defendant guilty of aiding and abetting the use or carrying of

16  a firearm during and in relation to or possession of a firearm

17  in furtherance of a crime of violence or drug trafficking

18  crime, you must find that the defendant, one, took an

19  affirmative act in furtherance of that offense; two, with the

20  intent of facilitating the offense's commission."

21         THE COURT:  Well, the defense certainly isn't going

22  to object to that.

23         MR. PURPURA:  There's no objection, obviously.

24         THE COURT:  Anything else, or can we just add that

25  language?

Charge Conference                    6481

1          MS. PARLOVECCHIO:  I mean, it's actually quite --

2    sorry, just looking back at this again, it's quite a lengthy

3    charge and a request to charge.  It goes on for three more

4    pages, which we can provide to defense counsel, have them look

5    over it, and provide to the Court as well.

6          THE COURT:  I would really like to resolve it now as

7    to what we are going to do.

8          MS. PARLOVECCHIO:  Sure.

9          THE COURT:  Do you need just the paragraph you read,

10   or do you need all three pages?

11         MS. PARLOVECCHIO:  Would the Court accept some

12   additional language after the court session ends today?

13         THE COURT:  Yes.  I mean, I'm not going to say no to

14   that.  It's not my first choice, but it's not unreasonable

15   given the complexity of this charge, but get it to us soon, as

16   soon as you go back, and we'll look at it; and run it by the

17   defense first and see if you can get agreement on it.

18         MS. PARLOVECCHIO:  Yes, your Honor.

19         THE COURT:  All right.  Anything else on 54?

20   Fifty-five?  Fifty-six?  Fifty seven?  Fifty-eight?

21         And then we've only got two concluding pages at the

22   end.  I want to note that I've changed -- this here draft has

23   us identifying jurors by name, and of course we can't do that,

24   so we are going to identify them by -- referencing their juror

25   number, not their name.  That's in two places in the second

Charge Conference                                    6482

1   full paragraph on page 59 and, again, in the penultimate

2   paragraph on page 60.

3              MR. BALAREZO:  Your Honor, if we could have just one

4   second?

5              THE COURT:  Sure.

6              (Pause.)

7              MR. PURPURA:  Your Honor, on page 60, middle

8   paragraph, just before "Reaching a Verdict" --

9              THE COURT:  Yes.

10             MR. PURPURA:  -- it says, "Either way, your verdict

11  must be unanimous."

12             THE COURT:  Right.

13             MR. PURPURA:  "All of you must reach the same

14  conclusion as to each charge."  The CCE as well -- it should

15  say "charge and violations."

16             THE COURT:  So do you want to say, "as to each

17  charge and at least one violation"?

18             MR. PURPURA:  Well, it has to be three -- for the --

19  that would be confusing, because the CCE requires --

20             THE COURT:  Yes.

21             MR. PURPURA:  -- unanimity of the three, which is --

22  I think "violations" alone would be sufficient.

23             MS. PARLOVECCHIO:  The only issue we would have with

24  just "violations" generally is that that -- if there are some

25  violations where folks are in disagreement, obviously they

Charge Conference                                          6483

1    can't find proven on those violations, but I think maybe if we

2    just include the language "three or more violations," it would

3    just be clearer and track the language --

4           THE COURT:  So we can say, "as to each charge and as

5    to the CCC charge, three or more violations."

6           MR. PURPURA:  That's fair, yes.

7           THE COURT:  Okay?

8           MR. PURPURA:  Yes.

9           MS. PARLOVECCHIO:  That's fine with us.

10          THE COURT:  Okay.

11          Then any comments as to the verdict sheet?

12          MR. BALAREZO:  Your Honor, just as an initial

13   matter, we object to the -- with respect to Count One, we

14   object to the headings above each violation.  For example, on

15   page 1 where it says, "international cocaine distribution with

16   The Norte del Valle Cartel," and subsequent headings of the --

17   above particular counts for violations, we don't believe that

18   the verdict form should be the place where, in effect, the

19   Government is pointing out to the jury what evidence goes with

20   what.  That's what's closing is for, and they should just list

21   the violations and leave it at that.

22          MS. PARLOVECCHIO:  Your Honor, this tracks our

23   indictment, these headings.  If the Court chose to send the

24   indictment back with the jury, these headings would track

25   what's already in the indictment, so there's nothing here --

Charge Conference                              6484

1    there's no, you know, additional help to the jury.  It's just

2    helping them track what is already in the charging document.

3            MR. BALAREZO:  I understand that the indictment is

4    not going back, so --

5            THE COURT:  Right.  But there's convenience reasons

6    for not sending the indictment back, but but for those reasons

7    it would be going back, and if it did, you would have exactly

8    this.  So you're saying the fact that there are unrelated

9    reasons for not sending the indictment back should obviate the

10   need for titles in the verdict form?

