6932

1   UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF NEW YORK
2   --------------------------------x
                                      09 CR 466(BMC)
3   UNITED STATES OF AMERICA
                                      United States Courthouse
4        versus                       Brooklyn, New York

5   JOAQUÍN ARCHIVALDO GUZMÁN LOERA,
                                      February 4, 2019
6             Defendant.              9:30 a. m.
    --------------------------------x
7
              TRANSCRIPT OF CRIMINAL CAUSE FOR JURY TRIAL
8              BEFORE THE HONORABLE BRIAN M. COGAN
                  UNITED STATES DISTRICT JUDGE
9

10                           APPEARANCES

11

12  For the Government:   UNITED STATES ATTORNEY'S OFFICE
                          Eastern District of New York
13                        271 Cadman Plaza East
                          Brooklyn, New York 11201
14                        BY:  GINA M. PARLOVECCHIO, AUSA
                          ANDREA GOLDBARG, AUSA
15                        MICHAEL ROBOTTI, AUSA

16                        UNITED STATES ATTORNEY'S OFFICE
                          Southern District of Florida
17                        99 NE 4th Street
                          Miami, Florida 33132
18                        BY:  ADAM S. FELS, AUSA

19                        DEPARTMENT OF JUSTICE
                          Criminal Division
20                        Narcotic and Dangerous Drug Section
                          145 N. Street N.E. Suite 300
21                        Washington, D.C. 20530
                          BY:  ANTHONY NARDOZZI, ESQ.
22                              AMANDA LISKAMM, ESQ.

23  For the Defendant:    BALAREZO LAW
                          400 Seventh Street, NW
24                        Washington, D.C. 20004
                          BY:  A. EDUARDO BALAREZO, ESQ.
25

                        Lisa Schmid, CCR, RMR
                        Official Court Reporter

1                    (CONTINUED APPEARANCES)

2     For the Defendant:

3     LAW OFFICES OF JEFFREY LICHTMAN
      11 East 44th Street, Suite 501
4     New York, New York 10017
      BY:  JEFFREY H. LICHTMAN, ESQ.
5     PAUL R. TOWNSEND, ESQ.

6     LAW OFFICE OF PURPURA & PURPURA
      8 E. Mulberry Street
7     Baltimore, Maryland 21202
      BY:  WILLIAM B. PURPURA, ESQ.

8
      LAW OFFICES OF MICHAEL LAMBERT, ESQ.
9     369 Lexington Avenue, PMB #229
      New York, New York 10017
10    BY:  MARIEL COLON MIRO, ESQ.

11

12

13

14

15

16

17

18

19

20

21    Reported by:

22    LISA SCHMID, CCR, RMR
      OFFICIAL COURT REPORTER
23    225 Cadman Plaza East, Room N377
      Brooklyn, New York 11201

24
      Proceedings recorded by mechanical stenography.  Transcript
25    produced by computer-aided transcription.

6934

                              PROCEEDINGS

 1          (In open court, outside the presence of the jury.)

 2            THE CLERK:  All rise.

 3            All rise.

 4            THE COURT:  Good morning.  Have a seat, please.

 5            Someone wanted to talk to me about something?

 6            MR. LICHTMAN:  Yes, Judge, if we can approach?

 7            THE COURT:  Okay.  We can approach.

 8            (Sealed Sidebar.)

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SEALED SIDEBAR

1          (Sealed Sidebar.)

2          MR. LICHTMAN:



SEALED SIDEBAR



MS. PARLOVECCHIO:

Lisa Schmid, CCR, RMR
Official Court Reporter

SEALED SIDEBAR

1

2

3

4

5

6

7

8

9        MR. LICHTMAN:

10

11

12

13

14        THE COURT:

15        MR. LICHTMAN:

16        THE COURT:

17        MR. LICHTMAN:

18

19        MS. PARLOVECCHIO:

20        THE COURT:

21        MR. LICHTMAN:

22

23

24

25

SEALED SIDEBAR



SEALED SIDEBAR



MS. PARLOVECCHIO:

MR. LICHTMAN:

SEALED SIDEBAR



1    THE COURT:

2

3

4    MR. LICHTMAN:

5    THE COURT:

6    MR. LICHTMAN:

7    THE COURT:

8

9    MR. LICHTMAN:

10

11

12    THE COURT:

13

14

15    MS. PARLOVECCHIO:

16    THE COURT:

17

18    MS. PARLOVECCHIO:

19

20

21

22

23

24

25

Lisa Schmid, CCR, RMR
Official Court Reporter

6941

SEALED SIDEBAR

1

2          MR. LICHTMAN:

3

4

5

6

7          THE COURT:

8          MR. LICHTMAN:

9

10         THE COURT:

11         MR. LICHTMAN:

12         THE COURT:

13

14         MS. PARLOVECCHIO:

15

16

17

18         MR. LICHTMAN:

19

20

21

22         THE COURT:

23

24         MR. LICHTMAN:

25

Lisa Schmid, CCR, RMR
Official Court Reporter

6942

SEALED SIDEBAR

```
 1        THE COURT:
 2
 3
 4
 5
 6        MS. PARLOVECCHIO:
 7
 8
 9        THE COURT:
10        MS. PARLOVECCHIO:
11
12
13
14
15        MR. LICHTMAN:
16
17
18
19        THE COURT:
20        MR. LICHTMAN:
21        THE COURT:
22
23        MR. LICHTMAN:
24
25        THE COURT:
```

SEALED SIDEBAR



1

2

3

4          MR. LICHTMAN:

5          THE COURT:

6

7          (Continued on the next page.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Lisa Schmid, CCR, RMR
Official Court Reporter

PROCEEDINGS

1            (In open court.)

2            THE COURT:  The discussion at sidebar just now is

3    going to be sealed from the public record, based on my finding

4    that sealing is necessary under these circumstances to protect

5    the integrity of the deliberations of the jury.

6            I can't be more specific than that without causing the

7    harm that I'm seeking to prevent by sealing.  So I will note

8    that that is my public finding as to why this sidebar is being

9    sealed.

10           All right.  We're going to recess for five minutes.

11           (Recess.)

12           THE CLERK:  All rise.

13           THE COURT:  Be seated, please.

14           All right.  Having reviewed again the case law on the

15   issue discussed at sidebar, I'm going to proceed to what the

16   Second Circuit refers to as the step two of the inquiry, but I

17   am going to address the jurors anyone initially as a group *in

18   camera*.

19           It seems to me that in order to address individual

20   jurors, in order to inquire to that, there has to be some

21   indication that one or more of them were, in fact, exposed to

22   the questionable material, and we have nothing to suggest that

23   in this case at all.

24           In fact, we know that I've been instructing this jury

25   every single day to stay away from all media coverage of the

Lisa Schmid, CCR, RMR
Official Court Reporter

PROCEEDINGS

1    case.  We know that at least one juror, when her son slipped up

2    and said something to her about the case, she came and reported

3    to it Ms. Clarke immediately.

4            And we know that when we had a similar, although

5    admittedly not as severe issue involving some press coverage of

6    Mr. Lichtman, I did proceeded in the way I'm going to proceed

7    now, in front of the jury, and there was no question that the

8    jury had not seen the offensive or suspect article.

9            It seems to me that I have a very good rapport with

10   this jury.  I think I know how to talk to a jury.  Doing it *in*

11   *camera*, where I can look each one of them in the face and get

12   an answer from them seems to me a very sure way of taking down

13   any inhibitions they might have about disclosing something they

14   shouldn't have done.

15           I'm going to make it clear to them they're not in any

16   trouble.  I just need to know this has happened, and I think

17   the parties can count on me -- and they'll see the transcript

18   to do a thorough examination and make sure that this is not an

19   issue.

20           If I discover as to one or more jurors that it is an

21   issue, then I will inquire of that juror separately, outside

22   the presence of all of them, and I'll do that in a separate

23   room with a representative counsel from each side present, so

24   that if those counsel have any questions they want to put to

25   that juror, they'll have the chance to do that.

Lisa Schmid, CCR, RMR
Official Court Reporter

PROCEEDINGS

1          But I see no reason to go through 18 separate jurors

2     without any indication at all, that they have been exposed to

3     the material that we're concerned they should not have been

4     exposed to.

5          You know, from day one, there's been extensive press

6     coverage.  We can't view the press coverage in a vacuum and

7     while Mr. Lichtman was of the view that the issue about which

8     we are concerned was the only issue covered over the weekend.

9     that is not accurate.  It was a dominant issue, I agree with

10    that, but there's still no reason to think that a jury that has

11    factitiously avoiding any coverage of the case, suddenly

12    decided this weekend that they were going to disregard that

13    daily forcefully-given instruction.

14         So I'm going to back there now and have a conversation

15    with them, and I will let you know what my findings are after I

16    have spoken to them.

17         All right.  We'll still be in recess.

18         (Recess.)

19

20

21

22

23

24

25

SEALED CONFERENCE

1          (Sealed Jury Room Conference.)

2          THE COURT:

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17          JUROR:

18          THE COURT:

19

20

21

22          JUROR:

23

24          THE COURT:

25          JUROR:

Lisa Schmid, CCR, RMR
Official Court Reporter

6948

SEALED CONFERENCE

1      THE COURT: 

2

3

4

5

6

7

8

9

10

11

12      THE COURT:

13

14

15

16      (Continued on the next page.)

17

18

19

20

21

22

23

24

25

Lisa Schmid, CCR, RMR
Official Court Reporter

6949

PROCEEDINGS

1          (In open court, outside the presence of the jury.)

2              THE CLERK:  All rise.

3              THE COURT:   be seated.

4          I have thoroughly questioned the jury, as the lawyers

5     will see from the transcript.  I could not be more confident

6     that they have been following my direction.

7          I looked at each of them.  I gave multiple chances to

8     answer the question.  I asked open-ended questions.  I assured

9     them they weren't going to be in any trouble.  I drew them out,

10    really looking at each one on individual basis as much as I

11    could.

12          And here's what I've got.  One juror said, Judge, I

13    did see something, but only that we're starting deliberations

14    today.  I said, are you sure that's it?  She said absolutely,

15    that's it.  That's all I saw.  Two jurors said that they had

16    seen something quickly.  They had seen a quick glance at

17    something.  I don't know what it was that they saw.  I stopped

18    them at that point.

19          And my proposal now is as to those two jurors, I go

20    with one representative of each side, and we question those

21    jurors as to what they saw and become satisfied that either

22    they didn't see anything or if they did something, it's not

23    going to affect their deliberations.

24          But I want to assure you, Mr. Lichtman, because I know

25    you're rightfully concerned, this is a very cohesive jury.

Lisa Schmid, CCR, RMR
Official Court Reporter

PROCEEDINGS

1  They are paying attention to those instructions.

2          All right.  So we will recess until the reporter can

3  get set up.

4          No, Mr. Riley.  This is definitely sealed, these

5  proceedings for the reason that I stated earlier, it would

6  affect deliberations.

7          Possibly, I should you have done this under seal, too,

8  but I wanted to let the public know what is going on in general

9  perimeters.  The general is the best I can do here.

10          So we will reconvene in the robing room, one-on-one,

11  two attorneys, one from each side, and separately, each of the

12  two jurors who indicated they had seen something.

13          All right.  We're in recess.

14          (Recess.)

15

16

17

18

19

20

21

22

23

24

25

6951

```
 1          (Sealed Jury Room Conference.)

 2          THE COURT:

 3

 4          MR. LICHTMAN:

 5          THE COURT:

 6

 7          THE COURT:

 8          LAW CLERK:

 9          THE COURT:

10

11          JUROR:

12

13

14          JUROR:

15          THE COURT:

16

17          JUROR:

18          THE COURT:

19

20          JUROR:

21          THE COURT:

22          JUROR:

23

24          THE COURT:

25          JUROR:
```

Lisa Schmid, CCR, RMR
Official Court Reporter

6952

```
 1        THE COURT:

 2        JUROR:

 3        THE COURT:

 4        JUROR:

 5        THE COURT:

 6        JUROR:

 7        THE COURT:

 8

 9        JUROR:

10

11        THE COURT:

12        JUROR:

13        THE COURT:

14

15        MR. LICHTMAN:

16

17        JUROR:

18        MR. LICHTMAN:

19

20        JUROR:

21        MR. LICHTMAN:

22        THE COURT:

23

24        JUROR:

25        THE COURT:
```

1      JUROR:

2

3      LAW CLERK:

4      THE COURT:

5

6      JUROR:

7      THE COURT:

8

9      JUROR:

10

11

12

13

14

15

16     THE COURT:

17

18     JUROR:

19

20     THE COURT:

21     JUROR:

22

23     THE COURT:

24

25     JUROR:

Lisa Schmid, CCR, RMR
Official Court Reporter

6954

```
1     THE COURT:
2
3     MR. LICHTMAN:
4     THE COURT:
5
6     THE COURT:
7
8     MR. LICHTMAN:
9     MS. PARLOVECCHIO:
10    THE COURT:
11
12
13
14
15
16    MS. PARLOVECCHIO:
17
18    (Continued on the next page.)
19
20
21
22
23
24
25
```

JURY CHARGE                                                    6955

1          (In open court, outside the presence of the jury.)

2               THE COURT:  Okay.  Please bring in the jury.

3               (Jury enters.)

4               THE COURT:  All right.  Everyone be seated.

5               Good morning again, ladies and gentlemen.

6               Ladies and gentlemen, now that the evidence has been

7     presented, it's my job to instruct you on the law.  I'm going

8     to give you a copy of these instructions in the jury room with

9     you.  So, you know, don't feel compelled to take notes,

10    although you can if you want to.

11              The instruction I'm going to give you will be in three

12    parts.  First I'll instruct you on the general rules that

13    define and govern the duties of a jury in a criminal case.

14    Second, I'm going to instruct you as to the legal elements of

15    the crimes charged in the indictment.  Then, third, I'm going

16    to give you some important principles to use during your

17    deliberations.

18              Now the first two parts of these instructions are

19    pretty long, and so we'll probably take a break probably at

20    that end of the first part.  Keep that in mind that, you know,

21    it's not going to be straight through and you should get

22    comfortable because it takes a little while to give you these

23    instructions.

24              It's been very obvious to me, and I'm sure to the

25    lawyers, that you have faithfully discharged your duty to

JURY CHARGE

1   listen carefully and observe each witness who testified during

2   the trial.  Please give me that same attention now as I give

3   you these jury instructions.

4           It's my duty to instruct you on the law.  You have to

5   accept my instructions and apply them to the facts as you

6   determine those facts.  It would violate your sworn duty to

7   base a verdict on any other view of the law other than the one

8   that I'm about to give you.  This means you have to follow my

9   instructions, regardless of any opinion that you may have as to

10  what the law is or what it should be and regardless of whether

11  any attorney has stated a legal principal differently from the

12  way I state it to you now.  You also have to take these

13  instructions as a whole during your deliberations.  Don't

14  single out any one particular instruction.

15          Now, as I told you when we started this case, I have

16  no opinion on the verdict that you should reach.  I have no dog

17  in this fight.  If you saw me make any kind of facial

18  expression or ask a question or make a ruling that seemed to

19  indicate that I have an opinion about the case one way or the

20  other, you misread me; and you have to disregard it because I

21  really do have no such opinion.

22          In addition, don't concern yourselves with the

23  contents of any discussion that I had with counsel outside of

24  your presence or at the sidebar.  Again, you focus just on the

25  evidence that was admitted here in court.

JURY CHARGE

1    You are going to be the sole and exclusive judges of

2  the facts in this case.  You could all be wearing black robes

3  for the job that you're about to do.  It's your duty to

4  determine the weight of the evidence and the credibility of the

5  witnesses, and you resolve any conflicts that there may be in

6  the testimony.  You draw whatever reasonable inferences you

7  decide from the facts as you have determined them.

8    In carrying out that duty, remember that you took an

9  oath to render judgment fairly and impartially, without

10  prejudice or sympathy, and without any fear.  You took an oath

11  to base your verdict solely on the evidence in the case and the

12  applicable law as I give it to you.

13    Please remember that all parties are here equally

14  before you today.  The fact that the Government is a party and

15  a prosecution is brought in the name of the United States

16  doesn't entitle the Government or its witnesses to any

17  different consideration than the defendant.

18    You must not be swayed by sympathy for any of the

19  parties or what the reaction of the parties or the public to

20  your verdict may be.  This means that if you have a reasonable

21  doubt as to the defendant's guilt, you should not hesitate to

22  acquit him; but if you find that the Government has met its

23  burden of proving the defendant's guilt beyond a reasonable

24  doubt, you should not hesitate because of sympathy or any other

25  reason to find him guilty.

JURY CHARGE

1    You must not be influenced by any feelings you might

2 have about the nature of the crimes charged or by any feelings

3 you might have about the race, religion, national origin,

4 gender, or age of the parties or anyone party participating in

5 the trial.

6    Please don't bear any prejudice against any attorney

7 or the attorneys' client because the attorney made an objection

8 or asked for a sidebar outside of your hearing or asked me for

9 a ruling on a point of law.  If you formed opinions or

10 reactions of any kind to the lawyers in this case, I instruct

11 you to disregard them.  The personalities and conduct of the

12 counsel here, that's just not the issue in this case.

13    You also must not consider the question of the

14 defendant's possible punishment.  The duty of imposing a

15 sentence if there is a conviction rests exclusively with me,

16 and you can't allow that consideration to enter your

17 deliberation at any point.  You have to be guided solely by the

18 evidence and the question of whether the Government has proven

19 the defendant's guilt beyond a reasonable doubt.

20    Now the defendant has pled not guilty to the

21 indictment; and as a result, the burden is on the Government to

22 prove the defendant's guilt beyond a reasonable doubt.  That

23 burden never shifts to the defendant because the law does not

24 impose on a criminal defendant any duty to call or

25 cross-examine witnesses or produce any evidence at all.

JURY CHARGE

1   Because of this, because it's the Government's burden to prove

2   the guilt of the defendant beyond a reasonable doubt, the

3   defendant also has no obligation to testify during the trial.

