C/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
JOAQUIN ARCHIVALDO GUZMAN
LOERA,

                           Petitioner,

            - against -

UNITED STATES OF AMERICA,

                           Respondent.
----------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

09-cr-0466 (BMC)
23-cv-6300 (BMC)

**COGAN**, District Judge.

      Petitioner seeks habeas corpus relief under 28 U.S.C. § 2555, vacating his conviction for conducting a continuing criminal enterprise, drug trafficking conspiracies, unlawful use of a firearm, and a money laundering conspiracy. He is currently serving a sentence of life imprisonment, the Second Circuit having affirmed his conviction. See United States v. Guzman Loera, 24 F.4th 144 (2d Cir.), cert. denied, 142 S. Ct. 2780 (2022). His petition consists of two filings: a counseled habeas corpus petition, and a later-filed *pro se* supplemental habeas corpus petition, the latter of which I am reviewing as an amendment to the former.[1] Relatedly, he seeks the appointment of counsel to represent him in connection with his habeas corpus petition.

---

[1] I will sometimes refer to both filings as "the petition" collectively. Some of the arguments in the counseled petition are repeated or expanded in the *pro se* supplemental petition and will be addressed in the discussion of the former.

Petitioner has not demonstrated adequate grounds for the appointment of counsel, so that motion is denied. His habeas corpus petition is also without merit, and it is therefore also denied.

I.     **Appointment of Counsel**

Unlike criminal defendants, litigants in habeas corpus proceedings have no constitutional right to counsel. Wright v. West, 505 U.S. 277, 293 (1992). Under the Criminal Justice Act, however, courts have the authority to appoint counsel for "any person financially unable to obtain adequate representation" when "the interests of justice so require." 18 U.S.C. §§ 3006A(a), (a)(2)(B) ("representation may be provided for any financially eligible person who ... is seeking relief under section 2241, 2254, or 2255 of title 28"); see Maldonado v. N.Y. State Parole Cmty. Supervision, No. 22-cv-4839, 2022 WL 17417279, at *3 (S.D.N.Y. Dec. 5, 2022). "In deciding whether to exercise its discretion to appoint counsel under the CJA, courts in this circuit consider the same factors as those applicable to requests for *pro bono* counsel made by civil litigants." Maldonado, 2022 WL 17417279, at *3; accord Mack v. Collado, No. 21-cv-8541, 2022 WL 515690, at *1 (S.D.N.Y. Jan. 11, 2022) (citing Cooper v. A. Sargenti Co., Inc., 877 F.2d 170, 172 (2d Cir. 1989)).

The factors to be considered in determining whether to appoint counsel include what are frequently referred to as the "Hodge factors," from Hodge v. Police Officers, 802 F.2d 58 (2d Cir. 1986). See also Cooper v. A. Sargenti Co., 877 F.2d 170, 172 (2d Cir. 1989). Those factors include the likelihood of success on the merits; the complexity of the legal issues; the movant's ability to investigate and present the case; and whether there are special reasons why appointment of counsel would more likely lead to a just determination. Hodge, 802 F.2d at 61-62; see also Hendricks v. Coughlin, 114 F.3d 390, 392 (2d Cir. 1997).

Having reviewed the petition and based on my extensive experience with petitioner's criminal prosecution, I cannot find that petitioner meets any of the requirements for the discretionary appointment of counsel. As discussed below, the Second Circuit rejected most of the grounds he has raised in his petition on direct appeal, and his ineffective assistance of counsel claims are insubstantial. Although some of the issues raised in his criminal case were complex, those were resolved at or before trial and on direct appeal. The claims raised in the instant petition, for the most part, simply require application of the rule that issues raised and fully litigated on direct appeal may not be relitigated on federal habeas corpus. See Abbamonte v. United States, 160 F.3d 922, 924 (2d Cir. 1998). "The 'mandate rule' ordinarily forecloses relitigation of all issues previously waived by the defendant or decided by the appellate court." United States v. Quinteri, 306 F.3d 1217, 1225 (2d Cir. 2002).

