The Honorable Brian M. Cogan
United States District Court Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Honorable Judge Cogan,

I send my response to the government, responding to the document that they filed on May 6, 2024. As you will notice, the government does not respond to what I reported about the inefficiency of the defense lawyers. They ignore it and they ignore it because what I reported in my first motion is supported by the evidence.

The same thing happened in the *Pro Se Motion* that I sent to the Second Circuit. The government did not respond to anything reported. The only thing they answered to was regarding the extradition issue, saying that, according to the *Barinas case* , the one who can fight the legality of an extradition is the country that extradites, in this case Mexico. But on the other points they did not respond to anything I reported. They ignored it.

You can see that the same thing happened in the first motion that I sent to you and that you responded to in December of 2023; they also ignored what I reported. They did not answer anything about the point of the Holland servers, nor to the fraudulent calls that they presented at trial. But since I had written the same thing to the Second Circuit, I did not know that what the appellate judges decided, could no longer be fought in a 2255 motion. I did not know that. But the ruling that you gave in December of 2023 helped me make this current motion and to not write something that I had already written in the previous motions.

In the appellate attorney's motion that he submitted to the Second Circuit on September 4, 2020, the attorney never challenged the gross violations committed by the prosecutors during trial, specifically in their "opening statements" and "closing statements." That was an unlimited and unprecedented ineffectiveness on his part in not fighting the prosecutors' lies or the contradictions from the beginning of the "opening statements", and until the end of the trial. They did the same as the appellate lawyer. They carried out unprecedented inefficiency. There is evidence that demonstrates that the ineffectiveness of both the trial attorneys and the appellate attorney caused the jury to find me guilty. And the judges of the Second Circuit affirmed my sentence.

I give you a brief summary of the ineffectiveness of the lawyers who represented me at trial (Lichtman, Purpura and Balarezo). They were inefficient from the start of the trial. They never objected to anything the government said in their opening statements. For example, on September 21, 2014, the government told the grand jury of the Eastern District of New York that Mayo and I had allegedly conspired together from 1989 to 2014. Then on May 11, 2016, the government told the grand jury again in that same district, that Mayo and I had supposedly formed an association from 2001 and until 2014. Because of this, the grand jury found probable cause for there to be an

indictment against me. And in 2008 in Chicago, they also brought an indictment against me, since the government told the grand jury that supposedly I had a faction of the supposed Sinaloa Cartel and that Mayo had another faction.

But the prosecutor who made the “opening statements” at trial told the jury that I had supposedly moved drugs from 1989 to 2014. Then the prosecutor continued talking and not even 20 minutes passed and he then changed his version and said that I had moved drugs from 2001 to 2016 and that Mayo and I had allegedly entered into a partnership. And the defense lawyers did not object to this prosecutorial contradiction. It was a very great inefficiency on the part of the defense lawyers. They had the evidence of the accusations from the Eastern District of New York and the accusations from Chicago, which refuted what the prosecutor had just said, since the first indictment from the Eastern District of New York said that Guzmán and Mayo conspired together since 1989 until 2014 and then in the second indictment from the Eastern District of New York, they changed the story and said that Guzmán and Mayo had made an association from 2001 to 2014. And in the Chicago indictment, they said something totally different. They said that Mayo and Guzmán each had a faction of the alleged Sinaloa Cartel. There were many contradictions and the defense lawyers could have used this evidence to refute the government’s statement in the “opening statements”, but they did not do so because they were very ineffective.

They also tell the jury in the “opening statements” that in 2006 Guzman had a fight against the Juárez Cartel and that as a result of that war there were many dead people piled up everywhere. The inefficiency of the lawyers was very great, since they did not object to what the prosecutor said, since they had with them the evidence of Rule 16 and Vicente Zambada’s 3500 that contradicted what the prosecutor said. Vicente Zambada had more than 100 meetings with the government, and in those meetings he never said that Guzman had fought with the Juárez Cartel.

The government always said that Dámaso López was Guzman’s right arm. But in all the meetings that Dámaso had with the government, he never said that Guzman fought with the Juárez Cartel. And once again, the defense attorneys did nothing to prevent the jury from taking into account the huge lie that the prosecutor had just told them. The prosecutor said that in bad faith, since the government had the testimony and statements of Vicente Zambada and he had told the government that Guzman did not fight with the Juarez Cartel.

The government also had the testimony and statements of Damaso Lopez, because he also had many meetings with the government and in those meetings he never said that Guzman had fought with the Juarez Cartel. And the lawyers did nothing to prevent the jury from taking that into account. It was a disproportionate ineffectiveness of the lawyers, since they had the evidence and did not want to dispute what the prosecutor said.