11           MR. BALAREZO:  Not that eloquently, your Honor.

12           THE COURT:  It's not too eloquent to me.

13           MR. BALAREZO:  It just seems that the headings that

14   are -- that are --

15           THE COURT:  Would you rather say "alleged"?

16           MR. BALAREZO:  I would rather not have it at all.

17   It just seems that these headings sort of lend credence to the

18   Government's evidence.  You are saying these counts belong to

19   this cartel.  I mean, I think the jury needs to find, or at

20   least decide, that there was a North Valley Cartel that

21   conspired with Mr. Guzman, et cetera, and you're basically

22   saying this is -- this is what it is.

23           THE COURT:  I think it's a complex case and we need

24   to give the jury some guidance as to what they should be

25   focussing on.  I think we can change the subheadings to say,

Charge Conference                                    6485

1    for example, "charge," colon, "international cocaine

2    distribution with The Norte del Valle Cartel," so that it

3    doesn't look like it's a fait accompli, but I do think they

4    have to know that's what they are looking to determine whether

5    he's been proven guilty beyond a reasonable doubt as to that.

6    So I'm not going to delete all the titles; I think that would

7    just create too much confusion.

8              MR. BALAREZO:  Your Honor, we then -- given that, we

9    would take the "alleged" appellation somewhere.

10             MS. PARLOVECCHIO:  We would object to "alleged."

11             THE COURT:  Really?

12             MR. PURPURA:  That's what the indictment is.  The

13   indictment is an allegation.  That's what you would get if the

14   indictment went back.

15             MS. PARLOVECCHIO:  I mean, if you are to add

16   language, I think Your Honor's proposal, "charged," would be

17   preferable.

18             THE COURT:  I'm going to say "charge," C-H-A-R-G-E,

19   colon, before each one of these subheadings so they will not

20   take it as something proven.

21             MR. BALAREZO:  We object, but --

22             THE COURT:  Okay.  I think "charge" is a fair

23   compromise, so I'm going to overrule your objection.

24             Anything else on the verdict form?

25             (Pause.)

Charge Conference                                          6486

1          THE COURT:  Okay.  We've got a couple of open items

2     that we've discussed in the conference, let's close that up

3     this afternoon, and we will see you for closings tomorrow

4     morning at 9:30.

5          Anything else we need to address?

6          (Pause.)

7          THE COURT:  Apparently, there may be.

8          Oh, yes, the Government's motion in limine.

9          MS. PARLOVECCHIO:  Yes, your Honor.

10         MR. PURPURA:  Did you want the defense to address

11    that, your Honor?  If so, Mr. Townsend, on behalf of

12    Mr. Lichtman, is going to address that motion.

13         THE COURT:  Thank you, Mr. Townsend.

14         MR. TOWNSEND:  Judge, the prosecutors' motion in

15    limine has two points that they wanted to draw; first, that

16    the defense should be precluded from doing something that

17    there's already a motion in limine saying that they can't do,

18    so obviously we have no intention of doing it, which is the

19    selective prosecution argument.  It's my understanding that

20    Mr. Lichtman is not going to make a selective prosecution

21    argument to the jury and, therefore, I don't think any ruling

22    needs to be made on that.  It's already been done.

23         THE COURT:  I think there's a question about what

24    constitutes a selective prosecution argument.  Let me tell you

25    how I break it down.  I think we may be on the same page, but

Charge Conference                                    6487

1    I want to make sure.

2          The defendant is free to argue or to attribute

3    culpability for the charged acts to Mayo Zambade.  He's free

4    to do that, okay?  What he can't do is attack the Government's

5    motive in bringing the prosecution.  That, to me, would be

6    saying you've selectively prosecuted this.  You want to point

7    to another defendant, fine.  But you can't say, and the reason

8    that's happening is because they are protecting him with the

9    Mexican government, because there is just no evidence on that.

10         MR. TOWNSEND:  I think I agree with that, and that

11   kind of plays into the second point also, which goes to the

12   United States Government shielding or protecting the Mexican

13   government.  It's my understanding that the -- there's not

14   going to be any direct argument that the

15   United States Government is doing this, but rather that

16   Mr. Lichtman, more or less, intends to lay out the facts as

17   they haven been elicited at trial through the testimony that's

18   been deemed probative and relevant enough to be heard by the

19   jury allowing the jury to draw whatever conclusions they are

20   going to get.