4   I remind you that a criminal defendant is never required to

5   prove that he is innocent.  So you must not attach any

6   significance to the fact that the defendant didn't testify in

7   this case nor may you draw any adverse inference against the

8   defendant because he didn't take the witness stand.  You may

9   not consider that decision not to testify by the defendant

10  against him in anyway at all.

11          You have heard of the presumption of innocence.  The

12  law presumes that the defendant is innocent of the charges

13  against him.  That presumption of innocence alone is sufficient

14  to acquit the defendant.  The presumption was with him when the

15  trial began and it remains with him now and it will continue

16  into your deliberations.  I, therefore, instruct you that you

17  must presume the defendant innocent throughout your

18  deliberations unless and until you as a jury are satisfied that

19  the Government has met its burden of proving the defendant

20  guilty beyond a reasonable doubt.

21          So what is a reasonable doubt?  The words almost

22  define themselves.  It is a doubt based on reason and common

23  sense.  It a doubt that a reasonable person has after carefully

24  weighing all the evidence.  It is a doubt that would cause a

25  reasonable person to hesitate to act in a matter of importance

JURY CHARGE

1    in their own personal life.  Proof beyond a reasonable doubt

2    must be of such a convincing character that a reasonable person

3    would not hesitate to rely on it in making an important

4    decision.  A reasonable doubt is not an impulse or a whim.

5    It's not speculation or suspicion.  It's not an excuse to avoid

6    the performance of an unpleasant duty nor is it sympathy for

7    any party.

8         Remember that the Government does not need to prove

9    guilt beyond all possible doubt.  Proof beyond a reasonable

10   doubt is sufficient to convict.  So if, after fair and

11   impartial consideration of the evidence, you're satisfied

12   beyond a reasonable doubt of the defendant's guilt with respect

13   to a particular charge against him, then you should find the

14   defendant guilty of that charge; but if, after your

15   consideration of the evidence, you have a reasonable doubt as

16   to the defendant's guilt with respect to a charge, you must

17   find him not guilty of that charge.

18        Now the fact that one side called more witnesses and

19   introduced more evidence than the other doesn't mean that you

20   should necessarily find the facts in favor of the side offering

21   the most witnesses.  This is not a numbers game.  By the same

22   token, you don't have to accept the testimony from any witness

23   who has not been contradicted or impeached if you find that the

24   witness is not credible.

25        You also have to decide which witnesses to believe and

JURY CHARGE

1    which facts are true.  To do this, you have to look at all of

2    the evidence; and you draw upon your own common sense and

3    personal experience.  After examining all the evidence, you may

4    decide that the party calling the most witnesses has not

5    persuaded you because you do not believe its witness or because

6    you do believe the fewer witnesses called by the other side.

7    On the other hand, if you do find that the party calling the

8    most witnesses was persuasive, you may decide in that party's

9    favor.

10          Now in a minute I'm going to give you some guidance on

11   how to evaluate evidence and witness credibility but for the

12   moment I want to remind you that the burden of proof is always

13   on the Government and the defendant is not required to call any

14   witnesses or offer any evidence since he's presumed to be

15   innocent.

16          Now, in determining the facts, it's going to be your

17   own recollection of the evidence that controls.  You should

18   consider the evidence in light of your own common sense and

19   experience, and you may draw reasonable inferences from the

20   evidence.  The evidence in this case consists of the sworn

21   testimony of the witnesses, the exhibits received in evidence,

22   and stipulations.  Let me explain each of those to you in a

23   little bit more detail.

24          A stipulation is an agreement between the two sides

25   that a certain fact is true.  You have to regard such agreed

JURY CHARGE

1   facts as true.  A stipulation of testimony is an agreement

2   among the parties that, if called, a witness would give certain

3   testimony.  You must accept as true the fact that the witness

4   would have given that testimony, but it's still for you to

5   determine the effect to be given to that testimony.

6         Now, you may consider only the exhibits which I have

7   received into evidence.  You may not consider exhibits which

8   you might note the parties have said this is marked for

9   identification but I did not say "received" or "admitted."

10  That's not part of the trial record for your consideration.

11        Similarly, you have to disregard any testimony which I

12  have ordered stricken.  As I indicated before, only the

13  witness's answers are evidence; and you are not to consider a

14  question as evidence.  You also have to remember that the

15  lawyers' statements are not evidence and anything you may have

16  seen or heard about the case outside of the courtroom, even

17  though, as I confirmed this morning, you've all done your very

18  best to stay away from anything like that, if you did run into

19  something, if you got any exposure, that is not evidence and it

20  has to be entirely disregarded.

21        Now, let me talk to you about direct and

22  circumstantial evidence.  You can consider both in deciding

23  whether the Government has met its burden of proof.  Direct

24  evidence is evidence that proves a disputed fact directly such

25  as when a witness testifies about what the witness saw, heard,

Lisa Schmid, CCR, RMR
Official Court Reporter

JURY CHARGE

1    or observed.  Circumstantial evidence is evidence that tends to

2    prove a fact, a disputed fact, by proof of other facts.  The

3    law doesn't say that one is better than the other.  It doesn't

4    make any distinction between direct and circumstantial

5    evidence, and you may give either or both whatever weight you

6    conclude is warranted.

7         Now, there's an example that we use in the courthouse

8    to explain the difference between circumstantial and direct

9    evidence.  As you sit here today, you notice the window behind

10   you is closed.  We don't know what's going on outside.  If

11   somebody came in here into the courtroom and they were wearing

12   a raincoat that was dripping wet and they were carrying an

13   umbrella that was dripping wet, that would be circumstantial

14   evidence that it's raining outside.  You take one fact, the wet

15   umbrella, the wet raincoat; and you use to it reach a

16   conclusion about another fact.  It's raining outside.  By the

17   same token, if everybody's coming in, they're not wearing

18   coats, they're not carrying umbrellas, you can draw the

19   inference that it's not raining outside.  That would be the dry

20   clothing would be circumstantial evidence that it's not

21   raining.  If on the other hand you were to go outside the

22   courthouse and you see the rain coming down, you have direct

23   evidence that it's raining outside.

24        That's all there is to the distinction between direct

25   and circumstantial evidence.  You infer on the basis of reason,

JURY CHARGE

1   experience, and common sense from an established fact or the

2   lack of an established fact the existence or nonexistence of

3   some other fact.

4          Now you've heard me use the word "inference" several

5   times.  An inference is not a suspicion or a guess.  It's a

6   reasoned, logical decision to conclude that a fact exists on

7   the basis of another fact that you know exists.  It's a

8   deduction or conclusion that you're permitted but not required

9   to draw from the facts that have been proven by direct or

10  circumstantial evidence.  Now the lawyers in this case have

11  argued that you should or should not draw certain evidence of

12  certain inferences based on the evidence presented during the

13  trial.  Remember that it's for you and you alone to decide what

14  inference you're going to draw and not draw.

15         I want to remind you, however, that, whether based on

16  direct or circumstantial evidence or upon the logical

17  reasonable inferences that you draw from such evidence, you

18  have to be satisfied that the Government has proved the

19  defendant's guilt beyond a reasonable doubt before you may vote

20  to convict.

21         Now the Government has presented evidence, some of

22  these exhibits, in the form of charts and summaries.  I

23  admitted some of these charts and summaries in place of the

24  underlying documents that they represent in order to save time

25  and avoid unnecessary inconvenience.  You should consider these

JURY CHARGE

1   charts and summaries as you would any other evidence.

2          Now, I just instructed you on what you may properly

3   consider and infer as you're sifting through the evidence.  Now

4   I want to tell you what you can't consider as evidence.  The

5   objections that the lawyers made during trial, those are not

6   evidence.  Testimony and exhibits can only be admitted into

7   evidence if they meet certain criteria or standards.  So it's

8   the lawyers' responsibility to object when they believe that

9   the evidence is not admissible.  You should not be influenced

10  against the party because their lawyer made an objection.

11  Similarly, do not attempt to interpret my rulings on objections

12  as somehow indicating how I think you should decide the case.

13  That's not what I'm doing at all.  I'm simply ruling on a legal

14  question regarding that particular testimony or exhibit.

15         Now as I'm sure you aware, many of the witnesses in

16  this case testified in Spanish which was translated into

17  English by a sworn interpreter.  During jury selection I asked

18  those of you who speak or understand Spanish whether you would

19  be able to disregard any testimony or evidence that you saw or

20  heard in Spanish and accept the English translation.  You all

21  told me that you'd be able to do that, but I'm instructing you

22  again that you have to disregard any of the Spanish testimony

23  and evidence and accept as the official record the English

24  translation that was given by the interpreters.

25         That instruction also applies to the audio recordings

JURY CHARGE

1   that were entered into evidence.  You have received transcripts

2   of foreign language calls that are translations of these

3   recordings.  These transcripts are evidence, not just guides;

4   and I instruct you to consider them just like any other

5   evidence in the case.

6          Now you've also heard evidence in the form of audio

7   recordings of conversations that were obtained without

8   knowledge of some or all of the parties to those conversations.

9   You've also seen and heard evidence obtained through

10  court-authorized search and wiretap warrants.  This evidence

11  was obtained lawfully, and the Government has the right to use

12  it in this case.  Law enforcement techniques are not your

13  concern.  I deal with those before the trial ever starts.  The

14  evidence that you've heard is the evidence you're supposed to

15  hear.

16         Please remember that the Government is not on trial,

17  and I instruct you to disregard any arguments that may have

18  been made to the contrary.  There is no evidence that the

19  Government operated under any kind of improper motive.  You

20  must base your decision only on the evidence or lack of

21  evidence that has been presented at trial in determining

22  whether the Government has met its burden of proving

23  defendant's guilt beyond a reasonable doubt.

24         Now, the law does not require any party to present all

25  available evidence or call as witnesses everyone who was

JURY CHARGE

1   present at any time or place or who might have knowledge of the

2   matters at issue.  The law also does not require any party to

3   produce as exhibits all papers and objects mentioned during

4   trial, but each party has an equal opportunity or lack of

5   opportunity to call those witnesses or introduce that evidence.

6          I've already told you that the attorneys' questions,

7   comments, statements, and arguments are not evidence.  I'm also

8   instructing you that whether either party has met its discovery

9   obligation, the obligation to produce evidence to the other

10  side, that's a question for me and not for you.  You're not

11  allowed to consider this during your deliberations.  I have

12  made no determination that either party has failed to meet its

13  discovery obligations.

14         Your concern is to determine based on the evidence

15  that has been presented whether the Government has met its

16  burden to prove that the defendant is guilty beyond a

17  reasonable doubt.  You should not be concerned with whom or

18  what the parties did not present during trial.  That being

19  said, you must always remember, as I mentioned before, that the

20  law does not impose on a criminal defendant the burden or duty

21  of calling any witnesses or producing any evidence.

22         Now, you may not draw any inference towards each party

23  from the fact that other people who might have been involved in

24  the offenses charged in the indictment are not on trial before

25  you.  You may not speculate as to the reason why or allow their

JURY CHARGE

1   absence as parties to influence your deliberations in any way.

2   Your concern is solely the defendant on trial before you.  The

3   fact that these other individuals are not on trial before you

4   is not your concern.

5          You're being asked to decide whether or not the

6   Government has proven beyond a reasonable doubt the guilt of

7   this defendant.  You are not being asked whether any other

8   person has been proven guilty.  Your verdict should be based

9   solely upon the evidence or lack of evidence as to this

10  defendant in accordance with the instructions I'm giving you

11  and without regard to whether the guilt of other people has or

12  has not been proven.  In that respect, I again remind you that

13  the Government bears the burden of proving beyond a reasonable

14  doubt that this defendant is guilty of the offenses charged in

15  the indictment.

16         Now you've also heard evidence that the defendant

17  engaged in certain criminal conduct that is not charged in the

18  indictment.  The defendant is not on trial for that conduct,

19  and you may not consider evidence of those other acts as a

20  substitute for proof that the defendant committed the crimes

21  that are charged in this case.  You may not consider evidence

22  of those other acts as proof that the defendant has a criminal

23  propensity which means that you can't conclude that the

24  defendant likely committed the crimes charged in the

25  indictment, because he had some predisposition to criminal

6969

JURY CHARGE

1    conduct.  That would be improper.

2         You may also consider uncharged conduct for a limited

3    purpose as evidence, for example, (1) of the defendant's

4    motive, knowledge, or intent in carrying out the charged crimes

5    (2) of the development of relationships of mutual trust between

6    the defendant and others with whom he is charged with carrying

7    out the charged crimes (3) of conduct that is inextricably

8    intertwined with evidence of the charged crimes (4) enabling

9    you to understand the complete story of the charged crimes and

10   (5) corroborating the testimony of other Government witnesses.

11   Aside from those five purposes, you really cannot consider

12   evidence of uncharged crimes at all.

13         Now let me talk to you for a minute about witness

14   credibility.  It's going to be your duty as jurors to determine

15   the credibility of the witnesses and the importance of their

16   testimony.  You're going to have to decide where the truth

17   lies, which will require you to judge the testimony that you

18   listen to and observe.  You need to carefully scrutinize the

19   testimony, the circumstances under which each witness

20   testifies, and any other matter in evidence that may help you

21   decide the truth of and the weight to assign to their

22   testimony.

23         Your decision whether to believe a witness may depend

24   on how the witness impressed you.  Was the witness candid and

25   frank, or did the witness seem to be hiding something?  Were

Lisa Schmid, CCR, RMR
Official Court Reporter

JURY CHARGE

1    they evasive or suspect in some way?  How did the testimony on

2    direct examination compare with the testimony on

3    cross-examination?  Was the witness's testimony consistent or

4    inconsistent?  Did it appear that the witness knew what the

5    witness was talking about?  Did the witness strike you as

6    someone who was trying to report their knowledge accurately?

7           How much you choose to believe a witness may also be

8    influenced by the witness's bias.  Does the witness have a

9    relationship with the Government or the defendant that may

10   affect how the witness testified?  Does the witness have some

11   incentive, loyalty, or motive that might cause the witness to

12   shade the truth?  Or does the witness have some bias,

13   prejudice, or hostility that may have caused the witness,

14   whether consciously or not, to give you something other than a

15   completely accurate account of the facts?

16          Evidence that a witness may be biased towards one of

17   the parties requires you to view that witness's testimony with

18   caution, to weigh it with great care, and to subject it to

19   close scrutiny.  In other words, what you have to do in

20   deciding credibility is to size up a person just as you would

21   in any important matter when you're trying to decide if a

22   person is truthful, straightforward, and accurate in their

23   recollection.

24          How much you're going to believe a witness may also be

25   influenced by any interest that the witness may have in the

JURY CHARGE

1    outcome of the case.  That interest may create a motive to

2    testify falsely to advance that witness's own personal or

3    professional interests.  Now that's not to suggest that every

4    witness who has an interest in the outcome of a case is going

5    to testify falsely.  I'm not saying that.  I'm saying it's for

6    you to decide to what extent, if at all, a witness's interest

7    has affected or colored their testimony.

8         You should specifically consider evidence of

9    resentment or anger that some Government witnesses made have

10   towards the defendant.  Evidence that a witness is biased,

11   prejudiced, or hostile towards the defendant requires you to

12   view that witness's testimony with caution, to weigh it with

13   care, and subject to it close and searching scrutiny.

14        Even if you think that a witness wasn't biased, you

15   should still consider whether the witness had an opportunity to

16   observe the facts that the witness testified about, as well as

17   the witness's demeanor and ability to communicate effectively.

18   Ask yourself whether a witness's recollection of the facts

19   stands up in light of the rest of the evidence.  You need to be

20   guided by your common sense, your good judgment, and your

21   experience.

22        Now, you heard evidence of what counsel has argued are

23   discrepancies between a witness's testimony and that of other

24   witnesses.  You've also heard evidence that a witness has made

25   a statement on earlier occasions that counsel argues is

JURY CHARGE

1    inconsistent with the testimony that they gave you at trial,

2    and counsel has urged you to reject some or all of that

3    testimony based on these discrepancies or inconsistencies.  If

4    you find that the testimony did include discrepancies or

5    inconsistencies, that may be a basis to disbelieve a witness's

6    testimony; but discrepancies and inconsistencies do not

7    necessarily require you to discredit a witness entirely.  Two

8    witnesses may see or hear something differently.  An innocent

9    misrecollection like failure of recollection is not uncommon.

10   People sometimes forget things, and even truthful witnesses may

11   be nervous and contradict themselves.

12            It's your job to determine the weight, if any, to

13   assign to all or part of the testimony of a witness who has

14   been impacted by discrepancies or prior inconsistent

15   statements -- I'm sorry -- who has been impeached by

16   discrepancies or prior inconsistent statements.  You should

17   also consider whether the discrepancy or inconsistency pertains

18   to a matter of importance or unimportance and whether it

19   results from an innocent error or whether it's an intentional

20   falsehood.

21            It's for you to decide based on your total impression

22   of each of the witnesses how to weigh the discrepancies or

23   inconsistencies, if any, in their testimony.  You should, as

24   always, use common sense and your own good judgment.

25            Now, you heard witnesses testify as opinion witnesses,

JURY CHARGE

1    as experts about matters on which they had special knowledge,

2    skill, experience, or training.  I permitted those witnesses to

3    express their opinions about matters that are at issue in this

4    case because somebody who's experienced and knowledgeable in a

5    particular field can assist you in understanding the evidence

6    or in reaching an independent decision on a fact.  So you

7    should not substitute this opinion testimony for your own

8    reason, judgment, and common sense.

9            In weighing the opinion testimony, you may consider

10   the witness's qualifications, the witness's opinions, the

11   reasons for testifying, as well as all the other considerations

12   that ordinarily apply when you're deciding whether or not to

13   believe a witness's testimony and what weight, if any, you find

14   the testimony deserves.  In other words, you should not accept

15   opinion testimony just because I allowed the witness to give

16   it.  You have to evaluate that testimony like you would any

17   other witness.

18           Now you've also heard testimony from law enforcement

19   witnesses.  The fact that a witness is a member of law

20   enforcement does not mean that their testimony is entitled to

21   any greater or any lesser weight.  You should consider law

22   enforcement testimony just like any other evidence in the case

23   and evaluate the credibility of that witness just like you

24   would any other witness.