In addition, there are no special circumstances here suggesting the appointment of counsel. Quite the contrary. All of the facts show that petitioner does not meet the threshold requirement of being "financially unable to obtain adequate representation." 18 U.S.C. § 3006A. In response to the motion, the Government has filed a sealed letter detailing evidence, some produced at trial and some not, which compels the conclusion that petitioner controls millions or even billions of dollars in assets, even if they are not in his own name. It suffices to note that at trial, a Customs and Border Patrol officer testified that petitioner routinely smuggled bulk cash up to $20 million between the United States and Mexico; petitioner maintained an extremely expensive criminal enterprise; and that at trial, petitioner retained four separate sets of well-known and high-powered lawyers, including on appeal, to represent him.[2]

---

[2] The Government's sealed letter also refers to extensive evidence obtained after the trial that compels the same conclusion, but I find that the publication of that evidence could endanger witnesses or compromise ongoing investigations and thus I will not discuss it here.

Petitioner has not explained where he obtained the funds to pay these lawyers nor why he no longer has access to these funds. Instead, petitioner states that he has been handling financial matters through his sister and no long is in communication with her. That is not a sufficient basis for me to find that he has no access to his funds – he has not explained why he has not had access to his sister, nor has he explained why his wife (who has completed serving her sentence, imposed as a result of helping petitioner run his drug empire, see http://tinyurl.com/2pe53usy, register number 31149-509) cannot access his assets.

Moreover, petitioner has already had a lawyer, Mariel Colon Miro, prepare the petition and file it on his behalf. That lawyer also appears to have at least translated his *pro se* supplemental habeas petition from Spanish to English. Although she was granted leave to withdraw as petitioner's lawyer in this proceeding, she has asked to remain listed as active on the docket, a request that I granted, presumably so that she can advise on the proceedings. It thus seems likely he has some kind of continuing professional relationship with her even though he is now proceeding *pro se* on his habeas corpus motion.

## II. Habeas corpus relief

A person convicted of a federal crime may move the sentencing court to "vacate, set aside, or correct the sentence" if his sentence "was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). Such a motion requires a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Ineffective assistance of counsel claims may properly be raised in motions pursuant to § 2555. See Massaro v. United States, 538 U.S. 500, 508 (2003); United States v. DeLaura, 858 F.3d 738, 743-44 (2d Cir. 2017). But if an ineffective assistance claim is "bereft of merit" and does not rely on "off-the-record communications" between a petitioner and

4

trial counsel, then summary dismissal is appropriate. Cf. Chang v. United States, 250 F.3d 79, 84 (2d Cir. 2001) (hearing required where petitioner made threshold showing of merit and alleged off-the-record conversations with counsel as a basis for relief).

### A. Counseled petition

The standard for showing ineffective assistance of trial counsel is too well-established to require much discussion. Under Strickland v. Washington, 466 U.S. 668, 687-88 (1984), the defendant must satisfy a two-prong test. First, he must demonstrate that "his counsel's representation fell below an objective standard of reasonableness." McCoy v. United States, 707 F.3d 184, 187 (2d Cir. 2013) (citing Strickland, 466 U.S. at 687-88). Second, he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. "When considering the first prong, [courts] 'strongly presume[ ] [that counsel] rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" Jackson v. Conway, 763 F.3d 115, 152 (2d Cir. 2014) (quoting Cullen v. Pinholster, 563 U.S. 170, 189 (2011)).  A petitioner therefore bears a "heavy" burden to show that counsel's "representation amounted to incompetence under prevailing professional norms." Harrington v. United States, 689 F.3d 124, 129-30 (2d Cir. 2012).

Petitioner contends that his team of trial lawyers was ineffective for failing to take the following actions: (1) request an in camera inspection of the documents pertaining to the Mexican Government's specialty waiver; (2) object to several *ex parte* motions made by the Government under the Classified Information and Procedures Act ("CIPA"), 18 U.S.C. app. §§ 3, 4; and (3) explore the possibility of a potential plea bargain.

5

1. **Rule of Specialty**

One of the issues at trial and on appeal was petitioner's claim that he was being prosecuted in violation of the Rule of Specialty. This rule generally provides that when a foreign sovereign agrees to extradite a person in its custody pursuant to a treaty (here, the Extradition Treaty between the United States and Mexico, May 4, 1978, 31 U.S.T. 5059), it is solely for the prosecution of the crimes set forth in the extradition request and not for unrelated crimes. See Guzman Loera, 24 F.4th at 150-52. Petitioner contended that under the terms of his extradition, he could only be tried on indictments then pending in the Western District of Texas and the Southern District of California, not the Eastern District of New York. He also argued that his conditions of confinement violated the terms of his extradition. Notably, the Mexican Government expressly waived the Rule of Specialty in writing, and that waiver was provided to petitioner in pretrial discovery. This Court held that petitioner had no standing to raise this issue under the treaty – only Mexico could, and it had not – and the Second Circuit affirmed that ruling. Id.