Then the prosecutor told the jury that Guzman had supposedly conspired for 25 years, knowing that this was not true, since Vicente Zambada was cooperating with them since 2010 and Vicente never said anything like that. And the inefficiency of the lawyers was so great, since they did not object to what the prosecutor said. They had Vicente’s 3500 evidence, which contradicted what the prosecutor said and they had Damaso’s 3500 evidence, which also contradicted what the prosecutor was saying, but the lawyers failed to use it to contradict the government and properly defend me.

But Attorney Lichtman's ineffectiveness was even greater, since he never told the jury anything in his opening statements about all the lies that te government had just told in their opening statements. Having the evidence from the witnesses, which contradicted what the prosecutor said, still he decided not to use it and leave it at that, and of course, the jury then believed the government's lies. The defense attorney talked and talked in his "opening statements" but everything he said had nothing to do with what the government said. That was unprecedented inefficiency on the part of defense attorney. Judge, I can send you a copy of the defense attorney's "opening statements" and the government's "opening statements" so that you realize that what I say is true.

Then the direct examination of the witnesses began and the defense lawyers were also very inefficient when it came to cross-examining them. For example, the witness Miguel Ángel Martínez Martínez was led by the government to lie at trial knowingly and in bad faith. Martínez Martínez told the jury that in February of 1989 he made his first plane flight loaded with cocaine from Colombia to Mexico for Guzmán, and that from 1987 to early 1990s he discovered a tunnel on the Agua Prieta border with Arizona, and that he coordinated 200 flights, and that on each return he brought 800 kilos of cocaine, and that 95% of the cocaine was crossed into the United States through a tunnel. And the inefficiency of the lawyers was big, because they did not object to what Martínez Martínez said, having with them the evidence of DEA agent Salazar's testimony who said that he had carried out an investigation and that the land where the tunnel exit was had been purchased on July 22, 1989, and that in March of 1990 they had information that construction was being carried out, and that it was at that moment when they decided to put cameras to monitor, and then on May 11, 1990 they realized that a truck was leaving that place and they followed the truck and found 900 kilos of cocaine, and that is when they discovered the tunnel.

The agent said the distance in and out of the tunnel was about two blocks, which means it must have taken a lot of work to build it. That means that from July 22 of 1989 to May 11 of 1990, the construction of the tunnel took approximately 10 months. The lawyers were very inefficient, since having with them that testimony from agent Salazar, which contradicted what Martínez Martínez said, they decided to do nothing and did not use it to contradict him in his interrogation. The jury, therefore, took into account Martínez Martínez's lies.

In addition, the lawyers had the evidence of Martínez Martínez where he had already testified in another trial in Arizona in March of 2006, and in that trial he had said that in February of 1987 he began to receive and coordinate shipments of cocaine with the Colombians for Guzmán and that over the course of two years, he received 160 flights with cocaine and that the cocaine had been crossed through the tunnel to the United States. He talked about February of 1987 and said that he did it for two years, which would be 1989. By that date not even the land had been purchased where the exit of the supposed tunnel was, according to agent Salazar. He said the same thing at the New York trial. On that date, according to agent Salazar, there was no tunnel. The lawyers had the evidence with them and did not alert the jury, so that they would not take into account the world of cocaine that Martínez Martínez attributed to Guzmán. It was very inefficient on the part of the lawyers to not have objected.

Then Martínez Martínez continued making things up, because the defense lawyers were

not stopping him. He went on to tell the jury that after the discovery of the tunnel, Guzman used cans of chili peppers labeled “La Comadre” to transport the cocaine to the United States and that from 1990 to 1993, 90 tons of cocaine were transported and that he was in charge of packaging and transporting it. He also said that in April of 1993 there was a seizure of 7.3 tons of cocaine in Mexico. But what he told the jury was not true, since there was evidence from his testimony during the trial where he had testified in 2006 in Arizona, where he said that during the time he had trafficked drugs there had been no seizures because Guzman paid the police in Mexico. Once again, he contradicted himself.

Later in the cross-examination of Martínez Martínez, the defense lawyer did not question him about his lies, so that the jury would not take into account the world of cocaine that Martínez Martínez alleged that Guzman had sent. The lawyer who cross-examined Martínez Martínez was very inefficient, since he did not do his job well and did not unmask him. Being that he had the evidence of the testimony of Martínez Martínez from Arizona in 2006 and being that he also had the testimony of agent Salazar, which contradicted what Martínez Martínez said in his direct interrogation. But he decided not to do anything and that is why the jury had no choice but to believe what Martínez Martínez had testified, and they took into account the 180 tons of cocaine that Martínez Martínez alleged had crossed through the tunnel, without there even having been a tunnel at the time in which he claimed to have crossed that drug. Martínez Martínez in total awarded 270 tons of cocaine to Guzmán; 180 tons through the tunnel and 90 tons in the chili cans. The jury had no other option, but to convict Guzmán after hearing all those lies.