21         So he's going to say, you know, you heard this and

22   this and this.  Not necessarily taking that step to argue,

23   then, that, you know, they are doing this or they are doing

24   that, but allowing the jury to make whatever inference the

25   jury is going to make from it.

Charge Conference                              6488

1           THE COURT:  Are you able to tell me what "this and

2    this and this" is?

3           MR. TOWNSEND:  I wish I could, Judge.  As far as I

4    know, it is still a work in Mr. Lichtman's mind, and there's a

5    very, very rough draft that has been in circulation among us.

6    I could not tell you exactly what "this and this and this" are

7    going to be, except that, as your Honor is aware, part of the

8    defense in this case has been kind of circulating around with

9    Mayo Zambade and his potential role as somebody who is

10   obviously part of this organization and, in our minds, really

11   a culpable party.  It's not to say that we are going to argue

12   that there's a selective prosecution and that, you know, Mayo

13   Zambade has been allowed to do whatever he wants to do because

14   he's influencing the Government to only go after Mr. Guzman,

15   but I think that it's okay for Mr. Lichtman to go through the

16   testimony that's been elicited about the fact that Mayo

17   Zambade has never been arrested, the fact that Mayo Zambade

18   was at least involved in the original prison escape, and

19   certain other things that have been brought out regarding what

20   Mayo Zambade has done without saying that this is, you know,

21   because the United States Government has been -- or the

22   Mexican government or any government has been, you know,

23   coerced or in some way interfered with in order to go after

24   Mr. Guzman instead of Mr. Zambade.

25           THE COURT:  Well, yes and no.

Charge Conference                                          6489

1      First of all, I can't really prohibit the defendant

2   from referencing facts that are in the record.  Mr. Townsend

3   is telling me that Mr. Lichtman is not going to ask the jury

4   to draw the inference from those facts -- or from that

5   evidence that, in fact, the Mexican government in conjunction

6   with the United States Government, or by itself, is seeking to

7   tag Mr. Guzman with this in order to protect Mr. Zambade.

8   That's what I hear you saying; he's not going to argue that.

9           MR. TOWNSEND:  That's my understanding.  That's my

10  understanding.  I can't obviously speak --

11          THE COURT:  Well, that's my ruling.

12          MR. TOWNSEND:  And I will certainly communicate

13  that.

14          THE COURT:  But I have to tell you, it raises the

15  question -- it raises two questions:  One is if he's not going

16  to be at least implicitly asking the jury to draw that

17  inference, then why is he eluding to those facts?  And then it

18  raises the more fundamental question as to, why did I let

19  those facts in?  But they're in, and I think the compromise

20  that Mr. Townsend suggested is probably the best we can do.

21          MS. PARLOVECCHIO:  May I be heard, your Honor?

22          I'm sure your Honor understands why the Government

23  filed this motion.  I think we objected maybe three, possibly

24  four times during the defense's opening statements.  By filing

25  this motion, we are hoping to avoid that this time around by

1  precluding these arguments.  Now, certainly, I understand

2  these facts came into evidence during trial.  Even without

3  Mr. Lichtman explicitly asking the jury to draw those

4  conclusions, I submit he could pose rhetorical questions and

5  by the tone of his voice ostensibly make -- ask them to draw

6  those conclusions themselves without explicitly saying it.

7  So, you know, the Court is going to give the jury an

8  instruction saying, you know, you are not to speculate about

9  people who are not sitting at the defense table who are not on

10 trial here.  So really the only purpose for arguing those

11 particular facts is to ostensibly make a selective prosecution

12 argument of the type that we have outlined in our brief.

13         THE COURT:  No, no.  Some of those facts, because we

14 still don't know what "this, this, and this" is, but some of

15 them can simply go to pointing the finger at Mr. Zambade as a

16 way of exonerating the defendant, which I have said they can

17 do and they should be able to do.

18         MS. PARLOVECCHIO:  Of course.

19         MR. PURPURA:  Judge, hopefully -- I will go over it

20 again with Mr. Lichtman.  Clearly, it has been our theory, at

21 least, that it's Mayo Zambade and what Mayo Zambade has done.

22 If Mayo Zambade has bribed the Mexican government, that's to

23 benefit him and his organization.  It has -- it's not that the

24 Mexican government on its own sua sponte is protecting Mayo

25 Zambade and/or the United States Government is affiliated

Charge Conference                                    6491

1  whatsoever.  It's Mayo Zambade who has, from the very

2  beginning, orchestrated this, and that's why we are here

3  today.

4              THE COURT:  To protect himself.

5              MR. PURPURA:  That's correct.

6              THE COURT:  See the distinction?  To protect

7  himself.