25           Now, you also heard testimony that the Government's

Lisa Schmid, CCR, RMR
Official Court Reporter

JURY CHARGE

1    lawyers interviewed their witnesses from preparing for and

2    during the trial.  You should not draw any unfavorable

3    inference from that testimony.  The attorneys are obligated to

4    prepare this case as thoroughly as possible; and one way to

5    accomplish that is to properly interview witnesses before the

6    trial and, if necessary, throughout the course of the trial.

7              Now you have also heard testimony from Government

8    witnesses who pled guilty to charges arising out of the same or

9    related facts to this case.  You're instructed that you are to

10   draw no conclusions or inferences of any kind about this

11   defendant's guilt from the fact that any of the prosecution

12   witnesses themselves pled guilty to similar charges.  Those

13   witnesses' decisions to plead guilty were personal decisions

14   about their own guilt.  You may not use it in any way as

15   evidence against this defendant.

16             You have also heard witnesses who testified that they

17   were involved in planning and carrying out certain crimes with

18   the defendant and others.  The lawyers have said a great deal

19   about these cooperating witnesses in their closing arguments

20   and about whether you should believe them.  Experience will

21   tell you that the Government sometimes must rely on the

22   testimony of witnesses who admit participating in the alleged

23   crimes at issue.  Otherwise, it would be difficult or

24   impossible to detect and prosecute wrongdoers.  The Government

25   argues, as it is permitted to do, that it must take the

JURY CHARGE

1    witnesses as it finds them and that people who themselves take

2    part in criminal activity have the knowledge required to show

3    criminal behavior by others.

4            The law allows the use of cooperating witness

5    testimony.  Indeed the testimony of cooperating witnesses may

6    be enough in itself for a conviction if the jury finds that the

7    testimony establishes guilt beyond a reasonable doubt.

8    Cooperating witness testimony has to be scrutinized with great

9    care and viewed with particular caution when you decide how

10   much of that testimony to believe.  You may consider the fact

11   that a witness is cooperating with the Government as bearing on

12   that witness's credibility; and you should give the witness's

13   testimony the weight you feel it deserves, in light of all of

14   the facts and circumstances before you.  You may also consider

15   whether a cooperating witness had an interest in the outcome of

16   the crime and, if so, whether that interest has affected their

17   testimony.

18           You should ask yourselves whether these witnesses

19   would benefit more by lying or by telling the truth.  Was their

20   testimony made up in some way because they believed or hoped

21   that they would somehow receive favorable treatment by

22   testifying falsely, or did they believe that their interest

23   would be best served by testifying truthfully?  If you believe

24   that the witness was motivated by hopes of personal gain, was

25   the motivation one that would cause the witness to lie; or was

Lisa Schmid, CCR, RMR
Official Court Reporter

JURY CHARGE

1   it one that would cause the witness to tell the truth?  Did

2   this motivation color that testimony?

3          You've already heard testimony that these cooperating

4   witnesses pled guilty after entering into an agreement with the

5   Government to testify.  There's also evidence that the

6   Government agreed to dismiss some charges against those

7   witnesses or agreed not to prosecute them on other charges in

8   exchange for the witness's agreement to plead guilty and

9   testify against the defendants or otherwise agreed to testify.

10         The Government has also promised to bring the

11  witness's cooperation to the attention of the sentencing

12  courts.  The Government is allowed to enter into these

13  agreements, and it is not your concern why the Government made

14  an agreement with a particular witness or whether you approve

15  or disapprove of the Government's tactics.  You may, however,

16  consider the effect, if any, that the existence or terms of the

17  agreement may have on the witness's credibility.

18         Therefore, you must examine their testimony with

19  caution and weigh it with great care.  If, after scrutinizing

20  their testimony, you decide to accept it, you may give it

21  whatever weight, if any, you think that it deserves.

22  Ultimately, if you think that a cooperating witness's testimony

23  was false, you should reject it; but if, after a cautious and

24  careful examination of the witness's testimony, you're

25  satisfied that the cooperating witness told the truth, you

JURY CHARGE

1     should accept it as credible and act upon it accordingly.

2          As with any witness, let my emphasize that the issue

3     of credibility need not be decided in an all-or-nothing

4     fashion.  Even if you find that a witness testified falsely in

5     one part, you may still accept that witness's testimony in

6     other parts; or you may disregard it all.  That determination

7     is entirely up to you.

8          Now during the trial I gave a brief instruction on how

9     cooperating witnesses get sentenced when it comes to the time

10    of their sentencing, and I want to repeat that for you.  When

11    someone cooperates with the Government, the Government does not

12    determine what sentence they are going to get nor does the

13    Government typically make a recommendation to the sentencing

14    judge as to how much time the Government thinks they should

15    get; but what the Government will do, if it is satisfied with

16    the witness's cooperation, is to write to the sentencing judge

17    what is known as a 5K1 letter.  That letter sets forth the

18    nature of the crimes that the cooperating witness has committed

19    and all of the cooperation that the witness has undertaken.

20         The judge then takes that letter, together with a lot

21    of other information about the cooperating witness and all of

22    the crimes that the cooperating witness has committed, and it

23    is the judge exclusively who decides the appropriate sentence,

24    not the Government.

25         All that a cooperating witness gets from the

JURY CHARGE

1  Government, if the Government is satisfied with their

2  cooperation, is this 5K1 letter; but the letter is also

3  significant because, if a cooperating witness receives one, the

4  judge is permitted by the law to sentence that witness below

5  any mandatory minimum sentence that the law would otherwise

6  require.

7          It's the Government's decision as to whether to submit

8  the letter and the Government's decision alone, but it is the

9  judge's decision alone as to what the sentence should be.

10         Similarly, you may have heard testimony about what the

11  lawyers referred to as a Rule 35 sentencing reduction.  In

12  certain circumstances Rule 35 operates similarly to Rule 5K1

13  except that Rule 35 applies to a cooperator who had already

14  been sentenced and then gives cooperation after he has

15  sentenced, whereas 5K1 applies to a cooperator who has not yet

16  been sentenced.  Otherwise they're quite similar.

17         All right.  That concludes Part One.

18         Part Two is probably about 45 minutes.  Do you want to

19  break now?  Do you want to keep going?

20         JUROR:  (Nods head up and down.)

21         THE COURT:  I'm getting one nod to go, getting no head

22  shakes to stop.  We will continue.  Okay.

23         I'm now going to give you the second part of my

24  instructions will involve the legal elements of the crimes

25  charged in the case.

JURY CHARGE

1          The defendant is charged in an indictment which is

2   just a formal accusation by the Government.  The indictment is

3   not evidence of any kind, and it's entitled to no weight in

4   your determination of the facts.  In this case the indictment

5   has ten counts or separate offenses.  I'm going to go over them

6   in detail, but let me summarize them now.  I'm just going to

7   run through them.

8          Count One charges the defendant with engaging in a

9   continuing criminal enterprise, what we call a CCE.

10          Count Two charges the defendant with international

11   cocaine, heroin, methamphetamine, and marijuana manufacturing

12   and distribution conspiracy.

13          Count Three charges the defendant with cocaine

14   importation conspiracy.

15          Count Four charges the defendant with cocaine

16   distribution conspiracy.

17          Count Fives, Six, Seven and Eight charge the defendant

18   with international cocaine distribution.

19          Count Nine charges the defendant with the use of a

20   firearm during a drug trafficking crime.

21          And Count Ten charges the defendant with money

22   laundering conspiracy.

23          Now, you have to consider each count separately; and

24   you have to return a verdict based only on the evidence as it

25   relates to that specific count.  Whether you find the defendant

JURY CHARGE

1   not guilty or guilty as to one count should not affect your

2   verdict as to any other count.  You've got to go through all

3   ten.

4          There are two other points I want to make about the

5   indictment.  First, you'll see that when the indictment alleges

6   dates, something happened on a date, it frequently uses the

7   term "in or about," "on or about," or "between certain dates."

8   The proof, the evidence before you need not establish with

9   certainty the exact date of an alleged offense.  It is

10  sufficient if the evidence establishes beyond a reasonable

11  doubt that an offense was committed on a date reasonably near

12  the date alleged.

13         You also see that the indictment uses the word "and";

14  and sometimes in my instruction, when I'm describing the

15  indictment, I'll use the word "or."  That's just the result of

16  how the Government formally states its charges.  It's not a

17  statement of the law.  When I use the word "or" in these

18  instructions, that "or" is controlling over any other

19  contradictory phrase that may appear in the indictment.

20         Now let me next instruct you on the legal concepts of

21  knowledge and intent which are implicated by each count in the

22  indictment.  A person knowing acts knowingly when he acts

23  intentionally and voluntarily and not because of ignorance,

24  mistake, accident, or carelessness.

25         Whether a defendant acted knowingly may be proven by

JURY CHARGE

1  his conduct and by all the facts and circumstances surrounding

2  the case.  A person acts intentionally when he acts

3  deliberately and purposefully.  The defendant's acts must have

4  been the product of his conscious objective, rather than the

5  product of a mistake or accident.

6        Now I want to talk to you about the concept of aiding

7  and abetting.  In some of these counts the defendant is charged

8  with being a principal who committed the alleged crime or,

9  alternatively, with aiding and abetting other people to commit

10  that crime.

11        With respect to the aiding and abetting charges, the

12  Government does not need to show that the defendant himself

13  physically committed the crime, because a person who aids and

14  abets another to commit an offense is just as guilty of that

15  offense as if he had committed it himself.  You may find the

16  defendant guilty of the offense charged only if you find beyond

17  a reasonable doubt that the Government has proven that another

18  person committed the offense and that the defendant aided or

19  abetted that person in the commission of the offense.

20        Before you can convict the defendant on the ground

21  that he aided and abetted the commission of a crime, you have

22  to first find that another person committed that crime.  Nobody

23  can be convicted of aiding and abetting the criminal act of

24  another if no crime was committed by the other person in the

25  first place; but if you do find that a crime was committed,

JURY CHARGE

1  then you have to determine whether the defendant aided or

2  abetted the commission of that crime.

3       To aid or abet somebody else to commit a crime, the

4  defendant has to do two things.  First, he must knowingly

5  associate himself in some way with the crime; and, second, he

6  must participate in the crime by doing some act, something that

7  helped the crime succeed.  To establish that the defendant

8  knowingly associated himself with the crime, the Government

9  must establish that the defendant acted knowingly and

10 intentionally.  I just told you what "knowing and

11 intentionally" means.  You'll apply those instructions here.

12      To establish that the defendant participated in the

13 commission of a crime, the Government has to prove that the

14 defendant engaged in some affirmative conduct, or what we call

15 an overt act, for the specific purpose of bringing about the

16 crime.  The defendant's mere presence when a crime is being

17 committed, even coupled with the defendant's knowledge that a

18 crime is being committed, is not sufficient to establish aiding

19 and abetting.  Neither is merely associating with others who

20 were committing a crime or inadvertent doing something that

21 aids in the commission of a crime without any knowledge that a

22 crime is being committed or about to be committed.

23      An aider and abettor must know that the crime is being

24 committed and must act in a way that is intended to bring about

25 the success of the criminal venture.

6983

JURY CHARGE

1    To determine whether the defendant aided or abetted

2    the commission of the crime with which he's charged, ask

3    yourself these questions:  Did he participate in the crime

4    charged as something he wished to bring about?  Did he

5    knowingly associate himself with the criminal venture?  And did

6    he seek by his actions to make the criminal venture succeed?

7    If he did, then the defendant is an aider and abettor and,

8    therefore, guilty of the offense but, if your answer to any of

9    those three questions is "no," then the defendant is not an

10   aider and abettor and you must find him not guilty.

11         Now, several counts in the indictment involve

12   conspiracy charges.  So I'm going to talk to you about the law

13   of conspiracy in general, as soon as I have something, a little

14   bit of water.  Hang on.

15         (Brief pause.)

16         THE COURT:  Okay.  What's a conspiracy?  A conspiracy

17   is an agreement by two or more persons to accomplish some

18   unlawful objective, and sometimes we call it a criminal

19   partnership.  The crime of conspiracy is separate from the

20   crime the alleged conspirators agreed to commit.  The crime

21   they agreed to commit, the law refers to that as the

22   substantive crime.  The conspiracy is the agreement itself,

23   whether or not the substantive crime is accomplished.

24         A conspiracy is in and of itself a crime, even if it

25   fails to achieve its unlawful purpose; and you may find the

JURY CHARGE

1  defendant guilty of the crime of conspiracy, even though the

2  substantive crime that was the object of the conspiracy was not

3  actually committed.

4          Congress has deemed it appropriate to make a

5  conspiracy standing alone a separate crime, even if the

6  conspiracy did not succeed.  That's because collective criminal

7  activity, criminal agreements, pose a greater threat to the

8  public safety and welfare than individual conduct and increases

9  the likelihood of success of a particular criminal venture.

10         Now, in order for the defendant to be guilty of a

11 conspiracy to violate Federal law, the Government has to prove

12 two elements beyond a reasonable doubt:

13         First, that two or more persons entering into the

14 particular unlawful agreement charged in the indictment; and

15         Second, that the defendant knowingly and intentionally

16 became a member of that conspiracy.

17         As to the first element, the existence of a charged

18 conspiracy, the Government must prove that two or more people

19 entered into the unlawful agreement that is charged in the

20 particular count that you are considering.  One person cannot

21 commit the crime of conspiracy alone because it's an agreement.

22 The proof must convince you that at least two people joined

23 together in a common criminal scheme, but the Government

24 doesn't need to prove an express or a formal agreement or that

25 the conspirators stated in words or in writing what the scheme

JURY CHARGE

1   was, its object or purpose, or even how it was to be

2   accomplished.  It's sufficient if the proof establishes that

3   the conspirators came to an unspoken mutual understanding to

4   accomplish an unlawful act by means of a joint plan or common

5   design.

6        You may find that the existence of an agreement

7   between two or more persons to disobey or disregard the law has

8   been established by direct proof, but this conspiracy is often

9   by its nature characterized by its secrecy.  You may also infer

10  its existence from the circumstances of the case and the

11  conduct of the parties involved.  In this context actions often

12  speak louder than words.  So, in determining whether an

13  agreement existed, you may consider the actions and statements

14  of all of those you find to be participants as proof that a

15  common design existed on the part of the persons charged to act

16  together to accomplish an unlawful purpose.

17       If you are satisfied that the conspiracy existed, the

18  second element that the Government has to prove beyond a

19  reasonable doubt is that the defendant knowingly and

20  intentionally became a member of the charged conspiracy.

21  You'll recall I already instructed you on what "knowingly and

22  intentionally" means, and those instructions apply here.

23       Essentially the defendant must have participated in

24  the conspiracy with knowledge of its unlawful purpose and with

25  the specific intention of furthering one or more of its

Lisa Schmid, CCR, RMR
Official Court Reporter

JURY CHARGE

1    objectives.  This must be established by independent evidence

2    of the defendant's own acts or statements, as well as those of

3    other alleged co-conspirator and the reasonable inferences

4    which may be drawn from that evidence.

5           Proof of a financial interest in the outcome of a

6    scheme is not essential for a finding of conspiracy; but if you

7    find that the defendant has such an interest, that's a factor

8    you may properly consider in determining whether or not the

9    defendant was a member of the charged conspiracy.

10          The defendant also need not have known the identities

11   of each member of the conspiracy or all of their activities.

12   He need not have been fully informed of all of the details or

13   the scope of the conspiracy or joined all of conspiracy's

14   unlawful objectives nor is a conspirator's liability measured

15   by the extent or duration of his participation in the

16   conspiracy.  In other words, to be guilty of conspiring to

17   commit a crime, the defendant need not have been a member of

18   any conspiracy from its very start.  Each member may perform

19   separate and distinct acts and may perform them at different

20   times.  Some conspirators may play major roles while others may

21   play minor ones.  Even a single act may be sufficient to draw a

22   defendant within the circle of a conspiracy.

23          Keep in mind, though, that the defendant's mere

24   presence at the scene of an alleged crime does not by itself

25   make him a member of the conspiracy.  Association with one or

JURY CHARGE

1   more members of a conspiracy does not automatically make the

2   defendant a member.  A person may know or be friendly with a

3   criminal without being a criminal himself and similarity of

4   conductor or the fact that persons may have assembled together

5   and discussed common aims and interests does not necessarily

6   establish proof of the existence of a conspiracy.

7          In addition, mere knowledge or acquiescence without

8   participation in the unlawful plan is not sufficient.  The fact

9   that the defendant's acts merely happened to further purposes

10   or objectives of the conspiracy does not make the defendant a

11   member.  The defendant must have participated with knowledge of

12   at least some of the purposes or objectives of the conspiracy

13   and with the intention of aiding in the accomplishment of those

14   unlawful ends.

15          Ultimately, the Government has to prove beyond a

16   reasonable doubt that the defendant was a member of the

17   conspiracy charged.  If you find that the defendant was not a

18   member of the charged conspiracy, you can't find him guilty of

19   that count, even if you find that he was a member of some other

20   conspiracy.  Proof that the defendant was a member of some

21   other conspiracy is not enough to convict on the charged

22   conspiracy.  On the other hand, even if you find that multiple

23   conspiracies existed, you should convict the defendant if you

24   find beyond a reasonable doubt that one of the conspiracies was

25   the one alleged in the indictment and that the defendant was a

1    member of it.

2         In sum, the defendant, with an understanding of the

3    unlawful character of the conspiracy, must have intentionally

4    engaged, advised, or assisted in it for the purpose of

5    furthering the illegal undertaking.  He, therefore, becomes a

6    knowing and intentional participant in the unlawful agreement.

7    That is to say, he becomes a conspirator.

8         Now, I just want to talk to you about the venue of the

9    case which means the particular location that the defendant is

10   indicted and tried.

11        As you heard throughout the trial, many of the acts

12   alleged to have taken place occurred outside the United States.