In the current habeas petition, petitioner contends that notwithstanding this ruling, his attorneys should have requested that the Court conduct an in camera inspection of certain documents, and that their failure to do so was constitutionally ineffective. I reject that argument for two reasons.

First, petitioner has not explained what documents his attorneys should have requested. As noted above, he was provided with the extradition waiver. If he is seeking other (unspecified) documents connected with his extradition, this Court already ruled pretrial that he was not

6

entitled to any documents that were confidential and not publicly available to the Mexican courts.

More fundamentally, the Second Circuit's affirmance of this Court's ruling that petitioner lacked standing to raise the Rule of Specialty means that any request for the documents underlying his extradition would have been futile. Since petitioner had no standing to raise the Rule of Specialty defense, it follows *ipso facto* that nothing in the extradition documents could have been used to assert the defense, and I therefore would have denied such a request by counsel. Counsel's decision not to ask for documents supporting a Rule of Specialty defense in light of this Court's rejection of that defense for lack of standing was neither objectively unreasonable, nor was petitioner prejudiced by it.[3]

### 2. *Ex parte* CIPA communications

Petitioner next contends that his attorneys should have objected to the Court having *ex parte* communications with the Government concerning the identification and production of documents under CIPA. CIPA-covered documents will almost always fall within the scope of F. R. Crim. P. 16(d)(1), which allows the restriction of information "vital to the national security." Section 4 of CIPA expressly provides for *ex parte* communications between the Court and the Government to exclude classified documents and to arrange for the delivery of required discovery to a defendant contained in such documents in a form that does not disclose the sources or means used to obtain the information. The Second Circuit has repeatedly upheld the use of Rule 16(d)(1) and CIPA § 4 in these circumstances to permit *ex parte* proceedings. See

---

[3] Part of petitioner's *pro se* supplemental brief on this issue is a critique of the Second Circuit's decision, in which he accuses that Court of being "partial and biased."

e.g. United States v. Al-Farekh, 956 F.3d 99, 106 (2d Cir. 2020); United States v. Abu-Jihaad, 630 F.2d 102, 142-43 (2d Cir. 2010).

The CIPA procedures were meticulously followed here. The Court spent countless hours reviewing voluminous documents and communicated with the Government *ex parte* only to receive answers to questions relating to the classified documents and to direct modifications of the summaries with which the Government provided petitioner. Nor was this a one-way street; although not required under CIPA, the Court met *ex parte* with petitioner's trial team prior to reviewing the documents to ascertain what areas of inquiry the defense was most interested in so that the Court could make a special effort to look for such information.

An objection to the *ex parte* procedures authorized under federal law would have certainly failed, and thus the defense team was neither objectively unreasonable nor did the absence of an objection cause petitioner any prejudice.

### 3. Failure to explore plea bargain

Petitioner last claims in his counseled petition that his trial team was ineffective because, "despite petitioner's unlikely chance of being acquitted, counsel made no effort to secure a favorable [plea agreement] via a plea negotiation." This Court will assume for purposes of this decision that, in fact, petitioner's trial team made no such effort. But the record shows that was both because petitioner didn't want it to, and because the likelihood of obtaining a plea agreement was virtually nil.

One of the several unusual events in this case occurred when two lawyers – not counsel of record – approached the Government prior to trial and advised the Government that they had been asked on behalf of petitioner to negotiate a guilty plea agreement. They asked the

8

Government not to notify counsel of record that they had been so instructed. These two lawyers were also representing potential cooperating witnesses in the case. The Government advised the Court of this *ex parte* contact both because the lawyers' request not to notify counsel of record while representing cooperating witnesses in the case gave rise to potential conflicts, and because there was nothing but their own statements to indicate that petitioner had authorized these lawyers to act on his behalf.

In response, the Court appointed highly experienced *Curcio* (conflict) counsel to meet with petitioner and see if petitioner wanted to go forward with plea negotiations as these new counsel said he did.  It then convened an *in camera* hearing attended by petitioner, *Curcio* counsel, and the Government.  At the hearing, after assuring petitioner that the proceeding was strictly confidential, both *Curcio* counsel and petitioner himself made it abundantly clear that petitioner did not want to have these attorneys act on his behalf nor did he want to enter into plea discussions with the Government. He made it equally clear that he was fully confident in his lawyers of record and wanted to proceed with them to trial.