Then the prosecutor who made the closing arguments told the jury that Martínez Martínez had said that in 1987 he began receiving planes loaded with cocaine from Colombia to Mexico, and that from 1987 to 1990 he received 200 flights of cocaine, and that 95% of the cocaine was transported to the United States through a tunnel in Agua Prieta, Mexico. She repeated what Martínez Martínez had said in his testimony. But the prosecutor knew perfectly well that what she was saying was not true and, even so, she did it with malice and bad faith. And the defense lawyers did not object to anything she said in her summation. They also did not notify the judge of what the prosecutor was doing, who was confusing the jury and lying to them to convict me. The lawyers did nothing and were therefore too inefficient. It was like they were working for the government too.

Another witness that the government led to lie was Vicente Zambada. Vicente said that his father Mayo and Guzman had been partners from 2001 onwards, but in the cross-examination his lie was exposed, since the defense lawyer asked him if he knew Mochomo Beltrán and Vicente said yes. The lawyer then asked him if he knew that when Guzmán had left prison, he had gone to the mountains of Sinaloa to escape and Vicente answered that he did know. And then the defense lawyer asked him if it was true that Guzman was with Mochomo and if Mochomo had protected him and helped him because Guzmán was in bad shape financially and Vicente said yes, and also said that Guzman was with Mochomo for five years (from 2001 to 2006). Vicente also said that Guzman had been in bad shape financially, because he did not move drugs while he was imprisoned and that Guzman was imprisoned from 1993 to 2001. So, it is very clear that there was no partnership between Mayo and Guzman, since according to Vicente himself, Guzman did not trafficked drugs from 1993 to 2001 and from 2001 to 2006 he was in bad shape financially and was with Mochomo.

The defense attorney who did the closing arguments was very inefficient, since he did not mention any of this in the closing arguments to the jury. He did not remind the jury of Vicente's lies. But the defense lawyer who cross-examined Vicente was also very inefficient, since he did not cross-examine Vicente about the great contradictions he said so that the jury would not take into account everything he said about the partnership between Mayo and Guzman.

The lawyers had the evidence of Vicente Zambada that contradicted what the witnesses said involving Guzman with Mayo Zambada and, furthermore, the lawyers had the Chicago accusation that demonstrated that there was no partnership between Guzman and Mayo and they had the evidence of "opening statements". It is very clear that there was never a partnership with Mayo. But the inefficiency of the lawyers made the jury take into account what Vicente Zambada said and even more so, the prosecutor who did they closing arguments repeated what Vicente said. The prosecutor told the jury that they had heard Vicente say that Guzman and Mayo were partners from 2001 onwards. And the lawyers did not object to what the prosecutor said, nor did they try to talk to the judge so that the judge could intervene, having with them the evidence that showed that they were never partners. They had the Chicago accusation and they had what was said by the prosecutor who made the opening statements, which contradicted what Vicente said and they had the evidence of Vicente's cross-examination that revealed that Vicente had lied when he had said that Guzman and Mayo were partners from 2001. The prosecutor who made the closing knew well that there was no such partnership between Mayo and Guzmán, since the prosecutor had said so at the opening.

The prosecutor who made the closing arguments told the jury that not even the four walls of the prison stopped Guzman from continuing to traffic drugs through third parties with his Sinaloa Cartel. The prosecutor also told them that Guzman had been trafficking drugs for 25 years. The prosecutor also said that Guzman had been trafficking drugs for 25 years. And the defense lawyers were very inefficient, since they did not object to any of this, even though they had the evidence of Vicente Zambada's testimony from the direct interrogation, which denied what was said by the prosecutor who made the closing arguments and by the prosecutor who made the opening statements. Both prosecutors told the jury that Guzman had fought with the Juárez Cartel, but in direct examination of Vicente, Vicente denied what the prosecutors said, since Vicente said that neither his father nor Guzman had fought with the Juárez Cartel. Vicente said that the person who had fought with the Juárez Cartel had been Mario Núñez Mesa alias "M-10", since Mario belonged to the Juárez Cartel, but there were differences between him and other participants. Vicente also said that Mario had a person named Antonio Marrufo alias "Jaguar" at his side.