8              MS. PARLOVECCHIO:  Right, there is a distinction --

9              MR. PURPURA:  And to continue his drug trafficking

10 organization --

11             THE COURT:  Right.

12             MR. PURPURA:  -- which is ongoing today.

13             MS. PARLOVECCHIO:  Right.  But I think the argument

14 that was made at openings and has been made at sidebar

15 numerous times is that Mayo Zambade bribed the Mexican

16 government to put a target on the defendant's back, which

17 is --

18             THE COURT:  That's off limits -- let me be very

19 clear about that -- because there is zero evidence suggesting

20 that whatever bribes Zambade paid were for the purpose of

21 incriminating this defendant.  Zero.

22             MR. TOWNSEND:  Yes.

23             THE COURT:  So don't do that.

24             MR. TOWNSEND:  Understood.

25             THE COURT:  That's why I am emphasizing to you,

Charge Conference                                          6492

1   Mr. Purpura, if he's doing it to say he bribed the Mexican

2   government to protect himself and his organization, that's one

3   thing, and he's a -- I guess you could try to draw the

4   inference, he's a much bigger drug dealer and therefore these

5   things you have been hearing about, they are really attributed

6   to him.  That's one thing.  You want to do that, that's okay.

7              But what you can't do is say, you know Mayo Zambade

8   is such a corrupt guy that he paid the Colombian government to

9   pin this on the defendant, because there's nothing suggesting

10  that.

11             MR. PURPURA:  Not that.  Not that.  But what the --

12  evidence has been generated, at least we believe it's been

13  generated in at least cross-examination in this case,

14  reasonable inference, is that Mayo Zambade has benefited --

15  he's benefited from the notoriety that Joaquin Guzman has

16  gained since post '93.  He's benefited that the Mexican

17  authorities are chasing what we consider to be the rabbit in

18  this particular case.  He's benefited from the 2015 escape, as

19  we heard the analyst say, that he is now larger than life; his

20  reputation is enhanced by that.  So he's benefitted by all

21  these things, we can say that, because that's what the

22  evidence has generated.

23             THE COURT:  I think that's okay.

24             MR. PURPURA:  Fair enough.

25             THE COURT:  I mean, I don't know if you disagree

1    with that, Ms. Parlovecchio, but I think that's okay as long

2    as it doesn't take that next step.  It's one thing to say:

3    Circumstances have pointed the finger at this defendant,

4    including the circumstance of the Zambade, very big drug

5    organization.  The circumstance.

6            It's quite another thing to say:  This is a

7    conspiracy between Zambade, the Mexican government, and maybe

8    the United States Government to shift blame onto the

9    defendant.

10           Circumstance, I'm inclined to let them have.  Act of

11   blame shifting, that would be selective prosecution, and I

12   won't let them have it.  I think that's the best we can do.

13           MS. PARLOVECCHIO:  I think that's fine, your Honor.

14           THE COURT:  Okay.  So we do have agreement.

15           Just let Mr. Lichtman see this transcript or give

16   him a good summary, because if he violates it, I'm going to

17   have to give a very strict instruction to the jury about what

18   is not evidence in this case, which may have a circumstantial

19   impact beyond the particular point he's trying to make anyway.

20   Okay?

21           MR. PURPURA:  Will do.

22           THE COURT:  Anything else we need to cover?

23           MS. PARLOVECCHIO:  Nothing further from the

24   Government, your Honor.

25           THE COURT:  Thank you all very much.

Charge Conference                                        6494

1          MS. PARLOVECCHIO:   Thank you.

2          MR. BALAREZO:   Thank you.

3

4      (Matter adjourned to January 30, 2019 at 9:30 a.m.)

5

6                            ooo0ooo

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

6495

1                              <u>INDEX</u>

2

3

4    <u>WITNESS:</u>                                    <u>PAGE:</u>

5    PAUL ROBERTS

6            DIRECT EXAMINATION

7            BY MR. LICHTMAN.........................  6416

8            EXAMINATION BY

9            MR. LICHTMAN............................  6427

10           CROSS-EXAMINATION

11           BY MR. FELS.............................  6429

12           REDIRECT EXAMINATION

13           BY MR. LICHTMAN:........................  6436

14           RECROSS-EXAMINATION

15           BY MR. FELS.............................  6440

16           REDIRECT EXAMINATION

17           BY MR. LICHTMAN.........................  6441

18

19                           * * * * *

20

21

22

23

24

25

6496

## <u>INDEX OF EXHIBITS</u>

<u>FOR THE GOVERNMENT:</u>                                    <u>PAGE:</u>

<u>FOR THE DEFENSE</u>:

 Defendant's Exhibit 357 was marked in evidence as

 of this date....................................... 6443

* * * * *