13   Nevertheless, American law provides the defendant may be

14   prosecuted here in the Eastern District of New York if you find

15   by a preponderance of the evidence that the defendant was first

16   brought into the United States in connection with these charges

17   within the Eastern District of New York.  It doesn't matter if

18   the defendant was brought to the United States involuntarily or

19   in the custody of law enforcement officers.  I instruct you

20   that the Eastern District of New York encompasses the boroughs

21   of Brooklyn, Queens, Staten Island, as well as Nassau and

22   Suffolk counties on Long Island.

23        Now you notice I use a different standard of proof

24   here.  I said the Government has to prove that he was brought

25   here by a preponderance of the evidence.  To prove something by

1  a preponderance of the evidence means to prove that it is more

2  likely true than not true.  It's determined by considering all

3  of the evidence and deciding which evidence is more convincing.

4  If the evidence appears to be equally balanced or if you can't

5  say which side weighs heavier, then you have to resolve the

6  question against the Government.

7         Now, proof by a preponderance of the evidence is a

8  lower standard than proof beyond a reasonable doubt.  There's a

9  venue issue.  Was he brought here involuntarily?  That's the

10  only time in the case that you may use the preponderance of the

11  evidence standard to find that a legal element has been

12  satisfied.  Everything else is beyond a reasonable doubt.

13         All right.  I'm going to start going through the

14  specific counts in the indictment with you.  For now I'm going

15  to skip over Count One because the law involving Count One is

16  somewhat duplicative of other counts in the indictment; and if

17  I cover those counts, I'll have given you a good part of Count

18  One already.

19         So let's start with Count Two.  Count Two is a

20  conspiracy charge.  It charges a conspiracy to manufacture and

21  distribute internationally cocaine, heroin, methamphetamine,

22  and marijuana.  It reads in relevant part -- and this is mostly

23  from the indictment:

24         In or about and between January, 1989, and September,

25  2014, the defendant, together with others, did knowingly and

JURY CHARGE

1   intentionally conspire to manufacture and distribute one or

2   more controlled substances which offense involved (A) a

3   substance containing cocaine, a Schedule II controlled

4   substance (B) a substance containing heroin, a Schedule I

5   controlled substance; (C) a substance containing

6   methamphetamine, a Schedule II controlled substance; and (D) a

7   substance containing marijuana, a Schedule I control substance,

8   intending and knowing that such substances would be unlawfully

9   imported into the United States from a place outside thereof.

10          The amount of cocaine involved in the conspiracy

11   attributable to the defendant as a result of his own conduct

12   and the conduct of other conspirators reasonably foreseeable to

13   him was at least 5 kilograms or more of a substance containing

14   cocaine.  The amount of heroin involved in the conspiracy

15   attributable to the defendant as a result of his own conduct,

16   and the conduct of other conspirators reasonably related to

17   him, was at least 1 kilogram or more of a substance containing

18   heroin.  The amount of methamphetamine involved in the

19   conspiracy attributable to the defendant as a result of his own

20   conduct, and the conduct of other conspirators reasonably

21   foreseeable to him, was at least 500 grams or more of a mixture

22   or substance containing methamphetamine.  The amount of

23   marijuana involved in the conspiracy attributable to the

24   defendant as a result of his own conduct, and the conduct of

25   other conspirators reasonably foreseeable to him, was at least

JURY CHARGE

1   1,000 kilograms of a substance containing marijuana.

2           That's how indictments read, a lot of legal language.

3   Let me tell you now what it means.

4           I have already instruction you on the law of

5   conspiracy.  That's what this is, a conspiracy charge.  So

6   please apply those instructions here.

7           Before you can convict the defendant of the

8   international cocaine, heroin, methamphetamine, and marijuana

9   manufacture and distribution conspiracy charged in this Count

10  Two, the Government has to prove beyond a reasonable doubt each

11  of the following elements of the offense:

12          First, that two or more individuals entered into an

13  agreement to manufacture or distribute cocaine, heroin,

14  methamphetamine, or marijuana with knowledge that the substance

15  would be unlawfully imported into the United States; and

16          Second, that the defendant knowingly and intentionally

17  became a member of that conspiracy.

18          Please apply the instructions I gave you on those

19  terms here.

20          With respect to the first element, the agreement to

21  commit an unlawful act, the underlying crime of manufacturing

22  or distributing cocaine, heroin, methamphetamine, or marijuana

23  for the purpose of unlawful importation has several elements.

24  I remind you that the defendant is not charged in Count Two

25  with actually committing the unlawful act of manufacturing or

JURY CHARGE

1   distributing but, rather, with conspiring, conspiracy to commit

2   them.  I will describe for you the elements of these unlawful

3   acts so that you can understand what the Government must prove

4   was an object, an objective of the conspiracy charged in Count

5   Two.

6          First, that the defendant intentionally manufactured

7   or distributed narcotic drugs;

8          Second, that the defendant knew that the substance

9   being manufactured or distributed was a narcotic; and

10         Third, that the defendant knew that the substance

11  manufactured or distributed was to be illegally imported into

12  the United States.

13         To establish the first element, the Government must

14  prove beyond a reasonable doubt that the material manufactured

15  or distributed was, in fact, cocaine, heroin, methamphetamine,

16  or marijuana.  The Government may prove this either through

17  direct or circumstantial evidence.

18         An example of direct evidence would be the testimony

19  of a chemist who's done a chemical analysis of the material.

20  Circumstantial evidence would be evidence from which you could

21  infer that the material was cocaine, heroin, methamphetamine,

22  or marijuana such as testimony concerning the names used by the

23  defendant to refer to the material or testimony about the

24  material's appearance.

25         Whether the Government relies on direct or

JURY CHARGE

1   circumstantial evidence to prove that the material in issue was

2   one of these drugs, it has to prove that beyond a reasonable

3   doubt.  To establish the first element, the Government must

4   also prove beyond a reasonable doubt that the defendant

5   intentionally manufactured or distributed the cocaine, heroin,

6   methamphetamine, or marijuana.  Please consider my definition

7   of the term "intentionally" here.

8          I also instruct you that the word "manufacture" has

9   its plain and ordinary meaning and that the word "distribute"

10  means to deliver a narcotic.  Deliver is defined as the actual

11  constructive or attempted transfer of a narcotic.

12         Simply stated, the words "distribute" and "deliver"

13  mean to pass on or to hand over to another or to cause to be

14  passed on or handed to another or to try to pass on or hand

15  over to another narcotics.  For example, if "A" tells or orders

16  "B" to hand over the drugs to "C," then "A" has caused the

17  drugs to be handed over and, therefore, has distributed them.

18         Distribution does not require a sale.  Activities in

19  furtherance of the ultimate sale such as vouching for the

20  quality of the drugs, negotiating for or receiving the price,

21  and supplying or delivering the drugs may constitute

22  distribution.  In short, distribution requires a concrete

23  involvement in the transfer of the drugs.

24         To establish the second element, the Government has to

25  prove that the defendant knew that it was narcotics being

1    manufactured or distributed and that this was not due to

2    carelessness, negligence, or mistake.  Although the Government

3    must prove that the defendant knew that he was manufacturing or

4    distributing narcotics, the Government does not have to prove

5    that the defendant knew the exact nature of the drugs involved.

6    It's enough that the Government proves that the defendant knew

7    that it was some kind of narcotic.

8         To establish the third element, the Government has to

9    prove that the defendant knew that the drugs were intended to

10   enter the United States from outside the United States and that

11   this didn't occur by accident or mistake.  Therefore, to

12   summarize, if you find that the defendant entered into an

13   agreement to manufacture or distribute cocaine, heroin,

14   methamphetamine, or marijuana with the knowledge that the

15   substance would be imported into the United States and that he

16   entered into that agreement knowingly and intentionally, then

17   you must find the defendant guilty of the crime charged in

18   Count Two.  If, however, you find that the Government did not

19   prove each element of the conspiracy beyond a reasonable doubt,

20   then you must reach a verdict of not guilty.

21        Your decision as to whether the defendant conspired to

22   commit this particular unlawful act of conspiracy must be

23   unanimous like every other charge you have to find on.  I'll

24   tell you more later.  Your findings have to be unanimous.

25        If you determine that the defendant is guilty beyond a

1    reasonable doubt of the crime charged in Count Two, you must

2    determine whether the Government has established beyond a

3    reasonable doubt that the conspiracy involved at least 5

4    kilograms or more of cocaine or at least 1 kilogram or more of

5    heroin or at least 500 grams of methamphetamine or at least

6    1,000 kilograms of marijuana that is attributable to the

7    defendant as a result of his own conduct or the conduct of

8    other conspirators that he should have been able to foresee.

9            You'll see those questions on the verdict sheet that

10   I'm going to give you.

11           Let me move then to Count Three.  Count Three is

12   another conspiracy charge, cocaine importation, conspiracy to

13   import cocaine.  It reads in relevant part:

14           In or about and between January, 1989, and September,

15   2014, the defendant, together with others, did knowingly and

16   intentionally conspire to import a controlled substance into

17   the United States from a place outside thereof, which offense

18   involved a substance containing cocaine, a Schedule II

19   controlled substance.

20           The amount of cocaine involved in the conspiracy

21   attributable to the defendant as a result of his own conduct

22   and the conduct of other conspirators reasonably foreseeable to

23   him was at least 5 kilograms or more of a substance containing

24   cocaine.

25           Now I've already instructed you on the law of

1    conspiracy.  So please apply those instructions here.

2            Before you may convict the defendant of the cocaine

3    importation conspiracy charged in Count Three, the Government

4    must establish beyond a reasonable doubt each of the following

5    elements of the offense:

6            First, that two or more persons entered into an

7    agreement to import cocaine into the United States from

8    someplace outside the United States; and

9            Second, that the defendant knowingly and intentionally

10   became a member of that conspiracy.

11           Please apply the prior instruction that I gave you on

12   those terms here.

13           With respect to the first element, the agreement to

14   commit an unlawful act, the underlying crime of unlawful

15   importation of cocaine has several elements.  I want to remind

16   you that the defendant is not charged in Count Three with

17   actually committing the unlawful act of importing cocaine but,

18   rather, with conspiring to commit it.

19           I'm going to describe to you the elements of this

20   unlawful act anyway so that you can understand what the

21   Government must prove was an objective of the conspiracy

22   charged in Count Three:

23           First, that the defendant intentionally brought or

24   played a part in bringing narcotic drugs into the United States

25   from someplace outside the United States;

JURY CHARGE

1    Second, that the defendant knew that the substance

2  being imported was a narcotic drug; and

3    Third, that the defendant knew that he was importing

4  narcotic drugs into the United States.

5    To establish the first element, the Government must

6  prove two things beyond a reasonable doubt:

7    First, that the narcotics were brought into the United

8  States from someplace outside the United States; and

9    Second, that the material the defendant is charged

10  with bringing into the United States is, in fact, cocaine.

11    As I instructed you on Count Two, the Government may

12  prove this through direct or circumstantial evidence.  So

13  please apply that same instruction here.

14    To establish the second element, the Government has to

15  prove that the defendant knew that it was narcotics he was

16  bringing into the United States and that this wasn't due to

17  carelessness, negligence, or mistake.  The same as Count Two,

18  the Government doesn't have to prove that the defendant knew

19  the exact nature of the drugs involved.  All the Government has

20  to prove beyond a reasonable doubt is that the defendant knew

21  it was some kind of narcotic.

22    To establish this third element, the Government must

23  prove that the defendant knew that drugs would enter the United

24  States from outside the United States and that this did not

25  occur by accident or mistake.

Lisa Schmid, CCR, RMR
Official Court Reporter

JURY CHARGE

1    So, to summarize, if you find that defendant entered

2 into an agreement to unlawfully import cocaine and that he

3 entered into that agreement knowingly and intentionally, then

4 you must find the defendant guilty of the crime charged in

5 Count Three.  If, however, you find that the Government did not

6 prove each element of the conspiracy beyond a reasonable doubt,

7 then you have to reach a verdict of not guilty.  Again, your

8 decision as to whether the defendant conspired to import

9 cocaine into the United States has to be unanimous.

10    If you determine that the defendant is guilty beyond a

11 reasonable doubt of the crime charged in Count Three, you must

12 also determine whether -- you have a quantity requirement you

13 have to find.  You have to find whether the Government has

14 established beyond a reasonable doubt that the conspiracy

15 involved at least 5 kilograms or more of a substance containing

16 cocaine that is attributable to the defendant as a result of

17 his own conduct or the conduct of other conspirators that was

18 reasonably foreseeable to him.  Those questions will also be on

19 the verdict sheet.

20    How are you feeling now?  Everyone still strong?

21 Still going?  Okay.

22    Count Four.  This is charged as another conspiracy, a

23 cocaine distribution conspiracy.  It reads in relevant part:

24    In or about and between January, 1989, and September,

25 2014, the defendant, together with others, did knowingly and

JURY CHARGE

1   intentionally conspire to distribute and possess with intent to

2   distribute a controlled substance, which offense involved a

3   substance containing cocaine, a Schedule II controlled

4   substance.  The amount of cocaine involved in the conspiracy

5   attributable to the defendant as a result of his own conduct

6   and the conduct of other conspirators reasonably foreseeable to

7   him was at least 5 kilograms or more of a substance containing

8   cocaine.

9           Again, I have already instructed you on the law of

10  conspiracy.  So you know how to apply those instructions here.

11  If you're going to convict him on Count Four, the Government

12  has to establish the following two elements beyond a reasonable

13  doubt:

14          First, that two or more persons entered an agreement

15  to distribute or possess with intent to distribute cocaine

16  within the Eastern District of New York and elsewhere; and

17          Second, that the defendant knowingly and intentionally

18  became a member of that conspiracy.

19          Please refer to my prior instructions on these two

20  elements.

21          With respect to the first element, the agreement to

22  commit an unlawful act, the underlying unlawful act of

23  distribution or possession with the intent to distribute

24  cocaine has several elements.  Now, I again remind you that

25  he's not charged in this Count Four with actually committing

JURY CHARGE

1    these unlawful acts but rather with conspiring to produce them.

2    Nevertheless, I'm going to describe for you the elements of

3    those unlawful acts so you can understand what the Government

4    must prove was an objective of the conspiracy.

5         The crime of possession with the intent to distribute

6    consists of the following elements:

7         First, that the defendant possessed narcotic drugs;

8         Second, that the defendant knew he possessed narcotic

9    drugs; and

10        Third, that the defendant possessed the narcotic drugs

11   with the intent to distribute them.

12        To establish this first element, the Government would

13   have to prove beyond a reasonable doubt that the material the

14   defendant is charged with possessing was, in fact, cocaine.  As

15   was the case with Counts Two and Three, the Government must

16   prove this through direct or circumstantial evidence.  So

17   please apply that same instruction here.

18        To establish the first element, the Government must

19   also prove beyond a reasonable doubt that the defendant

20   possessed the cocaine.  In order to possess a substance, a

21   person need not own it.  The person may be possessing it for

22   somebody else.  The word "possession" as it is used in the law

23   encompasses two kinds of possession:  Actual possession and

24   constructive possession.  A person who knowingly has direct,

25   physical control over a thing at a given time is then in actual

Lisa Schmid, CCR, RMR
Official Court Reporter

JURY CHARGE

1  possession of it.  A person who, although not in actual

2  possession, knowingly has both the power and the intention at a

3  given time to exercise dominion or control over a thing either

4  directly or through another person or persons is in

5  constructive possession of it.

6       With respect to the second element, the Government

7  must prove that the defendant knew that the possessed

8  narcotics -- that he possessed narcotic drugs, the defendant

9  knew that he possessed narcotic drugs, and that this possession

10  was not due to carelessness, negligence, or mistake.  As was

11  the case with Counts Two and Three, the Government doesn't have

12  to prove that the defendant knew the exact nature of the drugs

13  in his possession.  It's enough that the Government proves that

14  the defendant knew that he possessed some kind of narcotic.

15       Now with respect to the third element, I've already

16  instructed you on what the term "distribute" means.  So apply

17  that instruction.

18       The related crime of distribution consists of the

19  following element:

20       First, that the defendant distributed narcotic drugs;

21  and

22       Second, that the defendant distributed the narcotic

23  drugs knowingly.

24       With respect to the first element, the Government must

25  prove beyond a reasonable doubt that the substance at issue is

JURY CHARGE

1    actually cocaine, as I've just instructed you with respect to

2    possession with the intent to distribute.

3           I've also instructed you on the term "distribute."  So

4    please apply that instruction here.

5           With respect to the second element, I've already

6    instructed you on the term "knowingly."  That instruction

7    applies here as well.

8           So, to summarize, if you find that the defendant

9    entered into an agreement to distribute or to possess with the

10   intent to distribute cocaine and that he knowingly did so and

11   intentionally did so, then you must find the defendant guilty

12   of the crime charged in this Count Four.  If, however, you find

13   that the Government did not prove each element of the

14   conspiracy beyond a reasonable doubt, then you have to reach a

15   verdict of not guilty.

16          Now there's also a numbers quotient here.  If you

17   unanimously do find that the defendant is guilty beyond a

18   reasonable doubt of the crime charged in Count Four, you must

19   also determine whether the Government has established beyond a

20   reasonable doubt that the amount of cocaine involved in the

21   conspiracy attributable to this defendant as a result of his

22   own conduct or the conduct of others reasonably foreseeable to

23   him was at least 5 kilograms or more of a substance containing

24   cocaine.  You'll see that question also on the verdict sheet.

25          All right.  Counts Five and Eight, I can handle

JURY CHARGE

1    together.  They're all international distribution of cocaine

2    counts, substantive crimes.  They read in part that:

3         The defendant, together with others, did knowingly and

4    intentionally distribute a controlled substance, intending and

5    knowing that such substance would be unlawfully imported into

6    the United States from a place outside thereof, which offense

7    involved 5 kilograms or more of a substance containing cocaine,

8    a Schedule II controlled substance.

9         Counts Five through Eight involve the same crime, but

10   each crime charges a different event that occurred allegedly at

11   a different time.  Count Five charges the defendant with

12   international distribution of at least 5 kilograms of cocaine

13   in or about December, 2008.