At the end of the hearing, in an abundance of caution, I advised petitioner and *Curcio* counsel that if petitioner changed his mind about negotiating a plea agreement, and if for any reason he did not want his counsel of record to try to handle such negotiations, he could reach out to *Curcio* counsel, or I would appoint other conflict counsel, to proceed down that track, and that his attorneys of record would not know that unless petitioner chose to tell them. Petitioner thanked the Court for that opportunity and the hearing concluded.

Petitioner thereafter made no suggestion to the Government or the Court that he wanted to pursue plea negotiations.  His petition does not say otherwise, nor does it contain even a

9

general allegation that he asked his attorneys (any attorneys) to pursue plea negotiations or that they refused.

Moreover, it is not realistic to think there was any chance of a plea agreement here. This was perhaps the most notorious criminal prosecution of the decade, and the charges of which petitioner was convicted could well have resulted in the death penalty but for the terms of his extradition, which restricted the Government to seeking life imprisonment. The top count of the indictment, the continuing criminal enterprise charge, of which petitioner was convicted, itself carried a mandatory life sentence. There is thus no reason to believe that petitioner would have obtained any better result than he did even if he wanted his attorneys to try to negotiate on his behalf, which he did not.

Under these circumstances, I again must find that his trial team was not objectively unreasonable in failing to negotiate a plea agreement that petitioner did not want it to negotiate, nor was he prejudiced by the absence of such negotiations.

### B. *Pro se* supplemental petition

Most of petitioner's *pro se* supplemental petition simply accuses the Government of lying, without reference to any specific facts or evidence showing about what it was allegedly lying. This accusation is carried forward into a claim of ineffective assistance of trial and appellate counsel for not raising, or inadequately raising, the Government's alleged fabrications, but again petitioner does not explain what more his counsel could or should have done other than make the same vague accusations of lying he makes in his petition. Several of the alleged fabrications that petitioner raises were in fact raised at trial and argued to the jury, which rejected them. In any event, none of them are sufficiently specific to afford relief or to warrant further inquiry. See geneally Otero v. Eisenschmidt, No. 01 Civ. 2562, 2004 WL 2504382, at *31 n.61

10

(S.D.N.Y. Nov. 8, 2004) (quoting Parnes v. United States, No. 94-cv-6203, 1995 WL 758805, at *3 (S.D.N.Y. Dec. 21, 1995)) ("Vague allegations do not permit the Court to conclude that the alleged errors of Petitioner's counsel fell below 'prevailing professional norms' ....").

The Government has distilled three other points from the supplemental petition beyond the general accusations of dissembling, and the Government's summary is a fair reading of what petitioner is trying to say. First, petitioner claims he was "kidnapped" in violation of the Rule of Specialty. As noted above, that was dealt with before trial and affirmed on direct appeal. Second, petitioner contends that the Special Administrative Measures under which he was confined prior to and during the trial violated his constitutional rights. This was also examined and rejected by this Court during pretrial proceedings after extensive inquiry, and the Second Circuit affirmed that ruling in a substantial discussion. See Guzman Loera, 24 F.4th at 153-54.

Petitioner's final substantive point relates to the manner in which the Government obtained certain evidence from data servers that were maintained by or in the Netherlands. The Government obtained this evidence pursuant to a Mutual Legal Assistance Treaty between the United States and the Netherlands. Petitioner's contention is that the Government "lied" to a Dutch judge to obtain this data. This contention was also squarely rejected by the Second Circuit on two grounds: first, that petitioner lacked standing because he had failed to demonstrate that he had an ownership interest in the servers; and, second, even if he had demonstrated ownership, the Fourth Amendment does not apply to "the search and seizure by United States agents of property that is owned by a nonresident alien and located in a foreign country." Guzman Loera, 24 F.4th at 157 (cleaned up).

Once again, this Court cannot find any inappropriate conduct on the part of the Government nor any deficiency in the efforts of petitioner's lawyers on his behalf.

## CONCLUSION

The motion for appointment of counsel and petition for a writ of habeas corpus are denied.  No certificate of appealability shall issue under 28 U.S.C. § 2253(c)(1)(A) as there has been no substantial showing of the denial of a constitutional right.  *In forma pauperis* status is denied for purposes of an appeal, as an appeal would not be taken in good faith.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

                                                             *Brian M. Cogan*
                                                              U.S.D.J.

Dated: Brooklyn, New York
         December 26, 2023