Vicente also contradicted what the prosecutor who made the opening statements said, since that prosecutor told the jury that Guzman had trafficked drugs for 25 years and did not even discount the eight years that Guzman was imprisoned, where Vicente himself said that during that time that Guzman had been imprisoned, Guzman did not traffic drugs.

Vicente also said that when Guzman left prison in 2001, he had no money because from 1992 to 2001 when he was in prison, he had not trafficked and that in 2001 he went to live with Mochomo in the mountains until 2006. So the prosecutor didn't discount that other time from 2001 to 2006, which was 5 years that Vicente himself said that Guzman had not trafficked. The

government's star witness, Vicente Zambada, said that Guzman had not trafficked drugs from 1993 to 2006 (a total of 13 years), but the government still had the nerve to lie and accuse Guzman of having trafficked drugs from 1989 to 2014 (for 25 years), knowing it was a lie. They did everything with fraud and bad faith, so that the jury would find Guzman guilty, as it happened.

And the defense lawyers were very inefficient, since they remained silent and never argued or objected to any of this, and they could have done so, since they had the necessary evidence to fight the government, but they did not do so and therefore, they were very inefficient and their inefficiency costed Guzman his freedom. And the prosecutors did everything conscientiously and in bad faith, since they knew that their witnesses were lying and that they were lying too.

But not only were the defense lawyers ineffective, but also Guzman's appellate lawyer was very inefficient, since he did not fight the lies of the witnesses or the prosecutors and that is why the Second Circuit confirmed the sentence. If Guzman's lawyers (both trial and appellate) had fought the government's lies, the result would have been different.

For example, the government knew that they were going to take their witness Juan Carlos Ramírez alias "Chupeta" to the trial to lie, since when he arrived in the United States extradited from Brazil and he had said nothing in any of the multiple meetings he had with the government regarding that from 2002 to 2005 he had sent cocaine to Guzman in 11 vessels to the alleged Sinaloa Cartel. And he did not say anything about Guzman having invested in each shipment. Nor did he say anything about having baptized the boats with the name "Juanitas". In those meetings he also never said anything about having sent German Rosero to his place to negotiate with each member of said organization what each one was going to invest in every Juanita. Chupeta also did not say anything in those meetings about Rosero having made negotiations on his behalf so that the members of the organization would not know that Chupeta was the owner. But in Rosero's testimony at the trial against Guzman, Chupeta's lies were exposed, since Rosero said in his direct examination that Guzman had invested in the Juanitas 8 shipment and that in the Juanitas 4 shipment, Guzman had been the the only one who had invested money. But in Rosero's cross-examination it was discovered that it was not true that Guzmán had invested money in Juanitas 4 and Juanitas 8.

It was not true because the defense lawyer asked Rosero in cross-examination who had received the Juanitas 4 shipment and Rosero said that it was Julio Beltrán and that Julio Beltrán worked alone and was independent. And Rosero also said that the Juanitas 8 shipment had been received by Arturo Beltrán. Chupeta's lies were exposed with Rosero's testimony. You can see the evidence of Chupeta and Rosero's testimonies.

Later, Chupeta continued to lie in his direct examination and said that there was a seizure of several tons of cocaine in cans of chili peppers in the early 1990s and that he knew that this was his cocaine because Guzman had sent him a cylindrical mold, so that it could produce the cocaine with that cylindrical shape and exactly to the size of that mold, so that it could fit into the cans. Chupeta also said that Guzman's brother had sent Chupeta a document that showed that the seizure did take place in Los Angeles. But in this case, the government never presented copies of that document that Chupeta alleged that Guzmán's brother had shown him and they never presented it because it did not exist and it was not true that there was such a seizure. Chupeta also did not talk

about such confiscation in any of his meetings with the government. He never told them that there was such a seizure.

The prosecutor who made the closing arguments told the jury the same thing that Chupeta said. He repeated to them what Chupeta had said, that in the early 90s there was a seizure of several tons of cocaine and that it was his cocaine. The prosecutor repeated what Chupeta had said and continued repeating Chupeta's story to the jury. She also told the jury that Chupeta had said that from 2002 to 2005 he sent 11 shipments of cocaine to members of the Sinaloa Cartel and that they had all invested in said shipments.