14        Count Six charges the defendant with international

15   distribution of at least 5 kilograms of cocaine in or about

16   September, 2004.

17        And Count Seven charges the defendant with

18   international distribution of at least 5 kilograms of cocaine

19   in or about August, 2004, and September, 2004.

20        Count Eight charges the defendant with international

21   distribution of at least 5 kilograms of cocaine in or about and

22   between January, 2004, and March, 2004.  So they're different

23   time periods.

24        Because the law is the same, I'm going to instruct you

25   on these charges simultaneously.  The Government must prove as

JURY CHARGE

1    to each one beyond a reasonable doubt the following elements of

2    the offense:

3              First, that the defendant distributed narcotic drugs;

4              Second, that the defendant distributed the narcotics

5    drugs knowingly; and

6              Third, that the defendant distributed -- sorry -- that

7    the defendant knew or intended that the narcotic drugs he

8    distributed would be illegally imported into the United States.

9              With respect to the first element, the Government has

10   to prove beyond a reasonable doubt that the substance at issue

11   is actually cocaine.  As was the case for Counts Two through

12   Four, the Government can prove this through either direct or

13   circumstantial evidence.  I've also instructed you on the term

14   "distribute."  So apply that definition here.

15             With respect to the second element, I've also already

16   instructed you on the term "knowingly."  So that instruction

17   can be applied here.

18             With regard to the third element, the Government has

19   to prove beyond a reasonable doubt that the defendant knew that

20   the cocaine would be or intended for the cocaine to be brought

21   into the United States from somewhere outside the United

22   States.  The defendant does not need to be present in the

23   United States, as long as the defendant knew that the cocaine

24   would be distributed -- that he intended to distribute would be

25   illegally imported into the United States.

JURY CHARGE

1          Again I've already told you what the terms "knowingly"

2     and "intentionally" mean.  So please apply those here.

3          If you don't find that the Government has satisfied

4     its burden of proof with respect to each element of the

5     offenses charged in Counts Five through Eight, you may still

6     find that the Government has proven beyond a reasonable doubt

7     that the defendant committed the crimes charged in those

8     counts, if you find beyond a reasonable doubt that he aided and

9     abetted their commission.

10         You remember I instructed you on aided and abetting,

11    and you should apply those instructions here.

12         If you unanimously determine that the defendant is

13    guilty beyond a reasonable doubt of any of the crimes charged

14    in Counts Five through Eight, you also have to determine

15    whether the Government established beyond a reasonable doubt

16    that the offense involved at least 5 kilograms or more of

17    cocaine as charged in the particular count that you're

18    considering.  Those questions will also be on your verdict

19    sheet.

20         So, I've talked to you about direct liability.  I've

21    talked to you about conspiracy.  I've talked to you about

22    aiding and abetting.  There's another theory of liability that

23    the Government has for these substantive Counts Five, Six,

24    Seven and Eight.  It's what the lawyers called Pinkerton

25    Liability.  If you've ever heard of the Pinkerton Detective

Lisa Schmid, CCR, RMR
Official Court Reporter

JURY CHARGE

1    Agency, that's where it's from.  This other method can be

2    described at follows:

3             If you find beyond a reasonable doubt that the

4    defendant was a member of the conspiracy charged in Count Two

5    of the indictment and, thus, guilty on that conspiracy count,

6    then you may, but you're not required to, find him guilty of

7    the crimes charged against him in the corresponding Counts

8    Five, Six, Seven, and Eight.  To do so, however, you would have

9    to find beyond a reasonable doubt each of the following

10   elements as to the counts you are considering:

11            First, that the crime charged in the substantive

12   counts was actually committed;

13            Second, that the person or persons you find actually

14   committed the crime were members of the conspiracy that you

15   found existed in Count Two, not some other conspiracy;

16            Third, that the substantive crime was committed

17   pursuant to the common plan and understanding that you found to

18   exist among the conspirators in Count Two; and

19            Fourth, that the defendant was a member of that

20   conspiracy at the time that substantive crime, whether it's in

21   Count Five, Six, Seven, or Eight, was, in fact, committed;

22            Fifth, you have to find that the defendant could have

23   reasonably foreseen that the substantive crime might be

24   committed by his co-conspirator.

25            If you find all five of these elements to exist beyond

JURY CHARGE

1    a reasonable doubt, then you may find the defendant guilty of

2    the substantive crime you are considering, even if he did not

3    personally participate in the acts concerning the crime or did

4    not have actual knowledge of it.

5          The reason for this rule is simply that a

6    co-conspirator who commits a substantive crime pursuant to a

7    conspiracy is deemed to be the agent of the other conspirators.

8    Therefore, all of the co-conspirators must bear criminal

9    responsibility for the commission of the substantive crime

10   committed by its member if these five elements that I've just

11   read to you are satisfied.  If, however, you're not satisfied

12   as to the existence of any of these five elements, then you may

13   not find the defendant guilty of the substantive crime, unless

14   the Government proves beyond a reasonable doubt that he

15   personally committed or aided and abetted the commission of the

16   substantive crime charged.

17         I think we will take a short break for my voice, if

18   nothing else; and then we'll circle back to Count One which, as

19   you may recall from closing arguments, is the longest of the

20   counts.  Let's take until noon.  Please do not start discussing

21   the case amongst yourselves yet, not at all.  Talk about the

22   Super Bowl last night, talk about anything else, but not this

23   case.  See you in 15 minutes.

24         (Jury exits.)

25         THE COURT:  Okay.  Recess 15 minutes.  I'm about

JURY CHARGE

1    two-thirds done, I think, maybe three-quarters.

2              (Recess.)

3              THE CLERK:  All rise.

4              THE COURT:  Okay.  Bring in the jury.

5              (Jury enters.)

6              THE COURT:  All right.  Everyone be seated.

7              We're getting there, ladies and gentlemen.  Should be

8    done in time for lunch.

9              Let me now turn to Count One.

10             Okay.  As is always the case when you have something

11   to read, don't let it distract you from listening; but I

12   thought, because the counts were complicated, this will help

13   you follow along with that.

14             This count charges the defendant with conducting a

15   Continuing Criminal Enterprise, CCE.  Please pay close

16   attention.  It reads as follows:

17             In or about and between January, 1989, and September,

18   2014, the defendant, together with others, did knowingly and

19   intentionally engage in a Continuing Criminal Enterprise in

20   that the defendant committed violations of Title 21, US Code,

21   Sections 841(a), 846, 959(a), and 960(a), including Violations

22   1 through 27 -- we're going to get to those violations, 1

23   through 27 -- which violations were part of a continuing series

24   of violations of those statutes undertaken by the defendant, in

25   concert with five or more persons with respect to whom the

JURY CHARGE

1    defendant occupied a supervisory and management position, and

2    was one of several principal administrators, organizers, and

3    leaders of the Continuing Criminal Enterprise, and from which

4    continuing series of violations the defendant obtained

5    substantial income and resources, and which enterprise received

6    in excess of $10 million in gross receipts during one or more

7    12-month period for the manufacture, importation, and

8    distribution of cocaine.

9         The violations involved at least 300 times the

10   quantity of substance described in the statute, that is, 150

11   kilograms or more of a substance containing cocaine.  The

12   continuing series of violations as defined by the United States

13   Code, Section 848(c), Title 21, Violation 1 charges the

14   defendant with international cocaine distribution of 3200

15   kilograms of cocaine in or about January, 2005.

16        Violation 2 charges the defendant with international

17   cocaine distribution of 12,000 kilograms of cocaine in or about

18   and between August, 2004, and September, 2004.

19        Violation 3 charges the defendant with international

20   cocaine distribution of 10,500 kilograms of cocaine in or about

21   and between August, 2004, and September, 2004.

22        Violation 4 charges the defendant with international

23   cocaine distribution of 10,000 kilograms of cocaine in or about

24   July, 2004.

25        Violation 5 charges the defendant with international

JURY CHARGE

7010

1  cocaine distribution of 10,000 kilograms of cocaine in or about

2  and between May, 2004, and June, 2004.

3        Violation 6 charges the defendant with international

4  cocaine distribution of 800 kilograms of cocaine in or about

5  April, 2004.

6        Violation 7 charges the defendant with international

7  cocaine distribution of 10,000 kilograms of cocaine in or about

8  and between March, 2004, and April, 2004.

9        Violation 8 charges the defendant with international

10  cocaine distribution of 8,000 kilograms of cocaine in or about

11  and between January, 2004, and March, 2004.

12        At this point, ladies and gentlemen, I'm going to let

13  you read them over to yourself.  I'll reference them, and then

14  I'd like you to read each one to yourself.  Everyone can see

15  them clearly; is that right?

16        All right.  So next we have Violation 9, 6465

17  kilograms, January, 2004; Violation 10, 6,000 kilograms,

18  November to December, 2003; Violation 11, 3600 kilograms,

19  August, 2003, to September, 2003; Violation 12, 7300 kilograms,

20  April 21, 1993; Violation 13, 450 kilograms, December, 2008;

21  Violation 14, 8300 kilograms, October 1st, 2009, to October

22  9th, 2009; Violation 15, 7500 kilograms between February 6th

23  and February 7th, 2009; Violation 16, 4716 kilograms on or

24  about September 13, 2008; Violation 17, 5,000 kilograms,

25  September 9th through September 12th, 2008; Violation 18,

Lisa Schmid, CCR, RMR
Official Court Reporter

JURY CHARGE

1   19,000 kilograms, March 18, 2007; Violation 19, 403 kilograms,

2   January 30th, 2014; Violation 20, 1,997 kilograms,

3   January 28th, 2003; Violation 21, 1952 kilograms, August 16th,

4   2002; Violation 22, 1923 kilograms, May 24th, 2002; Violation

5   23 -- Violation 23, 1100 kilograms, September 15th, 1999;

6   Violation 24, marijuana distribution, 409 kilograms,

7   January 15th, 2012; Violation 25, 20 kilograms of heroin,

8   November 13th, 2008; Violation 26, 926 kilograms of cocaine,

9   May 11th, 1990; Violation 27, murder conspiracy between January

10  of 1989 and September, 2014.

11          Now I'll note for the record that I have been

12  displaying this list and will continue to display this

13  instruction on the jury's monitors and on the Court's overhead

14  screen.

15          Ladies and gentlemen, in effect, the Government has

16  charged that the defendant has engaged in the business of

17  trafficking of prohibitive drugs on a continuing serious,

18  widespread, supervisory, and substantial basis.  In order to

19  meet its burden of proof on this offense, the Government must

20  prove beyond a reasonable doubt the following five elements:

21          First, the defendant committed at least one felony in

22  violation of the federal narcotics laws;

23          Second, this offense was part of a series of three or

24  more offenses committed by the defendant in violation of the

25  Federal narcotics laws.

1          The parties can interrupt me if they think I'm wrong

2    about this.

3          Ladies and gentlemen, you'll notice that in the first

4    element it requires one narcotics violation; and in the second

5    element it requires three or more narcotics offenses.  I think

6    the reason for that is because that second element could

7    encompass narcotics misdemeanors, but it does not in this case.

8    In this case it's only felonies.  So what we're talking about,

9    really I think Element One is out of the case; and what the

10   jury has the find for this is three or more felony Federal

11   narcotics violations.

12         Do the parties agree with that?

13         MR. BALAREZO:  Yes.

14         MR. FELS:  Yes.

15         THE COURT:  Third is that the defendant committed the

16   offenses in this series of violations in concert with five or

17   more persons;

18         Fourth, the defendant occupied a position of

19   organizer, supervisor, or manager with respect to these five or

20   more persons; and

21         Fifth, the defendant obtained a substantial income or

22   resources from this series of violation of Federal drug laws.

23         Now I'm going to instruction you in detail on each of

24   these elements.  As to the first, the Government has to prove

25   beyond a reasonable doubt that the defendant committed at least

1    one felony drug offense.  Here, the Government has alleged that

2    the defendant committed 27 separate felony violations of

3    Federal narcotics laws.  That's the bullet point list that I

4    just listed for you.

5         Next, each of the alleged violations falls into one of

6    three categories of offenses:  International cocaine

7    distribution -- hang on one second -- cocaine, heroin, and

8    marijuana distribution and murder conspiracy.  All those 27

9    charges break up into one of those three categories.

10        To satisfy the first element of Count One, the

11   Government has to establish beyond a reasonable doubt that the

12   defendant committed one of those 27 violations because, as I

13   just explained to you, in effect, since Count Two is

14   overlapping, the Government has to prove that the defendant

15   committed three narcotics felonies.

16        Violations 1 through 19 charge international cocaine

17   distribution, and Violations 20 through 26 charge drug

18   distribution.  I've already instructed you on the elements of

19   those crimes.  So I'm not going to do that again.  Go back to

20   my earlier instruction.

21        I also instruct you that Violation 2 corresponds to

22   Counts Six.  Violation 3 corresponds to Count Seven.  Violation

23   8 corresponds to Count Eight.  Violation 13 corresponds to

24   Count Nine.  So, in other words, ladies and gentlemen, these

25   acts that are charged as violations in this Count One, they're

1  also charged separately, some of them, in Count Seven, Count

2  Eight, and Count Five and Count Six and Count Two -- Two, yeah.

3        Six, Seven, Eight, Five, those are the ones that have

4  both a list of 27, is also in separate counts.

5        Thus, if you find that Government has proved beyond a

6  reasonable doubt that the defendant is guilty of any of the

7  offenses charged in Counts Five, Six, Seven or Eight of the

8  indictment, then you should find that the first element of the

9  continuing criminal enterprise has also been satisfied.  You

10  may also use the alternative method to evaluate the possible

11  guilt of the defendant for Counts Five through Eight on which

12  I've just instructed you to determine whether the Government

13  has met its burden with respect to that first element.

14        This alternative method for evaluating the defendant's

15  conduct also applies to the first 26 of the 27 violations in

16  Count One which I just read or summarized for you.

17        Specifically, if in light of my instructions you

18  unanimously find beyond a reasonable doubt that the defendant

19  was a member of the conspiracies charged in Counts Two through

20  Four of the indictment, then you may also, but you are not

21  required to, find that he committed Violations 1 through 26 of

22  Count One, provided that you find beyond a reasonable doubt

23  each of the following elements as to the violation you are

24  considering; and this goes back again to that Pinkerton

25  Liability theory that I gave you before, ladies and gentlemen.

JURY CHARGE

1    It's the same elements, but I'll read them over.

2            First, that the crime alleged in the violation was

3    committed;

4            Second, that the person or persons you find actually

5    committed the crime were members of a conspiracy that you found

6    existed in Counts Two through Four;

7            Third, the crime was committed pursuant to the common

8    plan and understanding that you found to exist among the

9    conspirators;

10           Fourth, the defendant was a member of that conspiracy

11   at the time the crime alleged in the violation was committed;

12   and

13           Fifth, that the defendant could have reasonably

14   foreseen that the crime might be committed by his

15   co-conspirators.

16           On this alternate theory, if you find that all five of

17   these elements exist beyond a reasonable doubt, then you may

18   but are not required to find that the defendant committed the

19   violation of Count One that you're considering, even if you

20   also find he did not personally participate in the acts

21   constituting the crime or did not have actual knowledge of

22   those acts.

23           If you use this alternative Pinkerton method to find

24   that the defendant committed one or more violations, you should

25   find that the first element of the continuing criminal

JURY CHARGE

1  enterprise charged in Count One has been satisfied.  However,

2  you're still going to need to consider the remaining four

3  elements of the continuing criminal enterprise on which I have

4  already instructed you.

5      The 27th violation is different.  It charges that the

6  defendant, while engaged in one or more of the narcotics

7  conspiracies alleged in Counts Two through Four, knowingly and

8  intentionally conspired to kill or caused the intentional

9  killing of one or more persons, that is, persons who posed a

10 threat to the Sinaloa Cartel.  In order to prove this violation

11 against the defendant, the Government must prove beyond a

12 reasonable doubt the following elements of the offense:

13      First, that the defendant was engaged in a narcotics

14 conspiracy as charged in Counts Two through Four;

15      Second, that the defendant knowingly and intentionally

16 agreed with one or more persons to kill individuals or groups

17 of persons who posed a threat to the Sinaloa cartel and those

18 groups are informants -- and I'll leave the date to you --

19 members of the Beltrán Levya organization; members of the

20 Carrillo Fuentes organization; members of Los Zetas; members of

21 the Arellano Felix organization; members of Arellano Felix

22 organization at Christine's Discotheque; Miguel Martinez

23 Martinez; Ramón Arellano Felix and Rodolfo Carrillo Fuentes;

24 Julio César Beltrán Quintero; Juan Pablo Ledezma; Roberto

25 Velasco Bravo, Nemesio, Commander Rafita; José Luis Santiago

JURY CHARGE

1    Vasconcelos; Juan Ramón Zapata; Israel Rincon Martinez; Juan

2    Guzmán Rocha; Jose Miguel Bastidas Manjarrez; Cesar Gastelum

3    Serrano; Leopoldo Ochoa; Christian Rodriguez; Stephen Tello;

4    Andrea Fernández Vélez; Manuel Alejandro Aponte Gómez;

5    Francisco Aceves Urías.

6           Now, the Government need not prove that the individual

7    or group of persons who the defendant agreed to kill was, in

8    fact, killed, only that there was an unlawful agreement to do

9    so.  You only need to find that the defendant agreed with one

10   or more persons to kill at least one of the individuals or

11   groups of persons who posed a threat to the Sinaloa Cartel so

12   identified; but you must be unanimous as to that individual

13   group of persons.

14          I've already instructed you on the terms "knowingly"

15   and "intentionally."  So, please apply those instructions

16   there.

17          So, in other words, ladies and gentlemen, if you find

18   the defendant is not responsibility for any of those people

19   listed on this list, he has not violated this No. 27.  If you

20   find that any one person on this list was the object of the

21   conspiracy and was, in fact, killed, then you can find him

22   guilty of that Violation 27; but what you can't do -- and this

23   is what I want to emphasize to you -- you can't have four of

24   you think it was one person, four of you think it was another

25   person, and four of you think it was a third person and then

JURY CHARGE

1    say, "Okay.  We've got Violation 27."  If you agree on one or

2    more, you have to agree on one or more unanimously.