And the defense lawyers were listening to all this and did nothing, nor did they object to anything. It was excessive inefficiency, given that they had the evidence with them that showed that what the prosecutor told the jury was not true. They had evidence that demonstrated that Damaso López's testimony contradicted what the prosecutor told the jury about what Chupeta had said. And they had the evidence of Vicente Zambada's testimony, which also contradicted what the prosecutor said. And they also had the evidence of the cross-examination of Vicente Zambada where he said that when Guzman had left prison in 2001 he had no money because while he was imprisoned from 1993 to 2001 he had not trafficked drugs. And he also said that from 2001 to 2006 he was with Mochomo because he was in bad shape financially and Mochomo helped him. And that was at the time when Chupeta said that he had sent the 11 shipments of the famous Juanitas (see pages 4142 and 4143 of Vicente's cross-examination, which I already sent in the first motion and which can be found there). An unlimited ineffectiveness of the defense lawyers, who never objected, having the evidence with them from Damaso and Vicente, which demonstrated that Chupeta had lied in his testimony.

The members of the jury unfortunately took into account what the prosecutor said in her closing arguments and convicted Guzman. The defense attorney had the opportunity to fight and counter-argue everything the government said in the closing statements, but he did not do so. He remained silent and did not clarify any of the lies told by the government.

Vicente never said that his father or Guzman had invested in cocaine shipments called "Juanitas" from 2002 to 2005 as Chupeta had said. And Vicente always said that he was the one who did everything in the organization and that he reported to his father, and Vicente did not know about the Juanitas. It was very clear that Chupeta lied. The jury took seriously what the prosecutor told them in closing about what Chupeta had said. The prosecutor did it conscientiously and in bad faith and due to the unprecedented ineffectiveness of the lawyer who made the closing, the jury took into account everything Chupeta said.

The defense lawyer talked and talked, but everything he said made no sense. He should have focused on speaking only what was supported by evidence instead of just talking and talking like an orator. Excessive inefficiency on the part of defense lawyers.

For example, the witness Jorge Cifuentes Villa said in the direct examination that in 2003 he met Guzman and that they agreed to work with drugs and that until 2005 he was sending small planes loaded with cocaine to Guzman and that in 2007 he visited Guzmán and they agreed continue trafficking drugs and that he was sending drugs to Guzmán and Mayo Zambada until

2010 because Mayo and Guzmán were partners in the drug business. Guzmán's defense lawyers did not object to what Cifuentes said. An unprecedented ineffectiveness, since they had the evidence of Cifuentes's own testimony that denied everything he was telling the jury. Then, in the cross-examination, the defense lawyers did not demonstrate to the jury that Cifuentes had lied, since the lawyers had with them the evidence where on June 23, 2016 Cifuentes had testified before the jury in support of Guzmán's extradition. and he had said that from 1998 until the early 90s, he worked with Mayo and that in 1992 he met a person named Humberto Ojeda alias Roba Chivas and that they became partners and that they worked until 2007 because his partner was murdered in 1997 and he He returned from Mexico to Colombia and dedicated himself to his legal enterprises and that he could not return to Mexico because he was afraid that they would kill him, since he suspected that Mayo was the one who had ordered Roba Chivas to be killed. Jorge also said that he spoke with Roba Chivas's widow to arrange a meeting with Guzmán to talk about his safety and that in 2003 he met with Guzmán through Roba Chivas's widow and explained to Guzmán his problem to that Guzmán intervened for him so that Mayo did not kill him. But the defense lawyers were very inefficient, since they did not show that letter to the jury, which was made under oath to obtain Guzmán's extradition. If the lawyers had shown that letter to the jury at trial, the jury would have realized that what Jorge Cifuentes said was not true.

And even more, they also had Vicente Zambada's evidence from his testimony in the cross-examination where he had said that when Guzmán left prison in 2001 he had no money and was with Mochomo until 2006 and that at that time Guzmán was in bad shape financially. because he didn't work trafficking drugs. It cannot be clearer that Cifuentes took him to the trial to lie, since in that period that Cifuentes claims to have worked with Guzmán sending planes with 400 kilos of cocaine from 2003-2005, at that time, according to Vicente, Guzmán was with Mochomo because Mochomo was helping him because Guzmán was in bad shape financially. So if Guzmán was with Mochomo because he was in bad shape financially, it was impossible for him to have money to traffic drugs, as Cifuentes said. Therefore, Cifuentes was lying. The defense lawyers did not bring any of this to light, nor did they fight correctly to disprove Cifuentes. They were very inefficient and that is why the jury had no choice but to convict Guzmán.

The government knew perfectly well that they had brought Jorge Cifuentes to trial to lie, but they still did it. The government also took Alex Cifuentes to the trial to lie, since they had the Giglio letter in support of Guzmán's extradition of June 23, 2016 and in that letter Alex Cifuentes never said anything about having had a business drugs with Guzmán. This showed that what the government had told the jury at closing, they said consciously and in bad faith. And the defense lawyers were very inefficient by not having objected to any of this, even though they had the evidence, that is, the Giglio letter that demonstrated that Cifuentes had not said anything like that, but even so they remained silent and did not defend to your client itself.