3           Am I clear about that?

4           JURORS:  (Nod heads up and down.)

5           THE COURT:  You'll see it's better when you read over

6    the instructions.

7           Third, the Government has to prove that the agreement

8    to kill individuals or groups of persons occurred because of

9    and as part of the defendant engaging in a narcotics

10   conspiracy.  To prove this elements, the Government must

11   establish that the agreement was related in some meaningful way

12   to the drug conspiracy as charged in Counts Two through Four.

13   For example, a defendant engaging in drug distribution who

14   conspires to kill his or her spouse in a purely nondrug-related

15   domestic dispute would not satisfy this element.  It's got to

16   be a part of the drug distribution.

17          You may find that the agreement was related to a drug

18   conspiracy if you find that there was a connection between the

19   defendant's role in the agreement and his participation in the

20   conspiracy.  It's not necessary for the Government to prove

21   that this was the sole purpose or even the primary purpose for

22   the agreement to kill individuals or groups of persons, just

23   that there was some substantive connection between the

24   defendant's role in the drug conspiracy and his role in the

25   murder conspiracy.

JURY CHARGE

1     With respect to the second element of Count One, the

2    Government must prove beyond a reasonable doubt that the

3    violation the Governments established in the first element was

4    one of a continuing series of violations of the Federal drug

5    laws.  A continuing series of violations is defined as three or

6    more violations of the Federal drug laws committed over a

7    definite period of time and related to each other in some way,

8    as distinguished from isolated or disconnected acts.  If you

9    find three or more of the 27 charged violations proven as part

10   of a continuing series, this element is met, so three or more

11   of those 27 in order to meet that second element.

12           And I believe again -- the parties can correct me if

13   I'm wrong -- each of those minimum of three has to be found

14   unanimously.

15           Is that right?

16           MR. BALAREZO:  Yes.

17           THE COURT:  Okay.  You've got to be unanimous as to

18   each sub-event.

19           The verdict form I will give you will list each of the

20   alleged violations of Federal drug laws alleged by the

21   Government that you may consider in determining whether the

22   Government has proven a continuing series of violations.  You

23   must consider the evidence separately with regard to each and

24   render separate verdicts as to whether the Government has

25   proven each alleged violation beyond a reasonable doubt.

JURY CHARGE

1    Again, as I just said, to find the defendant guilty,

2 you must unanimously agree on which three specific violations

3 constitute the continuing series of violations.

4    The third element that the Government has to prove

5 beyond a reasonable doubt is that the defendant committed the

6 continuing series of violations in concert with five or more

7 persons.  Those persons do not have to be named in the

8 indictment.  They could be anyone who you find beyond a

9 reasonable doubt were persons with whom the defendant committed

10 the violations.  You do not have to find that the five or more

11 persons acted together at the same time or that the defendant

12 personally dealt with them together.  You also do not have to

13 find that the defendant had the same relationship with each of

14 them.

15    The Government must, however, prove beyond a

16 reasonable doubt that the defendant and at least five other

17 persons were part of an agreement or a joint action to commit

18 the continuing series of violations of the Federal drug laws.

19 It's not necessary that you identify each of these five persons

20 by their first and last names.  Identifying them by their first

21 names or street names is sufficient, as long as you determine

22 that they are, in fact, five separate persons.  You must

23 unanimously agree on which five or more people the defendant

24 committed the violations with.

25    The fourth element that the Government must prove

Lisa Schmid, CCR, RMR
Official Court Reporter

JURY CHARGE

1    beyond a reasonable doubt is that the defendant occupied the

2    position of organizer, supervisor, or manager with respect to

3    these five or more persons.  In considering whether the

4    defendant occupied such a position, you should give the words

5    "organizer, supervisor, or manager" their ordinary, everyday

6    meaning.  The Continuing Criminal Enterprise law distinguishes

7    between what amounts to employees of the enterprise and those

8    who conceive of and coordinate the enterprise's activities.

9    The Government does not need to prove that the defendant was

10   the sole ringleader of the enterprise.  An enterprise may have

11   more than one organizer or ringleader.  The Government meets

12   its burden on this element if it proves beyond a reasonable

13   doubt that the defendant exercised organizational, supervisory,

14   or managerial responsibilities over the five or more persons.

15   The Government need not prove that the same type of

16   superior/subordinate relationship existed between the defendant

17   and each of the people he allegedly organizes, supervises, or

18   controls.

19         In considering whether the defendant occupied an

20   organizational, supervisory, or managerial relationship with

21   respect to five or more persons, you should consider evidence

22   that might distinguish the defendant's position from that of an

23   underling in the enterprise.  Did the defendant negotiate

24   large-scale purchases or sales of narcotics?  Did he make

25   arrangements for transportation of money washing?  Did he

JURY CHARGE

1    instruct the participants in these transactions?  These

2    inquiries are not conclusive.  They're simply the kinds of

3    questions you should ask yourselves in thinking about the

4    defendant's role in these activities and his relationship with

5    other persons involved in them.

6         The fifth element the Government must prove beyond a

7    reasonable doubt is that the defendant derives substantial

8    income or resources from this continuing series of Federal drug

9    law violations.  The law does not set forth the minimum amount

10   of money required to constitute substantial income, but it

11   clearly intends to exclude trivial amounts derived from

12   occasional narcotics sales.  If you determine that the

13   defendant received only small amounts of money or other

14   insignificant gain from drug-related activity, then you must

15   find him not guilty of Count One.

16        In considering whether the defendant derived

17   substantial income or resources from the continuing series of

18   drug law violations, you may consider the defendant's gross

19   income and anticipated profits from these violations, as well

20   as the net profits that he actually realized from them.  You

21   may also consider evidence from which you can infer a receipt

22   of substantial income or resources such as lavish spending with

23   no visible legitimate source of income.  Keep in mind, however,

24   that the Government must prove that the defendant actually

25   obtained substantial income from his narcotics activities and

1    that, as with all other element of the offense, the Government

2    must prove this element beyond a reasonable doubt.

3         If you determine that the defendant is guilty beyond a

4    reasonable doubt of the crime charged in Count One, you will

5    also be asked to indicate on the verdict sheet whether the

6    Government has proven beyond a reasonable doubt that, first,

7    the defendant was at least one of the principal administrators,

8    organizers, or leaders of the continuing criminal enterprise;

9    and, second, that at least one violation involved at least

10   150 kilograms of cocaine or that the enterprise received $10

11   million in gross receipts during any 12-month period of its

12   existence for the manufacture, importation, or distribution of

13   cocaine.

14        With respect to the first question, I instruct you

15   that the Government does not need to prove that the defendant

16   was the sole principal administrator, organizer, or leader of

17   the continuing criminal enterprise.  An enterprise may have

18   more than one principal administrator, organizer, or leader.

19   You should give the terms "principal administrator, organizer,

20   or leader" their everyday meaning as you would in a public or

21   business community.

22        All right.  We're on to Count Nine.  Count Nine

23   charges the defendant with using or carrying a firearm during

24   the commission of a drug trafficking crime as charged in Counts

25   One through Four.  It reads in relevant part:

JURY CHARGE

1      In or about and between January, 1989, and September,

2  2014, the defendant, together with others, did knowingly and

3  intentionally use and carry one or more firearms during and in

4  relation to one or more drug trafficking crimes, that is, the

5  crimes charged in Counts One through Four, and did knowingly

6  and intentionally possess such firearms in furtherance of said

7  drug trafficking crimes, one or more of which firearms was

8  brandished and discharged or one or more of which firearm was a

9  machine gun.

10      This count is to be considered only if you find the

11 defendant guilty of at least one of the drug trafficking crimes

12 charged in Counts One, Two, Three, or Four.  If upon all the

13 evidence you find that the Government has failed to prove

14 Counts One through Four beyond a reasonable doubt, then you

15 cannot proceed any further on Count Nine.  In reaching your

16 verdict on Count Nine, you may consider the evidence of Counts

17 One through Four only for the purpose of determining whether

18 the elements of Count Nine have been satisfied.  You may not

19 consider for the purpose of Count Nine any evidence that

20 relates to any other counts than Counts One through Four.

21      The Government has to prove each of the following

22 elements beyond a reasonable doubt to sustain its burden of

23 proving the defendant guilty as to Count Nine:

24      First, that the defendant committed a drug trafficking

25 crime for which he might be prosecuted in a court of the United

JURY CHARGE

1  States as charged in Counts One, Two, Three, or Four; and

2          Second, that the defendant knowingly used or carried a

3  firearm during and in relation to the commission of or

4  knowingly possessed a firearm in furtherance of the drug

5  trafficking crimes charged in Counts One, Two, Three or Four.

6          As to the first element, the defendant is charged in

7  Counts One through Four with engaging in a continuing criminal

8  enterprise and narcotics conspiracy.  I instruct you that the

9  those crimes are, in fact, drug trafficking crimes; but it's

10  for you determine if the Government has proven beyond a

11  reasonable doubt that the defendant committed the crimes

12  charged in Counts One through Four.

13          As for the second element, I instruct you that a

14  firearm is any weapon that will, or is designed to, or may

15  readily be converted to expel a projectile by the action of an

16  explosive.  I also instruct you that a gun is a firearm.

17          To prove that the defendant used the firearm, the

18  Government must prove beyond a reasonable doubt that an active

19  employment of the firearm by the defendant during and in

20  relation to the commission of the drug trafficking crime.

21          Let me look at that sentence a second.

22          (Brief pause.)

23          THE COURT:  I think the word "that" should be dropped.

24          Do the parties agree with me?

25          MS. PARLOVECCHIO:  Yes, Your Honor.

JURY CHARGE

1          MR. BALAREZO:  Sure.

2          THE COURT:  I'm going to read that sentence again.

3          To prove that the defendant used the firearm, the

4    Government must prove beyond a reasonable doubt an active

5    employment of the firearm by the defendant during and in

6    relation to the commission of the drug trafficking crime.  This

7    does not mean that the defendant must actually fire or attempt

8    to fire the weapon, although those would obviously constitute

9    uses of the weapon.  Brandishing, displaying, or even referring

10   to the weapon so that others present knew that the defendant

11   had the firearm available, if needed, all constitute use of the

12   firearm.  However, the mere possession of a firearm at or near

13   the site of a crime without active employment, as I just

14   described it, is not sufficient to constitute use of a firearm.

15         To prove that the defendant carried the firearm, the

16   Government must prove beyond a reasonable doubt that the

17   defendant had the weapon within his control in such a way that

18   it furthered the commission of the drug trafficking crime or

19   was an integral part of the commission of the crime.  The

20   defendant did not necessarily have to hold the firearm

21   physically, that is, have actual possession of it on his

22   person.  If you find that the defendant had dominion and

23   control over the place where the firearm was located and had

24   the power and intention to exercise control over the firearm in

25   such a way that it furthered the commission of a drug

JURY CHARGE

1  trafficking crime, you may find that the Government has proven

2  that the defendant carried the weapon.

3       To prove that the defendant possessed a firearm in

4  furtherance of the crime, the Government must prove that the

5  defendant had possession of the firearm and such possession was

6  in furtherance of that crime.

7       Possession means that the defendant either had

8  physical possession of the firearm on his person or that he had

9  dominion and control over the place where the firearm was

10  located and had the power and intention to exercise control

11  over the firearm.

12       To possess a firearm in furtherance of the crime means

13  that the firearm helped forward, advance, or promote the

14  commission of the crime.  The mere possession of the firearm at

15  the scene of the crime is not sufficient under this definition.

16  The firearm must have played some part in furthering the crime

17  in order for this element to be satisfied.

18       To satisfy this element, you must also find that the

19  defendant used, carried, or possessed the firearm knowingly.

20  This means that he carried the firearm purposely and

21  voluntarily and not by accident or mistake.  It also means that

22  he knew that the weapon was a firearm as we commonly use the

23  word.  However, the Government is not required to prove that

24  the defendant knew that he was breaking the law.  You may also

25  find the defendant guilty of Count Nine if the Government has

JURY CHARGE

1    proven beyond a reasonable doubt that the defendant aided and

2    abetted another in using or carrying a firearm during and in

3    relation to or in possessing a firearm in furtherance of a drug

4    trafficking crime.

5            To find the defendant guilty as an aider and abettor

6    on this count, however, it's not enough to simply find beyond a

7    reasonable doubt that defendant knew that a firearm would be

8    used, carried, or possessed during the commission of the

9    underlying crime of violence or drug trafficking crime.

10   Rather, there are two additional requirements that apply to

11   aiding and abetting the use, carrying, or possession of a

12   firearm.  In order to find the defendant guilty of aiding and

13   abetting the use or carrying of a firearm during and in

14   relation to or possession of a firearm in furtherance of a drug

15   trafficking crime, you must find that the defendant (1) took an

16   affirmative act in furtherance of that offense and (2) with the

17   intent of facilitating the offense's commission.

18           A person takes an affirmative act in furtherance of an

19   offense if he facilitates, that is, if he acts to help or

20   assist or make possible any part, though not necessarily every

21   part, of the crime.  An affirmative act includes all assistance

22   rendered by words, acts, encouragement, support, or presence.

23   As a result, in the context of aiding and abetting the use of

24   or carrying of a firearm during and in relation to or

25   possession of a firearm in furtherance of a crime of violence

Lisa Schmid, CCR, RMR
Official Court Reporter

JURY CHARGE

1  or drug trafficking crime, a person takes the necessary

2  affirmative act if he facilitates the use, carrying, or

3  possession of a firearm or commission of the crime of violence

4  or drug trafficking crime.  It is not necessary that the person

5  facilitates both the possession of the firearm and a crime of

6  violence or drug trafficking crime.

7          A person acts with required intent if he knowingly

8  associates himself in some way with the crime and participates

9  in the crime by doing some act to help make the crime succeed.

10  This intent requirement is satisfied when a person actively

11  participates in a criminal venture with full knowledge of the

12  circumstances constituting the charged offense.  In the context

13  of aiding and abetting the use or carrying of a firearm during

14  and in relation to or possession of a firearm in furtherance of

15  a drug trafficking crime, a person acts with the requisite

16  intent if he had advance knowledge that a confederate would use

17  or carry a firearm during and in relation to, or possess a

18  firearm in furtherance of, a drug trafficking crime.

19          "Advance knowledge" means knowledge at a time the

20  person can attempt to alter the plan or withdraw from the

21  enterprise.  Knowledge of the gun may, but doesn't have to,

22  exist before the underlying crime is begun.  It is sufficient

23  if the knowledge is gained in the midst of the underlying

24  crime, as long as the individual continues to participate in

25  the crime and has a realistic opportunity to withdraw.

JURY CHARGE

1    You may but need not infer that the defendant had

2    sufficient foreknowledge if you find that defendant continued

3    his participation in the crime after learning about the use,

4    carrying, or possession of a gun by a confederate.

5    If you determine that the defendant is guilty beyond a

6    reasonable doubt of the crime charged in Count Nine, you'll

7    also be asked to indicate on the verdict sheet whether the

8    Government has proven beyond a reasonable doubt that the

9    defendant brandished or discharged the firearm.

10    To brandish a firearm means to display all or part of

11    the firearm or otherwise make the presence of the firearm known

12    to another person in order to intimidate that person,

13    regardless of whether the firearm is directly visible to that

14    person.

15    You may also find that the Government has proven

16    beyond a reasonable doubt that the defendant brandished or

17    discharged a firearm if he aided and abetted the brandishing or

18    discharging of a firearm during and in relation to a drug

19    trafficking crime.  I have already instructed you on the law of

20    "aiding and abetting."  So please apply those instructions

21    here.

22    When I instruct you that to aid and abet in the

23    brandishing or discharging of a firearm, the defendant need not

24    have advance knowledge that a confederate would actually

25    brandish or discharge the firearm.  This requirement is

JURY CHARGE

1  satisfied if the defendant knew that the confederate intended

2  to brandish or discharge a firearm to intimidate if the need

3  arose.

4       You will also see a question on the verdict sheet

5  about whether the defendant committed this offense using a

6  machine gun.  The term "machine gun" is defined as any weapon

7  which shoots, is designed to shoot, or can readily be restored

8  to shoot automatically more than one shot without manual

9  reloading by a single function of the trigger.  A trigger is

10  any mechanism used to initiate the firing sequence.  The term

11  "machine gun" also includes the frame or receiver of any such

12  weapon, any parts designed and intended solely and exclusively,

13  or a combination of parts designed and intended for use in

14  converting a weapon into a machine gun and any combination of

15  parts from which a machine gun can be assembled, if such parts

16  are in the possession or under the control of a person.

17       The last count is Count Ten.  This is the money

18  laundering count, ladies and gentlemen, conspiracy to launder

19  the proceeds of narcotics transactions.  It reads in relevant

20  part:

21       In or about and between January, 1989, and September,

22  2014, the defendant, together with others, did knowingly and

23  intentionally conspire to (1) conduct one or more financial

24  transactions in and affecting interstate and foreign commerce,

25  to wit, the transfer and delivery of U.S. currency, which

JURY CHARGE

1    transactions, in fact, involved the proceeds of specified

2    unlawful activity, to wit, narcotics trafficking, knowing that

3    the property involved in the transactions represented the

4    proceeds of some form of unlawful activity (A) with the intent

5    to promote the carrying on of a specified unlawful activity and

6    (B) knowing that the transactions were designed in whole and in

7    part to conceal and disguise the nature, the location, the

8    source, the ownership, and the control of the proceeds of the

9    specified unlawful activity, and to avoid one or more

10   transaction reporting requirements, contrary to Title 18, U.S.

11   Code, 1956(a)(1)(B) and (2) transport, transmit, and transfer

12   money instruments and funds from a place in the United States

13   to and through one or more places outside the United States, to

14   wit, Mexico and Colombia (A) with the intent to promote the

15   carrying on of the specified unlawful activity and (B) knowing

16   that the funds represented the proceeds of some form of

17   unlawful activity and knowing that the transportation,

18   transmission, and transfer were designed in whole and in part

19   to conceal and disguise the nature, the location, the source,

20   the ownership, and the control of the proceeds of the specified

21   unlawful activity and to avoid one or more transaction

22   reporting requirements.