The closing lawyer also did not tell the jury not to take into account what the prosecutor had just told them about the witness Cifuentes. He had the evidence that refuted what the prosecutor had told them about the witness Cifuentes, but he said nothing or objected, nor clarified anything. A very great and unprecedented inefficiency of the lawyer who did the closing. He did not use the evidence that showed that the government had brought Jorge Cifuentes to the trial to lie. You can see the evidence from the interrogation of Jorge Cifuentes and the cross-examination of Vicente Zambada (pages 4142 and 4243 of his testimony) that refutes what Jorge Cifuentes

said.

And even more, the inefficiency of the lawyer who made the closing was extremely great, since he did not let the jury know that Guzmán and Mayo had never been partners as the prosecutor claimed. The lawyer had the evidence to deny it, but he did not do so. He had the government opening where they had first said that Guzmán had moved drugs around the world from 1989 to 2014. In the government closure they never said anything about Mayo and Guzmán having been partners. They said that at the end at the closing. And the defense attorneys acted very inefficiently, since they did not allege that or let the jury know of that inconsistency. Thanks to the inefficiency of the defense lawyers, the jury took into account what the prosecutor said in her closing and therefore, they convicted Guzmán. Vicente never said that Mayo and Guzmán were partners from 1989 to 2014 and who better than Vicente to know this, if he knew everything his father had done. But the lawyers didn't fight any of this and let all these inconsistencies pass and the jury take them into account. The jury took everything Cifuentes said as if it had been true and that is why they convicted Guzmán, because the lawyers did not fight correctly to defend Guzmán from all those lies. It was an inexplicable ineffectiveness, both on the part of the defense lawyers and the appeal lawyer.

For example, the government brought witness Pedro Flores to trial to lie to the jury, just like all the other witnesses. Pedro Flores invented that from 2005 to 2008 he was moving drugs from Guzmán and that that drug was sold to him by a certain Guadalupe Ledesma and that the owner of that cocaine was Guzmán. He also said that by 2008 he ended up buying more than 60 tons of cocaine from Guzmán and Mayo, since Mayo and Guzmán were partners. But in cross-examination, Pedro Flores was exposed that he had lied in his direct examination, since the defense lawyer reminded Pedro that he had said in the first meetings with the government that the cocaine he had bought from Guadalupe Ledesma was from German Olivares of the Juárez Cartel and that cocaine came from Mayo Zambada. It was very clear that the government took Pedro Flores to the trial to lie against Guzmán.

Pedro Flores also said in his direct examination that he had negotiated with Guzmán by telephone to purchase 20 kilos of heroin, but in his cross-examination it was revealed that he had lied, since the defense lawyer placed a call that Pedro alleged be him and Guzmán talking and then the lawyer played a video in which Guzmán appeared speaking and Pedro Flores himself said that it was not the same voice as Guzmán, that the voice in the video in which Guzmán appeared speaking did not resemble the voice Of the call. Once again Pedro Flores was exposed that he had lied.

Later in closing, the prosecutor told the jury that Pedro Flores had said that from 2005 to 2008 he and his brother Margarito Flores had bought more than 60 tons of cocaine from Mayo and Guzmán, since they were partners and that in 2008 Pedro had negotiated by telephone with Guzmán the purchase of 20 kilos of heroin. And he went on to talk about Pedro having testified about more heroin and cocaine sales events he had bought from Mayo and Guzmán. The prosecutor knew that what she was telling the jury was not true. And the lawyers never objected, nor did they try to talk to the judge to intervene, since they had the evidence of the meetings that Pedro Flores had had with the government and in all those meetings it had always been said that the cocaine they had bought from the From 2005 to 2008 it was from German Olivares and German received

it from Mayo. And they also had the evidence of the testimony of Vicente Zambada, who had said that German was a lieutenant of Mayo and that German sold cocaine to the Flores brothers. In the more than 100 meetings that Vicente had with the government, he never said that Guzmán had sold cocaine to the Flores brothers, neither through German nor through Juancho, whom the Flores brothers had also said had sold them. cocaine. If Guzmán had been Mayo's partner in those cocaine sales to the Flores brothers, Vicente would have said so in his testimony at trial without a problem. And who better than Vicente to know that, if Vicente said that he was the one who managed Mayo's organization and that he reported everything to his father, Mayo.