23          Now, that's enough.  I've already instructed you on

24   the law of conspiracy.  So please apply those instructions

25   here.

JURY CHARGE

1    Before you may convict the defendant of the money

2    laundering conspiracy charged in this Count Ten, the Government

3    must prove the following elements beyond a reasonable doubt:

4    First, that two or more persons entered into an

5    unlawful agreement to launder money; and

6    Second, that the defendant knowingly and intentionally

7    became a member of that conspiracy.

8    Please apply my prior instructions on those terms.

9    With respect to the first element, the agreement to

10   commit an unlawful act, the underlying crime of money

11   laundering has several elements.  I remind you that the

12   defendant is not charged with actually committing the unlawful

13   act of money laundering but rather with conspiring to commit

14   it.  I will describe for you the elements of this unlawful act

15   so you can understand what the Government must prove was the

16   objective of the conspiracy.

17   First, the defendant conducted or attempted to conduct

18   a financial transaction involving property that was the

19   proceeds of drug trafficking offenses;

20   Second, the defendant knew that the property involved

21   in the financial transaction was the proceeds of some form of

22   unlawful activity;

23   Third, the proceeds were transferred from Mexico to

24   the United States, the United States to Mexico, or the United

25   States to Colombia; and

JURY CHARGE

1      Fourth, that the defendant acted with the intent to

2  promote the carrying on of the drug trafficking offenses or

3  that the transportation, transmission, or transfer of funds

4  were designed in whole or in part to conceal and disguise the

5  nature, the location, the source, the ownership, or the control

6  of the proceeds of drug trafficking.

7      Now, I'm going to give you a number definitions for

8  these terms.

9      The term "conducts" includes initiating, concluding,

10 participating, and initiating or concluding a transaction.

11     A transaction includes a purchase, sale, loan, pledge,

12 gift, transfer, delivery, or other disposition of property.

13     The term "financial transaction" means a transaction

14 involving a financial institution which is engaged in or the

15 activities of which may affect interstate or foreign commerce

16 in any way or degree where a transaction which in any way or

17 degree affects interstate or foreign commerce and involves the

18 movement of funds by wire or other means or involves one or

19 more monetary instruments.

20     A transaction involving a financial institution

21 includes a deposit, withdrawal, inter-account transfer,

22 purchase, or sale of any monetary instrument or any other

23 payment transfer or delivery by, through, or to a financial

24 institution by any means.

25     The term "interstate or foreign commerce" means

Lisa Schmid, CCR, RMR
Official Court Reporter

JURY CHARGE

1    commerce between any combination of states, territories, or

2    possessions of the United States or between the United States

3    and a foreign country.

4         The term "monetary instrument" includes, among other

5    themes, coin or currency of the United States or any other

6    country, personal checks, travelers checks, cashiers checks,

7    bank checks, money orders, investment securities or negotiable

8    instruments in bearer form, or otherwise in such form that the

9    title passes upon delivery.

10        The term "proceeds" means any property derived from or

11   obtained or retained directly or indirectly through some form

12   of unlawful activity, including the gross receipts of such

13   activity.

14        Proceeds can be any kind of property, not just money.

15        Finally, the term "specified unlawful activity" means

16   any one of a variety of offenses designed by the statute.  In

17   this case -- defined find by the statute.

18        In this case the Government has alleged that the funds

19   in question were the proceeds of drug trafficking offenses.  I

20   instruct you that as a matter of law drug trafficking falls

21   within that definition.  However, it's for you to determine

22   whether the funds were the proceeds of that unlawful activity.

23        With respect to the second element, the Government

24   must prove that the defendant knew that the property involved

25   in the financial transaction represented proceeds from some

JURY CHARGE

1    form, though not necessarily which form, of activity that

2    constitutes a felony under Federal, state, or foreign law.

3    Thus, the Government doesn't have to prove that the defendant

4    specifically knew that the property involved in the transaction

5    represented the proceeds of any specific drug trafficking

6    transaction.  The Government only has to prove that the

7    defendant knew it represented the proceeds of some illegal

8    activity that was a felony.

9           I instruct you that the drug trafficking offenses

10   charged in the indictment are all felonies under federal law.

11          With respect to the third element, the term "transfer"

12   has its ordinary and everyday meaning.

13          With respect to the fourth element, the Government

14   must prove beyond a reasonable doubt that the defendant acted

15   with intent to promote the carrying on of the drug trafficking

16   offense.  I already told you what the term "intentionally"

17   means, and that instruction applies here.

18          So, to summarize, if you find that the defendant

19   entered into an agreement to launder money and that he did so

20   knowingly and intentionally, then you must find him guilty of

21   the crime charged in Count Ten.  If, however, you find that the

22   Government did not prove each element of the conspiracy beyond

23   a reasonable doubt, then you must reach a verdict of not

24   guilty.  Your decision as to whether the defendant conspired to

25   launder money, like your decision on each count, must be

JURY CHARGE

1    unanimous.

2           All right.  There's one short section I need to read

3    you, ladies and gentlemen.  When I say short, I mean it's

4    really short.  For those of you who are a little intimidated by

5    the instruction that you just heard, I will tell you, having

6    done this with jurors many times, when you go back, you have a

7    copy of these instructions and you start working through the

8    evidence, it will become more clear to you.  So don't be

9    worried about that.

10          All right.  Now that I've instructed you on the law

11   and the process by which you should weigh the evidence and

12   determine the facts, I'm going to give you a little guidance

13   for your deliberations.  The first thing you're going to have

14   to do is select a foreperson.  I'm afraid there's no more money

15   it in.  Don't get into a big fight over it.  The foreperson

16   doesn't get paid any more.  They have no real power.  All

17   they're charged with doing is being the focal point of the

18   communications with the Court during deliberations so that, if

19   there's a question the jury has, the foreperson will write it

20   down on a piece of paper, sign that person's name, and hand it

21   to the marshal that will be standing outside your door.

22          Once I have your note, I'm going to have you come back

23   to the courtroom; and I will address you collectively, all of

24   you, not just the foreperson.

25          If you do send out a notice with a question of any

JURY CHARGE

1    kind, you must not tell me or anyone else how you stand

2    numerically on the issue of the defendant's guilt, not even

3    when you come into open court.  I don't want to know what it

4    is, the split is this way, the split is that way.  When you

5    reach a unanimous verdict, that's when we know what you've

6    done.  Until then, it's all work for you.

7           Now with regard to the exhibits and testimony, my plan

8    is to send almost all the exhibits into the jury room with you

9    so that you will be able to refer to them and use them.  There

10   are obviously some things we can't send in.  There are some

11   audiotapes that they may not have transfer for.  There were

12   some physical items.  If you want to listen to anything, you

13   can let us know; and we'll bring you back in here and play it

14   in the courtroom.

15          We can also have portions of the trial testimony read

16   back to you when you have questions about that.  We're happy to

17   do that; but do keep in mind, with a trial this long, it can be

18   very difficult to find the particular portion that you're

19   looking for in the transcript.  So, when there's something you

20   want to know, try to specify what witness was it and what the

21   specific topic was that you want to hear on so that we can go

22   back to the transcript and try to find it for you as quickly as

23   possible, even though I will tell you it generally takes a

24   little bit of time to find it.

25          You know, the purpose of jury deliberations is to

JURY CHARGE

1    discuss and consider the evidence, to listen to the arguments

2    of your fellow jurors, to present your individual views, to

3    consult with one another, and to reach an agreement based on

4    the evidence presented, if you can do so without violence to

5    your own individual judgment.

6            Don't hesitate to change your opinion if, after

7    discussion with your fellow jurors, your opinion seems wrong.

8    If, however, after having carefully considered all the evidence

9    and the arguments of your fellow jurors, you still entertain a

10   conscientious view that differs from the others, you're not to

11   yield your conviction simply because you're outnumbered.  Your

12   final vote must reflect your conscientious judgment as to how

13   the issues should be decided.

14           Your job is to reach a fair conclusion from the law

15   and the evidence.  Each of you has to decide the case for

16   yourself, after you consider the evidence with your fellow

17   jurors.  If the Government succeeds in meeting its burden of

18   proof beyond a reasonable doubt, your verdict should be guilty.

19   If the Government fails to meet that burden, your verdict

20   should be not guilty.  Either way, as I've mentioned several

21   times, your verdict has to be unanimous.  All of you must reach

22   the same conclusion as to each charge and, as to the continuing

23   criminal enterprise charge that's Count One, three violations,

24   although you can reach a unanimous verdict of not guilty on one

25   or more charges and guilty on the other charges.

1    When you reach a unanimous verdict, here is the way

2    it's going to work.  Your foreperson will write a note on a

3    piece of paper or on pieces paper that says, "We have reached a

4    unanimous verdict," signed Foreperson.  You will hand that note

5    to the marshal outside your door.  By that time you will have

6    also completed the verdict sheet that I will have sent in with

7    you.  It basically goes through each charge and all of the

8    things you have to find or not find, and it's quite

9    self-explanatory.  Don't send this out of the jury room.  Just

10   sent out the note that says, "We have reached a unanimous

11   verdict."  Hold this close to you, whoever the foreperson is.

12   I'll then bring you in the courtroom; and I will say

13   to you, "Is it correct that you have reached a unanimous

14   verdict?"  If your foreperson tells me "yes," at that point

15   I'll have the foreperson give the completed verdict form that

16   you will have completed and signed to Ms. Clark.  She will give

17   it to me.

18   Remember that the parties and I are relying on you to

19   give full and conscientious deliberation and consideration to

20   the issues in evidence before you.  The oath you took when you

21   started this case sums up your duty; and that is, without fear

22   or favor, you will truly try the issues between these parties

23   according to the evidence given to you in court under the laws

24   of the United States.

25   All right.  Can we have the court officer come

JURY CHARGE

1    forward, please?

2          Before we do that, let me just see counsel at sidebar

3    briefly.

4          (Sidebar.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Sidebar.)

2          THE COURT:  This is not an opportunity to back-strike

3    or think of objections that could have been thought of before;

4    but if there's anything that I misread in the charge that you

5    think needs to be clarified, let me know.

6          MS. PARLOVECCHIO:  Yes, Your Honor, just a few things.

7          THE COURT:  A few things?

8          MS. PARLOVECCHIO:  I'm sorry.  One, I would just --

9    sorry.  It's in the instruction but maybe just clarify for the

10   jurors.  Whoever the foreperson is, they should include their

11   juror number and not their name.

12         THE COURT:  Right.

13         MS. PARLOVECCHIO:  The second thing is, I think when

14   you're explaining the concept of unanimity for Violation 27,

15   the murder conspiracy --

16         THE COURT:  Yeah.

17         MS. PARLOVECCHIO:  -- I think you inadvertently stated

18   that the victim on which they find unanimity must be -- was, in

19   fact, killed, which is contrary to the instruction.

20         THE COURT:  I thought I said that.  Then I thought,

21   "That wasn't right"; but then I thought, "They'll correct me if

22   I'm wrong."

23         MS. PARLOVECCHIO:  Yes.

24         And then finally this is a much more minor point.

25   When you're explaining the concept of venue --

Lisa Schmid, CCR, RMR
Official Court Reporter

JURY CHARGE

1          THE COURT:  Yeah.

2          MR. FELS:  -- you said when you're deciding the issue

3    of whether or not he was brought here involuntarily is to be

4    decide by a preponderance.  Since they don't have to make a

5    finding of voluntariness or involuntariness as to how the

6    defendant got here, it's just a bit confusing.

7          THE COURT:  Anything from defense?

8          MR. BALAREZO:  No, Your Honor.

9          But we did want to renew our objection to the

10   848(e)(1) instruction.

11         THE COURT:  It's been made throughout.  As far as I'm

12   concerned, it's preserved.

13         MR. BALAREZO:  Very well.  Thank you.

14         MS. PARLOVECCHIO:  Thank you, Your Honor.

15         (Sidebar concludes.)

16

17

18

19

20

21

22

23

24

25

JURY CHARGE

1          (In open court.)

2          THE COURT:  Okay.  Three slight corrections I need to

3   make, ladies and gentlemen.  It shouldn't take me very long to

4   do that.

5          First, when you send out notes, remember do not use

6   your name.  Use just your juror number.  Okay?  It might be a

7   natural tendency to write your name, but don't do that.  Use

8   your number.

9          Second, in charging you on Count One, the 27 acts -- I

10  think it was 27 -- I mistakenly said that the object of the

11  murder conspiracy had to actually be killed.  That is not the

12  case.  There does not have to be an actual death.  You will see

13  that in the instructions.  I read it wrong to you.  Okay.

14         And then, third, on the venue point, it doesn't matter

15  how the defendant got to this District, if he got to this

16  District, whether it was voluntary or involuntary.  You have to

17  find -- to find venue properly is that he did, in fact, get or

18  was brought to this District.

19         Anything else from the parties?

20         MR. BALAREZO:  (Shakes negatively.)

21         MS. PARLOVECCHIO:  No, Your Honor.

22         MR. BALAREZO:  No, Your Honor.

23         THE COURT:  All right.  Let's have the court officer

24  come forward, please.

25         (Court Security Officer was sworn.)

Lisa Schmid, CCR, RMR
Official Court Reporter

JURY CHARGE

1          (Marshal was sworn.)

2          THE COURT:  All right.  I'd like the first two rows of

3  jurors to go with the court officer and begin deliberations.

4          I want to talk to the third row some more.

5          (Jury exits at 1:05 p. m.)

6          THE COURT:  All right.  Everyone be seated.

7          Ladies and gentlemen, you have likely surmised that

8  you are designated as alternate jurors for the case.  That does

9  not mean we're done with you by any means.  The fact of the

10  matter is it's not at all uncommon that one or more of you will

11  become necessary to the deliberation process as this goes on.

12  So, we're going to keep you within the family for now as we

13  find out when and if that becomes necessary.

14          So, what we're going to do is I'm going to put you in

15  a separate room with a separate lunch.  I am going to repeat

16  the instruction to you that you can't talk about the case yet

17  because you're not deliberating.  I know that will be hard, but

18  you really must adhere to that.  If you are brought into the

19  case, the jury will start all over so you won't have missed

20  anything.

21          We have arranged for entertainment for you while you

22  wait.  I hope you'll like it.  I think there should be enough

23  there to interest everybody, and we really appreciate the fact

24  that, even though, as I say, you all knew you were alternates,

25  you all paid excellent attention to this case throughout and

JURY CHARGE

1    the parties recognize it.  I recognized it.  I think everyone

2    did.  So I'll ask you to retire now.  Ms. Clark will take you

3    to a separate room, and we will talk to you shortly.

4            (Alternate jurors exit.)

5            THE COURT:  All right.  Be seated.

6            What I'd like to have happen is my practice, as I told

7    the jury, is to send in all the exhibits.  Obviously there are

8    some exhibits we're not sending in.  There's a story about that

9    I'll tall the lawyers off the record.

10           But do put everything together.  Agree between you

11   what should be there.  Then Ms. Clark will bring it in to them.

12           Did we decide to send in the indictment?  Did we

13   redact or revise the indictment?

14           MS. PARLOVECCHIO:  We did redact and revise, Your

15   Honor; but we decided against sending it back during the charge

16   conference.

17           THE COURT:  Okay.  Because it's in the charge anyway.

18           And the verdict form, of course, the copy of the

19   instructions we will also provide.

20           All right.  Anything else?

21           MS. PARLOVECCHIO:  Not from the Government, Your

22   Honor.

23           THE COURT:  All right.  Stand by, if the lawyers will

24   join me off the record at sidebar.

25           (Sidebar discussion off the record.)

PROCEEDINGS

1    (In open court, outside the presence of the jury at 2:05 p. m.)

2              THE CLERK:  All rise.

3              THE COURT:  Have a seat, please.

4              We have received two notes from the jury.

5              MR. BALAREZO:  Your Honor, I'm sorry.  We -- I'll

6    translate in the meantime, but we don't have an interpreter.  I

7    apologize.  I thought they were in the courtroom.

8              THE COURT:  We'll wait.

9              (Pause in proceedings.)

10             THE COURT:  How are the parties doing on getting their

11   exhibits together?

12             MS. HONIGMAN:  We're getting several --

13             MR. BALAREZO:  We're reviewing the other side's right

14   now.

15             THE COURT:  Okay.  We've been joined by the

16   interpreter.

17             THE INTERPRETER:  Thank you, Your Honor.

18             THE COURT:  We have received two notes from the jury.

19             What we've marked as Court Exhibit Number I is the

20   first note.  It says as follows:  "Is a 'drug war' considered

21   part of a drug trafficking crime?  (With specific reference to

22   the weapons charge.)"

23             (Pause in proceedings.)

24             THE COURT:  Ideas, Government?

25             MS. PARLOVECCHIO:  I'm sorry, Your Honor.  I think the

Lisa Schmid, CCR, RMR
Official Court Reporter

PROCEEDINGS

1    answer to that would be yes because violation 27, of Count 1

2    charges the various groups of Beltrán Leyva organization

3    members, Carillo Fuentes organization members --

4              THE INTERPRETER:  I'm sorry, counsel.  I can't

5    understand you.  Just start back with various groups.

6              MS. PARLOVECCHIO:  Various groups, including the

7    Beltrán Leyva organization members, the Carrillo Fuentes

8    organization members, et cetera.

9              If the jury finds Violation 27, as one of the

10   continuing series of violations in Count 1, then, the answer to

11   their question would be yes, the drug wars would constitute one

12   of the underlying offenses for Count 9.

13             THE COURT:  So your proposal is that I answer the

14   jury, "yes," is that right?

15             MS. PARLOVECCHIO:  I think it might have to be a

16   little more nuance than just "yes."

17             THE COURT:  Give me your proposed nuance.

18             MS. PARLOVECCHIO:  Could we draft some language, Your

19   Honor, to see if defense counsel agree.

20             MR. BALAREZO:  Your Honor, we would disagree with a

21   "yes" answer.