The lawyers were very inefficient, since in the cross-examination of Vicente
They did not ask him at all about what Pedro Flores had said so that the jury would realize that what Pedro Flores said was not true. With such great ineffectiveness of the defense lawyers, the juries took into account Pedro Flores' lies and so on it happened with all the witnesses. And the lawyer who did the closing was too ineffective, since he never told the jury not to take into account what the prosecutor said, since the prosecutor had repeated to them what Pedro had said in his direct examination and that he had said was not true, since the lawyer had the evidence with which he denied what Pedro Flores said and the prosecutor knew that what Pedro Flores had said was not true, since the government had Pedro's evidence since 2008. The prosecutor acted conscientiously and in bad faith.

Of course, the jurors took into account everything the prosecutor had said in her closing, if the prosecutor in the case was telling them. Due to the ineffectiveness of the lawyer who made the closure, who did not use Pedro Flores' evidence from the meetings he had with the government in 2008, which denied what Pedro said in the direct examination that the cocaine he had purchased from 2005 to 2008 It belonged to Guzmán and Mayo, because of that inefficiency the Jury found Guzmán guilty. The lawyer had evidence from the opening of the trial that the prosecutor had told the jury that Guzmán moved drugs from 1989 to 2014. And he never said that Guzmán and Mayo had been partners and had not moved drugs together from 1989 to 2014. That showed that Guzmán and Mayo were not partners.

And the lawyer had evidence from Vicente Zambada that also demonstrated that Mayo and Guzmán were not partners, since Vicente Zambada never said in his meetings with the government that Guzmán and Mayo were partners from 1989 to 2014. He also did not say that in his testimony. in the trial. It was too great an inefficiency on the part of the lawyer who made the closing, who did not say anything to the Jury that what Pedro Flores said was not true.

And even more, Pedro Flores said in his direct examination that he negotiated 20 kilos of heroin over the phone with Guzmán, but in the cross-examination it was revealed that he lied. And the prosecutor who made the closing told the Jury that they had heard Pedro saying that he had negotiated the sale of 20 kilos of heroin with Guzmán over the phone and that they had also heard Pedro Flores talking to Guzmán on the call negotiating those 20 kilos of heroin. heroin.

And the ineffectiveness of the defense lawyers who did not object to what the prosecutor said, having evidence that refuted what the prosecutor said to the Jury. They didn't even try to talk to the judge to get him to intervene. An overwhelming inefficiency of the lawyers, since in the cross-examination of Pedro Flores, the defense lawyer played the call that Pedro had said was him talking to Guzmán and then played a video where Guzmán is seen speaking live that was published

by the Rolling Stones magazine in 2016. And Pedro Flores said it was not the same voice. Pedro himself said clearly that it was not Guzmán speaking in the call that Pedro had said it was Guzmán speaking with him negotiating the 20 kilos of heroin in 2008. And the ineffectiveness of the defense lawyers, who let the Jury take into account the lies of Pedro Flores.

And the lawyer who made the closing was very inefficient, since he did not warn the jury at all that what Pedro's prosecutor told them they did not take into account because it was not true, since the lawyer had the evidence of the cross-examination of Pedro. Pedro that it had been discovered that Pedro lied in his direct examination. And the lawyer did nothing and decided not to show the jury that Pedro had lied. The lawyer talked and talked throughout the closing, but he didn't talk about what was important, nor did he want to use the evidence from the phone call.

I send you the evidence of the telephone call (page 3657 and page 3658) that demonstrates the unprecedented ineffectiveness of the defense attorney and the other evidence from Pedro Flores, which makes clear the ineffectiveness of the defense attorneys, both at trial and the appeal.

For example, witness Tirso Martínez Sánchez said in his direct examination that from 2000 to 2003 he was taking cocaine to Vicente Carrillo and Guzmán to New York and Chicago in train cars. But in the cross-examination it was discovered that he had lied in the direct examination and the government took Tirso to the trial to lie, since they had Tirso's evidence since 2016 and he had told the government whose cocaine it was and never had mentioned Guzmán in meetings he had with the government in 2016. The government accused Guzmán of four rapes; one in Brooklyn, the second in Queens, the third in Chicago and the fourth in El Paso, Texas. But in the cross-examination it was demonstrated by Tirso himself that he lied. And the closing prosecutor told the jury that Tirso had said that he had taken cocaine by train to Vicente Carrillo and Guzmán and that he had charged them by the kilo.

And he also said that Tirso had said that he spoke with Vicente Carrillo and that Vicente told him that part of the cocaine belonged to Guzmán. The prosecutor knew well that everything she was telling Tirso's jury was not true, since the government had evidence of the meetings they had with Tirso Martínez since 2016 and in those meetings he never mentioned Guzmán. The prosecutor did everything conscientiously and in bad faith.