22             As to the question as written, I don't think we can

23   answer that.  I think at best, the Court can say that it is for

24   the jury to determine, without giving a yes or no answer.

25             MR. LICHTMAN:  And I think the point is well taken is

Lisa Schmid, CCR, RMR
Official Court Reporter

PROCEEDINGS

1   it is up to them to determine whether the so-called drug war is

2   part of that count.

3          MS. PARLOVECCHIO:  Your Honor, I think we can provide

4   some more clarification without usurping their decision as to

5   whether or not it can be one of the things that they're going

6   to rely upon in finding guilty under Count 9.

7          MR. BALAREZO:  Your Honor, I think giving them a yes

8   answer, it usurps their authorities.  That's why if they have

9   any further questions, they can come back with another note,

10  rather than short circuit on the process right now.

11         MR. LICHTMAN:  Or we can conceivable read the part of

12  the charge that relates to that.  There is no reason to give

13  them a legal answer when they have got instructions.

14         THE COURT:  Would the parties like a few minutes to

15  think about it?

16         MS. PARLOVECCHIO:  Yes, please, Your Honor.

17         THE COURT:  Okay.  We'll recess for five minutes, but

18  I do want to give them an answer.

19         On the second question, it's a little easier.  Court

20  Exhibit Number 2 is a note that says, "Can we please get jury

21  charge and verdict sheet for every juror?  If not, more?"

22         I would recommend giving them multiple sets of

23  instructions and one verdict sheet stamped "master," and the

24  rest worksheets for all of them.

25         MS. PARLOVECCHIO:  We have no objection to all that,

PROCEEDINGS

1    Your Honor.

2              MR. BALAREZO:  No objection.

3              THE COURT:  All right.  We'll start on that while

4    you're seeing if you can agree on some language to give them.

5              MS. PARLOVECCHIO:  Thank you, Your Honor.

6              (Recess.)

7              THE CLERK:  All rise.

8              THE COURT:  Have a seat.

9              Okay.  I have the Government's proposal, which I'm

10   going to mark as Court Exhibit 3.  It's not -- it's a little

11   too government friendly, I think.  It leads the jury just where

12   the Government would like them to go.

13             But the first part I think is appropriate because keep

14   in mind, the question the jurors have asked in this note is

15   with specific reference to the weapons charge.

16             So what they're asking about is, can I find that the

17   drug war is a drug trafficking crime and use that for the

18   predicate to the weapons charge, and because I think they may

19   be putting the horse before the cart on this that, I'm

20   inclined to give them something like what the Government

21   proposed, which says -- without necessarily referring them back

22   to the instructions because I think the instructions are clear

23   enough, I would say something like, after reading them their

24   note, "Keep in mind, ladies and gentlemen, that you can only

25   consider Count 9 if you find that the defendant is guilty of

PROCEEDINGS

1    Counts 1, 2, 3 or 4.  In considering whether the defendant is

2    guilty of Counts 1, 2, 3 or 4, you may, if you choose, consider

3    evidence of the drug wars, but it remains the Government's

4    burden to meet each of the respective elements for those counts

5    and to prove them beyond a reasonable doubt."

6            That kicks them back to where they ought to be in the

7    first place, and I think they have possibly strayed from it,

8    looking for a shortcut.

9            MS. PARLOVECCHIO:  We have no objection to that, Your

10   Honor.

11           MR. LICHTMAN:  Your Honor, I want to have it -- if you

12   could just repeat the second part, the you may consider

13   evidence.

14           THE COURT:  Let me have the court reporter read it

15   back.  I probably won't ever say it that I well again.

16           Oh, wait.  I've got it. I've got it.

17           I would read them their note, and then I would say to

18   them, "Ladies and gentlemen, keep in mind that you may only

19   consider Count 9 if you find that the defendant is guilty of

20   Counts 1, 2, 3, or 4.  In considering whether the defendant is

21   guilty of Counts 1, 2, 3 or 4, you may, if you choose, consider

22   evidence of the drug wars but it remains the Government's

23   burden to meet each of the respective elements for those

24   counts, and to prove each beyond a reasonable doubt.

25           MR. LICHTMAN:  Judge, what if they asked for a

PROCEEDINGS

1    definition of the drug wars?  I mean, you start having a

2    slippery slope and they may ask that next to define that.  I

3    would just leave it with what we discussed before:  It's up to

4    them to apply the evidence as they see fit.  What if they think

5    the drug war had nothing at all to do with the protecting the

6    Sinaloa Cartel.

7         THE COURT:  That's why I'm giving them the option of

8    saying if you think it's appropriate.  It's their

9    determination.  That part, I'm taking from you.  I'm not

10    saying, you should consider the drug wars on Counts 1, 2, 3,

11    and 4.  I'm saying you may.

12         MR. LICHTMAN:  Well, the problems is when they ask the

13    next question, how do you define drug war?

14         THE COURT:  Then I'd probably say to them, well, you

15    used it.  What do you mean by it?  But I think we should cross

16    that bridge if we come to it.  I think it's pretty clear.

17         MR. LICHTMAN:  I just hate to tell them that we have

18    an understanding of what the drug war is, when we don't know

19    what their understanding of the drug war is maybe different

20    than our understanding.

21         MR. BALAREZO:  And Your Honor, again, I think our

22    response should be more general at this point.  If -- I do

23    believe that if they have any more questions, they'll come

24    right back, but to go right away and tell them -- it's obvious

25    that they can consider it, first of all.  I don't think they

PROCEEDINGS

1    need to be told.  But we're just getting ahead of ourselves and

2    we've already I think starting to invade the providence of the

3    jury.

4              THE COURT:  Is there any question about what they mean

5    by drug wars?

6              MR. BALAREZO:  We're directing them to Violation 27.

7              THE COURT:  No, no, no, no.  I'm not doing that.  I'm

8    not taking that from the Government.  I think you're right.

9    That would be too specific.  So I'm not going to do that.  I'm

10   directing them to Counts 1, 2, 3 and 4.

11             MR. LICHTMAN:  Then why direct them at all, Judge?

12             THE COURT:  They have asked a question, and they may

13   be confused into thinking there is a shortcut to answering

14   charge Count 9, when there isn't.  They've got to go to 1, 2, 3

15   and 4.  I think they've got to know that.

16             MR. LICHTMAN:  Well, could we just say that, before

17   you can consider Count 9, you need to start with 1, 2, 3 and 4,

18   and leave it at that?

19             THE COURT:  But then we haven't answered their

20   question, which is, can evidence of the drug wars be considered

21   part of a drug trafficking crime?

22             MR. LICHTMAN:  I just wouldn't want to presume what

23   their understanding and definition of drug wars is.

24             THE COURT:  What could it be?  I think the record only

25   admits to one explanation.

Lisa Schmid, CCR, RMR
Official Court Reporter

PROCEEDINGS

1          MR. LICHTMAN:  I mean, look, juries see things perhaps

2     differently than lawyer.

3          THE COURT:  Let's think of a way they could see it, so

4     we could say, oh, that's different than we would see it.

5          MR. LICHTMAN:  I think you can say any evidence at all

6     in the case that you heard could be considered in Counts 1, 2,

7     3 or 4.

8          MS. PARLOVECCHIO:  Your Honor, that explanation would

9     not answer the jurors' question.  I think the language that you

10    proposed is sufficiently clear, and it answers the question,

11    and directs them to the correct counts to march through in

12    order to make a finding on Count 9.

13         MR. LICHTMAN:  But you're presuming what their

14    understanding of drug wars.

15         THE COURT:  I know, but no one is giving me a possible

16    alternative explanation than that which we all know it is.

17         MR. LICHTMAN:  They could have given something more

18    specific, more specific than drug wars.

19         MR. BALAREZO:  Yeah.  There was more than one drug war

20    that was mentioned anyway.

21         THE COURT:  They used plural.

22         MR. BALAREZO:  It is plural?

23         THE COURT:  Actually, no.  It's singular.  You're

24    right.

25         MR. BALAREZO:  There's multiple drug wars, so which

PROCEEDINGS

1    one are they talking about?

2            THE COURT:  The way it's plural -- it's singular in a

3    collective concept.  Is a drug war -- not is the drug war -- is

4    a drug war considered part of a drug trafficking crime, as a

5    general matter.

6            I think the answer is, as Mr. Lichtman suggested when

7    we first met, if you think so, jury, that's up to you to

8    decide.  I think that's what I'm going to go with.

9            Okay.  In the meantime, we have now received another

10   note, which we marked as Court Exhibit Number 4.

11           I should mention, by the way, that the foreperson is

12   Juror Number 11.

13           And the question is -- it's a two-fold question.  The

14   first part is, "How long until we get the evidence and

15   pictures?"  I will tell them imminently.

16           And the second part, Is Ephedrine considered as

17   Methamphetamine?

18           MS. PARLOVECCHIO:  It is a precursor to

19   methamphetamine, Your Honor.

20           THE COURT:  I know the answer.  What do we tell them?

21           MR. LICHTMAN:  It's not meth.

22           MS. PARLOVECCHIO:  Your Honor, may we -- we'll consult

23   the Code and can provide factually correct and legally correct

24   answer to the question.

25           MR. LICHTMAN:  Coca leaves is not cocaine.  Ephedrine

PROCEEDINGS

1    is not meth.

2          THE COURT:  But they're asking a slightly different --

3    it's not a precise equivalence question:  Is Ephedrine

4    considered as methamphetamine, which means -- well, it depends

5    for what purpose, right?

6          MS. PARLOVECCHIO:  Correct.  It depends on the charge

7    under which they're considering it.  Certainly, a conspiracy to

8    manufacture methamphetamine would not necessarily encompass

9    possession of Ephedrine with the intent to produce

10   methamphetamine.

11         MR. BALAREZO:  That's the problem right there, Your

12   Honor.  We're starting to speculate as to what the jury is

13   asking.  We can't do that.

14         THE COURT:  Why don't I say, "Ephedrine is not

15   methamphetamine, but it is a component."

16         MR. BALAREZO:  I would object to that.

17         THE COURT:  Is that wrongful factually?

18         MS. PARLOVECCHIO:  No, it's factually correct, Your

19   Honor.  There was tons of evidence about it during this trial.

20         MR. BALAREZO:  It's factually correct, but --

21         THE COURT:  I think I might answer that by saying, "I

22   have to refer you to the record to determine the relationship

23   between ephedrin and methamphetamine."

24         MS. PARLOVECCHIO:  We have no objection to that, Your

25   Honor.

7057

PROCEEDINGS

1    THE COURT:  Let's have the jury.

2    MR. BALAREZO:  Could we just clarify what the

3  response would be to the note number 1?

4    THE COURT:  Yes.  I think I read it.

5    MR. BALAREZO:  Is it the one that you read because at

6  the end, you said you'll get what Mr. Lichtman suggests.

7    THE COURT:  I think that's in there.  It's going to

8  imply.  You don't have to consider drug wars as evidence of the

9  drug crime, but you may.  It will be something like that.

10  We'll see how it comes out.

11    (Pause in proceedings.)

12    MR. LICHTMAN:  Judge, I would just say again that you

13  may, if you choose, consider any of the evidence that you've

14  heard.  I just object to the term "drug wars," because we're

15  presuming we have the same understanding.

16    THE COURT:  But I'm just telling them -- I will say,

17  consider evidence of the drug wars or any other evidence that

18  you think is relevant to those charges.

19    MS. PARLOVECCHIO:  That's fine.  We have no objection.

20    MR. LICHTMAN:  We couldn't just leave it, you can

21  consider any of the evidence?

22    THE COURT:  I feel obliged to respond to their

23  question.  I think there's no ambiguity by what think mean by

24  drug wars.

25    MS. PARLOVECCHIO:  I agree.  There's multiple drug

Lisa Schmid, CCR, RMR
Official Court Reporter

PROCEEDINGS

1   wars in the jury charge, if they have any question as to which

2   one.

3        THE COURT:  I'm going to stick to that, Mr. Lichtman.

4        MR. LICHTMAN:  Judge, do we ask them what they believe

5   the drugs wars are?

6        THE COURT:  I don't want to get into a dialogue with

7   the jurors because some of the jurors may think one think one

8   thing.  Some may think another.

9        MR. LICHTMAN:  But we're basically agreeing that we

10  have the same understanding as to what drugs wars are.

11       THE COURT:  But there is no reason to poll the jurors

12  individually as to their understanding.  I think it's clear

13  enough what this means.  It answers their question it doesn't

14  limit them to any particular piece of evidence.  It doesn't

15  point them to anyone's particularly theory.  I think it's as

16  neutral as it could be.

17            (Jury enters.)

18       THE COURT:  All right.  Everyone be seated.

19       Ladies and gentlemen, we have your several notes.  Let

20  me address them one at a time.

21       Your first note says, "Is a drug war considered part

22  of a drug trafficking crime?"  New sentence, "With specific

23  reference to the weapons charge?"

24       Let me answer that question this way.  The weapons

25  charge, I'm sure you understand is Count 9.  You can only

PROCEEDINGS

1    consider Count 9, if you first find that the defendant is

2    guilty of either Counts 1, 2, 3, or 4.

3           Now, in considering whether the defendant is guilty of

4    Counts 1, 2, 3 or 4, you may, if you choose, consider evidence

5    of the drug wars or any other evidence in the record that you

6    think is appropriate, but you've got to find, if you're going

7    to convict on any of those Counts 1, 2, 3, or 4, that the

8    Government with that evidence has met its burden of proving

9    each of the elements beyond a reasonable doubt.

10          All right?  So don't get to 9 until you get to either

11   1, 2, 3 or 4, and if you don't convict on 1, 2, 3 and 4, you

12   never get to 9?  Okay?  That's your first note.

13          Your second note is, "Can we please get jury charge

14   and verdict sheet for every juror?"  And the answer is yes,

15   we're preparing that for you.  We're going to stamp one verdict

16   form as master and we'll give you 12 others, so you can all

17   keep scratch pads, but then at the end, you'll fill out the

18   master verdict form and that will be the one that becomes the

19   official record of the court.

20          And then your third question -- actually, two of them:

21   "How long until we get the evidence and pictures?"

22   Momentarily.  We're just putting it together.  We should have

23   it in just a moment.

24          And then the second part of that question, "Is

25   ephedrin considered as methamphetamine?"  For that, I've got to

PROCEEDINGS

1    refer you to the record.  That was explored at trial and that's

2    something for you to determine, not for me to instruct you on.

3              Okay.  I believe that answers your questions.  We'll

4    ask you to continue your deliberations.

5              (Jury exits at 2:47 p. m.)

6              THE COURT:  Okay.  We'll be in very recess until the

7    next note.

8              (Recess.)

9    (In open court, outside the presence of the jury at 4:15 p. m.)

10             THE CLERK:  All rise.

11             THE COURT:  All right.  Everyone be seated.

12             We have received a note from the jury that says, Court

13   Exhibit 5, "We would like to leave our usual -- at our usual

14   time today, 4:15 p.m.  Thank you."

15             Any problems sending them home?

16             MR. ROBOTTI:  No, Judge.  Thank you.

17             THE COURT:  It will take a minute to line them up, so

18   don't stand up yet.  We'll bring them.

19             I'm also going to tell them that obviously, they can't

20   deliberate while they're not all together in the room there.

21   They can't deliberate on the way home, but I'm not going to

22   bring them in tomorrow morning to start deliberations.  I'm

23   just going to tell them when all 12 of them get there, that's

24   when they can start deliberating.  Is that okay with everybody?

25             MS. PARLOVECCHIO:  Yes, Your Honor.

Lisa Schmid, CCR, RMR
Official Court Reporter

PROCEEDINGS

1          THE COURT:  I'm also inclined to tell them that if

2     necessary, they're going to sit on Friday.

3          MR. BALAREZO:  Do they have a choice?

4          THE COURT:  No.  If they fought me hard on it, I might

5     reconsider, but if we're still going Friday, I want them to

6     keep at it.

7          (Jury enters.)

8          THE COURT:  All right.  Everyone be seated.

9          Ladies and gentlemen, we have your note saying that

10    you'd like to leave now.  That's, of course, fine.  For future

11    reference, you're also welcome to stay as late as you want.

12         I'm going to give you the usual admonitions about

13    staying away from media and not talking to anybody about the

14    case, particularly at this very delicate stage.  Don't do any

15    research about the case.  Don't look up anything.  Don't post

16    anything on social media.  And in addition, I have a couple of

17    other instructions for you, now that we're at this stage.

18         First, as you go home tonight, once you leave this

19    courtroom, do not talk about the case amongst yourselves at

20    all.  Your deliberations are over once I dismiss you for the

21    evening, and you can't talk about it whatsoever.  That also

22    includes on your way back in tomorrow morning, you cannot talk

23    about the case on your way in, even if you're with other

24    jurors.

25         The only time you can start re-deliberating or start

PROCEEDINGS

1   your deliberations anew is when the first two rows, the 12 of

2   you are back behind that room there.  When you're all there,

3   whatever time you're there, you can start deliberating, but if

4   you're not all there, then you cannot start deliberating.

5   Okay?  Everybody clear?

6           And I continue to beg the indulgence of the last row.

7   I hope it's not too dull yet.

8           I also did want to tell everyone if necessary, we will

9   sit next Friday.  I don't know if it will be necessary or not,

10  but if necessary, we will.

11          All right.  Have a very good evening.  Thank you for

12  your hard work.  See you tomorrow morning.

13          JUROR:  Judge, this Friday?

14          THE COURT:  This Friday.

15          JURORS:  Oh, this Friday?

16          (Jury exits.)

17          THE COURT:  All right.  Anything else we need to

18  cover?

19          (No response.)

20          THE COURT:  See you tomorrow for more of the waiting

21  game.

22      (Trial adjourned to February 5, 2019, at 9:30 a. m.)

23

24

25

Lisa Schmid, CCR, RMR
Official Court Reporter

7063

INDEX

Court Exhibit 1                7048

Court Exhibit 3                7051

Court Exhibit 5                7061

Lisa Schmid, CCR, RMR
Official Court Reporter