And the great inefficiency and ineffectiveness of the defense lawyers, who did not object or try to speak so that the judge would intervene and thus the prosecutor would make a different closing, since what she did was confuse the Jury, since they took it as truth what the prosecutor said that Tirso said. The lawyers had the evidence from Tirso's cross-examination that was revealed, but they did not use the evidence to refute the prosecutor. What the lawyer did throughout the closing was talk and talk, but what he spoke had nothing to do with what the witnesses had lied about, nor with what the prosecutor said in the closing.

The defense lawyer who made the opening did the same thing, who talked and talked, but never let the jury know that what the prosecutor had said in his opening was not true and what the prosecutor who made the closing said, there is evidence. that speaks for itself; since there is the opening of the prosecutor and that of the lawyer. There is evidence of the closure of the prosecutor and the closure of the lawyer that shows that there was overwhelming and unprecedented

ineffectiveness. It was impossible for the jurors not to convict Guzmán with such great and inexplicable inefficiency of the trial lawyers and the appeal lawyer.

You can see the evidence in the first motion of each witness. Sir, with all due respect, you can see Guzmán's *Pro Se motion* that he made to the Second Circuit and the appellate attorney's motion that he made to the court of appeals. You will see that there is nothing written in this motion or in the first motion that has been written in the motions that were sent to the court of appeal, either Guzmán's Pro Se motion, or the motion of the appellate attorney as you knows. The government did not respond to anything denounced by Guzmán in his first motion. In the brief that they sent to the District Court on May 6, 2024, they ignore it and ignore it because it is demonstrated with evidence that the lawyers' excessive and unprecedented inefficiency.

The government cites three cases in its motion of May 6, 2024. The first case is that of a lady named Jeantte Foxworth v. United States 2011 WL 3041057, at. 4. The second case is Vásquez v. United States 1997 WL 148812, at 12. The third is Davidson v. United States 2001 WL 883122, at. 8. But these cases that the government cited in its motion on May 6, 2024 have nothing to do with the motion that Guzmán sent to the 2255th district court. These cases were denied by the court because the people in these cases They did not carry clear evidence. Nothing more was his pure saying in his motions. You, Mr. Judge, can see these cases and you will realize that it was your pure saying. It was normal for the Court to deny their motions. In these cases they say that the convicted person must prove the ineffectiveness of the lawyers with clear evidence so that the sentence is annulled and there is a new trial. The motion 2255 that Guzmán submitted to the Court and what Guzmán wrote is supported by the evidence he submitted in the motion. The evidence is too clear and demonstrates the great and unprecedented ineffectiveness of lawyers. I mention a little bit of what I wrote in the motion of the lawyers' ineffectiveness, which is not even one percent of what they did. They were ineffective from the start of the trial until it ended.

For example, witness Miguel Ángel Martínez said in the trial that in February 1987 he began coordinating plane flights and that by 1990 he received 200 plane flights loaded with cocaine from Colombia and that each plane brought 800 kilos and that 95% of that cocaine was crossed into the United States through a tunnel in Agua Prieta, border with Douglas Arizona. And the ineffectiveness of the lawyers, who in the cross-examination did not question him that what he had said in the direct examination was not true, so that the jury would not take Miguel Ángel Martínez's lies as true, since the lawyers had the evidence. which denied what Miguel Ángel Martínez said. They had evidence 3,500 and they had evidence of testimony from a trial in Arizona in which he had testified in March 2006 and where he had said that from February 1987 to 1989 he received 200 flights of cocaine and that 95% were crossed by the Agua Prieta tunnel. He spoke of two years (1987 to 1989) in the Arizona trial. They had evidence from DEA agent Salazar who had led the investigation and he said that the land where the tunnel exit was was purchased on July 22, 1989. On the date that Miguel Ángel Martínez said he had been crossing drugs (1987 to 1989) there was no tunnel, since agent Salazar said it was built in 1989. Then Miguel Ángel Martínez lied. But the lawyers did nothing or denied it and the jury believed all that lie.

The evidence speaks for itself and demonstrates that there was a very great and unprecedented ineffectiveness on the part of the lawyers and that, if it had not been for their ineffectiveness, the result would have been different.

Mr. Judge, Guzman respectfully asks you to apply the law in accordance with impartial law. The law is supposed to be uniform for all the people in this country, regardless of color, race, nationality, or, even if the case is political as is my case. Guzman asks that the sentence be annulled and a new trial be ordered, since it has become clear that Guzman is right, since the government did not respond to anything in response to what Guzman denounced in his motion.

I thank you in advance,

/s/

Joaquín Guzmán Loera